Gayle M. Blatt, SBN 122048
gmb@cglaw.com
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

Arthur H. Bryant (SBN 208365)
abryant@baileyglasser.com
**BAILEY & GLASSER, LLP**
1999 Harrison Street, Suite 660
Oakland, CA 94612
Telephone: (510) 272-8000
Facsimile:  (304) 342-1110

*Attorneys for Plaintiff*
*and the proposed classes*

[Additional counsel on signature page]

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON FISK, RAQUEL CASTRO, GRETA VISS, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all those similarly situated, | Case No. **'22CV173   TWR MSB** |
| | **COMPLAINT** |
| | CLASS ACTION |
| | JURY TRIAL DEMANDED |
| *Plaintiffs*, | |
| *v.* | |
| BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY and SAN DIEGO STATE UNIVERSITY, | |
| *Defendants*. | |

## **INTRODUCTION**

1.     This is a sex discrimination class action against San Diego State University ("SDSU") for depriving its female varsity student-athletes of equal athletic financial aid in violation of Title IX of the Education Amendments of 1972 ("Title IX"). SDSU has not paid its female varsity student-athletes equal athletic financial aid for over a decade, failed to pay them over $1,200,000 in equal athletic financial aid in the last two academic years, and is not paying them equal athletic financial aid this academic year. This lawsuit seeks to make SDSU pay its female varsity student-athletes the equal athletic financial aid they have been and are being deprived of—and require SDSU to provide them with equal athletic financial aid in the future.

2.     Plaintiffs are females who were previously or are currently varsity student-athletes at SDSU. Defendants are the Board of Trustees of the California State University and SDSU (collectively "Defendants"). For years, Defendants have discriminated against SDSU's female varsity student-athletes by depriving them of equal athletic financial aid on the basis of their sex in violation of Title IX.

3.     Title IX prohibits all educational institutions receiving federal funds, including SDSU, from discriminating against women (and men) on the basis of their sex.

4.     As the United States Department of Education's Office for Civil Rights ("OCR"), responsible for interpreting and enforcing Title IX, explained in 1998, "With regard to athletic financial assistance, the regulations promulgated under Title IX provide that, when a college or university awards athletic scholarships, these scholarship awards must be granted to 'members of each sex in proportion to the number of students of each sex participating in intercollegiate athletics.' 34 C.F.R 106.37(c)." Office for Civil Rights, U.S. Department of Education ("DOE"), *Dear Colleague Letter* at 2 (July 23, 1998).

5.   SDSU has not granted athletic financial aid to its female and male varsity athletes in proportion to the number of students of each sex participating in intercollegiate athletics for more than a decade and is not doing so now.

6.   SDSU has regularly granted and is granting its female varsity student-athletes much less—and its male varsity student-athletes much more—athletic financial aid than they would have received if SDSU had granted such aid in proportion to the number of students of each sex participating in intercollegiate athletics.

7.   In the 2019-20 academic year, according to the information that SDSU submitted to the federal government under the Equity in Athletics Disclosure Act ("EADA") and verified as accurate, SDSU granted its 315 female varsity student-athletes over $690,000 less—and its male varsity student-athletes over $690,000 more—in athletic financial aid than they would have received if SDSU had granted such aid in proportion to the number of students of each sex participating in intercollegiate athletics.

8.   In the 2020-21 academic year, according to the information that SDSU submitted to the federal government under the EADA and verified as accurate, SDSU granted its 305 female varsity student-athletes over $570,000 less—and its male varsity student-athletes over $570,000 more—in athletic financial aid than they would have received if SDSU had granted such aid in proportion to the number of students of each sex participating in intercollegiate athletics.

9.   A similar or greater unequal and disproportionate allocation of athletic financial aid to varsity female student-athletes at SDSU continues to this day.

10.   Defendants' actions have caused and are causing harm to Plaintiffs and those similarly situated and constitute intentional, prohibited discrimination based on sex in violation of Title IX and its implementing regulations at 34 C.F.R. Part 106.

11.    Plaintiffs and those similarly situated have been and will continue to be harmed by this past and ongoing sex discrimination in SDSU's varsity athletics program.

12.    The female student-athletes harmed by Defendants' past and ongoing sex discrimination include the members of SDSU's former women's varsity rowing team.

13.    On November 20, 2020, SDSU announced that it was eliminating the women's rowing team, effective at the end of the 2020-21 academic year, ending the varsity athletic careers of nearly 60 female student-athletes. When it did so, SDSU said that it would honor "all athletic scholarships" awarded to members of the women's rowing team who remained at SDSU "through the date of their graduation."

