1  Scott R. Eldridge (Michigan Bar No. P66452)
   Brian M. Schwartz (Michigan Bar No. P69018)
2  Erika L. Giroux (Michigan Bar No. P81998)
   Ashley N. Higginson (Michigan Bar No. P83992)
3  MILLER, CANFIELD, PADDOCK AND
   STONE, P.L.C.
4  150 West Jefferson, Suite 2500
   Detroit, Michigan 48226
5  Tel: (313) 963-6420
6  eldridge@millercanfield.com
   schwartzb@millercanfield.com
7  giroux@millercanfield.com
   higginson@millercanfield.com
8  Attorneys for Defendants

   ROB BONTA
   Attorney General of California
   JENNIFER L. SANTA MARIA, SBN
   225875
   Deputy Attorney General
     600 West Broadway, Suite 1800
     San Diego, CA 92101
     P.O. Box 85266
     San Diego, CA 92186-5266
     Telephone:  (619) 738-9099
     Fax:  (619) 645-2012
     E-mail:
     Jennifer.SantaMaria@doj.ca.gov
   Attorneys for Defendants

9

## UNITED STATES DISTRICT COURT
10
## SOUTHERN DISTRICT OF CALIFORNIA

11

12  MADISON FISK, RAQUEL CASTRO, GRETA VISS, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER,

13  CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI,

14  OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN,

15  ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf

16  of all those similarly situated,

17          Plaintiffs,

18

19          v.

20  BOARD OF TRUSTEES OF CALIFORNIA THE STATE UNIVERSITY, and SAN

21  DIEGO STATE UNIVERSITY

22          Defendants.

Case No. 3:22-cv-00173-TWR-MSB

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Date:  Thursday, June 16, 2022
Time: 1:30pm
Courtroom:  3A
Judge: Hon. Todd W. Robinson
Magistrate: Hon. Michael S. Berg

23

24

25

26

27

28

- 1 -

# TABLE OF CONTENTS

**Page**

I.    Introduction .................................................................................................- 6 -

II.   Statement of Relevant Facts .......................................................................- 6 -

    A.   Procedural History ............................................................................- 6 -

    B.   Background Facts Regarding the Named Plaintiffs ...........................- 7 -

    C.   Background Facts Regarding SDSU's Allocation of Financial Assistance ........- 7 -

III.  Argument ....................................................................................................- 9 -

    A.   Standard of Review ...........................................................................- 9 -

        1.   Rule 12(b)(1) ..........................................................................- 9 -

        2.   Rule 12(b)(6) ..........................................................................- 9 -

    B.   Plaintiffs Lack Standing to Pursue Claims for Unequal Financial Assistance..- 11 -

        1.   Plaintiffs Have No Right to a Scholarship ...........................- 11 -

        2.   Plaintiffs' Claims Are Limited to the 2020-21 School Year and Forward ........- 13 -

    C.   Plaintiffs Do Not Plausibly Plead Title IX Claims for Unequal Financial Assistance........- 14 -

        1.   Cost of Tuition Differential Between In-State and Out-of-State Tuition ........- 16 -

        2.   SDSU's Successful Efforts to Comply with Title IX's Participation Requirements Coupled with Restrictions on the Number of Allocable Scholarships ........- 16 -

        3.   Reliance on EADA Data Yields Significantly Inflated and Flawed Calculations ........- 19 -

    D.   Plaintiffs Are Not Entitled to Money Damages ...............................- 21 -

IV.   Conclusion ................................................................................................- 22 -

1
2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

*Alexander v. Sandoval*,
    523 U.S. 275 (2001) .................................................................................................. 21

6
7

*Anders v. California State Univ., Fresno*,
    2021 WL 1564448 (E.D. Cal. Apr. 21, 2021) .................................... 8, 12, 19, 22

8
9

*Anders v. California State Univ., Fresno*,
    2021 WL 3115867 (E.D. Cal. July 22, 2021) ............................................... 12

10

*Anders v. California State Univ., Fresno*,
    2021 WL 5040405 (E.D. Cal. Oct. 29, 2021) ............................................ 19, 20

11
12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................... *passim*

13

*Balow v. Michigan State Univ.*,
    2021 WL 4316771 (W.D. Mich. Sept. 22, 2021) .................................... 12, 13, 20

14
15

*Beasley v. Alabama State Univ.*,
    966 F. Supp. 1117 (M.D. Ala. 1997) ............................................... 12, 22

16
17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................. 9, 10

18
19

*Biediger v. Quinnipiac Univ.*,
    728 F. Supp. 2d 62 (D. Conn. 2010), *aff'd*, 691 F.3d 85 (2d Cir. 2012) ................................. 8

20

*Biediger v. Quinnipiac Univ.*,
    928 F. Supp. 2d 414 (D. Conn. 2013) .................................................. 20

21
22

*Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*,
    727 F.3d 917 (9th Cir. 2013) .............................................................. 10

23

*Cannon v. Univ. of Chicago*,
    441 U.S. 677 (1979) ....................................................................... 19, 21

24
25

*Center for Bio-Ethical Reform v. Napolitano*,
    648 F.3d 365 (6th Cir. 2011) ................................................................ 11

26
27

*In re Century Aluminum Co. Sec. Litig.*,
    729 F.3d 1104 (9th Cir. 2013) .................................................. 10, 17, 20

28

- 3 -

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014)................................................................ 20

*Gonyo v. Drake Univ.*,
   879 F. Supp. 1000 (S.D. Iowa 1995)..................................................... 17

