David S. Casey, Jr., SBN 60768
*dcasey@cglaw.com*
Gayle M. Blatt, SBN 122048
*gmb@cglaw.com*
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811

Arthur H. Bryant, SBN 208365
*abryant@baileyglasser.com*
**BAILEY & GLASSER, LLP**
1999 Harrison Street, Suite 660
Oakland, CA 94612
Telephone: (510) 272-8000

*Attorneys for Plaintiff and the proposed classes*

[Additional counsel on signature page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON FISK, RAQUEL CASTRO, GRETA VISS, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all those similarly situated, | Case No. 3:22-cv-00173-TWR-MSB **FIRST AMENDED CLASS ACTION COMPLAINT** |
| *Plaintiffs,* | Judge: Honorable Todd W. Robinson Courtroom: 3A |
| *v.* | Mag. Judge: Hon. Michael S. Berg Courtroom: 2C |
| BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY and SAN DIEGO STATE UNIVERSITY, | Complaint Filed: February 10, 2022 Trial date: Not set. |
| *Defendants.* | DEMAND FOR JURY TRIAL |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

**INTRODUCTION** ........................................................................... 3

**FACTUAL ALLEGATIONS** ....................................................... 16

**TITLE IX BARS SDSU FROM DISCRIMINATING AGAINST ITS FEMALE STUDENT-ATHLETES ON THE BASIS OF THEIR SEX.** .......... 16

Title IX's Equal Athletic Financial Aid Requirements ......................... 18

Title IX's Equal Athletic Treatment and Benefit Requirements ........................ 20

Title IX's Prohibition Against Retaliation ........................................ 22

**SDSU HAS BEEN AND IS DISCRIMINATING AGAINST ITS FEMALE STUDENT-ATHLETES ON THE BASIS OF THEIR SEX.** ........................... 23

SDSU's Violations of Title IX's Equal Athletic Financial Aid Requirements ........................................................................... 24

SDSU's Violations of Title IX's Equal Athletic Treatment and Benefits Requirements ........................................................................ 28

SDSU's Violation of Title IX's Prohibition Against Retaliation ........................ 35

**CLASS ALLEGATIONS** .............................................................. 39

Denial of Equal Allocation of Athletic Financial Aid ........................... 43

Denial of Equal Athletic Treatment and Benefits ................................. 44

Retaliation ........................................................................... 46

**PRAYER FOR RELIEF** ............................................................... 47

# **INTRODUCTION**

1.     This is a sex discrimination class action against San Diego State University ("SDSU") for violating Title IX of the Education Amendments of 1972 ("Title IX") by depriving its female varsity student-athletes of equal athletic financial aid, denying them equal athletic benefits and treatment, and retaliating against them because some of them sued SDSU for violating Title IX.

2.     SDSU has not paid its female varsity student-athletes equal athletic financial aid for over a decade, failed to pay them over $1,200,000 in equal athletic financial aid in the last two academic years, and is not paying them equal athletic financial aid this academic year.

3.     This lawsuit seeks to make SDSU pay its female varsity student-athletes the equal athletic financial aid they have been and are being deprived of—and to require SDSU to provide them with equal athletic financial aid in the future.

4.     SDSU also has not provided its female varsity student-athletes with treatment and benefits equal to those it has provided its male varsity student-athletes for over a decade and, instead, has given its female varsity student-athletes much worse treatment and benefits.

5.     This lawsuit also aims to force SDSU to treat its female and male student-athletes equally going forward.

6.     Finally, this lawsuit seeks to hold SDSU accountable for retaliating against its female varsity student-athletes because some of them sued SDSU for violating the rights of all of them under Title IX.

7.     Shortly after this lawsuit was filed, SDSU informed the Plaintiffs who are current varsity student-athletes—at a quickly-called Zoom meeting with all of their teammates—that it was not happy with them because they filed this suit.

8.     That action both adversely affected those Plaintiffs and deterred other female varsity student-athletes from helping them fight sex discrimination at SDSU.

FIRST AMENDED CLASS ACTION COMPLAINT

9.     When Plaintiffs asked SDSU to take specific steps to minimize the harm caused by this illegal retaliation, SDSU refused.

10.    This lawsuit, therefore, seeks to make SDSU pay damages to its varsity female student-athletes for retaliating against them in violation of Title IX and to prohibit SDSU from violating Title IX by retaliating against its varsity female student-athletes in the future.

## JURISDICTION AND VENUE

11.    This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, and the regulations and policies promulgated pursuant to that law.

12.    This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

13.    Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 to obtain the correct interpretation of the legal requirements described in this Complaint, which is necessary and appropriate to determine the parties' respective rights and duties.

14.    Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) because SDSU is located in San Diego, California, which is within this Court's jurisdiction. In addition, the events giving rise to the Complaint occurred in San Diego, California, within this Court's jurisdiction.

## THE PARTIES

### *Plaintiffs*

15.    Plaintiffs are past and current female varsity student-athletes at SDSU.

16.    At all times relevant to this case, varsity student-athletes at SDSU were and are eligible for athletic financial aid up to and including a full scholarship, a cost-of-living stipend, summer aid, fifth-year aid, and NCAA Special Assistance Funds if appropriate.

17.    SDSU's average cost of attendance for in-state residents for the last four years was $28,142 per year. A full athletic scholarship at SDSU, which includes a cost-of-living stipend, would have covered the entire cost of attendance.

18.    SDSU's average cost of attendance for non-residents for the last four years was $39,230 per year. A full athletic scholarship at SDSU, which includes a cost-of-living stipend, would have covered the entire cost of attendance.

19.    None of the Plaintiffs received all of the athletic financial aid for which they were eligible at SDSU.

20.    If SDSU complied with Title IX and granted athletic financial aid to its female varsity student-athletes proportional to the athletic financial aid it granted to SDSU's male varsity student-athletes, each of the Plaintiffs would have had an opportunity to receive her fair share of equal athletic financial aid.

21.    If SDSU complied with Title IX and granted athletic financial aid to its female varsity student-athletes proportional to the athletic financial aid it granted to SDSU's male varsity student-athletes, each of the Plaintiffs would have received more athletic financial aid than she did.

22.    Each of the Plaintiffs who are current student-athletes has athletic eligibility remaining and intends to continue to participate as a varsity student-athlete until she has graduated or exhausted her eligibility to participate in intercollegiate varsity sports.

23.    Each of the Plaintiffs who are current student-athletes is being deprived of treatment and benefits equal to those provided to male student-athletes at SDSU.

24.    Each of the Plaintiffs was retaliated against by SDSU because SDSU directly retaliated against some of them for filing this lawsuit on behalf of all female varsity student-athletes and SDSU's retaliatory actions had a chilling effect on the willingness of other female varsity student-athletes to challenge, expose, and remedy SDSU's sex discrimination.

FIRST AMENDED CLASS ACTION COMPLAINT

25.     Each of the Plaintiffs was also injured because she was subjected by SDSU to discrimination on the basis of her sex.

Madison Fisk

26.     Madison Fisk is currently a senior at SDSU majoring in Economics. She is a resident of California for purposes of tuition at SDSU.

27.     Madison was a member of the women's varsity rowing team until SDSU discontinued the team in Spring 2021.

28.     Madison began rowing before high school. She worked hard throughout high school to earn a spot as a coxswain for the SDSU women's rowing team.

29.     During her time on the rowing team, Madison received partial athletic financial aid. She received a total of $800 her freshman year, $5,800 her sophomore year, $10,800 her junior year, and $10,800 for this current academic year. Madison received a total of $28,200 in athletic financial aid as a varsity student-athlete.

30.     Madison was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

31.     Madison was also harmed because SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

Raquel Castro

32.     Raquel Castro is currently a junior at SDSU majoring in Kinesiology. She is a resident of California for purposes of tuition at SDSU.

33.     Raquel was a member of the women's varsity rowing team until SDSU discontinued the team in Spring 2021.

34.     Raquel trained hard throughout high school so she could pursue rowing as a varsity sport in college.

35.     During her time on the rowing team, Raquel received partial athletic financial aid. She received a total of $800 in athletic financial aid for books each year. Raquel received a total of $2,400 in athletic financial aid as a varsity student-athlete.

FIRST AMENDED CLASS ACTION COMPLAINT

36.     Raquel was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

37.     Raquel was also harmed because SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

Greta Viss

38.     Greta Viss is a SDSU graduate with a major in Psychology and a minor Biology and is an applicant to SDSU's master's program. She was a resident of California when she attended SDSU and was a resident for purposes of tuition at SDSU.

39.     Greta was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

40.     Greta has been playing sports since she was four years old. Greta walked onto the women's rowing team at SDSU.

41.     During her time on the rowing team, Greta received partial athletic financial aid during her freshman and sophomore years. She received $7,000 in athletic financial aid in her freshman year and $17,000 in her sophomore year.

42.     Greta was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

43.     Greta was also harmed because SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

Clare Botterill

44.     Clare Botterill is currently a junior at SDSU majoring in Journalism and Media Studies. She came to SDSU from Alberta, Canada, to be a part of the women's varsity rowing team and, therefore, is a non-resident for purposes of tuition at SDSU.

45.     Clare was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

46.     Clare started rowing after being a long-time soccer player. After her first summer rowing, Clare loved the sport and dedicated herself to becoming good enough

FIRST AMENDED CLASS ACTION COMPLAINT

to earn a spot on the Canadian national team and, subsequently, a spot on the team at SDSU.

