David S. Casey, Jr., SBN 60768
*dcasey@cglaw.com*
Gayle M. Blatt, SBN 122048
*gmb@cglaw.com*
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811

Arthur H. Bryant, SBN 208365
*abryant@baileyglasser.com*
**BAILEY & GLASSER, LLP**
1999 Harrison Street, Suite 660
Oakland, CA 94612
Telephone: (510) 272-8000

*Attorneys for Plaintiffs and the proposed classes*

[Additional counsel on signature page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON FISK, RAQUEL CASTRO, GRETA VISS, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all those similarly situated, | Case No. 3:22-cv-00173-TWR-MSB |
| *Plaintiffs*, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| *v.* | |
| BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY and SAN DIEGO STATE UNIVERSITY, | Time: 1:30 p.m. Date: July 14, 2022 Judge: Hon. Todd W. Robinson Courtroom: 3A |
| *Defendants*. | |

i

# TABLE OF CONTENTS

INTRODUCTION...................................................................................1

STANDARD ........................................................................................3

ARGUMENT ......................................................................................4

   I.   Plaintiffs Plausibly Alleged a Title IX Violation Based on SDSU's Failure to Provide Equal Financial Aid to Female Student-Athletes..............4

   A.  Plaintiffs adequately pleaded concrete injuries-in-fact and have standing to pursue their equal athletic financial aid claims. .......................4

   B.  Plaintiffs' equal athletic financial aid claims extend back at least as far as the 2018-2019 academic year....................................................9

   C.  Plaintiffs' well-pleaded allegations plausibly establish a Title IX violation with respect to equal athletic financial aid. ...................................10

   D.  Plaintiffs are entitled to recover damages for being denied equal athletic financial aid in violation of Title IX...............................................17

II.  Plaintiffs Plausibly Alleged a Title IX Violation Based on SDSU's Failure to Provide Equal Athletic Treatment and Benefits to Female Student-Athletes.................................................................................19

   A.  Plaintiffs adequately pleaded concrete injuries-in-fact and have standing to pursue their athletic treatment and benefits claim.................19

   B.  Plaintiffs alleged specific discriminatory treatment they have experienced or witnessed at SDSU. .............................................................20

   C.  Plaintiffs appropriately alleged program-wide comparisons. .............22

   III.   Plaintiffs Plausibly Alleged a Title IX Violation Based on Retaliation....
.................................................................................................23

CONCLUSION..................................................................................25

# TABLE OF AUTHORITES

## Cases

*A.B. v. Hawaii State Dep't of Ed.*, 30 F.4th 828 (9th Cir. 2022) ...................... 24, 25

*Alston v. Virginia High Sch. League, Inc.,* 144 F. Supp. 2d 526 (W.D. Va. 1999).23

*Anders v. California State Univ., Fresno*, 2021 WL 3115867 (E.D. Cal. July 22, 2021) ...................................................................................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...........................................................3, 4

*Balow v. Michigan State Univ.*, 24 F.4th 1051 (6th Cir. 2022)...............................16

*Barnes v. Gorman*, 536 U.S. 181 (2002) ........................................................17

*Barrett v. W. Chester Univ. of Pennsylvania of State Sys. of Higher Educ.*, No. CIV.A. 03-CV-4978, 2003 WL 22803477 (E.D. Pa. Nov. 12, 2003).................20

*Beasley v. Alabama State University*, 966 F. Supp. 1117 (M.D. Ala. 1997) ...........7

*Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869 (9th Cir. 1995) ..................6

*Cath. League for Religious & C.R. v. City & Cty. of San Francisco*, 624 F.3d 1043 (9th Cir. 2010) ...................................................................................................5

*Cohen v. Brown Univ.*, 809 F. Supp. 978 (D. R.I. 1992)...................................21

*Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022).................18

*Emeldi v. Univ. of Oregon*, 698 F. 3d 715 (9th Cir. 2012).................................24

*Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60 (1992) ................................17

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997)............................9, 16

*Gonyo v. Drake University*, 879 F. Supp. 1000 (S.D. Iowa 1995).........................14

*Gratz v. Bollinger*, 539 U.S. 244 (2003)........................................................6

*Gray v. Greyhound Lines, E.*, 545 F.2d 169 (D.C. Cir. 1976)..................................5

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) ...................... 17, 23, 24

*Kwan v. SanMedica, Int'l*, 854 F.3d 1088 (9th Cir. 2017) .................................3

*Landow v. Sch. Bd. of Brevard County*, 132 F.Supp.2d 958 (M.D. Fla. 2000).......23

*Leibovitz v. New York City Transit Auth.*, 252 F.3d 179 (2d Cir. 2001) ..................5

*Lewis v. Casey*, 518 U.S. 343 (1996)...........................................................22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................19

*Mansourian v. Regents of Univ. of California*, 602 F.3d 957 (9th Cir. 2010) . 16, 17

*McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275 (2d Cir. 2004) ............................................................................................... 19, 21

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986) ...........................................5

*Mich. High Sch. Athletic Ass'n, Inc. v. Comm's for Equity*, 178 F.Supp.2d 805 (W.D. Mich. 2001) ..........................................................................................23

*Monroe v. McDaniel*, 386 Fed. App'x 714 (9th Cir. 2010)..................................24

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656 (1993).................................................................................6

*Ohlenshelen v. Univ. of Iowa*, 509 F. Supp. 3d 1085 (S.D. Iowa 2020) .................16

*Ollier v. Sweetwater Union High Sch. Dist.*, 858 F. Supp. 2d 1093 (S.D. Cal. 2012) .................................................................................................................20
*Ollier v. Sweetwater Union High School District*, 768 F.3d 843 (9th Cir. 2014) ...24
*Portz v. St. Cloud Univ.*, 16 F.4th 577 (8th Cir. 2021) ........................................21
*Raines v. Byrd*, 521 U.S. 811 (1997) ....................................................................19
*Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000)................................................24
*Schwake v. Arizona Bd. of Regents*, 967 F.3d 940 (9th Cir. 2020) ................ passim
*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) ...............................................4
*Spokeo v. Robbins*, 136 S. Ct. 1540 (2016) ............................................................5

**Other Authorities**

OCR, U.S. DOE, *Dear Colleague Letter* (April 24, 2013) ....................................24
OCR, U.S. DOE, *Dear Colleague Letter* (July 23, 1998) ..................................6, 13

**Regulations**

34 C.F.R. § 106.41(c)...............................................................................................20
34 C.F.R. § 106.71 ...................................................................................................23
34 C.F.R. §106.37(c).................................................................................................5
OCR Title IX and Regulation Policy Interpretation, 44 Fed. Reg. 71,413 (1979) 14, 20, 21

**Constitutional Provisions**

U.S. CONST. art. VI, cl. 2.........................................................................................14

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1

**INTRODUCTION**

2       This case is a class action against San Diego State University ("SDSU") for

3   discriminating and retaliating against its female student-athletes on the basis of their

4   sex in violation of Title IX. SDSU has violated—and is violating—Title IX by denying

5   its female student-athletes equal athletic financial aid and equal treatment and benefits,

6   and by responding to their efforts to protect their rights through this litigation with

7   intimidation. Plaintiffs' allegations on these points far exceed the requirements of

8   plausibility. SDSU's motion to dismiss should be denied.

