1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11   MADISON FISK, RAQUEL CASTRO, GRETA VISS, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all those similarly situated, | Case No.:  22-CV-173 TWR (MSB) |

11 MADISON FISK, RAQUEL CASTRO,
GRETA VISS, CLARE BOTTERILL,
12 MAYA BROSCH, HELEN BAUER,
CARINA CLARK, NATALIE
13 FIGUEROA, ERICA GROTEGEER,
KAITLIN HERI, OLIVIA PETRINE,
14 AISHA WATT, KAMRYN
WHITWORTH, SARA ABSTEN,
15 ELEANOR DAVIES, ALEXA DIETZ,
and LARISA SULCS, individually and on
16 behalf of all those similarly situated,

17
18                                    Plaintiffs,

19 v.

20 BOARD OF TRUSTEES OF THE
21 CALIFORNIA STATE UNIVERSITY
and SAN DIEGO STATE UNIVERSITY,
22
23                                    Defendants.

Case No.:  22-CV-173 TWR (MSB)

**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**

(ECF Nos. 30, 32)

24
25        Presently before the Court are Defendants the Board of Trustees of the California

26 State University and San Diego State University's (collectively, "SDSU") Motion to

27 Dismiss Plaintiffs' First Amended Complaint ("Mot.," ECF No. 30) and Request for

28 Judicial Notice of Documents in Support of Defendants' Motion to Dismiss Plaintiffs' First

Amended Complaint ("RJN," ECF No. 32). Plaintiffs filed an Opposition to Defendants' Motion to Dismiss ("Opp'n," ECF No. 33), to which Defendants filed a Reply ("Reply," ECF No. 34). The Court held a hearing on the Motion on July 14, 2022. (*See* ECF No. 35.) Having carefully considered the parties' arguments, the First Amended Complaint ("FAC," ECF No. 24), those documents properly subject to judicial notice or incorporated by reference, and the relevant law, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss and **GRANTS IN PART AND DENIES IN PART** Defendants' Request for Judicial Notice.

## BACKGROUND

### I.   Factual Background[1]

Plaintiffs, "past and current female varsity student-athletes at SDSU," initiated this suit against Defendants on February 7, 2022. (*See* ECF No. 1; FAC ¶ 15.) Defendants receive federal funds, and thus must comply with Title IX. (*See* FAC ¶¶ 130, 132, 135); *see also* 20 U.S. Code §§ 1681, 1687. The guiding regulation in this case is that "[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and no recipient shall provide any such athletics separately on such basis." 34 C.F.R. § 106.41(a). The Office for Civil Rights ("OCR") has adopted additional regulations to ensure schools, like SDSU, "provide equal athletic opportunity for members of both sexes." *See* 34 C.F.R. § 106.41(c).

Plaintiffs allege that none of them "received all of the athletic financial aid for which they were eligible at SDSU" and that SDSU is depriving current student-athlete Plaintiffs of "treatment and benefits equal to those provided to male student-athletes at SDSU."

---

[1]   For purposes of Defendants' Motion, the facts alleged in Plaintiffs' First Amended Complaint are accepted as true. *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

(FAC ¶¶ 19, 23.)  If SDSU had complied with Title IX, Plaintiffs contend each of them would have "had an opportunity to receive her fair share of equal financial aid" and "would have received more athletic financial aid than she did." (*Id.* ¶¶ 20–21.)  Plaintiffs further allege that SDSU "directly retaliated" against some Plaintiffs after they filed this lawsuit, which had a "chilling effect on the willingness of other female varsity student-athletes to challenge, expose, and remedy SDSU's sex discrimination." (*Id.* ¶ 24.)   There are seventeen named Plaintiffs in this case:

| | Plaintiff[2] | Sport/Year[3] | Total Aid Received (Specific Year) |
|---|---|---|---|
| **1** | Madison Fisk | Rowing/Sr. | $28,200 |
| **2** | Raquel Castro | Rowing/Jr. | $2,400 |
| **3** | Greta Viss | Rowing/Grad. '21 | $24,000 (Fr. & Soph.) |
| **4** | Clare Botterill | Rowing/Jr. | $38,000 (Soph.) |
| **5** | Maya Brosch | T&F/Grad. '21 | $19,640 |
| **6** | Olivia Petrine | Rowing/Soph. | $800 |
| **7** | Helen Bauer | Rowing/Sr. | $30,000 |
| **8** | Carina Clark*^ | T&F/Sr. | $800 (Sr.) |
| **9** | Natalie Figueroa | Rowing/Jr. | $0 |
| **10** | Erica Grotegeer*^ | T&F/Sr. | $37,879 |
| **11** | Kaitlin Heri*^ | T&F/Sr. | $64,600 |
| **12** | Aisha Watt*^ | T&F/Jr. | $4,600 |
| **13** | Kamryn Whitworth | Rowing/Grad. '21 | $13,200 |

