Scott R. Eldridge (Michigan Bar No. P66452)
Brian M. Schwartz (Michigan Bar No. P69018)
Erika L. Giroux (Michigan Bar No. P81998)
Ashley N. Higginson (Michigan Bar No. P83992)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Tel: (313) 963-6420
eldridge@millercanfield.com
schwartzb@millercanfield.com
giroux@millercanfield.com
higginson@millercanfield.com
*Attorneys for Defendants*

ROB BONTA
Attorney General of California
JENNIFER L. SANTA MARIA, SBN 225875
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
P.O. Box 85266
San Diego, CA 92186-5266
Telephone:  (619) 738-9099
Fax:  (619) 645-2012
E-mail:
Jennifer.SantaMaria@doj.ca.gov
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON FISK, RAQUEL CASTRO, GRETA CASTRILLON, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, and SAN DIEGO STATE UNIVERSITY<br><br>Defendants. | Case No. 3:22-cv-00173-TWR-MSB<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS IN PART PLAINTIFFS' THIRD AMENDED COMPLAINT**<br><br>**[Fed. R. Civ. P. 12(b)(1), 12(b)(6)]**<br><br>Date:  Thursday, August 17, 2023<br>Time: 3:00 p.m.<br>Courtroom:  3A<br>Judge: Hon. Todd W. Robinson<br>Magistrate: Hon. Michael S. Berg |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................... iii

I.     INTRODUCTION.................................................................1

II.    STATEMENT OF RELEVANT FACTS ....................................................2

       A.    Plaintiffs Are Former Student-Athletes at SDSU .................................2

       B.    The Court Partially Dismissed Plaintiffs' Financial Assistance Claim
             for Lack of Standing                                                3

       C.    Allegations Regarding Allocation of Financial Assistance (Count I) ..5

III.   ARGUMENT ....................................................................7

       A.    Standard of Review ...............................................................7

             1.    Rule 12(b)(1)................................................................7

             2.    Rule 12(b)(6)................................................................8

       B.    Plaintiffs' Claims for Injunctive and Declaratory Relief Are Moot .....8

       C.    Plaintiffs' Financial Aid Claim Relating to the 2018-2019 Academic
             Year Is Barred by the Statute of Limitations ......................................11

       D.    Plaintiffs Have Failed to Remedy Their Standing Deficiencies (Count
             I) ...................................................................................13

             1.    Plaintiffs' "Lost Opportunity" Theory......................................13

                   a.    Plaintiff Figueroa Does Not Have Standing to Seek
                         Damages on a "Lost Opportunity" Theory of Harm ......13

                   b.    Rowing Plaintiffs Enrolled When the Complaint Was
                         Filed Lack Standing to Seek Injunctive and Declaratory
                         Relief Under a "Lost Opportunity" Theory....................15

                   c.    Track and Field Plaintiffs Lack Standing to Pursue Count
                         I on a "Lost Opportunity" Theory .................................16

             2.    No Plaintiff Has Standing Under a "Smaller Financial Award"
                   Theory ....................................................................18

             3.    Rowing Plaintiffs Enrolled When the Complaint Was Filed
                   Lack Standing to Seek Injunctive and Declaratory Relief Under
                   a "Psychological and Stigmatic Harms" Theory ......................19

4.    Plaintiffs Who Were Not Enrolled When the Complaint Was Filed Lack Standing to Seek Injunctive and Declaratory Relief on Count I...................................................................................20

5.    Plaintiffs Not Present During the February 16, 2022 Zoom Meeting Lack Standing to Pursue a Retaliation Claim.............21

IV.    CONCLUSION ...........................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................8, 17

*Bayer v. Neiman Marcus Grp., Inc.*,
861 F.3d 853 (9th Cir. 2017) ...................................................7

*Beasley v. Ala. State Univ.*,
966 F. Supp. 1117 (M.D. Ala. 1997) .............................................17, 19

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................8

*Campos v. Fresno Deputy Sheriff's Ass'n*,
441 F. Supp. 3d 945 (E.D. Cal. 2020) .......................................7

*Cole v. Oroville Union High Sch. Dist.*,
228 F.3d 1092 (9th Cir. 2000) ...............................................8, 9

*Cook v. Colgate Univ.*,
992 F.2d 17 (2d Cir. 1993) .....................................................9

*Cummings v. Premier Rehab Keller*,
142 S. Ct. 1562 (2022)...........................................................4

*DBSI/TRI IV Ltd. P'ship v. United States*,
465 F.3d 1031 (9th Cir. 2006) ...............................................7

*Doe v. Madison Sch. Dist. No. 321*,
177 F.3d 789 (9th Cir. 1999) .................................................9

*C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*,
654 F.3d 975 (9th Cir. 2011) .................................................9

*Foster v. Carson*,
347 F.3d 742 (9th Cir. 2003) .................................................7

*Grandson v. Univ. of Minnesota*,
272 F.3d 568 (8th Cir. 2001) .................................................9

*Johnson v. Altamirano*,
   418 F. Supp. 3d 530 (S.D. Cal. 2019)........................................................8

*Johnson v. City of Grants Pass*,
   50 F.4th 787 (9th Cir. 2022) ................................................................10

*Karasek v. Regents of Univ. of Cal.*,
   500 F. Supp. 3d 967 (N.D. Cal. 2020)......................................................11

*Kingman Reef Atoll Invs., L.L.C. v. United States*,
   541 F.3d 1189 (9th Cir. 2008) ..............................................................7

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) ............................................................14

*Lewis v. Casey*,
   518 U.S. 343 (1996)...........................................................................13

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)...........................................................................13

*Lukovsky v. City & Cty. of San Francisco*,
   535 F.3d 1044 (9th Cir. 2008) ............................................................11

*Lund v. Cowan*,
   5 F.4th 964 (9th Cir. 2021) ..................................................................7

*Maldonado v. Lynch*,
   786 F.3d 1155 (9th Cir. 2015) ..............................................................7

