1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                      SOUTHERN DISTRICT OF CALIFORNIA
10

11   MADISON FISK, RAQUEL CASTRO,          Case No.:  22-CV-173 TWR (MSB)
     GRETA VISS, CLARE BOTTERILL,
12   MAYA BROSCH, HELEN BAUER,             **ORDER GRANTING IN PART AND**
     CARINA CLARK, NATALIE                 **DENYING IN PART DEFENDANTS'**
13   FIGUEROA, ERICA GROTEGEER,            **MOTION TO DISMISS IN PART**
     KAITLIN HERI, OLIVIA PETRINE,         **PLAINTIFFS' THIRD AMENDED**
14                                         **COMPLAINT**
     AISHA WATT, KAMRYN
15   WHITWORTH, SARA ABSTEN,
     ELEANOR DAVIES, ALEXA DIETZ,          (ECF No. 51)
16   and LARISA SULCS, individually and on
     behalf of all those similarly situated,
17
18                            Plaintiffs,

19   v.

20   BOARD OF TRUSTEES OF THE
21   CALIFORNIA STATE UNIVERSITY
     and SAN DIEGO STATE UNIVERSITY,
22
                              Defendants.
23
24
25

26          Presently before the Court is the Motion to Dismiss in Part Plaintiffs' Third
27   Amended Complaint (ECF No. 51, "Mot.") filed by Defendants the Board of Trustees of
28   the California State University and San Diego State University (collectively, "SDSU"),

                                          1

along with Plaintiffs' Opposition to (ECF No. 53, "Opp'n") and Defendants' Reply in Support of (ECF No. 54, "Reply") the Motion.  The Court held a hearing on August 17, 2023.  (ECF Nos. 55–56.)  Having carefully considered the Parties' arguments, the Third Amended Complaint (ECF No. 50, "TAC"), and the relevant law, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion, as follows.

## BACKGROUND

The Court incorporates the factual background and procedural history of this case from the Court's April 12, 2023, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Counts I and III of Plaintiffs' Second Amended Complaint.  (*See* ECF No. 49 at 2–8.)[1]

## I.     Factual Background

To reiterate briefly, Plaintiffs, "past and current female varsity student-athletes at SDSU," initiated this lawsuit against Defendants on February 7, 2022, alleging SDSU—a recipient of federal funding—has engaged in intentional discrimination based on sex in its athletics programs in violation of Title IX.  (TAC ¶¶ 1, 17, 298–99, 332, 371); *see also* 20 U.S.C. §§ 1681, 1687.  Plaintiffs specifically claim SDSU has violated, and is violating, Title IX and its guiding regulations by (1) "depriving its female varsity student-athletes of equal athletic financial aid"; (2) "denying them equal athletic benefits and treatment"; and (3) "retaliating against them because some of them sued SDSU for violating Title IX."  (TAC ¶ 1.)

There are seventeen named Plaintiffs in this action, and they seek to represent a class of current and former SDSU female student-athletes whom they allege have been harmed by SDSU's discriminatory practices.  (TAC ¶¶ 84–291, 456–59.)  The named Plaintiffs, along with the sport they played and the total amount of athletic financial aid they received, are listed below.

---

[1]     Throughout this Order, pin citations refer to the CM/ECF page numbers stamped at the top of each page.

| | | Plaintiff[2] | Sport[3]/Current Year in School[4] | Total Aid Received (Specific Years) |
|---|---|---|---|---|
| 1 | | Madison Fisk*# | Rowing/Grad. May '22 | $28,200 |
| 2 | | Raquel Castro*# | Rowing/Grad. May '23 | $3,200 |
| 3 | | Greta Viss (Castrillon)#+ | Rowing/Grad. May '21 | $24,000 (Fr. & Soph.) |
| 4 | | Clare Botterill# | Rowing/Sr. | $38,000 (Jr.) |
| 5 | | Maya Brosch+ | T&F/Grad. May '21 | $19,640 |
| 6 | | Olivia Petrine# | Rowing/Jr. | $800 (while athlete) + $800 (after rowing team was eliminated) |
| 7 | | Helen Bauer*# | Rowing/Grad. May '22 | $30,000 (Fr. & Soph.) |
| 8 | | Carina Clark*^ | T&F/Grad. May '22 | $800 (Sr.) |
| 9 | | Natalie Figueroa*# | Rowing/Grad. May '23 | $0 |
| 10 | | Erica Grotegeer*^ | T&F/Grad. May '23 | $37,879 |
| 11 | | Kaitlin Heri*^ | T&F/Grad. May '22 | $64,600 |
| 12 | | Aisha Watt*^ | T&F/Grad. May '23 | $14,200 + received $9,600 for each semester of 2022-2023 school year |

---

[2]    "*" indicates Plaintiff was a student at SDSU on the date this lawsuit was initially filed on February 7, 2022, but has since graduated. (TAC ¶¶ 84, 149, 160, 206, 247; ECF No. 51-2 at 4 ("Ex. A").)  "+" indicates Plaintiff was no longer a student at SDSU when the original Complaint was filed. (TAC ¶¶ 128, 236, 262; Ex. A.)  "#" indicates Plaintiff was no longer a student-athlete at SDSU at the time the original Complaint was filed because her sports team no longer existed at the school.  (TAC ¶¶ 85, 96, 107, 118, 139, 150, 176, 237, 263, 273, 283.)  "^" indicates Plaintiff was present at the Zoom meeting at which SDSU allegedly retaliated.  (Id. ¶¶ 171, 202, 217, 232, 258.)

[3]    SDSU eliminated its women's varsity rowing team in Spring 2021.  (TAC ¶ 85.)  But "[w]hen SDSU announced the elimination of the women's rowing team, it pledged to honor the scholarships for all members of the team *through* their graduation date if those members of the former team remained at SDSU."  (Id. ¶ 368.)

