UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON FISK, RAQUEL CASTRO, GRETA VISS, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY and SAN DIEGO STATE UNIVERSITY,<br><br>Defendants. | Case No.: 22-CV-173 TWR (MSB)<br><br>**ORDER (1) GRANTING PLAINTIFFS' MOTION TO AMEND/CORRECT THE COURT'S ORDER OF APRIL 12, 2023; (2) MODIFYING THE COURT'S APRIL 12, 2023 ORDER; AND (3) RULING ON RESERVED ISSUE**<br><br>(ECF Nos. 49, 57, 60) |

Presently before the Court is Plaintiffs' Motion to Amend/Correct the Court's Order of April 12, 2023 (ECF No. 57, "Mot.") along with Defendants the Board of Trustees of the California State University and San Diego State University's (collectively, "SDSU")

Opposition to (ECF No. 59, "Opp'n") and Plaintiffs' Reply in Support of (ECF No. 61, "Reply") the Motion. The Court took this matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 62.) Having carefully considered the Parties' arguments, the relevant law, and all relevant documents, the Court **GRANTS** Plaintiffs' Motion and **MODIFIES** its April 12, 2023 Order, as follows.

## BACKGROUND

The Court incorporates the factual background and procedural history of this case from the Court's April 12, 2023, and September 15, 2023 Orders. (*See* ECF No. 49 at 2–8; ECF No. 60 at 2–5.)[1]

As pertinent here, in the Court's April 12, 2023 Order, the Court granted in part and denied in part Defendants' Motion to Dismiss Counts I and III of Plaintiffs' Second Amended Complaint and granted Plaintiffs leave to file a Third Amended Complaint. (*See* ECF No. 49 at 47–48.) In relevant part, the Court found that the "Absent Plaintiffs"—*i.e.*, Plaintiffs who were not present at the Zoom meeting where SDSU's track and field coach allegedly threatened team members who participated or assisted in this lawsuit with removal from the track and field team—failed to allege standing to pursue a retaliation claim. (*Id*. at 42–43.) The Court dismissed the Absent Plaintiffs' retaliation claim and explained that "Plaintiffs [could] not make further attempts to allege the Absent Plaintiffs have standing to bring a retaliation claim because any amendment in that regard would be futile." (*Id*. at 48.) Nevertheless, in their Third Amended Complaint, Plaintiffs included the Absent Plaintiffs as part of the retaliation claim, repeating the same retaliation claim that was part of the Second Amended Complaint. (*Compare* ECF No. 50 ("TAC") ¶¶ 94, 321–29, 441, *with* ECF No. 41 ("SAC") ¶¶ 52, 210–18, 320.)

Defendants then moved to dismiss in part Plaintiffs' Third Amended Complaint, arguing, among other things, that per the Court's April 12, 2023 ruling, the Absent

---

[1] Throughout this Order, pin citations refer to the CM/ECF page numbers stamped at the top of each page.

1  Plaintiffs' retaliation claim must be dismissed with prejudice. (*See* ECF No. 51 at 3; ECF
2  No. 51-1 at 27.) In response, Plaintiffs asked the Court to revisit whether the Absent
3  Plaintiffs have standing to pursue the retaliation claim. (*See* ECF No. 53 at 16–20.) At the
4  hearing, the Court explained to Plaintiffs that if they wanted the Court to revisit the issue,
5  they needed to file a properly noticed motion to that effect. (*See* ECF No. 56 at 32–33.)
6  The Court thus did not rule on this issue in its September 15, 2023 Order Granting in Part
7  and Denying in Part Defendants' Motion to Dismiss in Part Plaintiffs' Third Amended
8  Complaint. (*See* ECF No. 60 at 22–23.) The Court also reserved ruling on whether the
9  Plaintiffs who were present at the Zoom meeting (the "Present Plaintiffs") had standing to
10 pursue injunctive and declaratory relief under their retaliation claim because that issue was
11 inherently intertwined with Plaintiffs' arguments regarding the Absent Plaintiffs' standing.
12 (*Id*. at 17 n.7.)

