David S. Casey, Jr. (SBN 60768)
Gayle M. Blatt (SBN 122048)
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811
dcasey@cglaw.com
gmb@cglaw.com

Arthur H. Bryant (SBN 208365)
Neda Saghafi (SBN 344633)
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Hwy
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070
abryant@clarksonlawfirm.com
nsaghafi@clarksonlawfirm.com

Amber Eck (SBN 177882)
Jenna Rangel (SBN 272735)
**HAEGGQUIST & ECK, LLP**
225 Broadway, Ste 2050
San Diego, CA 92101
Tel: (619) 342-8000
ambere@haelaw.com
jennar@haelaw.com

Carey Alexander (SBN 5188461)
**CLARKSON LAW FIRM, P.C.**
590 Madison Ave., 21st Floor
New York, NY 10022
Tel: (646) 290-6009
Fax: (213) 788-4070
calexander@clarksonlawfirm.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON FISK, RAQUEL CASTRO, GRETA CASTRILLON, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY and SAN DIEGO STATE UNIVERSITY,<br><br>Defendants. | Case No. 3:22-cv-00173-TWR-MSB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Judge: Hon. Todd. W. Robinson<br>Courtroom: 14A<br>Date: April 10, 2025<br>Time: 1:30 p.m. |

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

# TABLE OF CONTENTS

Page No.

I.     INTRODUCTION ................................................................................ 1

II.    RELEVANT FACTUAL BACKGROUND ........................................ 2

III.   THE CLASSES .................................................................................. 4

    A.   The Injunctive Relief Class .................................................... 4

    B.   The Retaliation Class .............................................................. 5

    C.   The Athletic Financial Aid Class ........................................... 5

IV.    LEGAL STANDARD ....................................................................... 6

V.     THE CLASSES SATISFY RULE 23(a)'s PREREQUISITES. ......... 6

    A.   The Classes Satisfy the Numerosity Requirement. ................ 6

    B.   Questions of Fact and Law Are Common to the Classes. ....... 9

    C.   The Class Representatives' Claims Are Typical of Class Members' Claims. ................................................................. 11

    D.   The Class Representatives and Class Counsel Will Fairly and Adequately Represent Class Members. ................................. 13

        1.   The Class Representatives Are Adequate. ................... 13

        2.   Class Counsel Are Adequate ....................................... 14

            a.   Clarkson Law Firm, P.C. .................................... 14

            b.   Casey Gerry Schenk Francavilla Blatt & Penfield LLP .... 16

            c.   Haeggquist & Eck, LLP ...................................... 17

VI.    THE INJUNCTIVE RELIEF CLASS SATISFIES RULE 23(b)(2)'s REQUIREMENTS. ............................................................................ 18

VII.   THE RETALIATION CLASS AND ATHLETIC FINANCIAL AID CLASS SATISFY RULE 23(b)(3)'s REQUIREMENTS. ............. 20

    A.   Common Questions Predominate for the Retaliation Class's Claims. .. 20

    B.   Common Questions Predominate for the Athletic Financial Aid Class's Claim. .................................................................. 21

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

C.    A Class Action Is a Superior Method of Adjudicating This Dispute..... 24

VIII. CONCLUSION ................................................................................. 25

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page No.**

*A.B. v. Haw. State Dep't of Educ.*,
   30 F.4th 828 (9th Cir. 2022) ............................................................... 8, 9, 12, 15

*A.B. v. Regents of Univ. of Cal.*,
   No. 2:20-cv-09555-RGK-E,
   2021 U.S. Dist. LEXIS 133383 (C.D. Cal. Jan. 8, 2021) ...................................... 29

*Alcantar v. Hobart Serv.*,
   800 F.3d 1047 (9th Cir. 2015) ............................................................... 10

*Ali v. Franklin Wireless Corp.*,
   No. 3:21-cv-00687-AJB-MSB,
   2023 U.S. Dist. LEXIS 715 (S.D. Cal. Jan. 3, 2023) .......................................... 11

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).......................................................................... 16

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)........................................................................... 7

*Anders v. Cal. State Univ., Fresno*,
   No. 1:21-cv-00179-AWI-BAM,
   2022 U.S. Dist. LEXIS 146775 (E.D. Cal. Aug. 16, 2022)............................... 12, 15

*Anders v. Cal. State Univ.*,
   No. 23-15265,
   2024 U.S. App. LEXIS 1063 (9th Cir. Jan. 17, 2024)......................................... 16

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013) ............................................................ 16

*Biediger v. Quinnipiac Univ.*,
   928 F. Supp. 2d 414 (D. Conn. 2013)...................................................... 3, 23

*Boucher v. Syracuse Univ.*,
   164 F.3d 113 (2nd Cir. 1999) ................................................................. 3

*Brust v. Regents of the Univ. of Cal.*,
   No. 07-1488,
   2009 U.S. Dist. LEXIS 124980 (E.D. Cal. Oct. 19, 2009)..................................... 2

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Brust v. Regents of the Univ. of Cal.*,
  No. CIV. 2-07-1488-FCD-EFB,
  2008 U.S. Dist. LEXIS 134974 (E.D. Cal. Oct. 23, 2008)...................9, 11, 13, 15

*Bucha v. Ill. High Sch. Ass'n*,
  351 F. Supp. 69 (N.D. Ill. 1972) .............................................................................3

*Castillo v. Bank of Am., NA*,
  980 F.3d 723 (9th Cir. 2020) .................................................................................14

*Cmtys. for Equity v. Mich. High Sch. Ath. Ass'n*,
  192 F.R.D. 568 (W.D. Mich. 1999) ...............................................................3, 13, 15

*Cohen v. Brown Univ.*,
  991 F.2d 888 (1st Cir. 1993) ...................................................................................2

*Davis v. Lab. Corp. of Am. Holdings*,
  No. 22-55873,
  2024 U.S. App. LEXIS 2937 (9th Cir. Feb. 8, 2024) ...........................................14

*Emeldi v. Univ. of Or.*,
  698 F.3d 715 (9th Cir. 2012) .................................................................................24

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)................................................................................................24

*Favia v. Ind. Univ. of Pa.*,
  7 F.3d 332 (3rd Cir. 1993) ......................................................................................2

*Foltz v. Del. State Univ.*,
  269 F.R.D. 419 (D. Del. 2010) ...............................................................................3

*Gaudin v. Saxon Mortg. Servs.*,
  297 F.R.D. 417 (N.D. Cal. 2013)......................................................................25, 28

*Haffer v. Temple Univ. of Commonwealth Sys. of Higher Educ.*,
  678 F. Supp. 517 (E.D. Pa. 1987) ...........................................................................2

*Hamilton v. Wal-Mart Stores, Inc.*,
  39 F.4th 575 (9th Cir. 2022) ..................................................................................29

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .....................................................................11, 16, 23

*Hernandez v. Cty. of Monterey*,
  305 F.R.D. 132 (N.D. Cal. 2015)............................................................................22

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
915 F.3d 1 (1st Cir. 2019) ................................................................................. 24

*In re Coll. Athlete Nil Litig.*,
No. 20-cv-03919 CW,
2023 U.S. Dist. LEXIS 216539 (N.D. Cal. Nov. 3, 2023) ................................. 29

