# Exhibit 1

Kaitlin Heri
May 31, 2024

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MADISON FISK, RAQUEL CASTRO, GRETA VISS, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all those similarly situated,

        Plaintiffs,

  vs.

BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, and SAN DIEGO STATE UNIVERSITY

        Defendants.
_____

CASE NO.
3:22-CV-00173-TWR-MSB

DEPOSITION OF KAITLIN HERI

CONFIDENTIAL PORTION EXCERPTED

APPEARING REMOTELY

May 31, 2024

9:03 a.m.

REPORTED STENOGRAPHICALLY BY:

Deborah L. Heskett

CSR No. 11797

APPEARING FROM SAN BERNARDINO COUNTY, CALIFORNIA

```
 1   just specifically for sports.  It's also for equal pay
 2   in terms of teachers or anything like that, so I've
 3   known about Title IX for years.
 4        Q    Any specific documents that you remember
 5   reading about Title IX?
 6        A    Not specifically.
 7        Q    Do you remember if you read the actual Title IX
 8   statute?
 9        A    I have not.
10        Q    Any Title IX regulations from the federal
11   government?
12        A    No.
13        Q    Any guidance documents from the Department of
14   Education?
15        A    No.
16        Q    Do you understand what your claims in this
17   lawsuit are?
18        A    Yes, I do.
19        Q    And what is that understanding?
20        A    So the three claims are that we are -- the
21   first claim is for equal financial aid, athletic
22   financial aid.  The second is going to be for equal
23   treatment and benefits, and third claim is going to be
24   for our retaliation claim.
25        Q    And are you aware that you filed this lawsuit
```

```
 1   as a class action?
 2       A    Yes.
 3       Q    Can you explain to me what your understanding
 4   of a class action is?
 5       A    So --
 6            MS. BULLOCK:  Objection.  Sorry.  Objection to
 7   the extent it calls for a legal conclusion.
 8            You can answer.
 9            THE WITNESS:  So class action is we are
10   representing all female SDSU athletes previously to us,
11   presently, and for the future.
12   BY MS. GIROUX:
13       Q    And are you intending to be a class
14   representative in this case?
15       A    I am, yes.
16       Q    And why do you want to be a class
17   representative?
18       A    I want to be a voice for the previous female
19   athletes of unequal treatment and financial aid and the
20   present and the future.
21       Q    Sounds like there's a little bit of feedback on
22   somebody's screen, not sure where that's coming from,
23   but we'll just kind of move forward.
24            Do you know whether you have any duties as a
25   class representative?
```

1     A    Yes, I do have duties.

2     Q    And what is your understanding of what those
3 duties are?

4     A    So my duties are that I need to be willing and
5 available to cooperate fully with my lawyers.  I need to
6 have a little bit of legal understanding of what's going
7 on in our lawsuit.  I need to be representing all of our
8 class as a whole and not myself interest at all.

9     Q    Do you know which other plaintiffs in this
10 lawsuit are intending to be class representatives?

11     A    Yes, I do.

12     Q    And who are they?

13     A    So one of them is going to be Carina Clark,
14 another one is going to be Aisha Watt, and honestly I'm
15 not exactly sure who the other ones are.

16     Q    What do you know about the process of how SDSU
17 awards athletic financial aid?

18     A    To my understanding, I don't exactly know who
19 makes those decisions.  I know from my team, my head
20 coach had a little bit of input on who got those
21 scholarships, but I know she is not the only one who
22 makes those decisions.

