# Exhibit 2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MADISON FISK, RAQUEL CASTRO, GRETA VISS, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all those similarly situated,

    Plaintiffs,

 vs.

BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, and SAN DIEGO STATE UNIVERSITY

    Defendants.
_____

CASE NO.
3:22-CV-00173-TWR-MSB

DEPOSITION OF CARINA CLARK

APPEARING REMOTELY

June 5, 2024

9:03 a.m.

REPORTED STENOGRAPHICALLY BY:

Deborah L. Heskett

CSR No. 11797

APPEARING FROM SAN BERNARDINO COUNTY, CALIFORNIA

```
 1    Q    Have you read any other materials about Title
 2  IX, like, websites or blog posts, things like that?
 3    A    No.  I would say majority of my knowledge was
 4  through those handbooks and forms we were given by SDSU
 5  each season and when I joined the team my freshman year.
 6    Q    And I should just also note that if the answer
 7  to my questions is ever that -- is ever "I don't know"
 8  or "I don't recall," that's a perfectly acceptable
 9  answer.  I'm just trying to get an understanding of what
10  you do remember or what you do know.
11    A    Okay.
12    Q    And are you aware that you filed this lawsuit
13  as a class action?
14    A    Yes.
15    Q    Can you explain to me your understanding of
16  what a class action is?
17    A    Yes.  So a class action lawsuit would be more
18  than just about myself.  So it would also call into
19  account the experiences of and opportunities given to
20  the class of female athletes at SDSU.
21    Q    Do you have an understanding of who would make
22  up the class in this case?
23    A    Yes.  Female student-athletes at SDSU, past and
24  current.
25    Q    What about future?
```

```
 1        A    I -- to my knowledge, I would say past and
 2   current at this time.  What occurs after the suit, how
 3   it affects the student-athletes, that is something I
 4   can't speak to or truly have the facts on at this
 5   moment.
 6        Q    In your understanding would the class include
 7   all female student-athletes from every team?
 8        A    Yes.
 9        Q    Is there -- is there a time limit for past
10   student-athletes who would be in the class, like, a
11   particular year?
12             MS. JOSHI:  Object to the extent it calls for a
13   legal conclusion.
14   BY MS. GIROUX:
15        Q    You can answer.
16        A    Okay.
17             Not to my knowledge.  I don't know.
18        Q    Are you intending to be a class representative
19   in this matter?
20        A    Yes.
21        Q    Why did you decide to be a class
22   representative?
23        A    I felt that my experience at SDSU as a
24   student-athlete on the track team could really help our
25   case, and I care about what happens.  And to the
```

```
 1   current, future and past student-athletes, based on my

 2   experience, I feel like I have so many important things

 3   to share that could help as a whole.

 4        Q    Do you know how many other class

 5   representatives there will be in this case?

 6        A    I believe there are a total of six of us.

 7        Q    Do you know who they are?

 8        A    I can't recall by name each one.  I do know my

 9   other track teammate is a class representative.

10        Q    Which teammate?

11        A    Kaitlin Heri.

12        Q    And I should also note that if you happen to

13   think of any information as we go along that you

14   remember later but you don't remember right now, just

15   let me know and we can go back 'cause sometimes that

16   happens.  Sometimes it doesn't, but ...

17             Besides the other named plaintiffs in this

18   case, have you talked to any other potential class

19   members about this lawsuit?

20        A    No.

21        Q    What do you know about the process of how SDSU

22   awards athletic financial aid?

23        A    I do know that the coaches have a say in it.  I

24   don't know the full extent as to who all at the

25   university has a specific say in the exact amount of
```

