# Exhibit 3

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MADISON FISK, RAQUEL CASTRO, GRETA VISS, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all those similarly situated,

    Plaintiffs,

 vs.

BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, and SAN DIEGO STATE UNIVERSITY

    Defendants.

CASE NO. 3:22-CV-00173-TWR-MSB

DEPOSITION OF MADISON FISK

APPEARING REMOTELY

June 7, 2024

9:00 a.m.

REPORTED STENOGRAPHICALLY BY:

Deborah L. Heskett

CSR No. 11797

APPEARING FROM SAN BERNARDINO COUNTY, CALIFORNIA

1       MR. HAMMACK:  I'm just going to object to the
2  extent it calls for attorney-client communications.
3       Otherwise, Maddie, you can go ahead and answer.
4       THE WITNESS:  My understanding of Title IX is
5  it's a law that protects women, and it -- it's just a
6  law that says that women and men must have equal
7  opportunity.
8  BY MS. GIROUX:
9     Q    And so Josh has raised a good point, which is
10 that when I'm asking you questions today, I'm never
11 asking you for information that you've talked about with
12 your attorneys.  So if you can't answer the question
13 without revealing something that you've talked about
14 with your lawyers, let me know that.  I'm just asking
15 you for information or knowledge that you have
16 independently of what you have discussed with them.
17 Okay?
18    A    Okay.
19       MR. HAMMACK:  Appreciate that, Erika.  Thank
20 you.
21 BY MS. GIROUX:
22    Q    And so what is your understanding of Title IX
23 based on?
24    A    My understanding of Title IX is based on what I
25 learned in a political science class in college and what

1    I learned from my collegiate coach at San Diego State.
2         Q    Do you recall if you've ever read the Title IX
3    statute?
4         A    I have not read the statute in its entirety,
5    no.
6         Q    Do you recall if you read any regulations from
7    the federal government about Title IX?
8         A    No, not to the best of my knowledge.
9         Q    Do you recall if you've read any guidance
10   documents from the Department of Education on Title IX?
11        A    No, not to the best of my knowledge.
12        Q    Do you recall if you've read any other
13   articles, blog posts, more informal things like that
14   about Title IX?
15        A    Yes.  I've read articles regarding Title IX,
16   specifically lawsuits with other universities, including
17   Michigan, but off the top of my head, I can't list all
18   the details.
19        Q    And are you aware that you filed this lawsuit
20   as a class action?
21        A    Yes.
22        Q    Can you explain to me your understanding of
23   what a class action is?
24        A    So a class is a subset of a bigger group of
25   people that is experiencing harm.  And in this situation

```
 1    the class is female student-athletes at SDSU.
 2         Q    All female student-athletes at SDSU?
 3         A    Yes.
 4         Q    Over what time period?
 5              MR. HAMMACK:  Object to form.
 6              You can answer if you know.
 7              THE WITNESS:  At least in the best of my
 8    knowledge, like, I can only speak to the years that I
 9    was at the university, but I understand that the harm
10    has been going on for much longer.
11    BY MS. GIROUX:
12         Q    So the class that you just described to me in
13    this lawsuit, do you have an understanding of a date
14    range for who would be in that class?
15         A    I don't have an understanding of a specific
16    date range.  I just know that all female
17    student-athletes have been harmed at San Diego State.
18         Q    Are you intending to be a class representative
19    in this case?
20         A    I believe I am a class representative.
21         Q    And why do you want to be a class
22    representative?
23         A    Because representing female student-athletes at
24    SDSU and defending my teammates is important to me.
25         Q    Do you know whether as a class representative
```

```
 1   BY MS. GIROUX:
 2      Q    Do you believe that you should have received
 3   more in athletic financial aid while you were enrolled
 4   at SDSU?
 5           MR. HAMMACK:  Object to form.
 6           THE WITNESS:  I believe that all female
 7   student-athletes should have had the opportunity to
 8   compete for more scholarship.
 9   BY MS. GIROUX:
10      Q    Can you explain to me what you mean by
11   opportunity to compete for scholarship?
12      A    Yes.  Female student-athletes didn't have the
13   opportunity to compete on equal footing with our male
14   counterparts for financial aid.  So if there's a
15   monetary cap on female athletics, then there's always
16   going to be a barrier no matter how high your benchmarks
17   or how you perform or how well you do.  Like, it doesn't
18   matter almost.  It's like you'll never be able to
19   compete on the same footing as, like, your male
20   counterpart.
21           So I think not specific to me.  I think all
22   female student-athletes should have had that opportunity
23   to compete for financial aid the same way that men did.
24      Q    What about a female student-athlete who
25   received a full ride, do you think that they were
```