14.    Through this class action, Plaintiffs seek to end Defendants' long-standing, ongoing discrimination against SDSU's female varsity student-athletes in the provision of athletic financial aid, require Defendants to compensate SDSU's female varsity student-athletes for depriving them of equal athletic financial aid, and ensure SDSU's future compliance with Title IX's equal athletic financial aid requirements.

## JURISDICTION AND VENUE

15.    This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, and the regulations and policies promulgated pursuant to that law.

16.    This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

17.    Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 to obtain the correct interpretation of the legal requirements described in this Complaint, which is necessary and appropriate to determine the parties' respective rights and duties.

18.    Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) because SDSU is located in San

Diego, California, which is within this Court's jurisdiction. In addition, the events giving rise to the Complaint occurred in San Diego, California, within this Court's jurisdiction.

## **THE PARTIES**

19.    Plaintiffs are past and current female varsity student-athletes at SDSU.

*20.*    At all times relevant to this case, varsity student-athletes at SDSU were and are eligible for athletic financial aid up to and including a full scholarship, a cost-of-living stipend, summer aid, fifth-year aid, and NCAA Special Assistance Funds if appropriate.

21.    SDSU's average cost of attendance for in-state residents for the last four years was $28,142 per year. A full athletic scholarship at SDSU, which includes a cost-of-living stipend, would have covered the entire cost of attendance.

22.    SDSU's average cost of attendance for non-residents for the last four years was $39,230 per year. A full athletic scholarship at SDSU, which includes a cost-of-living stipend, would have covered the entire cost of attendance.

23.    None of the Plaintiffs received all of the athletic financial aid for which they were eligible at SDSU.

24.    If SDSU had complied with Title IX and granted athletic financial aid to its female varsity student-athletes proportional to the athletic financial aid it granted to SDSU's male varsity student-athletes, each of the Plaintiffs would have had an opportunity to receive her fair share of equal athletic financial aid.

25.    If SDSU had complied with Title IX and granted athletic financial aid to its female varsity student-athletes proportional to the athletic financial aid it granted to SDSU's male varsity student-athletes, each of the Plaintiffs would have received more athletic financial aid than she did.

26.    In addition to being deprived of an equal opportunity to receive equal athletic financial aid and more financial aid than she did, each of the Plaintiffs was injured because she was subjected to discrimination on the basis of her sex.

<u>Madison Fisk</u>

27.    Madison Fisk is currently a senior at SDSU majoring in Economics. She is a resident of California for purposes of tuition at SDSU.

28.    Madison was a member of the women's varsity rowing team until SDSU discontinued the team in Spring 2021.

29.    Madison began rowing before high school. She worked hard throughout high school to earn a spot as a coxswain for the SDSU women's rowing team.

30.    During her time on the rowing team, Madison received partial athletic financial aid. She received a total of $800 her freshman year, $5,800 her sophomore year, $10,800 her junior year, and $10,800 for this current academic year. Madison received a total of $28,200 in athletic financial aid as a varsity student-athlete.

31.    Madison was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

<u>Raquel Castro</u>

32.    Raquel Castro is currently a junior at SDSU majoring in Kinesiology. She is a resident of California for purposes of tuition at SDSU.

33.    Raquel was a member of the women's varsity rowing team until SDSU discontinued the team in Spring 2021.

34.    Raquel trained hard throughout high school so she could pursue rowing as a varsity sport in college.

35.    During her time on the rowing team, Raquel received partial athletic financial aid. She received a total of $800 in athletic financial aid for books each year. Raquel received a total of $2,400 in athletic financial aid as a varsity student-athlete.

36.     Raquel was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

<u>Greta Viss</u>

37.     Greta Viss is a SDSU graduate with majors in Psychology and Biology and is an applicant to SDSU's master's program. She was a resident of California when she attended SDSU and was a resident for purposes of tuition at SDSU.

38.     Greta was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

39.     Greta has been playing sports since she was four years old. Greta walked onto the women's rowing team after an injury caused her to be unable to compete in varsity water polo at SDSU.

40.     During her time on the rowing team, Greta received partial athletic financial aid during her freshman and sophomore years. She received $7,000 in athletic financial aid in her freshman year and $17,000 in her sophomore year.

41.     Greta was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

<u>Clare Botterill</u>

42.     Clare Botterill is currently a junior at SDSU majoring in Journalism and Media Studies. She came to SDSU from Alberta, Canada, to be a part of the women's varsity rowing team and, therefore, is a non-resident for purposes of tuition at SDSU.