*Gonzalez v. Planned Parenthood of Los Angeles*,
   759 F.3d 1112 (9th Cir. 2014).............................................................. 20

*Gregg v. Hawaii, Dep't of Pub. Safety*,
   870 F.3d 883 (9th Cir. 2017)................................................................ 14

*Kingman Reef Atoll Invs., L.L.C. v. United States*,
   541 F.3d 1189 (9th Cir. 2008)................................................................ 9

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014).............................................................. 10

*Lewis v. Casey*,
   518 U.S. 343 (1996)............................................................................. 11

*Lukovsky v. City & Cty. of San Francisco*,
   535 F.3d 1044 (9th Cir. 2008).............................................................. 14

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011)................................................................ 9

*Ollier v. Sweetwater Union High Sch. Dist.*,
   858 F. Supp. 2d 1093 (S.D. Cal. 2012)................................................ 21

*Portz v. St. Cloud State Univ.*,
   401 F. Supp. 3d 834 (D. Minn. 2019), *aff'd in part, vacated in part, rev'd in
   part*, 16 F.4th 577 (8th Cir. 2021)....................................................... 21

*Spokeo v. Robbins*,
   136 S. Ct. 1540 (2016)........................................................................ 11

*Stanley v. Trustees of Cal. State Univ.*,
   433 F.3d 1129 (9th Cir. 2006).............................................................. 13

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003)................................................................ 12

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021).............................................................. 10

**Statutes**

20 U.S.C. § 1092(g) ...................................................................... 8, 19

- 4 -

Equity in Athletics Disclosure Act ................................................................. 8

**Court Rules**

Fed. R. Civ. P. 8(a) ....................................................................................... 9

Rule 12(b)(1) ................................................................................................ 9

Rule 12(b)(6) ................................................................................................ 9

**Other Authorities**

34 C.F.R. § 106.37 ............................................................................... 15, 17

34 C.F.R. § 106.41(c)(1) ............................................................................ 16

https://web3.ncaa.org/lsdbi/reports/getReport/90008 ............................... 12

Mem. in Support of Motion to Dismiss Plaintiffs' Complaint
(3:22-cv-00173-TWR-MSB)

# I.     Introduction

Plaintiffs, eleven former women's rowing and six current track and field team members, bring a single-count lawsuit against Defendant Board of Trustees of the California State University which is the State of California acting in its higher education capacity (erroneously also sued as "San Diego State University") (together "SDSU") alleging that SDSU has not allocated athletic financial aid to females and males equitably, in violation of Title IX.  Plaintiffs fail to plead any concrete or particularized injury-in-fact and therefore lack standing to pursue this claim.  Moreover, Plaintiffs fail to include any plausible allegations that SDSU's allocation of financial assistance runs afoul of Title IX or is intentionally discriminatory.  Instead, Plaintiffs baldly speculate that, based on unexplained financial aid figures, and even though SDSU already gave athletic scholarship grants to nearly all of them, they should have received more and thereby, somehow, they each have been harmed.

Plaintiffs believe they each should have received more athletic scholarship aid, even though the law does not provide any specific student-athlete a right to a scholarship.  Nor do they identify how much scholarship money they each should have received, or otherwise causally link it to any personal damages or alleged discriminatory conduct by SDSU. Because Plaintiffs fail to offer anything more than speculation, they have not set forth a plausible claim for unequal financial assistance under Title IX.

No case in 50 years of Title IX jurisprudence has recognized Plaintiffs' alleged cause of action, much less on such specious allegations.  To the contrary, two district courts have rejected similar theories within the last calendar year. The Complaint should be dismissed with prejudice.

# II.     Statement of Relevant Facts

## A.     Procedural History

On November 20, 2020, SDSU announced that it would no longer sponsor women's rowing, effective at the end of the 2020-2021 academic year. (Compl., ¶13, ECF No. 1).  SDSU agreed to honor all athletic scholarships in place as of the announcement through the date of each student's graduation. (*Id.*)  On February 7, 2022, Plaintiffs filed a class action complaint alleging that SDSU violated Title IX regarding the allocation of athletic financial assistance during the 2019-20 and

2020-21 academic years. Although the current lawsuit is motivated by SDSU's elimination of the rowing team, Plaintiffs do not challenge the elimination of the women's rowing program because SDSU was and remains compliant with Title IX's requirements concerning opportunities for participation in athletics.

## B. Background Facts Regarding the Named Plaintiffs

Plaintiffs are all current or former varsity student-athletes at SDSU. Plaintiffs Fisk (senior), Dietz (senior), Bauer (senior), Castro (junior), Botterill (junior), Sule (junior), Petrine (sophomore), Davies (sophomore), and Whitworth (graduated) are former members of the women's rowing team and each was awarded by their coach a partial athletic scholarship. (*Id.* ¶¶27, 30, 32, 35, 45, 51, 54, 56, 59, 86, 89, 98, 102, 106). Plaintiffs Heri (fifth-year senior), Clark (senior), Grotegeer (senior), Absten (senior), and Watt (junior) are current members of the women's track and field team, and Plaintiff Brosch graduated and is a former track and field athlete; each of them was awarded by their coach a partial athletic scholarship. (*Id.* ¶¶49, 61, 64, 74, 79, 84, 94). Plaintiff Figueroa (junior) is a former member of the women's rowing team whose coach did not award her a scholarship. (*Id.* ¶69). Plaintiff Viss is a graduate student whose coach awarded her a partial athletic scholarship as a water polo player, before walking on to the women's rowing team, where she did not receive any additional scholarship. (*Id.* ¶¶37, 38, 40).