47.     During her time on the rowing team, Clare received partial athletic financial aid. She received $38,000 in athletic financial aid in her junior year but did not receive any athletic financial aid as a sophomore, which was her first year at SDSU.

48.     Clare was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

49.     Clare was also harmed because SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

<u>Maya Brosch</u>

50.     Maya Brosch graduated from SDSU in May 2021. She is a resident of California for purposes of tuition at SDSU.

51.     Maya was a member of the women's varsity track and field team until she graduated in May 2021.

52.     During her time on the track and field team, Maya received partial athletic financial aid. In her freshman and sophomore years, Maya received $400 per semester in athletic financial aid for books and $250 per semester in athletic financial aid for tuition. In her junior and senior years, Maya received $400 per semester in athletic financial aid for books and $3,860 per semester in athletic financial aid for tuition. Maya received a total of $19,640 in athletic financial aid as a varsity student-athlete.

53.     Maya was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

54.     Maya was also harmed because SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

<u>Olivia Petrine</u>

55.     Olivia Petrine is currently a sophomore at SDSU majoring in Computer Science. She came to SDSU from Arizona to be a Division I varsity athlete and, therefore, is a non-resident for the purposes of tuition at SDSU.

56.   Olivia was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

57.   Olivia started rowing in high school and loved the sport from the first practice. Rowing provided Olivia with the ability to learn how to work as a team member and be a leader as well.

58.   During her time on the rowing team, Olivia received partial athletic financial aid. She received $400 per semester in athletic financial aid for books. Olivia received a total of $800 in athletic financial aid as a varsity student-athlete.

59.   Olivia was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

60.   Olivia was also harmed because SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

<u>Helen Bauer</u>

61.   Helen Bauer is currently a senior at SDSU majoring in Business Management. She came to SDSU from Seattle, Washington, and, therefore, is a non-resident for the purposes of tuition at SDSU.

62.   Helen was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

63.   Helen is very passionate about women's fitness and women's opportunities to participate in sports. Helen began rowing in high school. She chose to attend SDSU because it would offer her an opportunity to participate on an up-and-coming varsity Division I rowing team and obtain a quality education. Helen worked her way to becoming team captain in the 2020 season.

64.   During her freshman and sophomore year, Helen received partial athletic financial aid. During her freshman year she received $10,000 in athletic financial aid. During her sophomore year she received $20,000. Helen received a total of $30,000 in athletic financial aid up to her sophomore year as a student-athlete.

FIRST AMENDED CLASS ACTION COMPLAINT

65.    Helen was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

66.    Helen was also harmed because SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

<u>Carina Clark</u>

67.    Carina Clark is currently a senior at SDSU majoring in Media Studies. She came to SDSU from Florida to be a varsity athlete and, therefore, is a non-resident for the purposes of tuition at SDSU.

68.    Carina is a member of the women's varsity track and field team at SDSU.[1]

69.    Carina has run track for most of her life. Both of Carina's parents were professional athletes, and they instilled in her a love for sports.

70.    During her time on the track and field team, Carina received partial athletic financial aid for her senior year only in the amount of $400 per semester. Carina received a total of $800 in athletic financial aid as a varsity student-athlete.

71.    Carina was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

72.    During her time on the track and field team, SDSU also discriminated against Carina as a female athlete by failing to provide her equal athletic treatment and benefits.

73.    Carina was also harmed because she participated in the Zoom meeting at which SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

<u>Natalie Figueroa</u>

74.    Natalie Figueroa is currently a junior at SDSU majoring in Psychology. She is a resident of California for purposes of tuition at SDSU.

---

[1]    SDSU's women's varsity track and field student-athletes are members of three different teams: the indoor track & field team, the outdoor track & field team, and the cross country team. For the sake of brevity, this Amended Complaint refers to them as members of SDSU's women's track and field team.

FIRST AMENDED CLASS ACTION COMPLAINT

75.   Natalie was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

76.   Natalie loved being a part of the women's rowing team, and she chose SDSU because she wanted a college with great academic programs and great athletic teams.

77.   During her time on the rowing team, Natalie did not receive any athletic financial aid.

78.   Natalie was harmed by SDSU's failure to provide proportional athletic financial aid.

79.   Natalie was also harmed because SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

<u>Erica Grotegeer</u>

80.   Erica Grotegeer is currently a senior at SDSU majoring in Criminal Justice, Sociology, and Journalism. She is a resident of California purposes of tuition at SDSU.

81.   Erica is a member of the women's varsity track and field team at SDSU.

82.   Erica started participating in track when she was 13 years old, and she loves being an athlete.

83.   During her time on the track and field team, Erica has received partial athletic financial aid. She received $3,461 her freshman year, $3,629 her sophomore year, $11,630 her junior year and $19,159 this academic year. Erica received a total of $37,879 in athletic financial aid as a varsity student-athlete.

84.   Erica was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

85.   During her time on the track and field team, SDSU also discriminated against Erica as a female athlete by failing to provide her equal athletic treatment and benefits.

FIRST AMENDED CLASS ACTION COMPLAINT

86.     Erica was also harmed because she participated in the Zoom meeting at which SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

<u>Kaitlin Heri</u>

87.     Kaitlin Heri is currently a senior at SDSU majoring in Business. She is a resident of California for purposes of tuition at SDSU.

88.     Kaitlin is a member of the women's varsity track and field team at SDSU.

89.     Kaitlin has been an athlete for most of her life. Kaitlin chose SDSU because of its pole-vaulting program, and she loves the people she has been able to meet and the experiences she has had as a varsity student-athlete.

90.     During her time on the track and field team, Kaitlin has received partial athletic financial aid. She received $3,000 her freshman year, she received $8,800 her sophomore year. She received $13,200 per year in her junior and senior years. Kaitlin is currently receiving fifth year aid in the amount of $26,400. Kaitlin received a total of $64,600 in athletic financial aid as a varsity student-athlete.

91.     Kaitlin was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

92.     During her time on the track and field team, SDSU also discriminated against Kaitlin as a female athlete by failing to provide her equal athletic treatment and benefits.

93.     Kaitlin was also harmed because she participated in the Zoom meeting at which SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

<u>Aisha Watt</u>

94.     Aisha Watt is currently a junior at SDSU majoring in Kinesiology. She came to SDSU from Seattle, Washington, and, therefore, is a non-resident for the purposes of tuition at SDSU.

95.     Aisha is a member of the women's varsity track and field team at SDSU.

96.     Aisha loves being a student-athlete because it allows her to keep improving herself and achieving accomplishments that she never thought possible.

FIRST AMENDED CLASS ACTION COMPLAINT

97.    During her time on the track and field team, Aisha received partial financial aid. She received 10% of tuition and $800 for books, per year for her freshman and sophomore years. She is receiving $3,000 in athletic aid this year. Aisha has received a total of $4,600 in athletic financial aid as a varsity student-athlete.

98.    Aisha was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

99.    During her time on the track and field team, SDSU also discriminated against Aisha as a female athlete by failing to provide her equal athletic treatment and benefits.

100.   Aisha was also harmed because she participated in the Zoom meeting at which SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

<u>Kamryn Whitworth</u>

101.   Kamryn Whitworth graduated from SDSU in May 2021 with a degree in Communication. She was a resident of California for the purposes of tuition at SDSU.

102.   Kamryn was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

103.   Kamryn discovered the sport of rowing when she was 13 years old. She gave her heart and soul to her rowing career, and that dedication made it possible for her to be a varsity rower at SDSU.

104.   During her time on the rowing team, Kamryn received partial athletic financial aid. In her freshman and sophomore years, she received $800 per year. In her junior and senior years, she received $5,800 per year. Kamryn received a total of $13,200 in athletic financial aid as a varsity student-athlete.

105.   Kamryn was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

106.   Kamryn was also harmed because SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

FIRST AMENDED CLASS ACTION COMPLAINT

<u>Sara Absten</u>

107.   Sara Absten is currently a senior at SDSU majoring in Economics. She is a legal resident of California.

108.   Sara is a member of the women's varsity track and field team at SDSU.

109.   Sara loves being a track and field athlete because it makes her proud to set goals for herself and achieve those goals. Sara chose to come to SDSU for track and field because the head coach is a former Olympian.

110.   During her time on the track and field team, Sara has received partial athletic financial aid. The amount of athletic financial aid has fluctuated significantly from semester to semester; some semesters she received almost full tuition and other semesters she only received 10% of the cost of attendance.

111.   Sara was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

112.   During her time on the track and field team, SDSU also discriminated against Sara as a female athlete by failing to provide her equal athletic treatment and benefits.

113.   Sara as also harmed because SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

<u>Eleanor Davies</u>

114.   Eleanor Davies is currently a sophomore in college. She attended SDSU majoring in Business Marketing until transferring in January 2022, after SDSU eliminated her sport. She came to SDSU from Connecticut and, therefore, was a non-resident for the purposes of tuition at SDSU.

115.   Eleanor was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

116.   During her time on the rowing team, Eleanor received partial athletic financial aid. She received $7,500 a semester in athletic financial aid. Eleanor received a total of $22,500 in athletic financial aid at SDSU.

117.   Eleanor was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

118.   Eleanor was also harmed because SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

<u>Alexa Dietz</u>

119.   Alexa Dietz is currently a senior at SDSU. Alexa came to SDSU from Washington and therefore, is a non-resident for the purposes of tuition at SDSU.