9       Plaintiffs are eleven former members of SDSU's now-eliminated women's

10  rowing team, five current members of SDSU's women's track and field team, and one

11  now-graduated former member of SDSU's women's track and field team. *See* Am.

12  Compl., ECF No. 24, at ¶¶ 27, 33, 39, 45, 56, 62, 75, 102, 115, 120, 125 (women's

13  rowing team); *id.* at ¶¶ 68, 81, 88, 95, 108 (women's track and field team); *id.* at ¶¶ 51

14  (graduated member of women's track and field team). None of the seventeen named

15  Plaintiffs received a full scholarship for participating in SDSU's athletics program. *See*

16  *id.* at ¶ 19. Sixteen received some athletic financial aid, varying from $400 for books

17  to almost full-tuition scholarships. *See id.* at ¶¶ 29, 35, 41, 47, 52, 58, 64, 70, 93, 90,

18  97, 104, 110, 116, 121, 126. One received no aid whatsoever. *See id.* at ¶ 77.

19      In Count I of the Amended Complaint, Plaintiffs allege SDSU violated Title IX

20  by offering a disproportionately low level of athletic financial aid to its female student-

21  athletes. *See id.* at ¶¶ 282–90. Using data SDSU submitted to the federal government

22  pursuant to the Equity in Athletics Disclosure Act ("EADA"), the Amended Complaint

23  details the number of female student-athletes, the number of male student-athletes, and

24  the financial aid awarded to each group. *See id.* at ¶¶ 176–80.[1] These allegations make

25  clear that female student-athletes were awarded less than a proportional share of

26

---

27  [1] As discussed below, the relevant participation figures were taken from the "unduplicated"

28  field provided in SDSU's EADA reports. *See infra* at Part I.C.

financial assistance every year from 2010-11 to 2020-21. *See id.* Indeed, the shortfall to female student-athletes was never *smaller* than 4.17% or $228,447.97. *See id.*

Plaintiffs also allege that "more male [student-]athletes at SDSU are in-state residents" and "more female student-athletes are non-residents," meaning male student-athletes at SDSU have a *lower* average cost of attendance than female student-athletes. *See id.* at ¶¶ 17–18, 188. And yet male student-athletes are still receiving substantially more financial assistance than female student-athletes, and they have been for at least eleven straight years. *See id.* at ¶¶ 176–78. These figures demonstrate a fundamental truth: "SDSU has not provided and does not provide athletic financial aid to its female varsity student-athletes in proportion to their athletic participation rates and, accordingly, intentionally discriminates against its female varsity student-athletes on the basis of their sex in violation of Title IX." *Id.* at ¶ 171.

In Count II of the Amended Complaint, Plaintiffs allege that SDSU violated Title IX by failing to provide its female student-athletes with equal athletic treatment and benefits. *See id.* at ¶¶ 291–98. Plaintiffs provide myriad examples of unequal treatment between the men's and women's athletic programs. *See id.* at ¶¶ 192–237. Among other things, Plaintiffs outline inequities in the provision of equipment and supplies, the student-athlete locker rooms, access to medical and athletic training staff, access to academic tutoring services, publicity for women's sports, and resources for coaches' and athletes' recruitment. *See id.* Plaintiffs rely on SDSU's EADA data to demonstrate that women's teams' coaches and assistant coaches are paid on average about half that of the men's teams' coaches, resulting in women's teams being cheated out of the ability to attract and retain equally high-quality coaching staff. *See id.* at ¶¶ 209–15. Similarly, Plaintiffs rely on SDSU's EADA to demonstrate that, although 58% of the student-athletes are women, SDSU provides only 32% of its recruiting budget to the coaches of women's sports, directly affecting who coaches are able to recruit to the women's teams at SDSU. The allegations provide a clear picture that SDSU provides

its men's teams with a top-notch Division I varsity experience, while the female student-athletes at SDSU are treated far less well.

In Count III of the Amended Complaint, Plaintiffs allege that SDSU retaliated against them for filing this lawsuit. *See id.* at ¶¶ 299–308. Shortly after Plaintiffs, including members of the women's track and field team, filed their initial Complaint, SDSU held a Zoom meeting with that team, singled out those who were participating in the lawsuit, expressed disappointment with those team members, and described the lawsuit as a distraction to the team's goals. *See id.* at ¶¶ 238–43. Making things worse, when Plaintiffs asked SDSU to mitigate the damage caused by those comments, which deterred other students from joining in Plaintiffs' equal treatment and benefits claims—which SDSU knew were coming—SDSU refused Plaintiffs' requests and made clear to all that the women were on their own. *See id.* at ¶¶ 243–63. SDSU could have assured Plaintiffs and all female student-athletes that they could pursue their rights under Title IX without the fear of retaliation, but it left them with that fear instead. *Id.*

There is no basis to dismiss any of Plaintiffs' claims. Instead, this case should proceed to discovery and be resolved on the merits. Plaintiffs deserve their day in court.

## STANDARD

To survive a motion to dismiss, a complaint must simply contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, all well-pleaded allegations must be taken as true, and *all* inferences must be construed in the light most favorable to Plaintiffs. *See, e.g.*, *Kwan v. SanMedica, Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Somers v. Apple, Inc.*, 729 F.3d 953, 959

(9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability. *Iqbal*, 556 U.S. at 678; *Somers*, 729 F.3d at 960.

"In assessing the sufficiency of a complaint, the role of the court is not in any way to evaluate the truth as to what really happened, but merely to determine whether the plaintiff's factual allegations are sufficient to allow the case to proceed." *Schwake v. Arizona Bd. of Regents*, 967 F.3d 940, 947–48 (9th Cir. 2020) (internal quotation marks and citation omitted). "Sex discrimination need not be the only plausible explanation or even the most plausible explanation for a Title IX claim to proceed." *Id.* (citation omitted).

## ARGUMENT

SDSU seeks to have all three counts of Plaintiffs' Amended Complaint dismissed. But Plaintiffs have standing to pursue and have plausibly alleged Title IX violations as to all three counts. Accordingly, SDSU's motion should be denied.

### I.    Plaintiffs Plausibly Alleged a Title IX Violation Based on SDSU's Failure to Provide Equal Financial Aid to Female Student-Athletes.

Plaintiffs have sufficiently alleged a persistent and substantial gap in financial assistance offered to female student-athletes at SDSU. *See, e.g.*, Am. Compl., ECF No. 24, at ¶¶ 176–78. Plaintiffs have further alleged that SDSU's discriminatory treatment has injured them personally—by subjecting them to sex discrimination, by denying them the opportunity to receive proportional financial assistance, and by reducing the scholarship dollars they otherwise would have received (*i.e.*, if SDSU complied with Title IX instead of violating it). *See, e.g.*, *id.* at ¶¶ 20–21. No more is required to survive SDSU's motion to dismiss. To contend otherwise, SDSU advances a series of meritless arguments, none of which survives even the slightest scrutiny.

### A. Plaintiffs adequately pleaded concrete injuries-in-fact and have standing to pursue their equal athletic financial aid claims.

Standing requires that Plaintiffs "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision." Motion, ECF No. 30-1, at 490[2] (quoting *Spokeo v. Robbins*, 136 S. Ct. 1540, 1547 (2016)). SDSU's argument is limited to the injury-in-fact prong. *See* Motion, ECF No. 30-1, at 490-93.