---

[2]    An asterisk (*) indicates current varsity student-athlete as of February 7, 2022, (FAC ¶¶ 68, 81, 88, 95, 108), while a carat (^) indicates presence at the Zoom meeting at which SDSU allegedly retaliated. (*Id.* ¶¶ 73, 86, 93, 100.)

[3]    SDSU eliminated its women's varsity rowing team in Spring 2021.  (FAC ¶ 27.)  The year in school listed is as of February 7, 2022.  (*See* ECF No. 1.)

| 14 | Sara Absten* | T&F/Sr. | "Partial" / "Fluctuated" |
|---|---|---|---|
| 15 | Eleanor Davies | Rowing/Soph. (Transferred Jan '22) | $22,500 |
| 16 | Alexa Dietz | Rowing/Sr. | $18,400 |
| 17 | Larisa Sulcs | Rowing/Jr. | $22,800 |

## II.    Plaintiffs' Allegations

### A.    Disproportional Financial Aid

"To the extent that a recipient [of federal funds] awards athletic scholarships or grants-in-aid, it must provide reasonable opportunities for such awards for members of each sex in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics." 45 C.F.R. § 86.37.  Plaintiffs allege that SDSU violated this regulation by failing to provide athletic financial aid to female student-athletes in proportion to their participation rates, thereby intentionally discriminating against female student-athletes.  (FAC ¶ 171.)

By October 15 of each year, SDSU compiles and discloses data for the prior year's athletic expenditures and participation to the federal government pursuant to the Equity in Athletics Disclosure Act ("EADA").  (*Id.* ¶¶ 176, 185 n.5)  SDSU can provide athletic financial aid at any point during an academic year and thus is able to correct any "discriminatory allocation" at any point.  (*Id.* ¶¶ 183–84.)  Plaintiffs allege that SDSU's data indicates that for over ten years, "female varsity student-athletes at SDSU have been deprived of athletic financial aid in proportion to their participation in SDSU athletics." (*Id.* ¶ 175.)  On August 19, 2021, the parties entered into a tolling agreement that preserves all Title IX athletic financial aid claims for at least two years prior.  (*Id.* ¶ 181 n. 4.)

### B.    Unequal Treatment and Benefits

"A recipient [of federal funds that] operates or sponsors interscholastic, intercollegiate, club or intramural athletics shall provide equal athletic opportunity for members of both sexes." 34 C.F.R. § 106.41.  Plaintiffs allege that, in violation of this

regulation, SDSU does not "provide athletic treatment and benefits to its female varsity student-athletes equal to those it provides to its male varsity student-athletes and, accordingly, intentionally discriminates" against its female student-athletes. (FAC ¶ 192.)

Plaintiffs assert that SDSU provides more equipment to the men's teams and that that equipment is of "superior quality" to that that SDSU provides to its women's teams. (*Id.* ¶¶ 194, 196.) SDSU additionally gives men's teams priority to schedule their practice times and tutoring sessions and provides unequal travel benefits and per diem allowances. (*Id.* ¶¶ 199, 202, 208.) Further, SDSU spends far more money to pay men's head and assistant coaches, to provide men's teams with more publicity, and to recruit student-athletes for men's teams than it does for women's teams. (*Id.* ¶¶ 210, 213, 228, 230, 234.)

### C.   *Retaliatory Conduct*

On February 16, 2022, the women's track and field team held a recorded Zoom meeting. (FAC ¶ 239.) Four named Plaintiffs were present for the Zoom meeting. (*See id.* ¶¶ 15–128.)[4] SDSU "described the Title IX lawsuit as a distraction to the women participating in the lawsuit and to the team as a whole." (*Id.* ¶ 242.) SDSU allegedly knew (1) Plaintiffs were preparing to file an amended complaint adding a claim for unequal treatment and benefits for current female student-athletes; (2) only current varsity student-athletes could raise such a claim; (3) since the five track and field Plaintiffs were already suing the school for deprivation of equal financial aid, they would likely participate in the unequal treatment claim; (4) the women's track and field team was the "most obvious source" for additional plaintiffs; and (5) if SDSU "directly and openly retaliated" against the five Plaintiffs, it would have a "chilling effect" on the rest of the team and other female student-athletes from pursuing their Title IX rights. (*Id.* ¶¶ 244–48.) The comments "adversely affected" the Plaintiffs present and made other teammates "immediate wary" of pursuing claims against SDSU. (*Id.* ¶¶ 249–50.)