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ..............................................................7

*Rojas v. Brinderson Constructors Inc.*,
   567 F. Supp. 2d 1205 (C.D. Cal. 2008) ..................................................17

*Slayman v. FedEx Ground Package Sys., Inc.*,
   765 F.3d 1033 (9th Cir. 2014) ............................................................10

*Spokeo v. Robbins*,
   578 U.S. 330 (2016)...........................................................................13

*Stanley v. Trustees of Cal. State Univ.*,
   433 F.3d 1129 (9th Cir. 2006) ............................................................11

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*,
  529 U.S. 765 (2000)...............................................................................15

*Veterans for Common Sense v. Shinseki*,
  678 F.3d 1013 (9th Cir. 2012) ........................................................13, 18

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2010) ...................................................................8

**Statutes**

Cal. Civ. Proc. Code § 335.1 ....................................................................11

**Court Rules**

Fed. R. Civ. P. 8 .......................................................................................17

Fed. R. Civ. P. 8(a)(2)................................................................................8

Fed. R. Civ. P. 12(b)(1).........................................................................7, 11

Fed. R. Civ. P. 12(b)(6)..............................................................................8

# I.    Introduction

Plaintiffs (eleven former members of the discontinued rowing team and six former members of the track and field team) brought this lawsuit alleging that SDSU's[1] allocations of athletic financial assistance and athletic treatment and benefits among male and female student-athletes violated Title IX.  None of these 17 Plaintiffs remains an enrolled, current student-athlete at SDSU.  All six track and field Plaintiffs have graduated, and only two former rowers remain enrolled, neither of whom is participating on an intercollegiate athletic team.  Consequently, none of the injunctive or declaratory relief they seek vis-a-vis their financial aid claim (Count I), treatment and benefits claim (Count II), or retaliation claim (Count III) could accrue to their benefit.  Plaintiffs' claims for injunctive and declaratory relief are therefore moot and must be dismissed.

Further, despite multiple roadmaps and clear guidance from this Court, Plaintiffs' Third Amended Complaint ("TAC," ECF No. 50) fails to fix the defects in Plaintiffs' novel theories of standing for Count I.  Globally, Plaintiffs continue to advance a theory of harm based on mathematical averages that this Court has already rejected.  As to the track and field Plaintiffs, their allegations of a "lost opportunity" to receive aid remain speculative, conclusory, and insufficient to demonstrate an injury-in-fact to potentially recover damages.  And, the rowing Plaintiffs who were enrolled at the time of the original Complaint have failed to factually allege that they have experienced a "psychological and stigmatic harm" that could be rectified by injunctive or declaratory relief.

For these reasons, and as explained further below, the Third Amended Complaint should be dismissed in part with prejudice.

---

[1] San Diego State University ("SDSU") is a campus of the California State University.  Defendant Board of Trustees of the California State University, which is the State of California acting in its higher education capacity was also erroneously sued as "San Diego State University".

## II.   Statement of Relevant Facts

### A.   Plaintiffs Are Former Student-Athletes at SDSU

On February 7, 2022, Plaintiffs filed a class action complaint alleging that SDSU violated Title IX regarding the allocation of athletic financial assistance during the 2019-2020 and 2020-2021 academic years.[2]  Plaintiffs Fisk, Castro, Viss (now Castrillon), Botterill, Petrine, Bauer, Figueroa, Whitworth, Davies, Dietz, and Sulcs were members of SDSU's rowing team, which was discontinued after the 2020-2021 academic year.  (TAC ¶¶ 85, 96, 107, 118, 139, 176, 237, 263, 273, 283, ECF No. 50, PageID.1346, 1349, 1351, 1354, 1358, 1361, 1366, 1377, 1382, 1384, 1387).  Plaintiffs Brosch, Clark, Grotegeer, Heri, Watt, and Absten were members of SDSU's women's track and field team.  (TAC ¶¶ 129, 161, 192, 207, 222, 248, ECF No. 50, PageID.1346, 1363, 1369, 1372, 1375, 1379).

Plaintiffs Viss (Castrillon), Brosch, and Whitworth graduated from SDSU in May 2021 prior to this lawsuit being filed.  (TAC ¶¶ 128, 236, ECF No. 50, PageID.1356, 1377; Ex. 1, Taormina Decl. ¶¶ 4–6, Ex. A).   Plaintiff Davies transferred from SDSU in January 2022.  (TAC ¶ 262, ECF No. 50, PageID.1382). Since this lawsuit was filed, Plaintiffs Fisk (May 2022), Castro (May 2023), Bauer (May 2022), Clark (May 2022), Figueroa (May 2023), Grotegeer (May 2023), Heri (May 2022), Watt (May 2023), Absten (May 2022), and Dietz (May 2022) have graduated from SDSU.  (TAC ¶¶ 84, 95, 106, 149, 160, 175, 191, 206, 221, 247, 272, ECF No. 50, PageID.1346, 1349, 1351, 1361, 1363, 1366, 1369, 1372, 1374, 1379, 1384; Ex. 1, Taormina Decl. ¶¶ 4–6, Ex. A).[3]

Plaintiffs Petrine and Botterill remain enrolled but do not participate on any intercollegiate athletic team.  (*See* Ex. 1, Taormina Decl. ¶ 5, Ex. A).  Plaintiff Sulcs

---

[2] Although SDSU's elimination of the rowing team was the catalyst for this suit, Plaintiffs do not challenge the elimination of the women's rowing program because SDSU was and remains compliant with Title IX's requirements concerning opportunities for participation in athletics.

[3] May 2023 commencement activities occurred between May 12 and 14, 2023.

is not currently enrolled at SDSU.  (TAC ¶ 282, ECF No. 50, PageID.1387; Ex. 1, Taormina Decl. ¶ 5, Ex. A).  Thus, no Plaintiff is a current student-athlete at SDSU. When they were, all Plaintiffs received a partial athletic scholarship to attend SDSU, except Figueroa who received no athletic scholarship.  (TAC ¶¶ 87, 98, 109, 120, 130, 141, 152, 163, 179, 194, 209, 224, 239, 250, 264, 274, 284, ECF No. 50, PageID.1346–1387).