[4]    The school year listed is as of May 26, 2023—the date Defendants' Motion was filed.  (*See generally* Mot.)  A declaration from Megan Taormina, Defendants' Athlete Eligibility Coordinator/NCAA Certifying Officer, and Exhibit A, which outlines the graduation dates for each named Plaintiff, are attached to Defendants' Motion.  (*See* ECF 51-2 at 1–3 ("Taormina Decl."); Ex. A.)  Although not all the information contained in these attachments was included in Plaintiff's Third Amended Complaint, the Court is permitted to consider it because the information is pertinent to Defendants' factual attack on the Court's jurisdiction.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.").

| 13 | Kamryn Whitworth[#+] | Rowing/Grad. May '21 | $13,200 |
| 14 | Sara Absten[*^] | T&F/Grad. May '22 | "Partial" / "Fluctuated" |
| 15 | Eleanor Davies[#+] | Rowing/Transferred Jan '22 | $22,500 |
| 16 | Alexa Dietz[*#] | Rowing/Grad. May '22 | $18,400 |
| 17 | Larisa Sulcs[#] | Rowing/On leave | $22,800 (Fr. & Soph.) |

(TAC ¶¶ 84–291; Ex. A.)

## II.   Procedural History

After the Court dismissed in part Plaintiffs' First Amended Complaint, Plaintiffs timely filed a Second Amended Complaint alleging three causes of action under Title IX: (1) unequal financial aid, (2) unequal athletic benefits and treatment, and (3) retaliation. (*See* ECF No. 41, "SAC.")  The Second Amended Complaint asserted three theories of standing for the unequal financial aid claim. (*See id.* ¶¶ 34–40, 50.)  Plaintiffs explained that they were harmed by SDSU's failure to provide proportional athletic financial aid to female student-athletes in the following ways: (1) they were denied the opportunity to compete for and receive equal financial aid because of their sex ("lost opportunity" theory), (2) they received smaller financial aid awards because of their sex ("smaller financial award" theory), and (3) they were forced to endure degrading and stigmatizing second-class treatment because of their sex ("stigmatic harms" theory).  (*See, e.g., id.* ¶ 50.)  Defendants moved to dismiss Plaintiffs' unequal financial aid claim and retaliation claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*See* ECF No. 42.)  The Court granted in part and denied in part that motion, as follows:

(1)   Under Plaintiffs' "lost opportunity" theory, Plaintiffs previously on the rowing team, except Ms. Figueroa, sufficiently alleged an injury-in-fact redressable by Plaintiffs' request for damages;

(2)   The Court lacked jurisdiction over claims for injunctive and declaratory relief by the named Plaintiffs who were no longer students at SDSU when the original Complaint was filed;

/ / /

(3)     Plaintiffs who were previously on the rowing team and who were still students at SDSU at the time the original Complaint was filed failed to allege how the injunctive and declaratory relief they requested would redress any of their alleged injuries;

(4)     Plaintiffs on the track and field team failed to allege sufficient facts to show they had standing under the "lost opportunity" theory;

(5)     No named Plaintiffs sufficiently alleged they suffered an injury-in-fact under Plaintiffs' "smaller financial award" theory;

(6)     No named Plaintiffs sufficiently alleged an injury-in-fact under the "stigmatic harms" theory that is redressable by Plaintiffs' request for damages;

(7)     The named Plaintiffs on SDSU's track and field team who were still student-athletes at the time the original Complaint was filed sufficiently alleged stigmatic injuries-in-fact redressable by injunctive and declaratory relief;

(8)     Plaintiffs with standing plausibly alleged a Title IX financial aid claim;

(9)     Plaintiffs who were not present at the Zoom meeting in which SDSU allegedly retaliated failed to allege standing to pursue a retaliation claim; and

(10)    Plaintiffs who were present at the Zoom meeting in which SDSU allegedly retaliated plausibly alleged a retaliation claim.  (ECF No. 49 at 47–48.)

The Court also granted Plaintiffs leave to file a Third Amended Complaint with the exception that Plaintiffs could not make any further attempts to allege that Plaintiffs not present at the Zoom meeting had standing to bring a retaliation claim because any amendment in that regard would be futile.  (*See id*. at 48.)  Plaintiffs then filed a timely Third Amended Complaint alleging the same causes of action as their Second Amended Complaint.  (*See* TAC.)  Defendants move to dismiss in part Plaintiffs' Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and because certain claims are allegedly moot.  (*See* Mot. at 2–3; ECF No. 51-1, "Mem.," at 14–17, 18–27.)

/ / /

/ / /

5

22-CV-173 TWR (MSB)

**LEGAL STANDARD**

A party may challenge the Court's subject-matter jurisdiction through a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(1). *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Because "[f]ederal courts are courts of limited jurisdiction," "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Consequently, "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*

"Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White*, 227 F.3d at 1242 (citing *Bland v. Fessler*, 88 F.3d 729, 732 n.4 (9th Cir. 1996)). In fact, standing and mootness are both essential parts of the case-or-controversy requirement of Article III. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

**I.    Standing**

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) [he or she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 180–81. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). And where "a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Id.* at 338 n.6 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40

n.20 (1976)); *see also Warth*, 422 U.S. at 501 ("[P]laintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.").