13     After the hearing, Plaintiffs filed the instant Motion asking the Court to correct an
14 oversight in the Court's April 12, 2023 Order and find that the Absent Plaintiffs sufficiently
15 alleged standing to bring a retaliation claim. (*See generally* Mot.) In other words, Plaintiffs
16 ask the Court to reconsider part of its April 12, 2023 Order due to a mistaken understanding
17 of Plaintiffs' Second Amended Complaint and previous briefing. (*See id*.)

18                                **LEGAL STANDARD**

19     "Courts have inherent power to modify their interlocutory orders before entering a
20 final judgment." *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989). "As
21 long as a district court has jurisdiction over the case, then it possesses the inherent
22 procedural power to reconsider, rescind, or modify an interlocutory order for cause seen
23 by it to be sufficient." *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885
24 (9th Cir. 2001) (emphasis omitted) (citation omitted); *see also Lahiri v. Universal Music
25 & Video Distrib. Corp.*, 606 F.3d 1216, 1222 (9th Cir. 2010) ("[A] court may revisit prior
26 decisions in a case and correct errors while the case is still pending."); *Koerschner v.
27 Budge*, No. 3:05-cv-00587-ECR-VPC, 2009 WL 2382568, at *4 (D. Nev. July 30, 2009)
28 ("The law is well-established that a district court has plenary authority over an interlocutory

order, and the court has the inherent power to reconsider, revise or amend the order, without regard to the limitations of Rules 59 and 60."). In addition, Federal Rule of Civil Procedure 54(b) allows district courts to modify an interlocutory order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

While reconsideration "is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources,'" and courts "should generally leave a previous decision undisturbed absent a showing that it either represented clear error or would work a manifest injustice," ultimately, "whether to grant or deny a motion for reconsideration is in the 'sound discretion' of the district court." *Raiser v. Casserly*, No. 18-CV-1836 JLS (AHG), 2020 WL 8970541, at *1 (S.D. Cal. Feb. 10, 2020); *see also United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (detailing main circumstances warranting reconsideration of interlocutory orders); *Est. of Risher v. City of Los Angeles*, No. ED CV 17-00995-MWF (KKx), 2023 WL 5506005, at *5 (C.D. Cal. July 10, 2023) ("Though, the Court notes that even the *Alexander* factors do not appear to be deemed exhaustive and/or have been construed liberally in light of later Ninth Circuit case law reemphasizing a district court's inherent and broad power to rescind its own orders prior to a final judgment."); *Hansen v. Schubert*, 459 F. Supp. 2d 973, 998 n.5 (E.D. Cal. 2006) ("While the standards applicable to motions for reconsideration of final judgments or orders under Rules 59(e) (final judgments) and 60(b) (final judgments and orders) technically do not delimit the court's inherent discretion to reconsider interlocutory orders, the court nonetheless finds them to be helpful guides to the exercise [of] its discretion.").

## ANALYSIS

The Court has discretion to revisit whether the Absent Plaintiffs have standing to bring a retaliation claim. The Court finds it appropriate to use that discretion to reconsider the issue, particularly given its relation to Defendants' argument that the Present Plaintiffs lack standing to pursue their retaliation claim for injunctive and declaratory relief, which the Court reserved ruling on until this Motion was fully briefed. (*See* ECF No. 60 at 17 n.7.)

## I. The Absent Plaintiffs' Standing

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) [he or she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). And where "a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

### A. Injury-in-Fact

Plaintiffs argue they properly alleged standing to pursue their Title IX retaliation claim in both the Second and Third Amended Complaints. (*See* ECF No. 57-1 ("Mem.") at 9–12, 14–15.) Specifically, the Third Amended Complaint asserts that Defendants' alleged retaliation caused the Present Plaintiffs two distinct harms: (1) embarrassment, humiliation, and anxiety because they were singled out in front of teammates, criticized, and implicitly threatened because of their participation in this lawsuit; and (2) interference with their ability to litigate their claims by scaring away potential plaintiffs and witnesses. (*Id*. at 9 (citing TAC ¶¶ 9–10, 174, 426–27, 430–31, 437–40, 454).)[2] Plaintiffs explain that regarding the Absent Plaintiffs, the Third Amended Complaint alleges only the second kind of harm—that Defendants' alleged retaliation interfered with the Absent Plaintiffs' ability to prosecute their claims because additional student-athletes declined to join the case as