*In re EpiPen Mktg., Sales Practices & Antitrust Litig.*,
No. MDL No: 2785,
2020 U.S. Dist. LEXIS 40789 (D. Kan. Feb. 27, 2020) ............................... 25, 28

*In re Ferrero Litig.*,
278 F.R.D. 552 (S.D. Cal. 2011) ...................................................................... 28

*In re Syngenta AG Mir 162 Corn Litig.*,
No. MDL No. 2591,
2016 U.S. Dist. LEXIS 132549 (D. Kan. Sep. 26, 2016) ............................ 25, 28

*Leffel v. Wis. Interscholastic Ath. Ass'n*,
444 F. Supp. 1117 (E.D. Wis. 1978) ................................................................... 3

*Leyva v. Medline Indus.*,
716 F.3d 510 (9th Cir. 2013) ........................................................................... 25

*Lytle v. Nutramax Labs., Inc.*,
No. 22-55744,
2024 U.S. App. LEXIS 21431 (9th Cir. Aug. 23, 2024) .............................. 24, 27

*Mansourian v. Regents of Univ. of Cal.*,
602 F.3d 957 (9th Cir. 2010) ........................................................................ 1, 11

*Meyer v. Portfolio Recovery Associates, LLC*,
707 F.3d 1036 (9th Cir. 2012) ......................................................................... 14

*Navarro v. Fla. Inst. of Tech., Inc.*,
No. 6:22-cv-1950-CEM-EJK,
2023 U.S. Dist. LEXIS 148333 (M.D. Fla. Aug. 23, 2023)
*adopted by* 2023 U.S. Dist. LEXIS 162442 (M.D. Fla. Sep. 13, 2023) .......... 12, 13

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) .............................................................................. 7

*Ollier v. Sweetwater Union High Sch. Dist.*,
251 F.R.D. 564 (S.D. Cal. 2008) ........................................................................ 2

*Ollier v. Sweetwater Union High Sch. Dist.*,
858 F. Supp. 2d 1093 (S.D. Cal. 2012) ............................................................. 11

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Parsons v. Ryan,*
   754 F.3d 657 (9th Cir. 2014) ................................................................ 14, 22

*Paton v. N.M. Highlands Univ.,*
   275 F.3d 1274 (10th Cir. 2002) ................................................................... 3

*Portz v. St. Cloud State Univ.,*
   297 F. Supp. 3d 929 (D. Minn. 2018) ...................................................... 2, 23

*Rannis v. Recchia,*
   380 F. App'x 646 (9th Cir. 2010) ............................................................... 8

*Ridgeway v. Mont. High Sch. Ass'n,*
   633 F. Supp. 1564 (D. Mont. 1986),
   *aff'd* 858 F.2d 579 (9th Cir. 1988) .............................................................. 3

*Rodriguez v. Hayes,*
   591 F.3d 1105 (9th Cir. 2010) ................................................................... 22

*Sali v. Corona Reg'l Med. Ctr.,*
   909 F.3d 996 (9th Cir. 2018) ...................................................................... 7

*Smith v. Univ. of Wash. Law Sch.,*
   2 F. Supp. 2d 1324 (W.D. Wash. 1998) ................................................... 15

*Tyson Foods, Inc. v. Bouaphakeo,*
   577 U.S. 442 (2016) .................................................................................. 23

*Valentino v. Carter-Wallace, Inc.,*
   97 F.3d 1227 (9th Cir. 1996) ................................................................... 29

*Van v. LLR, Inc.,*
   61 F.4th 1053 (9th Cir. 2023) ..................................................................... 6

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ..................................................................... 7, 12, 14, 22

## **Statutes**

20 U.S.C. § 1681 ............................................................................................ 5

34 C.F.R. § 106 ................................................................................... 4, 5, 10, 21

44 Fed. Reg. 71413 (1979) ...................................................................... 10, 21, 22

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## **Rules**

Fed. R. Civ. P. 23.................................................................................*passim*

## **Treatises**

5 Moore's Federal Practice - Civil § 23.22 (2024) ......................................7

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Plaintiffs Madison Fisk, Raquel Castro, Greta Castrillon, Clare Botterill, Maya Brosch, Helen Bauer, Carina Clark, Natalie Figueroa, Erica Grotegeer, Kaitlin Heri, Olivia Petrine, Aisha Watt, Kamryn Whitworth, Sara Absten, Eleanor Davies, Alexa Dietz, and Larisa Sulcs ("Plaintiffs") respectfully submit this Memorandum of Points and Authorities in support of their Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23.

## I.    INTRODUCTION

This case concerns the intentional decision of Defendants Board of Trustees of the California State University and San Diego State University ("Defendants" or "SDSU") to treat their female student-athletes worse than their male student-athletes. Plaintiffs assert three claims for relief under Title IX: (1) an equal athletic financial aid claim; (2) an equal treatment claim; and (3) a retaliation claim.

This case is ideally suited for class treatment because, under Title IX, Plaintiffs' claims will rise or fall in unison by reference to Defendants' programs, policies, and actions towards all class members. The total amount of athletic financial aid Defendants made and make available to male and female student-athletes either is or is not substantially proportionate to their participation rates. The availability, quality and kinds of benefits, opportunities, and treatment afforded to male and female student-athletes either is or is not equivalent. And Defendants either did or did not retaliate against all female student-athletes by making it more difficult for them to press their discrimination claims in this Court. The answers to these questions will not vary by class member.

That is why cases challenging sex discrimination against female student-athletes in violation of Title IX are consistently certified as class actions. *See, e.g., Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 963 (9th Cir. 2010) ("The district court certified a class of "[a]ll present, prospective, and future women students at [UCD] who seek to participate in and/or who are deterred from participating in intercollegiate athletics at [UCD]." (quoting Stipulated Judgment and Order at 1,

1    *Brust v. Regents of the Univ. of Cal.*, No. 07-1488, 2009 U.S. Dist. LEXIS 124980

2    (E.D. Cal. Oct. 19, 2009)); *Ollier v. Sweetwater Union High Sch. Dist.*, 251 F.R.D.