23     Q    And it sounds like you're not sure who those
24 other people are who would have input into that
25 decision?

```
 1            Do you know whose policy that was?
 2      A     As far as I know, Coach Vaden (phonetic).  It
 3  could be other people as well, but that is what I know.
 4      Q     Do you know if it was a formal policy of the
 5  athletic department or more informal standard that the
 6  coaches had developed?
 7      A     I believe it was more of an informal thing that
 8  coaches decided on as they have some say in who gets the
 9  scholarships, and that is what was told to me, that was
10  the standard every year.
11      Q     Do you know if -- I apologize if I already
12  asked this -- if any of the track and field coaches
13  other than the head coach had input into your athletic
14  financial aid award?
15      A     As far as I know, they could give their
16  opinions to our head coach, but the other coaches
17  couldn't personally make that decision or tell us what
18  scholarship amount we would receive.
19      Q     Do you believe that you should have received
20  more in athletic financial aid for each year you were
21  enrolled?
22      A     I do believe that.  I can't give you any
23  specific numbers or percentages, but I do believe that,
24  yes.
25      Q     For all five years?
```

1    A    Yes.

2    Q    Are you aware that in your complaint you've

3  alleged that you were denied the opportunity to compete

4  for and receive equal athletic financial aid?

5    A    Yes, I'm aware.

6    Q    Can you -- and do you believe that's true?

7    A    Sorry.  Yes, I do.

8    Q    Sorry.  I timed that question badly.

9        Can you explain to me what it means, in your

10  mind, to compete for athletic financial aid?

11        MS. BULLOCK:  Objection to the extent it calls

12  for a legal conclusion.

13        But you can answer.

14        THE WITNESS:  Would you mind rephrasing that in

15  a different way, please?

16  BY MS. GIROUX:

17    Q    Sure.

18        You've alleged in your complaint that you were

19  denied the opportunity to compete for equal athletic

20  financial aid, and I'm asking for your understanding of

21  what it means to compete for athletic financial aid.

22    A    So to my understanding, competing for equal

23  financial aid would be having an even playing field for

24  the male athletes verse the female athletes.  And I

25  think maybe the female athletes had an equal playing

```
 1   field between the females, but not competing against the
 2   males.  We did not have an equal playing field in that.
 3          MS. BULLOCK:  And I'm just gonna make sure the
 4   record is clean since you rephrased the question.  Same
 5   objection, just have it precede the answer.
 6   BY MS. GIROUX:
 7      Q    And are you aware that you've alleged that you
 8   were forced to confront a sex-based barrier to receiving
 9   athletic financial aid?
10      A    Yes, I am aware.
11      Q    And do you believe that's true?
12      A    Yes, I do.
13      Q    What is that barrier?
14          MS. BULLOCK:  Objection to the extent calls for
15   a legal conclusion.
16          You can answer.
17          THE WITNESS:  Specifically because we are
18   female athletes, we were not allotted or allowed equal
19   pay as the male athletes.
20   BY MS. GIROUX:
21      Q    And by "pay," you mean athletic financial aid?
22      A    That's correct.
23      Q    I think you've told me that you're not sure who
24   was responsible for those allocations; is that correct?
25      A    Yes, that is correct.
```

1    Q    Why do you believe that that barrier was sex

2   based?

3              MS. BULLOCK:  Objection to the extent it calls

4   for a legal conclusion.

5              You can answer.

6              THE WITNESS:  I know that it's sex based

7   because of the numbers provided in our complaint that

8   every year, by huge margin, the female athletes are not

9   getting equal financial aid.

10  BY MS. GIROUX:

11   Q    Besides yourself who else do you believe should

12  have received more in athletic financial aid from SDSU?

13   A    I can't say anybody specifically, but the

14  female athletes, all of us in whole.

15   Q    Would that include female student-athletes who

16  received full scholarships for the cost of attendance?

17             MS. BULLOCK:  Objection to the extent it calls

18  for a legal conclusion.

19             You can answer.

20             THE WITNESS:  So if the female athletes are

21  already on full -- full scholarship, I don't think they

22  would have been able to receive more, but then that

23  would have been allocated to the female athletes who

24  were not on full scholarship.