1   jeopardize any student-athlete's NCAA eligibility;
2   right?
3              MS. JOSHI:  Object to form again.
4              THE WITNESS:  I'm not asking to jeopardize the
5   financial standing of student-athletes.  I am hoping and
6   I'm aware that if we do win the case, we could, not
7   personally, but as a class, receive relief.
8   BY MS. GIROUX:
9       Q    And what type of relief are you hoping to
10  receive?
11      A    Hoping to -- going back to the claims, hoping
12  to just provide equal footing financially for female
13  student-athletes that come to the university, and also
14  the facilities as a whole, to improve those so, once
15  again, we are on the same footing and have the best
16  facilities equal to men to compete.
17      Q    When you say for female student-athletes on
18  equal footing financially, can you elaborate a little
19  bit more on what you mean by that?
20      A    Yes.  Basically putting female athletes on the
21  same playing field.  So allowing them to have the same
22  financial opportunity as the men so we are not starting
23  lower or behind from the very beginning.
24      Q    Is there a particular amount of athletic
25  financial aid that you're hoping will become available

```
 1   so all of these decisions were not made by one person in

 2   particular.

 3        Q    Do you believe that your head coach

 4   discriminated against you?

 5             MS. JOSHI:  Object to form.

 6             THE WITNESS:  Could you repeat the question?

 7   BY MS. GIROUX:

 8        Q    Sure.

 9             Do you believe that your head coach

10   discriminated against you?

11        A    I believe in terms of retaliation, yes.

12        Q    In terms of athletic financial aid?

13        A    I'm not -- I don't have the full knowledge of

14   that and what all went into her decisions.  It -- she

15   made it seem like it wasn't just her decision based on

16   the financial aid available for the team.

17        Q    Do you believe that someone else received the

18   athletic financial aid that you should have received?

19             MS. JOSHI:  Object to form.

20             THE WITNESS:  I don't have full knowledge of

21   each person's conditions and financial aid that they

22   received and where they would have gone prior to those

23   decisions being made.

24   BY MS. GIROUX:

25        Q    Do you believe that you should have received
```

1    more in athletic financial aid from SDSU?
2        A    Personally, yes, I do believe so.
3        Q    For each year that you were enrolled?
4        A    Yes.
5        Q    Do you have a specific number in terms of how
6    much more you think you should have received?
7        A    I do not have a specific number.
8        Q    Do you believe that any other student-athlete
9    should have received more in athletic financial aid?
10       A    I believe as a whole as a team, yes, but to
11   narrow it down to one specific person, their conditions
12   based on their performance, I couldn't express the
13   details on those decisions.
14       Q    Do you believe that every female
15   student-athlete at SDSU should have received more in
16   athletic financial aid?
17       A    I believe they should have had the opportunity
18   to receive the same amount while they were competing at
19   SDSU.
20       Q    What about a female student-athlete who
21   received a full athletic financial aid scholarship, do
22   you think that they were deprived of the opportunity to
23   receive athletic financial aid?
24       A    I think it depends on what all went into the
25   full financial aid and looking at if that full amount or

|   |   |
|---|---|
| 1 |       MS. JOSHI:  Object to form. |
| 2 |       THE WITNESS:  I would say the barrier is the |
| 3 | lack of opportunity I was given and other female |
| 4 | athletes to begin with.  It was a lack of opportunity. |
| 5 |       MS. GIROUX:  I will take that off the screen |
| 6 | for now.  We may come back to that. |
| 7 | BY MS. GIROUX: |
| 8 |    Q   Is there a particular amount of athletic |
| 9 | financial aid that you think each female student-athlete |
| 10 | should have received? |
| 11 |       MS. JOSHI:  Asked and answered. |
| 12 |       THE WITNESS:  Sitting here today, I could not |
| 13 | give you an exact dollar amount for each -- what each |
| 14 | female student-athlete should have received at SDSU. |
| 15 | BY MS. GIROUX: |
| 16 |    Q   Is there a particular amount in financial |
| 17 | compensation that you're seeking in this lawsuit on |
| 18 | behalf of each female student-athlete that you believe |
| 19 | was deprived of an opportunity to receive equal athletic |
| 20 | financial aid? |
| 21 |       MS. JOSHI:  Object to form. |
| 22 |       THE WITNESS:  No. |
| 23 | BY MS. GIROUX: |
| 24 |    Q   Are you seeking financial compensation for |
| 25 | female student-athletes who you believe were deprived of |