1  deprived of an opportunity to compete for athletic
2  financial aid?
3      A    Yes.  Sorry.
4           MR. HAMMACK:  Go ahead.  It's okay.
5           THE WITNESS:  Yes, absolutely.  Female
6  student-athletes that are on full ride, there's still
7  opportunities for, like, summer tuition, like, summer
8  financial aid where men's sports are prioritized, even
9  if it's not necessary, and those are opportunities they
10 missed out on because they weren't able to compete on
11 equal footing with their male counterparts.
12          I know that male sports at SDSU were always
13 prioritized for summer classes and, therefore, summer
14 financial aid from the athletic department.  Just
15 because they were on full ride during fall and spring
16 doesn't mean, like, they maxed out on their
17 opportunities.  There were a lot of opportunities they
18 were deprived of.
19 BY MS. GIROUX:
20     Q    How do you know that male student-athletes were
21 prioritized for summer tuition awards?
22     A    Sorry.  Waiting for Josh just in case.
23          Observation.  And, again, just discussion with
24 other student-athletes.  If you're on scholarship, it
25 doesn't apply to summer.  You have to either pull it

1  from fall or pull it from spring unless it's awarded in
2  addition to your scholarship for summer.
3           Football players, basketball players -- men's
4  basketball players -- those were always the people that
5  got the majority of spots for summer classes and,
6  therefore, were funded for financial aid.
7           If you were a female student-athlete and you
8  had to take a summer class, it was really unlikely that
9  you were gonna get summer funding.  You would pay it out
10 of pocket.
11     Q    Are you aware of any female student-athlete who
12 received summer tuition through athletic financial aid?
13     A    Off the top of my head, I can't recall anyone.
14 I took at least, like, six summer classes over my time
15 at SDSU.  None of them were funded.  Yeah.
16     Q    I just want to clarify something.  I might be
17 misunderstanding this.  So I thought what you had told
18 me was that the way that you know that male
19 student-athletes were given priority in terms of summer
20 tuition is that they seemed to take -- to get into
21 summer classes.  Are you tie -- no.  Okay.  That's not
22 what you meant.  Okay.
23     A    Sorry.  Okay.  So I took summer classes of my
24 own volition.  I wanted to lighten my course load during
25 the fall and spring.

```
 1        A    I --
 2             MR. HAMMACK:  Object to form.
 3             You can answer.
 4             THE WITNESS:  I believe all female
 5   student-athletes didn't have the opportunity to compete
 6   on equal footing with their male counterparts.
 7   BY MS. GIROUX:
 8        Q    Other than the amounts that you received in
 9   athletic financial aid, how did you pay for your college
10   tuition at SDSU?
11             MR. HAMMACK:  Object to form.
12             You can answer.
13             THE WITNESS:  My parents helped me.
14   BY MS. GIROUX:
15        Q    Did you take out any student loans?
16        A    No, I did not take out any loans.
17        Q    Did you receive any scholarships or grants?
18             MR. HAMMACK:  Object to form.
19             THE WITNESS:  I received the Cal Grant for the
20   time at SDSU that my mom was also a professor at Cal
21   Poly Pomona.
22   BY MS. GIROUX:
23        Q    And while you were at SDSU, were you on
24   in-state tuition?
25        A    Yes, I was -- I had California resident on
```

```
 1   in-state tuition.
 2       Q    In what ways do you believe that you've been
 3   harmed by SDSU's allocation of athletic financial aid?
 4            MR. HAMMACK:  Object to form.  May call for a
 5   legal conclusion.
 6            But you can answer.
 7            THE WITNESS:  I believe that all female
 8   student-athletes have been harmed by the disparity in
 9   financial aid that they have been allowed to compete
10   for, and all the reasons, I guess, would be everything
11   that's alleged in the lawsuit.
12   BY MS. GIROUX:
13       Q    Do you believe that you personally have been
14   financially harmed by SDSU's allocation of athletic
15   financial aid?
16            MR. HAMMACK:  Object to form.
17            You can answer.
18            THE WITNESS:  I believe all female
19   student-athletes have been harmed.
20   BY MS. GIROUX:
21       Q    I understand that.  I'm asking specifically
22   about you.
23            Have you personally been financially harmed by
24   SDSU's allocation of athletic financial aid?
25            MR. HAMMACK:  Object to form.  And asked and
```