43.     Clare was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

44.     Clare started rowing after being a long-time soccer player. After her first summer rowing, Clare loved the sport and dedicated herself to becoming good enough to earn a spot on the Canadian national team and, subsequently, a spot on the team at SDSU.

45.     During her time on the rowing team, Clare received partial athletic financial aid. She received $38,000 in athletic financial aid in her junior year but did not receive any athletic financial aid as a sophomore, which was her first year at SDSU.

46.     Clare was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

<u>Maya Brosch</u>

47.     Maya Brosch graduated from SDSU in May 2021. She is a resident of California for purposes of tuition at SDSU.

48.     Maya was a member of the women's varsity track and field team until she graduated in May 2021.

49.     During her time on the track and field team, Maya received partial athletic financial aid. In her freshman and sophomore years, Maya received $400 per semester in athletic financial aid for books and $250 per semester in athletic financial aid for tuition. In her junior and senior years, Maya received $400 per semester in athletic financial aid for books and $3,860 per semester in athletic financial aid for tuition. Maya received a total of $19,640 in athletic financial aid as a varsity student-athlete.

50.     Maya was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

<u>Olivia Petrine</u>

51.     Olivia Petrine is currently a sophomore at SDSU majoring in Computer Science. She came to SDSU from Arizona to be a Division I varsity athlete and, therefore, is a non-resident for the purposes of tuition at SDSU.

52.     Olivia was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

53.     Olivia started rowing in high school and loved the sport from the first practice. Rowing provided Olivia with the ability to learn how to work as a team member and be a leader as well.

54.     During her time on the rowing team, Olivia received partial athletic financial aid. She received $400 per semester in athletic financial aid for books. Olivia received a total of $800 in athletic financial aid as a varsity student-athlete.

55.     Olivia was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

<u>Helen Bauer</u>

56.     Helen Bauer is currently a senior at SDSU majoring in Business Management. She came to SDSU from Seattle, Washington, and, therefore, is a non-resident for the purposes of tuition at SDSU.

57.     Helen was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

58.     Helen is very passionate about women's fitness and women's opportunities to participate in sports. Helen began rowing in high school. She chose to attend SDSU because it would offer her an opportunity to participate on an up-and-coming varsity Division I rowing team and obtain a quality education. Helen worked her way to becoming team captain in the 2020 season.

59.     During her freshman and sophomore year, Helen received partial athletic financial aid. During her freshman year she received $10,000 in athletic financial aid. During her sophomore year she received $20,000. Helen received a total of $30,000 in athletic financial aid up to her sophomore year as a student-athlete.

60.     Helen was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

<u>Carina Clark</u>

61.     Carina Clark is currently a senior at SDSU majoring in Media Studies. She came to SDSU from Florida to be a varsity athlete and, therefore, is a non-resident for the purposes of tuition at SDSU.

62.     Carina is a member of the women's track and field team at SDSU.

63.    Carina has run track for most of her life. Both of Carina's parents were professional athletes, and they instilled in her a love for sports.

64.    During her time on the track and field team, Carina received partial athletic financial aid for her senior year only in the amount of $400 per semester. Carina received a total of $800 in athletic financial aid as a varsity student-athlete.

65.    Carina was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

<u>Natalie Figueroa</u>

66.    Natalie Figueroa is currently a junior at SDSU majoring in Psychology. She is a resident of California for purposes of tuition at SDSU.

67.    Natalie was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

68.    Natalie loved being a part of the women's rowing team, and she chose SDSU because she wanted a college with great academic programs and great athletic teams.

69.    During her time on the rowing team, Natalie did not receive any athletic financial aid.

70.    Natalie was harmed by SDSU's failure to provide proportional athletic financial aid.

<u>Erica Grotegeer</u>

71.    Erica Grotegeer is currently a senior at SDSU majoring in Criminal Justice, Sociology, and Journalism. She is a resident of California purposes of tuition at SDSU.

72.    Erica is a member of the women's varsity track and field team at SDSU.

73.    Erica started participating in track when she was 13 years old, and she loves being an athlete.

74.     During her time on the track and field team, Erica has received partial athletic financial aid. She received $3,461 her freshman year, $3,629 her sophomore year, $11,630 her junior year and $19,159 this academic year. Erica received a total of $37,879 in athletic financial aid as a varsity student-athlete.

75.     Erica was harmed by SDSU's failure to provide proportional athletic financial aid. To female student-athletes.

<u>Kaitlin Heri</u>

76.     Kaitlin Heri is currently a senior at SDSU majoring in Business. She is a resident of California for purposes of tuition at SDSU.

77.     Kaitlin is a member of the women's varsity track and field team at SDSU.

78.     Kaitlin has been an athlete for most of her life. Kaitlin chose SDSU because of its pole-vaulting program, and she loves the people she has been able to meet and the experiences she has had as a varsity student-athlete.