## C. Background Facts Regarding SDSU's Allocation of Financial Assistance

The Complaint contains very few factual allegations about SDSU's supposed violation of Title IX regarding its allocation of athletically-related financial assistance. First, Plaintiffs generally point to events from the past decade which fall outside the applicable two-year statute of limitations period and do not establish a timely Title IX violation. (*Id.* ¶¶5, 130).

Next, Plaintiffs allege in conclusory fashion that in the 2019-2020 academic year "SDSU granted its 315 female varsity athletes over $690,000 less – and its male varsity student-athletes over $690,000 more – in athletic financial aid" than they should have received, and that in 2020-2021, SDSU's female athletes were granted $570,000 less than they should have been granted. (*Id.* ¶¶7-8). Plaintiffs allege this disproportional allocation of financial aid continues to date, without any factual support. (*Id.* ¶9). Indeed, since athletic scholarships can be awarded during the course

of an academic year retroactively, any allegations regarding the current academic year are based on speculation, not fact. (Ex. 1, NCAA Bylaws, 15.3.1.3).  Plaintiffs do not identify the source of their underlying financial aid data.  Further, they calculate the number of athletic participants for 2019-20 and 2020-21 based on inapposite data submitted pursuant to the Equity in Athletics Disclosure Act ("EADA"), 20 U.S.C. § 1092(g).  (*Id.* ¶¶7-8).[1]

Based on these few allegations, Plaintiffs make the conclusory determination that SDSU "do[es] not provide athletic financial aid to SDSU's female and male student-athletes in proportion to the number of students of each sex participating in intercollegiate athletics," and thus this mathematical failure to provide proportional aid "constitutes sex discrimination". (*Id.* ¶¶159, 161). In short, Plaintiffs assert that in 2019-2020 and 2020-2021 SDSU's female student-athletes as a whole should have received more athletic financial aid, (*id.*, ¶¶131-132), while ignoring their own allegation that, instead, male student-athletes could have received less.  (*Id.* ¶¶7-8).  Aside from identifying a numerical differential, Plaintiffs do not include any facts that would demonstrate that there is a disparity in financial assistance that is the result of *intentional* gender discrimination under Title IX during the applicable limitations period, *i.e.*, after August 19, 2019, or that any particular Plaintiff could or should have received more grant money.

No Plaintiff alleges that she suffered an individualized injury-in-fact, and thus none have Article III standing.  Plaintiffs collectively state they were harmed because "[n]one of the Plaintiffs received all of the athletic financial aid for which they were eligible at SDSU," and therefore "[i]f SDSU had complied with Title IX and granted athletic financial aid to its female varsity student-athletes proportional to the athletic financial aid it granted to SDSU's male varsity student-athletes,

---

[1] "The EADA is a law separate from Title IX that requires an educational institution receiving federal funding and participating in intercollegiate athletics to report [different] athletic participation data for men and women to the Department of Education." *Biediger v. Quinnipiac Univ.*, 728 F. Supp. 2d 62, 79 n.18 (D. Conn. 2010), *aff'd*, 691 F.3d 85 (2d Cir. 2012) (citing 20 U.S.C. §1092(g)). "There is no dispute in this action that EADA participant counting methodology differs from Title IX counting methodology." *Anders v. California State Univ., Fresno*, 2021 WL 1564448, at *9 (E.D. Cal. Apr. 21, 2021).  In other words, Title IX compliance is not dependent on EADA data, and the Department of Education's Office for Civil Rights ("OCR") does not rely on it for enforcement.  Consequently, Plaintiffs' allegations and conclusions based on EADA reports that are inconsistent with Title IX are insufficient.

each of the Plaintiffs would have received more athletic financial aid than she did." (*Id.*, ¶¶23, 25). But they provide no facts to demonstrate that any Plaintiff would have been entitled to additional athletically-related financial aid but for an alleged Title IX violation.

**III.   Argument**

**A.   Standard of Review**

    **1.   Rule 12(b)(1)**

A court should dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing when a plaintiff does not establish an injury-in-fact. *Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011). "[W]hen subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

    **2.   Rule 12(b)(6)**

SDSU's motion tests whether Plaintiffs have stated claims upon which relief can be granted and whether, under Fed. R. Civ. P. 8(a), they have made the requisite "showing that [they are] entitled to relief." Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to survive a motion to dismiss, Plaintiffs must assert sufficient factual allegations to establish that their claims are "plausible on [their] face," *i.e.*, there must be more than the mere possibility that SDSU acted unlawfully. *Id.* at 556; *see also id.* at 555 ("A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Although courts generally accept as true the complaint allegations, this rule is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, courts first disregard all conclusory statements and allegations in the complaint. This is because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Thus, conclusory allegations based upon "information and belief" "are insufficient to state a claim." *Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 927 (9th Cir. 2013).

Courts then review the remaining allegations to determine whether they "plausibly" entitle the plaintiff to relief.  For a claim to be "plausible," it is insufficient that the facts alleged are "'consistent with' a defendant's liability" or that a violation is "conceivable."  *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 567).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Interpreting *Iqbal* and *Twombly*, the Ninth Circuit employs a two-step approach:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Levitt v. Yelp! Inc.,* 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).

Additionally, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible."  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (internal citations omitted).