120.   Alexa was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

121.   During her time on the rowing team, Alexa received partial athletic financial aid. She received $800 her freshman year and $8,800 per year in both her sophomore and junior years. Alexa received a total of $18,400 in athletic financial as a varsity student-athlete.

122.   Alexa was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

123.   Alexa was also harmed because SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

<u>Larisa Sulcs</u>

124.   Larisa Sulcs is currently a junior at SDSU. She came to SDSU from Seattle, Washington and, therefore, is a non-resident for the purposes of tuition at SDSU.

125.   Larisa was a member of the women's varsity rowing team until SDSU discontinued the women's varsity rowing team in Spring 2021.

126.   During her time on the rowing team, Larisa received partial athletic financial aid. She received $7,600 her freshman year, $15,200 her sophomore year per semester in athletic financial aid for books. Larisa has received a total of $22,800 in athletic financial aid as a varsity student-athlete.

FIRST AMENDED CLASS ACTION COMPLAINT

127.   Larisa was harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes.

128.   Larisa was also harmed because SDSU retaliated against her and the other Plaintiffs for filing this lawsuit.

### *Defendants*

129.   Defendant San Diego State University is a constituent institution of the California State University System.

130.   Defendant San Diego State University is a recipient of federal funds and is required to comply with Title IX and all of its implementing regulations.

131.   Defendant Board of Trustees of the California State University is a public entity that does business in San Diego, California, by operating the university campus of SDSU.

132.   Defendant Board of Trustees of the California State University is a recipient of federal funds and is required to comply with Title IX and all implementing regulations.

133.   Under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and the regulations adopted pursuant to 34 C.F.R. Part 106, San Diego State University and the Board of Trustees of the California State University must provide equal opportunities to women and men in every program SDSU offers, including equal athletic financial aid and equal treatment and benefits to SDSU's female and male varsity student-athletes, and cannot retaliate against any female student-athlete for speaking out against sex discrimination at SDSU or attempting to enforce her rights under Title IX.

## FACTUAL ALLEGATIONS

## TITLE IX BARS SDSU FROM DISCRIMINATING AGAINST ITS FEMALE STUDENT-ATHLETES ON THE BASIS OF THEIR SEX.

134.   Title IX says, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

135.   Because SDSU receives federal financial assistance, its varsity athletic program is subject to Title IX, and SDSU must comply with Title IX's requirements. 20 U.S.C. § 1687.

136.   When schools segregate their varsity athletic programs on the basis of sex, as SDSU does, their violations of Title IX in those programs constitute intentional sex discrimination.  *See Neal v. Board of Trustees of the Cal. State Univs.*, 198 F.3d 763, 772 n.8 (9th Cir. 1999).

137.   Applying Title IX to intercollegiate athletics, OCR has adopted regulations requiring educational institutions receiving federal funds to "provide equal athletic opportunity for members of both sexes." 34 C.F.R. § 106.41(c).

138.   The regulations, codified at 34 C.F.R. Part 106 (the "Regulations") are enforced by OCR.

139.   In 1979, OCR issued a policy interpretation of Title IX and the Regulations as applied to intercollegiate athletics at 44 Fed. Reg. 71,413 (Dec. 11, 1979) (the "OCR Policy Interpretation").

140.   The OCR Policy Interpretation sets forth two areas of Title IX compliance applicable to SDSU's varsity intercollegiate athletics programs at issue in this case: equal athletic financial assistance and equal treatment and benefits.

141.   In addition, Title IX prohibits SDSU from "retaliating against a person who speaks out against sex discrimination, because such retaliation is intentional 'discrimination' 'on the basis of sex.'" *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005); *see also* 34 C.F.R. § 106.71.

142.   As the U. S. Supreme Court explained, it would be "difficult, if not impossible" to achieve Title IX's goal of protecting citizens from discriminatory practices "if persons who complain about sex discrimination did not have effective protection against retaliation." *Jackson*, 544 U.S. at 180–81 (noting that, without

protection against retaliation, "individuals who witness discrimination would likely not report it . . . and the underlying discrimination would go unremedied").

### Title IX's Equal Athletic Financial Aid Requirements

143.  Title IX's requirements for equal athletic financial aid have been in existence since 1979.

144.  As OCR explained in 1998: "With regard to athletic financial assistance, the regulations promulgated under Title IX provide that, when a college or university awards athletic scholarships, these scholarship awards must be granted to 'members of each sex in proportion to the number of students of each sex participating in intercollegiate athletics.' 34 C.F.R 106.37(c)." Office for Civil Rights, U.S. Department of Education ("DOE"), *Dear Colleague Letter* at 2 (July 23, 1998).

145.  The regulation cited by OCR, 34 C.F.R. §106.37 (c), provides:

> (1)   To the extent that a recipient awards athletic scholarships or grants-in-aid, it must provide reasonable opportunities for such awards for members of each sex in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics.

> (2)   Separate athletic scholarships or grants-in-aid for members of each sex may be provided as part of separate athletic teams for members of each sex to the extent consistent with this paragraph and § 106.41.

146.  The OCR Policy Interpretation states, among other things, its interpretation of the athletic financial aid provision quoted above:

> The Policy - The Department will examine compliance with this provision of the regulation primarily by means of a financial comparison to determine whether proportionately equal amounts of financial assistance (scholarship aid) are available to men's and women's athletic programs. The

> Department will measure compliance with this standard by dividing the amounts of aid available for the members of each sex by the numbers of male or female participants in the athletic program and comparing the results. Institutions may be found in compliance if this comparison results in substantially equal amounts or if a resulting disparity can be explained by adjustments to take into account legitimate, nondiscriminatory factors…
>
> Application of the Policy - This section does not require a proportionate number of scholarships for men and women or individual scholarships of equal dollar value. It does mean that the total amount of scholarship aid made available to men and women must be substantially proportionate to their participation rates.

44 Fed. Reg. 71,415.

147.    On July 23, 1998, OCR discussed and clarified how it interpreted and would enforce Tile IX's athletic financial aid requirements:

> With regard to athletic financial assistance, the regulations promulgated under Title IX provide that, when a college or university awards athletic scholarships, these scholarships awards must be granted to "members of each sex in proportion to the number of students of each sex participating in …intercollegiate athletics." 34 C.F.R 106.37(c)…
>
> It is important to note that it is not enough for a college or university merely to assert a nondiscriminatory justification. Instead, it will be required to demonstrate that its asserted

rationale is in fact reasonable and does not reflect underlying discrimination…

If any unexplained disparity in the scholarship budget for athletes of either gender is 1% or less for the entire budget for athletic scholarships, there will be a strong presumption that such a disparity is reasonable and based on legitimate and nondiscriminatory factors. Conversely, there will be a strong presumption that an unexplained disparity of more than 1% is in violation of the "substantially proportionate" requirement.

OCR, U.S. DOE, *Dear Colleague Letter* at 2-4 (July 23, 1998).

148.   Because Title IX and its implementing Regulations are federal law, NCAA and conference rules cannot justify violations of them.

149.   The Title IX Regulations state: "The obligation to comply with this part is not obviated or alleviated by any rule or regulation of any organization …or association which would render any applicant or student ineligible to participate or limit the eligibility or participation of any applicant or student, on the basis of sex, in any education program or activity operated by a recipient and which receives Federal financial assistance." 34 C.F.R. 106.6 (c).

150.   As a result, if SDSU chose to sponsor women's and men's varsity athletic teams with NCAA or conference scholarship limits that allowed SDSU to award its male student-athletes far more athletic financial aid than its female student-athletes— and then did so—SDSU would be violating Title IX.

151.   Any NCAA or conference limits would not justify SDSU's violation of the law.

### Title IX's Equal Athletic Treatment and Benefit Requirements

152.   Title IX's requirements for equal treatment and benefits are codified at 34 C.F.R. § 106.41(c). The Regulations identify nine non-exclusive areas in

which recipients must provide equal treatment and benefits to female and male student-athletes:

- The provision of equipment and supplies;
- Scheduling of games and practice time;
- Travel and per diem allowance;
- Opportunity to receive coaching and academic tutoring;
- Assignment and compensation of coaches and tutors;
- Provision of locker rooms, practice and competitive facilities;
- Provision of medical and training services;
- Provision of housing and dining facilities and services; and
- Publicity.

153.   Additionally, "[e]qual efforts to recruit male and female athletes are required under Title IX." *Ollier v. Sweetwater Union High Sch. Dist.*, 858 F. Supp. 2d 1093, 1110–11 (S.D. Cal. 2012) (citing Policy Interpretation, 44 Fed. Reg. at 71,417).

154.   "Although recruiting is not listed as a factor under 34 C.F.R. section 106.41(c), the Policy Interpretations do identify this area as significant." *Barrett v. W. Chester Univ. of Pennsylvania of State Sys. of Higher Educ.*, No. CIV.A. 03-CV-4978, 2003 WL 22803477, at *6 (E.D. Pa. Nov. 12, 2003) (citing *Cohen v. Brown Univ.*, 809 F. Supp. 978, 997 (D. R.I.1992) (identifying recruiting dollars as a "target area" under the Policy considerations and finding a disparity in Brown University's allocation of those funds)).

155.   The items listed above are not exhaustive and do not include every area in which a school must provide equal treatment and benefits to its female and male student-athletes, but they provide a good overview of the areas to be examined.

156.   In addition, a school's "failure to provide necessary funds for teams for one sex" may also be indicative of sex discrimination. 34 C.F.R. § 106.41(c).