As alleged in the Amended Complaint, SDSU has made the institutional choice—year after year—to allocate a disproportionate amount of funding for financial assistance to male student-athletes. *See, e.g.*, Am. Compl., ECF No. 24, at ¶¶ 176–79. As a result of this intentional and discriminatory conduct, Plaintiffs have suffered at least three concrete and particularized injuries-in-fact.

*First*, Plaintiffs have suffered the psychological harm associated with (1) being the targets of SDSU's discriminatory conduct, and (2) participating in an athletics program that actively discriminates against them. *See, e.g.*, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–66 (1986) (holding that the psychological harm associated with operating in a discriminatory environment is an injury-in-fact); *Cath. League for Religious & C.R. v. City & Cty. of San Francisco*, 624 F.3d 1043, 1052–53 & n. 33 (9th Cir. 2010) (holding that the psychological harm of being excluded, stigmatized, denigrated, or made to feel second class on an impermissible basis—like religion or sex—is a concrete injury-in-fact); *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 184–88 (2d Cir. 2001) (similar); *Gray v. Greyhound Lines, E.*, 545 F.2d 169, 175 (D.C. Cir. 1976) (similar). This reality alone confers standing on all Plaintiffs.

*Second*, SDSU's intentional decision to skew financial-aid funding toward male student-athletes deprived all Plaintiffs of the equality demanded by Title IX—namely, the *opportunity* to receive equal financial aid. It is this equal opportunity, and not any supposed "right to a scholarship," that Title IX protects. *See, e.g.*, 34 C.F.R. §106.37(c) (providing that, when a school offers athletic financial awards, it "must provide reasonable *opportunities* for such awards for members of each sex *in proportion* to the number of students of each sex participating in interscholastic or intercollegiate

---

[2] All references to Defendants' Motion will use PageID numbers for pincites.

athletics" (emphases added)); *see also* OCR, U.S. DOE, *Dear Colleague Letter* at 2–4 (July 23, 1998) *available at* https://www2.ed.gov/about/offices/list/ocr/docs/bowlgrn. html (similar).

In this respect, standing to bring a financial-aid claim finds a tidy parallel in the equal-protection context. There, for example, the Supreme Court has proclaimed:

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier . . . to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993); *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003) (explaining that students had standing to challenge Michigan's "use of race in undergraduate admissions" because they had been "denied . . . the opportunity to compete for admission on an equal basis"); *Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869, 873 (9th Cir. 1995) (holding that plaintiffs have standing if they can "show that they are forced to compete on an unequal basis").

In short, Plaintiffs have a legally cognizable interest in the equal opportunity for financial aid demanded by Title IX and associated regulations, even if they do not have a separate "right" to a scholarship. SDSU's institutional and discriminatory choice to allot substantially more financial-aid money to male student-athletes has denied them that equal opportunity. Put otherwise, SDSU has intentionally elected to use Plaintiffs' sex as a barrier when dispensing the benefit of athletic financial assistance. And Plaintiffs have standing to challenge the barrier SDSU has erected.

Seen in this light, SDSU's argument that Plaintiffs lack standing because "[n]o particular student-athlete has a protected interest in, or individualized right to, an athletic scholarship under Title IX," Motion, ECF No. 30-1, at 491, collapses under its

own weight. The same is true of the purported "failures" to show that the named Plaintiffs "would have been 'entitled' to be selected . . . to receive a scholarship but for any alleged discrimination." *Id.* at 493.[3] SDSU has improperly focused on whether there is a right to the benefit itself (*e.g.*, a spot on the board, the contract being awarded, college admission, or a scholarship) rather than having a protected interest in the opportunity to be considered for that benefit on equal footing, without invidious discriminatory barriers. SDSU's misguided focus does not divest Plaintiffs of standing.

*Beasley v. Alabama State University*, on which SDSU heavily relies, is not to the contrary. 966 F. Supp. 1117 (M.D. Ala. 1997). As that court explained, "Title IX . . . proceeds according to an impact-based model of discrimination that is at least preliminarily, and perhaps inherently, group-focused or class-wide." *Id.* at 1125. A Title IX plaintiff's claims "hinge[] on how women athletes as a class . . . have been treated related to male athletes." *Id.* "[S]tanding to assert a claim . . . must hinge on overall disproportionate provision of support funds to athletes of each gender, and on whether [the plaintiff] can show a relationship of causation from that overall funding disparity" and her own financial assistance. *Id.* at 1126. Plaintiffs clearly satisfy the first part of this test. *See* Am. Compl., ECF No. 24, at ¶¶ 176–79; *infra* at Part I.C. And they just as clearly satisfy the second part as well—SDSU's intentional decision to offer more financial aid to male student-athletes is the reason Plaintiffs did not receive greater (or equal) financial aid here.

SDSU also relies on *Balow v. Michigan State University*, but that case provides it no help at all. *Balow* held the plaintiffs in that case lacked standing because they did "not contend . . . that they were denied scholarships given to men or that they received smaller scholarships or less financial assistance than their male counterparts." Motion,

---

[3] Plaintiffs—student-athletes on varsity programs who did not receive the full measure of athletic financial aid—were certainly *eligible* for additional financial assistance. *See, e.g.*, Am. Compl., ECF No. 24, at ¶¶ 19, 29, 35, 41, 47, 52, 58, 64, 70, 77, 83, 90, 97, 104, 110, 116, 121, 126.

ECF No. 30-1, at 492. But that, of course, is *precisely* what Plaintiffs have alleged here. *See* Am. Compl., ECF No. 24, at ¶¶ 176–79. Plaintiffs have alleged that they have been denied access to the financial-aid funding provided to male student-athletes and that they have received less financial assistance than their male counterparts as a result. *See id.*[4]

*Third*, because of SDSU's discriminatory choice to offer more financial-aid funding to male student-athletes, Plaintiffs have received smaller scholarship awards than they would have received if SDSU had complied with Title IX. SDSU argues this connection is "speculative" and "conclusory." Motion, ECF No. 30-1, at 491. But Plaintiffs' allegations are neither. They are a matter of strict logic. The proportionality of financial aid awarded in the past poses a relatively simple math problem. Having decided to offer male student-athletes a particular level of financial assistance, there is only one way to render the aid proportional. SDSU cannot go back in time and claw back money given to male student-athletes. That level of aid would have been proportional only if SDSU awarded women substantially more aid. And the additional dollars that should have been allocated to female student-athletes could have been awarded only to those—like all Plaintiffs—not already receiving full scholarships.