---

[4]   Plaintiffs and Defendants repeatedly reference that five of the named Plaintiffs were present, (FAC ¶ 240); however, only four Plaintiffs actually state that they were present. (*See id.* ¶¶ 15–128.)

On February 28, 2022, Plaintiffs requested a copy of the Zoom meeting recording and for SDSU to make a statement to "mitigate the damage done by its comments." (*Id.* ¶¶ 253–54.) SDSU responded that there was "no evidence of retaliatory actions or intent" and that it would "address the situation internally," declining to "provide any details about how it would address the comments." (*Id.* ¶¶ 258, 261.)

### D. *Request for Relief*

Plaintiffs state that "SDSU has violated and is violating Title IX's equal athletic financial aid requirements, equal treatment and benefits requirements, and prohibition against retaliation." (*Id.* ¶ 169.) Accordingly, Plaintiffs request that the Court (1) certify this case as a class action; (2) appoint the Plaintiffs in the "Class Allegations" as class representatives and appoint Plaintiffs' counsel as class counsel; (3) declare that SDSU has discriminated and is discriminating against its past and current female varsity student-athletes on the basis of their sex in the distribution of athletic financial aid in violation of Title IX and the Regulations promulgated thereunder; (4) declare that SDSU has discriminated and is discriminating against its past and current female varsity student-athletes on the basis of their sex in the provision of treatment and benefits in violation of Title IX and the Regulations promulgated thereunder; (5) declare that SDSU has illegally retaliated against its past and current female varsity student-athletes in violation of Title IX and the Regulations promulgated thereunder; (6) permanently enjoin SDSU from discriminating against its female student-athletes on the basis of their sex; (7) award compensatory damages and other monetary relief as permitted by law to Plaintiffs and all members of the athletic financial aid damages class for SDSU's violation of their right to equal athletic financial aid; (8) award nominal, compensatory (as appropriate), and other monetary relief as permitted by law to Plaintiffs and all members of the retaliation damages classes for SDSU's retaliation in violation of Title IX; (9) maintain jurisdiction to monitor SDSU's compliance; (10) award Plaintiffs their reasonable attorneys' fees and expenses; and (11) order such other and further relief as the Court deems appropriate. (*Id.* at 47–49.)

/ / /

# LEGAL STANDARDS

## I.    Federal Rule of Civil Procedure 12(b)(1)

A party may challenge the court's subject-matter jurisdiction through a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See* Fed. R. Civ. P. 12(b)(1); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Because "[f]ederal courts are courts of limited jurisdiction," "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Consequently, "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*

"Because standing . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White*, 227 F.3d at 1242 (citing *Bland v. Fessler*, 88 F.3d 729, 732 n.4 (9th Cir. 1996)).  "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

"To satisfy Article III's standing requirements, a plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

## II.    Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of

a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

/ / /

# ANALYSIS

## I.   Request for Judicial Notice

In support of their Motion to Dismiss, Defendants request that the Court take judicial notice of seven exhibits.  (RJN at 2.)  Plaintiffs do not oppose Defendants' request.  (*See generally* Opp'n; Docket.)  "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  A court may, however, take judicial notice of an adjudicative fact that "is not subject to reasonable dispute" because it is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201.

Federal Rule of Evidence 201 "allows the court to take judicial notice of certain items without converting the motion to dismiss into one for summary judgment."  *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1124 (C.D. Cal. 2012); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (stating that when ruling on a motion to dismiss, courts may consider "matters of which a court may take judicial notice").  "Under Rule 201, the court can take judicial notice of "[p]ublic records and government documents available from reliable sources on the Internet," *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015), such as records and reports of administrative bodies.  *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003).  If a court takes judicial notice of a document, it must specify what facts it judicially noticed from the document.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Incorporation by reference, on the other hand, is a "judicially created doctrine that treats certain documents as though they are part of the complaint itself."  *Id.* at 1002.  Unlike judicial notice, a court generally may assume all contents of an incorporated document are true for purposes of a 12(b)(6) motion to dismiss.  *Id.* at 1003.