**B.    The Court Partially Dismissed Plaintiffs' Financial Assistance Claim for Lack of Standing**

After SDSU moved to dismiss Plaintiffs' original Complaint, Plaintiffs filed a First Amended Complaint, adding few facts related to their existing financial aid claim, tacking on new claims challenging SDSU's allocation of athletic treatment and benefits, and alleging retaliation.  SDSU moved to dismiss the First Amended Complaint in its entirety.  After a hearing, the Court issued an Order dismissing Counts I and III on November 1, 2022 (ECF No. 38).  The Court first concluded that Plaintiffs lacked standing to assert a claim for unequal allocation of athletic financial assistance, as they had not demonstrated a concrete injury.  Specifically, despite arguing that they had been psychologically harmed, "Plaintiffs' First Amended Complaint does not allege psychological harm."  (ECF No. 38, PageID.814). Additionally, "while Plaintiffs allege facts indicating that there was a disparity in funding, they do not allege how that disparity affected each of them."  (*Id.*, PageID.815 (internal citation omitted)).  Regarding Plaintiffs' retaliation claim, the Court held that any Plaintiff who was not present during the track and field meeting at issue lacked standing.  (*Id.*, PageID.819–820).

Plaintiffs filed a Second Amended Complaint ("SAC"), which failed to fix key problems with Plaintiffs' allegations of harm.  (ECF No. 41).  SDSU therefore again moved to dismiss Plaintiffs' athletic financial assistance claim (Count I) and retaliation claim (Count III).  After a hearing, the Court issued an Order dismissing portions of Counts I and III.  Specifically, with respect to Plaintiffs' athletic financial

assistance claim, the Court held that the Plaintiffs on the track and field team failed to sufficiently allege that they would have received more financial aid and therefore were not entitled to recover damages under a "lost opportunity" theory. (ECF No. 49, PageID.1305–1306). The Court also determined that Plaintiff Figueroa lacked standing under this "lost opportunity" theory as she had not previously received a scholarship and had not shown that she was in a position to compete for financial aid. (*Id.*, PageID.1305). The Court further held that the remaining rowers had not sufficiently shown redressability for injunctive or declaratory relief under a "lost opportunity" theory—specifically, the rowers who graduated or transferred before filing suit could not seek such relief as a matter of law, and the other rowers had not alleged an injury that could be fixed by an injunction. (*Id.*, PageID.1309–1310 (concluding that an injunction "would not give the rowing team Plaintiffs the chance to compete for any more money since the team no longer exists and these Plaintiffs' financial aid packages are already locked in through their graduation dates")).

Next, the Court held that no Plaintiff could pursue a financial aid claim under a "smaller financial-aid award" theory, as Plaintiffs had alleged only an "average" harm across all Plaintiffs, supported by "conclusory and speculative allegations." (ECF No. 49, PageID.1313). The Court also explained: "Plaintiffs' allegations in this regard appear to depend on a right to an individual scholarship," but "they do not have such a right." (*Id.*) Further, the Court held that Plaintiffs had not alleged "concrete injuries they each endured under their theory that they received smaller scholarships than they would have if SDSU had complied with Title IX." (*Id.*)

As to Plaintiffs' claims based on a "psychological and stigmatic harms" theory, the Court held that monetary damages were unavailable as a matter of law under *Cummings v. Premier Rehab Keller*, 142 S. Ct. 1562 (2022). (ECF No. 49, PageID.1318). The Court then concluded that the Plaintiffs who had graduated or transferred prior to filing suit lacked standing to pursue injunctive or declaratory relief for psychological or stigmatic harms, and that the rowing Plaintiffs had failed

to allege an ongoing injury redressable by injunctive or declaratory relief. (*Id.*, PageID.1318–1319).

The limited portions of Plaintiffs' financial aid claim that survived were as follows:

- Under their "lost opportunity" theory, only the named Plaintiffs who were rowers, except Figueroa, alleged injuries-in-fact that were potentially redressable by a request for damages. (ECF No. 49, PageID.1310);

- Under their "psychological and stigmatic harms" theory, only the named Plaintiffs who were on the track and field team at the time the original Complaint was filed sufficiently alleged injuries-in-fact that were potentially redressable by injunctive and declaratory relief. (*Id.*, PageID.1320).

Finally, with respect to Plaintiffs' retaliation claim, the Court limited this claim to only those who were present during the February 16, 2022, track and field team Zoom meeting at issue. (ECF No. 49, PageID.1327–1328).

## C.   Allegations Regarding Allocation of Financial Assistance (Count I)

The TAC does not remedy any of the injury-in-fact or redressability problems that the Court explained at length in its April 12, 2023 Opinion. While Plaintiffs concede that SDSU provided athletic financial aid to the rowing team in an amount "that equaled fifteen in-state scholarship and five out-of-state scholarships"—*i.e.*, the maximum of twenty permitted by NCAA regulations—Plaintiffs allege that SDSU imposed a "dollar cap" on the total aid that could be awarded to rowers. (*See* TAC ¶¶ 34–47, ECF No. 50, PageID.1339–1341). Plaintiffs then speculate about various hypothetical distributions of scholarship money among rowing team members. (*See id.*).