## II.   Mootness

"A case, or an issue in a case, is considered moot if it has lost its character as a present, live controversy of the kind that must exist if [the Court is] to avoid advisory opinions on abstract propositions of law." *Aguirre v. S.S. Sohio Intrepid*, 801 F.2d 1185, 1189 (9th Cir. 1986) (internal quotation marks and citation omitted); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) ("An actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." (internal quotation marks and citation omitted)).  The Court "cannot take jurisdiction over a claim as to which no effective relief can be granted, because 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'" *Aguirre*, 801 F.2d at 1189 (citations omitted).  "Where the question sought to be adjudicated has been mooted by developments subsequent to the filing of the complaint, no justiciable controversy is presented." *Id.*

## ANALYSIS

Defendants move to dismiss in part Plaintiffs' Third Amended Complaint, arguing (1) Plaintiffs failed to fix various standing deficiencies the Court highlighted in its April 2023 Order, (2) Plaintiffs' claims for injunctive and declaratory relief are moot, and (3) the Court already dismissed with prejudice the retaliation claim brought by certain Plaintiffs. (Mot. at 2–3; Mem. at 14–17, 18–27.)[5]

---

[5]   Defendants also argue that Plaintiffs' unequal financial aid claim relating to the 2018–2019 academic year is barred by the statute of limitations. (Mem. at 17–18.)  The Parties disagree about when Plaintiffs knew or should have known about the basis of their injuries under this cause of action. (*Compare* Mem. at 17–18, *with* Opp'n at 29–31.)  In two prior Orders, the Court reserved ruling on similar statute of limitations issues. (*See* ECF No. 38 at 11; ECF No. 49 at 5 n.7.)  The Court again **RESERVES** ruling on this factual issue and **DENIES** Defendants' Motion to the extent it relies on a statute of limitations argument.

# I.      Whether Plaintiffs Failed to Remedy Certain Standing Deficiencies

Based on the Court's April 2023 Order, Defendants argue Plaintiffs' Third Amended Complaint should be dismissed in part because: (1) Plaintiff Figueroa lacks standing under Plaintiffs' "lost opportunity" theory; (2) the rowing team Plaintiffs who were SDSU students when the original Complaint was filed lack standing to seek injunctive and declaratory relief under Plaintiffs' "lost opportunity" and "stigmatic harms" theories; (3) the track and field team Plaintiffs lack standing to pursue damages, injunctive relief, and declaratory relief under Plaintiffs' "lost opportunity" theory; (4) all Plaintiffs lack standing to proceed under a "smaller financial award" theory; and (5) Plaintiffs who were not enrolled at SDSU when the original Complaint was filed lack standing to seek injunctive and declaratory relief under any theory.  (Mot. at 2–3.)  The Court addresses each argument in turn.

## A.      Plaintiff Figueroa's Standing Under the "Lost Opportunity" Theory

In its prior Order, the Court found that Plaintiff Natalie Figueroa, who was on the rowing team until it was eliminated in the Spring of 2021, failed to allege she was in a position to compete for financial aid under Plaintiffs' "lost opportunity" theory.  (*See* ECF No. 49 at 20.)  The Second Amended Complaint provided no facts to that effect and because Ms. Figueroa never received any financial aid while she was on the team, the Court could not draw the reasonable inference that she was in a position to compete for that financial aid.  (*See id*.)

To remedy this deficiency, Plaintiffs added information about Ms. Figueroa to their Third Amended Complaint.  Plaintiffs allege that during her time on the rowing team, Ms. Figueroa rowed in the second varsity eight boat and then moved up to the first varsity eight boat.  (TAC ¶ 178.)  She was also honored as an American Athletic Conference All-Academic Team member based on her academic credentials and athletic contributions and named as a Collegiate Rowing Coaches Association Scholar-Athlete.  (*Id*. ¶¶ 180–81.)  Plaintiffs further allege that "[b]oth the head coach and assistant coach of the women's rowing team told [Ms. Figueroa] that she would have received financial aid if the team had

not been eliminated." (*Id.* ¶ 183.) These added allegations showing Ms. Figueora's athletic accomplishments and various awards are sufficient for the Court to draw the reasonable inference that Ms. Figueroa was able, ready, and in a position to compete for a proportional pool of financial aid had it existed. The Court thus **DENIES** Defendants' Motion to the extent it argues Ms. Figueroa lacks standing to bring a claim for damages under Plaintiffs' unequal financial aid claim.

**B.    The Rowing Team Plaintiffs' Standing to Seek Injunctive and Declaratory Relief Under the "Lost Opportunity" and "Stigmatic Harms" Theories**

In its prior Order, the Court found that Plaintiffs on the rowing team lacked standing to pursue injunctive and declaratory relief because they had only alleged a past injury and failed to show how the requested injunction and declaratory relief would redress their injuries under either the "lost opportunity" or "stigmatic harms" theories since they were no longer student-athletes at the time the original Complaint was filed. (*See* ECF No. 49 at 24–25, 34.) Citing those findings, Defendants argue nothing in Plaintiffs' Third Amended Complaint changes the rowing team Plaintiffs' standing: as former student-athletes at the time the original Complaint was filed, they cannot stand to benefit from injunctive or declaratory relief relating to student-athletes under either the "lost opportunity" or "stigmatic harms" theories. (*See* Mem. at 21–22, 25–26.)

Plaintiffs argue that at the time the original Complaint was filed, SDSU continued to treat the former rowers as current student-athletes when it came to awarding financial aid. (*See* Opp'n at 12 (citing, *e.g.*, TAC ¶ 88, which states in part, "Because SDSU continued to award athletic financial aid to [the former rowers] based on the disproportional pools it created for male and female student-athletes even after the women's rowing team was eliminated, [the former rowers were] denied the equal opportunity to compete for aid and [were] awarded a smaller scholarship even after [their] team was eliminated").) Plaintiffs further contend that at the time the original Complaint was filed, the former rowers continued to receive scholarships from the same pool of aid SDSU created for current female student-athletes. (*Id.*) Plaintiffs submit that declaratory and injunctive

9

relief "requiring SDSU to create proportional pools of athletic financial aid would eliminate the harms" the former rowing team Plaintiffs suffer. (*Id*.) "Such relief would ensure they have the opportunity to compete on an equal basis." (*Id*.) Plaintiffs also explain that, "on a prospective basis, SDSU has discretion to level the playing field by reducing the aid allocated to male student-athletes instead of allocating more aid to female student-athletes." (*Id*. (emphasis omitted).)