///

---

[2] Because of the procedural history of this claim, the Absent Plaintiffs' claim for retaliation is the same in both the Second and Third Amended Complaints. *See supra* p. 2. For clarity and ease of reference, the Court will cite to the Third Amended Complaint throughout this Order.

plaintiffs and Defendants' actions deterred other student-athletes from participating as witnesses in the case. (*Id.*)

Plaintiffs contend this is a sufficient injury to give the Absent Plaintiffs standing to bring a Title IX retaliation claim. (*Id.* at 14 (citing 34 C.F.R. § 106.71, which states "No recipient or other person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by [T]itle IX or this part, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this part.").) Plaintiffs argue that the broad inclusion of "any individual" in the prohibition against retaliation means that Title IX retaliation occurs when the intimidation or threat is aimed at potential participants and witnesses, just as it does when it is aimed at the Title IX litigants themselves. (*Id.* at 14–15 (citing *Ollier v. Sweetwater Union High. Sch. Dist.*, 768 F.3d 843, 865–66 (9th Cir. 2014), and *A. B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 841–42 (9th Cir. 2022), to support their argument that individuals who are not directly retaliated against can have standing to pursue a retaliation claim).) Finally, Plaintiffs cite to cases outside the Title IX context showing that a federal litigant can bring a civil claim for conspiracy to intimate or threaten a witness. (*Id.* at 15.)

Defendants, on the other hand, argue the Court was correct when it concluded that the Absent Plaintiffs failed to allege a concrete and particularized injury-in-fact. (Opp'n at 10–13.)[3] Defendants assert that "Plaintiffs overlook that the issue here is not whether they can assert a retaliation claim in the abstract or under . . . [other statutes Plaintiffs cite]—it is whether they have put forward sufficient factual allegations to state a retaliation claim *in this particular case*." (*Id.* at 13.) Defendants further contend that the Absent Plaintiffs fail to identify any concrete, non-speculative way in which a few comments at a track and field meeting interfered with their own ability to litigate their claims. (*Id.* at 10.)

---

[3] The Court notes, however, that it has not directly addressed Plaintiffs' "interference-related harms" theory.

Instead, Defendants argue, the Absent Plaintiffs' allegations are speculative and have insufficiently explained how the circumstances have personally impacted them or how other female student-athletes were deterred from participating as witnesses. (*Id*. at 10–11.) Finally, Defendants argue that *Ollier* and *A. B.* are distinguishable from this case because in *Ollier*, the retaliatory conduct had a concrete, widespread impact on all the members of the team in question, and in *A. B.* the court's findings were made in the context of a class certification analysis. (*Id*. at 12.)

In effect, Defendants concede that intimidating or threatening a witness could suffice to cause an injury-in-fact for standing purposes. (*See id*. at 13.) They instead argue that Plaintiffs have not provided sufficient factual allegations that Defendants actually intimidated or threatened anyone to the point of causing an injury to the Absent Plaintiffs. (*See id*. at 10–14.) Defendants' arguments, however, are best categorized as a factual disagreement with Plaintiffs' allegations. (*See id*. at 10–12.) Plaintiffs allege that comments made at the track and field team meeting implicitly threatening team members with removal from the team if they participated or assisted in the lawsuit dissuaded some team members from joining the lawsuit or participating as witnesses. (TAC ¶¶ 9–10, 174, 426–27, 430, 437–40, 454.) This, in turn, injured the Absent Plaintiffs, hampering their ability to proceed with their Title IX lawsuit without interference. (*Id*. ¶ 441.) These allegations, at this stage in the proceedings, are sufficient to state an injury-in-fact.