3    564, 565 (S.D. Cal. 2008) (certifying a class of "All present and future CPHS female

4    students and potential students who participate, seek to participate, and/or are or were

5    deterred from athletics at CPHS."); *Cohen v. Brown Univ.*, 991 F.2d 888, 893 (1st

6    Cir. 1993) (certifying a class of "all present and future Brown University women

7    students and potential students who participate, seek to participate, and/or are deterred

8    from participating in intercollegiate athletics funded by Brown").[1]

9          For the same reasons, this case should be certified as a class action, too.

10   **II.    RELEVANT FACTUAL BACKGROUND**

11         Plaintiffs allege that SDSU intentionally discriminated against its female

12   student-athletes by depriving them of equal allocation of financial aid, equal

13   treatment, and by retaliating against them for initiating this action. *See generally*

14   Third Amended Complaint, ECF No. 50 ("TAC").

15         Regarding SDSU's failure to provide female student-athletes equal allocation

16   of financial aid, Plaintiffs allege that SDSU violates Title IX because the total amount

---

18

19   [1]     *See also, e.g., Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 335 (3rd Cir. 1993) (class
20   of "all present and future women students at I.U.P. who participate, seek to
     participate, or are deterred from participating in intercollegiate athletics at the
21   University"); *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 935 (D. Minn. 2018)
     ("All present, prospective, and future female students at St. Cloud State University
22   who are harmed by and want to end [the University's] sex discrimination in: (1) the
     allocation of athletic participation opportunities; (2) the allocation of athletic financial
23   assistance; and (3) the allocation of benefits provided to varsity athletes."); *Haffer v.
     Temple Univ. of Commonwealth Sys. of Higher Educ.*, 678 F. Supp. 517, 521 (E.D.
24   Pa. 1987) (class of "all current women students at Temple University who participate,
     or who are or have been deterred from participating because of sex discrimination in
25   Temple's intercollegiate athletic program."); *see also Paton v. N.M. Highlands Univ.*,
     275 F.3d 1274 (10th Cir. 2002); *Boucher v. Syracuse Univ.*, 164 F.3d 113 (2nd Cir.
26   1999); *Biediger v. Quinnipiac Univ.*, 928 F. Supp. 2d 414, 414 (D. Conn. 2013); *Foltz
     v. Del. State Univ.*, 269 F.R.D. 419, 426 (D. Del. 2010); *Cmtys. for Equity v. Mich.
27   High Sch. Ath. Ass'n*, 192 F.R.D. 568, 568 (W.D. Mich. 1999); *Ridgeway v. Mont.
     High Sch. Ass'n*, 633 F. Supp. 1564, 1567 (D. Mont. 1986), *aff'd* 858 F.2d 579 (9th
28   Cir. 1988); *Bucha v. Ill. High Sch. Ass'n*, 351 F. Supp. 69 (N.D. Ill. 1972); *Leffel v.
     Wis. Interscholastic Ath. Ass'n*, 444 F. Supp. 1117, 1119 (E.D. Wis. 1978).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

of scholarship aid made available to men and women is not substantially proportionate to their athletic participation rates. Hundreds of female students participate in intercollegiate varsity athletics at SDSU every year. *See* Report by Donna Lopiano, Ph.D ("Lopiano Report") ¶ 56; *see also* TAC ¶ 337. Data prepared by SDSU show that for the 2020-21 academic year, women constituted approximately 57% of SDSU's student-athletes but received only 50% of the total financial aid allocated to student-athletes. TAC ¶ 341. Simply stated, SDSU fails to provide reasonable opportunities for females to receive financial aid in proportion to their athletic participation in contravention of Title IX.

As for equal treatment and benefits, Plaintiffs allege that SDSU intentionally discriminates against its female student-athletes by depriving them of equality in numerous areas, including equipment and supplies, scheduling of games and practice time, travel and per diem allowances, publicity, and assignment and compensation of coaches. The applicable program-wide analysis will be used to show that SDSU provides myriad benefits to its male student-athletes that it denies to its female student-athletes. By way of brief example, Plaintiffs allege that men on SDSU's men's teams are given priority for scheduling practice times and weight room training, such that women athletes must schedule their practices around the men's teams. TAC ¶ 378-79. Furthermore, SDSU provides the men on its men's teams with higher per diems for away travel—$200 to $300 for a competition weekend—and the women on its women's teams much smaller per diems for away travel—$75 to $100 for a competition weekend. *Id.* ¶ 383. SDSU pays for the men on the men's football team to stay at a hotel the night before all home competitions and does not provide that same benefit to the women on any of the women's teams. *Id.* ¶ 384. Countless other programmatic areas demonstrate the inequity in treatment and benefits between female and male student-athletes at SDSU.

As for retaliation, just over a week after Plaintiffs initiated this action, on February 16, 2022, SDSU's head track and field coach, Shelia Burrell, held a

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

previously unscheduled Zoom meeting with the women's varsity track and field team. During that meeting, which lasted for nearly thirty minutes, Coach Burrell noted her disappointment in the female track athletes who had brought the current suit, and implicitly threatened them and other team members. Plaintiffs requested that SDSU mitigate the damage done by the comments through an agreed-upon statement and asked SDSU to ensure that no SDSU employee will retaliate against any of our clients in the future in any way or attempt to deter any other SDSU students from exercising their rights in connection with Title IX or our clients' claims. SDSU refused. *See generally* TAC ¶¶ 418-55. Plaintiffs allege that, through Coach Burrell and SDSU's actions, SDSU retaliated against all of the class members, deterred female student-athletes from participating in and supporting this lawsuit, and interfered with their ability to litigate and vindicate their Title IX claims.

Because Plaintiffs' allegations, Defendants' liability, and the appropriate relief in this case necessarily hinge on SDSU's program-wide treatment of the proposed class members, this case should be certified as a class action.

## III.   THE CLASSES

Plaintiffs seek certification of the following classes (the "Classes"):

### A.   The Injunctive Relief Class

Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), Plaintiffs seek to certify the following class (the "Injunctive Relief Class"):

> All female students who participate or, since February 7, 2022, participated in intercollegiate varsity athletics at San Diego State University.

Plaintiffs seek to appoint Plaintiffs Carina Clark and Kaitlin Heri as class representatives for the Injunctive Relief Class. For the Injunctive Relief Class, Plaintiffs intend to pursue claims for: (1) denial of equal allocation of athletic financial aid pursuant to Title IX and 34 C.F.R. § 106.37(c)(1) (Count I); (2) denial of equal athletic treatment and benefits pursuant to Title IX and 34 C.F.R.

§106.41(c)(2)-(10) (Count II); and (3) retaliation pursuant to 20 U.S.C. § 1681 and 34 C.F.R. § 106.71 (Count III).

**B.    The Retaliation Class**

Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), Plaintiffs seek to certify the following class (the "Retaliation Class"):

> All female students who participated in intercollegiate varsity athletics at San Diego State University from the 2018-2019 academic year to the present.

Plaintiffs seek to appoint Plaintiffs Madison Fisk, Carina Clark, Natalie Figueroa, Kaitlin Heri, Olivia Petrine, and Kamryn Whitworth as class representatives for the Retaliation Class. For the Retaliation Class, Plaintiffs intend to pursue claims for retaliation pursuant to 20 U.S.C. § 1681 and 34 C.F.R. § 106.71 (Count III).

**C.    The Athletic Financial Aid Class**

Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), Plaintiffs also seek to certify the following class (the "Athletic Financial Aid Class"):

> All female students who participated in intercollegiate varsity athletics at San Diego State University from the 2018-2019 academic year to the present and did not receive all of the athletic financial aid they could have received.

Plaintiffs seek to appoint Plaintiffs Madison Fisk, Carina Clark, Natalie Figueroa, Kaitlin Heri, Olivia Petrine, and Kamryn Whitworth as class representatives for the Athletic Financial Aid Class. For the Athletic Financial Aid Class, Plaintiffs intend to pursue claims for denial of equal allocation of athletic financial aid pursuant to Title IX and 34 C.F.R. § 106.37(c)(1) (Count I).