25  ///

```
 1   BY MS. GIROUX:
 2       Q    So is it fair to say that, in your mind, every
 3   student-athlete who did not receive a full scholarship
 4   potentially should have received more in athletic
 5   financial aid?
 6            MS. BULLOCK:  Objection to the extent it
 7   misstates her testimony and legal conclusion.
 8            But you can answer.
 9            THE WITNESS:  Yes, potentially.  Every female
10   athlete could have received more if we were competing
11   for equal financial aid as men.
12   BY MS. GIROUX:
13       Q    Are you seeking to represent female
14   student-athletes who did receive full athletic financial
15   aid scholarships as part of this lawsuit?
16            MS. BULLOCK:  Objection to the extent it calls
17   for a legal conclusion.
18            You can answer.
19            THE WITNESS:  I am representing all female
20   athletes from SDSU.
21   BY MS. GIROUX:
22       Q    Including those who received full athletic
23   financial aid scholarships?
24       A    In terms of treatment and benefits as well,
25   yes.
```

```
 1       Q    I don't want to know what you talk about with
 2   your attorneys, but how frequently do you communicate
 3   with your attorneys about this lawsuit?
 4       A    It kind of depends how much or what is going on
 5   at that point in our lawsuit at the time, but I would
 6   say, on average, about once a month, could be more,
 7   could be less.  Just really depends on what's going on
 8   in the lawsuit.
 9       Q    So it sounds like it's communication as needed
10   as opposed to a -- like a regular meeting on the
11   calendar?
12       A    Yeah, correct.
13       Q    Do you typically review documents before they
14   are filed with the court?
15       A    Before I sign them?  Is that what you're
16   asking?
17       Q    Well, specifically I'm asking about documents
18   that are filed with the court.
19       A    So any documents that our lawyers file, I have
20   seen and looked over before they are filed with the
21   court.
22       Q    Do you remember any specific documents that you
23   reviewed before they were filed?
24       A    I don't want to say any specific ones that I
25   have reviewed, but any document that was filed on my
```

1   behalf or that I had signed, I had reviewed previously,
2   yes.
3       Q    Do you expect to receive any financial
4   compensation for your participation in this lawsuit?
5       A    No, I don't.
6       Q    Have you received any financial compensation to
7   date for participating in this lawsuit?
8       A    No, I have not.
9       Q    Have you paid your attorneys anything to date
10  to represent you in this lawsuit?
11      A    No, I have not.
12           MS. GIROUX:  Okay.  Let's take a quick
13  five-minute break before we dive into this next session.
14           MS. BULLOCK:  Can we go off the record for a
15  second?
16           (Recess taken)
17  BY MS. GIROUX:
18      Q    I want to talk now about your treatment and
19  benefits claim.  So could you tell me how you -- do you
20  believe that SDSU treats male and female students
21  unequally in terms of the equipment that is provided?
22      A    Yes, I do.
23      Q    In what way?
24      A    In terms of equipment provided, so that would
25  include gear.  So gear, the female athletes would get

```
 1   STATE OF CALIFORNIA    )
 2                          ) ss
 3   COUNTY OF LOS ANGELES  )
 4
 5               I, Deborah L. Heskett, a Certified
 6   Shorthand Reporter duly licensed and qualified in and
 7   for the State of California, do hereby certify that
 8   there came before me remotely on the 31st day of May
 9   2024, the following named person, to-wit:  Kaitlin Heri,
10   who was duly sworn to testify the truth, the whole
11   truth, and nothing but the truth of knowledge touching
12   and concerning the matters in controversy in this cause;
13   and that she/he was thereupon examined under oath and
14   her/his examination reduced to typewriting under my
15   supervision; that the deposition is a true record of the
16   testimony given by the witness.
17               I further certify that pursuant to FRCP
18   Rule 30(e)(1) that the signature of the deponent:
19               _X_ was requested by the deponent or a
20   party before the completion of the deposition;
21               ___ was not requested by the deponent or a
22   party before the completion of the deposition.
23               I further certify that I am neither
24   attorney or counsel for, nor related to or employed by
25   any of the parties to the action in which this
```

```
 1   deposition is taken, and further that I am not a
 2   relative or employee of any attorney or counsel employed
 3   by the parties hereto, or financially interested in the
 4   action.
 5              CERTIFIED TO BY ME on this 10th day of June
 6   2024.
 7
 8   _____
     DEBORAH L. HESKETT
 9   CSR No. 11797
```