| | |
|---|---|
| 1 | an opportunity to receive athletic financial aid? |
| 2 |     A   Personally, no.  As a whole, speaking for the |
| 3 | whole class, I would like to -- I'm aware that changes |
| 4 | can be made and relief may be awarded if we win the |
| 5 | case. |
| 6 |     Q   I think what you just said is that -- but |
| 7 | correct me if I misunderstood -- is that you are not |
| 8 | seeking financial compensation in this lawsuit for being |
| 9 | deprived of an opportunity to receive athletic financial |
| 10 | aid from SDSU? |
| 11 |     A   I would say that I'm included in the class.  So |
| 12 | speaking as a class, any relief that may be awarded, I |
| 13 | may be included in that since this is speaking for the |
| 14 | full class that I'd be included in. |
| 15 |     Q   Okay.  So when I -- when I asked you a minute |
| 16 | ago about whether you were seeking financial |
| 17 | compensation for female student-athletes who you believe |
| 18 | had been deprived of an opportunity to receive athletic |
| 19 | financial aid, I think the first part of your answer |
| 20 | was, personally, no, and so I'm trying to understand |
| 21 | what -- what that response meant. |
| 22 |     A   I was speaking to if you were asking me as an |
| 23 | individual separate from the class, am I specifically |
| 24 | seeking a certain amount of compensation, which would be |
| 25 | no.  But included in the class, speaking for all female |

```
 1   student-athletes at SDSU, I'm aware that relief may be
 2   awarded.
 3        Q    How did you pay for college?
 4        A    I took out many student loans each semester I
 5   was at SDSU.
 6        Q    Did you receive any financial aid or
 7   scholarships or grants that were not athletic financial
 8   aid?
 9        A    Yes.  I did benefit from the GI Bill, not the
10   full 100 percent that's outlined in the GI Bill.
11        Q    Do you recall approximately how much that
12   covered for each year?
13        A    I believe it covered less than 25 percent of
14   the cost to attend SDSU.
15        Q    And were you on in-state or out-of-state
16   tuition?
17        A    Out of state.
18        Q    How do you feel that you've been harmed by
19   SDSU's allocation of athletic financial aid?
20             MS. JOSHI:  Object to form.
21             THE WITNESS:  I believe as a female student
22   athlete, I was put on a separate playing field and had a
23   separate starting point in terms of opportunity to
24   financial aid at SDSU.
25   ///
```

1   attendance at SDSU.
2       Q    Do you feel that you've been psychologically
3   harmed by SDSU's allocation of athletic financial aid?
4            MS. JOSHI:  Object to form.
5            THE WITNESS:  I would say yes, similar to my
6   answer I gave a minute ago.  The sheer frustration and
7   just confusion on the circumstances financially were a
8   big effect on me through college.
9   BY MS. GIROUX:
10      Q    Did you share those feelings with anyone else
11  that we did not talk about a minute ago?
12      A    No.
13      Q    Is there any other way that you believe you've
14  been harmed by SDSU's allocation of athletic financial
15  aid?
16           MS. JOSHI:  Object to form.
17           THE WITNESS:  Other than financially,
18  psychologically, emotionally, no.
19  BY MS. GIROUX:
20      Q    Are you aware that you're asking the Court to
21  certify a class of all current and former female
22  students who participated in intercollegiate varsity
23  athletics at SDSU and did not receive all the athletic
24  financial aid they could have?
25           MS. JOSHI:  Object to form.  I think you said

1    students.  You didn't say female students.

2    BY MS. GIROUX:

3         Q    Female students.

4         A    Yes.

5         Q    What is your understanding of what it means for

6    someone to not receive all of the athletic financial aid

7    they could have received?

8         A    If there are different amounts in the pools

9    available based on sex or gender on teams, I believe

10   that's unfair and unequal footing to begin with.

11        Q    How could you determine the amount of athletic

12   financial aid that someone could have received?

13             MS. JOSHI:  Object to form.

14             THE WITNESS:  I personally couldn't determine

15   each athlete in each support, based on my knowledge, the

16   specific amount they each should have received and were

17   not given the chance to earn.

18   BY MS. GIROUX:

19        Q    Do you --

20             MS. JOSHI:  Erika, sorry, just real quick.

21   When you are ready to switch topics, if we could take a

22   break.  I'm not saying right now, but just as a

23   heads-up.