1  answered.
2           But you can answer it again.
3           THE WITNESS:  As a female student-athlete, I,
4  as well as all the female student-athletes at SDSU, have
5  been harmed by SDSU's actions.
6  BY MS. GIROUX:
7     Q    Is there a particular amount of money by which
8  you believe you've been financially harmed by SDSU's
9  allocation of athletic financial aid?
10          MR. HAMMACK:  Object to form.  Asked and
11 answered.
12          You can answer it again.
13          THE WITNESS:  As we sit here today, I don't
14 have a specific dollar amount.  I just believe that all
15 female students did not have the opportunity to compete
16 on equal footing to their male counterparts for
17 financial aid and we are asking SDSU to rectify that.
18 BY MS. GIROUX:
19    Q    Do you believe that you've been emotionally
20 harmed by SDSU's allocation of athletic financial aid?
21    A    I believe I've been harmed by all these claims
22 made in the lawsuit, including the unequal allocation of
23 financial aid, emotionally.
24    Q    Okay.  Well, I want to talk specifically about
25 the athletic financial aid claim, and I think you -- I

1  nothing like -- yeah.
2      Q    I don't want to know what you talk about with
3  your attorneys.  I just want to know how often do you --
4  how often do you communicate with your attorneys about
5  this lawsuit?
6      A    I think there's contact at least twice a month
7  via email or text or some update, whether it's them
8  reaching out or me asking a question.
9      Q    Do you have a regularly scheduled meeting with
10 them?
11     A    No.
12     Q    Do you typically review documents in this case
13 before they are filed with the court?
14     A    My attorneys always send me files to review
15 before they are submitted, yes.
16     Q    Are there any documents that you can
17 specifically remember reviewing before they were filed?
18     A    Representation agreement, the third amended
19 complaint, my testimony document.  Those are the ones I
20 remember by name, I guess.  Any documentation that I
21 submitted for the interrogatories.
22     Q    Anything that you can recall seeing in the
23 third amended complaint or in your interrogatories that,
24 as you sit here today, you feel you need to correct or
25 clarify?

```
 1            MS. GIROUX:  If we could just take a quick two-
 2   or three-minute break, I think I'm just about done.
 3            MR. HAMMACK:  Okay.
 4            (Recess taken)
 5   BY MS. GIROUX:
 6       Q    Do you recall that in this case SDSU sent some
 7   written requests to you, the interrogatories and some
 8   document requests?
 9       A    Yes.
10       Q    And did you look in your records for documents
11   that would be responsive to those requests?
12       A    I did.
13       Q    You looked in your email and your paper records
14   and your computer files?
15       A    Yes.
16       Q    And you gave all the documents that you found
17   that might be responsive to your attorneys?
18       A    Yes.
19       Q    Are there any additional documents that you
20   found that you've not given to your attorneys that would
21   be responsive to those requests?
22            MR. HAMMACK:  I'm not sure I understood that
23   question.  Could you say it one more time?
24            MS. GIROUX:  Sure.
25   ///
```

```
 1   STATE OF CALIFORNIA    )

 2                          ) ss

 3   COUNTY OF LOS ANGELES  )

 4

 5                I, Deborah L. Heskett, a Certified

 6   Shorthand Reporter duly licensed and qualified in and

 7   for the State of California, do hereby certify that

 8   there came before me remotely on the 7th day of June

 9   2024, the following named person, to-wit:  Madison Fisk,

10   who was duly sworn to testify the truth, the whole

11   truth, and nothing but the truth of knowledge touching

12   and concerning the matters in controversy in this cause;

13   and that she/he was thereupon examined under oath and

14   her/his examination reduced to typewriting under my

15   supervision; that the deposition is a true record of the

16   testimony given by the witness.

17                I further certify that pursuant to FRCP

18   Rule 30(e)(1) that the signature of the deponent:

19                __ was requested by the deponent or a party

20   before the completion of the deposition;

21                __x_ was not requested by the deponent or a

22   party before the completion of the deposition.

23                I further certify that I am neither

24   attorney or counsel for, nor related to or employed by

25   any of the parties to the action in which this
```

1  deposition is taken, and further that I am not a
2  relative or employee of any attorney or counsel employed
3  by the parties hereto, or financially interested in the
4  action.
5              CERTIFIED TO BY ME on this 18th day of June
6  2024.
7
8  _____
   DEBORAH L. HESKETT
9  CSR No. 11797