79.     During her time on the track and field team, Kaitlin has received partial athletic financial aid. She received $3,000 her freshman year, she received $8,800 her sophomore year. She received $13,200 per year in her junior and senior years. Kaitlin is currently receiving fifth year aid in the amount of $26,400. Kaitlin received a total of $64,600 in athletic financial aid as a varsity student-athlete.

80.     Kaitlin was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

<u>Aisha Watt</u>

81.     Aisha Watt is currently a junior at SDSU majoring in Kinesiology. She came to SDSU from Seattle, Washington, and, therefore, is a non-resident for the purposes of tuition at SDSU.

82.     Aisha is a member of the women's varsity track and field team at SDSU.

83.     Aisha loves being a student-athlete because it allows her to keep improving herself and achieving accomplishments that she never thought possible.

CLASS ACTION COMPLAINT

84.    During her time on the track and field team, Aisha received partial financial aid. She received 10% of tuition and $800 for books, per year for her freshman and sophomore years. She is receiving $3,000 in athletic aid this year. Aisha has received a total of $4,600 in athletic financial aid as a varsity student-athlete.

85.    Aisha was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

<u>Kamryn Whitworth</u>

86.    Kamryn Whitworth graduated from SDSU in May 2021 with a degree in Communication. She was a resident of California for the purposes of tuition at SDSU.

87.    Kamryn was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

88.    Kamryn discovered the sport of rowing when she was 13 years old. She gave her heart and soul to her rowing career, and that dedication made it possible for her to be a varsity rower at SDSU.

89.    During her time on the rowing team, Kamryn received partial athletic financial aid. In her freshman and sophomore years, she received $800 per year. In her junior and senior years, she received $5,800 per year. Kamryn received a total of $13,200 in athletic financial aid as a varsity student athlete.

90.    Kamryn was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

<u>Sara Absten</u>

91.    Sara Absten is currently a senior at SDSU majoring in Economics. She is a legal resident of California.

92.    Sara is a member of the women's varsity track and field team at SDSU.

93.    Sara loves being a track and field athlete because it makes her proud to set goals for herself and achieve those goals. Sara chose to come to SDSU for track and field because the head coach is a former Olympian.

CLASS ACTION COMPLAINT

94.   During her time on the track and field team, Sara has received partial athletic financial aid. The amount of athletic financial aid has fluctuated significantly from semester to semester; some semesters she received almost full tuition and other semesters she only received 10% of the cost of attendance.

95.   Sara was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

Eleanor Davies

96.   Eleanor Davies is currently a sophomore in college. She attended SDSU majoring in Business Marketing until transferring in January 2022, after SDSU eliminated her sport. She came to SDSU from Connecticut and, therefore, was a non-resident for the purposes of tuition at SDSU.

97.   Eleanor was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

98.   During her time on the rowing team, Eleanor received partial athletic financial aid. She received $7,500 a semester in athletic financial aid. Eleanor received a total of $22,500 in athletic financial aid at SDSU.

99.   Eleanor was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

Alexa Dietz

100.   Alexa Dietz is currently a senior at SDSU. Alexa came to SDSU from Washington and therefore, is a non-resident for the purposes of tuition at SDSU.

101.   Alexa was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

102.   During her time on the rowing team, Alexa received partial athletic financial aid. She received $800 her freshman year and $8,800 per year in both her sophomore and junior years. Alexa received a total of $18,400 in athletic financial as a varsity student-athlete.

103. Alexa was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

<u>Larisa Sulcs</u>

104. Larisa Sulcs is currently a junior at SDSU. She came to SDSU from Seattle, Washington and, therefore, is a non-resident for the purposes of tuition at SDSU.

105. Larisa was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

106. During her time on the rowing team, Larisa received partial athletic financial aid. She received $7,600 her freshman year, $15,200 her sophomore year per semester in athletic financial aid for books. Larisa has received a total of $22,800 in athletic financial aid as a varsity student-athlete.

107. Larisa was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

### *Defendants*

108. Defendant San Diego State University is a constituent institution of the California State University System.

109. Defendant SDSU is a recipient of federal funds and is required to comply with Title IX and all of its implementing regulations.

110. Defendant Board of Trustees of the California State University is a public entity that does business in San Diego, California, by operating the university campus of SDSU.

111. Defendant Board of Trustees of the California State University is a recipient of federal funds and is required to comply with Title IX and all implementing regulations.