"Taken together, *Iqbal* and *Twombly* require well-pleaded facts, not legal conclusions." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (citations omitted).  And, civil rights litigants are not entitled to a more lenient pleading standard.  *Id.* at 1177.  Additionally, "the Supreme Court has been clear that discovery cannot cure a facially insufficient pleading."  *Id.* at 1177.  Accordingly, as here, a complaint that does not provide the "when, where, in what or by whom" to support conclusory allegations fails to state a claim.  *Center for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011).

**B.    Plaintiffs Lack Standing to Pursue Claims for Unequal Financial Assistance**

A threshold problem with Plaintiffs' Complaint is their lack of standing.  To satisfy Article III's standing requirements, Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo v. Robbins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  To establish an "injury-in-fact," a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548.

Further, *each* named Plaintiff must plead a concrete injury to bring an actionable financial aid claim.  As the Supreme Court has explained, "[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks omitted).  Thus, insofar as Plaintiffs attempt to rely on alleged harms experienced by the class as a whole, or by *other* female-athletes, this tactic fails.

Plaintiffs' uniform allegation that they would have been granted more financial aid "[i]f SDSU had complied with Title IX," is speculative and conclusory. (Compl. ¶ 25).  Each Plaintiff fails to identify any "concrete and particularized harm" that she has personally suffered.  Instead, the hypothetical or conjectural harm put forward is precisely the kind of allegations that *Spokeo* held should be rejected. 136 S. Ct. at 1548.  Thus, for these reasons and as set forth below, this Court lacks subject matter jurisdiction over Plaintiffs' claims.

**1.    Plaintiffs Have No Right to a Scholarship**

To the extent Plaintiffs allege their particularized injury to be a failure to receive any scholarship, or a larger scholarship, such an argument is unavailing.  No particular student-athlete has a protected interest in, or individualized right to, an athletic scholarship under Title IX.  *Beasley v. Alabama State Univ.,* 966 F. Supp. 1117, 1126 (M.D. Ala. 1997) ("Title IX directly affords … no individual right to a scholarship," and plaintiff "**has no generalized right to see that [an**

**educational institution] follows the law**.") (emphasis added); Ex. 1, NCAA Bylaws 15.3.7.2 (educational institutions have the right to annually reduce, cancel, or non-renew an athletic scholarship on or before July 1 prior to the next academic year.).[2]  Here, standing hinges on **both** "an overall disproportionate provision of support funds to athletes of each gender" (which Plaintiffs have not adequately alleged) but also on whether Plaintiffs "can show a relationship of causation" between an alleged funding disparity and the lack—or diminution—of **her particular scholarship award**. *Beasley,* 966 F. Supp. at 1126.

Plaintiffs have not alleged any facts to support a causal connection between the "generalized" funding disparity alleged and their individual scholarship awards. *See Anders v. California State Univ., Fresno,* 2021 WL 3115867, at *17–18 (E.D. Cal. July 22, 2021) (financial aid claim dismissed for lack of standing).

In *Anders,* the Eastern District of California recently examined virtually the same issue presented here and held:

> Even assuming Plaintiffs had adequately alleged an actionable sex-based imbalance in scholarship funding, the Court could not infer from these allegations which Plaintiffs, if any, were deprived of a scholarship—or which Plaintiffs, if any, received a diminished scholarship—as a result of such a Title IX violation. Indeed, without context, **the fact that four of six Plaintiffs received a scholarship of some sort appears to cut against inferring a dearth of scholarship funding for women's [athletics], and the [complaint] does not allege that any of the Plaintiffs was improperly deprived of scholarship funding**.

*Id.* at *18 (emphasis added).

The Western District of Michigan reached the same result in *Balow v. Michigan State Univ.,* 2021 WL 4316771 (W.D. Mich. Sept. 22, 2021).  There, as here, the plaintiffs alleged that MSU "fail[ed] to provide female student athletes with an equal allocation of financial assistance," citing an overall disparity allegedly derived from EADA data, to which the plaintiffs claimed they were "entitled."  *Id.* at *6.  The district court held they lacked standing because they "fail[ed] to satisfy

---

[2] The NCAA Division 1 Manual sets forth all NCAA Bylaws, *available at* https://web3.ncaa.org/lsdbi/reports/getReport/90008.   Relevant excerpts are attached to this memorandum.  Plaintiffs refer to the NCAA Bylaws in their Complaint and they are therefore appropriately referred to on a motion to dismiss.  (Compl., ¶123); *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003) (on a motion to dismiss, a court may consider documents incorporated by reference in the complaint or matters of judicial notice).

the injury requirement." *Id.* at \*7.  While the plaintiffs identified the percentage scholarship they received, this was insufficient because they "[did] not contend, for instance, that they were denied scholarships given to men or that they received smaller scholarships or less financial assistance than their male counterparts." *Id.*  "Their assertion of personal injury," the court noted, "is conclusory." *Id.*

Similarly here, that nearly all Plaintiffs "received a scholarship of some sort" undermines Plaintiffs' standing arguments because there is no Title IX right to a scholarship, let alone a certain level of scholarship.  Moreover, Plaintiffs do not (and cannot) allege any facts showing that ***their*** partial scholarships would have been higher if more financial assistance was provided to female student-athletes.  Simply listing the amount of financial aid received and inserting the identical conclusory statement that each named Plaintiff "was harmed" is insufficient.  (Compl., ¶¶ 31, 36, 41, 46, 50, 55, 60 65, 70, 75, 80, 85, 90, 95, 99, 103, 107). Additionally, there are no plausible allegations that Viss (who walked on to the team after changing sports at SDSU) or Figueroa— each of whom never received a rowing scholarship—would have been "entitled" to be selected by the rowing coach to receive a scholarship but for any alleged discrimination.  Thus, Plaintiffs have not pled a factual basis on which this Court could infer that any female student-athlete suffered individual and actual harm from a purported gender-based financial aid disparity.