157.   The OCR Policy Interpretation states, among other things, OCR's interpretation of the equal treatment and benefits provisions quoted above:

> The Policy—The Department will assess compliance with both the recruitment and the general athletic program requirements of the regulation by comparing the availability, quality and kinds of benefits, opportunities, and treatment afforded members of both sexes. Institutions will be in compliance if the compared program components are equivalent, that is, equal or equal in effect. Under this standard, identical benefits, opportunities. or treatment are not required, provided the overall effect of any differences is negligible.

44 Fed. Reg. 71,415.

## Title IX's Prohibition Against Retaliation

158.   Title IX's prohibition on retaliation was recognized and emphasized by the U.S. Supreme Court in *Jackson*, 544 U.S. at 178: "[T]he text of Title IX prohibits a funding recipient from retaliating against a person who speaks out against sex discrimination, because such retaliation is intentional 'discrimination' 'on the basis of sex.'" *See also* 34 C.F.R. § 106.71 ("No recipient or other person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX[.]").

159.   As the Supreme Court explained, such retaliation "is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint: an allegation of sex discrimination." *Jackson*, 544 U.S. at 174.

160.   The Court said it would be "difficult, if not impossible" to achieve Title IX's goal of protecting citizens from discriminatory practices "if persons who complain about sex discrimination did not have effective protection against retaliation." *Id.* at 180–81 (noting that, without protection against retaliation,

"individuals who witness discrimination would likely not report it . . . and the underlying discrimination would go unremedied").

161. "Reporting incidents of discrimination is integral to Title IX enforcement, and would be discouraged if retaliation against those who report went unpunished." *Id.* at 180.

162. The Ninth Circuit has likewise explained that "Title IX empowers a woman student to complain, without fear of retaliation, that the educational establishment treats women unequally." *Emeldi v. Univ. of Oregon*, 698 F. 3d 715, 725 (9th Cir. 2012) (noting that "[i]t is a protected activity to protest or otherwise oppose unlawful discrimination" and that "speak[ing] out against sex discrimination . . . is protected activity." (internal quotation marks and citations omitted)).

163. Put simply, "[w]omen students should not be deterred from advancing pleas that they be treated as favorably as male students." *Id.* at 726.

164. To the contrary, "[i]ndividuals should be commended when they raise concerns about compliance with the Federal civil rights laws, not punished for doing so." OCR, U.S. DOE, *Dear Colleague Letter* at 1 (April 24, 2013).

165. For all these reasons, OCR has explained that "once a student . . . complains formally or informally to a school about a potential civil rights violation . . . , the recipient [school] is prohibited from retaliating (including intimidating, threatening, coercing, or in any way discriminating against the individual) because of the individual's complaint." *Id.*

166. "'[A]ny plaintiff with an interest arguably sought to be protected by' a statute with an anti-retaliation provision has standing to sue under that statute." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 866 (9th Cir. 2014).

## SDSU HAS BEEN AND IS DISCRIMINATING AGAINST ITS FEMALE STUDENT-ATHLETES ON THE BASIS OF THEIR SEX.

167. SDSU is a member of the NCAA, and it participates in Division I athletics, the highest level of intercollegiate competition.

168.   For the past several decades, SDSU has sponsored women's and men's varsity Division I intercollegiate athletic teams, segregated based on sex.

169.   In regard to the members of its women's teams, SDSU has violated and is violating Title IX's equal athletic financial aid requirements, equal treatment and benefits requirements, and prohibition against retaliation.

## SDSU's Violations of Title IX's Equal Athletic Financial Aid Requirements

170.   SDSU offers athletic financial aid to members of its women's and men's varsity athletic teams.

171.   SDSU has not provided and does not provide athletic financial aid to its female varsity student-athletes in proportion to their athletic participation rates and, accordingly, intentionally discriminates against its female varsity student-athletes on the basis of their sex in violation of Title IX.

172.   At all times relevant to this case, SDSU has been and is responsible for ensuring its compliance with Title IX's requirements to provide proportional athletic financial aid to its female student-athletes; which is independent from SDSU's obligations to provide proportional participation opportunities under Title IX.

173.   SDSU's compliance with Title IX's equal athletic participation requirements does not absolve the school of its obligations to comply with Title IX's equal athletic financial aid requirements.

174.   Such an allowance could make it possible for a school to provide proportional participation opportunities to its female and male student-athletes and award *no financial aid* to its female student-athletes.

175.   For more than a decade, female varsity student-athletes at SDSU have been deprived of athletic financial aid in proportion to their participation in SDSU athletics, and the difference in the proportion has always been greater than 1%.

176. The information summarized in the chart and paragraphs below was submitted and verified as accurate by SDSU to the federal government pursuant to the Equity in Athletics Disclosure Act (EADA).[2]

| Year | Female Student Athletes | Male Student Athletes | % of females | Female Aid Awarded | Male Aid Awarded | % of aid awarded to females | Amount of aid SDSU deprived female student athletes |
|---|---|---|---|---|---|---|---|
| 2010 | 269 | 222 | 54.79% | $2,776,419.00 | $2,708,301.00 | 50.62% | $228,447.97 |
| 2011 | 302 | 235 | 56.24% | $3,169,134.00 | $3,073,774.00 | 50.76% | $341,775.15 |
| 2012 | 312 | 231 | 57.46% | $3,586,299.00 | $3,181,040.00 | 52.99% | $302,116.78 |
| 2013 | 322 | 239 | 57.40% | $3,813,759.00 | $3,482,941.00 | 52.27% | $374,364.71 |
| 2014 | 310 | 236 | 56.78% | $3,943,771.00 | $3,685,045.00 | 51.70% | $387,608.05 |
| 2015 | 304 | 230 | 56.93% | $4,176,824.00 | $3,914,582.00 | 51.62% | $429,519.49 |
| 2016 | 315 | 226 | 58.23% | $4,426,056.00 | $4,155,385.00 | 51.58% | $570,531.64 |
| 2017 | 303 | 216 | 58.38% | $4,527,853.00 | $4,325,925.00 | 51.14% | $641,115.66 |
| 2018 | 316 | 221 | 58.85% | $4,580,663.00 | $4,604,510.00 | 49.87% | $824,392.25 |

177. In 2019-20, SDSU's 315 female student-athletes equaled 58.12% of the total student-athletes. But female student-athletes were provided with only 50.57% of the $9,198,841 in athletic financial aid the school awarded that year, amounting to a loss of $694,267.88 in athletic financial aid for women.[3]

---

[2]   SDSU has exclusive access to its Title IX athletic participation and athletic financial aid data and has not yet disclosed that information to Plaintiffs or the public. For that reason, Plaintiffs must rely on public EADA data that SDSU has certified as accurate in this Amended Complaint. *See Balow v. Michigan State Univ.*, 24 F.4th 1051, 1060 (6th Cir. 2022), *reh'g denied*, No. 21-1183, 2022 WL 1072866 (6th Cir. Mar. 31, 2022) (recognizing that, in the early stages of litigation, it is appropriate to rely upon the university's EADA data).

[3]   Lost athletic financial aid is calculated by subtracting the aid SDSU actually awarded to female student-athletes in a given year from the athletic financial aid female student-athletes *would have been awarded* if SDSU had complied with Title IX by awarding such aid proportionally (i.e., if the percentage of athletic financial aid awarded to female student-athletes matched the percentage of female student-athletes participating in SDSU's varsity athletics program). For example, in 2019-20 the lost athletic financial aid would be $((0.5812 \times \$9,198,841) - \$4,651,922) = \$694,267.88$ based on the information disclosed by SDSU to the DOE in its annual EADA report.

178.   In 2020-21, SDSU's 305 female student-athletes equaled 57.22% of the total student-athletes. But female student-athletes were provided with only 50.64% of the $8,679,501.00 in athletic financial aid the school awarded that year, amounting to a loss of $571,692.82 in athletic financial aid for women.

179.   Thus, in just the last two academic years, not including the current academic year, SDSU's female student-athletes have received over $1.2 million less in athletic financial aid—and its male varsity student-athletes have received over $1.2 million more—than they would have received if SDSU had granted such aid in proportion to the number of students of each sex participating in intercollegiate athletics.

180.   A similar or greater unequal and disproportionate allocation of athletic financial aid to varsity female student-athletes at SDSU is taking place in the 2021-22 academic year and will continue in the future if it is not stopped.

181.   Plaintiffs are entitled to damages going back a minimum of two years from August 19, 2021, for SDSU's Title IX's athletic financial aid violations.[4]

182.   For the 2019-20 academic year, the fall semester started August 22 and classes began August 26.

183.   SDSU is permitted to award athletic financial aid at any point in the academic year and, until the academic year is over and the school makes the amount of aid awarded to each gender public, only the school can determine whether the allocation of athletic financial aid meets the proportionality requirements of Title IX.

184.   Any athletic financial aid awarded in the middle of an academic year can be retroactive back to start of that academic year. SDSU can correct its discriminatory allocation of athletic financial aid at any point during an academic year.

---

[4]   The parties entered into a tolling agreement on August 19, 2021, preserving all Title IX athletic financial aid claims for at least two years prior to that date.

FIRST AMENDED CLASS ACTION COMPLAINT

185.   As a result, the earliest Plaintiffs could have known about the unequal allocation of athletic financial aid to male student-athletes for the 2019-20 academic year was January 1, 2021.[5]

186.   Defendants have not asserted or attempted to demonstrate any justification for SDSU's failure to provide female student-athletes with equal athletic financial aid that does not reflect underlying discrimination—and Plaintiffs are not aware of any.