Requiring Plaintiffs to allege, without discovery, exactly how much each specific individual Plaintiff might have received in the counterfactual world where SDSU's provision of athletic financial assistance complied with Title IX requires the impossible. At this stage, there is no way for Plaintiffs to trace how hypothetical dollars would have been distributed from the athletics program to women's sports, and then

---

[4] Similarly, there is no reason to credit dicta from *Anders v. California State Univ., Fresno*, 2021 WL 3115867, at *17–18 (E.D. Cal. July 22, 2021). The financial-aid claim there was decided based on whether the female participation figures had been unduplicated. The court's comments about its inability to infer which plaintiffs had been denied scholarships is in substantial tension with the Supreme Court and Ninth Circuit precedent cited above, *see supra* at 6, and should be disregarded. Likewise, the *Anders* court ignored the psychological harms discussed above.

from coaches to female student-athletes, in the past. *See, e.g.*, *Schwake*, 967 F.3d at 949 ("The absence of this level of detail from [the] complaint does not render [the] allegation conclusory or insufficient. There is no heightened pleading standard for Title IX claims. . . . It may be difficult for a plaintiff to know the full extent of alleged discrimination in decision making before discovery allows a plaintiff to unearth information controlled by the defendant."); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 250 (9th Cir. 1997) (rejecting an argument that would require "plaintiffs to plead facts they may have no way of knowing"). Those dollars were withheld from female student-athletes based on their sex. The lost dollars are a concrete injury-in-fact.

As a final point, the fact that most Plaintiffs "received a scholarship of some sort," Motion, ECF No. 30-1, at 492, has no bearing on standing. Were the rule otherwise, no female student-athlete who received $1 in financial aid would have standing to assert a financial-aid claim. But Title IX demands *equality* and *proportionality* in financial assistance, not the mere existence of "scholarship[s] of some sort." That Plaintiffs might receive "some" financial assistance is irrelevant; the allegations show they were not receiving equal financial assistance. No more is required.

Because SDSU's discriminatory conduct caused Plaintiffs concrete and particularized injuries, Plaintiffs have standing to assert a Title IX claim regarding financial assistance. As such, SDSU's motion to dismiss should be denied.

### B. Plaintiffs' equal athletic financial aid claims extend back at least as far as the 2018-2019 academic year.

SDSU next argues that Plaintiffs' equal athletic financial aid claims must be limited to the 2020–21 academic year because "Plaintiffs knew their 2019-20 scholarship grant amounts prior to July 1, 2019." Motion, ECF No. 30-1, at 493; *see also id.* at 494 n.5 (arguing each Plaintiff's claim accrued when she "knew the amount of athletically-related financial aid she was receiving"). As SDSU elsewhere admits, however, Plaintiffs could know whether there was an injury *only* upon learning about

SDSU's class-wide treatment of female student-athletes. *See, e.g.*, *id.* at 491 (admitting a financial-aid claim hinges on "an overall disproportionate provision of support funds to athletes of each gender").

In short, knowing their own individual financial-aid awards is not enough to know whether there was an injury for purposes of Title IX. Plaintiffs also needed to know the total amount of financial aid offered to each sex. *See id.* And, for the 2019-20 academic year, SDSU provided that information on January 1, 2021 (*i.e.*, the date it submitted EADA data to the federal government for the 2019-20 academic year). *See* Am. Compl., ECF No. 24, at ¶ 185. Indeed, the earliest Plaintiffs could have known about violations that occurred during the 2018-19 academic year was October 1, 2019 (*i.e.*, when SDSU submitted its EADA data for that academic year). Thus, Plaintiffs' claims extend back to the 2018-19 academic year.

That SDSU's "decisions are typically determined prior to the start of any academic year," Motion, ECF No. 30-1, at 493, is irrelevant. Plaintiffs had no way of knowing there was an injury when SDSU made its internal decisions to discriminate against women. Their claims accrued only when the EADA data was published (*i.e.*, when they had a basis to know the total aid offered to both sexes).

### C. Plaintiffs' well-pleaded allegations plausibly establish a Title IX violation with respect to equal athletic financial aid.

SDSU concedes—as it must—that Title IX requires it to provide proportional athletic financial assistance to female student-athletes. *See* Motion, ECF No. 30-1, at 494. And SDSU further agrees that financial-aid claims require a comparison of the aid made available to male and female student-athletes. *See id.* at 494, 497–98.[5] SDSU then proceeds to gloss over Plaintiffs' allegations, arguing—falsely—that the Amended Complaint contains nothing more than "an unsupported allegation that

---

[5] Although SDSU elsewhere denigrates Plaintiffs' approach as being based on a "ratio," *id.* at 15, 18, SDSU's brief amply demonstrates that compliance with Title IX's financial-aid requirements is necessarily based on ratios, *see id.* at 497–98.

SDSU 'has not provided and does not provide athletic financial aid to SDSU's female and male student-athletes in proportion to the number of students of each sex participating in intercollegiate athletics'" and an assertion "that SDSU's female student-athletes should have received more financial aid." *Id.* In reality, Plaintiffs included detailed allegations about the number of male and female student-athletes in SDSU's athletics program and about the amount of financial assistance offered to each group over time. *See, e.g.*, Am. Compl., ECF No. 24, at ¶¶ 176–80.

For example, the Amended Complaint alleges that, in 2018-19, SDSU's athletics program was 58.85% female (316 student-athletes) and 41.15% male (221 student-athletes). *See id.* at ¶ 176. Nonetheless, SDSU awarded $4,604,510 in financial assistance to male student-athletes and $4,580,663 in financial assistance to female student-athletes—meaning male student-athletes who made up just 41.15% of the athletics program received a whopping 50.13% of the aid awarded that year. *See id.* As such, male student-athletes received 8.98% more financial aid and female student-athletes received 8.98% less than they were entitled to receive based on their representation in the athletics program. *See id.*

Likewise, Plaintiffs alleged that for 2019-20, SDSU's athletics program was 58.12% female (315 student-athletes) and 41.88% male (227 student-athletes). *See id.* at ¶ 177. But, once again, SDSU awarded just 50.57% of the $9,198,841 in financial aid extended to the athletics program to female student-athletes (equal to $4,651,922). *See id.* at ¶ 177 & n.3. Male student-athletes, meanwhile, received 49.43% of the financial aid, amounting to 7.55% more than they were entitled to receive based on their representation in the program. *See id.*

Finally, Plaintiffs alleged that for 2020-21, SDSU's athletics program was 57.22% female (305 student-athletes) and 42.78% male (228 student-athletes). *See id.* at ¶ 178. Still, SDSU awarded just 50.64% of the total aid to female student-athletes. *See id.* Males received 49.36%, amounting to 6.58% more than they were entitled to receive based on representation. *See id.*

These unexplained discrepancies are far larger than permitted by Title IX. And Plaintiffs have alleged an unbroken pattern of SDSU awarding female student-athletes a disproportionately low amount of financial assistance for eleven consecutive years. *See id.* at ¶¶ 176–80. As such, Plaintiffs allege that SDSU will continue to offer female student-athletes a disproportionately low amount of financial aid in 2021-22 and beyond, years for which no financial-aid data is available at this time. *See id.* at ¶ 180. SDSU's failure to confront these allegations does not make them go away, nor does it make them conclusory, speculative, or unsupported. Instead, these allegations must be accepted as true for purposes of SDSU's motion to dismiss.