/ / /

### A.    Exhibit 1: NCAA Bylaws

Defendants request that the Court take judicial notice of the NCAA Bylaws (the "Bylaws") because they are not subject to reasonable dispute, they are publicly available, and they are incorporated by reference in Plaintiffs' First Amended Complaint.  (RJN at 4–5.)

Defendants appear to conflate judicial notice and incorporation by reference.  The Bylaws, which are not explicitly cited, are referenced when Plaintiffs discuss the NCAA scholarship limits.  (FAC ¶¶ 150–51, 190–91.)  The Bylaws provide detail and guidance to institutions regarding their financial scholarship allocation, including how certain teams have specific head count limits, (*see* Section 15.5.2), while other teams have equivalency limits, (*see* Section 15.5.3).  (*See* ECF No. 30-3, ("Ex. 1") at 19.)  While this information is helpful to understanding the background of this case, it does not form the basis of Plaintiffs' claims or referred to "extensively" in the First Amended Complaint, and thus is not appropriate for incorporation by reference.  *See Ritchie*, 342 F.3d at 908.

The Bylaws are, however, appropriate for judicial notice, as they are undisputed, maintained by a non-party—the NCAA—and the request is unopposed.   The Court therefore **GRANTS** Defendants' Request for Judicial Notice of the Bylaws and specifically **TAKES JUDICIAL NOTICE** of the NCAA's rules for financial scholarship distribution and limitations as excerpted in Exhibit 1.

### B.    Exhibits 2–7: Public Documents Created/Maintained by OCR

Defendants also request that the Court take judicial notice of Exhibits 2–7, which are related to "Title IX compliance that are available on OCR's website, which is run by the United States Department of Education, a government agency."   (RJN at 3.) Additionally, Defendants note that Plaintiffs' First Amended Complaint references Exhibits 2 and 3, so they are incorporated by reference.  (*Id.* at 3–4.)

Exhibits 2 and 3 are the OCR's 1979 Policy Interpretation and the July 23, 1998 Dear Colleague Letter, respectively.  These exhibits are referenced extensively throughout Plaintiffs' First Amended Complaint and form the basis for Plaintiffs' claims, as both

22-CV-173 TWR (MSB)

provide institutions with guidance and instruction to ensure their compliance with Title IX requirements.  (*See* ECF Nos. 30-4, 30-5.)  Plaintiffs' allegations center on a failure to comply with OCR's instructions and requirements.  Accordingly, the Court finds Exhibits 2 and 3 are incorporated by reference.  Exhibits 4 through 7, however, are not relied upon or cited extensively in the First Amended Complaint and thus are not appropriate for incorporation by reference.

The Court **DENIES** Defendants' Request for Judicial Notice as to Exhibits 4 through 7.  Although the request is unopposed and the exhibits are undisputed, "public records and government documents available" from reliable sources, *see Gerritsen*, 112 F. Supp. 3d at 1033, they are irrelevant to the Court's analysis.  *See id.* at 1030 (denying judicial notice of information in press releases and publicly available news articles because it was irrelevant for purposes of the motion to dismiss).  Exhibit 4 concerns "effective accommodation" regulations, which are not at issue in this case.  Exhibits 5 through 7 are "Resolution Agreements" between OCR and several institutions to support the proposition that OCR does not award retrospective money damages.  A voluntary resolution agreement is not law or precedent which is binding on this Court.

Thus, the Court **INCORPORATES BY REFERENCE** Exhibits 2–3 and **DENIES** Defendants' Request for Judicial Notice of Exhibits 4–7.

## II.  Statute of Limitations

Defendants assert that Plaintiffs' claims cannot include scholarship decisions made prior to August 19, 2019, because they would fall outside the two-year statute of limitations and that Plaintiffs "generally point to events from the past decade that fall outside" that statute of limitations.  (Mot. at 3, 10.)  Plaintiffs assert that they "are entitled to damages going back a minimum of two years from August 19, 2021, for SDSU's Title IX's athletic financial aid violations."  (FAC ¶ 181.)  When Plaintiffs knew, or could have known, about their alleged injuries is a factual dispute inappropriate for consideration at the motion to dismiss stage.  Therefore, the Court **RESERVES** judgment on the proper start date for Plaintiffs' financial aid claim.