Next, Plaintiffs allege, in speculative and conclusory fashion, that "[m]embers of the women's track and field team confronted a similar reality" and that some unspecified number of "scholarship dollars permitted by the NCAA's rules to be awarded to members of the women's track and field team simply went unawarded"

because of an "artificial[] cap[]".   (TAC ¶¶ 49–56, ECF No. 50, PageID.1342). Plaintiffs then attempt to extend these claims to all female student-athletes with more speculative and conclusory allegations—that SDSU "create[d] two pools of athletic financial aid" and that "[i]f SDSU had created proportional pools of scholarship money for men and women, additional money could have flowed to Plaintiffs, members of the women's rowing team, members of the women's track and field team, and all female student-athletes not already receiving full scholarships." (TAC ¶¶ 63, 65, ECF No. 50, PageID.1343–1344).   But, unlike rowing, Plaintiffs remarkably admit that they do not know—and cannot know—non-conclusory facts to support their speculative "cap" theory related to the other non-rowing female teams.   (ECF No. 50, PageID.1339–1340, n.1 (admitting to a lack of knowledge regarding caps for non-rowing teams)).   And they only identify a single men's team (football) that they guess does not have a "cap" while failing to account for the impact that such unknown caps could have on other men's teams.   (TAC ¶ 62, PageID.1343).

In similarly cursory fashion, the rowing Plaintiffs (except Whitworth) now allege that they were "denied the equal opportunity to compete for aid and [were] awarded a smaller scholarship even after [their] team was eliminated." (TAC ¶¶ 88, 99, 110, 121, 142, 153, 184, 265, 275, 285, ECF No. 50, PageID.1347–1388).   All Plaintiffs allege, again without any supporting detail, that the "psychological harm" of purportedly receiving less in financial aid "is ongoing and persists even today." (TAC ¶¶ 88, 99, 110, 121, 131, 142, 153, 164, 184, 195, 210, 225, 240, 251, 265, 275, 285, ECF No. 50, PageID.1347–1388).

Plaintiffs further contend that they and "all current and former female students who participated in intercollegiate varsity athletics at SDSU from the 2018-19 academic year to the present" are entitled to monetary damages in an amount equal to the difference between the amounts of aid awarded to male and female student-athletes overall, "divided by and among the number of people in the class"—*i.e.*, the

"average" amount that Plaintiffs believe each female student-athlete should have received in aid. (*See, e.g.*, TAC ¶¶ 90–91, 457, ECF No. 50, PageID.1347–1348, 1416). Finally, Plaintiffs now expressly seek to assert claims for purportedly unequal financial aid beginning with the 2018-2019 academic year. (*E.g.*, TAC ¶¶ 2, 457, ECF No. 50, PageID.1336, 1416).

## III.   Argument

### A.   Standard of Review

#### 1.   Rule 12(b)(1)

A court should dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing when a plaintiff does not establish an injury-in-fact. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "[W]hen subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

Additionally, like standing, "[m]ootness is a jurisdictional issue." *Campos v. Fresno Deputy Sheriff's Ass'n*, 441 F. Supp. 3d 945, 954 (E.D. Cal. 2020); *Maldonado v. Lynch*, 786 F.3d 1155, 1160 (9th Cir. 2015). "'The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted.'" *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017). Therefore, "[i]f there is no longer a possibility that [a plaintiff] can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction.'" *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003). "[S]peculative suppositions, far-fetched fears, or remote possibilities of recurrence cannot overcome mootness." *Lund v. Cowan*, 5 F.4th 964, 968-69 (9th Cir. 2021) (internal quotation marks omitted); *see also DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1038 (9th Cir. 2006) ("Standing, mootness, and ripeness are jurisdictional issues that may be raised at any time, even for the first time on appeal.").

### 2.      Rule 12(b)(6)

To survive a motion to dismiss, Plaintiffs must assert sufficient factual allegations to establish that their claims are "plausible on [their] face," *i.e.*, there must be more than the mere possibility that SDSU acted unlawfully. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Although courts generally accept as true the complaint allegations, this rule is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For a claim to be "plausible," it is insufficient that the facts alleged are "'consistent with' a defendant's liability" or that a violation is "conceivable." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 567). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

A claim should be dismissed under Fed. R. Civ. P. 12(b)(6) as barred by the statute of limitations where "the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (internal quotation marks omitted); *Johnson v. Altamirano*, 418 F. Supp. 3d 530, 560 (S.D. Cal. 2019).

### B.      Plaintiffs' Claims for Injunctive and Declaratory Relief Are Moot

As this Court recognized in its April 12, 2023 Opinion, "it is well-settled that once a student graduates, she no longer has a live case or controversy justifying declaratory and injunctive relief against a school's action or policy." (ECF No. 49, PageID.1309 (quoting *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000)) (internal quotation marks and brackets omitted)). That rule applies to all of Plaintiffs' requests for declaratory and injunctive relief on their financial aid (Count I), treatment and benefits (Count II), and retaliation (Count III) claims.

Currently, as set forth in Section II.A., *supra*, no Plaintiff is an enrolled student-athlete at SDSU. No injunction or declaration that this Court could issue— particularly not an injunction governing SDSU's future conduct (*see* TAC, ECF No.

50, PageID.1426–1427)—would provide any redress for harms those Plaintiffs have allegedly experienced.  For example, an injunction directing SDSU's allocation of athletic financial assistance could and would only affect financial aid to students presently receiving (or who in the future might receive) scholarships from SDSU; it would simply have no impact on former students who have already graduated or left, and Plaintiffs' TAC contains no allegations refuting that conclusion.  Because any such relief would not accrue to the benefit of any of the 15 Plaintiffs who have already graduated or transferred, or are otherwise no longer enrolled at SDSU, their claims for injunctive and declaratory relief are moot and must be dismissed.  *See, e.g.*, *Cole*, 228 F.3d at 1098–99; *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 983 (9th Cir. 2011) (affirming that student's graduation mooted claims for declaratory relief); *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999) ("A student's graduation moots claims for declaratory and injunctive relief . . ."); *see also Grandson v. Univ. of Minnesota*, 272 F.3d 568, 574–75 (8th Cir. 2001) (dismissing Title IX claim of student who left school prior to graduation as moot).