As for their alleged "stigmatic harms," Plaintiffs contend that at the time the original Complaint was filed, the former rowers "continued to experience the same harms current and future recipients of SDSU's disproportionately allocated athletic financial aid experience" because the disproportionate pools of aid "send the degrading, demeaning, and stigmatizing message that women are second class at SDSU." (*Id*. at 13.) Plaintiffs assert that declaratory and injunctive relief will eliminate SDSU's discriminatory conduct and the message it sends. (*Id*.)

Defendants counter that Plaintiffs' argument that the former rowers were still treated like student-athletes at the time the original Complaint was filed fails to comport with the plain language of the 1979 Policy Interpretation issued by the United States Department of Education's Office for Civil Rights ("OCR").[6] (Reply at 9, 12.) The OCR's Policy Interpretation requires a student-athlete to "participat[e] in organized practice sessions and other team meetings and activities on a regular basis during a sport's season" and to be "listed on the eligibility or squad lists maintained for each sport." (*Id*. at 9 (citing the 1979 Policy Interpretation); *see* ECF No. 30-4 at 6.) Accordingly, at the time of the original Complaint, the rowing team Plaintiffs could not have been denied the opportunity to

/ / /

---

[6]   The Court previously found, (*see* ECF No. 38 at 10–11; ECF No. 49 at 11 n.12), that Plaintiffs' First and Second Amended Complaints incorporated by reference the OCR's 1979 Policy Interpretation (ECF No. 30-4). The Third Amended Complaint also extensively references this document. (*See* TAC ¶¶ 302–03, 307–09.) The Court once again finds this document incorporated by reference and thus assumes the truth of its contents. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002–03 (9th Cir. 2018).

compete for athletic financial aid because they were no longer participating members of an athletic team.  (Reply at 12.)

Defendants are correct.  Plaintiffs' argument that the former rowing team Plaintiffs should be considered student-athletes based on SDSU's decision to honor their financial aid awards after the rowing team was eliminated is unavailing.  The Third Amended Complaint lacks any non-conclusory allegations establishing that the former rowers could have continued to compete for athletic financial aid once their team was eliminated.  The rowing team Plaintiffs were no longer student-athletes at the time the original Complaint was filed, and, therefore, Plaintiffs' requested injunction "barring SDSU from discriminating against its female student-athletes on the basis of their sex by . . . depriving them of equal athletic financial aid," (TAC Prayer for Relief ¶ F), could not benefit them.  That the former rowers still received money from the same athletic financial aid pool says nothing about their ability to compete for aid once they were no longer student-athletes.  Plaintiffs' argument asks the Court to make the unreasonable inference that non-student-athletes can compete for athletic scholarships meant for student-athletes.  The Court declines to make such an inference.

For similar reasons, Plaintiffs fail to show the former rowers have standing to seek injunctive or declaratory relief under their "stigmatic harms" theory.  Again, an injunction "barring SDSU from discriminating against its female student-athletes," (*id.*), cannot redress the former rowers' injuries because they were no longer student-athletes at the time the original Complaint was filed.  If the Court adopted Plaintiffs' view, all female students at SDSU would have standing to bring an unequal athletic financial aid claim in this case.  (*See* Opp'n at 13.)  But under the OCR's 1979 Policy Interpretation, the proportional financial aid requirements of Title IX apply to student-athletes, not all students at the school.  (*See* ECF No. 30-4 at 5–6.)

Accordingly, the Court **GRANTS** Defendants' Motion to the extent it seeks dismissal of the rowing team Plaintiffs' request for injunctive and declaratory relief under the unequal financial aid claim.

1
2

**C.     The Track and Field Team Plaintiffs' Standing Under the "Lost Opportunity" Theory**

3
4
5
6
7
8
9
10
11
12
13
14
15
16

In its prior Order, the Court found that the rowing team Plaintiffs sufficiently alleged an injury-in-fact redressable by their request for damages because they sufficiently alleged (1) they were ready, able, and in a position to compete for a proportional pool of financial aid and (2) that if a proportional pool of money was available, at least some of that money could have been available to the rowing team. (*See* ECF No. 49 at 20; *see also id.* (noting that while the total number of scholarships given to the rowing team could not increase, the amount of fifteen of the scholarships could have increased from in-state scholarship amounts to out-of-state scholarship amounts).) The Court, however, found that the same was not true of the track and field team Plaintiffs: the Second Amended Complaint did not sufficiently allege facts supporting a claim that if a proportional pool of financial aid was available, at least some of the money would have been available to the track and field team such that the team members could have competed for it. (*See id.* at 20–21.) The Court, therefore, found the track and field team Plaintiffs failed to allege standing under their "lost opportunity" theory. (*See id.* at 21, 25.)

17
18
19
20
21
22
23
24
25
26
27
28

To fix this deficiency, the Third Amended Complaint states that, like the financial aid dollar caps that SDSU placed on the women's rowing team, "[s]imilar dollar caps were placed on all women's teams, including women's track and field." (TAC ¶ 36.) Specifically, Plaintiffs allege, "[u]nder NCAA rules, the women's track and field team was allowed to award the equivalent of eighteen scholarships, but SDSU imposed a cap on the amount of athletic financial aid dollars the team could award." (*Id.* ¶ 50; *see id* ¶ 30 ("The NCAA limits the number of scholarships that may be awarded for each sport, but it does not limit the *dollar amount* of athletic financial aid that can be offered for any sport.").) "SDSU's cap for the women's track and field team was *below* the amount permitted by the NCAA's rules." (*Id.* ¶ 51.) Plaintiffs note, however, that the precise make-up of the scholarships awarded to the track and field team—that is, the number of in-state

/ / /

scholarships versus out-of-state scholarships—is not publicly available and is in SDSU's sole control.  (*Id*. ¶ 34 n.1.)