The Ninth Circuit's discussion in *A. B.* supports this conclusion. While the Ninth Circuit decided *A. B.* in the context of a prudential standing discussion in a class certification analysis such that it is not directly applicable to this case, it bolsters the Court's conclusion that the Absent Plaintiffs have alleged judicially cognizable injuries flowing from Defendants' allegedly retaliatory response to the filing of this lawsuit. *See Ollier*, 768 F.3d at 866–67 (discussing the zone of interest protected by Title IX in deciding whether district court had erred in finding the plaintiffs had Article III standing). In *A. B.*, the Ninth Circuit cited *Ollier* and highlighted that "the named plaintiffs *could* assert a Title IX retaliation claim based on retaliatory actions that were directed at another person . . .

and that were triggered by complaints made by others." *A. B.*, 30 F.4th at 840–41 (discussing "zone of interests" Title IX was meant to protect).[4]  The Ninth Circuit also explained that, while the specific Title IX complaints "that led to the retaliation were made only by a particular subset of people[,] . . . the concerns those persons raised swept more broadly to include the [school's] treatment of girls' athletics generally, and [the plaintiffs] . . . presented evidence that the resulting retaliation had a deterrent effect on female students more generally." *Id*. at 841.  As a result, the court concluded that "other putative class members—even those not on the [specific sports team]—would fall within Title IX's zone of interests and would have a cause of action for equitable relief against the Department's retaliatory actions." *Id*.; *see also id*. at 842 ("[W]here, as claimed here, the persons who raised broader concerns about Title IX compliance were met with a retaliatory response that likewise impacted female student athletes generally, the indirect victims' claims *depend* critically upon the success of the direct victims' claims.").

In sum, the Court finds that the Absent Plaintiffs have sufficiently alleged an injury-in-fact even though SDSU's alleged retaliation was not directed specifically at them.

### B.  Redressability

Defendants argue, without further explanation, that the Absent Plaintiffs have not "pointed to any allegations explaining how a decision in their favor would remedy their alleged harms." (Opp'n at 13.)  Plaintiffs, on the other hand, argue that the Court can redress the Absent Plaintiffs' injuries with damages. (Reply at 12–13.)  Plaintiffs do not explain what kind of damages they are referring to, but Plaintiffs have requested nominal damages and compensatory damages due to Defendants' alleged retaliation. (TAC, Prayer for Relief ¶ H.)

///

---

[4]  "The Supreme Court has often characterized the zone-of-interests test as a 'prudential standing' requirement," but it is not a jurisdictional question. *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1156 (9th Cir. 2015).

While it is not clear to the Court what kind of compensatory damages Plaintiffs would be able to recover for their "interference-related harms," some courts have allowed nominal damages for Title IX violations but have found that nominal damages cannot be a substitute for damages that might be proven but are otherwise unavailable, like emotional distress damages in Title IX cases. *See Doe v. Moravian Coll.*, No. 5:20-cv-00377-JMG, 2023 WL 144436, at *9 (E.D. Pa. Jan. 10, 2023); *Doe ex rel. Doe v. City of Pawtucket*, 633 F. Supp. 3d 583, 591 (D.R.I. 2022). Without arguments from the Parties one way or another regarding nominal damages and with all reasonable inferences drawn in Plaintiffs' favor, the Court finds Plaintiffs' allegations of redressability sufficient to survive past the pleading stage.[5] *See Uzuegbunam v. Preczewski*, 592 U.S. __, 141 S. Ct. 792, 802 (2021) ("[A] request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right."); *see also Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ("Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction.").

And while no Party addresses the Absent Plaintiffs' standing to seek injunctive and declaratory relief under their retaliation claim—likely because the Court reserved ruling on a similar issue relating to the Present Plaintiffs—the Parties did address a similar issue in prior briefing, which the Court addresses below.