Pursuant to Rule 23(g), on behalf of each of the Classes, Plaintiffs seek to appoint as class counsel Clarkson Law Firm, P.C.; Casey Gerry Schenk Francavilla Blatt & Penfield, LLP; and Haeggquist & Eck, LLP.

## IV.    LEGAL STANDARD

Under Rule 23, a class action may be maintained if the four prerequisites of Rule 23(a) are met, and the action meets one of the three kinds of actions listed in Rule 23(b). *Van v. LLR, Inc.*, 61 F.4th 1053, 1062 (9th Cir. 2023); Fed. R. Civ. P. 23. While the Court conducts a "rigorous analysis," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), Plaintiffs need only show that Rule 23's requirements are met "by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022). The evidence considered "should not be limited to only admissible evidence." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018). Rather, the Court may consider "material sufficient to form a reasonable judgment" regarding Rule 23's requirements. *Id.* Merits questions may only be considered to the extent they are "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

## V.    THE CLASSES SATISFY RULE 23(a)'s PREREQUISITES.

Rule 23(a) sets forth four prerequires: "numerosity, commonality, typicality, and adequacy of representation." *Sali*, 909 F.3d at 1002; Fed. R. Civ. P. 23(a). The Classes satisfy each prerequisite.

### A.    The Classes Satisfy the Numerosity Requirement.

"Rule 23(a)(1)'s numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable" does not mean that joinder is a "literal impossibility," but instead asks whether joinder of all class members is "'practicable'—*i.e.*, 'reasonably capable of being accomplished.'" *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 837 (9th Cir. 2022). The Ninth Circuit has instructed that "where a class is large in numbers, joinder will usually be impracticable." *Id.* at 835; *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (numerosity typically satisfied "when a class includes at least 40 members"). For smaller classes, the Court must consider other factors bearing on

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

the feasibility of joinder such as the "the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought, as well as the ability to identify and locate class members." *A.B.*, 30 F.4th at 835-36. The Classes each satisfy the numerosity requirement.

The Injunctive Relief Class encompasses all female students who participate or, since February 7, 2022, participated in intercollegiate varsity athletics at SDSU. The class definition undoubtedly encompasses hundreds of female student-athletes. *See, e.g.*, TAC ¶ 343 (SDSU had 253 female student-athletes in the 2021-2022 academic year); *see also* 5 Moore's Federal Practice - Civil § 23.22 (2024) (courts "may rely on common-sense assumptions to support findings of numerosity"). Further, the fact that the Injunctive Relief Class includes future class members strongly supports a finding of numerosity. Because every year female student-athletes matriculate to and graduate from SDSU, "there is little if any benefit to continually joining, or potentially dismissing, large numbers of additional class members," making the impracticability analysis "all the more lopsided in favor of finding numerosity." *A.B.*, 30 F.4th at 838; *see also Brust v. Regents of the Univ. of Cal.*, No. CIV. 2-07-1488-FCD-EFB, 2008 U.S. Dist. LEXIS 134974, at *12 (E.D. Cal. Oct. 23, 2008) (joinder impracticable where class contains a "significant number of prospective and future women students who are not easily identified"). Because the membership of the Injunctive Relief Class "changes continually over time, that factor weighs in favor of concluding that joinder of all members is impracticable." *A.B.*, 30 F.4th at 838. Joinder of Injunctive Relief Class members is further impracticable because SDSU's geographically diverse student body and alumni hail from all over

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

the country and the world,[2] and the inherently classwide assessments that need to be made to establish a Title IX claim limit the ability of individuals to bring individual suits.

The Retaliation Class encompasses all female student-athletes from the 2018-2019 year to the present. Similarly, the Athletic Financial Aid Class encompasses all female student-athletes from the 2018-2019 year to the present who did not receive all of the athletic financial aid they could have received. As more fully set forth in the report of Plaintiffs' expert witness, Donna Lopiano, Ph.D., both the Retaliation Class and the Athletic Financial Aid Class encompass hundreds of female student-athletes. Specifically, Dr. Lopiano made a preliminary assessment of the number of female student-athletes from the 2018-2019 through 2023-24 academic years who did not receive all of the athletic financial aid they could have received. Lopiano Report ¶¶ 55-58. To conduct her assessment, Dr. Lopiano consulted squad lists maintained by Defendants and produced as part of discovery, which among other things, identified the athletes who did and did not receive athletic financial aid from Defendants. *Id.* ¶ 55. Counting the female student-athletes identified on Defendants' squad lists who received no or partial financial aid, Dr. Lopiano identified hundreds of female student-athletes every year from the 2018-2019 to 2023-24 academic years who were identified as receiving partial or no financial aid. *Id.* ¶ 56 (identifying between 148 and 251 female student-athletes every year who received no or partial financial aid). As further set forth in Dr. Lopiano's expert report, these numbers are "inherently conservative," *id.* ¶ 57, and Dr. Lopiano expects that a complete counting of Title IX participants is likely to identify additional female student-athletes who fit within the definition of the Retaliation Class and the Athletic Financial Aid Class. *Id.* ¶¶ 57-58.

---

[2]    San Diego State University, International Affairs (April 20, 2023), https://www.sdsu.edu/international-affairs [https://web.archive.org/web/20230420143503/https://www.sdsu.edu/international-affairs] (boasting "98 Countries Represented by International Students at SDSU").

Dr. Lopiano's analysis is further bolstered by Plaintiffs' allegations, which establish that each of the seventeen Plaintiffs already identified by name in this action were female student-athletes who did not receive all of the athletic financial aid they could have received. *See, e.g.*, TAC ¶¶ 17 ("Plaintiffs are past and current female varsity student-athletes at SDSU."); 68 ("None of the Plaintiffs received all of the athletic financial aid for which she was eligible at SDSU."); *see also* ¶¶ 84-291.

Accordingly, the numerosity requirement is satisfied.

### B.    Questions of Fact and Law Are Common to the Classes.

Rule 23(a)(2)'s commonality requirement is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Common questions need not address every aspect of the claims, but they must "generate common *answers* apt to drive the resolution of the litigation." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015). A single common question is sufficient. *Id.*; *see also Ali v. Franklin Wireless Corp.*, No. 3:21-cv-00687-AJB-MSB, 2023 U.S. Dist. LEXIS 715, at *8 (S.D. Cal. Jan. 3, 2023) ("The plaintiff's burden for showing commonality is 'minimal.'") (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "In cases involving the question of whether a defendant has acted through an illegal policy or procedure, commonality is readily shown because the common question becomes whether the defendant in fact acted through the illegal policy or procedure." *Brust*, 2008 U.S. Dist. LEXIS 134974, at *12-13. Plaintiffs' claims for violations of Title IX satisfy the commonality requirement.