24             MS. GIROUX:  Sure.  I have about two more

25   minutes on this.

```
 1              MS. JOSHI:  Perfect.  Okay.
 2   BY MS. GIROUX:
 3       Q    Do you know if there's a maximum amount in
 4   athletic financial aid that a student-athlete can
 5   receive?
 6       A    I do not know the specific amount of what that
 7   would be.
 8       Q    Okay.  I want to put a document up on the
 9   screen.  I'll tell you that this was produced to us as
10   Plaintiffs 43.
11            And my initial question is do you recognize
12   this document?
13       A    No.
14       Q    Okay.  Then I will not ask you any questions
15   about it.
16            Do you know if you have any duties as a class
17   representative?
18       A    Yes.
19       Q    Can you explain to me what your understanding
20   of those duties are?
21       A    To act and speak in the best interest of the
22   class as a whole, to be fully involved in the case, and
23   to be knowledgeable of the case.
24       Q    And you believe that you're prepared to fulfill
25   those duties?
```

```
 1        A    Yes.
 2             MS. GIROUX:  All right.  Then this is probably
 3   a good time for a break.
 4             MS. JOSHI:  Awesome.  Do you want to take ten
 5   minutes?
 6             MS. GIROUX:  Sure.  That works for me.
 7             MS. JOSHI:  Back at 12:10.  Okay.  Thank you.
 8             (Recess taken)
 9   BY MS. GIROUX:
10        Q    Do you believe that you've been retaliated
11   against by SDSU?
12        A    Yes.
13        Q    In what way?
14        A    I know for sure verbally by my coach on our
15   team meeting when she addressed us and addressed the
16   lawsuit calling it a distraction and basically targeting
17   us.  To the full extent of speaking to competition, I
18   wouldn't know specifically what I missed out on or
19   wasn't given the opportunity to compete in based on how
20   she reacted to the lawsuit.
21        Q    So can you tell me more about what occurred
22   during that team meeting?
23        A    Yes.  It was a team meeting during the season.
24   Our team was going through a bit of a rough patch, and
25   our head coach on the Zoom call in front of the whole
```

```
 1      Q    So I'm thinking, for example, like a block of
 2   time where you volunteer at a particular place or
 3   regular babysitting job, something like that.
 4      A    No.
 5      Q    I don't want to know what you talk about with
 6   your attorneys, but I just want to know how often do you
 7   communicate with your attorneys about this lawsuit?
 8      A    This varies from weekly to monthly.
 9      Q    So it sounds like it's kind of as needed as
10   opposed to having a regular meeting on the calendar?
11           MS. JOSHI:  Object to form.
12           THE WITNESS:  Yes.
13   BY MS. GIROUX:
14      Q    Do you typically speak with your -- or
15   communicate with your attorneys by email?
16      A    Yes.
17      Q    Do you review documents in this case before
18   they are filed with the court?
19      A    Yes.
20      Q    Are there any specific documents that you can
21   recall reviewing before they were filed with the court?
22      A    Our amended complaints.
23      Q    Do you expect to receive any financial
24   compensation for your participation in this lawsuit?
25           MS. JOSHI:  Object to form.
```

```
 1              MS. GIROUX:  Yeah, let's say 3:30.
 2              MS. JOSHI:  Okay.  See you then.
 3              (Recess taken)
 4   BY MS. GIROUX:
 5       Q    Do you recall that SDSU sent some written
 6   requests to you asking you to produce some documents in
 7   this case?
 8       A    Yes.
 9       Q    And you reviewed those requests; correct?
10       A    Yes.
11       Q    And you looked for documents in all of the
12   places that you thought they were most likely to be; is
13   that right?
14              MS. JOSHI:  Object to form.
15              THE WITNESS:  Yes.
16   BY MS. GIROUX:
17       Q    And you -- all the documents that you found
18   that you thought might be responsive to those requests,
19   have you provided those to your attorneys?
20       A    Yeah.  Yes.
21       Q    Other than your attorneys and the other
22   plaintiffs in this case, who have you discussed this
23   lawsuit with?
24       A    Generally, in a general sense, my mom.
25       Q    Can you tell me generally what you recall
```

```
 1   STATE OF CALIFORNIA    )
 2                          ) ss
 3   COUNTY OF LOS ANGELES  )
 4
 5              I, Deborah L. Heskett, a Certified
 6   Shorthand Reporter duly licensed and qualified in and
 7   for the State of California, do hereby certify that
 8   there came before me remotely on the 5th day of June
 9   2024, the following named person, to-wit:  Carina Clark,
10   who was duly sworn to testify the truth, the whole
11   truth, and nothing but the truth of knowledge touching
12   and concerning the matters in controversy in this cause;
13   and that she/he was thereupon examined under oath and
14   her/his examination reduced to typewriting under my
15   supervision; that the deposition is a true record of the
16   testimony given by the witness.
17              I further certify that pursuant to FRCP
18   Rule 30(e)(1) that the signature of the deponent:
19              __ was requested by the deponent or a party
20   before the completion of the deposition;
21              __x_ was not requested by the deponent or a
22   party before the completion of the deposition.
23              I further certify that I am neither
24   attorney or counsel for, nor related to or employed by
25   any of the parties to the action in which this
```

1  deposition is taken, and further that I am not a
2  relative or employee of any attorney or counsel employed
3  by the parties hereto, or financially interested in the
4  action.
5         CERTIFIED TO BY ME on this 17th day of June
6  2024.
7
8  _____
   DEBORAH L. HESKETT
9  CSR No. 11797