112. Under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and the regulations adopted pursuant to 34 C.F.R. Part 106, SDSU and the

Board of Trustees of the California State University must provide equal opportunities for women and men in every program SDSU offers, including equal athletic financial aid to female and male athletes in SDSU's intercollegiate athletics programs.

## FACTUAL ALLEGATIONS

### Title IX's Equal Athletic Financial Aid Requirements

113.   Title IX says, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

114.   Because SDSU receives federal financial assistance, its varsity athletic program is subject to Title IX, and SDSU must comply with Title IX's requirements. 20 U.S.C. § 1687.

115.   When schools segregate their varsity athletic programs on the basis of sex, as SDSU does, their violations of Title IX in those programs constitute intentional sex discrimination.  *See Neal v. Board of Trustees of the Cal. State Univs.*, 198 F.3d 763, 772 n.8 (9th Cir. 1999).

116.   Applying Title IX to intercollegiate athletics, OCR has adopted regulations requiring educational institutions receiving federal funds to "provide equal athletic opportunity for members of both sexes." 34 C.F.R. § 106.41(c).

117.   The regulations, codified at 34 C.F.R. Part 106 (the "Regulations") are enforced by OCR.

118.   In 1979, OCR issued a policy interpretation of Title IX and the Regulations as applied to intercollegiate athletics at 44 Fed. Reg. 71,413 (Dec. 11, 1979) (the "OCR Policy Interpretation").

119.   The OCR Policy Interpretation sets forth three areas of compliance under Title IX as it relates to college sports: (1) equal accommodation of student interests

and abilities; (2) equal athletic financial assistance; and (3) equal treatment and benefits.

120.   Compliance regarding athletic financial assistance is assessed pursuant to 34 C.F.R. §106.37 (c), which provides:

(1)   To the extent that a recipient awards athletic scholarships or grants-in-aid, it must provide reasonable opportunities for such awards for members of each sex in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics.

(2)   Separate athletic scholarships or grants-in-aid for members of each sex may be provided as part of separate athletic teams for members of each sex to the extent consistent with this paragraph and § 106.41.

121.   The OCR Policy Interpretation states, among other things, its interpretation of the athletic financial aid provision quoted above:

The Policy - The Department will examine compliance with this provision of the regulation primarily by means of a financial comparison to determine whether proportionately equal amounts of financial assistance (scholarship aid) are available to men's and women's athletic programs. The Department will measure compliance with this standard by dividing the amounts of aid available for the members of each sex by the numbers of male or female participants in the athletic program and comparing the results. Institutions may be found in compliance if this comparison results in substantially equal amounts or if a resulting

disparity can be explained by adjustments to take into account legitimate, nondiscriminatory factors…

Application of the Policy - This section does not require a proportionate number of scholarships for men and women or individual scholarships of equal dollar value. It does mean that the total amount of scholarship aid made available to men and women must be substantially proportionate to their participation rates.

44 Fed. Reg. 71,415.

122.   On July 23, 1998, the OCR discussed and clarified how it interpreted and would enforce Tile IX's athletic financial aid requirements:

With regard to athletic financial assistance, the regulations promulgated under Title IX provide that, when a college or university awards athletic scholarships, these scholarships awards must be granted to "members of each sex in proportion to the number of students of each sex participating in …intercollegiate athletics." 34 C.F.R 106.37(c)…

It is important to note that it is not enough for a college or university merely to assert a nondiscriminatory justification. Instead, it will be required to demonstrate that its asserted rationale is in fact reasonable and does not reflect underlying discrimination…

If any unexplained disparity in the scholarship budget for athletes of either gender is 1% or less for the entire budget for athletic

scholarships, there will be a strong presumption that such a disparity is reasonable and based on legitimate and nondiscriminatory factors. Conversely, there will be a strong presumption that an unexplained disparity of more than 1% is in violation of the "substantially proportionate" requirement.

Office for Civil Rights, U.S. DOE, *Dear Colleague Letter* at 2-4 (July 23, 1998).

123.   Because Title IX and its implementing Regulations are federal law, NCAA and conference rules cannot justify violations of them.

124.   The Title IX Regulations state: "The obligation to comply with this part is not obviated or alleviated by any rule or regulation of any organization …or association which would render any applicant or student ineligible to participate or limit the eligibility or participation of any applicant or student, on the basis of sex, in any education program or activity operated by a recipient and which receives Federal financial assistance." 34 C.F.R. 106.6 (c).

**SDSU's Violations of Title IX's**

**Equal Athletic Financial Aid Requirements**

125.   SDSU is a member of the NCAA, and it participates in Division I athletics, the highest level of intercollegiate competition. SDSU offers athletic financial aid to members of its varsity athletic teams.