Overall, without showing individual and particularized harm or any causation between SDSU's alleged inequitable financial aid and their own specific financial aid awards, Plaintiffs lack standing and this Court lacks jurisdiction over their claims.

**2.**      **Plaintiffs' Claims Are Limited to the 2020-21 School Year and Forward**

To the extent that Plaintiffs' allegations implicate scholarship decisions made prior to August 19, 2019 (two years before the parties entered into a tolling agreement), those circumstances fall outside the two-year statute of limitations and cannot confer standing.  *See Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006). This includes any claims based on Plaintiffs' general allegations concerning events over the past decade, but also bars Plaintiffs' claims concerning the 2019-20 school year.

Mem. in Support of Motion to Dismiss Plaintiffs' Complaint
(3:22-cv-00173-TWR-MSB)

"The general common law principle is that a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action and the cause of that injury." *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017).  Knowledge of the "injury," the Ninth Circuit has explained, means knowledge of the "actual injury," not when the plaintiff "suspects a legal wrong."  *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1049–51 (9th Cir. 2008).  The court has often reiterated that a plaintiff does not need to know that she possesses a legal cause of action, she must simply be aware of the actual injury and its cause. *See id.*  Athletic financial decisions are typically determined prior to the start of classes and/or practice in any academic year.  (Ex. 1, NCAA Bylaw 15.02.8).  Any renewal of athletic financial aid must be offered, at the latest, by July 1 prior to the academic year in which it is to be effective. (*Id.*, 15.3.7.1).  Thus, all of the Plaintiffs knew their 2019-20 scholarship grant amounts prior to July 1, 2019 – their alleged claims accrued outside of the applicable limitations period, even if such amounts were somehow discriminatorily insufficient as speculatively asserted in the lawsuit.  Those 2019-20 claims are barred in their entirety.

**C.   Plaintiffs Do Not Plausibly Plead Title IX Claims for Unequal Financial Assistance**

Even if Plaintiffs were each able to establish standing, their Complaint fails to plead a plausible Title IX violation with respect to financial assistance under *Iqbal*. Plaintiffs' Complaint simply asserts that Title IX regulations require that athletic scholarships be proportionate to the percentage of athletes of each gender, offers a conclusory allegation that Defendants "do not provide athletic financial aid to SDSU's female and male student-athletes in proportion to the number of students of each sex participating in intercollegiate athletics," and thus baldly concludes this failure to provide proportional aid "constitutes sex discrimination." (Compl., ¶¶159, 161). Otherwise, Plaintiffs assert that in 2019-2020 and 2020-2021, SDSU's female student-athletes should have received more in scholarships than they did. (*Id.*, ¶¶131-132).

Regarding allocation of financial assistance (scholarships), under the Department of Education's Office for Civil Rights ("OCR") Title IX regulations, a university "must provide reasonable opportunities for such awards for members of each sex in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics." 34 C.F.R.

§106.37(c)(1).  Plaintiffs correctly cite to this regulation and the correct OCR Policy Interpretation, but ignore the critical language of that Interpretation. (Compl., ¶¶120-121).  Under the Policy Interpretation, OCR "measure[s] compliance with this standard by dividing the amounts of aid available for the members of each sex by the numbers of male or female participants in the athletic program and comparing the results." (Ex. 2, Policy Interpretation).[3]  According to OCR, "the total amount of scholarship aid made available to men and women must be substantially proportionate to their participation rates."  (*Id.*)  A university is Title IX-compliant if it provides scholarships "in substantially equal amounts **or if a resulting disparity can be explained by adjustments to take into account legitimate, nondiscriminatory factors**." (*Id.* at VII.A.2. (emphasis added)).  The Policy Interpretation then proceeds to provide two examples of non-discriminatory factors. (*Id.*)  It does not, however, limit the analysis to the two factors provided.  (*See id.*)

In later guidance, OCR confirmed that it "judges each matter on a case-by-case basis with due regard for the unique factual situation presented by each case."  (Ex. 3, Dear Colleague Letter, p. 4).[4]  OCR further instructed that "disparities **may be explained by actions taken to promote athletic program development**, and by differences between in-state and out-of-state tuition at public colleges," among other legitimate, nondiscriminatory justifications. (*See id.* (emphasis added)).  In evaluating each program "on a case-by-case basis, OCR's **first step** will be to adjust any disparity to take into account all the legitimate nondiscriminatory reasons provided by the college, such as the extra costs for out-of-state tuition[.]"  (*Id.* (emphasis added)).  After adjusting for those nondiscriminatory reasons, if any "unexplained disparity" is 1% or less, "there will be a strong presumption that such a disparity is reasonable and based on legitimate and nondiscriminatory factors."  (*See id*.)  Plaintiffs ignore various nondiscriminatory factors that are apparent based on the allegations of the Complaint, including: (1) the difference in cost between in-state and out-of-state tuition; (2) SDSU's efforts to comply with Title IX's participation

---

[3] (Ex. 2, Dec. 11, 1979, A Policy Interpretation: Title IX and Intercollegiate Athletics, *available at* https://www2.ed.gov/about/offices/list/ocr/docs/t9interp.html).