187.   For example, if more female student-athletes were in-state residents, more male student-athletes were non-residents, and SDSU spent at least as much money trying to recruit female student-athlete non-residents as male student-athlete non-residents (so the in-state/out-of-state difference was not attributable to sex discrimination in recruiting), that might arguably help explain the smaller and disproportionate grants of athletic financial aid to SDSU's female student-athletes.

188.   In fact, however, more male athletes at SDSU are in-state residents, more female student-athletes are non-residents, and SDSU spends far more money trying to recruit male student-athletes (approximately $1,702 per athlete in 2019-20) than it spends trying to recruit female student-athletes (approximately $593 per athlete in 2019-20).

189.   After the original Complaint in this lawsuit was filed, charging SDSU with depriving its female varsity student-athletes of equal athletic financial aid, SDSU issued a statement saying, "SDSU awards approximately 95% of all possible scholarships permitted under NCAA rules for both its men's and women's teams…NCAA rules prohibit all schools, including SDSU, from giving unlimited

---

[5]   Typically, institutions are required to file their EADA reports with the U.S. Department of Education by October 15 for the prior years' athletic expenditures and participation. Covid-19 extended this deadline beyond October 15 for submissions for the 2019-20 academic year. *See* 85 Fed. Reg. 79,861 (Dec. 11, 2020) ("[T]he October 15 deadline established in § 668.41(g)(1) for IHEs to distribute their annual Equity in Athletics Disclosure Act (EADA) disclosures (required under § 668.47(c)) to required recipients is extended to December 31, 2020.").

athletic scholarships. To exceed these limits would make student-athletes ineligible to compete." https://www.insidehighered.com/quicktakes/2022/02/09/female-athletes-file-title-ix-suit-against-san-diego-state

190. If SDSU's statement is accurate, SDSU chose to sponsor women's and men's varsity athletic teams with NCAA scholarship limits that allow SDSU to award its male student-athletes far more athletic financial aid than its female student-athletes, and SDSU is depriving women of equal athletic financial aid because it chose to award close to 95% of all scholarships the NCAA limits permit.

191. SDSU's compliance with NCAA limits does not authorize or permit its violation of Title IX's equal athletic financial aid requirements.

## SDSU's Violations of Title IX's Equal Athletic Treatment and Benefits Requirements

192. SDSU fails to provide athletic treatment and benefits to its female varsity student-athletes equal to those it provides to its male varsity student-athletes and accordingly, intentionally discriminates against its female varsity student-athletes in violation of Title IX.

### *Provision of equipment and supplies*

193. SDSU does not give its female and male student-athletes an equal provision of equipment and supplies.

194. SDSU provides more equipment and supplies to the men on its men's teams than it provides to the women on its women's teams.

195. For example, many of the men on the men's teams receive four or more pairs of athletic shoes for the season while the women on the women's teams receive only two to three pairs of athletic shoes for the season and the women on some women's teams are not given even one pair of athletic shoes for their use.

196. The men on the men's teams are also provided with equipment and supplies of superior quality to the equipment and supplies that SDSU provides to the women on its women's teams.

197.   Likewise, women on SDSU's women's teams, such as track and field, are required to reuse equipment and supplies over a number of years while men on SDSU's men's team, such as football, are given new equipment and supplies every year.

*Scheduling of games and practice time*

198.   SDSU does not provide its female and male student-athletes with equal scheduling of games and practice times.

199.   Men on SDSU's men's teams are given priority for scheduling practice times and weight room training.

200.   SDSU requires women on its women's teams, such as the women's track and field team, to schedule their practices around the men on the men's teams, such as soccer, even when the men's team is not in its NCAA competitive season and the women's team is in its competitive season.

201.   SDSU gives the men's football team members priority scheduling over all the women on the women's teams for practices, weightlifting, and time in the athletic training center, even when football is not in its competitive season.

*Travel and per diem allowance*

202.   SDSU does not provide its female and male student-athletes with equal travel benefits and per diem allowances.

203.   SDSU provides the men on its football team with a private plane for travel to some away games and does not provide that same benefit to the women on any of the women's teams. The university also provides funding for the men on other men's teams to fly to away competitions while the women on women's teams are required to take a bus to competitions, even competitions that are more than ten hours away.

204.   SDSU provides the men on its men's teams with higher per diems for away travel—$200 to $300 for a competition weekend—and the women on its women's teams much smaller per diems for away travel—$75 to $100 for a competition weekend.

FIRST AMENDED CLASS ACTION COMPLAINT

205.   SDSU pays for the men on the men's football team to stay at a hotel the night before all home competitions and does not provide that same benefit to the women on any of the women's teams.

206.   SDSU also provides the men on its men's teams with catered meals during travel, while requiring the women on its women's teams to provide their own sack lunches while traveling.

*Opportunity to receive coaching and academic tutoring*

207.   SDSU does not provide its female and male student-athletes with equal opportunities to receive coaching and academic tutoring.

208.   SDSU gives the men on its men's teams, particularly the men's football and basketball teams, priority access to scheduling tutoring.

*Assignment and compensation of coaches and tutors*

209.   SDSU does not provide its female and male student-athletes with equal compensation of coaches.

210.   In the past two decades, SDSU has compensated the head coaches of its women's teams significantly less than the coaches of its men's teams.

211.   The information summarized in the charts below was submitted and verified as accurate by SDSU to the federal government under EADA.

FIRST AMENDED CLASS ACTION COMPLAINT

|      | Men's Teams Average Annual Salary per Head Coach | Men's Teams Number of Head Coaches | Women's Teams Average Annual Salary per Head Coach | Women's Teams Number of Head Coaches |
|------|------|------|------|------|
| 2003 | $229,455.00 | 6 | $90,385.00 | 10 |
| 2004 | $220,798.00 | 6 | $89,716.00 | 10 |
| 2005 | $269,509.00 | 6 | $102,469.00 | 10 |
| 2006 | $301,611.00 | 6 | $113,973.00 | 10 |
| 2007 | $345,744.00 | 6 | $123,965.00 | 10 |
| 2008 | $297,947.00 | 6 | $97,653.00 | 10 |
| 2009 | $318,864.00 | 6 | $122,652.00 | 10 |
| 2010 | $384,166.00 | 6 | $143,071.00 | 10 |
| 2011 | $422,181.00 | 6 | $142,932.00 | 11 |
| 2012 | $447,068.00 | 6 | $160,315.00 | 11 |
| 2013 | $448,049.00 | 6 | $155,113.00 | 11 |
| 2014 | $474,294.00 | 6 | $162,668.00 | 11 |
| 2015 | $487,877.00 | 6 | $170,778.00 | 11 |
| 2016 | $513,658.00 | 6 | $176,952.00 | 11 |
| 2017 | $458,683.00 | 6 | $178,840.00 | 11 |
| 2018 | $458,570.00 | 6 | $188,885.00 | 11 |
| 2019 | $534,335.00 | 6 | $202,715.00 | 11 |

212.   While some fluctuation in compensation is to be expected between sports, on average SDSU pays the head coaches of its women's teams less than half the amount that it pays the head coaches of its men's teams, and it has done so for almost twenty years.[6]

213.   The same is true of the assistant coaches of men's and women's teams at SDSU.

---

[6] SDSU only reports average salaries for all of its coaches combined through EADA.

|  | Men's Teams Average Annual Salary per Assistant Coach | Men's Teams Number of Assistant Coaches | Women's Teams Average Annual Salary per Assistant Coach | Women's Teams Number of Assistant Coaches |
|---|---|---|---|---|
| 2003 | $91,889.00 | 16 | $39,928.00 | 17 |
| 2004 | $97,892.00 | 17 | $47,090.00 | 18 |
| 2005 | $126,896.00 | 17 | $49,452.00 | 18 |
| 2006 | $146,504.00 | 17 | $57,285.00 | 18 |
| 2007 | $139,062.00 | 18 | $58,652.00 | 18 |
| 2008 | $113,777.00 | 18 | $42,092.00 | 19 |
| 2009 | $132,846.00 | 18 | $60,209.00 | 18 |
| 2010 | $166,425.00 | 17 | $70,599.00 | 16 |
| 2011 | $189,731.00 | 16 | $75,346.00 | 17 |
| 2012 | $204,229.00 | 16 | $85,974.00 | 17 |
| 2013 | $199,606.00 | 17 | $84,410.00 | 18 |
| 2014 | $211,241.00 | 17 | $85,567.00 | 18 |
| 2015 | $191,821.00 | 18 | $89,463.00 | 18 |
| 2016 | $216,300.00 | 18 | $93,241.00 | 18 |
| 2017 | $205,252.00 | 18 | $87,817.00 | 20 |
| 2018 | $209,792.00 | 19 | $95,496.00 | 20 |
| 2019 | $229,342.00 | 19 | $101,016.00 | 20 |

214.   This unequal compensation hinders SDSU's ability to attract and retain high-quality coaching staffs for its women's teams.

215.   This unequal compensation also ensures that female student-athletes will not receive coaching as valuable as the male student-athletes receive.

*Provision of locker rooms, practice, and competitive facilities*

216.   SDSU does not give its female and male student-athletes an equal provision of locker rooms and facilities.

217.   SDSU provides the men on its football team with their own private locker room, which was remodeled three years ago, within the football training center, and it provides the men on its baseball team with a state-of-the-art private locker room next to their baseball field.