To avoid this result, SDSU offers a series of meritless arguments. *First*, SDSU argues that Plaintiffs' financial-aid claim is only "conceivable," and not "plausible," because of the difference between in-state and out-of-state cost of attendance. *See* Motion, ECF No. 30-1, at 495. SDSU's in-state cost of attendance is $28,142 per year, while its out-of-state cost of attendance is $39,230. *See* Am. Compl., ECF No. 24, at ¶¶ 17–18. SDSU argues this discrepancy "can swiftly alter the dollar amount of funding provided in total," suggesting—without really saying—that it might account for the disparity in aid offered to male and female student-athletes. *Id.* SDSU then argues Plaintiffs "fail to account" for cost of attendance in their allegations. *See id.*

This assertion, however, is patently false. Plaintiffs addressed this point specifically, stating that the in-state/out-of-state divide could account for the disparity in aid if more female student-athletes were in-state while more male student-athletes were out-of-state. *See* Am. Compl., ECF No. 24, at ¶ 187. But, as Plaintiffs alleged, the opposite is true: "more male student-athletes at SDSU are in-state residents, [and] more female student-athletes are non-residents." *Id.* at ¶ 188. As a result, the difference in cost of attendance between in-state and out-of-state students would drive *up* female student-athletes' financial-aid figures. And yet female student-athletes receive substantially *less* aid than proportionality demands. *See id.* at ¶¶ 176–80. Cost of attendance cannot explain this fact. *See id.* at ¶ 188.

Indeed, Plaintiffs are entitled to reasonable inferences from SDSU's unbroken, eleven-year pattern of offering female student-athletes far less than they were entitled to receive. The most reasonable inference is that the persistent shortfall is the result of intentional and ongoing sex-based discrimination. *See* 1998 OCR Letter ("[T]here will be a strong presumption that an unexplained disparity of more than 1% is in violation of the 'substantially proportionate' requirement . . . In the typical case where aid is expressly allocated among sex-segregated teams, chance simply is not a possible explanation for disproportionate aid to one sex."). If there were some non-discriminatory basis for the discrepancies (*e.g.*, the cost of attendance), one would reasonably expect that it would affect men and women equally, such that women would *sometimes* receive more aid than their representation would warrant. That they *never* did so excludes the possibility of some non-discriminatory justification.

*Second*, SDSU argues that the disparity in aid to female student-athletes might somehow be explained by its efforts to comply with Title IX's participation requirements. *See* Motion, ECF No. 30-1, at 495–96. But that argument makes no sense. Even if SDSU is providing equal opportunities to participate in athletics to female and male student-athletes (which it has not shown), that fact would in no way justify SDSU's denial of equal athletic financial aid to its female student-athletes. As Plaintiffs already noted, SDSU's claimed "safe harbor" "could make it possible for a school to provide proportional opportunities to its female and male student-athletes and award *no financial aid* to its female student-athletes." Am. Compl., ECF No. 24, at ¶¶ 173–74. SDSU dismisses this truth as "hyperbole" because no school has used the safe harbor this way so far. *See* Motion, ECF No. 30-1, at 496 n.8. Whether any school has yet done so is beside the point. SDSU's argument means such a school would be protected by a "safe harbor" against financial-aid claims. That is how safe harbors work. SDSU's discomfort with that possibility reveals that its argument is wrong. The claimed safe harbor does not exist.

SDSU relies on *Gonyo v. Drake University*, 879 F. Supp. 1000 (S.D. Iowa 1995) to claim there is such a "safe harbor." Motion, ECF No. 30-1, at 496. But SDSU is wrong and its reliance on *Gonyo* is misplaced. In that case, Drake's undergraduate enrollment was 42% male, but its athletics program was 75% male. *Id.* at 1004–05. In response to the shocking underrepresentation of women in its athletics program, Drake had been "increasing scholarships for women" to "encourage participation by the underrepresented gender." *Id.* at 1005. As a result, despite their 75% representation in the athletics program, male student-athletes at Drake received just 47% of the allotted financial aid—a figure that still exceeded their 42% representation in the undergraduate student body. *See id.* at 1002. The court granted Drake summary judgment on the financial-aid claim, reasoning that "locking scholarships in at the current participation ratio would risk locking in place the underrepresentation of women in Drake athletics." *Id.* at 1005.

This case is entirely different. SDSU is *not* increasing women's intercollegiate athletic participation numbers via "program development." It just *eliminated* its women's rowing team. And, as Plaintiffs allege in detail, SDSU has long deprived its female student-athletes of equal athletic financial aid—and continues to do so today. It is *not* "increasing scholarships for women" to increase their participation. *Id.* Nor is there any reason to believe that, since 2010, SDSU has been diverting resources in an effort to expand its men's program—the historically overrepresented sex for Title IX.

*Third*, SDSU hides behind NCAA scholarship limits, arguing they provide "a legitimate, non-discriminatory reason" for the disparity. Motion, ECF No. 30-1, at 496–98. To begin, Title IX is the supreme law of the land; NCAA rules are not. *See, e.g.*, U.S. CONST. art. VI, cl. 2 (providing that "the Laws of the United States"—and not a non-profit organization's governing rules for participant-institutions—"shall be the supreme Law of the Land"). Compliance with NCAA guidelines is thus not a defense to a Title IX violation. *See, e.g.*, OCR Title IX and Regulation Policy Interpretation, 44 Fed. Reg. 71,413, 71,422 (1979) (Policy Interpretation) ("[T]he

Department can follow no course other than to continue to disallow any defenses against findings of noncompliance with Title IX that are based on intercollegiate athletic association rules."). SDSU cannot sidestep Title IX by complying with NCAA rules instead.

More to the point, the NCAA rules do not *require* SDSU to offer men any particular scholarship figure. The NCAA sets ceilings for scholarships, not floors. Indeed, SDSU readily admits it could have achieved proportionality by "limiting the total value of scholarships awarded to male student-athletes." Motion, ECF No. 30-1, at 498. It intentionally chose not to do so. SDSU also readily admits it has not offered female student-athletes the maximum scholarship amount allowed by NCAA rules. *See* Am. Compl., ECF No. 24, at ¶ 189 (claiming to offer women only 95% of the scholarships permitted by NCAA rules). This choice was also intentional. Thus, NCAA rules provide no excuse for SDSU's intentionally discriminatory conduct.

*Fourth*, SDSU argues that Plaintiffs' use of EADA data "creates the redundancy that the court identified in *Anders*"—that is, that Plaintiffs counted female student-athletes who competed on multiple teams as more than one participant for purposes of financial aid. *See* Motion, ECF No. 30-1, at 498–99. SDSU points to women's cross country, indoor track, and outdoor track, arguing that "Plaintiffs' computations are flawed and require the removal of multiple female participation opportunities in any computation concerning athletic financial aid." *Id.* at 16. But SDSU is surely aware that it submitted—and Plaintiffs used—*unduplicated* counts in this analysis. For example, here is the tally from SDSU's most recent EADA submission for 2020-21:

| | | |
|---|---|---|
| Total Participants Men's and Women's Teams | 228 | 366 |
| Unduplicated Count of Participants<br>(Number of individuals who participated on at least one varsity team.) | 228 | 305 |

Plaintiff's allegations plainly used the *unduplicated* 305 figure for female participation when discussing the 2020-21 financial-aid claim. *See, e.g.*, Am. Compl., ECF No. 24, at ¶ 178. Plaintiffs never once used the 366 figure that counted women

multiple times because they competed on different teams. Thus, the would-be double-counted female student-athletes were already removed from the count. The same is true for *every* year in the Amended Complaint. Plaintiffs *always* used the unduplicated count. To the extent there was any confusion—an incredible proposition in itself, as SDSU surely knows its own participation counts—a simple comparison between Plaintiffs' allegations in paragraphs 176 through 179 and the chart included in paragraph 235 would have removed it. *Compare id.* at ¶ 235 (clearly showing the "unduplicated" count for female participants from 2003 to 2019), *with id.* at ¶¶ 176–79 (showing identical figures for female participation for 2010 to 2018).