**III.    Title IX**

Plaintiffs make several different claims under Title IX, (*see generally* FAC), pursuant to which no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.  20 U.S.C.A. § 1681. In response to complaints alleging Title IX discrimination in athletics, OCR issued a policy interpretation ("PI") in 1979 titled "Title IX and Intercollegiate Athletics" interpreting Title IX and its own regulations.[5]  The goal of the PI was to "provide further guidance on what constitutes compliance with the law."  (PI at 3.)   For example, the PI clarifies the obligations to "provide equal opportunities in athletic programs" and how to assess compliance.  (*Id.* at 5.)

**A.    First Cause of Action: Denial of Equal Allocation of Athletic Financial Aid**

Plaintiffs assert a claim for denial of equal allocation of athletic financial aid pursuant to Title IX.  (*See* FAC ¶¶ 282–90.)   Section VII.A of the PI instructs that compliance will be examined by "a financial comparison to determine whether proportionately equal amounts of financial assistance (scholarship aid) are available to men's and women's athletic programs." (PI at 5.)  The comparison is measured by "dividing the amounts of aid available for the members of each sex by the numbers of male or female participants in the athletic program and comparing the results." (*Id.*)  A university complies if the comparison shows "substantially equal amounts" or if the disparity can be explained by "legitimate, nondiscriminatory factors." (*Id.*)

"If any unexplained disparity in the scholarship budget for athletes of either gender is 1% or less for the entire budget for athletic scholarships, there will be a strong presumption that such a disparity is reasonable and based on legitimate and nondiscriminatory factors.   Conversely, there will be a strong presumption that an

---

[5]    The Court incorporates by reference the PI and thus assumes the truth of its contents.  *See supra* Section I.B.

unexplained disparity of more than 1% is in violation of the 'substantially proportionate' requirement." U.S. DOE, *Dear Colleague Letter* ("Letter") at 2–4 (July 23, 1998)[6].

Defendants contend that Plaintiffs fail "to identify any 'concrete and particularized harm' that she has personally suffered" and thus do not have standing to pursue their claims. (Mot. at 8.) Defendants assert that because student-athletes do not have a "protected interest in, or individualized right to, an athletic scholarship under Title IX," Plaintiffs' failure to receive any scholarship or a larger scholarship is not a particularized injury. (*Id.*) Plaintiffs argue that they have established standing based on psychological harm, disparity in funding available to them, and receipt of smaller scholarship awards than they otherwise would have if SDSU had complied with Title IX. (Opp'n at 5, 8.) Defendants counter that Plaintiffs "never actually allege they experienced any 'psychological harm'" and that their argument is "foreclosed by *Cummings'* unequivocal ruling that damages for emotional distress are not recoverable." (Reply at 1.)

Defendants are correct that Plaintiffs have not demonstrated a concrete injury. First, Plaintiffs' First Amended Complaint does not allege psychological harm. At the hearing, Plaintiffs' counsel repeatedly asserted that Plaintiffs alleged psychological harm. (*See* ECF No. 36 ("Tr") at 4:24–5:4, 6:23–25, 13:18.) The only assertion of psychological harm, however, appears improperly in Plaintiffs' Opposition. (*See* Opp'n at 5); *see also Gerritsen*, 116 F. Supp. 3d at 1126 ("[I]t is improper for a plaintiff to assert an unpled theory of liability in opposition to a defendant's Rule 12(b)(6) motion to dismiss.").

Second, to establish standing to bring a denial of equal allocation of athletic financial aid claim under Title IX, Plaintiffs must show both a disparity in funding and how that disparity specifically affected each of them—i.e., that she would have received a larger scholarship if the budget had been proportional. *See Anders v. Cal. State Univ., Fresno*, No. 121CV00179AWIBAM, 2021 WL 3115867, at *17 (E.D. Cal. July 22, 2021) (finding

---

[6]    The Court incorporates by reference the Letter and thus properly may assume the truth of its contents. *See supra* Section I.B.

plaintiffs lacked standing because the court could not infer from allegations which plaintiffs were deprived of a scholarship or received a lesser scholarship due to a Title IX violation); *see also Balow v. Michigan State Univ.*, No. 1:21-CV-44, 2021 WL 4316771, at \*7 (W.D. Mich. Sept. 22, 2021) (finding plaintiffs lacked standing because plaintiffs did not allege how a disparity between scholarships provided to male versus female athletes caused their injury).   In the First Amended Complaint, while Plaintiffs allege facts indicating that there was a disparity in funding, *see infra* Section IV.B, they do not allege how that disparity affected each of them.   For example, Plaintiff Absten alleges that the "amount of athletic financial aid [received] has fluctuated significantly from semester to semester."  (FAC ¶ 110.)  She does not allege, however, that the fluctuation in her funding is due to the disparity in funding between male and female student-athletes.   The First Amended Complaint similarly lacks specific allegations as to the remaining Plaintiffs as well.