While the remaining two Plaintiffs, Petrine and Botterill (both former rowers), are still enrolled at SDSU, neither participates on any intercollegiate athletic team. (*See* Ex. 1, Taormina Decl. ¶ 5, Ex. A).  The same principles that moot the other Plaintiffs' claims for injunctive and declaratory relief apply with equal force to Petrine and Botterill: since neither participates on an intercollegiate sports team, neither has a current or ongoing injury that could be rectified by an injunction.  *See Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993) (concluding, in Title IX action, that "the end of the ice hockey season and the graduation of the last of the plaintiffs render this action moot").  As to financial aid, this Court determined in its April 12, 2023 Opinion that "[a]n 'injunction barring SDSU from discriminating against its female student-athletes on the basis of their sex by depriving them of equal athletic financial aid,' would not give the rowing team Plaintiffs the chance to compete for

any more money since the team no longer exists and these Plaintiffs' financial aid packages are already locked in through their graduation dates." (ECF No. 49, PageID.1310). Applying this principle, neither Petrine nor Botterill would experience any difference in treatment from injunctive or declaratory relief on their treatment and benefits claim. Accordingly, no Plaintiff may pursue injunctive or declaratory relief in this lawsuit.

That Plaintiffs brought this lawsuit as a class action does not alter that conclusion. Where the named plaintiff's claim in a class action "becomes moot before the district court certifies the class, the class action normally also becomes moot." *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014). As the Ninth Circuit recently explained, a class representative may only "pursue the live claims of a properly certified class . . . after his own claims become moot, [if] several requirements are met":

> The class must be properly certified, or the representative must be appealing denial of class certification. The class representative must be a member of the class with standing to sue at the time certification is granted or denied. The unnamed class members must still have a live interest in the matter throughout the duration of the litigation. And the court must be satisfied that the named representative will adequately pursue the interests of the class even though their own interest has expired.

*Johnson v. City of Grants Pass*, 50 F.4th 787, 801, n.18 (9th Cir. 2022) (internal citations omitted). No class has been certified in this case, nor have Plaintiffs filed a motion for class certification, choosing instead to file four iterations of their Complaint. Thus, Plaintiffs' mere intent to seek class certification at an undefined future date does not avoid their mootness problem.

Because this Court lacks jurisdiction to consider Plaintiffs' requests for injunctive and declaratory relief for any claim, those claims must be dismissed as moot pursuant to Fed. R. Civ. P. 12(b)(1).

## C. Plaintiffs' Financial Aid Claim Relating to the 2018-2019 Academic Year Is Barred by the Statute of Limitations

Plaintiffs have expressly added financial aid claims relating to the 2018-2019 academic year. (*Compare, e.g.*, TAC ¶¶ 2, 350–51, 457, ECF No. 50, PageID.1336, 1401, 1416, *with, e.g.*, SAC ¶¶ 2, 336, ECF No. 41, PageID.833, 891). Those claims are barred by the two-year statute of limitations applicable to Title IX claims in California. *See Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006) ("Title IX claims are subject to the applicable state statute of limitations for personal injury actions."); *Karasek v. Regents of Univ. of Cal.*, 500 F. Supp. 3d 967, 978 (N.D. Cal. 2020); Cal. Civ. Proc. Code § 335.1.

"The touchstone for determining the commencement of the limitations period is notice: a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action." *Stanley*, 433 F.3d at 1136 (cleaned up). Knowledge of the "injury" means knowledge of the "actual injury," not when the plaintiff "suspects a legal wrong." *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1049–51 (9th Cir. 2008). In other words, a plaintiff does not need to know that she possesses a legal cause of action; she must simply be aware of the actual injury and its cause. *See id.*

Here, Plaintiffs plainly knew the amount of their scholarships and their cost of tuition for the 2018-2019 academic year—and thus, for example, the amount of tuition not covered by their scholarships—long before August 19, 2019, the date on which the tolled statute of limitations began to run. (*See* Opinion, ECF No. 38, PageID.805). Indeed, mid-August was several months *after* the 2018-2019

academic year concluded in May 2019.  Plaintiffs' claim for purportedly unequal financial assistance during the 2018-2019 academic year is therefore time-barred.[4]

While Plaintiffs allege that SDSU's Equity in Athletics Disclosure Act ("EADA") financial aid data for the 2018-2019 year was not available as of August 2019 (TAC, ECF No. 50, PageID.1402, n.10), knowledge of that year's EADA data was not necessary for them to be aware of a potential cause of action.  (*See* TAC ¶ 337, ECF No. 50, PageID.1398–1399 (showing EADA data dating back before 2018-2019 and allegedly showing that women's aid was also previously under-funded)).  The core of their financial aid claim is that SDSU creates "pools" of financial aid for male and female student-athletes and artificially "caps" the value of scholarships that can be awarded to female student-athletes in service of that end.  (*See, e.g.*, TAC ¶¶ 60–66, ECF No. 50, PageID.1343–1344).  But Plaintiffs also have claimed that publicly available data is not sufficient for them to determine how athletic financial aid is purportedly "capped" for any women's sports team.  (*See* TAC, ECF No. 50, PageID.1339–1340, n.1).  Thus, the publishing of specific EADA data is not the relevant accrual date.

For those reasons, Plaintiffs' financial assistance claim for the 2018-2019 academic year is barred by the statute of limitations and should be dismissed.

**D.   Plaintiffs Have Failed to Remedy Their Standing Deficiencies (Count I)**

Plaintiffs' TAC does not remedy any of the deficiencies with Plaintiffs' standing to sue on Count I that the Court previously identified in Plaintiffs' SAC.  (*See* ECF No. 49, PageID.1332–1333).  To satisfy Article III's standing requirements for each type of relief sought, Plaintiffs "must have (1) suffered an

---

[4] The parties previously briefed whether Plaintiffs' claims for damages based on the 2019-2020 academic year were time-barred and the Court reserved judgment on that argument.  (Opinion, ECF No. 38, PageID.812).  In the TAC, Plaintiffs now seek damages for the 2018-2019 academic year.  Regardless of any possible factual dispute regarding when Plaintiffs knew of their damages for the 2019-2020 year, by August 19, 2019, Plaintiffs were aware of any alleged injury based on financial awards made during the prior, completed (2018-2019) academic year.

injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robbins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).