Defendants argue these added allegations are too conclusory to allege an injury-in-fact and Plaintiffs cannot "simply hypothesize that SDSU has done something wrong and then hope discovery may provide factual support." (Mem. at 23.)  Plaintiffs counter that the allegations in their Third Amended Complaint must be accepted as true and those allegations show SDSU imposed a monetary cap on the track and field team that was below the amount permitted by the NCAA.  (Opp'n at 14.)  As a result, Plaintiffs contend that the Third Amended Complaint establishes that if a proportional pool of money was available, at least some of the money would have been available to the track and field team.  (*Id*.)

When a defendant asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction (a "facial attack"), the Court must assume the allegations in the complaint are true and draw all reasonable inferences in the non-moving party's favor.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  In addition, a plaintiff may plead facts alleged upon information and belief "where the facts are peculiarly within the possession and control of the defendant." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citation omitted).  But if the well-pled allegations of the complaint have not "nudged [the plaintiff's] claims across the line from conceivable to plausible" dismissal is appropriate.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Here, considering Plaintiffs' additions to the Third Amended Complaint, including the allegation that the breakdown in scholarship awards to the track and field team are solely within Defendants' control, and with all reasonable inferences drawn in Plaintiffs' favor, the Court concludes that Plaintiffs have sufficiently alleged an injury-in-fact under the lost opportunity theory.  And because several track and field team Plaintiffs were still student-athletes at the time the original Complaint was filed, their requests, not only for damages, but also for injunctive and declaratory relief, would redress this injury.  The track and field Plaintiffs who were student-athletes at the time the original Complaint was filed thus have standing to pursue their unequal financial aid claim under the "lost opportunity"

theory.  Accordingly, the Court **DENIES** Defendants' Motion to the extent it argues the track and field team Plaintiffs lack such standing.

### D.      Standing Pursuant to "Smaller Financial Award" Theory

This Court's prior Order found no Plaintiff sufficiently alleged an injury-in-fact under the "smaller financial award" theory because the harm Plaintiffs alleged was an average harm and not specific to each Plaintiff.  (*See* ECF No. 49 at 26–28.)  Plaintiffs added allegations to their Third Amended Complaint stating that SDSU's intentional discrimination deprived each Plaintiff "of at least $1 in athletic financial aid each year." (*See, e.g.*, TAC ¶ 92.)  Plaintiffs also added allegations about the proper calculation of damages.  (*See, e.g.*, *id*. ¶¶ 89–91.)

Defendants argue that Plaintiffs' "smaller financial award" theory is still based on an average harm that insufficiently connects each Plaintiff's individual financial award to SDSU's overall allocation of financial aid.  (*See* Mem. at 25.)  Plaintiffs counter that any monetary loss, even one as small as a fraction of a penny, is sufficient to support standing and that several facts alleged in the Third Amended Complaint bolster the plausibility of Plaintiff's assertion that each Plaintiff lost at least $1 in athletic financial aid.  (*See* Opp'n at 15–16.)

The Court, however, need not decide this issue.  Even without considering the "smaller financial award" theory, Plaintiffs have standing under other theories. Specifically, the rowing team Plaintiffs have standing to pursue damages under the "lost opportunity" theory, (*see* ECF No. 49 at 23, 25), the track and field team Plaintiffs have standing to pursue damages under the "lost opportunity" theory and declaratory and injunctive relief under the "lost opportunity" and "stigmatic harms" theories, (*see id*. at 35; *supra* at pp. 12–13).  Moreover, even if the Court found Plaintiffs alleged an injury-in-fact under this theory, the rowing team Plaintiffs still would lack standing to pursue injunctive and declaratory relief for the same reasons stated above. *See supra* at pp. 9–11.  The Court thus declines to address whether Plaintiffs have standing under the "smaller financial award" theory.

### E.   Standing as to Plaintiffs Who Were Not Enrolled as Students at SDSU When the Original Complaint Was Filed

Defendants argue that per the Court's prior Order, Plaintiffs who graduated or transferred from SDSU prior to the filing of the original Complaint lack standing to seek declaratory and injunctive relief as to their unequal financial aid claim.  (*See* Mem. at 26–27.)  Plaintiffs agree.  (*See* Opp'n at 9 n.1 ("Because they left school prior to the original complaint's filing, Plaintiffs agree Maya Brosch, Kamryn Whitworth, and Eleanor Davies lack standing to pursue equitable relief. . . . Those three Plaintiffs' claims will proceed only as to damages.").)  The Court therefore **GRANTS** Defendants' Motion to the extent it seeks **DISMISSAL WITH PREJUDICE** of the requests for declaratory and injunctive relief under the unequal financial aid claim brought by Plaintiffs who graduated or transferred from SDSU prior to the filing of the original Complaint.

## II.   Whether Plaintiffs' Claims for Injunctive and Declaratory Relief are Moot

Defendants further contend that Plaintiffs' claims for injunctive and declaratory relief under each of their three Title IX claims should be dismissed as moot because no Plaintiff currently enrolled at SDSU is a student-athlete.  (Mot. at 2; Mem. at 14–17.)  Defendants highlight that fifteen of the seventeen Plaintiffs have already graduated, transferred, or left SDSU, and the two Plaintiffs still enrolled at SDSU are no longer student-athletes—neither participates on any intercollegiate athletic team.  (Mem. at 14–15.)  As such, no injunction or declaration from this Court regarding Defendants' future conduct would provide redress for harms those Plaintiffs have allegedly experienced.  (*Id.*)  Defendants further contend this action's status as a putative class action does not alter this conclusion.  (*Id.* at 16.)  Instead, "[w]here the named plaintiff's claim in a class action 'becomes moot before the district court certifies the class, the class action normally also becomes moot.'"  (*Id.* (quoting *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014).)