**II.  The Present Plaintiffs' Retaliation Claim for Injunctive and Declaratory Relief**

In its September 15, 2023 Order, the Court reserved ruling on whether the Present Plaintiffs have standing to pursue injunctive and declaratory relief under their retaliation claim until the instant Motion was fully briefed. (ECF No. 60 at 17 n.7.) In their prior

---

[5]  Defendants separately argue that the Absent Plaintiffs have not plausibly pled damages for their retaliation claim. (Opp'n at 16.) As mentioned above, however, Defendants do not discuss the effect Plaintiffs' claim for nominal damages has on the Absent Plaintiffs' retaliation claim. The Court thus declines to dismiss the Absent Plaintiffs' retaliation claim on the ground that their claim lacks a plausible damages element.

briefing on the issue, Defendants argued that, while the Present Plaintiffs "allege 'anxiety-related harms,' they admit they are 'no longer student-athletes' and do not explain how injunctive or declaratory relief could redress their 'anxiety' when SDSU no longer exercises any control over them." (ECF No. 54 at 9.)  As to the "interference-related harms," Defendants solely state that "Plaintiffs again rely only on speculation." (*Id.*)

Plaintiffs, on the other hand, argued in their prior briefing that the Present Plaintiffs have a live retaliation claim for injunctive and declaratory relief because "SDSU's threatening message continues to interfere with those [who heard the threatening message and decided not to participate] in the case, which continues to affect [the] Present Plaintiffs' ability to litigate their claims." (ECF No. 53 at 29; *see also* TAC ¶ 499.)  The Present Plaintiffs also argued that they would continue to experience stigmatic harms "for as long as SDSU refuses to remedy and end its ongoing interference." (ECF No. 53 at 29.)  They asserted that the fact that they are no longer student-athletes is irrelevant; instead, the relevant inquiry is whether any potential plaintiffs or witnesses remain at SDSU. (*Id.*)  Because the answer to that question is yes, Present Plaintiffs argued they have standing to pursue injunctive and declaratory relief. (*Id.*)

Without further argument from Defendants and drawing all reasonable inferences in Plaintiffs' favor, the Court finds the Present Plaintiffs' allegations—*i.e.*, that Defendants' alleged interference with Plaintiffs' ability to litigate this action is ongoing, (*see* TAC ¶¶ 439–41, 499)—sufficient to survive past the pleading stage.[6]  The same arguments and conclusion apply to the Absent Plaintiffs as well.  The Court thus holds that, at this stage of the proceedings, the Absent and Present Plaintiffs have standing to pursue injunctive and declaratory relief under their retaliation claim.[7]

---

[6]    Because the Court finds Plaintiffs have sufficiently alleged that their "interference-related harms" are redressable by injunctive and declaratory relief, the Court declines to decide whether the Present Plaintiffs' alleged "anxiety-related harms" are redressable by the same relief.

[7]    Plaintiffs already conceded that Plaintiffs who left school prior to the original Complaint's filing lack standing to pursue injunctive and declaratory relief. (*See* ECF No. 53 at 9 n.1.)  Consequently, the

### III. Mootness

Defendants also briefly argue that because none of the Absent Plaintiffs are currently enrolled as student-athletes at SDSU, their retaliation claims for injunctive and declaratory relief are moot. (Opp'n at 17.) For the same reasons discussed in the Court's September 15, 2023 Order, the inherently transitory exception to mootness applies here and any timely filed motion for class certification will relate back to the filing of the original Complaint. (ECF No. 60 at 19–22.)

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Amend/Correct the Court's Order of April 12, 2023. The Court **FINDS** that the Absent Plaintiffs have sufficiently alleged standing to bring a retaliation claim and **MODIFIES** its April 12, 2023 Order accordingly. The Court also **FINDS** that an exception to mootness applies to the Absent Plaintiffs' retaliation claim for injunctive and declaratory relief. Finally, the Court **FINDS** that the Present Plaintiffs have sufficiently alleged standing to bring a retaliation claim for injunctive and declaratory relief. Defendants **MUST FILE** an answer to Plaintiffs' operative Third Amended Complaint <u>within twenty-eight (28) of the date of this Order</u>. (*See* ECF No. 64.)

**IT IS SO ORDERED.**

Dated: October 10, 2023

_____
Honorable Todd W. Robinson
United States District Judge

---

Court's analysis here only applies to the Absent and Present Plaintiffs who were still students at the time the original Complaint was filed.