The Injunctive Relief Class's claim for denial of equal athletic treatment and benefits requires assessing whether, as a factual matter, there is "equivalence in the availability, quality and kinds of other athletic benefits and opportunities provided male and female athletes." *Mansourian*, 602 F.3d at 964. Resolving this claim requires an inherently classwide "overall comparison of the male and female athletic programs, including an analysis of recruitment benefits, provision of equipment and supplies, scheduling of games and practices, availability of training facilities,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

opportunity to receive coaching, provision of locker rooms and other facilities and services, and publicity." *Ollier v. Sweetwater Union High Sch. Dist.*, 858 F. Supp. 2d 1093, 1110 (S.D. Cal. 2012). Thus, "questions as to the allocation of benefits and opportunities between male student-athletes and female student-athletes at the athletic department level are of general applicability to the class because they go directly to determining whether there has been a Title IX violation." *Anders v. Cal. State Univ., Fresno*, No. 1:21-cv-00179-AWI-BAM, 2022 U.S. Dist. LEXIS 146775, at *24 (E.D. Cal. Aug. 16, 2022) (vacated on other grounds).

Similarly, as to the retaliation claim asserted by the Injunctive Relief Class and the Retaliation Class, the Ninth Circuit recently held that this exact claim, when asserted in the Title IX content, satisfies the commonality requirement because such claims "rest on the underlying motivation for the Department's alleged retaliatory actions in response to receiving Title IX complaints." *A.B.*, 30 F.4th at 842. The issue of retaliatory motive thus "raises a common question whose answer will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* (quoting *Wal-Mart*, 564 U.S. at 350).

Finally, the primary question to be answered regarding the Injunctive Relief Class and Athletic Financial Assistance Class's claim for denial of equal allocation of athletic financial aid is whether SDSU provided "reasonable opportunities for [awards of financial aid] for members of each sex in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics." 34 C.F.R. § 106.37(c)(1); *Navarro v. Fla. Inst. of Tech., Inc.*, No. 6:22-cv-1950-CEM-EJK, 2023 U.S. Dist. LEXIS 148333, at *9 (M.D. Fla. Aug. 23, 2023). In its 1979 Policy Interpretation, the Office of Civil Rights instructed that assessing this claim required determination of "the amounts of aid available for the members of each sex" and "the numbers of male or female participants in the athletic program," and then "comparing the results." 44 Fed. Reg. 71413, 71415 (1979).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Because the answers to these questions will be common to the Classes and drive the resolution of the litigation, the commonality requirement is satisfied. *See, e.g.*, *Cmtys. for Equity*, 192 F.R.D. at 572 ("The overarching question is, did [Defendant] act in a manner inconsistent with Title IX . . . ?"); *see also Brust*, 2008 U.S. Dist. LEXIS 134974, at *13; *Navarro*, 2023 U.S. Dist. LEXIS 148333, at *9, *adopted by*, 2023 U.S. Dist. LEXIS 162442 (M.D. Fla. Sep. 13, 2023) (finding Title IX challenges to equal treatment and benefits and allocation of financial aid raise common questions).

## C.    The Class Representatives' Claims Are Typical of Class Members' Claims.

Rule 23(a)(3)'s typicality requirement is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Commonality and typicality "'tend to merge' in practice because both of them 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 349). Rule 23(a)(3)'s typicality requirement has a "permissive standard," *Davis v. Lab. Corp. of Am. Holdings*, No. 22-55873, 2024 U.S. App. LEXIS 2937, at *6 (9th Cir. Feb. 8, 2024), that considers whether "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). A class representative's claims are typical where "they are reasonably co-extensive with those of absent class members." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Here, typicality is readily satisfied because each of the proposed class representatives' claims arise from the same factual predicate: Defendants' uniform course of conduct towards the class representatives and absent class members. That conduct has injured all class representatives and absent class members in a similar way.

Typicality is satisfied for the Injunctive Relief Class because the class representatives' claims all flow from "a discriminatory barrier to participation in varsity intercollegiate athletics" that results from the same conduct, a "discriminatory imbalance in resource allocation." *Anders*, 2022 U.S. Dist. LEXIS 146775, at *27-28 (typicality satisfied as to claims of denial of equal athletic treatment and benefits) (vacated on other grounds); *see also Brust*, 2008 U.S. Dist. LEXIS 134974, at *15-16 ("[T]he claims of the named plaintiffs as well as the proposed class arise out of the systemic denial of varsity athletic…benefits due to defendant's alleged discriminatory policies."); *Cmtys. for Equity*, 192 F.R.D. at 573.

Typicality is similarly satisfied in regard to retaliation for the Injunctive Relief Class and Retaliation Class because the class representatives allege that, by threatening and intimidating potential witnesses, SDSU interfered with their ability to litigate their Title IX claims. TAC ¶¶ 9–10, 174, 205, 220, 235, 261, 426–27, 430, 437–40, 452, 454. The Ninth Circuit has held that class representatives pursuing a claim for retaliation satisfy the typicality requirement because "the indirect victims' claims depend critically upon the success of the direct victims' claims." *A.B.*, 30 F.4th at 842.

Finally, in regard to athletic financial aid, typicality is satisfied as to both the Injunctive Relief Class and the Athletic Financial Aid Class because the class representatives' claims all flow from SDSU's failure to make financial aid available to female student-athletes in an amount that is substantially proportionate to their participation rates. *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1343 (W.D. Wash. 1998) (typicality satisfied where the class representative's claims "arise out of

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

the same course of discriminatory conduct that gives rise to the claims of the other class members and are based on the same legal theory").

Thus, the typicality requirement is satisfied.

**D.**     **The Class Representatives and Class Counsel Will Fairly and Adequately Represent Class Members.**

Rule 23(a)(4) requires the representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Adequacy involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.  Both the proposed Class Representatives and Class Counsel are adequate.

**1.      The Class Representatives Are Adequate.**

To assess the adequacy of proposed class representatives, Rule 23(a)(4) requires consideration of whether the plaintiff has interests antagonistic to those of the purported class members. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997). To defeat a finding of adequacy, a conflict "must be actual and not merely speculative" such that it "precludes structural assurance of fair and adequate representation…." *Anders v. Cal. State Univ.*, No. 23-15265, 2024 U.S. App. LEXIS 1063, at *4 (9th Cir. Jan. 17, 2024) (cleaned up). "The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim, and will be deemed inadequate only if she is startlingly unfamiliar with the case." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 503 (S.D. Cal. 2013) (cleaned up).

Each of the proposed class representatives satisfies the adequacy requirement. Each has spent considerable time litigating this action to date, reviewing pleadings, responding to discovery requests, and each either has or will have prepared for and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

sat for deposition.[3] Bryant Decl. Exs. 1-5; Petrine Decl. Each is pursuing this case to hold SDSU accountable not only for violating her rights under Title IX, but for similarly violating all class members' rights. Bryant Decl. Exs. 1-5; Petrine Decl. They are not aware of any conflicts with the classes they seek to represent. Adequacy as to the proposed class representatives is thus satisfied.

### 2.    Class Counsel Are Adequate.

In assessing counsel's adequacy, the Court considers counsel's qualifications, experience, and general capability to conduct the litigation. *See Sali*, 909 F.3d at 1007. Under Rule 23(g), when appointing class counsel, the Court must consider: (1) the work the applicant has done identifying and investigating claims; (2) counsel's experience in handling complex litigation and/or the types of claims at issue; (3) counsel's knowledge of the law to be applied; and (4) the resources the applicant will commit to the case. Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs seek to appoint as class counsel Clarkson Law Firm, P.C.; Casey Gerry Schenk Francavilla Blatt & Penfield, LLP; and Haeggquist & Eck, LLP. Each satisfies the standards set forth by Rule 23(g).