126.   For the past several decades, SDSU has sponsored men's and women's varsity Division I intercollegiate athletic teams, segregated based on sex.

127.   SDSU fails to provide athletic financial aid to its female varsity student-athletes in proportion to their athletic participation rates and, accordingly, intentionally discriminates against female student-athletes in violation of Title IX.

128.  At all times relevant to this case, Defendants were and are responsible for ensuring that SDSU complied with Title IX and provided proportional athletic financial aid to its female student-athletes.

129.  For more than a decade, female varsity student-athletes at SDSU have been deprived of athletic financial aid in proportion to their participation in SDSU athletics, and the difference in the proportion has always been greater than 1%.

130.  The information summarized in the chart and paragraphs below was submitted by SDSU to the federal government under EADA and verified as accurate.

| Year | Female Student Athletes | Male Student Athletes | % of females | Female Aid Awarded | Male Aid Awarded | % of aid awarded to females | Amount of aid SDSU deprived female student athletes |
|------|------|------|------|------|------|------|------|
| 2010 | 269 | 222 | 54.79% | $2,776,419.00 | $2,708,301.00 | 50.62% | $228,447.97 |
| 2011 | 302 | 235 | 56.24% | $3,169,134.00 | $3,073,774.00 | 50.76% | $341,775.15 |
| 2012 | 312 | 231 | 57.46% | $3,586,299.00 | $3,181,040.00 | 52.99% | $302,116.78 |
| 2013 | 322 | 239 | 57.40% | $3,813,759.00 | $3,482,941.00 | 52.27% | $374,364.71 |
| 2014 | 310 | 236 | 56.78% | $3,943,771.00 | $3,685,045.00 | 51.70% | $387,608.05 |
| 2015 | 304 | 230 | 56.93% | $4,176,824.00 | $3,914,582.00 | 51.62% | $429,519.49 |
| 2016 | 315 | 226 | 58.23% | $4,426,056.00 | $4,155,385.00 | 51.58% | $570,531.64 |
| 2017 | 303 | 216 | 58.38% | $4,527,853.00 | $4,325,925.00 | 51.14% | $641,115.66 |
| 2018 | 316 | 221 | 58.85% | $4,580,663.00 | $4,604,510.00 | 49.87% | $824,392.25 |

131.  In 2019-20, SDSU's 315 female student-athletes equaled 58.12% of the total student-athletes. But female student-athletes were provided with only 50.57% of the $9,198,841 in athletic financial aid the school awarded that year, amounting to a loss of $694,267.88 in athletic financial aid for women.[1]

---

[1] Lost athletic financial aid is calculated by subtracting the aid SDSU actually awarded to female student-athletes in a given year from the athletic financial aid female student-athletes *would have been awarded* if SDSU had complied with Title IX by awarding such aid proportionally (i.e., if the percentage of athletic financial aid awarded to female student-athletes matched the percentage of female student-athletes participating in SDSU's varsity athletics program). For example, in 2019-20 the lost athletic financial aid would be ((0.5812 x $9,198,841) – $4,651,922) = $694,267.88 based on the information disclosed by SDSU to the DOE in its annual EADA report.

132.   In 2020-21, SDSU's 305 female student-athletes equaled 57.22% of the total student-athletes. But female student-athletes were provided with only 50.64% of the $8,679,501.00 in athletic financial aid the school awarded that year, amounting to a loss of $571,692.82 in athletic financial aid for women.

133.   Thus, in just the last two academic years, not including the current academic year, SDSU's female student-athletes have received over $1.2 million less in athletic financial aid—and its male varsity student-athletes have received over $1.2 million more—than they would have received if SDSU had granted such aid in proportion to the number of students of each sex participating in intercollegiate athletics.

134.   A similar or greater unequal and disproportionate allocation of athletic financial aid to varsity female student-athletes at SDSU is taking place in the 2021-22 academic year and will continue in the future if it is not stopped.

135.   Defendants have not asserted or attempted to demonstrate any justification for SDSU's failure to provide female student-athletes with equal athletic financial aid that does not reflect underlying discrimination—and Plaintiffs are not aware of any.

136.   For example, if more female student-athletes were in-state residents, more male student-athletes were non-residents, and SDSU spent at least as much money trying to recruit female student-athlete non-residents as male student-athlete non-residents (so the in-state/out-of-state difference was not attributable to sex discrimination in recruiting), that might arguably help explain the smaller and disproportionate grants of athletic financial aid to SDSU's female student-athletes.