[4] (Ex. 3, July 23, 1998, Dear Colleague Letter: Bowling Green State University, *available at* https://www2.ed.gov/about/offices/list/ocr/docs/bowlgrn.html).

Mem. in Support of Motion to Dismiss Plaintiffs' Complaint
(3:22-cv-00173-TWR-MSB)

requirements coupled with the impact of NCAA Bylaws that restrict the number of scholarships that can be provided; and (3) the skewed results produced by relying on EADA data.

### 1. Cost of Tuition Differential Between In-State and Out-of-State Tuition

OCR's Policy Interpretation expressly provides that one nondiscriminatory justification for an aggregate financial aid disparity is if the differential is due to the effect of the higher costs of tuition for out-of-state students. (Ex. 2, Policy Interpretation VII.A.2.a. ("At public institutions, the higher costs of tuition for students from out-of-state may in some years be unevenly distributed between men's and women's programs. These differences will be considered nondiscriminatory if they are not the result of policies or practices which disproportionately limit the availability of out-of-state scholarships to either men or women.")  Here, Plaintiffs admit that SDSU's average tuition rate for in-state students is $28,142 per year and out-of-state tuition is approximately $39,230, figures that can swiftly alter the dollar-amount of funding provided in total. (Compl., ¶¶21-22). Yet, they fail to account for this in their Complaint, thereby demonstrating that while their claim might be "conceivable" it is not necessarily "plausible." *Iqbal*, 556 U.S. at 683.

### 2. SDSU's Successful Efforts to Comply with Title IX's Participation Requirements Coupled with Restrictions on the Number of Allocable Scholarships

As another example, OCR has expressly confirmed that "[d]isparities might also be explained . . . by legitimate efforts undertaken to comply with Title IX requirements, such as participation requirements."  (Ex. 3, Dear Colleague Letter, p. 4 (citing *Gonyo v. Drake Univ.*, 879 F. Supp. 1000, 1005-06 (S.D. Iowa 1995)).  The case cited by OCR for support, *Gonyo v. Drake University*, involved a lawsuit by former members of a male wrestling team who alleged that Drake University violated Title IX because, among other things, the men were receiving only 47% of the scholarships even though 75.3% of the student-athletes were male. *Id.* at 1004.  The district court addressed the interplay between the Title IX regulations governing participation, 34 C.F.R. § 106.41(c)(1), which requires that schools provide participation opportunities to male and female students in numbers substantially proportionate to their respective undergraduate enrollments, and the Title IX regulations governing financial aid, 34 C.F.R. § 106.37, which as noted above relates

to proportionality between scholarship amounts and a different student-athlete count.  Carefully considering the purposes of Title IX, the court held that Title IX's "paramount goal" was "equal opportunity to participate" and that while "[s]cholarships may be a significant aspect of this opportunity, and an important tool in creating opportunity, … they remain only a part of the larger picture, logically subordinate to the overarching goal."  879 F. Supp. at 1005.  Accordingly, the court concluded that "the 'safe harbor' of proportional participation extends beyond the question of compliance under section 106.41."  *Id.* at 1005.  In other words, a school that complies with Title IX's requirements regarding the allocation of participation opportunities is entitled to the "safe harbor" that precludes a finding of a Title IX athletics financial aid violation.  *Id.*  Here, Plaintiffs do not challenge the allocation of participation opportunities and consequently their Complaint does not contain any facts "tending to exclude the possibility that the alternative explanation" – SDSU's compliance with Title IX participation requirements – is true, thereby rendering Plaintiffs' claims implausible.  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d at 1108.  To the contrary, Plaintiffs admit that SDSU has consistently had more female than male athletic participants over the last decade. (Compl., ¶130-132).

Further, the NCAA restricts the number of scholarships SDSU can award in each sport.  In other words, SDSU's compliance with Title IX's participation requirements, as implicitly pled by Plaintiffs in their Complaint, ultimately provides it with a legitimate nondiscriminatory reason that, at the "first step," must be accounted for before determining whether there is a violation.  This is because schools do not have *carte blanche* discretion to award an unlimited amount of athletic scholarships.  Instead, NCAA Bylaws—pursuant to which any athletically-related financial aid is awarded to a given student—set maximum limitations on the number of scholarships that can be allocated and utilized by each athletic team. Some sports are "headcount" sports, where NCAA Bylaws limit the total number of student-athletes receiving a scholarship from a given team.[5] (Ex. 1, NCAA Bylaws 15.5.2, 15.5.4, 15.5.5).  For these "headcount" sports, each student receiving a scholarship is counted towards the maximum number of scholarships set for that sport. (*Id.*) The

---

[5] These sports are: football, men's and women's basketball, women's gymnastics, women's tennis, and women's volleyball.  (Ex. 1, NCAA Rule 15.5.2).

remaining sports are "equivalency" sports, where NCAA Bylaws place "a limit on the value (equivalency) of financial aid awards … that an institution may provide in any academic year." (*Id.*, 15.5.3.1.1, 15.5.3.1.2, 15.5.3, 15.5.7, 15.5.8). For these "equivalency" sports, scholarships can be divided amongst members of the team.  In other words, NCAA scholarship limitations do not require that each student participating in an "equivalency" sport receive a full scholarship, as teams may award fractional scholarships, so long as the total fractional awards do not exceed the total limit for the sport in question. (*Id.*, 15.5.3.2(c)).