218.   The locker rooms provided to the women on SDSU's women's water polo and swimming and diving teams are outdated and are not located at the facility where they practice and compete. These women are required to

travel—while soaking wet—to their locker rooms rather than having them next to their practice or competition facilities.

219.   The women's locker rooms at SDSU are furnished with furniture so old that the student-athletes do not even want to sit on it.

220.   SDSU also requires the women on some women's teams to share a single locker room, while the men on men's teams are not required to share locker rooms.

### *Provision of medical and training services*

221.   SDSU does not give its female and male student-athletes an equal provision of medical and training services.

222.   Women on some women's teams at SDSU often have to share athletic trainers with the men on men's teams. When they do, these athletic trainers are present at every practice and competition for the men's teams, but not at every practice and competition for the women's teams, even if that means they are present at a men's team's practice instead of a women's team's competition.

223.   The women on women's teams at SDSU are frequently required to wait for hours for an athletic trainer, while the men on men's teams are provided with athletic trainers at all times.

224.   The women on many women's teams at SDSU are also required to share one athletic trainer among multiple teams, while the men's football team is provided with three full-time athletic trainers and up to twelve student trainers every year.

### *Publicity*

225.   SDSU does not provide its female and male student-athletes with equal publicity.

226.   SDSU provides more publicity for the men on its football and men's basketball teams than it provides for the women on any women's team.

227.   SDSU posts more regularly on its website and SDSU's official social media accounts about the men on its football and basketball teams than any female sport.

228.   SDSU provides billboards around campus advertising the men's football team and does not do so for any women's teams.

229.   SDSU posts on the athletic department's social media accounts when the men on the men's teams are competing but does not post when the women on the women's teams are competing.

230.   SDSU provides the men on SDSU's football team with professional photographers at their practices and games, but the women on SDSU's women's teams are rarely provided with a photographer at competitions or even at conference championships when they are competing.

231.   SDSU closes off the athletic center in the front to interview the men on its football team before every football game to be posted on SDSU's official social media accounts. This treatment is not offered for any women's sports.

232.   SDSU sends out emails to all SDSU students regarding when sporting events and games will be, but it always provides the men on the men's teams with greater focus and attention, even if there are women's games or events taking place the same day or week.

*Recruiting*

233.   SDSU does not provide its female and male student-athletes with equal funding and opportunities for recruiting.

234.   For almost twenty years, the women on SDSU's women's varsity teams have been given much smaller recruiting budgets than the men on SDSU's varsity teams, resulting in SDSU spending far more on male student-athletes for recruiting.

235.   The information summarized in the chart was submitted and verified as accurate by SDSU to the federal government under EADA.

FIRST AMENDED CLASS ACTION COMPLAINT

| | Unduplicated Men's Participation | Unduplicated Women's Participation | Men's Team Recruiting Expenses | Women's Team Recruiting Expenses | % of women student athletes | % of recruiting expenses for women's teams | Recruiting dollars per female student | Recruiting dollars per male student |
|---|---|---|---|---|---|---|---|---|
| 2003 | 233 | 246 | $242,783.00 | $138,699.00 | 51.36% | 36.36% | $563.82 | $1,041.99 |
| 2004 | 227 | 269 | $301,065.00 | $141,574.00 | 54.23% | 31.98% | $526.30 | $1,326.28 |
| 2005 | 219 | 273 | $334,877.00 | $193,768.00 | 55.49% | 36.65% | $709.77 | $1,529.12 |
| 2006 | 234 | 273 | $336,880.00 | $200,511.00 | 53.85% | 37.31% | $734.47 | $1,439.66 |
| 2007 | 240 | 296 | $348,842.00 | $239,490.00 | 55.22% | 40.71% | $809.09 | $1,453.51 |
| 2008 | 239 | 293 | $267,110.00 | $236,812.00 | 55.08% | 46.99% | $808.23 | $1,117.62 |
| 2009 | 219 | 283 | $289,117.00 | $241,918.00 | 56.37% | 45.56% | $854.83 | $1,320.17 |
| 2010 | 222 | 269 | $221,214.00 | $184,276.00 | 54.79% | 45.45% | $685.04 | $996.46 |
| 2011 | 235 | 302 | $256,567.00 | $202,353.00 | 56.24% | 44.09% | $670.04 | $1,091.77 |
| 2012 | 231 | 312 | $323,204.00 | $213,019.00 | 57.46% | 39.73% | $682.75 | $1,399.15 |
| 2013 | 239 | 322 | $313,160.00 | $212,557.00 | 57.40% | 40.43% | $660.11 | $1,310.29 |
| 2014 | 236 | 310 | $396,690.00 | $199,810.00 | 56.78% | 33.50% | $644.55 | $1,680.89 |
| 2015 | 230 | 304 | $340,168.00 | $239,647.00 | 56.93% | 41.33% | $788.31 | $1,478.99 |
| 2016 | 226 | 315 | $368,555.00 | $227,700.00 | 58.23% | 38.19% | $722.86 | $1,630.77 |
| 2017 | 216 | 303 | $426,171.00 | $258,095.00 | 58.38% | 37.72% | $851.80 | $1,973.01 |
| 2018 | 221 | 316 | $443,370.00 | $232,419.00 | 58.85% | 34.39% | $735.50 | $2,006.20 |
| 2019 | 227 | 315 | $386,285.00 | $186,558.00 | 58.12% | 32.57% | $592.25 | $1,701.70 |

236.   In 2019-20, the 315 female student-athletes equaled 58.12% of SDSU's total student-athletes. But female student-athletes were provided with only 32.57% of the $572,843 in recruiting dollars SDSU provided its coaches that year to recruit student-athletes to its varsity sport teams. On average, SDSU spent only $592.25 to recruit each female student-athlete versus the $1,701.70 it spent to recruit each male student-athlete.

237.   In 2020-21, the 305 female student-athletes equaled 57.22% of the total student-athletes. But female student-athletes were provided with only 34.39% of the $675,789 in recruiting dollars SDSU provided its coaches that year to recruit student-athletes to its varsity sport teams. On average, SDSU spent only $735.50 to recruit each female student-athlete versus the $2,006.20 it spent to recruit each male student-athlete.

### SDSU's Violation of Title IX's Prohibition Against Retaliation

238.   On February 7, 2022, Plaintiffs filed the initial class action Complaint in this case, charging SDSU with intentionally discriminating against its female student-

athletes on the basis of their sex by depriving them of equal athletic financial aid of over half a million dollars each year.

239.   Just over one week later, on February 16, 2022, a previously unscheduled Zoom meeting with the women's varsity track and field team was called and recorded to discuss, among other things, the team's upcoming track and field competition.

240.   Five of the named Plaintiffs are currently members of the women's varsity track and field team and were present for this meeting, as were almost all of the more than forty other members of the team.

241.   At the outset of the meeting, before discussing the upcoming track and field competition, SDSU made clear that it was disappointed and unhappy with the five women who had brought the Title IX lawsuit against the school.

242.   SDSU described the Title IX lawsuit as a distraction to the women participating in the lawsuit and to the team as a whole.

243.   At the time it made these comments, SDSU knew that the five plaintiffs on the women's track and field team were already suing it for sex discrimination in violation of Title IX on behalf of all of the other female varsity student-athletes at SDSU.

244.   SDSU also knew that Plaintiffs were preparing to file a second class action claim against the school, seeking equal treatment and benefits for SDSU's current female student-athletes, unless SDSU would agree to provide equal treatment and benefits to its current female varsity student-athletes without the need for a lawsuit to be filed.

245.   SDSU was also aware that such a claim could be raised only by current female varsity student-athletes.

246.   SDSU likewise knew that, since the five Plaintiffs on the women's track and field team were already suing the school for depriving them of equal financial aid, there was a strong possibility that they would participate in the equal-treatment case.

FIRST AMENDED CLASS ACTION COMPLAINT

247.   SDSU further knew that the women's track and field team was the most obvious source for additional current female varsity student-athletes to pursue claims against SDSU for depriving its current female student-athletes of equal treatment and benefits.

248.   And SDSU knew that, if the Plaintiffs on the women's track and field team were directly and openly retaliated against for pursuing Title IX sex discrimination claims against the school, that would have a chilling effect on the rest of the women's track and field team members and other female student-athletes at SDSU, who would be deterred from pursuing their rights under Title IX and from working with Plaintiffs to challenge, expose, and remedy SDSU's sex discrimination.

249.   As a result of SDSU's comments at the Zoom meeting, the five members of the women's track and field team who are Plaintiffs were adversely affected, disturbed, upset, and harmed in their ability to pursue Title IX claims on behalf of themselves and the other female student-athletes at SDSU.

250.   Because of SDSU's comments, other women's track and field team members were immediately wary and are wary of pursuing Title IX claims against SDSU, including by joining as named Plaintiffs or otherwise participating or assisting in this case.

251.   Additionally, because of SDSU's comments, the other Plaintiffs and the past and current female varsity student-athletes on behalf of whom the Plaintiffs filed this case were damaged because the prosecution of Plaintiffs' claims and the ability of other female varsity student-athletes to pursue their own Title IX claims have been adversely affected, the discriminatory impact of SDSU's retaliation will increase as knowledge of it spreads, and all of the past and current SDSU female varsity student-athletes whose claims are at issue in this case are in the zone of interest protected by Title IX. *See A. B. v. Hawaii State Dep't of Educ.*, No. 20-15570, 2022 WL 996575, at *11 (9th Cir. Apr. 4, 2022).