In short, SDSU seeks to have Plaintiffs' financial-aid claim dismissed based on the entirely false premise that Plaintiffs used duplicated counts instead of unduplicated ones. There is no basis to credit this attempt to subvert the truth. Nor is there any basis to discard EADA data outright. Indeed, courts across the country—including the Ninth Circuit—have repeatedly held that reliance on EADA data is appropriate early in Title IX cases. *See, e.g.*, *Mansourian v. Regents of Univ. of California*, 602 F.3d 957, 968 (9th Cir. 2010) (relying on EADA data to reverse an early grant of summary judgment); *Balow v. Michigan State Univ.*, 24 F.4th 1051, 1060 (6th Cir. 2022), *reh'g denied*, No. 21-1183, 2022 WL 1072866 (6th Cir. Mar. 31, 2022) (holding that plaintiffs can show a substantial likelihood of success for purposes of preliminary injunctions based on EADA data, which necessarily assumes they could also use such data to establish the plausibility of their claims); *Ohlensehlen v. Univ. of Iowa*, 509 F. Supp. 3d 1085, 1101 (S.D. Iowa 2020) (collecting cases for the proposition that "courts have specifically relied on such [EADA] records at the early stages of Title IX litigation"). A contrary rule would again require Plaintiffs to do the impossible—somehow plead non-public Title IX figures to which they have no access. *See Schwake*, 967 F.3d at 949; *Jamco*, 108 F.3d at 250; Am. Compl., ECF No. 24, at ¶ 176 n.2 (explaining that SDSU has not made any data aside from EADA reports publicly

available). Plaintiffs have plausibly alleged Title IX violations with respect to financial aid. SDSU's motion to dismiss should be denied.

### D. Plaintiffs are entitled to recover damages for being denied equal athletic financial aid in violation of Title IX.

Finally, SDSU argues that Plaintiffs are not entitled to money damages because no case has previously awarded such damages for a financial-aid claim. *See* Motion, ECF No. 30-1, at 500–01. But both the Supreme Court and the Ninth Circuit have confirmed that money damages are generally available in Title IX actions involving a funding recipient's *intentional* discrimination. The Supreme Court spoke clearly on this issue in *Franklin v. Gwinnett County Public Schools*, where it proclaimed:

> Congress surely did not intend for federal moneys to be expended to support the intentional actions it sought by statute to proscribe. Moreover, the notion that Spending Clause statutes do not authorize monetary awards for intentional violations is belied by our unanimous holding in *Darrone*. . . . In sum, we conclude that a damages remedy is available for an action brought to enforce Title IX.

503 U.S. 60, 75 (1992). And *Franklin*'s proclamation hardly stands alone. *See, e.g.*, *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 182–84 (2005) (summarizing Supreme Court case law holding that private money damages are available "under Title IX where the funding recipient engages in intentional conduct that violates the clear terms of the statute"); *Barnes v. Gorman*, 536 U.S. 181, 187 (2002) ("[W]e have held that under Title IX, which contains no express remedies, a recipient of federal funds is nevertheless subject to suit for compensatory damages and injunction, forms of relief traditionally available in suits for breach of contract." (citations omitted)); *Mansourian*, 602 F.3d at 966–67 (holding there is no notice requirement for a money damages claim related to Title IX participation because "[u]niversities' decisions with respect to athletics are . . . always, by definition, intentional" and Title IX participation claims challenge what amounts to the "official policy of the recipient entity"). Because SDSU's violation of Title IX as to financial assistance was intentional, money damages are available to Plaintiffs.

To argue otherwise, and to cast aside this robust body of law permitting money damages for intentional discrimination under Title IX, SDSU relies on *Cummings v. Premier Rehab Keller, P.L.L.C. See* Motion, ECF No. 30-1, at 500. But *Cummings* reaffirmed this body of law. *See, e.g.*, *Cummings*, 142 S. Ct. 1562, 1570–72 (2022) (quoting and discussing *Barnes* directly and with approval, as well as confirming the general rule that the contract-law analogy "defines the scope of conduct for which funding recipients may be held liable for money damages" and that compensatory damages are available in cases raised under Spending Clause legislation).[6]

The Court's holding in *Cummings* was narrow—namely, "emotional distress is generally not compensable in contract" so the Court could not "treat federal funding recipients as having consented to be subject to damages for emotional distress." *Id.* at 1572. But the damages Plaintiffs seek in Count I—for the harm they suffered when SDSU intentionally discriminated against them by depriving them of equal athletic financial aid—have nothing to do with "emotional distress." Thus, *Cummings* plays no role here. Instead, *Franklin*, *Jackson*, and *Barnes* govern the analysis and permit the claim for money damages. And *Mansourian* counsels that money damages are available in the participation context, even though "there is no individual right to" participate in athletics. *See* Motion, ECF No. 30-1, at 501.

Finally, SDSU offers no explanation as to how Title IX would work—and deter and remedy violations of its equal athletic financial aid requirements—if women could not sue for damages. Can women be illegally deprived of over $1.2 million over two years and have no remedy? Can schools deny women equal athletic financial aid year after year, keep the money, and continue to do so until a court orders them to comply with the law going forward, with no recourse for those deprived of the funds?

---

[6] A petition for reconsideration is currently pending in *Cummings* on the ground that the decision's factual premise—that the statute at issue there did not say whether damages for emotional distress are available—is false. *Cummings v. Premier Rehab Keller, P.L.L.C.*, Pet. for Rehearing, Case No. 20-219 (filed May 23, 2022).

Title IX cannot permit these outcomes. SDSU's motion to dismiss Count I should be denied.

## II. Plaintiffs Plausibly Alleged a Title IX Violation Based on SDSU's Failure to Provide Equal Athletic Treatment and Benefits to Female Student-Athletes.

Plaintiffs have sufficiently alleged claims that SDSU violated Title IX by denying equal treatment and benefits to its female student-athletes.[7] Plaintiffs have also alleged that SDSU's discrimination harmed them personally as members of a women's varsity sport at SDSU. *See generally* Am. Compl., ECF No. 24, at ¶¶ 23, 72, 85, 92, 99, 112. SDSU's motion to dismiss merely attempts to argue it is in compliance with Title IX, which is inappropriate for a motion to dismiss.

### A. Plaintiffs adequately pleaded concrete injuries-in-fact and have standing to pursue their athletic treatment and benefits claim.

Plaintiffs provided myriad facts demonstrating how male student-athletes are treated preferably and provided more athletic benefits than female student-athletes. *See generally* Am. Compl., ECF No. 24, at ¶¶ 192–237. These allegations include that SDSU treated the women on the track team, including Plaintiffs, less favorably than men. *Id.* Plaintiffs have standing to bring Title IX denial of equal treatment and benefit claims against SDSU because the injuries involved here "affect the plaintiff[s] in a personal and individual way." *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)); *see also Raines v. Byrd*, 521 U.S. 811, 819 (1997) (holding that, for standing, plaintiffs "must establish . . . that the alleged injury suffered is particularized as to [them].").