Thus, the Court finds that Plaintiffs lack standing and **DISMISSES** their first Title IX claim for denial of equal allocation of athletic financial aid.

### B.   *Second Cause of Action: Denial of Equal Athletic Treatment and Benefits*

Current student-athletes Clark, Grotegeer, Heri, Watt, and Absten also assert a claim seeking injunctive relief for denial of equal athletic treatment and benefits pursuant to Title IX.  (*See* FAC ¶¶ 291–98.)   Section VII.A. of the PI discusses "Equivalence in Other Athletic Benefits and Opportunities." (PI at 6.)  To determine whether a school is providing equal opportunity to "members of both sexes," OCR considers:

(1)   [intentional blank]

(2)   Provision and maintenance of equipment and supplies;

(3)   Scheduling of games and practice times;

(4)   Travel and per diem expenses;

(5)   Opportunity to receive coaching and academic tutoring;

(6)   Assignment and compensation of coaches and tutors;

(7)   Provision of locker rooms, practice and competitive facilities;

14

(8)     Provision of medical and training services and facilities;

(9)     Provision of housing and dining services and facilities; and

(10)   Publicity.

(*Id.*)  The "availability, quality and kinds of benefits, opportunities, and treatment afforded members of both sexes" inform whether a school is in compliance with Title IX.  (*Id.*)  If the comparison yields results that are "equal or equal in effect," the school will be in compliance.  (*Id.*)  Nondiscriminatory factors include, "rules of play, nature/replacement of equipment, rates of injury resulting from participation, nature of facilities required for competition, and the maintenance/ upkeep requirements of those facilities."  (*Id.* at 7.)  OCR determined that, "[f]or the most part, differences involving such factors will occur in programs offering football" and are justifiable as long as "sport-specific needs are met equivalently in both men's and women's programs."  (*Id.*)  Under each of the above factors, OCR provides additional sub-factors for consideration.  (*Id.* at 7–8.)

       1.    *Standing*

Defendants assert that Plaintiffs lack standing to bring a claim for injunctive relief for allocation of athletic benefits because "each named Plaintiff must plead a concrete, redressable injury to proceed, but no named Plaintiff has cleared that bar."  (Mot. at 18.)  Plaintiffs, however, contend that they adequately state how "SDSU treated the women on the track team, including Plaintiffs, less favorably than men."  (Opp'n at 19.)  Plaintiffs additionally note that only current student-athletes are asserting the claim for unequal treatment and benefits.  (*Id.* n. 7.)

The Court disagrees with Defendants' contention that Plaintiffs do not allege how the track and field team has been harmed by an unequal allocation of benefits.  (*See* Mot. at 19.)  Plaintiffs clearly allege that, unlike men's teams, the women's track and field team must "reuse equipment and supplies over a number of years" and schedule its practices around men's out-of-season team practices.  (FAC ¶¶ 197, 200.)  Additionally, Plaintiffs provide numerous examples, *see infra* Section III.B.2, of disparities between men's and women's teams, including the women's track and field Plaintiffs.  Accordingly, the Court

concludes that the current student-athlete Plaintiffs have standing to assert a claim for denial of equal treatment and benefits.

### 2.   *Adequacy of Plaintiffs' Allegations*

In addition to challenging Plaintiffs' standing, Defendants also contend that Plaintiffs fail to state a claim because "(1) they conflate the provision of *non-identical* benefits with *unequal* benefits, failing to account for sport-specific differences and failing to address the specific factors that OCR considers; and (2) they attempt to elevate the allegedly-unique level of benefits provided to football as the standard that must be provided to all other teams."  (Mot. at 20) (emphasis in original).  Plaintiffs respond that a comparison to the football team is appropriate because if the football team is given a unique benefit that is not provided to any other team, then "the men's program is, on balance, receiving unequal treatment and benefits."  (Opp'n at 22.)  Plaintiffs further argue that factual disputes over what equipment is necessary for each sport should not be resolved at the motion to dismiss stage.  (*Id.* at 21–22.)

Plaintiffs are correct and have sufficiently stated a claim for denial of equal athletic treatment and benefits.  Plaintiffs describe many differences in SDSU's treatment of its women's versus men's teams, (FAC ¶¶ 193–237), including the following examples:

- Some men's teams receive "four or more pairs of athletic shoes for the season," while women's teams receive two to three, with some receiving zero. (*Id.* ¶ 195.)