Further, to bring an actionable claim, *each* named Plaintiff must plead a concrete injury that is fairly traceable to SDSU. As the Supreme Court has explained, "[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks omitted). As the Court previously found, "a claim based on average harm seems contrary to the Supreme Court's requirement of a 'particularized' harm that 'affects the plaintiff in a personal and individual way.'" (ECF No. 49, PageID.1313 (quoting *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1027 (9th Cir. 2012))).

## 1.  Plaintiffs' "Lost Opportunity" Theory

### a.  Plaintiff Figueroa Does Not Have Standing to Seek Damages on a "Lost Opportunity" Theory of Harm

This Court previously held that Plaintiff Figueroa had not shown that she was "ready, able, and in a position to compete for a proportional pool of money" and thus did not have standing to seek damages for an allegedly unequal allocation of athletic financial assistance based on a "lost opportunity" theory. (ECF No. 49, PageID.1305). In their TAC, Plaintiffs add allegations about Figueroa's academic and athletic performance (TAC ¶¶ 178–81, ECF No. 50, PageID.1366–1367) and then speculatively allege that:

- "If SDSU had created proportional pools for men and women and/or had fully funded scholarships for the women's rowing team, rather than self-imposing an artificial monetary cap that prevented the women's rowing coach from awarding all twenty scholarships permitted by the NCAA's rules, Natalie would have been ready and able to receive athletic financial aid—and would have competed for the additional athletic financial aid that SDSU instead chose to withhold." (TAC ¶ 182, ECF No. 50, PageID.1367; *see also id.* ¶ 179, PageID.1366);

- "Both the head coach and the assistant coach of the women's rowing team told Natalie that she would have received athletic financial aid if the team had not been eliminated and would receive athletic financial aid if the team were reinstated." (TAC ¶ 183, ECF No. 50, PageID.1367).

These conclusory and formulaic allegations are insufficient to establish Figueroa's standing to pursue damages on a "lost opportunity" theory. Plaintiffs cannot create standing by disguising the necessary legal conclusion—that Figueroa would have been ready and able to compete for athletic financial aid—as a factual allegation. *See Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). And none of Plaintiffs' new allegations otherwise provide a plausible factual basis for inferring that Figueroa was able and ready to compete for athletic financial aid under an alternate, theoretical allocation of scholarship money after the team was eliminated when she did not receive any under SDSU's actual allocation while the team existed.

Focusing in particular on the contention that the rowing coaches told Figueroa "that she would have received athletic financial aid if the team had not been eliminated and would receive athletic financial aid if the team were reinstated," Plaintiffs never tie those alleged statements to SDSU's purportedly discriminatory distribution of aid, which is the challenged conduct of SDSU. To the contrary, if the only precondition for Figueroa receiving a scholarship was the rowing team's continued existence—during a time period in which Plaintiffs contend that SDSU's

14

allocation of aid was discriminatory—the necessary conclusion is that Figueroa's lack of a scholarship was *not* the result of SDSU's purported sex discrimination, let alone due to the alleged system of "caps."  Moreover, Figueroa's alleged injuries— a scholarship that might have materialized had SDSU not eliminated rowing, an event that is not at issue in this lawsuit—are not redressable, because Plaintiffs are not seeking the reinstatement of rowing.  *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) ("[R]edressability [is] a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact.").  Plaintiff Figueroa therefore lacks standing under this "lost opportunity" theory.

> **b.**   **Rowing Plaintiffs Enrolled When the Complaint Was Filed Lack Standing to Seek Injunctive and Declaratory Relief Under a "Lost Opportunity" Theory**

The TAC's attempt to rehabilitate the rowing Plaintiffs' request for declaratory and injunctive relief under a "lost opportunity" theory also fails.  On this issue, the Court previously held that rowing Plaintiffs who were enrolled at SDSU at the time the Complaint was filed had alleged only a past injury, "fail[ed] to allege a real or immediate threat that they will be harmed again," and further failed to show that the requested injunction would redress their injury on either a "lost opportunity" or "psychological and stigmatic harms" theory (discussed separately below).  (ECF No. 49, PageID.1309–1310, 1319).   In their TAC, Plaintiffs changed the characterization of their aid awards from being "lock[ed] . . . into place" (SAC ¶ 249, ECF No. 41, PageID.879) to "repeat[ing] each day . . ." (TAC ¶ 370, ECF No. 50, PageID.1404).

But the TAC continues to suffer from the same problem: all the rowing Plaintiffs have alleged is a *past* injury relating to the financial aid they were awarded prior to the discontinuation of the rowing team.  Although Plaintiffs attempt to couch this as a "repeat[ing]" injury each day they continued to receive financial aid, as the Court previous explained, "what they are really alleging is a past injury—that their

athletic financial aid was locked in at a discriminatorily smaller value once the rowing team was eliminated." (Opinion, ECF No. 49, PageID.1309–1310). In other words, the rowing Plaintiffs enrolled at the time suit was filed have still failed to show how an injunction issued now would fix or change their financial aid awards.

Put differently, since Plaintiffs Fisk, Castro, Castrillon, Botterill, Petrine, Bauer, Figueroa, Dietz, and Sulcs were no longer student-athletes at the time the Complaint was filed, any injunctive relief relating to the SDSU's allocation of aid to current student-athletes would not accrue to their benefit. Their claims for injunctive and declaratory relief as to Count I must therefore be dismissed.[5]

### c.    Track and Field Plaintiffs Lack Standing to Pursue Count I on a "Lost Opportunity" Theory

The Court previously held that the track and field Plaintiffs "fail[ed] to allege facts supporting any claim that if a proportional pool of money was available, at least some of that money could have been available to the track and field team such that the team members could have competed for it," as their SAC "does not explain . . . how many scholarships are available to the track and field team and which of those scholarships are already capped at out-of-state costs of attendance." (ECF No. 49, PageID.1305–1306). Plaintiffs' TAC fails to remedy this shortcoming.