Plaintiffs counter that their claims for injunctive and declaratory relief are not moot because (1) claims are only moot when the Court can award no effective relief, (2) Plaintiffs

are challenging SDSU's ongoing systemic policies, and (3) their claims for injunctive and declaratory relief are inherently transitory. (Opp'n at 20–27.) Plaintiffs' first argument, in essence, claims that the Court cannot dismiss claims for injunctive and declaratory relief if damages are still available to remedy an injury. (*Id.* at 20–23.) Such an assertion misunderstands Defendants' argument and the law. First, Defendants are not seeking to dismiss Plaintiffs' claims in their entirety—Defendants only seek to dismiss the Title IX claims to the extent they seek injunctive and declaratory relief. (*See* Mot. at 2.) Second, Courts routinely dismiss claims for injunctive and declaratory relief as moot, while allowing a damages claim to continue. *See, e.g.*, *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 865, 868, 874–75 (9th Cir. 2017); *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 983 (9th Cir. 2011); *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1099 (9th Cir. 2000); *see also Already, LLC*, 568 U.S. at 90–91 ("An actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." (internal quotation marks and citation omitted)). Plaintiffs' first argument is therefore unavailing. Accordingly, the Court turns to Plaintiffs' other arguments.

"It is well-settled that once a student graduates, [s]he no longer has a live case or controversy justifying declaratory and injunctive relief against a school's action or policy." *Cole*, 228 F.3d at 1098; *see Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999) ("A student's graduation moots claims for declaratory and injunctive relief, but it does not moot claims for monetary damages."). Therefore, unless an exception to mootness applies, claims for injunctive and declaratory relief brought by Plaintiffs who were enrolled at SDSU at the time the original Complaint was filed but have since graduated or transferred with no indication they will return to SDSU, are moot. Plaintiffs rely on two alleged exceptions to mootness: (1) challenges to ongoing, systemic policies and practices and (2) the inherently transitory exception in the class action context. (Opp'n at 23–27.)

Before addressing Plaintiffs' arguments, the Court notes that the well-known exception to mootness—the "capable of repetition, yet evading review" exception—would

16

not apply to the individual Plaintiffs here outside the class action context.  *See Madison Sch. Dist. No. 321*, 177 F.3d at 798 ("Issues that are 'capable of repetition, yet evading review' present an exception to the mootness doctrine.").  That exception, "is limited to 'extraordinary cases' in which (1) 'the duration of the challenged action is too short to be fully litigated before it ceases,' and (2) 'there is a reasonable expectation that the plaintiffs will be subjected to the same action again.'"  *Id*. (citation omitted).  Plaintiffs cannot meet the second requirement—there is no suggestion in the Third Amended Complaint or elsewhere that Plaintiffs who have graduated or transferred from SDSU will return as student-athletes in the future and again be subjected to SDSU's alleged Title IX violations.  Unless another exception applies here, Plaintiffs who are no longer enrolled at SDSU cannot pursue injunctive or declaratory relief, at least as it relates to Plaintiffs' unequal financial aid and unequal athletic benefits claims.[7]

---

[7]     Plaintiffs argue that Defendants do not analyze whether Plaintiffs' claims for injunctive and declaratory relief related to their retaliation claim are moot.  (Opp'n at 28.)  Plaintiffs further argue that the Plaintiffs who were present at the Zoom meeting ("Present Plaintiffs") have suffered two kinds of injuries: (1) anxiety-related harms and (2) interference with their ability to prosecute their Title IX claims.  (*Id*.)  As a result, Present Plaintiffs contend they still have a live claim for injunctive and declaratory relief because "SDSU's threatening message continues to interfere with those [who heard the threatening message and decided not to participate] in the case, which continues to affect Present Plaintiffs' ability to litigate their claims."  (*Id*. at 29.)  Present Plaintiffs also argue that they will continue to experience stigmatic harms for as long as SDSU refuses to remedy and end its ongoing interference.  (*Id*.)  They assert that the fact that they are no longer student-athletes is irrelevant; instead, the relevant inquiry is whether any potential plaintiffs or witnesses remain at SDSU.  (*Id*.)  Because the answer to that question is yes, Present Plaintiffs argue they have standing to pursue injunctive and declaratory relief.  (*Id*.)

Defendants counter that Plaintiffs' argument fails because Plaintiffs do not explain how injunctive or declaratory relief could redress their anxiety since they are no longer student-athletes, and any "interference-related" harms are speculative.  (Reply at 9.)

Plaintiffs recently filed a motion asking the Court to revise its prior Order finding that Plaintiffs who had not attended the Zoom meeting at which the track and field coach allegedly retaliated against members of the track and field team for bringing this Title IX action ("Absent Plaintiffs") lacked standing to pursue a retaliation claim.  (*See* ECF No. 57.)  Because the Court cannot analyze the "interference-related" harms theory as it relates to the Present Plaintiffs without also addressing how it impacts the Absent Plaintiffs, the Court **RESERVES** ruling on whether Plaintiffs have standing to pursue injunctive and declaratory relief under their retaliation claim until Plaintiffs' pending Motion is fully briefed and submitted.