### a.    Clarkson Law Firm, P.C.

Arthur H. Bryant, the head of Clarkson's Title IX practice, has successfully represented more female student-athletes in Title IX litigation than any lawyer in America. *See generally*, Bryant Decl., Ex. 6 (Clarkson firm resume). He has litigated sex-discrimination cases brought on behalf of classes of female students since 1983, when he tried and won a landmark case that gained girls admission into Philadelphia's public, previously all-male Central High School. *See Newberg v. Bd. of Public Educ.*, No. 822, 1983 Phila Ct. Com. Pl. LEXIS 1 (C.P. Sep. 28, 1983). Twice named one of the 100 Most Influential Attorneys in America by *The National Law Journal*, Mr. Bryant has appeared in federal and state trial and appellate courts throughout the

---

[3]    Defendants have noticed Olivia Petrine's deposition for December 6, 2024.

nation, including the United States Supreme Court. *See, e.g.*, *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861 (1999); *Freightliner Corp. v. Myrick*, 514 U.S. 280 (1995). He joined Public Justice (then called Trial Lawyers for Public Justice) in 1984 as its sole staff attorney, became its Executive Director in 1987, its Chairman in 2014, and its Chairman Emeritus in 2019. He has received many awards, including for his Title IX work. For example, he received the Enhanced Opportunity Award for Women's Intercollegiate Athletics from the Council of Collegiate Women Athletic Administrators; was named One of 50 Most Influential People in College Sports by *College Sports* magazine; received an Honorary Degree from Ripon College for playing a "Significant Role in the Rise of Women's Athletics in the United States"; was named a finalist by the Women's Sports Foundation for the Billie Jean King Contribution Award for "Significant Contribution to the Overall Development of Girls' and Women's Sports"; received the "Sport At Its Best Award" from the League of Fans for his success advancing equal opportunity in sports; and, in late 2021, was named a Sports Law Trailblazer by *The National Law Journal* for his success representing female and male student-athletes in Title IX litigation. Mr. Bryant identified and investigated the claims at issue in this action. He has been involved in every aspect of advancing this action, including by overseeing multiple rounds of briefing related to the sufficiency of the pleadings.

Mr. Bryant's firm, Clarkson Law Firm, P.C., is committed to successfully prosecuting this case and expending the resources necessary to achieve a favorable result for the Classes. That commitment has been borne out on the record by Clarkson's pursuit of relevant discovery and by joining multiple discovery disputes before the Court in order to protect the rights of absent class members. *See* ECF Nos. 79, 81, 90, 106, 112, 114. Mr. Bryant will work with other lawyers at Clarkson, including Carey Alexander and Neda Saghafi. He will also work with Lori Bullock, who was involved in this case from its inception, withdrew her appearance with Bailey Glasser, LLP, and recently re-entered her appearance for Plaintiffs with

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson. Ms. Bullock has represented Plaintiffs in both class action litigation and Title IX cases. *See, e.g.*, *Robertson v. Univ. of Central Oklahoma*, 5:22-cv-00836 (W.D. Oklahoma 2022) (class counsel for women seeking equal treatment and benefits under Title IX); *Balow v. Mich. St. Univ.*, 21-cv-00044 (W.D. Mich. 2021) (representing women in a Title IX participation case); *Cohen v. Brown Univ.*, 92-CV-0197 (D. R.I. 2020) (represented class for breach of Title IX consent decree); *Niblock v. Univ. of Kentucky*, 5:19-cv-00394 (E.D. KY 2019) (class counsel for women seeking to add participation opportunities under Title IX); *Mayerova v. Eastern Mich. Univ.*, 2:18-cv-11909 (E.D. Mich. 2018) (class counsel for women seeking equal participation and treatment and benefits under Title IX); *Eggers v. Wells Fargo*, 4:14-cv-394 (S.D. Iowa 2014).

### b.    Casey Gerry Schenk Francavilla Blatt & Penfield LLP

Casey Gerry Schenk Francavilla Blatt & Penfield LLP was founded in 1947 and has a long history of championing individual and consumer rights. *See generally*, Bryant Decl., Ex. 7. The firm has played pivotal roles in a multitude of class actions, assuming leadership positions in many, serving as lead and on steering committees for litigation involving formidable defendants.

The firm and its attorneys have assisted in recovering billions of dollars for aggrieved consumers, injured clients, and public entities. For example, Casey Gerry represented then Lt. Gov. Gray Davis in his private attorney general action against the tobacco industry. They were successful in obtaining a settlement of over $25 billion for the citizens of California, and also took part in successfully resolving other similar tobacco cases in other states. The firm also was part of the trial team and played a leadership role in the Exxon Valdez litigation, which resulted in a $5 billion verdict. And the firm obtained a first of its kind appellate victory against Amazon involving strict liability of online marketplaces.

Casey Gerry's proven ability to navigate complex legal landscapes and deliver favorable outcomes has led to appointments in class action cases such as *In re: Yahoo!*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Inc. Customer Data Security Breach Lit.,* Case No. 16-MD-02752 (N.D. Cal.); *In re: Consumer Vehicle Driving Data Tracking Litigation;* Case No. 1:24-md- 0311- TWT (N. GA); *In re: US Fertility, LLC Data Security Litigation,* Case No. 8:21-cv-00299 (D. Md.)*; Cilluffo v. Subaru of America, Inc. et al.*, Case No. 23-cv-01897-RBK-MJS (D. N.J.), *In re: ZF- TRW Airbag Control Units Products Liability Litigation*, MDL No. 2905 (C.D. Cal); *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Lit.*, the "*Audi CO$_2$*" and "*Porsche Gasoline*" cases, 15-md-02672-CRB (N.D. Cal.); and *In re: Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Product Liability Litigation*, 17-md-02777-EMC (N.D. Cal.); *In re: Bank of America California Unemployment Benefits Lit.*, 21-md-02992-GPC (S.D. Cal.); *In re: Apple Inc. Device Performance Lit.*, 18-md-02827-EJD (N.D. Cal.); *In re: Wells Fargo Collateral Protection Insurance Lit.,* 8:17-ml-02797-AG-KES and others.

Casey Gerry currently has sixteen attorneys and a full complement of staff upon which the firm can call at any time. Additionally, Casey Gerry has the financial resources necessary to prosecute prolonged class action litigation and self-funds all of its litigation.

### c.    Haeggquist & Eck, LLP

Haeggquist & Eck, LLP is a San Diego, California based law firm dedicated to representing clients throughout California and the nation in complex consumer, employment, and securities class action litigation, as well as in individual employment litigation matters and sexual assault cases. *See generally*, Bryant Decl., Ex. 8. The firm's founding partners trained at the country's largest plaintiff's consumer and securities class action firm, and since then, have built the firm's reputation in employment, consumer protection, and securities fraud class action cases, taking on large corporations that have wronged employees and consumers. The firm and its attorneys have assisted in recovering hundreds of millions of dollars for aggrieved consumers, employees, and injured clients.