137.   In fact, however, more male athletes at SDSU are in-state residents, more female student-athletes are non-residents, and SDSU spends far more money trying to recruit male student-athletes (approximately $1,702 per athlete in 2019-20) than it spends trying to recruit female student-athletes (approximately $593 per athlete in 2019-20).

## **CLASS ALLEGATIONS**

138.   Plaintiffs bring this action on behalf of themselves and a class and subclass of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3).

139.   Specifically, Plaintiffs seek to represent a class for damages under Rule 23(b)(3) defined as: all current and former female students who participated in intercollegiate varsity athletics at SDSU from the 2019-20 academic year to the present and did not receive all of the athletic financial aid they could have received.

140.   Plaintiffs also seek to certify a subclass for injunctive relief under Rule 23(b)(2) of all female students currently participating in intercollegiate athletics at SDSU who are not receiving all of the athletic financial aid they could receive.

141.   Plaintiffs reserve the right to revise or amend the above class and subclass definitions based on facts learned in discovery.

142.   All of the named Plaintiffs are members of the proposed class, at least four are members of the proposed subclass, and all have been and/or are being injured by Defendants' discrimination on the basis of sex in the distribution of athletic financial aid in SDSU's varsity athletic program.

143.   ***Numerosity.*** The proposed class and subclass meet the "numerosity" requirement of Fed. R. Civ. P. 23(a)(1) because over 300 female student-athletes participated in varsity athletics at SDSU annually in and since the 2019-20 academic year. Joinder of them all is impracticable.

144.   The proposed class also meets that requirement because joinder of all class members and all persons harmed by Defendants' past and still-ongoing sex discrimination in SDSU's varsity intercollegiate athletic program is impracticable.

145.   The proposed class is known to exist, but the number of female student-athletes in it will increase during this litigation because of the nature of college enrollment and athletic participation. The number of female student-athletes harmed

by Defendants' discrimination will grow as each outgoing class of students graduates and each incoming class of students starts attending SDSU.

146.   The exact number of female varsity student-athletes who have been, are being, and will be harmed by Defendants' conduct, while numerous, is unknown, making joinder impracticable for that reason, too.

147.   ***Commonality And Predominance.*** Plaintiffs satisfy the "commonality" requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3) because there are questions of law and fact in common to the proposed class and subclass that predominate over any questions affecting only individual members, making a class action superior to other available methods for fairly and efficiently adjudicating the controversy. These questions include whether Defendants have violated and are violating Title IX by failing to provide female varsity student-athletes at SDSU with proportional athletic financial aid, and, if so, what remedies the female varsity student-athletes are entitled to as a result.

148.   Because Title IX requires comparison of the sex-segregated men's and women's athletic programs, the Title IX issues in this action are inherently class-based.

149.   ***Typicality.*** Plaintiffs satisfy the "typicality" requirement of Federal Rule of Civil Procedure 23(a)(3) because their claims are typical of those of the proposed class. They all have been denied and/or are being denied proportional athletic financial aid at SDSU because of Defendants' ongoing sex discrimination. They all want to end SDSU's continuing violation of Title IX and recover appropriate remedies for themselves and the proposed class.

150.   In addition, Plaintiffs, like all members of the proposed class, have been, are being, or will be harmed by the ongoing sex discrimination in the distribution of athletic financial aid in SDSU's varsity athletics program.

151.   ***Adequacy.*** Plaintiffs are members of the proposed class and they will fairly and adequately represent the interests of the class as required by Rule 23(a)(4).

At least four Plaintiffs are members of the proposed subclass and they will fairly and adequately represent the interests of the subclass as required by Rule 23(a)(4). Plaintiffs intend to prosecute this action vigorously to secure fair and adequate monetary and equitable relief for the entire class and subclass. There is no conflict between Plaintiffs and class members.

152. Plaintiffs have retained counsel who have significant experience and success prosecuting Title IX class actions against universities and will adequately represent the class. Their counsel have devoted substantial time to identifying and investigating the potential claims in this action, have developed detailed knowledge of the facts and the applicable law, have no conflicts with Plaintiffs or the putative class, and have sufficient resources to commit to representing the putative class.

153. ***Rule 23(b)(3) Certification: Superiority.*** Plaintiffs satisfy the requirement for certification of their claims for damages under Rule 23(b)(3) because class certification would be superior to other available methods for the fair and efficient adjudication of this controversy. Here, it would be impractical and economically infeasible for class members to seek redress individually. Proof and resolution of their claims require class-wide evidence and findings. No litigation concerning this controversy has already begun by other class members and litigation of these claims in this forum is desirable.