If an institution violates the NCAA's rules, it is subject to penalties, including scholarship reductions and loss of participation eligibility for any over-awarded student-athlete.  (*Id.*, 2.8.3; *see also id.,* Figure 19-1 ("For cases in which financial aid overages have occurred, a minimum 2-for-1 reduction in financial aid awards shall apply up to at least 20% of the team financial aid limit.")).  Thus, there is a maximum amount of overall financial aid that can be provided to female student-athletes at SDSU regardless of the number of participants.  And if a school goes beyond those limits, the NCAA penalties might result in a reduction of allowable scholarships and harm to the student-athletes impermissibly aided.

The limitations set by the NCAA Bylaws effectively cap the total amount of athletically-related financial aid that may be provided to student-athletes, providing schools such as SDSU who comply with Title IX's participation opportunities and have a large number of participants with a legitimate, non-discriminatory reason for any aggregate scholarship disparity. *See Gonyo v. Drake univ., supra.*

Further, as noted above, Title IX's aggregate scholarship analysis of "substantial proportionality" between the participation rates and aggregate scholarship awards of male and female athletes requires a comparison of two ratios: the gender breakdown of student-athletes and the gender breakdown of financial aid.  Those ratios have four discrete inputs: (1) the number of male student-athletes; (2) the number of female student-athletes; (3) the amount of athletically-related financial aid made available to male student-athletes; and (4) the amount of athletically-related financial aid made available to female student-athletes.

- 18 -

Because the NCAA Bylaws limit the number of scholarships and therefore the ***amount*** of athletically-related financial aid, a school with a large percentage of female student-athletes can provide "substantially proportionate" financial aid by alternatively limiting the total value of scholarships awarded to male student-athletes or limiting the number of female student-athletes – either of which is a plausible "solution" that would obviate Plaintiffs' speculative "entitlement" to more female scholarships as "damages."  It follows, then, that a mere choice to not award additional female scholarships (much less in violation of NCAA rules) could not constitute intentional discrimination regarding the allocation of athletic scholarships limited by NCAA Bylaws.  Instead, the only theoretical Title IX violation is the result of disparate impact caused by the NCAA regulations.  Because the private right of action under Title IX is limited to acts of intentional discrimination, Plaintiffs' Title IX claim, which is based on the impact of NCAA Bylaws, must be dismissed.  *Cannon v. Univ. of Chicago,* 441 U.S. 677, 690-93 (1979) (Title IX provides a private right of action only for intentional discrimination).  Indeed, no court in 50 years has extended *Cannon* and allowed a Title IX claim to proceed under the generalized theory alleged by Plaintiffs.

**3.      Reliance on EADA Data Yields Significantly Inflated and Flawed Calculations**

Plaintiffs' allegations are also flawed to the extent they rely on data submitted by SDSU pursuant to the EADA, 20 U.S.C. § 1092(g), to evaluate the number of athletic participants and SDSU's allocation of athletic aid.  "The flaw in this analysis is that it is based on the EADA 'participant count'" for males and females, "which count a given student-athlete as a 'participant' in each sport in which he or she participates—and not on straight counts (without redundancy)."  *Anders v. California State Univ., Fresno*, 2021 WL 5040405, at *4 (E.D. Cal. Oct. 29, 2021) (dismissing Plaintiffs' financial aid Title IX claim and citing *Title IX Athletics Investigator's Manual*, OCR, Dep't of Edu. (1990), https://eric.ed.gov/?id=ED400763, at 21, 151 ("[p]articipants who participate on more than one team are to be counted only once" in assessing financial aid claims)).

Plaintiffs' use of EADA data creates the redundancy that the court identified in *Anders*.  For example, SDSU has women's (but not men's) cross country and track and field teams.  Each woman who participated in cross country and also participated in track and field is counted as a participant

three times (cross country, indoor track, and outdoor track) in the EADA data.  *Biediger v. Quinnipiac Univ.,* 928 F. Supp. 2d 414, 419 (D. Conn. 2013) ("cross-country, indoor track, and outdoor track are treated as separate sports"); Ex. 4, 1996 Clarification ("In determining the number of participation opportunities for the purposes of the interests and abilities analysis, an athlete who participates in more than one sport will be counted as a participant in each sport in which he or she participates.").[6]  These individuals cannot be counted three times for financial aid purposes, though, because, at most, they can only receive one full scholarship.  *Anders*, 2021 WL 5040405, at \*4.  Thus, Plaintiffs' computations are significantly flawed from the outset and require the removal of multiple female participation opportunities in any computation concerning the provision of athletic financial aid.  In sum, Plaintiffs' conclusory allegations do not push Plaintiffs' claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570).

Overall, Plaintiffs do not provide sufficient "facts tending to exclude the possibility" that there are various non-discriminatory reasons for any financial aid disparity.  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d at 1108 (9th Cir. 2013);  *Eclectic Properties E*, 751 F.3d at 997 (affirming dismissal of complaint at pleading state where plaintiff failed to offer facts that would have "exclude[d] the defendant's innocuous alternative explanation"). To the contrary, Plaintiffs "cannot overcome the plausible and obvious explanation" that SDSU's compliance with Title IX's participation opportunities, coupled with mandatory NCAA rules and other legitimate, nondiscriminatory explanations, provide the reason for any aid disparity.  *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014); *Balow*, 2021 WL 4316771, at \*8 ("Plaintiffs have not alleged facts from which to plausibly infer that they personally suffered discrimination with respect to scholarships and other forms of financial assistance. Without more detailed allegations, the Court cannot infer more than the 'mere possibility' of discrimination against them individually or as representatives of a larger class.").   As such, Plaintiffs' Complaint pleads no more "than a sheer possibility" that SDSU has acted unlawfully, which is insufficient. *See Iqbal*, 556 U.S. at 678.  Because Plaintiffs have not stated a plausible claim for relief regarding

---

[6] (Ex. 4, Jan. 16, 1996, Clarification of Intercollegiate Athletics Policy Guidance: The Three Part Test, *available at* https://www2.ed.gov/about/offices/list/ocr/docs/clarific.html).

an alleged unequal allocation of financial assistance based on intentional discrimination, the Complaint should be dismissed in its entirety.