252.   Moreover, SDSU's refusal to take action to ameliorate or minimize the harm done by its retaliatory comments has made things worse.

253.   On February 28, 2022, Plaintiffs reached out to SDSU regarding the retaliatory comments and asked SDSU to preserve and provide them a video of the Zoom meeting, which had been recorded.

254.   Plaintiffs requested that SDSU hold another meeting of the women's track and field team and make an agreed-upon statement to mitigate the damage done by its comments in the February 16 meeting.

255.   Plaintiffs also asked SDSU what actions it would take to ensure that no SDSU employee would retaliate against Plaintiffs and class members in the future or otherwise attempt to deter women from exercising their rights under Title IX.

256.   Finally, Plaintiffs asked SDSU to produce a copy of the recording of the Zoom meeting to ensure that there were no misunderstandings about what was said during the meeting.

257.   Having received no response, Plaintiffs followed up on these requests on March 2, 2022.

258.   On March 7, 2022, SDSU responded that it "disagreed" with Plaintiffs' "characterization of what transpired" at the meeting, claimed there was "no evidence of retaliatory actions or intent," and said that "the University will address the situation internally."

259.   In response, on March 8, 2022, because SDSU "disagreed" with Plaintiffs' "characterization of what transpired" and claimed "there was no evidence of retaliatory actions or intent," Plaintiffs again requested that SDSU simply provide the recorded video of the February 16 meeting with the team.

260.   Plaintiffs also requested, again, that SDSU explain how it planned to address the situation.

261.   SDSU declined to provide the video of the meeting and refused to provide any details about how it would address the comments made during that meeting.

FIRST AMENDED CLASS ACTION COMPLAINT

262.   Despite repeated requests, SDSU never explained why it would not share the video or explain how it intended to address the comments.

263.   As a result, Plaintiffs were left no choice but to vindicate their rights in this lawsuit.

## CLASS ALLEGATIONS

264.   Plaintiffs bring this action on behalf of themselves and a class and subclass of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3).

265.   Specifically, in regard to their claims for equal athletic financial aid:

a.   Plaintiffs seek to represent a class for damages under Rule 23(b)(3) of all current and former female students who participated in intercollegiate varsity athletics at SDSU from the 2019-20 academic year to the present and did not receive all of the athletic financial aid they could have received, and

b.   Plaintiffs currently participating in varsity athletics at SDSU seek to represent a subclass for injunctive relief under Rule 23(b)(2) of all current and future female students who participate in intercollegiate varsity athletics at SDSU and do not receive all of the athletic financial aid they could receive.

266.   In regard to their claim for equal benefits and treatment, Plaintiffs currently participating in varsity athletics at SDSU seek to represent a class for injunctive relief under Rule 23(b)(2) of all current and future female students who participate in intercollegiate athletics at SDSU.

267.   In regard to their claim for retaliation:

a.   Plaintiffs seek to represent a class for damages under Rule 23(b)(3) of all former female students who participated in intercollegiate varsity athletics at SDSU from the 2019-20 academic

FIRST AMENDED CLASS ACTION COMPLAINT

year to the present and did not receive all of the athletic financial aid they could have received, and

b.      Plaintiffs currently participating in varsity athletics at SDSU seek to represent a class for damages under Rule 23(b)(3) of all female students who are currently participating in intercollegiate varsity athletics at SDSU.

c.      Plaintiffs currently participating in varsity athletics at SDSU seek to represent a class for injunctive relief under Rule 23(b)(2) of all female current and future students who participate in intercollegiate varsity athletics at SDSU.

268.   Plaintiffs reserve the right to revise or amend the above class and subclass definitions based on facts learned in discovery.

269.   ***Numerosity.*** The proposed classes and subclass meet the "numerosity" requirement of Fed. R. Civ. P. 23(a)(1) because over 300 female student-athletes participated in varsity athletics at SDSU annually in and since the 2019-20 academic year. Joinder of them all is impracticable.

270.   The proposed classes and subclass also meet that requirement because joinder of all class members and all persons harmed by Defendants' past and still-ongoing sex discrimination in SDSU's varsity intercollegiate athletic program is impracticable.

271.   The proposed classes and subclass are known to exist, but the number of female student-athletes in some of them will increase during this litigation because of the nature of college enrollment and athletic participation. The number of female student-athletes harmed by Defendants' discrimination will grow as each outgoing class of students graduates and each incoming class of students starts attending SDSU.

272.   The exact number of female varsity student-athletes who have been, are being, and will be harmed by Defendants' conduct, while numerous, is unknown, making joinder impracticable for that reason, too.

FIRST AMENDED CLASS ACTION COMPLAINT

273. ***Commonality And Predominance.*** Plaintiffs satisfy the "commonality" requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3) because there are questions of law and fact in common to the proposed classes and subclass that predominate over any questions affecting only individual members, making a class action superior to other available methods for fairly and efficiently adjudicating the controversy. These questions include whether Defendants have violated and are violating Title IX (a) by failing to provide female varsity student-athletes at SDSU with proportional athletic financial aid, and, if so, what remedies the female varsity student-athletes are entitled to as a result; (b) by depriving female varsity student-athletes at SDSU of equal benefits and treatment and, if so, what remedies they are entitled to as a result; and (c) by retaliating against former and present female varsity student- athletes at SDSU and, if so, what remedies they are entitled to as a result.

274. Because Title IX requires comparison of the sex-segregated men's and women's athletic programs, the Title IX issues in this action are inherently class-based.

275. ***Typicality.*** The Plaintiffs proposed as representatives of the classes and subclass satisfy the "typicality" requirement of Federal Rule of Civil Procedure 23(a)(3) because their claims are typical of those of the proposed classes and subclass. They all have been denied and/or are being denied proportional athletic financial aid at SDSU because of Defendants' ongoing sex discrimination. The Plaintiffs who are current student-athletes are all being denied equal treatment and benefits. The Plaintiffs have all been retaliated against in violation of Title IX, as have all of the proposed retaliation damages class members, and the Plaintiffs who are current student-athletes all seek injunctive protection from retaliation going forward against current and future female student-athletes at SDSU. Plaintiffs all want to end SDSU's continuing violation of Title IX and recover appropriate remedies for themselves and the proposed class and subclass members.

276.  In addition, Plaintiffs, like all members of the proposed classes and subclass, have been, are being, or will be harmed by the ongoing sex discrimination in SDSU's varsity athletics program.

277.  ***Adequacy.*** The Plaintiffs proposed as representatives of the classes and subclass are members of the proposed classes and subclass and will fairly and adequately represent the interests of the classes and subclass as required by Rule 23(a)(4). They each intend to prosecute this action vigorously to secure fair and adequate monetary and equitable relief, as appropriate, for the classes and subclass. There is no conflict between the Plaintiffs proposed as class and subclass representatives and the class or subclass members.

278.  Plaintiffs have retained counsel who have significant experience and success prosecuting Title IX class actions against universities and will adequately represent the class. Their counsel has devoted substantial time to identifying and investigating the potential claims in this action, have developed detailed knowledge of the facts and the applicable law, have no conflicts with Plaintiffs or the putative classes or subclass, and have sufficient resources to commit to representing the putative classes and subclass.

279.  ***Rule 23(b)(3) Certification: Superiority.*** Plaintiffs satisfy the requirement for certification of their claims for damages under Rule 23(b)(3) because class certification would be superior to other available methods for the fair and efficient adjudication of this controversy. Here, it would be impractical and economically infeasible for class members to seek redress individually. Proof and resolution of their claims require class-wide evidence and findings. No other litigation concerning this controversy has already begun by other class members and litigation of these claims in this forum is desirable.

280.  ***Rule 23(b)(2) Certification: Defendants' Common Conduct.*** Plaintiffs satisfy the requirement for certification of their claims for equitable relief under Rule 23(b)(2) in that the Defendants are acting or refusing to act on grounds that apply

FIRST AMENDED CLASS ACTION COMPLAINT

generally to the class—by denying female student-athletes at SDSU proportional athletic financial aid, by denying them equal treatment and benefits, and by retaliating against them when they raise concerns about the school's sex discrimination—so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

281.   Plaintiffs are seeking equitable relief under Rule 23(b)(2) because they have no adequate remedy at law to prevent Defendants from violating Title IX in the future by depriving SDSU's female varsity student-athletes of equal athletic financial aid, by denying them equal treatment and benefits, and by retaliating against them when they raise concerns about the school's sex discrimination.

## COUNT I

## Title IX

### Denial of Equal Allocation of Athletic Financial Aid

282.   Plaintiffs re-allege and incorporate here by reference each and every allegation in the paragraphs above.

283.   Plaintiffs bring this claim as a class action as set forth under the Class Allegations and on behalf of the class defined above.

284.   SDSU provides athletic financial aid to some of its male and female varsity student-athletes.

285.   Under Title IX and 34 C.F.R. § 106.37, as interpreted by OCR, SDSU must provide athletic financial aid to its female and male student-athletes in proportion to the number of students of each sex participating in intercollegiate athletics.

286.   SDSU has not provided and does not provide athletic financial aid to its female and male student-athletes in proportion to the number of students of each sex participating in intercollegiate athletics.