Being denied the ability to use the competition and practice facilities at times that

---

[7] SDSU erroneously asserts that Plaintiffs who are not current student-athletes have attempted to bring Title IX unequal treatment and benefit claims. Motion, ECF No. 30-1, at 502. However, as the Amended Complaint makes clear, the treatment and benefit claims are asserted only by current student-athletes. *See* Am. Compl., ECF No. 24, at ¶¶ 23, 72, 85, 92, 99, 112.

are optimal for the track and field team because men's teams are given priority or being forced to reuse old and subpar athletic equipment year after year while men's teams are given new gear affects Plaintiffs in a personal and individualized manner. *See* Am. Compl., ECF No. 24, at ¶¶ 192–201. "[D]iscriminating against female athletes and creating feelings of inferiority with their male counterparts can have long-lasting negative effects." *Ollier v. Sweetwater Union High Sch. Dist.*, 858 F. Supp. 2d 1093, 1098 (S.D. Cal. 2012), *enforced*, No. 07CV714-L JMA, 2014 WL 1028431 (S.D. Cal. Mar. 17, 2014), *aff'd*, 768 F.3d 843 (9th Cir. 2014), *vacated*, No. 07-CV-00714-L-JLB, 2020 WL 4336169 (S.D. Cal. July 28, 2020). Plaintiffs have suffered these negative effects for years and will continue to do so without injunctive relief forcing SDSU to comply with Title IX.

### B. Plaintiffs alleged specific discriminatory treatment they have experienced or witnessed at SDSU.

"Title IX requires 'equal treatment,' which has been interpreted by the OCR to require 'equivalence in the availability, quality and kinds of other athletic benefits and opportunities provided male and female athletes.'" *Ollier*, 858 F. Supp. 2d at 1110 (quoting Policy Interpretation 44 Fed. Reg. at 71,417–18). Title IX compliance "in the area of equal treatment and benefits is assessed based on an overall comparison of the male and female athletic programs." *Id.* Title IX regulations provide schools with key areas to address when reviewing gender disparities—commonly referred to as the "laundry list."

The non-exhaustive list includes "[t]he provision of equipment and supplies," game and practice schedules, "[t]ravel and per diem allowance," coaching and academic services, coach compensation, locker rooms and practice facilities, "medical and training services," and publicity. *See* 34 C.F.R. § 106.41(c). In addition, "[e]qual efforts to recruit male and female athletes are required under Title IX." *Ollier*, 858 F. Supp. 2d at 1110–11. "Although recruiting is not listed as a factor under 34 C.F.R. section 106.41(c), the Policy Interpretations do identify this area as significant." *Barrett v. W. Chester Univ. of Pennsylvania of State Sys. of Higher Educ.*, No. CIV.A. 03-CV-4978, 2003 WL 22803477, at *6 (E.D. Pa. Nov. 12, 2003) (citing *Cohen v. Brown Univ.*, 809 F. Supp. 978, 997 (D.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

R.I. 1992) (identifying recruiting dollars as a "target area" under the Policy considerations and finding a disparity in Brown University's allocation of those funds)).

A school need not be out of compliance in every area in the "laundry list" to be out of compliance with Title IX. "[A] disparity in one program component (i.e., scheduling of games and practice time) can alone constitute a Title IX violation if it is substantial enough in and of itself to deny equality of athletic opportunity to students of one sex at a school." *McCormick*, 370 F.3d at 293; *see also* Policy Interpretation, 44 Fed. Reg. at 71,417.

The bulk of SDSU's argument is that there may be non-discriminatory justifications for the unequal treatment of the men's and women's programs. *But see Schwake*, 967 F.3d at 947–48 ("Sex discrimination need not be the only plausible explanation or even the most plausible explanation for a Title IX claim to proceed."). SDSU's arguments are not a reason to grant a motion to dismiss and are, in fact, just the opposite. They clearly demonstrate that there are fact questions that must be fleshed out in litigation. Even the decision SDSU relies upon, *Portz v. St. Cloud University*, was made after a trial fully explored the underlying facts. *See Portz*, 16 F.4th 577 (8th Cir. 2021).

In short, SDSU offers little more than affirmative defenses to Plaintiffs' allegations of discrimination. For example, Plaintiffs' Amended Complaint identifies that SDSU provides multiple pairs of athletic shoes for its men's teams, while there are members of women's teams that are not given even a single pair of athletic shoes for their use. Am. Compl., ECF No. 24, at ¶ 195. SDSU argues that this fact and others like it are insufficient to plead that SDSU was providing female student-athletes unequal provision of athletic equipment and supplies. Motion, ECF 30-1, at 504. While it may be true that some sports need fewer athletic shoes, SDSU's suggestion that there are female student-athletes (and *only* female student-athletes) who do not require any athletic shoes—even for weight training—strains credulity. If SDSU wants to make these factual assertions in response to Plaintiffs' allegations, it is welcome to do so, but not in a motion to dismiss.

The Amended Complaint also establishes that women are, among other things:
- forced to give up training and practice times for out-of-season men's teams;

- forced to share lockers where they keep personal belongings, while men are not;
- not provided athletic trainers at competitions, while men are provided athletic trainers at both practices and competitions;
- provided significantly fewer resources to recruit talented players to their teams; and
- not provided sufficient nutrition or resources for nutrition while competing.

*See generally* Am. Compl., ECF No. 24, at ¶¶ 192–237. These allegations are not merely recitations of legal conclusions; they are specific disparities Plaintiffs confront every day as female student-athletes. Even a case that SDSU relies upon—a post-trial decision—acknowledged that "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lewis v. Casey*, 518 U.S. 343, 358 (1996). Plaintiffs have plausibly alleged Title IX violations with respect to athletic treatment and benefits. SDSU's motion to dismiss should be denied.

### C. Plaintiffs appropriately alleged program-wide comparisons.

SDSU argues that Plaintiffs should not be able to single out treatment given to one men's team (*i.e.*, football) and *no women's team* when pleading treatment and benefit claims. Motion, ECF 30-1, at 505–06. As discussed above, Title IX requires that treatment and benefits be analyzed on a program-wide basis. This comparison surely includes how men's football, *one of the men's teams*, is treated and the benefits its members receive as they are part of the men's program. Indeed, members of that one team account for nearly half the men's program. Plaintiffs do not assert that all varsity sports must be treated exactly like football. However, if the football team is given a benefit, such as traveling on a private plane that is provided to no other team—men's or women's—then the men's program is, on balance, receiving unequal treatment and benefits. Am. Compl., ECF No. 24, at ¶ 203. The same is true of other allegations, like the men's football team being provided with more publicity than any women's team, including a professional photographer for publicity purposes at both practices and games, while many women's teams have *never* had a

professional photographer at team events. *Id.* at ¶¶ 225–32. These claims are exactly the type that should be resolved on the facts. *See, e.g., Mich. High Sch. Athletic Ass'n, Inc. v. Comm's for Equity*, 178 F.Supp.2d 805, 855–57 (W.D. Mich. 2001) *vacated on other grounds*, 544 U.S. 1012 (2005) (trial verdict finding Title IX violated by scheduling girls' athletic season during less advantageous times than boys' athletic season); *Landow v. Sch. Bd. of Brevard County,* 132 F.Supp.2d 958, 962–66 (M.D. Fla. 2000) (trial verdict finding Title IX violated due to unequal treatment between boys' baseball and girls' softball); *Alston v. Virginia High Sch. League, Inc.,* 144 F. Supp. 2d 526, 535–36 (W.D. Va. 1999) (denying summary judgment on issue of whether forcing girls to move their season while boys were allowed to maintain a consistent schedule violated Title IX).