- Women's teams, like track and field, must schedule their practices around men's teams, like soccer, even when the men are out-of-season and the women are in their competitive season.  (*Id.* ¶ 200.)

- SDSU provides men's teams with $200 to $300 per diem per athlete for a competition weekend, while it provides women's teams with $75 to $100 per diem per athlete for a similar weekend.  (*Id.* ¶ 204.)

- SDSU provides men's teams with catered meals while traveling, while women's teams must provide their own lunch.  (*Id.* ¶ 206.)

- Men's teams have "priority access to scheduling tutoring." (*Id.* ¶ 208.)

- Head coaches of women's teams make an average of less than half of the amount SDSU pays men's team head coaches. (*Id.* ¶ 212.)

- Some women's teams are required to share a locker room with each other, whereas men's teams do not share. (*Id.* ¶ 220.)

- Shared athletic trainers are present for every men's team practice and competition but are not present for every women's team practice or competition. (*Id.* ¶ 222.)

- SDSU provides more publicity to men's teams than women's teams, for example by posting on the athletic department's social media account when men's teams have competitions. (*Id.* ¶ 229.)

- SDSU women's varsity teams have historically been given "much smaller recruiting budgets" than the men's teams. (*Id.* ¶ 234–35.)

Accepting the above examples—none of which include a comparison to SDSU's football team—as true, as the Court must at the pleading stage, Plaintiffs have stated a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 (a claim is plausible when the court can draw "the reasonable inference that the defendant is liable for the misconduct alleged"). Thus, the Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' second claim for denial of equal athletic treatment and benefits.

## C. *Third Cause of Action: Retaliation*

Finally, Plaintiffs plead a cause of action under Title IX for retaliation. (*See* FAC ¶¶ 299–308.) "Title IX prohibits sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). Actionable "sex discrimination" includes retaliation "against a person *because* he complains of sex discrimination." *Id.* at 174, 178 (emphasis in original); *see also Emeldi v. Univ. of Ore.*, 698 F.3d 715, 725 (9th Cir. 2012) (speaking out against sex discrimination is a protected activity). "The Title VII framework generally governs Title IX retaliation claims." *Emeldi*, 698 F.3d at 725. Plaintiffs may prosecute their claims using either direct or circumstantial

17

evidence.  *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003), *as amended* (Jan. 6, 2004).  "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption."  *Id.*  Plaintiffs lacking direct evidence must establish a "prima facie case of retaliation by showing (a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two."  *Emeldi*, 698 F.3d at 724.

### 1.   Standing

In the First Amended Complaint, Plaintiffs allege that those who were not present for the Track and Field Zoom meeting (the "Absent Plaintiffs") have standing to assert a Title IX retaliation claim because they are in the "zone of interest."  (FAC ¶ 251.) Defendants challenge the Absent Plaintiffs' standing, contending they "could not reasonably have suffered any harm from a comment they did not hear" and thus do not have standing.  (Mot. at 23.)  Plaintiffs do not directly address Defendants' arguments, (*see generally* Opp'n), which the Court could construe as a concession that the Absent Plaintiffs lack standing.  *See, e.g.*, *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014). Nonetheless, Plaintiffs appear to argue that the Absent Plaintiffs have standing because "the prosecution of Plaintiffs' claims and the ability of other female varsity student-athletes to pursue their own Title IX claims [was] adversely affected" by SDSU's conduct.  (FAC ¶ 251.)

Title IX permits plaintiffs who fall within the "zone of interest" to bring complaints. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 866 (9th Cir. 2014).  Any plaintiff with an interest meant to be protected by the statute may bring a complaint. *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011).  Title IX "is broadly worded; it does not require that the victim of the retaliation must also be the victim of the discrimination that is the subject of the original complaint."  *Jackson*, 544 U.S. at 179.

Plaintiffs' arguments are unavailing.  First, the Absent Plaintiffs—all *former* student-athletes—do not demonstrate that they were meant to be protected by the zone as they are no longer associated with the SDSU athletics program.  Second, the Absent

Plaintiffs do not allege any actual damage or harm resulting from the alleged retaliatory statement.  While Plaintiffs allege a "chilling effect" on all female athletes' willingness to pursue Title IX claims, (FAC ¶ 251), the Absent Plaintiffs were evidently not deterred from participating in this lawsuit given they are named Plaintiffs in the case.  Moreover, Plaintiffs' conclusory allegation that a "chilling effect" would spread is insufficient to state a claim under Rule 12(b)(6).  *See Iqbal*, 556 U.S. at 663.

Because Plaintiffs cannot show how those absent from the Zoom meeting were harmed by Defendants' statement made at the meeting or fall within the zone of interest, the Court **GRANTS** Defendants' Motion to Dismiss the Title IX retaliation claim brought by the Absent Plaintiffs.

### 2.    *Adequacy of Plaintiffs' Allegations*

The remaining Plaintiffs are four current track and field student-athletes, Carina Clark, Erica Grotegeer, Kaitlin Heri, and Aisha Watt.  Defendants assert that these "Plaintiffs do *not* allege that SDSU ever took any actual adverse action against them" and thus these Plaintiffs have failed to state a viable claim of retaliation in violation of Title IX.  (Mot. at 24.)  Plaintiffs respond that the "adverse effect of SDSU's conduct is a chilling effect on current female student-athletes to assert their Title IX rights against the school." (Opp'n at 25.)  Plaintiffs additionally note that the Title VII framework upon which SDSU relies is irrelevant in this case because Plaintiffs "have direct evidence of retaliation" based on the statement at the meeting.  (*Id.* at 24 n. 8.)

Plaintiffs' claim that they have "direct evidence of retaliation" amounts to no more than a conclusory assertion devoid of fact.  *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted).  The First Amended Complaint does not include any factual allegations constituting direct evidence of retaliation.  The only "evidence"

Plaintiffs offer in support of their retaliation claim is that SDSU made the statement that "the Title IX lawsuit [was] a distraction to the women participating in the lawsuit and to the team as a whole" at the Zoom meeting.  (FAC ¶ 242.)  A single comment describing the lawsuit as a "distraction," however, does not amount to direct evidence of retaliation.[7] *See Jackson*, 544 U.S. at 174 (defining retaliation as an "intentional response to the nature of the complaint: an allegation of sex discrimination").

Nor have Plaintiffs alleged facts to establish a "prima facie" case of retaliation based on circumstantial evidence.  Plaintiffs allege they participated in a protected activity, *see id.* at 173; however, they do not allege any adverse action.  To the extent Plaintiffs are attempting to argue that the alleged "chilling effect" is the adverse action—though they call it an "adverse effect," (*see* Opp'n at 25)—that argument falls well short.  Thus, the Court **DISMISSES** the remaining Plaintiffs' Title IX retaliation claim.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Request for Judicial Notice.  (ECF No. 32.)  Specifically, the Court **TAKES JUDICIAL NOTICE** of Exhibit 1, **INCORPORATES BY REFERENCE** Exhibits 2 and 3, and **DENIES** Defendants' Request for Judicial Notice of Exhibits 4 through 7.  The Court also **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss. (ECF No. 30.)  Specifically, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' first cause of action for Denial of Equal Allocation of Athletic Financial Aid in violation

/ / /

---

[7]      Plaintiffs argue that in *A. B. v. Hawaii State Department of Education*, 30 F.4th 828, 833 (9th Cir. 2022), the Ninth Circuit "acknowledge[d] something as simple as a statement can have a chilling effect on students' willingness to assert their civil rights."  (*See* Opp'n at 24).  Plaintiffs' reliance on *A. B.* is misplaced.  First, the *A.B.* court's findings were made in the context of a class certification analysis of typicality, not a motion to dismiss.  Moreover, the portion of *A.B.* to which Plaintiffs cite consists of the court reciting the *A.B.* plaintiffs' arguments, not making any finding.  *See A. B.*, 30 F.4th at 833 ("Plaintiffs further allege that these retaliatory actions created a 'chilling effect among [plaintiffs] regarding identifying and complaining about other gender inequities in athletics.'").

22-CV-173 TWR (MSB)

of Title IX and third cause of action for Retaliation under Title IX.  The Court otherwise **DENIES** Defendants' Motion to Dismiss.

Plaintiffs **MAY FILE** an amended complaint curing the deficiencies outlined in this Order within <u>fourteen (14) days</u> of the electronic docketing of this Order.  *Should Plaintiff elect not to file a timely amended complaint, the Court will consider Plaintiff's first and third causes of action to be abandoned, and this action shall proceed solely as to Plaintiffs' surviving second cause of action.*

**IT IS SO ORDERED.**

Dated:  November 1, 2022

Honorable Todd W. Robinson
United States District Judge