Rather, Plaintiffs merely allege, in conclusory fashion, that "the women's track and field team was allowed to award the equivalent of eighteen scholarships, but SDSU imposed a cap on the amount of athletic financial aid dollars the team could award." (TAC ¶ 50, ECF No. 50, PageID.1342). The rest of Plaintiffs' new allegations in support of this theory (*id.* ¶¶ 51–57, PageID.1342–1343) are equally vague—for example, "SDSU's cap for the women's track and field team was *below* the amount permitted by the NCAA's rules" (¶ 51 (emphasis in original)). But

---

[5] As the Court's prior Opinion made clear, none of the rowing Plaintiffs have standing to pursue Count II because they were not current student-athletes as of the filing of the original Complaint. (ECF No. 38, PageID.816–817).

Plaintiffs effectively admit they have no idea whether any of these allegations are actually true. (*See* ECF No. 50, PageID.1339–1340, n.1). And Plaintiffs never connect that alleged "cap" to their own opportunity to compete for a scholarship award. In short, these allegations are no more concrete than those the Court already found insufficient to show an injury-in-fact, and Plaintiffs have still failed to "provide the Court with information on what 'dollar-amount limitations' were placed on the track and field team's financial aid sufficient to allege that the track and field team coach could have sought an increase in the track and field team's allotted financial aid, which the track and field team members could have, in turn, competed for." (*See* Opinion, ECF No. 49, PageID.1306).

While Plaintiffs allege that they "do not—and cannot—know or allege the precise split for other women's sports" aside from rowing because that information is purportedly "uniquely within SDSU's control" (ECF No. 50, PageID.1339–1340, n.1), Plaintiffs cannot simply hypothesize that SDSU has done something wrong and then hope discovery may provide factual support. *See Iqbal*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Rojas v. Brinderson Constructors Inc.*, 567 F. Supp. 2d 1205, 1212 (C.D. Cal. 2008) ("[I]t is plaintiffs' duty to investigate and discover the factual bases of their claims before filing a complaint; discovery is not an open range for plaintiffs to ride roughshod in the hope that their claims may find support."). Further, if Plaintiffs' footnote is accurate, it severely undermines the plausibility of Plaintiffs' "capping" allegations as to the rowing team as well, since Plaintiffs never explain how they were able to construct ***those*** allegations—other than through rank speculation.[6]

---

[6] Plaintiffs' "lost opportunity" theory is implausible for the same reasons the Court dismissed their allegations related to a "smaller financial award" theory. Specifically, no Plaintiff traces the alleged violation of Title IX to their individual scholarship awards. *See Beasley v. Ala. State Univ.*, 966 F. Supp. 1117, 1126 (M.D. Ala. 1997).

In sum, Plaintiffs Brosch, Clark, Grotegeer, Heri, Watt, and Absten lack standing to pursue a claim for unequal allocation of athletic financial assistance on a "lost opportunity" theory.[7]

**2.     No Plaintiff Has Standing Under a "Smaller Financial Award" Theory**

None of the Plaintiffs has alleged an injury-in-fact sufficient to sustain a claim for unequal allocation of athletic financial assistance based on a "smaller financial award" theory.  This Court already made clear that Plaintiffs must show something more than merely an "average harm for all female student-athletes."  (ECF No. 49, PageID.1312–1313 ("A particular monetary amount is not required, but something more than an average harm is.")).  *See also Veterans for Common Sense*, 678 F.3d at 1027.

Rather than curing the problems with their "average harm" theory, Plaintiffs double down on their use of averages as the benchmark for measuring their alleged harm.  The TAC alleges that each Plaintiff's harm "can . . . be conceptualized based on" the "average" amount of scholarship money each female student-athlete was purportedly "deprived" of.  (TAC ¶¶ 90, 101, 112, 123, 133, 155, 166, 186, 197, 212, 227, 242, 253, 277, 287, ECF No. 50, PageID.1347–1388).  Plaintiffs then expressly allege that their damages are quantifiable as "the athletic financial aid dollars the class members were illegally deprived of divided by and among the number of people in the class", *i.e.*, the simple average of the allegedly unawarded aid.  (*See* TAC ¶¶ 91, 102, 113, 124, 134, 156, 167, 187, 198, 213, 228, 243, 254, 278, 288, ECF No. 50, PageID.1347–1388).  This theme continues in Plaintiffs' substantive allegations, where they focus on the "average [aid] denied to *each* female student-athlete at SDSU."  (TAC ¶¶ 338, 340, 342, ECF No. 50, PageID.1399–1400 (emphasis in original)).  None of these allegations address how the alleged disparity

---

[7] The track and field Plaintiffs who were enrolled at SDSU when the original Complaint was filed (Grotegeer, Heri, Watt, and Absten) also lack standing to pursue declaratory and injunctive relief on a "lost opportunity" theory for the same reasons enumerated in Section III.D.1.b., *supra*.

in financial aid within athletics affected *each of them individually* or resulted in any of them receiving a "smaller" aid award.

Further, as this Court already recognized, Plaintiffs' average-harm theory implicitly "depend[s] on a right to an individual scholarship," which does not exist under Title IX. (ECF No. 49, PageID.1313.) *See also Beasley*, 966 F. Supp. at 1126 ("Title IX directly affords . . . no individual right to a scholarship[.]").

Simply put, Plaintiffs still have failed to draw the necessary connection between each Plaintiff's individual award and SDSU's overall allocation of financial aid, or to allege the type of particularized, concrete injury necessary to demonstrate standing under a "smaller financial award" theory. (*See* ECF No. 49, PageID.1312–1313. *See also* ECF No. 38, PageID.814 ("[T]o establish standing to bring a denial of equal allocation of athletic financial aid claim under Title IX, Plaintiffs must show both a disparity in funding and how that disparity specifically affected each of them—*i.e.*, that she would have received a larger scholarship if the budget had been proportional.")). Plaintiffs therefore lack standing to pursue Count I on a "smaller financial award" theory.[8]

**3.   Rowing Plaintiffs Enrolled When the Complaint Was Filed Lack Standing to Seek Injunctive and Declaratory Relief Under a "Psychological and Stigmatic Harms" Theory**

As set forth in Section III.D.1.b., the TAC's attempt to rehabilitate the rowing Plaintiffs' request for declaratory and injunctive relief under their "psychological

---

[8] Plaintiffs also add several allegations about the proper method for calculating their claimed monetary damages, adopting a new windfall damages theory that grosses up the baseline against which those damages should be measured. (*See* TAC ¶¶ 345–56, ECF No. 50, PageID.1400–1402; *see also e.g.*, TAC ¶¶ 91–93, PageID.1348). SDSU strongly disputes that this methodology (or any other advanced by Plaintiffs) would be a factually or legally appropriate measure of Plaintiffs' damages but reserves its arguments for a later stage of the proceedings.

and stigmatic harms" theory fails.[9]  As it relates to that novel theory, the TAC includes only a single allegation to try to combat the Court's rulings: that "the psychological harm resulting from that degrading and stigmatizing treatment is ongoing and persists even today" as to each Plaintiff (TAC ¶¶ 88, 99, 110, 121, 142, 153, 184, 285, ECF No. 50, PageID.1347–1388).

Plaintiffs have not shown how an injunction or declaratory relief could fix their claimed psychological or stigmatic injury.  Rather, Plaintiffs simply allege that the injury "persists even today."  But that conclusory allegation is equivalent to the general allegation of present harm this Court already rejected in its April 12, 2023 Opinion.  (ECF No. 49, PageID.1319).  And it says nothing about how "students no longer on a sports team . . . could have their stigmatic injuries redressed by an injunction that bars SDSU's continued discrimination against female student-athletes."  (*Id.*)  Thus, injunctive and declaratory relief would not redress any claim by a former rower.

### 4.      Plaintiffs Who Were Not Enrolled When the Complaint Was Filed Lack Standing to Seek Injunctive and Declaratory Relief on Count I

The Court previously held that Plaintiffs who graduated or transferred from SDSU prior to the filing of the original Complaint lack standing to seek declaratory or injunctive relief for athletic financial assistance—on either a "lost opportunity" or "psychological and stigmatic harms" theory—because they were no longer subject to the allegedly discriminatory policy at issue.  (ECF No. 49, PageID.1309, 1319 ("Any injunctive or declaratory relief could not redress their . . . injuries because they are no longer students at SDSU.")).  This was a legal holding not contingent on the sufficiency of Plaintiffs' factual allegations.  Thus, Plaintiffs' attempt at re-pleading is of no moment.  Nevertheless, to the extent Plaintiffs allege

---

[9] In its April 12, 2023 Opinion, this Court also held that Plaintiffs lack standing to pursue damages under a "psychological and stigmatic harms" theory as a matter of law.  (ECF No. 49, PageID.1318).  Plaintiffs add no allegations that could alter this conclusion, which continues to apply to Plaintiffs' TAC.

that Brosch, Whitworth, and Davies have experienced "ongoing" dignitary harms that "persist[] even today" (TAC ¶¶ 131, 240, 265, ECF No. 50, PageID.1357, 1378, 1383), they fail to explain how relief from a policy that *did not apply* to those Plaintiffs when this case was filed could remedy that harm.[10] The Court should therefore dismiss Brosch's, Whitworth's, and Davies' claims for injunctive and declaratory relief on Count I.

### 5.   Plaintiffs Not Present During the February 16, 2022 Zoom Meeting Lack Standing to Pursue a Retaliation Claim

The Court has held that Plaintiffs who were not present during the February 16, 2022 track and field Zoom meeting at issue lack standing to pursue a claim for retaliation (Count III). (ECF No. 49, PageID.1327–1328). Plaintiffs' TAC adds no new allegations with respect to this claim. (*See* ECF No. 50-1, PageID.1513–1517, 1526–1527). This Court's holding from its April 12, 2023 Opinion thus continues to apply to Plaintiffs' retaliation claim, which must be dismissed as to the 12 named Plaintiffs who were not alleged to be present: Fisk, Castro, Castrillon, Botterill, Brosch, Petrine, Bauer, Figueroa, Whitworth, Davies, Dietz, and Sulcs.[11]

### IV.   Conclusion

For the foregoing reasons, Defendants request that the Court dismiss in part Plaintiffs' Third Amended Class Action Complaint, as set forth above, with prejudice.

---

[10] These allegations also do not address the lack of redressability for Plaintiffs' "lost opportunity" harm.

[11] SDSU assumes that the 12 Plaintiffs not in attendance at this track and field team meeting were the 11 Plaintiffs who were rowing athletes and Plaintiff Brosch, who participated in track and field but graduated prior to that meeting.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: */s/ Scott R. Eldridge*
      Scott R. Eldridge (P66452)
      Brian M. Schwartz (P69018)
      Ashley N. Higginson (P83992)
      Erika L. Giroux (P81998)
      One Michigan Ave. Suite 900
      Lansing, MI 48933
      eldridge@millercanfield.com
      schwartzb@millercanfield.com
      higginson@millercanfield.com
      giroux@millercanfield.com
      *Attorneys for Defendants*

Dated: May 26, 2023

Mem. in Support of Motion to Dismiss in Part Plaintiffs' Third Am. Complaint
(3:22-cv-00173-TWR-MSB)

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system that will send notification of such filing upon all ECF filing participants.

*/s/ Scott R. Eldridge*
Scott R. Eldridge (P66452)
eldridge@millercanfield.com