### A.  Ongoing and Systemic Policies and Practices

Citing *Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003) and *Olagues v. Russoniello*, 770 F.2d 791 (9th Cir. 1985), Plaintiffs argue that the mootness doctrine is flexible and if a plaintiff challenges an ongoing, systemic policy and practice, then the plaintiff's claim is not moot.  (Opp'n at 23–24.)  That "the doctrine of mootness is more flexible than other strands of justiciability doctrine," *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (citation omitted), does not, however, excuse the need for an established exception to mootness.  As for Plaintiffs' argument that an independent exception to mootness exists when a complaint alleges an ongoing, systemic policy and practice, the two cases Plaintiffs cite involved non-profit organization plaintiffs along with individual plaintiffs and analogized to, or involved, other mootness exceptions.  *See Or. Advoc. Ctr.*, 322 F.3d at 1105, 1117 (analogizing to the inherently transitory exception in class action cases); *Olagues*, 770 F.2d at 793, 795 (involving the voluntary cessation and capable of repetition yet evading review exceptions to mootness); *see also United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953) ("[The voluntary cessation exception], together with a public interest in having the legality of the practices settled, militates against a mootness conclusion.").  Plaintiffs do not explain how *Oregon Advocacy Center* and *Olagues* are analogous here.

In fact, "[t]he mere existence of an ongoing policy is insufficient to establish that a plaintiff challenging that policy has standing to attack all its future applications." *Bayer*, 861 F.3d at 868; *see id.* ("[T]o avoid mootness with respect to a claim for declaratory relief on the ground that the relief sought will address an ongoing policy, the plaintiff must show that the policy 'has adversely affected and continues to affect a *present* interest.'") (emphasis added) (citation omitted)); *see also Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1036–37 (9th Cir. 2006) (concluding a plaintiff requesting an injunction requiring her former employer to adopt and enforce lawful policies "lacked standing to sue for injunctive relief from which she would not likely benefit").

/ / /

1    Accordingly, the only relevant, established mootness exception Plaintiffs rely on is
2    the "inherently transitory" exception in the class action context.

3    **B.    Inherently Transitory Exception**

4    Where a "plaintiff's claim becomes moot before the district court certifies the class,
5    the class action normally also becomes moot." *Slayman*, 765 F.3d at 1048.  But an
6    "exception to this rule exists for claims that 'are so inherently transitory that the trial court
7    will not have even enough time to rule on a motion for class certification before the
8    proposed representative's individual interest expires.'"  *Id*. (quoting *Pitts v. Terrible*
9    *Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011)); *see County of Riverside v. McLaughlin*,
10   500 U.S. 44, 52 (1991) ("That the class was not certified until after the named plaintiffs'
11   claims had become moot does not deprive us of jurisdiction.").  A claim qualifies for this
12   "limited" exception if "the pace of litigation and the inherently transitory nature of the
13   claims at issue conspire to make [the] requirement [that there must exist a named plaintiff
14   with a live claim at the time of class certification] difficult to fulfill." *United States v.*
15   *Sanchez-Gomez*, 138 S. Ct. 1532, 1539 (2018).

16   "An inherently transitory claim will certainly repeat as to the class, either because
17   '[t]he individual could nonetheless suffer repeated [harm]' *or* because 'it is certain that
18   other persons similarly situated' will have the same complaint." *Pitts*, 653 F.3d at 1090
19   (emphasis added) (citing *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)).  "In such cases,
20   the named plaintiff's claim is capable of repetition, yet evading review, and the relation
21   back doctrine is properly invoked to preserve the merits of the case for judicial resolution."
22   *Id*. (internal quotation marks and citations omitted).  "Application of the relation back
23   doctrine in this context thus avoids the spectre of plaintiffs filing lawsuit after lawsuit, only
24   to see their claims mooted before they can be resolved."  *Id*.; *see Genesis Healthcare Corp.*
25   *v. Symczyk*, 569 U.S. 66, 76 (2013) ("[I]n cases where the transitory nature of the conduct
26   giving rise to the suit would effectively insulate defendants' conduct from review,
27   certification could potentially 'relate back' to the filing of the complaint."); *see also*
28   *Swisher v. Brady*, 438 U.S. 204, 213 n.11 (1978) ("There may be cases in which the

19

controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion.  In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review." (citation omitted)).

"In sum, the 'inherently transitory' exception to mootness requires [a court] to determine (i) whether the individual claim might end before the district court has a reasonable amount of time to decide class certification, and (ii) whether some class members will retain a live claim at every stage of litigation." *J.D. v. Azar*, 925 F.3d 1291, 1311 (D.C. Cir. 2019); *see Gerstein*, 420 U.S. at 110 n.11 (noting district court must determine whether "[i]t is by no means certain that any given individual, named as plaintiff" will have an individual claim that will last long enough for a district court to certify the class); *Slayman*, 765 F.3d at 1048 (explaining inherently transitory exception applies where trial court will not have enough time to rule on a motion for class certification before the proposed representative's individual interest expires); *Haro v. Sebelius*, 747 F.3d 1099, 1110 (9th Cir. 2014) (applying inherently transitory exception when "district court could not have been expected to rule on a motion for class certification" where the plaintiff's claim expired one month after she filed suit).

For example, in *In re NCAA Athletic Grant-In-Aid Antitrust Litigation*, 311 F.R.D. 532, 536, 538–39 (N.D. Cal. 2015)—a class action involving a sub-class of former NCAA student-athletes with class representatives whose claims were moot—the court found that the "complexity, pace, and cutting edge nature" of the multidistrict litigation affected the timing of the court's class certification hearing and decision, such that the inherently transitory exception to mootness applied.  The court highlighted that "[t]here is nothing to be gained by denying class certification only for class members to file a new lawsuit to be included in this litigation."  *Id.* at 539.  Likewise, in *A.B. by C.B. v. Hawaii State Department of Education*, 334 F.R.D. 600, 605 (D. Haw. Dec. 31, 2019), *rev. on other grounds by A.B. v. Hawaii State Department of Education*, 30 F.4th 828 (9th Cir. 2022)—

a Title IX class action involving high school athletics—the court concluded, "[g]iven the necessarily finite duration of a high school student's time as a student-athlete, and the potential for repetition of the claims from similarly situated students, under the particular circumstances of this case, these claims are inherently transitory."

Here, given the finite duration of a college student's time as a student-athlete, the complex standing issues the Court has had to resolve in this case, and the pace of this litigation thus far, the Court finds that the inherently transitory exception to mootness applies to this putative class action. While this case is not as complex as *In re NCAA Athletic Grant-In-Aid Antitrust Litigation* and while there is not a motion for class certification pending as there was in both *In re NCAA Athletic Grant-In-Aid Antitrust Litigation* and *A.B. by C.B.*, here, Defendants' repeated motions to dismiss and Plaintiffs' various amended complaints have affected the timing of the Court's ability to entertain a class certification motion.

While the Court would have discretion to consider a class certification motion prior to resolving Defendants' jurisdictional challenges, it would be an inefficient use of judicial resources to do so. *See Situ v. Leavitt*, No. C06-2841 TEH, 2006 WL 8460080, at *2 (N.D. Cal. June 27, 2006). Typically, courts correctly address the issue of standing before addressing the issue of class certification. *See Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004). The Court is by no means required to consider class certification before standing. *See id.* Indeed, had Plaintiffs filed a motion for class certification before the standing disputes were resolved, the Court likely would have deferred ruling on that motion. In sum, given the protracted nature of this litigation, the complexity and novelty of the standing issues, and the finite duration of a student's college athletic career, the Court finds that Plaintiffs' claims are inherently transitory such that the Court has had insufficient time to rule on a motion for class certification before Plaintiffs' interest in

/ / /

/ / /

/ / /

injunctive relief expired.[8]  *See Beasley v. Ala. State Univ.*, 966 F. Supp. 1117, 1127 (M.D. Ala. 1997) ("The mere protractedness of this lawsuit should not vitiate the named plaintiff's capacity to vindicate the broad remedial purpose of Title IX.").  The Court's determination is limited to the specific circumstances of this case.  Any timely filed motion for class certification will relate back to the filing of the original Complaint.

## III.    Plaintiffs' Request for Reconsideration

The Court's prior Order found that the Absent Plaintiffs lacked standing to bring a retaliation claim.  (*See* ECF No. 49 at 43.)  In granting Plaintiffs leave to file a Third Amended Complaint, the Court noted that Plaintiffs were not permitted to make further attempts to allege that Absent Plaintiffs had standing to bring a retaliation claim because any amendment in that regard would be futile.  (*Id*. at 48.)  Nonetheless, Plaintiffs included allegations regarding Absent Plaintiffs' standing in their Third Amended Complaint.  (*See, e.g.*, TAC ¶¶ 94, 105, 441.)  As a result, Defendants move to dismiss the retaliation claims brought by the twelve Absent Plaintiffs in accordance with the Court's prior Order.  (*See* Mem. at 27.)

In their Opposition, Plaintiffs ask the Court to revisit whether the Absent Plaintiffs have standing to pursue a retaliation claim because the Court's prior Order hinged on a mistaken understanding of the Second Amended Complaint and Plaintiffs' previous briefing.  (Opp'n at 16–20 (citing Fed. R. Civ. P. 60).)  But an opposition is not the proper vehicle for requesting relief from the Court.  *See Smith v. Premiere Valet Servs., Inc.*, No.

---

[8]      In their Opposition, (Opp'n at 25), Plaintiffs cite *Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020), where a panel of the Ninth Circuit stated, "an inherently transitory, pre-certification class-action claim falls within the 'capable of repetition yet evading review' mootness exception if (1) 'the duration of the challenged action is "too short" to allow full litigation before it ceases,' and (2) there is a reasonable expectation that the named plaintiffs could themselves 'suffer repeated harm' or '"it is certain that other persons similarly situated" will have the same complaint.'"  *Belgau*, 975 F.3d at 949 (first quoting *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1019 (9th Cir. 2010); and then quoting *Pitts*, 653 F.3d at 1089–90).  Because the Court finds that it has had insufficient time to rule on a motion for class certification before Plaintiffs' interest in injunctive relief expired and because other persons similarly situated will have the same complaint, Plaintiffs' claims fall under *Belgau*'s slightly more lenient "inherently transitory" standard as well.

2:19-cv-09888-CJC-MAA, 2020 WL 7034346, at \*14 (C.D. Cal. Aug. 4, 2020) (highlighting that various district courts in California "have concluded that a request for affirmative relief is not proper when raised for the first time in an opposition")).

Plaintiffs recently filed a motion requesting that this Court revise its prior Order. (*See* ECF No. 57.)  Consequently, the Court **RESERVES** ruling on Plaintiff's request for reconsideration.  The Court's prior Order, (*see* ECF No. 49), remains in effect until the Court rules on Plaintiffs' recently filed motion.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion.  Specifically, the Court **GRANTS** Defendants' Motion and **DISMISSES WITH PREJUDICE** (1) the rowing team Plaintiffs' claims for injunctive and declaratory relief relating to their unequal financial aid claim and (2) the claims by Plaintiffs who were no longer students at SDSU when the original Complaint was filed for injunctive and declaratory relief relating to their unequal financial aid claim.[9]  The Court **RESERVES** ruling on whether the Present Plaintiffs have standing to pursue injunctive and declaratory relief as it relates to their retaliation claim until after Plaintiffs' recently filed Motion for the Court to revise its prior Order (*see* ECF No. 57) has been fully briefed and submitted.  The Court's prior Order regarding the Absent Plaintiffs' standing remains in effect.  The Court otherwise **DENIES** Defendants' Motion.

**IT IS SO ORDERED.**

Dated:  September 15, 2023

Honorable Todd W. Robinson
United States District Judge

---

[9]     The Court **DECLINES** to decide whether Plaintiffs have standing under the "smaller financial award" theory because Plaintiffs have standing under other theories.

23

22-CV-173 TWR (MSB)