For example, Haeggquist & Eck served as Co-Lead Counsel in *Cohen v. Donald J. Trump,* Case No. 3:13-cv-02519-GPC-WVG (S.D. Cal.) on behalf of a nationwide class of students alleging RICO violations against then-presidential candidate Donald Trump and Trump University. The cases resulted in a $25 million settlement, which was deemed one of California's Top 50 Class Action Settlements in 2016. Other representative class actions include *Cohen v. ConAgra Brands, Inc.*, Case No. 8:20-cv-00637-DOC-ADS (C.D. Cal.); *In re Apple Inc. Device Performance Litigation*, No. 5:18-md-02827-EJD (N.D. Cal.); *Ultimate Fighting Championship, Park, et al. v. Zuffa, LLC*, et al., Case No. 2:17-cv-02282 (D. Nev.); *Rushing v. Williams Sonoma*, No. 3-16-cv-01421-WHO (N.D. Cal.); *In Re Magsafe Apple Power Adapter Litigation*, Case No. 5:09-cv-01911-EJD (N.D. Cal.); *In Re Sony VAIO Computer Notebook Trackpad Litigation*, Case No. 3:09-cv-02109-BAS-MDD (S.D. Cal.); *Gordon v. Apple Computer, Inc*., Case No. 5:06-cv-05358-JW (N.D. Cal.);

Haeggquist & Eck currently has seven attorneys, a full complement of staff, and has the financial resources necessary to prosecute prolonged class action litigation.

Proposed Class Counsel are thus adequate under Rule 23(g)(1)(A) and, accordingly, the requirements of Rule 23(a)(4) are satisfied.

## VI.    THE INJUNCTIVE RELIEF CLASS SATISFIES RULE 23(b)(2)'s REQUIREMENTS

Certification under Rule 23(b)(2) is appropriate where Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360. The Ninth Circuit has stressed that the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

"primary role of this provision has always been the certification of civil rights class actions" *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) (collecting cases); *see also* Fed. R. Civ. P. 23(b)(2), advisory committee note (1966) ("Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration."). Accordingly, Rule 23(b)(2) is "almost automatically satisfied in actions primarily seeking injunctive relief." *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 151 (N.D. Cal. 2015); *see also Parsons*, 754 F.3d at 688 (Rule 23(b)(2)'s requirements are "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole").

The Injunctive Relief Class seeks injunctive and declaratory relief for all current and future female students who participate in intercollegiate varsity athletics at SDSU with regard to their claims for denial of equal athletic treatment and benefits, retaliation, and denial of equal athletic financial aid. As courts have repeatedly recognized, these claims are readily amenable to certification under Rule 23(b)(2) because SDSU could only have violated Title IX as to all female student-athletes or none of them. *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) ("[I]t is sufficient to meet the requirements of Rule 23(b)(2) that class members complain of a pattern or practice that is generally applicable to the class as a whole."); *see also Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 946 (D. Minn. 2018) (injunctive relief would "force [defendant] to comply with Title IX by providing…equal access to athletic-related financial assistance, and equal athletic benefits and resources."); *Biediger v. Quinnipiac Univ.*, 928 F. Supp. 2d 414, 472 (D. Conn. 2013) ("[D]istrict courts are empowered to order specific relief—such as the addition of women's teams, or the elimination of men's teams, as determined by the court—in Title IX cases."). The relief sought is thus indivisible and could only apply to the Injunctive Relief Class as a whole. Certification under Rule 23(b)(2) is thus warranted.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## VII. THE RETALIATION CLASS AND ATHLETIC FINANCIAL AID CLASS SATISFY RULE 23(b)(3)'s REQUIREMENTS.

Certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The Ninth Circuit has held that "there is clear justification for handling the dispute on a representative rather than individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. A question is common where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (alteration in original). The proper question is thus "whether the method of proof would apply in common to all class members…not whether the method of proof would or could prevail." *Lytle v. Nutramax Labs., Inc.*, No. 22-55744, 2024 U.S. App. LEXIS 21431, at *21 (9th Cir. Aug. 23, 2024) (citing *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d 1, 12 (1st Cir. 2019)). To determine whether common evidence can supply classwide answers, the predominance inquiry "begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

Both the Retaliation Class, which seeks damages for retaliation, and the Athletic Financial Aid Class, which seeks damages for the denial of equal financial aid, satisfy Rule 23(b)(3)'s predominance requirement.

### A. Common Questions Predominate for the Retaliation Class's Claims.

To establish a claim for retaliation under Title IX pursuant to 20 U.S.C. § 1681 and 34 C.F.R. § 106.71, Plaintiffs must show that: (1) plaintiff was engaged in protected activity, (2) she suffered some adverse action, and (3) there is some causal link between the two. *See, e.g., Emeldi v. Univ. of Or.*, 698 F.3d 715, 724 (9th Cir. 2012).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Common, classwide evidence will be used to prove the retaliation claim. All members of the Retaliation Class will establish that the protected activity they engaged in was the filing of a complaint against Defendants for violating Title IX. (TAC ¶ 418). The adverse action all members of the Retaliation Class suffered is the same: SDSU's threats and intimidation of potential plaintiffs and witnesses. (*Id.* ¶¶ 419-430). Common evidence will also establish the harm suffered: interference with the Retaliation Class members' ability to litigate their Title IX claims. (*Id.* ¶¶ 438-441).

Plaintiffs also seek damages on behalf of the Retaliation Class. (TAC, Prayer for Relief ¶ H). Defendants raise as affirmative defenses that Retaliation Class members are not entitled to damages as a matter of law. (Defendants' Answer to Plaintiffs' Third Amended Class Action Complaint and Affirmative, Special and Other Defenses, ECF No. 66, at 153 ¶¶ 13 & 15) ("Answer"). But the question of whether Retaliation Class members are entitled to damages, and the appropriate measure of those damages, is *itself* a common question that predominates as to the Retaliation Class. *See, e.g.*, *Gaudin v. Saxon Mortg. Servs.*, 297 F.R.D. 417, 426 (N.D. Cal. 2013) (predominance analysis considers "both the causes of action and affirmative defenses); *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, No. MDL No: 2785, 2020 U.S. Dist. LEXIS 40789, *100 (D. Kan. Feb. 27, 2020) (same); *In re Syngenta AG Mir 162 Corn Litig.*, No. MDL No. 2591, 2016 U.S. Dist. LEXIS 132549, *1383 (D. Kan. Sep. 26, 2016); *see also Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013) (plaintiffs only required to show that "damages stemmed from the defendant's actions that created the legal liability"). Accordingly, common questions predominate as to the Retaliation Class's claims.

## B.    Common Questions Predominate for the Athletic Financial Aid Class's Claim.

To establish a claim for denial of equal athletic financial aid under Title IX pursuant to 34 CFR § 106.37(c)(1), Plaintiffs must show that the financial aid

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Defendants made available to male and female athletes was not substantially proportionate to their participation rates. 44 Fed. Reg. 71413, 71415 (1979); 34 CFR § 106.37(c)(1). The required analysis involves "a financial comparison to determine whether proportionately equal amounts of financial assistance . . . are available to men's and women's athletic programs" that is accomplished by "dividing the amounts of aid available for the members of each sex by the numbers of male or female participants in the athletic program and comparing the results." 44 Fed. Reg. 71413, 71415 (1979). While the analysis considers whether the "comparison results in substantially equal amounts or if a disparity can be explained by adjustments to take into account legitimate nondiscriminatory factors," July 23, 1998, Dear Colleague Letter: Bowling Green State University at 3, there is a "strong presumption" that any unexplained disparity of more than 1% violates the "substantially proportionate" requirement. *Id.* at 4.

Common, classwide evidence can and will be used to establish each element of the Athletic Financial Aid Class's claim. In her report, Plaintiffs' expert witness, Donna Lopiano, Ph.D., sets forth a classwide methodology that can be used to determine whether the female and male student-athletes at SDSU were given an equal opportunity to receive (and actually received) the substantially proportionate athletic financial aid required by Title IX from the 2018-2019 academic year to the present. Dr. Lopiano explains that her methodology requires knowing only four variables for a given academic year: (1) the number of male students who participated in intercollegiate varsity athletics at SDSU; (2) the number of female students who participated in intercollegiate varsity athletics at SDSU; (3) the total amount of financial aid awarded to male athletes; and (4) the total amount of financial aid

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

awarded to female athletes. Lopiano Rep. ¶ 25.[4] Dr. Lopiano sets forth exactly how each of these variables can be identified from SDSU's own records, which constitute common, classwide evidence. *Id.* § VI. By reference to these variables, Dr. Lopiano further explains how damages can be calculated for members of the Athletic Financial Aid Class. *Id.* § VII. Dr. Lopiano's report thus establishes that common, classwide evidence can be used to calculate the Athletic Financial Aid Class's damages. *Lytle*, 2024 U.S. App. LEXIS 21431, at *17 ("plaintiffs may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof….").

Defendants have raised several affirmative defenses to the Athletic Financial Aid Class's claims, each of which presents a common question that predominates as to all Athletic Financial Aid Class members. For example, Defendants dispute whether the Athletic Financial Aid Class as a whole can recover monetary damages pursuant to Title IX. *See, e.g.*, Defendants' Answer, ECF No. 66 at 153 ¶¶ 13 & 15; *see also, e.g.*, ECF No. 30-1 at 23-24 (disputing whether "money damages are available in financial aid Title IX claims"); ECF No. 51-1 at 25 n.8 ("SDSU strongly disputes that this methodology (or any other advanced by Plaintiffs) would be a factually or legally appropriate measure of Plaintiffs' damages."). But this legal "question can be resolved with a legal determination that is common to" members of the Athletic Financial Aid Class. *Gaudin*, 297 F.R.D. at 427. Defendants have also asserted that legitimate nondiscriminatory explanations can account for any disparity in financial aid. *See, e.g.*, ECF No. 30-1 at 14. But, any such explanations and their legitimacy, present common, classwide questions that predominate because, if

---

[4] In prior briefing, Defendants conceded that the appropriate analysis "requires little more than a comparison of two ratios: the gender breakdown of student-athletes and the gender breakdown of financial aid." ECF No. 30-1 at 14. Defendants further conceded that common, classwide evidence would be used for the analysis because such "ratios have four discrete inputs: (1) the number of male student-athletes; (2) the number of female student-athletes; (3) the amount of athletic financial aid granted to male student-athletes; and (4) the amount of athletic financial aid granted to female student-athletes." *Id.* at 14-15.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

established, they would provide a defense to each Athletic Financial Aid Class member's claims. *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 2020 U.S. Dist. LEXIS 40789, at \*100; *In re Syngenta AG Mir 162 Corn Litig.*, 2016 U.S. Dist. LEXIS 132549, at \*1383; *see also* Defendants' Answer, ECF No. 66 at 153 ¶ 8. Accordingly, the predominance requirement of Rule 23(b)(3) is met.

### C.    A Class Action Is a Superior Method of Adjudicating This Dispute.

Rule 23(b)(3) also requires Plaintiffs to demonstrate that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule enumerates a list of non-exhaustive factors pertinent to class certification, including: the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action. *Id.* The superiority requirement "tests whether class litigation of common issues will reduce litigation costs and promote greater efficiency." *In re Ferrero Litig.*, 278 F.R.D. 552, 561 (S.D. Cal. 2011) (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)).

Superiority is readily demonstrated here. Attempting to individually litigate each of the claims asserted by members of the Retaliation Class and the Athletic Financial Aid Class would be a far inferior process for the parties, counsel, and the Court—especially since each class members' claim would turn on the classwide evidence discussed above. Members of the Retaliation Class and the Athletic Financial Aid Class have little interest in individually controlling the prosecution or defense of separate actions because the potential recovery is likely too low relative to the cost of litigating claims that must be proved on a classwide basis. *In re Coll. Athlete Nil Litig.*, No. 20-cv-03919 CW, 2023 U.S. Dist. LEXIS 216539, \*88-89 (N.D. Cal. Nov. 3, 2023). Plaintiffs are not aware that any other such suits have been

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

filed against Defendants. Litigating in this forum, where Defendants are located, is convenient for the parties. Finally, as set forth above, there are no manageability concerns given that the issues central to the Retaliation Class and the Athletic Financial Aid Class's claims can be resolved on a classwide basis by reference to common proof. *Id.*; *Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 586 (9th Cir. 2022). Accordingly, the superiority requirement is satisfied. *A.B. v. Regents of Univ. of Cal.*, No. 2:20-cv-09555-RGK-E, 2021 U.S. Dist. LEXIS 133383, *16 (C.D. Cal. Jan. 8, 2021) (superiority satisfied given "the general uniformity of the claims, the likelihood of numerous claims that may go without remedy, and the possibility of inconsistent judgments").

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion, certify the Classes, appoint the class representatives, and appoint class counsel.

Dated: November 22, 2024

Respectfully Submitted,

  */s/ Arthur H. Bryant*
Arthur H. Bryant (SBN 208365)
Neda Saghafi (SBN 344633)
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Hwy
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070
abryant@clarksonlawfirm.com
nsaghafi@clarksonlawfirm.com

Carey Alexander (SBN 5188461)
**CLARKSON LAW FIRM, P.C.**
590 Madison Ave., 21st Floor
New York, NY 10022
Tel: (646) 290-6009
Fax: (213) 788-4070
calexander@clarksonlawfirm.com

Lori Bullock (SBN AT0012240)
**CLARKSON LAW FIRM, P.C.**

309 East 5th St., Suite 202B
Des Moines, IA 50309
Tel: (213) 788-4050
lbullock@clarksonlawfirm.com

David S. Casey, Jr. (SBN 69768)
Gayle M. Blatt (SBN 122048)
**CASEY GERRY SCHENK FRANCA
VILLA BLATT & PENFIELD, LLP**
110 Laurel Street San Diego, CA 92101
Tel: (619) 238-1811
dcasey@cglaw.com
gmb@cglaw.com

Amber Eck (SBN 177882)
Jenna Rangel (SBN 272735)
**HAEGGQUIST & ECK, LLP**
225 Broadway, Ste 2050
San Diego, CA 92101
Tel: (619) 342-8000
ambere@haelaw.com
jennar@haelaw.com

*Attorneys for Plaintiffs*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265