154. ***Rule 23(b)(2) Certification: Defendants' Common Conduct.*** Plaintiffs satisfy the requirement for certification of their claims for equitable relief under Rule 23(b)(2) in that the Defendants are acting or refusing to act on grounds that apply generally to the class—by denying female student-athletes at SDSU proportional athletic financial aid—so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

155. Plaintiffs are seeking equitable relief under Rule 23(b)(2) because they have no adequate remedy at law to prevent Defendants from violating Title IX in the

1  future by depriving SDSU's female varsity student-athletes of equal athletic financial
2  aid.

### COUNT I

### Title IX

### Unequal Allocation of Athletic Financial Aid

156.   Plaintiffs bring this claim on behalf of the class and subclass defined above.

157.   SDSU provides athletic financial aid to some of its male and female varsity student-athletes.

158.   Under Title IX and 34 C.F.R. § 106.37, as interpreted by OCR, SDSU must provide athletic financial aid to its female and male student-athletes in proportion to the number of students of each sex participating in intercollegiate athletics.

159.   Defendants have not provided and do not provide athletic financial aid to SDSU's female and male student-athletes in proportion to the number of students of each sex participating in intercollegiate athletics.

160.   Defendants have provided and continue to provide SDSU's female varsity student-athletes much less—and its male varsity student-athletes much more—athletic financial aid than they would have received if SDSU had granted such aid in proportion to the number of students of each sex participating in intercollegiate athletics.

161.   Defendants' failure to provide SDSU's female student-athletes with athletic financial aid in proportion to the number of female student-athletes participating in intercollegiate athletics constitutes sex discrimination in violation of Title IX and 34 C.F.R. § 106.37.

162.   Individuals harmed by violations of Title IX may seek and recover monetary damages, injunctive relief to prevent continuing discrimination, and declaratory relief.

163.   Plaintiffs and the class members have been and are harmed by Defendants' failure to provide SDSU's female student-athletes with athletic financial aid in proportion to the number of female student-athletes participating in intercollegiate athletics. Such harm includes, but is not limited to, lost athletic financial aid and being subjected to sex discrimination. Accordingly, they are entitled to the relief requested herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

A.   Certify this case as a class action for damages under Rule 23(b)(3) on behalf of all current and former female students who participated in intercollegiate varsity athletics at SDSU in or since the 2019-20 academic year and did not receive all of the athletic financial aid they could have received, certify a subclass for equitable relief under Rule 23(b)(2) of all female students currently participating in in intercollegiate athletics at SDSU who are not receiving all of the athletic financial aid they could receive, appoint Plaintiffs as class representatives, and appoint Plaintiffs' counsel as class counsel;

B.   Enter an order declaring that Defendants have engaged in a past and continuing pattern and practice of discrimination against female students on the basis of sex in the distribution of athletic financial aid in SDSU's varsity intercollegiate athletics program, in violation of Title IX and the Regulations promulgated thereunder;

C.   Issue a permanent injunction barring Defendants from discriminating against female students in the distribution of athletic financial aid in on the basis of sex in SDSU's varsity intercollegiate athletics program;

D.   Award Plaintiffs compensatory damages and other monetary relief as permitted by law;

E.   Maintain jurisdiction over this action to monitor Defendants' compliance with this Court's orders;

F.      Award Plaintiffs their reasonable attorneys' fees and expenses; and

G.      Order such other and further relief as the Court deems appropriate.

Dated: February 7, 2022              Respectfully submitted,

/s/ Gayle M. Blatt
Gayle M. Blatt (SBN 122048)
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
E-mail: gmb@cglaw.com

Arthur H. Bryant (SBN 208365)
**BAILEY & GLASSER, LLP**
1999 Harrison Street, Suite 660
Oakland, CA 94612
Tel.: (510) 272-8000
E-mail: abryant@baileyglasser.com

Lori Bullock (to be admitted *pro hac vice*)
**BAILEY & GLASSER LLP**
P.O. Box 197
Ankeny, IA 50023
Tel.: 515.416.9051
E-mail: lbullock@baileyglasser.com

Cary Joshi (to be admitted *pro hac vice*)
Joshua I. Hammack (to be admitted *pro hac vice*)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
E-mail: cjoshi@baileyglasser.com
E-mail: jhammack@baileyglasser.com

CLASS ACTION COMPLAINT

Amber Eck (SBN 177882)
Jenna Rangel (SBN 272735)
**HAEGGQUIST & ECK, LLP**
225 Broadway, Ste 2050
San Diego, CA 92101
Tel: (619) 342-8000
E-mail: ambere@haelaw.com
E-mail: jennar@haelaw.com

*ATTORNEYS FOR PLAINTIFFS*

CLASS ACTION COMPLAINT