**D.      Plaintiffs Are Not Entitled to Money Damages**

Plaintiffs seek a prospective injunction, future compliance with Title IX, and compensatory damages.  Yet, Plaintiffs are unable to point to *any authority* establishing that money damages are available in financial aid Title IX claims.[7]

Title IX does not expressly provide a private right of action.  Instead, as noted above, Title IX only provides an implied right of action for intentional discrimination.  *Cannon*, 441 U.S. at 690-93.   However, even assuming Plaintiffs can adequately plead a claim of intentional discrimination – they do not – no court has extended that implied right of action to allow an individual to recover individual monetary ***damages*** when there is an overall, generalized imbalance in ***scholarships*** provided to male and female student-athletes.  This is not surprising, since a court's role "is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 523 U.S. 275, 286 (2001).  Instead, to the extent Plaintiffs can establish standing, all they are entitled to is prospective injunctive relief. *See, e.g., Portz v. St. Cloud State Univ*., 401 F. Supp. 3d 834, 870 (D. Minn. 2019), *aff'd in part, vacated in part, rev'd in part*, 16 F.4th 577 (8th Cir. 2021) (following bench trial, granting permanent injunction upon a finding of a Title IX violation); *Ollier v. Sweetwater Union High Sch. Dist*., 858 F. Supp. 2d 1093, 1116 (S.D. Cal. 2012) (same).

Further, OCR, the agency that administratively enforces the Title IX, has never awarded retrospective money damages following an investigation into allegations that a school fails to comply with Title IX regarding the allocation of athletically-related financial aid.  Instead, OCR consistently requires scholarship funding changes on a prospective basis only and does not provide for retrospective damages or relief to any specific student-athlete, absent allegations of particularized, personal harm. (*See, e.g.*, Ex. 5, University of Iowa Resolution Agreement; Ex. 6,

---

[7] While the Supreme Court has held that monetary damages may be available to a student filing an action for sexual harassment under Title IX, it has never authorized an award of damages with respect to alleged Title IX violations related to the generalized allocation of athletically-related financial aid, absent allegations of particularized, personal harm.

Mem. in Support of Motion to Dismiss Plaintiffs' Complaint
(3:22-cv-00173-TWR-MSB)

Dickinson State University Resolution Agreement; Ex. 7, Sacred Heart University Resolution Agreement).

OCR's approach makes logical sense.  As noted above, since "Title IX directly affords … no individual right to a scholarship," *Beasley*, 966 F. Supp. at 1126, even if SDSU violated Title IX with respect to the allocation of athletically-related financial aid—it has not—there would be no basis for awarding damages to any individual student-athlete.  And since there is no individual right to a scholarship, Plaintiffs cannot utilize a class action as the basis to obtain a windfall damage award.  Instead, the most each would be entitled to receive is an injunction to ensure future compliance (to the extent each Plaintiff is still a current student), which could result in modifying any of the four discrete inputs described above, such as decreasing the amount of financial aid made available to male students.  And, far from a receipt of monetary ***damages***, each Plaintiff would only be potentially eligible to receive a ***scholarship***, subject to NCAA team scholarship limits and any unmet financial aid, i.e., cost of attendance minus the grants in aid already provided, ***if*** they were able to individually prove their entitlement to more aid.

For all of these reasons, an award of monetary damages as a remedy to Plaintiffs' claims is improper. To the extent the Court were to rule otherwise, it would be the first decision in 50 years of Title IX jurisprudence.

### IV.     Conclusion

Just as this Court's sister court did in *Anders*, for the foregoing reasons, Defendants request that the Court dismiss Plaintiffs' financial aid claim with prejudice, which will result in dismissal of Plaintiffs' Complaint in its entirety.

Mem. in Support of Motion to Dismiss Plaintiffs' Complaint
(3:22-cv-00173-TWR-MSB)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: */s/ Scott R. Eldridge*
      Scott R. Eldridge (P66452)
      Brian M. Schwartz (P69018)
      Ashley N. Higginson (P83992)
      Erika L. Giroux (P81998)
      One Michigan Ave. Suite 900
      Lansing, MI 48933
      eldridge@millercanfield.com
      schwartzb@millercanfield.com
      higginson@millercanfield.com
      giroux@millercanfield.com
      *Attorneys for Defendants*

Dated: April 8, 2022

- 23 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system that will send notification of such filing upon all ECF filing participants.

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

*/s/ Scott R. Eldridge*

Scott R. Eldridge (P66452)
Attorneys for Defendants
One Michigan Avenue, Suite 900
Lansing, MI 48933
(517) 483-4918
eldridge@millercanfield.com

Mem. in Support of Motion to Dismiss Plaintiffs' Complaint
(3:22-cv-00173-TWR-MSB)