287.   SDSU has provided and continues to provide its female varsity student-athletes much less—and its male varsity student-athletes much more—athletic

FIRST AMENDED CLASS ACTION COMPLAINT

financial aid than they would have received if SDSU had granted such aid in proportion to the number of students of each sex participating in intercollegiate athletics.

288. SDSU's failure to provide its female student-athletes with athletic financial aid in proportion to the number of female student-athletes participating in intercollegiate athletics constitutes sex discrimination in violation of Title IX and 34 C.F.R. § 106.37.

289. Individuals harmed by violations of Title IX may seek and recover monetary damages, injunctive relief to prevent continuing discrimination, declaratory relief, and attorneys' fees and costs.

290. Plaintiffs and the class members have been and are harmed by Defendants' failure to provide SDSU's female student-athletes with athletic financial aid in proportion to the number of female student-athletes participating in intercollegiate athletics. Such harm includes, but is not limited to, lost athletic financial aid and being subjected to sex discrimination. Accordingly, they are entitled to the relief requested herein.

## COUNT II

## Title IX

### Denial of Equal Athletic Treatment and Benefits

291. Plaintiffs re-allege and incorporate here by reference each and every allegation in paragraphs 1 through 281.

292. Plaintiffs bring this claim as a class action as set forth under the Class Allegations and on behalf of the class defined above.

293. SDSU provides its varsity student-athletes with certain benefits, including but not limited to, equipment, supplies, uniforms, locker rooms, scheduling for competitions, transportation and accommodations for travel, per diem for travel, coaching, tutoring and academic support services, practice and competition facilities, medical and training services, weight training and

conditioning services, housing and dining services, sports information and publicity services, recruiting, video support, and other services.

294.   Under Title IX and 34 C.F.R. §106.41(c), SDSU must allocate these benefits equally between male athletes and female athletes. On a program-wide basis, it must provide female athletes with benefits that are comparable to those that it provides to male athletes.

295.   Defendants fail to provide female student-athletes with an equal allocation of these benefits. This failure constitutes sex discrimination in violation of Title IX.

296.   SDSU has not sufficiently allocated benefits (or the resources and budgets necessary to provide the benefits) to its female athletes.

297.   Defendants fail to provide equal athletic benefits in some or all of the categories set forth in the Regulations and the Policy Interpretation, including but not limited to:

    1. The provision of equipment, uniforms, and supplies;

    2. Scheduling of games and practice time;

    3. Travel, transportation, and per diem allowance;

    4. Opportunity to receive coaching and academic tutoring;

    5. Assignment and compensation of coaches and tutors;

    6. Provision of locker rooms, practice and competitive facilities;

    7. Provision of medical and training services;

    8. Provision of housing and dining facilities and services;

    9. Publicity & sports information services;

    10. Administrative support;

    11. Recruiting resources and support; and

    12. Resources necessary to provide any of the foregoing benefits or to provide the female athletes with a genuine

Division I athletic experience.

298.   Plaintiffs are harmed by SDSU's failure to provide its female student-athletes with an equal allocation of benefits and resources. Such harm includes lost educational opportunities, lost competitive advantage, less quality in participation opportunities, and being subjected to sex discrimination. Accordingly, they are entitled to the relief requested herein.

**COUNT III**

**Title IX**

**Retaliation**

299.   Plaintiffs re-allege and incorporate here by reference each and every allegation in paragraphs 1 through 281.

300.   Plaintiffs bring this claim as a class action as set forth under the Class Allegations and on behalf of the class defined above.

301.   Title IX and its implementing regulations prohibit retaliation for complaints of sex discrimination. 20 U.S.C. §1681; 34 C.F.R. § 106.71; *Jackson,* 544 U.S. at 174, 178, 183. Such retaliation includes "intimidat[ing], threaten[ing], coerc[ing], or discriminat[ing] against any individual for the purpose of interfering with any right or privilege secured by title IX." 34 C.F.R. § 106.71.

302.   Plaintiffs are females who were previously or are currently varsity student-athletes at SDSU who have been and are continuing to be discriminated against by SDSU due to its intentional deprivation of equal athletic financial aid and equal treatment and benefits on the basis of their sex in violation of Title IX.

303.   On February 7, 2022, Plaintiffs engaged in protected activity by filing this class action lawsuit against SDSU alleging sex discrimination in SDSU's intentional deprivation of equal athletic financial aid on the basis of their sex in violation of Title IX. *See Ollier*, 768 F.3d at 868.

304.   Just over one week later, on February 16, 2022, SDSU unlawfully retaliated against Plaintiffs by making negative statements about Plaintiffs and this

lawsuit and expressing unhappiness and disappointment with their participation in the lawsuit.

305.   SDSU subjected Plaintiffs to this retaliation because they engaged in protected activity by filing this class action lawsuit against SDSU alleging sex discrimination.

306.   In addition, SDSU refused to agree to Plaintiffs' requests that it take action to mitigate the harm caused by its retaliation, causing and allowing that harm to increase.

307.   As a result of SDSU's retaliation, Plaintiffs and others similarly situated have suffered and continue to suffer harm, including, but not limited to, anger, upset, frustration, interference with their ability to pursue and vindicate their rights under Title IX, and being subjected to sex discrimination.

308.   Plaintiffs and others similarly situated are entitled to relief including monetary damages, declaratory relief, injunctive relief, and their attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

A.   Certify this case as a class action for the following:

In regard to their claim for equal athletic financial aid:

•   A class for damages under Rule 23(b)(3) of all current and former female students who participated in intercollegiate varsity athletics at SDSU from the 2019-20 academic year to the present and did not receive all of the athletic financial aid they could have received, and

•   A subclass for injunctive relief under Rule 23(b)(2) of all current and future female students who participate in intercollegiate varsity athletics at SDSU and do not receive all of the athletic financial aid they could receive.

In regard to their claim for equal treatment and benefits:

• A class for injunctive relief under Rule 23(b)(2) of all current and future female students who participate in intercollegiate varsity athletics at SDSU who did not receive equal treatment and benefits.

In regard to their claim for retaliation:

• A class for damages under Rule 23(b)(3) of all former female students who participated in intercollegiate varsity athletics at SDSU from the 2019-20 academic year to the present and did not receive all of the athletic financial aid they could have received, and

• A subclass for damages under Rule 23(b)(3) of all female students who are currently participating in intercollegiate athletics at SDSU.

• A subclass for injunctive relief under Rule 23(b)(2) of all current and future female students who participate in intercollegiate varsity athletics at SDSU.

B.    Appoint the Plaintiffs referred to in the Class Allegations above as representatives of the respective classes and subclass, and appoint Plaintiffs' counsel as class counsel;

C.    Enter an order declaring that SDSU has discriminated and is discriminating against its past and current female varsity student-athletes on the basis of their sex in the distribution of athletic financial aid in violation of Title IX and the Regulations promulgated thereunder;

D.    Enter an order declaring that SDSU is discriminating against its current female varsity student-athletes on the basis of their sex in the provision of treatment and benefits in violation of Title IX and the Regulations promulgated thereunder;

E.    Enter an order declaring that SDSU has illegally retaliated against its past and current female varsity student-athletes in violation of Title IX and the Regulations promulgated thereunder;

FIRST AMENDED CLASS ACTION COMPLAINT

F. Issue a permanent injunction barring SDSU from discriminating against its female student-athletes on the basis of their sex by (a) depriving them of equal athletic financial aid, (b) denying them equal treatment and benefits in SDSU's varsity intercollegiate athletics program, and (c) retaliating against them for speaking about and challenging SDSU's sex discrimination in violation of Title IX.

G. Award compensatory damages and other monetary relief as permitted by law to Plaintiffs and all members of the athletic financial aid damages class for SDSU's violation of their right to equal athletic financial aid;

H. Award nominal, compensatory, as appropriate and other monetary relief as permitted by law to Plaintiffs and all members of the retaliation damages classes for SDSU's retaliation in violation of Title IX.

I. Maintain jurisdiction over this action to monitor SDSU's compliance with this Court's orders;

J. Award Plaintiffs their reasonable attorneys' fees and expenses; and

K. Order such other and further relief as the Court deems appropriate.

Dated: April 20, 2022

Respectfully submitted,
*/s/ Joshua I. Hammack*
Joshua I. Hammack (*pro hac vice*)
Cary Joshi (*pro hac vice*)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
E-mail: jhammack@baileyglasser.com
E-mail: cjoshi@baileyglasser.com

Arthur H. Bryant SBN 208365
**BAILEY & GLASSER, LLP**
1999 Harrison Street, Suite 660
Oakland, CA 94612
Tel.: (510) 272-8000
E-mail: abryant@baileyglasser.com

Lori Bullock (*pro hac vice*)
**BAILEY & GLASSER LLP**
309 E. 5th Street, Suite 202B
Des Moines, IA 50309
Tel.: 515.416.9051
E-mail: lbullock@baileyglasser.com

David S. Casey, Jr. SBN 69768
Gayle M. Blatt SBN 122048
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
E-mail: dcasey@cglaw.com
E-mail: gmb@cglaw.com

Amber Eck SBN 177882
Jenna Rangel SBN 272735
**HAEGGQUIST & ECK, LLP**
225 Broadway, Ste 2050
San Diego, CA 92101
Tel: (619) 342-8000
E-mail: ambere@haelaw.com
E-mail: jennar@haelaw.com

*ATTORNEYS FOR PLAINTIFFS*

FIRST AMENDED CLASS ACTION COMPLAINT