The only way SDSU's argument regarding compliance works is if the men's football team is provided with top-of-the-line treatment and benefits and the other male athletes are all treated *worse* than all the female student-athletes. However, there is no basis to reach this conclusion. Indeed, SDSU does not claim it is treating the remaining men worse than all female student-athletes, and the reasonable inference from the factual allegations in the Amended Complaint is that SDSU's other male athletes are treated at least as well as its female athletes. Thus, SDSU has created inequity because it treats its largest men's team far better than any of the women's teams. No more is required, and it would be inappropriate for the court to settle these factual disputes at the motion to dismiss stage. *Schwake*, 967 F.3d at 947–48. SDSU's motion to dismiss Count II should be denied.

## III.   Plaintiffs Plausibly Alleged a Title IX Violation Based on Retaliation.

As SDSU acknowledges, Title IX's prohibition on retaliation was recognized by the Supreme Court in *Jackson v. Birmingham Bd. of Education*. "[T]he text of Title IX prohibits a funding recipient from retaliating against a person who speaks out against sex discrimination, because such retaliation is intentional 'discrimination' 'on the basis of sex.'" *Jackson,* 544 U.S. at 178; *see also* 34 C.F.R. § 106.71 ("No recipient or other person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of

interfering with any right or privilege secured by Title IX[.]"). As the Supreme Court explained, such retaliation "is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint: an allegation of sex discrimination." *Jackson*, 544 U.S. at 174; *see also Emeldi v. Univ. of Oregon*, 698 F. 3d 715, 725 (9th Cir. 2012) (noting that "[i]t is a protected activity to protest or otherwise oppose unlawful discrimination" and that "speak[ing] out against sex discrimination . . . is protected activity." (internal quotation marks and citations omitted)); OCR, U.S. DOE, *Dear Colleague Letter* at 1 (April 24, 2013) *available at* https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201304.html (similar).[8]

The Court in *Jackson* explicitly held that, in cases of retaliation, schools are liable for private damages. *See* 544 U.S. at 181. Despite SDSU's contorted effort, nothing in *Cummings* overturned *Jackson*, and *Cummings* involved neither a Title IX claim nor retaliation, *supra* at 17–18. Further, Plaintiffs do not only seek damages for SDSU's illegal retaliation. They also seek both declaratory and injunctive relief for their retaliation claims, neither of which involve monetary damages. Am. Compl., ECF No. 24, at ¶¶ 251–52.

While SDSU downplays Plaintiffs' allegations, the Amended Complaint plainly alleges that, in response to the Plaintiffs' protected activity—filing a Title IX lawsuit alleging sex discrimination—SDSU admonished Plaintiffs in front of their teammates for advocating for equality, dismissed their effort to obtain equality as a "distraction," and expressed disappointment with Plaintiffs. *See generally*, Am. Compl., ECF No. 24, at ¶¶ 238–63. When it did so, SDSU knew that Plaintiffs intended to file a claim for unequal

---

[8] SDSU relies upon the Title VII summary judgment framework that applies to a "plaintiff who lacks direct evidence of retaliation" to support its argument that Plaintiffs have not sufficiently alleged a claim for retaliation. *Ollier v. Sweetwater Union High School District*, 768 F.3d 843, 867 (9th Cir. 2014); Motion, ECF 30-1, at 507 (citing *Monroe v. McDaniel*, 386 Fed. App'x 714 (9th Cir. 2010); *Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000)). These cases are inapposite to Plaintiffs' Title IX retaliation claim because Plaintiffs have direct evidence of retaliation and, as *A.B. v. Hawaii State Dep't of Ed.*, 30 F.4th 828, 833 (9th Cir. 2022), acknowledges, something as simple as a statement can have a chilling effect on students' willingness to assert their civil rights.

treatment and benefits. *See id.* at ¶¶ 244–49. After Plaintiffs asked SDSU to take specific actions to mitigate the harm done by its retaliation, SDSU refused to do so, refused to share the video of the meeting at which its retaliatory comments were made, and failed to offer its female-athletes any assurance that they would be free from further retaliation for moving forward with or joining the Title IX lawsuit. *See id.* at ¶¶ 244–63.

One adverse effect of SDSU's conduct is a chilling effect on current female student-athletes to assert their Title IX rights against the school. *Id.* As the Ninth Circuit recently acknowledged, retaliation can be established merely from conduct that has a chilling effect on other female student-athletes coming forward with gender discrimination. *A.B.*, 30 F.4th at 842 ("And where, as claimed here, the persons who raised broader concerns about Title IX compliance were met with a retaliatory response that likewise impacted female student-athletes generally, the indirect victims' claims depend critically upon the success of the direct victims' claims. As a result, there is little prospect that the named plaintiffs' claims could be said to be burdened with defenses or issues unique to them and distinct from the other class members.").

SDSU's arguments should be rejected. Plaintiffs have plausibly alleged Title IX retaliation. SDSU's motion to dismiss should be denied.

## CONCLUSION

The Court should deny Defendants' Motion to Dismiss and permit Plaintiffs' Title IX discrimination and retaliation claims to proceed. If, however, the Court holds Plaintiffs have not pleaded any factual allegations with sufficient specificity, Plaintiffs respectfully request permission to amend their complaint to address any deficiencies.

1  Dated: June 16, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,
/s/ *Joshua I. Hammack*
Joshua I. Hammack (*pro hac vice*)
Cary Joshi (*pro hac vice*)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
E-mail: jhammack@baileyglasser.com
E-mail: cjoshi@baileyglasser.com

/s/ *Lori A. Bullock*
Lori Bullock (*pro hac vice*)
**BAILEY & GLASSER LLP**
309 E. 5th Street, Suite 202B
Des Moines, IA 50309
Tel.: 515.416.9051
E-mail: lbullock@baileyglasser.com

Arthur H. Bryant SBN 208365
**BAILEY & GLASSER, LLP**
1999 Harrison Street, Suite 660
Oakland, CA 94612
Tel.: (510) 272-8000
E-mail: abryant@baileyglasser.com

David S. Casey, Jr. SBN 69768
Gayle M. Blatt SBN 122048
**CASEY GERRY SCHENK
FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
E-mail: dcasey@cglaw.com
E-mail: gmb@cglaw.com

Amber Eck SBN 177882
Jenna Rangel SBN 272735
**HAEGGQUIST & ECK, LLP**
225 Broadway, Ste 2050
San Diego, CA 92101

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Tel: (619) 342-8000
E-mail: ambere@haelaw.com
E-mail: jennar@haelaw.com

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2022, I electronically filed the foregoing document with the Clerk of Court using the ECF system that will send notification of such filing upon all ECF filing participants.

June 16, 2022

                                            */s/ Lori A. Bullock*

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS