# Report by
# DONNA LOPIANO, PH.D.

**MADISON FISK, RAQUEL CASTRO, GRETA CASTRILLON, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all those similarly situated**

**v.**

**BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY and SAN DIEGO STATE UNIVERSITY,**

**November 22, 2024**

## I.    SCOPE OF OPINIONS TO BE RENDERED

1.    I understand that Plaintiffs seek to represent in relevant part a proposed Athletic Financial Aid Class defined as: "All female students who participated in intercollegiate varsity athletics at San Diego State University from the 2018-2019 academic year to the present and did not receive all of the athletic financial aid they could have received" (the "class").

2.    I understand that Plaintiffs allege that the class members were denied the opportunity to receive athletic financial aid substantially proportionate to their participation rates in intercollegiate athletics at SDSU.

3.    I have been asked by Plaintiffs' counsel if it is possible to calculate, on a classwide basis, whether the class members were denied that opportunity and, if so, to develop a methodology to calculate the amount class members should be paid to compensate them for being deprived of that opportunity.

4.    My report is based on the information currently available to me. I reserve the right to supplement this report if/when I receive additional information during the course of discovery that affects my opinions.

## II.    EXPERT QUALIFICATIONS

5.    I am the president of Sports Management Resources, LLC ("SMR"), a consulting practice that focuses on helping educational institutions and sport organizations solve sports program integrity, equity, growth, and management challenges.  My practice includes an emphasis on the development and implementation of model policies governing the management of sports programs conducted by educational and open amateur sport organizations.  I conduct Title IX reviews of college athletic programs and make suggestions about how they can better meet their gender equity obligations.

6.       Before founding SMR in 2008, I was the Chief Executive Officer of the Women's Sports Foundation, a national 501(c)(3) not-for-profit education organization located in East Meadow, New York (1992-2007).  I previously served as a coach, assistant professor, and athletics director at various NCAA institutions, including 18 years as Director of Women's Athletics at the University of Texas at Austin (1975-1992). I also served as president of the Association of Intercollegiate Athletics for Women, the organization that formerly regulated women's intercollegiate athletics before the NCAA and the National Junior College Athletic Association began sanctioning women's sports in the 1980s. I have received many national and international awards recognizing my work in gender equity and sports management.

7.       I am considered one of the foremost national experts on gender equity in athletics. I have testified several times about gender equity before congressional committees and state and federal administrative commissions.  I also have reviewed and testified in numerous gender equity lawsuits over more than 25 years.  This experience has enabled me to see how institutions have responded to increased Title IX enforcement and publicity.

8.       At the Women's Sports Foundation, I oversaw the production of numerous research projects related to gender equity and sports participation of girls and women, including a comprehensive study of the Title IX athletics enforcement efforts of the U.S. Department of Education's Office for Civil Rights ("OCR"). I also have served as a gender equity consultant to state education agencies, school districts, school insurance collectives, and institutions of higher education, and I continue to do so as President of SMR.

9.       I am also considered an expert in athletics administration and sports management. I have taught a wide range of graduate and undergraduate courses involving the management of non-school open amateur and Olympic club, professional, interscholastic and intercollegiate

sports. I have assisted open amateur sports organizations, colleges, and universities in dealing with management challenges and in assessing their organizational climates with regard to gender and racial diversity and have spoken at numerous conferences on these subjects. I am currently an adjunct professor at Southern Connecticut State University, where I teach both undergraduate and graduate courses in sports management. I train future athletic directors and sports administrators. I present workshops for coaches and athletic administrators that educate them about risk management related to Title IX compliance, both with regard to athletics and sexual harassment. I train school and college Title IX compliance officers regarding the methodology of performing Title IX athletics assessments. With Dr. Connee Zotos, I authored the *Athletic Director's Desk Reference,* one of the most comprehensive policy compilations focused on meeting the needs of high school and college athletic directors. I also co-authored *Restructuring a College Athletic Program to Protect Olympic Sports During Financial Uncertainty* and numerous articles on gender equity in sports, sports management, intercollegiate athletics reform, and the benefits of sports participation for women and girls.

10.    My expert qualifications are based upon my education, academic background, previous employment, experience, and other related factors. My background and qualifications, as well as a listing of my publications authored in the previous ten years, to the best of my recollection, and the cases in which I testified as an expert at trial or by deposition during the previous four years, are set forth in the attached curriculum vitae as Exhibit A. My www.SportsManagementResources.com web site contains my blogs on athletics issues and other policy-related advice produced by me that are not included in my curriculum vitae.

## III.    COMPENSATION

11.    SMR is being compensated at the following specified hourly rates for my preparation and consulting services on this case:

- $350 per hour for report preparation;

- $300 per hour for consultation with attorneys related to preparation for expert reports or depositions;

- $500 per hour for deposition or court testimony;

- $2,500 per day for site visits;

- No charge for hours spent traveling; and

- Actual out-of-pocket expenses.

12.    No part of SMR's compensation is contingent on the outcome of this case.

## IV.    DOCUMENTS, DATA, OR INFORMATION CONSIDERED IN THE FORMATION OF EXPERT OPINIONS

13.    My opinions are based upon my experience and expertise in sports management and gender equity in sports and my review of publicly available information and information produced in discovery in this case, including documents and sources listed in Exhibit B and/or cited in this report.

14.    My opinions are also based upon my knowledge of NCAA and other sports governance association rules and practices, my knowledge of the structure and operation of athletic programs, and how NCAA Division I higher education institutions engage in recruiting students to participate in and finance their intercollegiate athletics programs.

## V.    TITLE IX OVERVIEW

15.    In this section, I provide a brief overview of Title IX and its implementing regulations and Department of Education interpretations and clarifications, focusing on such

guidance as they apply to athletics scholarships as a predicate to my explanation of scholarship gender equity methodology. I apply these in my opinions, so it is important to set them out before I do.

**A.    The Statute.**

16.    Title IX's core language provides:

> *No person in the United States shall, based on sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.*
>
> *20 U.S.C. §1681(a).*

**B.    The Title IX Regulations.**

17.    The Title IX regulations[1] include provisions that directly and indirectly impact intercollegiate athletics. 34 C.F.R. § 106. Section 106.31 includes a broad mandate that applies to all educational programs and activities, including athletics financial aid (§106.37).

18.    Section 106.37, Financial Aid addresses athletics scholarships directly:

> *§ 106.37 Financial assistance.*
>
> *(a) General. Except as provided in paragraphs (b) and (c) of this section, in providing financial assistance to any of its students, a recipient shall not:*
>
>> *(1) On the basis of sex, provide different amount or types of such assistance, limit eligibility for such assistance which is of any particular type or source, apply different criteria, or otherwise discriminate;*
>
> *. . .*
>
> *(c) Athletic scholarships.*

---

[1] Regulations of the Offices of the Department of Education, *Chapter I – Office for Civil rights, Department of Education*. 34 C.F.R., Subtitle B.
Nondiscrimination on the Basis of Sex in Education Programs Receiving Federal Financial Assistance.34 C.F.R. § 106.

*(1) To the extent that a recipient awards athletic scholarships or grants-in-aid, it must provide reasonable opportunities for such awards for members of each sex in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics.*

*(2) Separate athletic scholarships or grants-in-aid for members of each sex may be provided as part of separate athletic teams for members of each sex to the extent consistent with this paragraph and § 106.41.*

19.    If an institution has different policies for men's and women's teams, applies policies disproportionately to athletes from one sex, makes different decisions for men and women, or structures its athletic program in different ways for men and women, and if that different treatment harms women, then such actions fall within this broad regulation.

20.    Section 106.6 specifies that the rules of the NCAA or other governance organizations cannot be used to justify discriminatory treatment, including financial aid:

*§ 106.6 Effect of Other Requirements*

*(c) Effect of rules or regulations of private organizations. The obligation to comply with this part is not obviated or alleviated by any rule or regulation of any organization, club, athletic or other league, or association which would render any applicant or student ineligible to participate or limit the eligibility or participation of any applicant or student, on the basis of sex, in any education program or activity operated by a recipient and which receives Federal financial assistance.* Authority: Secs. 901, 902, Education Amendments of 1972, 86 Stat. 373, 374; 20 U.S.C. § 1681, 1682)

**C.    The 1979 Policy Interpretation.**

21.    In 1979 the U.S. Department of Health Education & Welfare (the precursor to today's U.S. Department of Education) released what is known as the 1979 Policy Interpretation on Sex Discrimination in Intercollegiate Athletics (the "1979 Policy Interpretation"). The 1979 Policy Interpretation explains the meaning of athletic equity in three main areas: (1) the allocation of athletic participation opportunities and whether the selection of sports and levels of competition

effectively accommodate the interests and abilities of members of both sexes; (2) the allocation of athletic benefits; and (3) the allocation of athletic financial aid.

22.     With regard to athletics financial aid, the subject of this report, the 1979 Policy Interpretation provides further information on how OCR will assess compliance:

*A. Athletic Financial Assistance (Scholarships)*

1.  *The Regulation. Section 86.37(c) of the regulation provides:*
    *[Institutions] must provide reasonable opportunities for such award (of financial assistance) for member of each sex in proportion to the number of students of each sex participating in intercollegiate athletics.*

2.  *The Policy - The Department will examine compliance with this provision of the regulation primarily by means of a financial comparison to determine whether proportionately equal amounts of financial assistance (scholarship aid) are available to men's and women's athletic programs. The Department will measure compliance with this standard by dividing the amounts of aid available for the members of each sex by the numbers of male or female participants in the athletic program and comparing the results. Institutions may be found in compliance if this comparison results in substantially equal amounts or if a resulting disparity can be explained by adjustments to take into account legitimate, nondiscriminatory factors. Two such factors are:*

    a.  *At public institutions, the higher costs of tuition for students from out-of state may in some years be unevenly' distributed between men's and women's programs. These differences will be considered nondiscriminatory if they are not the result of policies or practices which disproportionately limit the availability of out-of-state scholarships to either men or women.*

    b.  *An institution may make reasonable professional decisions concerning the awards most appropriate for program development. For example, team development initially may require spreading scholarships over as much as a full generation [four years] of student athletes. This may result in the award of fewer scholarships in the first few years than would be necessary to create proportionality between male and female athletes.*

3.  *Application of the Policy*

a. *This section does not require a proportionate number of scholarships for men and women or individual scholarships of equal dollar value. It does mean that the total amount of scholarship aid made available to men and women must be substantially proportionate to their participation rates.*

b. *When financial assistance is provided in forms other than grants, the distribution of non-grant assistance will also be compared to determine whether equivalent benefits are proportionately available to male and female athletes. A disproportionate amount of work-related aid or loans in the assistance made available to the members of one sex, for example, could constitute a violation of Title IX.*

4. *Definition - For purposes of examining compliance with this Section, the participants will be defined as those athletes:*

a. *Who are receiving the institutionally-sponsored support normally provided to athletes competing at the institution involved, e.g., coaching, equipment, medical and training room services, on a regular basis during a sport's season; and*

b. *Who are participating in organized practice sessions and other team meetings and activities on a regular basis during a sport's season: and*

c. *Who are listed on the eligibility or squad lists maintained for each sport, or*

d. *Who, because of injury, cannot meet a, b, or c above but continue to receive financial aid on the basis of athletic ability.*

**D.    Other OCR Guidance.**

23.    In addition to formal regulations, interpretations, and clarifications, OCR shares other guidance to institutions with Dear Colleague letters.

24.    Specific to Title IX athletics financial aid and the interpretation of "substantial proportionality" and allowable variance, OCR issued a July 23, 1998 Dear Colleague letter that shared a copy of its July 23 Bowling Green State University response containing important scholarship guidance:

*When evaluating each scholarship program on a case-by-case basis, OCR's first step will be to adjust any disparity to take into account all the legitimate*

*nondiscriminatory reasons provided by the college, such as the extra costs for out-of-state tuition discussed earlier. If any unexplained disparity in the scholarship budget for athletes of either gender is 1% or less for the entire budget for athletic scholarships, there will be a strong presumption that such a disparity of more than 1% is in violation of the "substantially proportionate" requirement.*

*Thus, for example, if men are 60% of the athletes, OCR would expect that the men's athletic scholarship budget would be within 59%-61% of the total budget for athletic scholarship for all athletes, after accounting for legitimate non-discriminatory reasons for any larger disparity. Of course, OCR will continue to judge each case in terms of its particular facts. For example, at those colleges where 1% of the entire athletic scholarship budget is less than the value of one full scholarship, OCR will presume that a disparity of up to the value of one full scholarship is equitable and nondiscriminatory. On the other hand, even if an institution consistently has less than a 1% disparity, the presumption of compliance with Title IX might still be rebutted if, for example, there is direct evidence of discriminatory intent.*

Mary Frances O'Shea, Office for Civil Rights, *Regarding the Application of Title IX of the Education Amendments of 1972 as It Relates to the Funding of Athletic Scholarships for Men's and Women's Intercollegiate Athletics Programs* at 3-4 (July 23, 1998), https://files.eric.ed.gov/fulltext/ED462022.pdf.

## VI.    IS IT POSSIBLE TO CALCULATE, ON A CLASSWIDE BASIS, WHETHER THE CLASS MEMBERS WERE DENIED THE OPPORTUNITY TO RECEIVE ATHLETICS FINANCIAL AID SUBSTANTIALLY PROPORTIONATE TO THEIR PARTICIPATION RATES?

25.    In my opinion, based on my education, experience, and review of the documents in this case, it is possible to calculate, on a classwide basis, whether the proposed class members were denied the opportunity to receive athletic financial aid substantially proportionate to their participation rates. The methodology requires knowing only four variables for a given academic year: (1) the number of male students who participated in intercollegiate varsity athletics at SDSU; (2) the number of female students who participated in intercollegiate varsity athletics at SDSU; (3) the total amount of financial aid awarded to male athletes; and (4) the total amount of financial aid

awarded to female athletes. Each of these variables can be identified by reference to common, classwide data. Then, only three steps are required.

A.    **STEP ONE: Identify the number of male and female students who participated in intercollegiate varsity athletics at SDSU and compute the participation rates of male and female athletes.**

26.    First, I would identify the male and female student-athletes to be counted according to the participant definition provided in 34 C.F.R. § 106, the 1979 Policy Interpretation, and the 1996 Policy Clarification, as applied to SDSU's squad lists and various other resources produced in this case. My methodology for identifying participants is set forth more fully in Appendix 1. Notably, this methodology identifies participants by reference to common, classwide data and could be used with any source of information that identifies the number of male and female students who participated in intercollegiate varsity athletics at SDSU.

27.    To determine the participation rate for each gender, I divide the total number of male athletes by the total number of all male and female athletes and do likewise for females.[2] Thus:

Male Athlete Participation Rate

$$= \text{Male Athletes} \div (\text{Female Athletes} + \text{Male Athletes})$$

Female Athlete Participation Rate

$$= \text{Female Athletes} \div (\text{Female Athletes} + \text{Male Athletes})$$

---

[2] At counsel's direction, for the purposes of this analysis, I am counting each athlete only once each year, regardless of how many sports she or he participates in. In Title IX and athletics terminology, I am using unduplicated counts.

28.    Table 1 provides a hypothetical example of this calculation:

Table 1. Computation of Percent of Male and Female Athletes
Using Hypothetical Data

| Year | A<br>Male Athletes | B<br>Female Athletes | C<br>Total Athletes | D<br>Male Athlete Participation Rate | E<br>Female Athlete Participation Rate |
|---|---|---|---|---|---|
| 2018-19 | 195 | 305 | 500 | 39.0% | 61.0% |
| 2019-20 | 210 | 315 | 525 | 40.0% | 60.0% |
| 2020-21 | 190 | 320 | 510 | 37.3% | 62.7% |
| 2021-22 | 205 | 310 | 515 | 39.8% | 60.2% |
| 2022-23 | 215 | 255 | 470 | 45.7% | 54.3% |
| 2023-24 | 210 | 240 | 450 | 46.7% | 53.3% |

**B.    STEP TWO:  Identify the amount of financial aid awarded to male and female athletes and compute the percentage of financial aid awarded to male and female athletes.**

29.    Second, I would identify the total amount of financial aid awarded to male and female athletes at SDSU according to guidance provided in 34 C.F.R. § 106, the 1979 Policy Interpretation, and the 1998 Dear Colleague Letter, as applied to the documents produced in this case. My methodology for identifying financial aid awarded to male and female athletes is set forth more fully in Appendix 2. This methodology, like the methodology for identifying participants, identifies financial aid awarded to male and female athletes by reference to common, classwide data. It could be used with any source of information that identifies the amount of financial aid awarded to male and female athletes at SDSU.

30.    To determine the percentage of financial aid awarded to each gender, I divide the total amount of financial aid provided to male athletes by the total number of all male and female athletes and do likewise for females.  Thus:

Percent Financial Aid Awarded to Male Athletes

= Financial Aid Awarded to Male Athletes

÷ (Financial Aid Awarded to Female Athletes

+ Financial Aid Awarded to Male Athletes)

Percent Financial Aid Awarded to Female Athletes

= Financial Aid Awarded to Female Athletes

÷ (Financial Aid Awarded to Female Athletes

+ Financial Aid Awarded to Male Athletes)

31.    Table 2 below provides a hypothetical example of this calculation:

Table 2. Computation of Percent of Financial Aid Awarded to Male and Female Athletes
Using Hypothetical Data

|  | A | B | C | D | E |
|---|---|---|---|---|---|
| Year | Financial Aid Awarded to Male Athletes | Financial Aid Awarded to Female Athletes | Total Financial Aid Awarded | Percent Financial Aid Awarded to Male Athletes | Percent Financial Aid Awarded to Female Athletes |
| 2018-19 | $3,930,000 | $3,915,000 | $7,845,000 | 50% | 50% |
| 2019-20 | $4,160,000 | $4,055,000 | $8,215,000 | 51% | 49% |
| 2020-21 | $4,410,000 | $4,295,000 | $8,705,000 | 51% | 49% |
| 2021-22 | $4,670,000 | $4,555,000 | $9,225,000 | 51% | 49% |
| 2022-23 | $4,864,000 | $4,670,000 | $9,534,000 | 51% | 49% |
| 2023-24 | $5,160,000 | $4,750,000 | $9,910,000 | 52% | 48% |

**C.    STEP THREE: Determine whether female athletes received financial aid proportional to their participation rates.**

32.    Finally, once the number of male and female students who participated in

intercollegiate varsity athletics at SDSU and the total amount of financial aid awarded to male and

female athletes at SDSU is known, it is a straightforward matter to determine whether female athletes received financial aid proportional to their participation rates.

33.    Table 3 below provides the calculations based on the hypothetical data, followed by the detailed explanation of the calculations.

Table 3. Computation of Whether Female Athletes were Awarded Financial Aid Proportional to Their Participation Rates Using Hypothetical Data

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| Year | Financial Aid Awarded to Male Athletes | Financial Aid Awarded to Female Athletes | Total Financial Aid Awarded | Percent Financial Aid Awarded to Male Athletes | Percent Financial Aid Awarded to Female Athletes | Male Athlete Participation Rate | Female Athlete Participation Rate | Variance from Female Participation Rate |
| 2018-19 | $3,930,000 | $3,915,000 | $7,845,000 | 50% | 50% | 39.0% | 61.0% | 11.1% |
| 2019-20 | $4,160,000 | $4,055,000 | $8,215,000 | 51% | 49% | 40.0% | 60.0% | 10.6% |
| 2020-21 | $4,410,000 | $4,295,000 | $8,705,000 | 51% | 49% | 37.3% | 62.7% | 13.4% |
| 2021-22 | $4,670,000 | $4,555,000 | $9,225,000 | 51% | 49% | 39.8% | 60.2% | 10.8% |
| 2022-23 | $4,864,000 | $4,670,000 | $9,534,000 | 51% | 49% | 45.7% | 54.3% | 5.3% |
| 2023-24 | $5,160,000 | $4,750,000 | $9,910,000 | 52% | 48% | 46.7% | 53.3% | 5.4% |

34.    Columns A and B list the total amount of financial aid awarded to male and female athletes, respectively, and Column C reflects the sum of those figures. Columns D and E show the percent of financial aid awarded to male and female athletes, respectively. Each of these figures were calculated in Step Two and are listed in Table 2. Columns F and G list the Male and Female Athlete Participation Rates, calculated in Step One and listed in Table 1.  Column H shows the difference between Column E and Column G: the variance between the percentage of financial aid provided to the female athletes and their participation rates.

35.     If the variance is more than one percent (the acceptable variance), then, unless it is caused by legitimate nondiscriminatory factors, female athletes would have been denied the opportunity to receive financial aid substantially proportionate to their participation rates.[3]

## VII.    IS IT POSSIBLE TO DEVELOP A METHODOLOGY TO CALCULATE ON A CLASSWIDE BASIS THE AMOUNT CLASS MEMBERS SHOULD BE PAID TO COMPENSATE THEM FOR BEING DENIED THE OPPORTUNITY TO RECEIVE ATHLETIC FINANCIAL AID SUBSTANTIALLY PROPORTIONATE TO THEIR PARTICIPATION RATES?

36.     If the class members were denied the opportunity to receive athletic financial aid substantially proportionate to their participation rates, it is also possible to calculate, on a classwide basis, the amount class members should be paid for being denied that opportunity. Through simple math, one can easily determine, for each year, (1) the total amount the school would have needed to pay to make the financial aid it awarded male athletes substantially proportionate to their participation rates, (2) the portion of that total amount the school would have needed to pay the female athletes to make the amount they received proportionate to their participation rates, and (3) the difference between that amount and the amount of financial aid actually awarded to the female athletes. Calculating that difference is one straightforward way to determine the accurate compensation amount. Paying that amount (plus interest) to the female athletes would make the amounts paid to both the female athletes and the male athletes proportional to their participation rates. It would put the female athletes in the same financial position, compared to the male athletes, they would have been in if the school had not discriminated against them and in favor of the men.

---

[3] I am not currently aware of any legitimate, nondiscriminatory factors that would explain a disparity in the amount of financial assistance awarded to female students who participated in intercollegiate varsity athletics at SDSU. The existence of such legitimate, nondiscriminatory factors would also be determined by reference to common, classwide data.

37.     In this regard, it is critical to note that the athletic participation rates of male and female athletes are inextricably intertwined. One cannot go up without the other going down an equal amount. The same is true of the percentages of athletic financial aid awarded to male and female athletes. So, when a school gives female athletes an amount of financial aid that is less than their proportional share, it is simultaneously giving male athletes the same amount more than their proportional share. The school thus mathematically underpays female athletes and overpays male athletes identical amounts. As a result, unless the school is going to claw back from male athletes the disproportionate financial aid it gave them, the only way it can adequately compensate female athletes is to pay them both the amount it discriminatorily failed to award them and the equal amount it discriminatorily awarded male athletes. Calculating the amount female athletes need to be paid to make the amount they receive proportional to their participation rate—given what the men received—does this.

38.     These amounts – and their totals – can be calculated on a class-wide basis, from the same four data sources discussed above. Table 4 on the next page depicts this calculation and is followed by a detailed explanation of its methodology:

Table 4. Computation of Amounts Required to Compensate Female Athletes
for Being Denied Opportunity to Receive Athletic Financial Aid Substantially
Proportionate to Participation Rates Using Same Hypothetical Data in Tables 1 and 2

| Year | A Financial Aid Awarded to Male Athletes | B Male Athlete Participation Rate | C Total Aid Amount Needed to Make Financial Aid to Male Athletes Proportional | D Female Athlete Participation Rate | E Portion of Total Amount Needed to Make Financial Aid to Female Athletes Proportional | F Financial Aid Awarded to Female Athletes | G Compensation Amount (without interest) |
|---|---|---|---|---|---|---|---|
| 2018-19 | $3,930,000 | 39.0% | $10,076,923 | 61.0% | $6,146,923 | $3,915,000 | $2,231,923 |
| 2019-20 | $4,160,000 | 40.0% | $10,400,000 | 60.0% | $6,240,000 | $4,055,000 | $2,185,000 |
| 2020-21 | $4,410,000 | 37.3% | $11,837,368 | 62.7% | $7,427,368 | $4,295,000 | $3,132,368 |
| 2021-22 | $4,670,000 | 39.8% | $11,731,951 | 60.2% | $7,061,951 | $4,555,000 | $2,506,951 |
| 2022-23 | $4,864,000 | 45.7% | $10,632,930 | 54.3% | $5,768,930 | $4,670,000 | $1,098,930 |
| 2023-24 | $5,160,000 | 46.7% | $11,057,143 | 53.3% | $5,897,143 | $4,750,000 | $1,147,143 |
| | | | | | | **TOTAL** | **$12,302,316** |

39.     Columns A and F list the total amount of financial aid awarded to male and female

athletes, respectively. These figures were calculated in Step Two and are listed in Table 2. Columns

B and D list the Male and Female Athlete Participation Rates, calculated in Step One and listed in

Table 1.

40.     To determine the total amount of aid needed to make the amount of financial aid

awarded to male athletes proportionate to their participation rate (Col. C), divide the Financial Aid

Awarded to Male Athletes (Col. A) by the Male Athlete Participation Rate (Col. B).

41.     To calculate the portion of the total amount needed to make the financial aid to

female athletes proportional to their participation rate (Col. E), multiply the Total Aid Amount

Needed to Make Financial Aid to Male Athletes Proportional (Col. C) by the Female Participation

Rate (Col. D). To determine the compensation amount (without interest) the female athletes should

be paid (Col. G), subtract the amount of Financial Aid Awarded to Female Athletes (Col. F) from the Amount Needed to Make Financial Aid to Female Athletes Proportional (Col. E).

42.     As in the prior sections, the determination of these amounts is formulaic and is determined by reference to common, classwide data that does not vary by individual class member or require any individualized assessment.

Respectfully submitted,

Donna A. Lopiano, Ph.D.

Date: November 22, 2024

## APPENDIX 1
## TITLE IX PARTICIPANT COUNTING METHODOLOGY TO BE UTILIZED

43.    To identify the number of male and female student-athletes and their participation rates, I count participants in a formulaic way that is consistent with my understanding of guidance promulgated by the Department of Education Office for Civil Rights (OCR). The January 1996 Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test[4] ("1996 Clarification") includes all 1975 Regulation and 1976 Interpretation references and provides additional information, such as the application of counting rules to institution-specific examples. In addition, I may rely upon my understanding of past court decisions if I encounter similar institution-specific circumstances. Where neither regulatory nor prior judicial guidance is available, I use a common-sense interpretation of OCR guidance.

44.    Key to the use of each of these assessment rules is the requirement that all male and all female student-athletes be counted in the same way. So, the identification of male and female student-athletes and their participation rates would be determined on a classwide basis in a manner that would not vary for any individual class member. My methodology is flexible and can account for other methods of identifying and counting male and female student-athletes in order to determine each gender's participation rate.

45.    OCR defines a "participant" in the financial aid section of the 1979 Policy Interpretation   and the 1996 Clarification (p. 3).  The 1979 Policy Interpretation explains that counted participants are those athletes:

---

[4] Department of Education Office for Civil Rights, *Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test.* (1996), https://www.ed.gov/laws-and-policy/higher-education-laws-and-policy/higher-education-policy/clarification-of-intercollegiate-athletics-policy-guidance-the-three-part-test.

(a) *Who are receiving the institutionally-sponsored support normally provided to athletes competing at the institution involved (e.g., coaching, equipment, medical and training room services) on a regular basis during a sport's season;* ***and***

(b) *Who are participating in organized practice sessions and other team meetings and activities on a regular basis during a sport's season;* ***and***

(c) *Who are listed on the eligibility or squad lists maintained for each sport;* ***or***

(d) *Who, because of injury, cannot meet a, b, or c above but continue to receive financial aid on the basis of athletic ability.*

46.     The 1996 Clarification states that OCR "considers a sport's season to commence on the date of a team's first intercollegiate competitive event and to conclude on the date of the team's final intercollegiate competitive event." Athletes thus are counted as participants if they participate on a regular basis during this period. Any athlete who joins the teams following the last date of competition (think of a football player who joins the team in the spring semester and plays in the spring game) or is on the squad list because the player is trying out for the team but is cut before the beginning of the season) does not count. A team member who attends a majority of the practices and activities during this designated period counts.

47.     Courts have held that institutions cannot cheat and the first day of season is a measure of convenience and form rather than substance.   In other words, an institution cannot intentionally design a situation where male athletes are told not to attend practice until after the first date of competition for the purpose of not counting them when, from that point on, they practice or play for the rest of the season.   Such a practice would artificially reduce the male participant count and, if data indicates such a practice, the athlete would count. Similarly, an institution that purposely keeps every female who tries out for a team through the first day of

competition and then drops one or more female athletes from the squad after that day in order to artificially inflate the female participant count would not count because she has not participated on a regular basis throughout the season.

48.    Athletes who participate in any competition during the academic year, whether it is in an NCAA traditional or non-traditional season of the sport, or who otherwise participates sufficiently to be charged with a year of NCAA eligibility are counted as participants whether or not they were on the squad list on the day of the first competition.

49.    Athletes designated as "partial qualifiers" (allowed to practice but because of academic reasons not allowed to compete) or "red-shirts" (eligible to practice, but the athlete voluntarily or because of injury does not compete to preserve a year of eligibility) count assuming they practice with the team and receive all the usual benefits provided to varsity athletes under Paragraph 45 (a) and (b) above. Again, a participant does not have to "compete" in order to be counted.

50.    Counting an athlete who does not participate throughout a full playing season is a commonly encountered situation that requires a reasonable interpretation of "participates on a regular basis" (*see* Paragraph 45 (a) and (b) above). While most coaches require all athletes to attend all practices, team meetings and other activities, it is not unusual for athletes not to attend some activities because of injury, class conflicts, or individual circumstances. Therefore, whenever the CARA Report[5] shows less than 100 percent participation I apply the following examples of

---

[5] The CARA Report is a record of Countable Athletics Related Activity. *See* NCAA Manual 2023-24—"17.1.7.3.4 Hour-Limitation Record. Countable hours must be recorded on a daily basis for each student-athlete regardless of whether the student-athlete is participating in an individual or team sport. Any countable individual or group athletically related activity must count against the time limitation for each student-athlete who participates in the activity but does not count against time limitations for other team members who do not participate in the activity." (Adopted: Jan. 10,

"reasonable" rules, to ensure that all male and female athletes similarly situated are counted in the same way:

> 50.a. Situation: The athlete misses the first day of competition because of late registration, tries out for the team after the first date of competition, or enters in the second semester, receives an athletic scholarship or plays in one or more competitions.  The athlete should count as a participant even if he or she does not participate in a full playing season because, if the athlete receives athletics aid, this is significant institutional support and/or, in the case of the athlete who actually participates in one or more contests, this is the customary determination for use of a season of collegiate eligibility.

> 50.b. Situation: The athlete is practicing with the team prior to the start of the playing season and is on the roster on the day of the first competitive event.  The athlete receives athletics aid and/or participates in a contest but then is cut from the team or quits before the end of the season.  The athlete should count as a participant even if he or she does not participate in a full playing season because, if the athlete receives athletics aid, this is significant institutional support and/or, in the case of the athlete who actually participates in one or more contests, this is the customary determination for use of a season of collegiate eligibility.

> 50.c. Situation:  The athlete may be present on the first day of competition OR registers late OR enters in a second semester OR participates in one sport in the fall and then participates in a second sport in the spring during that second sport's traditional or non-traditional season, and neither receives an athletic scholarship nor plays in any competition in the sport.  I would count such athletes if they practiced and were on the team for a majority of practices during the sport's season (date of first competition through final competitive event).

> 50.d. Situation: A scholarship recipient counts even if the athlete has no eligibility remaining, is injured, is academically ineligible or does not continue to practice with the team as long as that athlete is still receiving other benefits of being an athlete, such as tutoring, academic advising, access to athletics program services, etc.  Because the athlete is receiving a significant athletic benefit (such as financial aid) as well as other services, the athlete is counted as a participant.

> 50.e. Situation: If the school sponsors cross country and outdoor track or cross country, outdoor track and indoor track, independent participant counts must be made in each season.  If a cross country athlete receives an athletic scholarship in

---

1991 effective Aug. 1, 1991) at 231. A countable athletically related activity is defined "as any required activity with an athletics purpose involving student-athletes and at the direction of, or supervised by, one or more of an institution's coaching staff (including strength and conditioning coaches).

cross country, he/she only counts in cross country – not in indoor or outdoor track if he/she does not practice or compete in indoor or outdoor track. A school cannot automatically count an athlete in multiple sports (i.e., cross country, indoor track or outdoor track) unless she or he actually practices in the majority of each of each sport's seasons respectively. A participant in all three (cross country, indoor track and outdoor track) can be triple counted as long as the participant is a legitimate participant in each of these seasons.

51.     There may be other situations where government guidance is not clear, courts have not considered the situation, or the situation falls outside the plain meaning of the OCR stated participation definitions. OCR, if it came to campus to do a Title IX assessment, would look at the individual institution's fact situation and then decide. If I encounter such a fact situation not covered in the above situations, I would explain the reason for my counting decision and the identical standard would be applied to any similarly situated male or female athletes, ensuring that the identification of male and female student-athletes and their participation rates would be determined on a class wide basis in a manner that would not vary for any individual class member.

52.     Several sources may be used to determine participation in an actual competition. The primary source for participant counting by sport is the "NCAA Squad List" ("squad list") which is usually maintained by a rules compliance administrator employed by the athletic department. As a general rule, all athletes who are listed on a team's squad list are those who have been recruited, received financial aid, have been cleared to participate in practice or tryouts, or who were on the team as of the team's first competitive event. Information contained on the squad list may be used to indicate whether the athlete should or should not count. For example, a notation on the squad list may indicate the athlete was cut from the team one week after the first date of competition. In this case, the athlete would be determined not to have met the requirement to have regularly participated on a regular basis during the sport season (*see* Paragraph 45 (a) and (b) above). Squad lists reflect data that is maintained and coded to reflect dated changes in the status of a participant (e.g., quit, cut, etc.). That data is maintained pursuant to NCAA standards, which

are contained in Exhibit C attached to this report. Squad lists also contain information identifying athletes who received financial aid, including, as discussed further in Appendix 2, whether athletes received partial or full financial aid up to the cost of attendance. Any athlete listed on a team's squad list who received any financial aid is counted as a participant assuming they regularly participated in team activities during the competitive season unless they were added to the roster after the end of the season or quit prior to the start of the season.

53.    Institutions are also required by the NCAA to keep a CARA record <u>by athlete</u> of every countable athletics related activity[6] attended by the athlete. When completed in accordance with applicable guidelines, the CARA record of practice participation is the most definitive record of Paragraph 45 (a) and (b) above and can be used to identify an athlete as a participant if the athlete does not otherwise qualify as a participant by sources showing that the athlete either received athletics financial aid or actually participated in a competition that year.[7]

54.    Other sources of information can also be used to identify participants. For example, institutions may keep a separate competition record[8] for each team, which would verify that an athlete counts as a participant for that year through actual participation in one or more competitive

---

[6] *Id.* 17.02.1 at 223 "any required activity with an athletics purpose involving student-athletes and at the direction of, or supervised by, one or more of an institution's coaching staff (including strength and conditioning coaches)."

[7] At times, I encounter improperly completed CARA records in which athletes are not identified by name. In these cases, I give athletes the benefit of doubt, and count all athletes who do not have notations indicating otherwise as having participated on a regular basis.

[8] The "competition record" is normally a simple table with the team roster listed in alphabetical order down the left and the date of each exhibition, regular season, and post-season competition across the top. An "X" is placed opposite the name of each athlete under the date of every competition in which the athlete participated.

events. Similarly, various competition statistics records[9] can also be used to identify contests in which an athlete has actually played.

55.     I was asked by counsel whether the sources of information identified above can be used to identify the number of female students who participated in intercollegiate varsity athletics at San Diego State University from the 2018-2019 through 2023-24 academic years who did not receive all of the athletic financial aid they could have received. The squad lists identify female athletes who received full scholarships up to the NCAA full cost of attendance limit, those who received less than a full scholarship and those who did not receive any athletics financial aid. If the institution does not meet the Title IX standard of awarding financial aid to males in the aggregate and female athletes in the aggregate respectively proportional to male and female participation, those in the male or female classes not receiving any financial aid or partial financial aid, could receive additional aid.[10]

56.     To make an estimate of how many such SDSU female athletes there were, I counted the number of female athletes on each women's team squad list from the 2018-2019 to 2023-24 academic years who were identified as receiving partial or no financial aid. The results are shown on the next page in Table 1.

---

[9] Statistical records (*i.e.*, games played, at-bats, etc.) may be obtained from several sources. For example, athletic department websites often contain statistics and competition results going back several years. Athletic departments often maintain this information for their own internal use, even if it is not available on an institution's website.

[10] Title IX prohibits the use of athletics governance rules such as sport scholarship limits to justify not meeting this Title IX standard.

Table 1.  Estimated Number of Female Athletes Receiving Partial or No Athletics Scholarship
Financial Aid Based on SDSU Squad Lists: 2018-19 Through 2023-24

| Women's Sport | 2018-19 | 2019-20 | 2020-21 | 2021-22 | 2022-23 | 2023-24 |
|---|---|---|---|---|---|---|
| Basketball | 1 | 1 | 3 | 1 | 3 | 3 |
| Cross Country* | 0 | 0 | 0 | 0 | 0 | 0 |
| Golf | 3 | 3 | 5 | 4 | 4 | 0 |
| Lacrosse | 41 | 38 | 40 | 39 | 33 | 32 |
| Rowing | 47 | 47 | NA | NA | NA | NA |
| Soccer | 22 | 22 | 19 | 27 | 23 | 19 |
| Softball | 20 | 18 | 21 | 22 | 18 | 17 |
| Swimming/Diving | 26 | 26 | 26 | 25 | 22 | 22 |
| Tennis | 4 | 0 | 1 | 1 | 1 | 1 |
| Indoor Track* | 0 | 0 | 0 | 0 | 0 | 0 |
| Outdoor Track | 45 | 54 | 49 | 42 | 30 | 25 |
| Volleyball | 14 | 9 | 8 | 7 | 8 | 8 |
| Water Polo | 28 | 29 | 31 | 27 | 23 | 21 |
| TOTAL | 251 | 247 | 203 | 195 | 165 | 148 |

*Outdoor Track contains an unduplicated list of all athletes who participated in cross
country, indoor and outdoor track who did and did not receive financial aid.

57.     The figures identified in Table 1 above are inherently conservative. These squad
lists may not include summer school financial aid, academic awards, awards from the NCAA
financial aid fund or other forms of aid not categorized as counting toward NCAA scholarship
limits which I discuss in Appendix 2. Squad lists typically include only financial aid countable to
meet NCAA maximum sport scholarship limits which include only tuition, required fees, room,
board, books and an additional amount as determined by each institution's office of student
financial aid as "cost of attendance" which includes travel to and from home, cost of a laptop, or
other costs incidental to college attendance according to the definitions prescribed for federal
student loan programs.

58.     Thus, while the above table is solely based on squad list financial aid information
currently available to me that I have analyzed in connection with the preparation of this report, I

expect the true number of female athletes who did not receive all of the athletic financial aid they could have received may be higher than those listed above.

**APPENDIX 2**
**METHODOLOGY FOR DETERMINING TOTAL ATHLETICS SCHOLARSHIP DOLLARS AWARDED IN EACH YEAR AND DISTRIBUTION TO MALE AND FEMALE ATHLETES BASED ON PROPORTIONAL PARTICIPATION IN THE ATHLETIC PROGRAM**

59.     To identify the total amount of financial aid awarded to male and female athletes at SDSU, I identify financial aid in a formulaic way that is consistent with my understanding of applicable regulations and guidance promulgated by the Department of Education Office for Civil Rights (OCR), including in 34 C.F.R. § 106, the 1979 Policy Interpretation, and the 1998 Dear Colleague Letter.

60.     34 C.F.R. § 106.37(c) requires the equitable allocation of athletic financial aid. The 1979 Title IX Athletics Policy Interpretation specifies that scholarship equity is determined by comparing scholarship "amounts" (dollars) awarded to males and females in the aggregate respectively, rather than the number of scholarships or number of recipients of scholarships, in amounts proportional to their athletic participation. The 1998 Dear Colleague Letter specifies the allowable variance from exact proportionality.

61.     I identify financial aid primarily by reference to NCAA squad lists and other available sources.

**A.      NCAA Squad List Financial Aid.**

62.     The NCAA squad lists reflect the actual financial aid dollars awarded (or paid on the athlete's behalf) to each athlete during the academic year up to the full cost of attendance (COA). COA is defined by NCAA rules as follows:

*15.02.2 Cost of Attendance. The "cost of attendance" is an amount calculated by an institutional financial aid office, using federal regulations, that includes the total cost of tuition and fees, living expenses, books and supplies, transportation, and other expenses related to attendance at the institution.*

*15.02.2.1 Calculation of Cost of Attendance. An institution must calculate the cost of attendance for student-athletes in accordance with the cost-of-attendance policies and procedures that are used for students in general. Accordingly, if an institution's policy allows for students' direct and indirect costs (e.g., tuition, fees, living expenses, books, supplies, transportation, child care, cost related to a disability and miscellaneous personal expenses) to be adjusted on an individual basis from the institution's standard cost figure, it is permissible to make the same adjustment for student-athletes, provided the adjustment is documented and is available on an equitable basis to all students with similar circumstances who request an adjustment.* NCAA 2023-24 Division I Manual at 181.

**B.     Other Financial Aid.**

63.     My methodology also considers sources other than the squad list to identify other financial aid provided to male and female athletes. Other financial aid may consist of:

- Summer school financial aid;

- Cash awards for academic achievement;

- Provision of loss of value insurance for athletes eligible for professional drafts

- Loans

- Athletic department employment; or

- Reimbursement of expenses for studies abroad, etc.

64.     Other financial aid may be determined from any number of sources. For example, squad lists can include a column for "Other Countable Aid" that would identify other financial aid. The NCAA's annual member audited financial reports typically contain information regarding summer school financial aid. Athletic departments typically maintain records of all other financial aid provided to individual student-athletes. My methodology is flexible to account for any available source of other financial aid.

65.    Once the sources of NCAA Squad List Financial Aid and Other Financial Aid have been identified, the NCAA Squad List Financial Aid and Other Financial Aid amounts are summed for a given year to identify the total amount of financial aid awarded to male and female athletes respectively. Male and female athletes are entitled under Title IX to receive proportions equal to their respective proportion as athletic participants. There is an allowable variance of one percent on either side of exact proportionality that is allowed for the presumption of "substantial proportionality." Any greater variance must be justified by the institution based on legitimate non-discriminatory reasons such as differences in in-state versus out-of-state tuition, fees, and other normal institutional rates. The institution cannot intentionally discriminate by sex such as providing male athletes with academic achievement awards or summer school financial aid and not providing equitable financial aid benefits to female athletes.

# Exhibit A

# Exhibit A

**DONNA A. LOPIANO**, B.S., M.A., Ph.D

452 Fisher Court
Shelton, CT 06484    516-380-1213 (c)   203-538-5280 (w)
SportsManagementResources@gmail.com

*Revised as of 9-1-2024*

## EDUCATION

| | |
|---|---|
| Doctor of Philosophy in Physical Education | University of Southern California January 11, 1974 |
| Master of Arts in Physical Education | University of Southern California August 20, 1969 |
| Bachelor of Science in Health and Physical Education | Southern Connecticut State College June 8, 1968 |
| Institute for Non-Profit Consulting Certificate of Completion | CompassPoint Nonprofit Services December 7, 2007 |

## PREVIOUS EMPLOYMENT

2012-present    Adjunct Professor, Sports Management, Southern Connecticut State University

2008-present    President and Founder, Sports Management Resources
- a consulting firm specializing in educational sport
- helping sports organizations solve integrity, growth and development challenges
- www.SportsManagementResources.com

1992-2007    Chief Executive Officer, Women's Sports Foundation
Built an internationally respected education, research and public policy organization:
- Secured funds that enabled the Women's Sports Foundation to award more than $50 million in cash grants and educational materials
- Expanded the Women's Sports Foundation endowment from $1 million to $4 million; grew annual revenues from $1 million to $10 million and built staff from eight to sixty-five
- Driving force behind the development of the award-winning GoGirlGo! educational curriculum that since 2001 has reached more than 625,000 girls; significantly changing their attitudes about healthy lifestyle choices
- Served as a leading expert and national spokesperson on gender equity issues, including Title IX and the Amateur Sports Act, providing expert testimony for numerous court cases on coaches' compensation, athletes' rights, and equitable treatment
- Repeatedly led national efforts to strengthen Title IX legislation and its enforcement, successfully educating elected officials and policy makers on the importance of upholding the law
- Recognized as one of the "100 Most Influential Sports Educators in America" by the Institute for International Sport, "100 Most Influential People in Sports" by *The Sporting News* and "The 50 Most Influential People in College Sports" by *College Sports*

1975-1992    Director of Intercollegiate Athletics for Women and lecturer, Kinesiology and Health Education Department, The University of Texas at Austin
Constructed what many believed to be the premiere women's athletics program during this period; twice earning designation of top program in the nation:
- All eight sports consistently national ranked in the top ten in Division I

**PREVIOUS EMPLOYMENT (continued)**

- Grew budget from $57,000 in 1975 to over $4 million with 34 endowed academic scholarships for student-athletes in 1992
- Eighteen national championships in six different sports, 51 individual sport national champion athletes, 57 Southwest Conference championships and 395 All-American athletes, dozens among them Olympians and world champions
- Ninety percent of women athletes who exhausted their athletic eligibility at the University of Texas received a baccalaureate degree
- Served as Lecturer, Kinesiology and Health Education Department, teaching sports ethics and athletic management

1971-75    Assistant Professor of Physical Education,  Assistant Director of Athletics and Head Coach of men's and women's varsity teams at Brooklyn College of The City University of New York
- Led development of new undergraduate curriculum for physical education majors
- Taught undergraduate courses: Philosophical Perspectives of Physical Education, Women in Sport,  Behavioral Perspectives of Physical Education, Coaching Techniques, and Psycho-Social Aspects of Women in Sport as well as skills and methods courses in volleyball, basketball, softball and officiating
- Taught graduate courses in Sociology of Sport, Administration of Athletics, Women in Sport
- Initiated women's intercollegiate volleyball and grew it into a nationally ranked program
- Head Coach of women's basketball, women's softball, women's volleyball and men's volleyball

1969-70    Graduate Teaching Assistant, Women's Intramural Director, Women's Intercollegiate Volleyball Coach at The University of Southern California
While a graduate assistant and doctoral student:
- Served as head administrator of the University's women's intramural program
- Served as head varsity volleyball coach
- Taught a variety of sports classes for undergraduate students

Visiting Professor/Adjunct Professor/Executive in Residence - Courses Taught at Other Universities

| | |
|---|---|
| Spring 2015-23 | Global Issues in Sport and Entertainment Management, Southern Connecticut State University |
| Fall 2014-23 | Governance and Administration of Sport Organizations, Southern Connecticut State University |
| Fall 2012-23 | Current Issues in Sport Management, Southern Connecticut State University |
| Spring 2014-17 | Sport Ethics, Southern Connecticut State University |
| 2013-2014 | Executive-in-Residence, University of New Haven College of Business |
| Fall, 2011 | Amateur Sports Governance, New York University |
| Spring, 2011 | Amateur Sports Governance, New York University |
| Fall, 2011 | Seminar in Sports Business, Columbia University |
| Spring, 2009 | Community, Educational and Open Amateur Sports Organization and Governance, University of Massachusetts at Amherst |
| Summer, 1981 | Sports Programs for Girls and Women, University of Illinois @ Chicago Circle |
| Summer, 1980 | Coaching Softball, University of Iowa |
| Summer, 1979 | Athletic Administration, University of Iowa |
| Summer, 1976 | Administration of Girls' and Women's Athletics, University of Denver |
| Summer, 1975 | Psycho-Social Aspects of Women in Sport, University of Washington |

**TEACHING, COACHING AND ADMINISTRATIVE RESPONSIBILITIES**

***Administrative Experience:***
Assistant Director of Athletics, Brooklyn College of The City University of New York
Director of Intercollegiate Athletics for Women, The University of Texas at Austin
Chief Executive Officer, Women's Sports Foundation
President, Sports Management Resources

**TEACHING, COACHING AND ADMINISTRATIVE RESPONSIBILITIES**

*Courses Taught:*

Undergraduate

| | |
|---|---|
| Contemporary Issues in Sport Management | Philosophical Perspectives of Physical Education |
| Behavioral Perspective of Physical Education | Coaching for Women |
| Psycho-Social Aspects of Women in Sport | Intermediate and Advanced Volleyball |
| Intermediate and Advanced Basketball | Beginning and Intermediate Softball |
| Methods in Team Sports | Officiating Team Sports |
| Women in Sport | Coaching Techniques in Volleyball |
| Ethics in Sport | Contemporary Issues in Sport and Entertainment Management |

Graduate

| | |
|---|---|
| Sociology of Sport | Administration of Athletics |
| Women in Sport | Sport Ethics |
| Community, Educational and Open Amateur Sport | Amateur Sports Governance |
| Seminar in Sports Business | Governance and Administration of Sport |
| Governance and Administration of Sport Organizations | Global Issues in Sport Management |
| | Current Issues in Sport Management |

*Coaching Experience:*
Head Coach of Women's Intercollegiate Volleyball, Basketball and Softball
Head Coach of Men's Intercollegiate Volleyball
Head Coach, Italian National Softball Team
Pitching Coach, Professional Women's Softball

**PROFESSIONAL ORGANIZATIONAL AFFILIATIONS**

American Alliance for Health, Physical Education, Recreation and Dance
National Association of Collegiate Women Athletics Administrators
Women's Sports International
The Drake Group and The Drake Group Education Fund

**HONORARY DEGREES**

Honorary Doctorate, Monmouth University, West Branch, New Jersey, May 20, 1998
Honorary Doctorate, Ripon College, Ripon, Wisconsin, May 16, 1998
Honorary Doctorate, St. Joseph's College, Hartford, Ct., September 14, 1994
Honorary Doctorate, United States Sports Academy, July 8, 1994
Honorary Doctorate as Outstanding Alumnus, Southern Connecticut State University, May 28, 1993
Ethics Fellow, Institute for International Sport, 1990

**HALL OF FAME AWARDS**

Women's Basketball Hall of Fame, 2023
Texas Sports Hall of Fame, 2011
Fairfield County (CT) Sports Hall of Fame, 2007
Public Schools Athletic League Hall of Fame Award, Brooklyn, NY, November 22, 2003
Verizon Academic All-American Hall of Fame, Cleveland, OH, June 28, 2003
Connecticut Women's Basketball Hall of Fame 16th Anniversary Induction, New Haven, CT, April 10, 2003
Connecticut High School Coaches Association Hall of Fame, Southington, CT, November 14, 2002
National Italian American Sports Hall of Fame, Inc., Chicago, IL, 2001
International Scholar-Athlete Hall of Fame, Institute for International Sport, Kingston, Rhode Island, June 27, 1999
Connecticut Women's Hall of Fame, 1995
Texas Women's Hall of Fame, 1987, by the Governor's Commission for Women
Communiplex National Women's Sports Hall of Fame, 1987, Cincinnati, Ohio
Southern Connecticut State University Alumni Sports Hall of Fame, 1986, SCSU Alumni Association
National Sport Hall of Fame, 1985, by the National Association for Sport and Physical Education
National Softball Hall of Fame, 1983, American Softball Association

## OTHER AWARDS AND HONORS

Lalia Rach Profile in Excellence Award, NYU Preston Robert Tisch Center for Hospitality, Tourism, and Sports Management Sports Business and Graduate Sports Business Societies, April, 2014

NCAA Gerald R. Ford Award, 2013, honors an individual who has provided significant leadership as an advocate for intercollegiate athletics over the course of his or her career

100 Most Influential Sports Educators in America, 2013

American Civil Liberties Union, Nine of the Most Influential Actors in Title IX's History, April, 2012

Elm City Legend, Connecticut March of Dimes, New Haven, CT, November, 2011

"The Champions:  Pioneers and Innovators in Sports Business" Award, Sports Business Journal/Sports Business Daily, March, 2010

Cal Ramsey Distinguished Lecturer in Sports Management, New York University, 2009

Sports Lawyers Association, 2008 Award of Excellence

Women in Sports Business Symposium 2008 Woman of the Year Award, University of Oregon Warsaw Center for Sports Marketing

Institute for International Sport, 100 Most Influential Sports Educators in America, 2007

Adelphi University Sports Leadership Institute, Community Leadership Award, 2007

New York Institute of Technology William T. "Buck" Lai Wonderful Life Achievement Award, June 21, 2007

Ithaca College Department of Sport Management and Media, Distinguished Sports Industry Leader Award, 2007

*The Sporting News,* "The 100 Most Influential People in Sport," 1997 (#67), 1996 (#46), 1995 (#41), 1994 (#43), 1993 (#62), 1992 (#72)

*College Sports*, "The 50 Most Influential People in College Sports," 1996-97 (#22) 1995-96 (#10),  1994-95 (#31)

International Olympic Committee Women and Sport Trophy, 2005

Miami-Dade Community College Honor Award, Champion of Equal Opportunity for Women in Sports and Education, 2005

Columbia-Barnard Athletic Consortium Award for Exemplary Contributions to the Advancement of Athletic Opportunities for Girls and Women, Feb. 6, 2004

Patsy Mink Memorial Title IX at 30 Award, National Association for Girls and Women in Sports, 2003

Women in Leadership Award, The Center for Women of NY, Elmhurst, NY, June 19, 2003

Jacobs Institute for Women's Health, Excellence in Women's Health Award, Washington, D.C., May 16, 2002

National Association of Collegiate Directors of Athletics (NACDA) 30th Anniversary of Title IX Award, 2002

United States Sports Academy Distinguished Service Award, 2001

International Olympic Committee, Women and Sport Achievement Award, 2000

San Antonio Sports Foundation Appreciation Award, 2000

The Feminist Majority Foundation Contribution Award "for unique contribution to the historic struggle for women's equality and human rights", 2000

Town of North Hempstead Recognition Award for Support of the Education and Assistance Corporation, 1999

Nassau County, State of New York, Special Commendation for Outstanding Service to Local Citizenry, 1999

National Association of Collegiate Women Athletic Administrators Honor Award for Outstanding Support of Women Athletes and their Sports, 1998

National Association of Sports Commissions Recognition Award, 1998

Sporting Goods Business Woman of the Year (Non-Profit Organization), 1998

Stamford Old Timers Athletic Association National Honoree, 1998

Women's Sports and Fitness Magazine, The 20 Most Influential Women in Sports, 1997

NCSC Lifetime Achievement Award, 1997

Girl Scouts of Nassau County Juliette Low Award of Distinction, 1996

New York State Public High School Association, Inspiration Award, Young Women in Sport Forum, April, 1995

Tennessee Lawyers Association for Women Recognition Award, 1995

NAFFY Award (National Association for Female Executives), 1995

King County and NYSAC Award for Contributions in Sports,, 1994

National Collegiate Athletic Association Silver Anniversary Award, 1993

**OTHER AWARDS AND HONORS (cont.)**

Dallas All Sports Association Distinguished Service Award, 1992
National Association for Girls and Women in Sports Guiding Woman in Sport Award, 1992
National Association of Collegiate Women Athletic Administrators, District 7 NACWAA
 Administrator of the Year, 1992 and 1991
National Association for Girls and Women in Sport Guiding Woman in Sport Award, 1992
Recipient of the 1987 Flo Hyman Memorial Gazelle Award "to honor a person who exemplifiesfeminist
 values in athletics and scholarship."  Presented by the Project on Equal Education Rights of the NOW
 Legal Defense and Education Fund, 1987.
Margaret C. Berry Award for Outstanding Contribution to Student Life, 1985, by the Eyes of Texas

**LEADERSHIP EXPERIENCE**

*Current:*
 Member, Past-President, Board of Directors, The Drake Group (2015 to 2024t)
 Member, Board of Directors, The Drake Group Education Fund (2024 to present)
 Member, Advisory Board, Fishlinger Center for Public Policy Research, College of Mount St. Vincent
  (2015 to present)
 Member, Advisory Board, The Drake Group, (2010 to 2015)
 Member, Advisory Board, Champion Women (2015-present)
 Member, Advisory Board, Sports Law Institute, Vermont Law School (2013 to present)
 Member, Advisory Board, Friends of the Tisch Center – Sports (2011 to present)
 Member, Advisory Board, Center for Research on Sport & Physical Activity, D'Youville College (2010
  to present)
 Member, Foundation for Global Sports Development (formerly Justice for Athletes), Advisory Board
  (2005 to present)
 Member, Advisory Board PowerPlay NYC, (2001 to present)
 Member, Advisory Board of the MBA in Sport Management, Florida Atlantic University (2000 to present)
 Member, Committee of Advisors, Positive Coaching Alliance (1999 to present)
*Past:*
 Member, Editorial Advisory Board of *Athletic Business* (1997 to 2015)
 Member, National Honors Committee of The National Women's Hall of Fame (1994 to 2015)
 Chair, International Baseball Federation (IBAF) Women's Baseball Committee (2009)
 Member, Advisory Board, 2003 World Congress of Sports
 Member, The ESPY Academy, (2002 to 2004)
 Member, United States Olympic Committee Board of Directors, Public Sector member (2000 to 2004)
 National Gambling Task Force, National Association of Student Personnel Administrators (1999)
 Member, Major League Golf Advisory Board (1999)
 Member, 1999 FIFA Women's World Cup Advisory Board (1997)
 Member, Advisory Board of SportsBridge (1997)
 Member, Nassau County (NY) Sports Commission (1995 to 2007)
 Member, Sara Lee Frontrunners Award Selection Committee, (1995-2000)
 Member, National Advisory Board to the National Consortium for Academics and Sports (1993 to
  2004)
 Editorial Board, *Training Table* magazine, United States Sports Academy (1993)
 Advisory Board, *Fitness* magazine (1993-2000)
 ESPN American Sports Awards, Select Nominating Committee (1992-2000)
 SMART Eureka Advisory Board (1992-1998)
 NCAA Gender Equity Task Force (1992 to 1993)
 NACDA Foundation Blue Ribbon Review Committee, (1992)
 Ethics Fellow, Institute for International Sport (1990 to 1998)
 Member, Southern Association of Colleges and Schools Commission on Colleges Committee on
  Intercollegiate Athletics (1990-91)
 Babe Zaharias Award Selection Committee (1990)
 Chair, Education Division of Capital Area United Way (1990)
 Member, National Advisory Board of the Center for the Study of Sport in Society (1989 to 2008)
 Member, Advisory Board, Center for Athletes' Rights and Education (1989 to 2003)
 Chair, NCAA Legislative Review Committee (1989-1992)
 Member, NCAA Cost Reduction Committee (1989-90)

## LEADERSHIP EXPERIENCE (cont.)

*Past (cont.)*

Chair, National Association of Collegiate Women Athletic Administrators Television Committee (1988 to 1992)
Member, Executive Committee, Project Fair Play of Texas (1988-92)
Member, Future Directions Committee, University of Texas Ex-Students' Association (1988-90)
Member, Sports Foundation Feasibility Committee of the Austin Chamber of Commerce (1988-89)
Member, Community Advisory Board for Austin's Ronald McDonald House (1987-1992)
Trustee, Women's Sports Foundation (1987-1991)
Member, Council of Collegiate Women Athletic Administrators Legislation Committee (1986 to 1992)
Member, Board of Directors of the Women's Advocacy Project (1986-1992)
Member, NCAA Manual Revision and Deregulation Committee (1986-89)
Member, Executive Committee of the Texas University Interscholastic League (1986-88)
Member, City of Austin Parks and Recreation Board (1986)
Member, Board of Governors of the Texas Foundation for Intercollegiate Athletics for Women (1984-92)
Member, United States Olympic Development Committee (1984-88)
President, Association for Intercollegiate Athletics for Women (AIAW) (1981)
President-Elect, Association for Intercollegiate Athletics for Women (1980)
Past-President, Association for Intercollegiate Athletics for Women (1982)
President, Southwest Association for Intercollegiate Athletics for Women (1980)
President-Elect, Southwest Association for Intercollegiate Athletics for Women (1979)
Consultant to Office of Civil Rights, U.S. Department of Education on Title IX Investigations of Athletic Programs (1979)
Investigator, American Council on Education Study of the Financial Problems of Intercollegiate Athletics (1978-79)
Member, AIAW Ethics and Eligibility and Eligibility Committee (1978)
Chair, AIAW Television Committee (1976-77)
Chair, AIAW President's Summit Conference on Intercollegiate Athletics (1976)
Member, NAGWS Development Committee (1975-76)
Member, AIAW Restructure Committee (1975)
Chair, AAHPERD/DGWS Softball Guide Committee (1974-76)
Member, Eastern Association of Intercollegiate Athletics for Women Volleyball Committee (1974-76)
Member, AAHPERD Secondary Physical Education Commission Ad Hoc Committee for the Development of a Secondary Physical Education Program Assessment Instrument (1974-75)
Chair, United States Collegiate Sports Council Volleyball Committee (1973-75)
Director, National Softball Program, Italian Olympic Committee (1973-75)
Chair, AAHPERD/DGWS Softball Examinations and Rating Committee (1973-75)
Chair, New York State Association for Intercollegiate Athletics for Women's Volleyball Sport Committee (1972-74)

## EXPERT WITNESS/CONSULTANT – LAWSUITS

*Association for Intercollegiate Athletics for Women v. National Collegiate Athletic Association* (antitrust), 735 F.2d 577 (D.C. Cir. 1984)
*Bowers v. Baylor University (*employment discrimination/Title IX), 862 F. Supp. 142 (W.D. Tex. 1994)
*Pederson v. Louisiana State University* (Title IX), 912 F. Supp. 892 (M.D. La. 1996)
*Stanley v. University of Southern California* (employment discrimination), 13 F.3d 1313 (9th Cir. 1994)
*Roberts v. Colorado State University* (Title IX)*,* 814 F. Supp. 1507 (D. Colo. 1993)
*Rachel Sanders et al v. University of Texas at Austin* (Title IX), settled out of court
*Cohen v. Brown University* (Title IX)*,* 879 F. Supp. 185 (D.R.I. 1995)
*Tyler v. Howard University* (employment/Title IX)*,* No. 91-CA11239 (D.C. Super. Ct. 1993).
*Weaver v. Ohio State University* (employment/Title IX)*,* 71 F. Supp. 2d 789 (S.D. Ohio 1998)
*Haffer v. Temple University* (Title IX), 678 F. Supp. 517 (E.D. Pa. 1988)
*Blair v. Washington State University* (Title IX), 108 Wn.2d 558 (Wash. 1987)
*Perdue v. City University of New York* (employment discrimination), 13 F. Supp. 2d 326 (E.D.N.Y. 1998)
*Vicki Dugan v. Oregon State University* (employment discrimination/Title IX) 1999, settled out of court
*Law v. National Collegiate Athletic Ass'n* (employment discrimination), 5 F. Supp. 2d 921 (D. Kan. 1998)

## EXPERT WITNESS/CONSULTANT – LAWSUITS (cont.)

*Lowrey v. Texas a & M University System* (employment discrimination/Title IX), 11 F. Supp. 2d 895 (S.D. Tex. 1998)

*Grandson v. University of Minnesota* (Title IX), 272 F.3d 568 (8th Cir. 2001)

*Alston v. Virginia High School League Inc.* (girls playing in non-traditional seasons), 144 F. Supp. 2d 526 (W.D. Va. 1999)

*Daniels v. School Bd. of Brevard County* (Title IX facilities and benefits), Fla., 995 F. Supp. 1394 (M.D. Fla. 1997)

*Baca v. City of Los Angeles* (city recreational facilities), settled out of court

*Communities for Equity v. Michigan High School* (non-traditional seasons), 178 F. Supp. 2d 805 (W.D. Mich. 2001)

*Mason v. Minnesota State High School League* (Title IX facilities), Civil No. 03-6462 (JRT/FLN) (D. Minn. Jul. 15, 2004)

*Humphreys v. Regents of University of California* (employee sex discrimination), No. C 04-03808 SI (N.D. Cal. Feb. 13, 2006)

*Burch v. Regents of University of California* (Title IX – retaliation against coaches), 433 F. Supp. 2d 1110 (E.D. Cal. 2006)

*Mansourian v. Regents of the Univ. of California* (Title IX – retaliation against coaches), No. CIV S-03-2591 KJM-EFB (E.D. Cal. Nov. 2, 2011)

*Ollier v. Sweetwater Union High Sch. Dist.* (Title IX), 858 F. Supp. 2d 1093, 284 Ed. Law Rep. 299 (S.D. Cal. 2012)

*Biediger v. Quinnipiac University* (Title IX – roster management), 616 F. Supp. 2d 277 (D. Conn. 2009) multiple cases

*Bull v. Bd. of Trs. of Ball State Univ.* (Title IX – retaliation against coaches), 1:10-cv-00878-JMS-TAB (S.D. Ind. May. 2, 2012)

*Bigge et al v. District School Board of Citrus County, Florida* (Title IX - retaliation against parents)*, No. 5:2013cv00049 - Document 85 (M.D. Fla. 2015)

*Brenny v. Bd. of Regents of the Univ. of Minn.* (Title IX – gender and sexual discrimination), 813 N.W.2d 417, 279 Ed. Law Rep. 1209 (Minn. Ct. App. 2012)

*Videckis v. Pepperdine University* (Title IX – sexual harassment/sexual orientation*), 150 F. Supp. 3d 1151 (C.D. Cal. 2015)

*Meyer v. The University of Iowa* (Title IX – gender and sexual discrimination), (2017) settled out of court

*Working v. Lake Oswego Sch. Dist.* (Title IX – athletics), No. 3:16-cv-0581-SB (D. Or. Jul. 19, 2017)

*B.W. v. Black Hills Football* Club (Title IX – sexual harassment), (2017) settled out of court

*T.S. v. Red Bluff Joint Union High Sch. Dist.* (Title IX – athletics), No. 2:17-cv-00489-TLN-EFB (E.D. Cal. Jul. 10, 2017)

*Miller v. Bd. of Regents of Univ. of Minn.* (Title IX – gender and sexual discrimination), Case No. 15-CV-3740 (PJS/LIB) (D. Minn. Feb. 1, 2018)

*Hudson v. California State University* (Title IX – gender, employment), (2018) settled out of court

Post 2018

*Robb v. Lock Haven Univ. of Pa.* (Title IX – athletics), No. 4:17-CV-00964 (M.D. Pa. May. 7, 2019)

*Portz v. St. Cloud State Univ.* (Title IX – athletics participation), 401 F. Supp. 3d 834 (D. Minn. 2019)

*C.B.. v. Black Hills Football* Club (Title IX – sexual harassment), (2019) settled out of court

*Howard v. William Jessup University* (Title VI and IX – employment), No. 2: 17-cv-00756-WBS-KJN (E.D. Cal. Aug. 14, 2019).

*A.B by C.B v. Hawaii State Department of Educ.*, 386 F. Supp. 3d 1352 (D. Haw. 2019). (Title IX – athletics)

*Ohlensehlen v. University of Iowa*, 509 F. Supp. 3d 1085 (S.D. Iowa 2020). (Title IX-athletics participation)

*Radwan v. Univ. of Conn. Bd. of Trs.* (Title IX – athlete treatment), 465 F. Supp. 3d 75 (D. Conn. 2020)

*Kenny v. University of Delaware*, No. 19-3818 (3d Cir. Aug. 19, 2020). (Title IX – athletics/employment)

*Griesbaum v. The University of Iowa* (Title IX – gender and sexual discrimination), (2021) settled out of court

*Gordon v. Jordan Sch. Dist.*, 522 F. Supp. 3d 1060 (D. Utah 2021) (Title IX – athletics participation)

*Cohen v. Brown University*, No. 21-1032 (1st Cir. Oct. 27, 2021). (Title IX – athletics participation)

*Balow v. Michigan State University*, No. 1: 21-cv-44 (W.D. Mich. Feb. 19, 2021). (Title IX – athletic participation)

**EXPERT WITNESS/CONSULTANT – LAWSUITS (cont.)**

*Anders v. California State University*, No. 1: 21-cv-00179-AWI-BAM (E.D. Cal. July 16, 2021). (Title IX –
       athletic participation)

*Lazor v. University of Connecticut*, No. 3: 21-cv-583 (SRU) (D. Conn. May 26, 2021). (Title IX – athletic
       participation)

*McGowan v. Southern Methodist University*, Civil Action No. 3: 18-CV-141-N (N.D. Tex. May 6, 2020).
       (Title IX – benefits and treatment; negligence)

Jackson Leech et al v. Clemson University, et al. (2021) ((Title IX – athletics participation)

Jennifer L. Calloway and Brad Calloway v. University of South Carolina-Upstate (2021) (Title IX
       Retaliation)

Carnell, Amy v. Michael Koslosky, Sound Football Club, Northwest Nationals and the Washington State
       Youth Soccer Association (2020) Superior Court of the State of Washington, King County (sexual
       assault of minor)

Niblock, Elizabeth v. University of Kentucky, Mitch Barnhart and Eli Capilouto. (2020) U.S. District Court,
       Eastern District of Kentucky, Lexington Central Division (Title IX – athletics participation)

Geathers, Robert v. NCAA, Court of Common Pleas of Orangeburg Cty., South Carolina (2021)
       (concussion)

Schweyen, Shannon v. University of Montana, United States District Court for the District of Montana,
       Missoula Division (2021) (employment)

Navarro, Joshua, et. al. vs. Florida Institute of Technology, United States District Court Middle District of
       Florida (2022) (esports, Title IX)

Rice, Abigail M. vs. Black Hlls Football Club, Superior Court of the State of Washington for Thurston
       County (2023)

Widmark, Scott as parent of M.W. v. Highland Centrat School District (2023)

---

**CONGRESSIONAL TESTIMONY**

"Statement of Donna A. Lopiano Before Subcommittee on Post Secondary Education of the Committee
on Education and Labor, U.S. House of Representatives, *Hearings on the Roles of Athletics in College
Life*, May 18, 1989.

"Statement of Donna A. Lopiano, Women's Athletic Director of the University of Texas at Austin,"
*Prohibition of Sex Discrimination: Hearings on S.2106* Before the Subcommittee on Education of the
Senate Committee on Labor and Public Welfare, 94th Congress, First Session (1975), (Washington, D.C.-
U.S. Government Printing Office), pp. 105-113, 115-136.

---

**PUBLICATIONS**
**Books and Book Chapters**

Lopiano, D. and C. Zotos (2020) *Restructuring A College Athletic Program to Protect Olympic Sports
During Financial Uncertainty*. Champaign, IL: Human Kinetics.

Lopiano, D. (2020) "Title IX and Gender Equity in Athletics" and "Athletics Liability". Vector Solutions
SafeColleges and SafeSchools Online Training Courses. See: https://www.vectorsolutions.com/course-
details-edu/title-ix-and-gender-equity-in-athletics/ss-staff/course-gender_equity_athletics and
https://www.vectorsolutions.com/course-details-edu/athletic-liability/ss-staff/course-athletic_liability

Lopiano, D., Gurney, G., Lopiano, D. and Zimbalist, A. (2017) *Unwinding Madness: What Went Wrong
with College Sports and How to Fix It*. The Brookings Institution: Washington, DC.

Lopiano, D. (2015) The roots of corruption in US collegiate sport. Global Corruption Report: Sport.
Transparency International. Routledge: London/New York

Lopiano, D. and C. Zotos (2015) "Athlete welfare and protection policy development in the USA" in
*Safeguarding, Child Protection and Abuse in Sport: International perspectives in research, policy and
practice* edited by Melanie Lang and Mike Hartill, London and New York: Routledge, pp. 97-106.

Lopiano, D. and C. Zotos (2013) *Athletic Director's Desk Reference*. Champaign, IL: Human Kinetics.
Lopiano, D. (2006) "Gender and Sport" in *New Game Plan for College Sport* edited by Richard E.
Lapchick, American Council on Education and Praeger Publishing, pp. 127-155.

**PUBLICATIONS**
**Books and Book Chapters (cont.)**

*The Baseball-Softball Playbook* with Ron Polk, Ron Polk, Mississippi State University, 1980.

*The Money Game*: *Financing Collegiate Athletics* with Robert H. Atwell and Bruce Grimes, American Council on Education, Washington, D.C., 1980.

**PUBLICATIONS**
**Research Reports, Handbooks, Training Programs**

Lopiano, Donna, Willingham, Mary, Pierpont, Wendy, Jackson, Jennifer, Blade, Janet, Rubin, Lisa M., Collins, Phyllis, Gill, Emmett, Smith, Bruce, and Cole, Brendan. (2024) Improving Academic Outcomes in NCAA Division I Revenue Sports and HBCU Limited Resource Athletic Programs. The Drake Group Education Fund. https://www.thedrakegroupeducationfund.org/positions-issues/official-positions/

Gill, E., Lopiano, D., Smith, B., Sommer, J., Gurney, G., Lever, K., Porto, B., Ridpath, D.B., Sack, A., Thatcher, S.,and Zimbalist, A. (2021) The Drake Group Position Statement: A Continuing Disgrace – Intercollegiate Athletics Race Issues. Retrieve at: https://www.thedrakegroupeducationfund.org/wp-content/uploads/2021/09/FINAL-RACE-PAPER.pdf

Brian Porto, Gerald Gurney, Donna Lopiano, Mary Willingham, B. David Ridpath, Allen Sack, and Andrew Zimbalist. (2019) *The Drake Group Position Statement:  Congress Granting a Limited Antitrust Exemption to the NCAA and Its Member Institutions.*  Retrieve at: https://www.thedrakegroupeducationfund.org/2013/06/04/congress-granting-a-conditional-limited-antitrust-exemption-to-the-ncaa-and-its-member-institutions/ This paper was originally issued on June 1, 2015 and revised on October 4 and 28, 2019, February, 2023).

"The Drake Group Position Statement: *A Critical Analysis of Proposed Models of College Athlete Compensation.*" February, 2019 with Gerald Gurney, Fritz Polite, David B. Ridpath, Allen Sack, Sandy Thatcher, Andrew Zimbalist.  *TheDrakeGroup.org.* Retrieve at: http://thedrakegroupeducationfund.org/

"The Drake Group Position Statement:  *College Athlete Codes of Conduct and Issues Related to Freedom of Speech and Expression,*" November 2018 with Sanford G. Thatcher, Brian Porto, Gerald Gurney, Fritz Polite, B. David Ridpath, Allen Sack, and Andrew Zimbalist.  *TheDrakeGroup.org.  Retrieve at*: http://thedrakegroupeducationfund.org.

Donna Lopiano, Brian Porto, Gerald Gurney, B. David Ridpath, Allen Sack, Mary Willingham, and Andrew Zimbalist, (2017) *The Drake Group Position Statement: Compensation of College Athletes Including Revenues Earned from Commercial Use of Their Names, Images and Likenesses and Outside Employment.*  (March 24, 2015, Revised February 12, 2016, December 2, 2017, December 27, 2017, September 27, 2019 and October 14, 2019).  Retrieve at: https://www.thedrakegroupeducationfund.org/2019/10/14/compensation-of-college-athletes-including-revenues-earned-from-commercial-use-of-their-names-images-and-likenesses-and-outside-employment/

Donna Lopiano, Janet Blade, Gerald Gurney, Sheila Hudson, Brian Porto, Allen Sack, David Ridpath and Andrew Zimbalist  (2019) The Drake Group Position Statement:  *College Athlete Health and Protection from Physical and Psychological Harm.*  (October 1, 2019).  Retrieve at: https://www.thedrakegroupeducationfund.org/wp-content/uploads/2019/10/FINAL-Athlete-Health-and-Protection-Position-Paper.pdf

The Drake Group Position Statement: *Athletic Governance Organization and Institutional Responsibilities Related to Professional Coaching Conduct.*  December, 2016  with Gurney, G., Polite, F., Porto, B., Ridpath, D.B., Sack, A., and Zimbalist, A. (2016) Retrieve at:  http://thedrakegroupeducationfund.org/

**PUBLICATIONS**
**Research Reports, Handbooks, Training Programs (cont.)**

"The Drake Group Position Statement: Institutional Integrity Issues Related to Athlete Sexual Misconduct and Other Forms of Violence." May, 2020 revised; August, 2016 with Gurney, G., Porto, B., Ridpath, D.B., Sack, A., Sommer, J., Willingham, M., and Zimbalist, A. *TheDrakeGroup.org*. Retrieve at: https://www.thedrakegroupeducationfund.org/2016/09/11/institutional-integrity-issues-related-to-college-athlete-sexual-assault-and-other-forms-of-serious-violence/

"The Drake Group Position Statement: *Why the NCAA Academic Progress Rate (APR) and Graduation Success Rate (GSR) Should Be Abandoned and Replaced with More Effective Academic Metrics*." October, 2015 with Gurney, G., Snyder, E.,Willingham, M., Meyer, J., Porto, B., Ridpath, D.B., Sack, A., and Zimbalist, A. *TheDrakeGroup.org*, Retrieve at: https://thedrakegroupeducationfund.org/2015/06/07/drake-group-questions-ncaa-academic-metrics/

"The Drake Group Position Statement: *Rights of College Athletes*." June 4, 2015 with Gurney, G., Willingham, M., Meyer, J., Porto, B., Ridpath, D.B., Sack, A., and Zimbalist, A. *TheDrakeGroup.org.,* Retrieve at: https://thedrakegroupeducationfund.org/2015/06/05/rights-of-college-athletes/

"The Drake Group Position Statement: *Excessive Athletics Time Demands Undermine College Athletes' Health and Education and Required Immediate Reform*." July, 2016 with Gurney, G., Sack, A., Meyer, J., Porto, B., Ridpath, D.B., Willingham, M., and Zimbalist, A. *TheDrakeGroup.org* Retrieve at: https://thedrakegroupeducationfund.org/2016/08/04/drake-group-urges-significant-changes-to-reduce-athlete-time-demands/

"The Drake Group Position Statement: Compensation of College Athletes Including Revenues from Commercial Use of Their Names, Likenesses, and Images" March 24, 2015; Revised February 12, 2016 with Porto, B., Gurney, G., Ridpath, D.B., Sack, A., Willingham, M., Zimbalist, A. *TheDrakeGroup.org* Retrieve at: https://thedrakegroupeducationfund.org/2015/06/08/position-statement-032615/

"The Drake Group Position Statement: Freshmen Ineligibility in Intercollegiate Athletics." April 20, 2015 with Gurney, G., Willingham, M., Porto, B., Ridpath, D.B., Sack, A., and Zimbalist, A. *TheDrakeGroup.org.* Retrieve at: https://thedrakegroupeducationfund.org/2015/04/20/freshmen-ineligibility-proposals/

"The Drake Group Position Statement: Student Fee Allocations to Fund Intercollegiate Athletics." March 2, 2015 with Ridpath, D.B., Porto, B., Gurney, G., Sack, A., Willingham, M., and Zimbalist, A. *TheDrakeGroup.org* Retrieve at: https://thedrakegroupeducationfund.org/2015/06/06/studentfeeinstitutionalsubsidy/

"The Drake Group Position Statement: Guidelines for Academic Integrity in Athletics." October 28, 2014 with Gurney, G., Sack, A., Willingham, M., Porto, B., Ridpath, D.B., and Zimbalist, A. *TheDrakeGroup.org.* Retrieve at: https://thedrakegroupeducationfund.org/2012/03/06/the-drake-group-issues-guidelines-for-academic-integrity-in-athletics/

Lopiano, D., Fortunato, J, Hogshead-Makar, N. and Starr, K. (2012) Safe4Athletes Handbook: Local Sport Club Policies and Procedures to Provide Athletes with a Safe and Positive Environment Free of

Sexual Abuse, Bullying and Harassment. Safe4Athletes.org  See:  http://safe4athletes.org/4-clubs/model-policy

M. Snyder and L. Zurn. (2007). The Women's Sports Foundation Report: The Status of Female Youth Health and Physical Activity in the Boston Metropolitan Area. East Meadow, NY: Women's Sports Foundation.

Lopiano, D. and Lakowski, T. (2006). *Increasing Youth Sports & Physical Activity Participation: A Women's Sports Foundation Public Policy Guide*. East Meadow, NY: Women's Sports Foundation.

## PUBLICATIONS
**Research Reports, Handbooks, Training Programs (cont.)**

Lopiano, D.  (2002)  Advocating for Gender Equality in Sport:  The Experience of the Women's Sports Foundation in the United States.  A Guide and Education Kit.  Women's Sports Foundation, East Meadow, NY.

Lopiano, D. and C. Zotos. (2001)  Women's Sports Foundation Education Guide:  Special Issues for Coaches of Women's Sports.  East Meadow, NY:  Women's Sports Foundation.

"Women's Sports:  Coming of Age in the Third Millennium", in *The Olympics at the Millennium:  power, politics, and the games*, edited by Kay Schaffer and Sidonie Smith, Rutgers University Press, pp. 117-127, 2000.

"Gender Equity in Sports" in *Medical and Orthopedic Issues of Active and Athletic Women*, edited by Rosemary Agostini, M.D., Hanilye & Belfus, Inc., Philadelphia, PA, pp. 13-22, 1994.

"Modern Athletics:  The Pressure to Perform," with Connee Zotos in *Eating, Body Weight, and Performance in Athletes:  Disorders of Modern Society,* 1991.

"Equity Issues and Policy Problems in Women's Intercollegiate Athletics" with Connee Zotos in *The Rules of the Game:  Ethics in College Sport*, edited by Richard Lapchick and John Slaughter, McMillan, 1989.

"A Political Analysis of the Possibility of Impact Alternatives for the Accomplishment of Feminist Objectives Within American Intercollegiate Sport," *Fractured Focus:  Sport as a Reflection of Society*, Richard E. Lapchick, editor.  Lexington, MA:  Lexington Books, 1986.

*Coaching Clinic* with David Pierce, Canadian Amateur Softball Association, Ottawa, Ontario, 1974.

"Equity in Women's Sports:  A Health and Fairness Perspective", *Clinics in Sports Medicine:  The Athletic Woman*, Vol. 13, No. 2, April, 1994, pp. 281-296.

"Colleges Can Achieve Equity in College Sports," *Texas Entertainment and Sports Law Journal*, Volume 3, No. 1, Spring, 1993, pp. 6-8.

"Recruiting, Retention and Advancement of Women in Athletics, Coaching and Administration" in *Perspectives:  Journal of the Western Society for Physical Education of College Women*, Volume 12, 1992, pp. 5-11.

"Perceived Problems and Sources of Dissatisfaction for Coaches of Women Sports, with Dorothy J. Lovett and Carla Lowry  in*" The Applied Research in Coaching and Athletics Annual 1991*, March 1991, pp. 207-241.

"The Good News/Bad News About Women's Athletics," *Southern Feminist*, Vol. 4, No. 2, Spring, 1987.
"Statement of Donna A. Lopiano Before Subcommittee on Commerce, Consumer Protection, and Competitiveness, U.S. House of Representatives, February 17, 1993".

## PUBLICATIONS
**Journal Articles**

"Re-Affirming the Value of the Sports Exception to Title IX's General Non-Discrimination Rule" with Doriane Lambelet Coleman and Michael J. Joyner.  Duke Journal of Gender Law & Policy, March, 2020

"Fixing enforcement and due process will not fix what Is wrong with the NCAA."  *Roger Williams University Law Review,* 20:2, Spring, 2015, pp. 250-291.

"It's Time for the NCAA and Other Educational Sport Governance Organizations to Get Serious about Gender Equity".  *Journal of Physical Education, Recreation and Dance, Vol. 85, No. 2, February, 2014.*

"Time for a Sport Sex-Discrimination Uprising of a Different Sort".  *Journal of Physical Education, Recreation and Dance, Vol. 84, No. 1, January, 2013.*

**PUBLICATIONS**
**Journal Articles (cont.)**

"Women's Impact on Sport", in *Perspectives, 2001, The Multidisciplinary Series of Physical Education and Sport Science, Volume 3, The Business of Sport,* edited by Darlene Kluka and Guido Schilling, Oxford:  Meyer & Meyer Sport (UK) Ltd., 2001, pp. 131-142.

**PUBLICATIONS**
**Editorials, Opinion, Business Magazine and .com Articles**

Lopiano, Donna. (2024) The NCAA "Rich Institution" Subdivision – Will Baker Address the Embarrassing Absence of Higher Education Leadership? January 1, 2024. *Forbes.com.*  Retrieve at: https://www.forbes.com/sites/donnalopiano/2024/01/01/the-ncaa-rich-institution-subdivision--will-baker-address-the-embarrassing-absence-of-higher-education-leadership/?sh=64fd57823eeb

Lopiano, Donna (2024)  College Athletes Will Not Become "Employees" Tomorrow *Forbes.com.*  January 3, 2024. Retrieve at: https://www.forbes.com/sites/donnalopiano/2024/01/03/why-college-athletes-will-not-become-employees-tomorrow/?sh=639000685c75

Lopiano, Donna and Mariah Burton Nelson. (2022) A Fair and Inclusive Solution for Transgender Women in Sports.  August 4, 2022. *Forbes.com.*  Retrieve at:  https://www.forbes.com/sites/donnalopiano/2022/08/04/a-fair-and-inclusive-solution-for-transgender-women-in-sports/?sh=2b24cb3712ef

Lopiano, Donna. (2022) Why the NCAA's Transgender Eligibility Policy is Outdated – And How It Can Be Fixed.  January 5, 2022. . *Forbes.com.*  Retrieve at:  https://www.forbes.com/sites/donnalopiano/2022/01/05/ncaa-transgender-eligibility-policy-creates-major-controversy-in-womens-swimming/?sh=1fb6a8243d10

Donna Lopiano and Andrew Zimbalist. (December 20, 2020) The NCAA Sports Model is Broken and It's Time for Congress to Step In.  *Forbes.com.*  Retrieve at:  https://www.forbes.com/sites/andrewzimbalist/2019/12/20/the-ncaa-sports-model-is-broken-and-its-time-for-congress-to-step-in/?sh=734fbf23d09c

Donna Lopiano and Andrew Zimbalist. (December 13, 2020) The Knight Commission's Plan to Reform College Sports Doesn't Go Far Enough;  Here's Where It Falls Short.  *Forbes.com.*  Retrieve at:  https://www.forbes.com/sites/andrewzimbalist/2020/12/13/whats-right-and-whats-wrong-with-the-knight-commission-reform-plan/?sh=6a32275a375e

Donna Lopiano. (October 4, 2020) Why Cutting College Sports Programs is a Bad Idea – Especially Now. *Forbes.com.*  Retrieve at: https://www.forbes.com/sites/donnalopiano/2020/10/04/why-cutting-college-sports-programs-is-a-bad-idea--especially-now/#4a237ea053fd

Donna Lopiano and Andrew Zimbalist. (September 15, 2020) Message to Congress on NCAA Reform: NIL Income Yes, Cash Income No.. *Forbes.com.*  Retrieve at:  https://www.forbes.com/sites/andrewzimbalist/2020/09/15/message-to-congress-on-ncaa-reform-nil-income-yes-cash-income-no/#5692ad6617fc

Donna Lopiano. (August 5, 2020) College Athletics Minority Hiring Initiatives Long Past Due. *Forbes.com.*  Retrieve at:  https://www.forbes.com/sites/donnalopiano/2020/08/05/college-athletics-minority-hiring-initiatives-long-past-due/#43cb77e45774

**PUBLICATIONS**
**Editorials, Opinion, Business Magazine and .com Articles (cont.)**

Donna Lopiano. (August 1, 2020) State High School Organizations Should Have Proper Resources Before Supporting Esports? *Forbes.com.* Retrieve at:
https://www.forbes.com/sites/donnalopiano/2020/08/01/state-high-school-organizations-should-have-proper-resources-before-supporting-esports/#7a2871c6259c

''Donna Lopiano and Andrew Zimbalist. (June 28, 2020) Theatre of the Absurd and Immoral:  College Football 2020. *Forbes.com.* Retrieve at:
https://www.forbes.com/sites/andrewzimbalist/2020/06/28/theater-of-the-absurd-and-the-immoral-college-football-2020/#251d353622e5

Donna Lopiano and Andrew Zimbalist. (June 13, 2020) Has Higher Education Lost Its Mind? *Forbes.com.* Retrieve at:  https://www.forbes.com/sites/andrewzimbalist/2020/06/13/has-higher-education-lost-its-mind/#52e78c7a39c0

Gerald Gurney, Donna Lopiano, Andrew Zimbalist.  *(April 25, 2020) Sports Hiatus Gives NCAA An Opportunity to Rethink the Structure of College Sports.*  Forbes.com.  Retrieve at:
https://www.forbes.com/sites/andrewzimbalist/2020/04/25/sports-being-on-hiatus-gives-ncaa-an-opportunity-to-rethink-the-structure-of-college-sports/#6a38d2a93b54

Donna Lopiano and Andrew Zimbalist.  (December 20, 2019)  *The Collegiate Sports Model Is Broken:  It's Time for Congress to Step In.*  Forbes.com  Retrieve at:
https://www.forbes.com/sites/andrewzimbalist/2019/12/20/the-ncaa-sports-model-is-broken-and-its-time-for-congress-to-step-in/#487a474c3d09

Ridpath, D., G. Gurney and D. Lopiano. *Presidents Choose to Enable Academic Fraud in Athletics. Journal of NCAA Compliance.* July-August, 2019.  Hackney Publications.

"The Drake Group Calls Upon the NCAA, Its Member Institutions and Higher Education Regional Accreditation Agencies to Fulfill Athlete Academic Protection Responsibilities."  April 16, 2015 with Gurney, G , Porto, B., Ridpath, D.B., Sack, A., Willingham, M., Zimbalist, A.  *TheDrakeGroup.org* Retrieve at:  https://thedrakegroup.org/2015/06/02/academic-protection-responsibilities/

"The Drake Group Position Statement: Fixing the Dysfunctional NCAA Enforcement System."  April 7, 2015 with Porto, B., Gurney, G., Ridpath, D.B., Sack, A., Willingham, M., Zimbalist, A. *TheDrakeGroup.org.*  Retrieve at:  https://thedrakegroup.org/2015/06/03/drake-group-addresses-dysfunctional-ncaa-enforcement-system/

"The Drake Group Position Statement: Establishment of a Presidential Commission on Intercollegiate Athletics Reform."  March 31, 2015; revised February 12, 2016 with Gurney, G., Porto, B., Ridpath, D.B., Sack, A., Willingham, M., and Zimbalist, A.  *TheDrakeGroup.org*  Retrieve at:
https://thedrakegroup.org/2015/06/09/bill-to-establish-a-presidential-commission/

"Don't Reform the NCAA - Replace It".  *Inside Higher Education.com, September 11, 2014 with Gerald Gurney available at:  https://www.insidehighered.com/views/2014/09/11/ncaa-cant-be-reformed-congress-should-replace-it-essay*

"Big Five Power Grab".  *Chronicle of Higher Education.com, June 19, 2014* with B. Porto, D. Ridpath, A. Sack, M. Willingham, A. Zimbalist available at:
 http://chronicle.com/article/The-Big-Five-Power-Grab-/147265/?cid=pm&utm_source=pm&utm_medium=en

"Time for a Sport Sex-Discrimination Uprising of a Different Sort".  *Journal of Physical Education, Recreation and Dance.*  Vol. 84, Issue 1, 2013 available at
http://www.tandfonline.com/eprint/yeQmfD7xdPWszEHpJAag/full

**PUBLICATIONS**
**Editorials, Opinion, Business Magazine and .com Articles (cont.)**

"With the Olympic Games Around the Corner, Coaches Need a Wake-Up Call".  *Sports Litigation Alert.*  Volume 9, Issue 13 July 27, 2012.  hhackney@hackneypublications.com

"Consider a Policy for Medical Screening, Records, Emergencies".  *Legal Issues in Collegiate Athletics.*  April, 2012, 13:6, pp. 7-8.

"Recommended Actions in Response to April 4, 2011 OCR Sexual Harassment and Sexual Violence Guidance", *At Issue: A Risk Management Newsletter for Elementary and Secondary Schools,* Fall, 2011, Uniondale, NY: Wright Risk Management America. 10, pp. 30-32.

"Their Lives May Depend on It", in *The Chautauqua Daily*, June 24, 2008, Chautauqua, NY, p. 3.

"Fair Play", in *Southern Alumni Magazine, 2003, A Publication for Alumni and Friends of Southern Connecticut State University*,  New Haven, CT, pp. 21-22, 31.

"College Football Woes Not the Fault of Title IX", in *Sports Business Journal*, October 21, 2002, p. 28.

"Title IX Turns 30" in *ABC News.co*m, July 1, 2002.

"Sex May Sell, But Sexism Sells Women Short", in *Sports Business Journal*, February 4, 2002..

"Look Around…What Can You Do To Remind Others of Women/Sports Day?", in *Sports Business Journal*, January 15, 2001, p. 46.

"The Soul of Women's Sports Comes Cloaked in Diverse Bodies", in *Sports Business Journal*, February 19, 2001, p. 46.

"…No Answer Except, 'You Weren't Picked Because You Are A Girl'", in *Sports Business Journal*, March 26, 2001, p. 50.

"It's Time for Straight Talk About Title IX", in *Sports Business Journal*, April 30, 2001, p. 33

"Division I Cranks Up A Sports 'Arms Race'", in *Sports Business Journal*, June 11, 2001, p. 33.
.
"Bowling Proprietors Roll a Gutter Ball", in *Sports Business Journal*, August 20, 2001, p. 35.

"Sept. 11 Attacks Give New Purpose to Sport", in *Sports Business Journal*, October 1, 2001, p. 35.

"Soccer Team's Treatment A Kick in the Teeth", in *Sports Business Journal*, February 7, 2000, p. 46.

"Marketplace Values, Not Title IX, Threaten Nonrevenue Sports", in *Sports Business Journal*, March 6, 2000, p. 54.

"Answers Must Come Quickly for New World of U.S. Amateur Athletics", in *Sports Business Journal*, April 3, 2000, p. 54.

"Looking for an Olympic Hero?  Vive DeFrantz", in *Sports Business Journal*, May 29, 2000, p. 54.

"Get Involved, Help Bring Sports to Our Children", in *Sports Business Journal*, June 26, 2000, p. 70.

"Diversity Stars in Many Recent Sports Headlines", in *Sports Business Journal*, July 24, 2000, p. 46.

"Bare Breasts Are A Distraction from Issue At Hand", in *Sports Business Journal*, August 28, 2000, p. 50.

"Posing Nude:  What's OK, What Isn't?", in *Sports Business Journal*, September 18, 2000, p. 62.

**PUBLICATIONS**
**Editorials, Opinion, Business Magazine and .com Articles (cont.)**

"The Final Word:  Heather Mercer's Fight Stretches Far Beyond the Football Field", in *Sports Business Journal*, November 13, 2000, p. 78.

 "Girls Deserve the Gift of Physical Activity Just As Much As Boys", in *Sports Business Journal*, December 11, 2000, p. 62.

"Coaching Debate Should Extend Beyond WNBA Into Men's Game", in *Sports Business Journal*, January 25, 1999.

"Women's Sports Marketing:  Dabblers Need Not Apply", in *Sports Business Journal*, March 8, 1999.

 "Mismanaged Men's Sporting Goods Market Hurts Women", in *Sports Business Journal*, April 5, 1999.

"Sex There's No Economic Justification for Disobeying Title IX", in *Sports Business Journal*, May 31, 1999.

 "Sports Must Work to Make Our Society Better, Not More Violent", in *Sports Business Journal*, May 3, 1999.

"Medical, Media Reaction to Injuries Deserves Scrutiny", in *Sports Business Journal*, June 28, 1999.

"Next Goal for Women:  Commitment From the Keepers of Capital", in *Sports Business Journal*, July 26, 1999.

 "Amateur, Pro Female Athletes Deserve Title IX-Style Gains", in *Sports Business Journal*, August 23, 1999.

"Auto Racing Gives Little Opportunity to Women and Minorities", in *Sports Business Journal*, September 20, 1999.

"Sex In Union Vote, Are WNBA Players in Control of Their Own Business?", in *Sports Business Journal*, November 23, 1998.

 "WNBA's Remarkable 1999 Blows the Vultures Out of the Sky", in *Sports Business Journal*, December 13, 1999, p. 62.

 "Donna Lopiano Rebuttal:  The Strong Fem Side of  Women's Sports" in *Brandweek*, February 2, 1998
"Colleges Can Achieve Gender Equity in Sport" in *Chronicle of Higher Education*, December 2, 1992, volume 39, No. 15.

"Savings Should Be Reinvested to Boost Women's Programs," editorial in *USA Today,* January 15, 1991, Section C, p. 4.

"A Good Case for the Books," *The Austin American Statesman*, March 31, 1991.

"Women's Opportunities in Sports Still Far Behind," *Houston Chronicle*, February 25, 1990, p. 23B.

"Final Four Site:  Women and Men Together?" *The National Sports Daily*, March 27, 1990, p. 18.

"Fair Play for All (Even Women)," editorial in *The New York Times*, April 15, 1990, p. 10s.

"The Character of American Higher Education and Intercollegiate Sport," book review in *Academe*, Nov.-Dec., 1990, p. 57.

**PUBLICATIONS**
**Editorials, Opinion, Business Magazine and .com Articles (cont.)**

"Where We Are in the Development of Women's Athletics," Public Affairs Symposium, Dickinson College, Sport: Its Place in Society, February, 1987.

"Colleges Should Serve All, Not Just Some," editorial in *The New York Times*, Sunday, June 26, 1987, Section S, pg. 7.

"The Certified Coach: A Central Figure," *Journal of Physical Education, Recreation & Dance*, March, 1986.

"How to Pursue a Sport Management Career," *Journal of Physical Education, Recreation and Dance*, Vol. 55, No. 7, September, 1984.

"Promotion and Fundraising for Men's and Women's Non-Revenue Sports (Part I)," *Athletic Business*, Vol. 7, No. 10, October, 1983.

"Promotion and Fundraising for Men's and Women's Non-Revenue Sports (Part II)," *Athletic Business*, Vol. 7, No., 11, November, 1983.

"Will the Women in the Pros Survive?," *The Dallas Times Herald*, June 27, 1982.

"AIAW Landmarks," *Coaching: Women's Athletics*, VII, No. 2, March/April, 1981.

"The NCAA, NAIA and Women's Sports: The Price of Control," *Athletic Purchasing and Facilities*, IV, No. 12, December, 1980.

"Selling Women's Athletics: Realities and Potentials," *Athletic Purchasing and Facilities*, IV, No. 10, October, 1980.

"What Women Coaches and Administrators Can Do to Cope With the Current Situation in High School Athletics," *The Athletic Educator's Report*, Issue No. 846, September, 1980.

"A Look at the Forest: What's Happening to Women in High School Athletics," *The Athletic Educator's Report*, Issue No. 846, September, 1980.

"A Fact-Finding Model for Conducting a Title IX Self-Evaluation Study in Athletic Programs," *Journal of Physical Education, Recreation and Dance*, Vol. 47, No. 5, May, 1976.

"Developing the Exceptional Slingshot Pitcher," *1974-76 DGWS Softball Guide*, AAHPER: Washington, D.C., January, 1974.

"The Glove as a Foreign Object," *1974-76 DGWS Softball Guide*, AAHPER: Washington, D.C., January, 1974.

"Eerst Moet Je Snelheid Hebben, Dan Komt Controle Aan DeBeurt" (translated by Janke Nydam), *Inside*, Amsterdam, The Netherlands, III, No. 1, January, 1973.

"Chauvinists Beware: Odds are Against Sexist Gamblers," *Kingsman*, Brooklyn College, 1973.

"De Meeste Mensen Die Softball Doceren Weten Er Weinig Van" with Joan Joyce (translated by Janke Nydam), *Inside*, Amsterdam, the Netherlands, II, No. 12, December, 1972.

"Concepts and Issues in Administrative Behavior: A Book Review," *A Compendium of Analytical Book Reviews in Organizational Behavior* (Percy G. Rogers, editor), University of Southern California Press, Los Angeles, CA, 1972.

**PUBLICATIONS**
**Editorials, Opinion, Business Magazine and .com Articles (cont.)**

"Enforcement Machinery Needed Now for Girls' Athletic Competition," J*ournal of Physical Education, Recreation and Dance*, XLII, No. 1, January, 1971.

 "The Brakette Formula:  Anatomy of a Winner," *Balls and Strikes*, American Softball Association, Fall, 1971.

**PUBLICATIONS**
**Copyrighted Videotapes**

Fast Pitch Softball:  Developing the Pitcher (Part I), Truckee River Studios, Inc. (Verdi, Nevada), 1983.

Fast Pitch Softball:  Developing the Pitcher (Part II), Truckee River Studios, Inc. (Verdi, Nevada), 1984.

Fast Pitch Softball:  Defensive Strategies (Part I), Truckee River Studios, Inc. (Verdi, Nevada), 1984.

Fast Pitch Softball:  Defensive Strategies (Part II), Truckee River Studios, Inc. (Verdi, Nevada), 1985.

**ATHLETIC PARTICIPATION**

Participated in 26 National Championship tournaments in four different sports
Softball:
- National Hall of Fame, American Softball Association
- Participated in Ten National ASA Softball Championship tournaments (as member of six national championship and four national championship runner-up teams)
- Nine-Time Softball All-American at four different positions (pitcher, shortstop, first base and second base)
- 3-time National Tournament Most Valuable Player and 1-time Batting Champ (.429)
- U.S. National Team Player at 1967 Pan American Games and 1966 first World Softball Championships
- Amateur softball career marks as a pitcher:
  183-18 won/lost record                        15-2 in National Championship play
  .910 winning percentage                      1,633 strikeouts in 817 innings
  ERA .25 (51 earned runs in 10 years)
- Played professional softball for three years-in two national championship finals (both times runner-up)

Volleyball:
- Participant in Five National USVBA Volleyball Championship Tournaments

Basketball:
- Participant in Five National AAU Basketball Championship Tournaments

Field Hockey:
- Participant in Three National Field Hockey Championship Tournaments

# EXHIBIT B

## DOCUMENTS, DATA OR INFORMATION CONSIDERED IN THE FORMATION OF EXPERT OPINIONS

The following documents and sources were relied upon in the formulation of opinions contained in this report.

*Fisk, et al vs. Board of Trustees of the California State University and San Diego State University* (Case No. 3:22-cv-00173-TWR-MSB) documents provided:
- Plaintiffs' Third Amended Complaint – May 12, 2023.

| | | |
|---|---|---|
| SDSU-FISK-0000009 | SDSU-FISK-0000112 | SDSU-FISK-0009809 |
| SDSU-FISK-0000014 | SDSU-FISK-0000114 | SDSU-FISK-0009811 |
| SDSU-FISK-0000018 | SDSU-FISK-0000116 | SDSU-FISK-0009813 |
| SDSU-FISK-0000021 | SDSU-FISK-0009654 | SDSU-FISK-0009817 |
| SDSU-FISK-0000024 | SDSU-FISK-0009657 | SDSU-FISK-0009820 |
| SDSU-FISK-0000027 | SDSU-FISK-0009660 | SDSU-FISK-0009822 |
| SDSU-FISK-0000030 | SDSU-FISK-0009665 | SDSU-FISK-0009825 |
| SDSU-FISK-0000033 | SDSU-FISK-0009669 | SDSU-FISK-0011503 |
| SDSU-FISK-0000036 | SDSU-FISK-0009672 | SDSU-FISK-0011507 |
| SDSU-FISK-0000039 | SDSU-FISK-0009675 | SDSU-FISK-0035258 |
| SDSU-FISK-0000041 | SDSU-FISK-0009679 | SDSU-FISK-0035261 |
| SDSU-FISK-0000045 | SDSU-FISK-0009681 | SDSU-FISK-0035263 |
| SDSU-FISK-0000048 | SDSU-FISK-0009683 | SDSU-FISK-0035269 |
| SDSU-FISK-0000051 | SDSU-FISK-0009685 | SDSU-FISK-0035271 |
| SDSU-FISK-0000060 | SDSU-FISK-0009687 | SDSU-FISK-0035274 |
| SDSU-FISK-0000062 | SDSU-FISK-0009689 | SDSU-FISK-0035276 |
| SDSU-FISK-0000065 | SDSU-FISK-0009691 | SDSU-FISK-0035279 |
| SDSU-FISK-0000067 | SDSU-FISK-0009694 | SDSU-FISK-0035281 |
| SDSU-FISK-0000069 | SDSU-FISK-0009696 | SDSU-FISK-0035283 |
| SDSU-FISK-0000071 | SDSU-FISK-0009699 | SDSU-FISK-0035286 |
| SDSU-FISK-0000074 | SDSU-FISK-0009703 | SDSU-FISK-0035288 |
| SDSU-FISK-0000076 | SDSU-FISK-0009712 | SDSU-FISK-0035290 |
| SDSU-FISK-0000078 | SDSU-FISK-0009717 | SDSU-FISK-0035293 |
| SDSU-FISK-0000081 | SDSU-FISK-0009780 | SDSU-FISK-0035295 |
| SDSU-FISK-0000083 | SDSU-FISK-0009783 | SDSU-FISK-0035298 |
| SDSU-FISK-0000085 | SDSU-FISK-0009785 | SDSU-FISK-0035301 |
| SDSU-FISK-0000087 | SDSU-FISK-0009790 | SDSU-FISK-0035303 |
| SDSU-FISK-0000090 | SDSU-FISK-0009792 | SDSU-FISK-0000275 |
| SDSU-FISK-0000092 | SDSU-FISK-0009795 | SDSU-FISK-0000276 |
| SDSU-FISK-0000095 | SDSU-FISK-0009797 | SDSU-FISK-0000283 |
| SDSU-FISK-0000098 | SDSU-FISK-0009799 | SDSU-FISK-0000284 |
| SDSU-FISK-0000101 | SDSU-FISK-0009801 | SDSU-FISK-0000285 |
| SDSU-FISK-0000106 | SDSU-FISK-0009804 | SDSU-FISK-0000287 |
| SDSU-FISK-0000108 | SDSU-FISK-0009806 | SDSU-FISK-0000289 |

| | | |
|---|---|---|
| SDSU-FISK-0000295 | SDSU-FISK-0035735 | SDSU-FISK-0035803 |
| SDSU-FISK-0000301 | SDSU-FISK-0035736 | SDSU-FISK-0035805 |
| SDSU-FISK-0000303 | SDSU-FISK-0035737 | SDSU-FISK-0035806 |
| SDSU-FISK-0000304 | SDSU-FISK-0035738 | SDSU-FISK-0035807 |
| SDSU-FISK-0000307 | SDSU-FISK-0035739 | SDSU-FISK-0035808 |
| SDSU-FISK-0000310 | SDSU-FISK-0035740 | SDSU-FISK-0035811 |
| SDSU-FISK-0000313 | SDSU-FISK-0035741 | SDSU-FISK-0035812 |
| SDSU-FISK-0000314 | SDSU-FISK-0035742 | SDSU-FISK-0035814 |
| SDSU-FISK-0000315 | SDSU-FISK-0035743 | SDSU-FISK-0035816 |
| SDSU-FISK-0000323 | SDSU-FISK-0035744 | SDSU-FISK-0035817 |
| SDSU-FISK-0000325 | SDSU-FISK-0035745 | SDSU-FISK-0035818 |
| SDSU-FISK-0000326 | SDSU-FISK-0035746 | SDSU-FISK-0035819 |
| SDSU-FISK-0000329 | SDSU-FISK-0035747 | SDSU-FISK-0035821 |
| SDSU-FISK-0000331 | SDSU-FISK-0035748 | SDSU-FISK-0035822 |
| SDSU-FISK-0000337 | SDSU-FISK-0035749 | SDSU-FISK-0035823 |
| SDSU-FISK-0000338 | SDSU-FISK-0035750 | SDSU-FISK-0035826 |
| SDSU-FISK-0000347 | SDSU-FISK-0035751 | SDSU-FISK-0035829 |
| SDSU-FISK-0000348 | SDSU-FISK-0035752 | SDSU-FISK-0035831 |
| SDSU-FISK-0035305 | SDSU-FISK-0035753 | SDSU-FISK-0035832 |
| SDSU-FISK-0035363 | SDSU-FISK-0035754 | SDSU-FISK-0035834 |
| SDSU-FISK-0035364 | SDSU-FISK-0035767 | SDSU-FISK-0035836 |
| SDSU-FISK-0035366 | SDSU-FISK-0035768 | SDSU-FISK-0035837 |
| SDSU-FISK-0035369 | SDSU-FISK-0035769 | SDSU-FISK-0035842 |
| SDSU-FISK-0035371 | SDSU-FISK-0035770 | SDSU-FISK-0035887 |
| SDSU-FISK-0035372 | SDSU-FISK-0035771 | SDSU-FISK-0035888 |
| SDSU-FISK-0035373 | SDSU-FISK-0035773 | SDSU-FISK-0035889 |
| SDSU-FISK-0035376 | SDSU-FISK-0035774 | SDSU-FISK-0035890 |
| SDSU-FISK-0035378 | SDSU-FISK-0035775 | SDSU-FISK-0035891 |
| SDSU-FISK-0035380 | SDSU-FISK-0035777 | SDSU-FISK-0035892 |
| SDSU-FISK-0035381 | SDSU-FISK-0035778 | SDSU-FISK-0035894 |
| SDSU-FISK-0035382 | SDSU-FISK-0035780 | SDSU-FISK-0035896 |
| SDSU-FISK-0035720 | SDSU-FISK-0035781 | SDSU-FISK-0035904 |
| SDSU-FISK-0035721 | SDSU-FISK-0035783 | SDSU-FISK-0035905 |
| SDSU-FISK-0035722 | SDSU-FISK-0035784 | SDSU-FISK-0035906 |
| SDSU-FISK-0035723 | SDSU-FISK-0035786 | SDSU-FISK-0035907 |
| SDSU-FISK-0035724 | SDSU-FISK-0035788 | SDSU-FISK-0035908 |
| SDSU-FISK-0035725 | SDSU-FISK-0035789 | SDSU-FISK-0035918 |
| SDSU-FISK-0035726 | SDSU-FISK-0035790 | SDSU-FISK-0035928 |
| SDSU-FISK-0035727 | SDSU-FISK-0035791 | SDSU-FISK-0035929 |
| SDSU-FISK-0035728 | SDSU-FISK-0035793 | SDSU-FISK-0035930 |
| SDSU-FISK-0035729 | SDSU-FISK-0035794 | SDSU-FISK-0035931 |
| SDSU-FISK-0035730 | SDSU-FISK-0035795 | SDSU-FISK-0035932 |
| SDSU-FISK-0035731 | SDSU-FISK-0035796 | SDSU-FISK-0035934 |
| SDSU-FISK-0035732 | SDSU-FISK-0035798 | SDSU-FISK-0035936 |
| SDSU-FISK-0035733 | SDSU-FISK-0035801 | SDSU-FISK-0035937 |
| SDSU-FISK-0035734 | SDSU-FISK-0035802 | SDSU-FISK-0035938 |

| | | |
|---|---|---|
| SDSU-FISK-0035939 | SDSU-FISK-0003285 | SDSU-FISK-0003489 |
| SDSU-FISK-0035940 | SDSU-FISK-0003287 | SDSU-FISK-0003490 |
| SDSU-FISK-0035941 | SDSU-FISK-0003289 | SDSU-FISK-0003491 |
| SDSU-FISK-0035942 | SDSU-FISK-0003291 | SDSU-FISK-0003492 |
| SDSU-FISK-0035943 | SDSU-FISK-0003293 | SDSU-FISK-0003493 |
| SDSU-FISK-0035945 | SDSU-FISK-0003296 | SDSU-FISK-0011627 |
| SDSU-FISK-0035947 | SDSU-FISK-0003299 | SDSU-FISK-0011630 |
| SDSU-FISK-0035949 | SDSU-FISK-0003302 | SDSU-FISK-0011631 |
| SDSU-FISK-0035951 | SDSU-FISK-0003312 | SDSU-FISK-0011637 |
| SDSU-FISK-0035953 | SDSU-FISK-0003316 | SDSU-FISK-0011642 |
| SDSU-FISK-0035955 | SDSU-FISK-0003319 | SDSU-FISK-0011644 |
| SDSU-FISK-0035957 | SDSU-FISK-0003321 | SDSU-FISK-0011650 |
| SDSU-FISK-0035958 | SDSU-FISK-0003325 | SDSU-FISK-0011651 |
| SDSU-FISK-0035959 | SDSU-FISK-0003326 | SDSU-FISK-0011653 |
| SDSU-FISK-0035961 | SDSU-FISK-0003328 | SDSU-FISK-0011659 |
| SDSU-FISK-0035962 | SDSU-FISK-0003330 | SDSU-FISK-0011662 |
| SDSU-FISK-0035963 | SDSU-FISK-0003331 | SDSU-FISK-0011667 |
| SDSU-FISK-0035964 | SDSU-FISK-0003333 | SDSU-FISK-0011669 |
| SDSU-FISK-0035965 | SDSU-FISK-0003335 | SDSU-FISK-0011675 |
| SDSU-FISK-0035966 | SDSU-FISK-0003336 | SDSU-FISK-0011676 |
| SDSU-FISK-0035969 | SDSU-FISK-0003338 | SDSU-FISK-0011680 |
| SDSU-FISK-0035972 | SDSU-FISK-0003340 | SDSU-FISK-0011684 |
| SDSU-FISK-0035974 | SDSU-FISK-0003341 | SDSU-FISK-0014130 |
| SDSU-FISK-0035975 | SDSU-FISK-0003343 | SDSU-FISK-0014131 |
| SDSU-FISK-0035976 | SDSU-FISK-0003351 | SDSU-FISK-0014132 |
| SDSU-FISK-0035978 | SDSU-FISK-0003353 | SDSU-FISK-0014133 |
| SDSU-FISK-0035979 | SDSU-FISK-0003360 | SDSU-FISK-0035307 |
| SDSU-FISK-0035980 | SDSU-FISK-0003363 | SDSU-FISK-0008951 |
| SDSU-FISK-0035981 | SDSU-FISK-0003366 | SDSU-FISK-0009827 |
| SDSU-FISK-0035982 | SDSU-FISK-0003369 | SDSU-FISK-0009828 |
| SDSU-FISK-0035983 | SDSU-FISK-0003371 | SDSU-FISK-0009829 |
| SDSU-FISK-0035984 | SDSU-FISK-0003378 | SDSU-FISK-0009830 |
| SDSU-FISK-0035985 | SDSU-FISK-0003384 | SDSU-FISK-0009831 |
| SDSU-FISK-0035986 | SDSU-FISK-0003386 | SDSU-FISK-0009832 |
| SDSU-FISK-0035987 | SDSU-FISK-0003390 | SDSU-FISK-0009833 |
| SDSU-FISK-0000183 | SDSU-FISK-0003391 | SDSU-FISK-0009834 |
| SDSU-FISK-0035365 | SDSU-FISK-0003400 | SDSU-FISK-0009835 |
| SDSU-FISK-0002438 | SDSU-FISK-0003403 | SDSU-FISK-0009836 |
| SDSU-FISK-0002457 | SDSU-FISK-0003413 | SDSU-FISK-0009837 |
| SDSU-FISK-0002461 | SDSU-FISK-0003416 | SDSU-FISK-0009838 |
| SDSU-FISK-0002466 | SDSU-FISK-0003425 | SDSU-FISK-0009839 |
| SDSU-FISK-0002496 | SDSU-FISK-0003480 | SDSU-FISK-0009840 |
| SDSU-FISK-0003264 | SDSU-FISK-0003484 | SDSU-FISK-0009841 |
| SDSU-FISK-0003265 | SDSU-FISK-0003485 | SDSU-FISK-0009842 |
| SDSU-FISK-0003272 | SDSU-FISK-0003486 | SDSU-FISK-0009843 |
| SDSU-FISK-0003274 | SDSU-FISK-0003487 | SDSU-FISK-0009844 |

| | | |
|---|---|---|
| SDSU-FISK-0009845 | SDSU-FISK-0009876 | SDSU-FISK-0035332 |
| SDSU-FISK-0009846 | SDSU-FISK-0009877 | SDSU-FISK-0035333 |
| SDSU-FISK-0009847 | SDSU-FISK-0009878 | SDSU-FISK-0035334 |
| SDSU-FISK-0009848 | SDSU-FISK-0009879 | SDSU-FISK-0035335 |
| SDSU-FISK-0009849 | SDSU-FISK-0009880 | SDSU-FISK-0035336 |
| SDSU-FISK-0009850 | SDSU-FISK-0009881 | SDSU-FISK-0035337 |
| SDSU-FISK-0009851 | SDSU-FISK-0009882 | SDSU-FISK-0035338 |
| SDSU-FISK-0009852 | SDSU-FISK-0009883 | SDSU-FISK-0035339 |
| SDSU-FISK-0009853 | SDSU-FISK-0035308 | SDSU-FISK-0035340 |
| SDSU-FISK-0009854 | SDSU-FISK-0035309 | SDSU-FISK-0035341 |
| SDSU-FISK-0009855 | SDSU-FISK-0035310 | SDSU-FISK-0035342 |
| SDSU-FISK-0009856 | SDSU-FISK-0035311 | SDSU-FISK-0035343 |
| SDSU-FISK-0009857 | SDSU-FISK-0035312 | SDSU-FISK-0035344 |
| SDSU-FISK-0009858 | SDSU-FISK-0035313 | SDSU-FISK-0035345 |
| SDSU-FISK-0009859 | SDSU-FISK-0035314 | SDSU-FISK-0035346 |
| SDSU-FISK-0009860 | SDSU-FISK-0035315 | SDSU-FISK-0035347 |
| SDSU-FISK-0009861 | SDSU-FISK-0035316 | SDSU-FISK-0035348 |
| SDSU-FISK-0009862 | SDSU-FISK-0035317 | SDSU-FISK-0035349 |
| SDSU-FISK-0009863 | SDSU-FISK-0035319 | SDSU-FISK-0035350 |
| SDSU-FISK-0009864 | SDSU-FISK-0035320 | SDSU-FISK-0035351 |
| SDSU-FISK-0009865 | SDSU-FISK-0035321 | SDSU-FISK-0035352 |
| SDSU-FISK-0009866 | SDSU-FISK-0035322 | SDSU-FISK-0035353 |
| SDSU-FISK-0009867 | SDSU-FISK-0035323 | SDSU-FISK-0035354 |
| SDSU-FISK-0009868 | SDSU-FISK-0035324 | SDSU-FISK-0035355 |
| SDSU-FISK-0009869 | SDSU-FISK-0035325 | SDSU-FISK-0035356 |
| SDSU-FISK-0009870 | SDSU-FISK-0035326 | SDSU-FISK-0035357 |
| SDSU-FISK-0009871 | SDSU-FISK-0035327 | SDSU-FISK-0035358 |
| SDSU-FISK-0009872 | SDSU-FISK-0035328 | SDSU-FISK-0035359 |
| SDSU-FISK-0009873 | SDSU-FISK-0035329 | SDSU-FISK-0035361 |
| SDSU-FISK-0009874 | SDSU-FISK-0035330 | SDSU-FISK-0035362 |
| SDSU-FISK-0009875 | SDSU-FISK-0035331 | |

Other materials:

National Collegiate Athletic Association. *NCAA 2023-24 Division I Manual*, https://www.ncaapublications.com/productdownloads/D124.pdf (Aug. 5, 2023).

National Collegiate Athletic Association. *NCAA Division I Squad Lists and Instructions, Form 23-2* (2023-2024).

United States Department of Education Equity in Athletics Disclosure Act Database. https://ope.ed.gov/athletics.

United States Government Title IX Resources:
- 20 U.S.C. § 1681 *et seq.* ("Title IX").
- 34 C.F.R. § 106 (the "Title IX regulations").

- Department of Education Office for Civil Rights, *Policy Interpretation on Title IX and Intercollegiate Athletics*, 44 Fed.Reg. 71413 (1979).
- Department of Education Office for Civil Rights, *Policy Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test* (1996).
- Department of Education Office for Civil Rights, *Further Policy Clarification on the Three-Part Test* (2003).
- Department of Education Office for Civil Rights, *Dear Colleague Letter re: Prong Three of the Three-Part Test* (2010).
- Department of Education Office for Civil Rights, *Title IX Athletics Investigator's Manual* (1990).
- Department of Education Office for Civil Rights, *Title IX and Athletic Opportunities in Colleges and Universities: A Resource for Students, Coaches, Athletic Directors, and School Communities* (Feb. 2023).
- Department of Education Office for Civil Rights, *Dear Colleague Letter* (sharing a copy of its July 23 Bowling Green State University response regarding athletics scholarship assistance) (Jul. 23, 1998).

# Exhibit C

**Form 23-2**                                              **Academic Year:  2023-24**

**NCAA Division I Squad Lists and Instructions**

| | |
|---|---|
| **For:** | NCAA Division I institutions; NCAA Division II and III institutions with Division I sports. |
| **Action:** | Complete appropriate squad list for each sport. |
| **Due date:** | First day of outside competition in the sport. |
| **Required by:** | NCAA Division I Bylaw 15.5.11.2. |
| **Purpose:** | To qualify student-athletes for intercollegiate competition and assess compliance with NCAA financial aid rules. |

## TO:  DIRECTOR OF ATHLETICS.

To be eligible to represent an institution in intercollegiate athletics competition, a student-athlete shall be included on the institution's squad list form.  (NCAA Division I Bylaw 15.5.11.1)

The institution must complete a squad list (Form 23-2) for each sport by the first day of outside competition.  During the year, the list should be revised whenever a student-athlete joins the squad or a current squad member's status changes.  All student-athletes listed on the squad lists must have signed a drug-testing consent form.  (Bylaw 12.7.3)

Use the version of the squad list that is appropriate for your division and sport.  This set of instructions explains how to fill out each version:

| Form | Division/Sport | Page(s) |
|---|---|---|
| 23-2a | Bowl Subdivision football (FBS). | 6 - 7 |
| 23-2b | Championship Subdivision football (FCS). | 8 - 10 |
| 23-2c | Head-count sports other than football (men's and women's basketball, women's gymnastics, women's tennis, women's volleyball). | 11 - 12 |
| 23-2d | Equivalency sports other than baseball and ice hockey. | 12 - 14 |
| 23-2e | Ice hockey. | 14 - 15 |
| 23-2f | Baseball. | 16 - 17 |

NCAA Division I Squad Lists and Instructions
Form 23-2
Page No. 2

_____

| **Column on Squad Lists:** | **Instructions:** |
|---|---|
| **Name/ID Number:** | Type or print the name and ID number of each student-athlete in the specified sport.  Include nonqualifiers and student-athletes who are fulfilling a transfer residence requirement or an injury-hardship waiver.  [Note:  Any student-athlete who signs a drug-testing consent form must be included on the institution's squad-list form and any student-athlete who is included on the squad-list form must have signed a drug-testing consent form pursuant to Bylaw 12.7.3.  See Bylaws 12.7.3.1, 12.7.3.2, 12.7.3.3, 15.5.11.3 and 15.5.11.3.1, except that a student-athlete who is "trying out" for a team is not required to be placed on the squad list for 14 days from the first date the student-athlete engages in countable athletically related activities or until the institution's first competition (whichever occurs earlier).] |
| **Eligible to Compete:** | Use this column to indicate whether a student-athlete is eligible **(Y)** or not eligible **(N)** to represent the institution in competition pursuant to all NCAA, conference and institutional eligibility requirements. |
| **Status of Student:** | Describe the status of the student-athlete in these five columns. |
| **Term first enrolled at any institution.** | Indicate the term and year of the regular academic year (excluding summer) that the student-athlete first enrolled at any collegiate institution full time.  Use **F** for fall, **W** for winter and **S** for spring. |
| **Term first enrolled at your institution.** | Indicate the term and year of the regular academic year (excluding summer) that the student-athlete first enrolled at your institution full time.  Use **F** for fall, **W** for winter and **S** for spring. |
| **Number of years received financial aid.** | Indicate the number of years the student-athlete has received institutional financial aid, not including this year.  (See Bylaw 15.02.5.2 for applicable definition of "institutional financial aid.") |
| **Number of seasons used.** | Indicate the number of seasons of competition the student-athlete has used, not including this year. [Note:  For student-athletes who do not qualify for four years of competition (e.g., nonqualifiers), a notation may be used to indicate the total number of seasons of eligibility available.] |

NCAA Division I Squad Lists and Instructions
Form 23-2
Page No. 3

_____

| **Column on Squad Lists:** | **Instructions:** |
|---|---|
| **Recruited per Bylaw 15.02.9.** | Indicate whether your institution recruited the student-athlete as defined in Bylaw 15.02.9.  Use **Y** for yes and **N** for no. |
| **Financial Aid:** | Describe the financial aid each student is receiving in these four columns. |
| **Period of award.** | For a one-year award, use **FY** if the award is for the full-academic year. |
| **One-year period exception.** | Use (a), (b), (c), (d),  (e) or (f) if the award is for less than the full-academic year.  (See Bylaw 15.3.3.1.1 for exceptions to the one-year period requirement.) |
| **Amount of athletics grant.** | Indicate the dollar amount your institution awarded the student-athlete in athletics grants-in-aid.  To assist in calculations for revenue distribution on Forms 23-2a through 23-2f, calculate the dollar amount of all athletics grants-in-aid awarded in the sport and enter the total in the box provided. |
| **Amount of other countable aid.** | Indicate the dollar amount of institutional financial aid (other than athletics grants-in-aid) as set forth in Bylaw 15.02.5.2. (See Bylaw 15.02.5.4.) |

NCAA Division I Squad Lists and Instructions
Form 23-2
Page No. 4

_____

| Column on Squad Lists: | Instructions: |
|---|---|

**Total countable aid.**   Indicate the dollar amount of the total countable financial aid by adding the amounts of any athletics grants-in-aid and other countable aid.   To assist in monitoring the financial aid requirements for minimum awards (Bylaw 20.10.3.2) on Forms 23-2a through 23-2f, calculate the dollar amount of countable aid awarded in the sport.  [Note: **Do not** include the countable aid awarded to **exempt** student-athletes (see "Exempt" below) **except** for student-athletes who have exhausted their eligibility  in a sport during a  previous academic year (Bylaw 15.5.1.5) or have a medical exception per Bylaw 15.5.1.2.]  Enter the total in the box provided.

[Note: A worksheet is available for use by institutions that elect to count on-campus employment earnings in order to meet minimum financial aid requirements (Bylaw 20.10.3.2.8).  Please contact the NCAA academic and membership affairs staff.]

**Exempt:**   Indicate whether the student-athlete is exempt from counting against your team limits on financial aid awards.  Use **Y** for yes.  A student-athlete is exempt if the student meets one of the following conditions:

1.   Regardless of whether the student was recruited per Bylaw 15.02.9, the student is not receiving institutional financial aid as set forth in Bylaw 15.02.5.2;

2.   The student was not recruited per Bylaw 15.02.9 and is not receiving athletically related financial aid as set forth in Bylaw 15.02.5.1;

3.   The student was recruited per Bylaw 15.02.9, is not participating in Division I football or basketball and is not receiving athletically related financial aid as set forth in Bylaw 15.02.5.1; or

NCAA Division I Squad Lists and Instructions
Form 23-2
Page No. 5
_____

| Column on Squad Lists: | Instructions: |
|---|---|
| | 4. The student was recruited per Bylaw 15.02.9, is participating in Division I football or basketball, has not yet engaged in varsity intercollegiate competition and is not receiving athletically related financial aid as set forth in Bylaw 15.02.5.1. |
| | A multiple-sport student-athlete must be listed on the squad-list form for each sport in which the student-athlete participates. For purposes of counting against your team limits; however, the student-athlete shall be counted in one sport only. (See Bylaw 15.5.9 to determine which sports take precedence in counting against team limits.) |
| **Countable** | Fill in the columns for each student-athlete who is not exempt. |
| **SA/Equivalency:** | Use the applicable squad list for your division and sport. The instructions that follow for the "Countable Student-Athlete" section are different depending on the version. |
| **Change in Status:** | Indicate a student-athlete's change in status during the academic year. Use the applicable version of the squad list for your division and sport. The instructions that follow for the "Change in Status" section are different depending on the version. [Notes: (1) A student-athlete who is a counter at the time of the change in status remains a counter for the remainder of the academic year unless the student-athlete qualifies for an exception (Bylaw 15.5.1.3.1, incapacitating injury or illness prior to initial practice); and (2) An undergraduate four-year transfer remains a counter through the period of award (Bylaw 15.3.3.3) unless the undergraduate four-year transfer qualifies for an exception (Bylaw 15.5.1.2.1).] |
| **Grant-in-Aid Revenue Distribution:** <br><br> **(Division I only)** | <u>Optional</u>: This column may be used to determine the equivalency value on which your institution's dollar amount for revenue distribution is calculated. Indicate the figure by dividing each student-athlete's amount of athletics grant-in-aid (total countable aid column) by his or her cost for tuition and fees, room and board and required course-related books, (full grant amount column or total cost column) rounded off to two decimal places (e.g., .75), not to exceed 1.00. Add the figures and enter the total. |

Instructions for Bowl Subdivision Football
Form 23-2a
Page No. 6
_____

**Instructions for Use with Form 23-2a -- Bowl Subdivision Football**

**<u>Countable Student-Athletes</u>:**

**Total cost for tuition and fees, room and board, and books.**

Indicate the total of each student-athlete's cost for tuition and fees, room and board, and required course-related books, based on the actual cost or average cost of a full grant-in-aid for all students at your institution.  [Note:  If you use the average-cost method, do not combine in-state and out-of-state tuition to arrive at a single average cost for tuition.  Calculate separate average educational costs for in-state and out-of-state students.]

This column is to be completed to assist in monitoring the financial aid requirements for minimum awards (Bylaw 20.10.3.2) and in determining equivalent awards for revenue distribution.

**Initial.**

Place a mark in this box for each student-athlete you are counting against the limit on awarding financial aid for the first time.  You must include:

1.    All student-athletes (including transfer residents) who are receiving, for the first time, institutional financial aid that is countable against the maximum squad limits, except that a student-athlete who has been in residence at the certifying institution for at least two academic years may receive athletically related financial aid for the first time without such aid counting as an initial award, provided the aid falls within the overall grant limit (Bylaws 15.02.3.1 and 15.5.6.3.5);

2.    Student-athletes who are recruited per Bylaw 15.02.9 and entered after the first term of the previous academic year, who immediately received athletically related aid and who were not initial counters in the previous year (Bylaw 15.5.6.3.2);

3.     Student-athletes not recruited per Bylaw 15.02.9 who received institutional (based in any degree on athletics ability) after beginning football practice who initial counters in the previous year (Bylaw 15.5.6.3.3); and

Instructions for Bowl Subdivision Football
Instructions for Championship Subdivision Football
Form 23-2a
Page No. 7

_____

|  |  |
|---|---|
| | 4.    Student-athletes recruited per Bylaw 15.02.9 who enter in the fall term of the current academic year and compete on the varsity level and receive institutional financial aid (Bylaw 15.5.1.1). |
| **Overall.** | Place a mark in this box for each student-athlete (including each initial-award recipient) who is a counter (per Bylaw 15.5.1). |

*How to calculate your total countable student-athletes:*

|  |  |
|---|---|
| **Initial.** | Add the number of initial marks and compare this total to the limit specified in Bylaw 15.5.6.1. |
| **Overall.** | Add the number of overall marks and compare this total to the limit specified in Bylaw 15.5.6.1. |
| **Change in Status:** | Indicate a student-athletes change in status during the academic year (student-athlete is no longer an active participant in the sport). |
| **Reason.** | Indicate the reason for a change in status as follows: |

1.    Cut or dismissed from team. (**C**)

2.    Exhausted eligibility in the sport. (**E**)

3.    Graduated. (**G**)

4.    Medical exception resulting from career-ending injury or condition. (**M**)

5.    Quit the team. (**Q**)

6.    Withdrew from the institution. (**W**)

|  |  |
|---|---|
| **Date.** | Indicate the effective date of the change in status. |
| **Revenue Distribution:** | See instructions on Page No. 5. |

Instructions for Bowl Subdivision Football
Instructions for Championship Subdivision Football
Form 23-2a
Page No. 8
_____

**Instructions for Use with Form 23-2b**
**Championship Subdivision Football**

<u>**Countable Student-Athletes:**</u>

| | |
|---|---|
| **Total cost Autonomy (A)/ Total cost Other (O).** | Depending on institutional equivalency designation for the student-athlete, indicate the total of each student-athlete's tuition and fees, room and board, books and other expenses related to attendance at the institution (total cost A) or the cost for tuition and fees, room and board, and required course-related books (total cost O), based on the actual cost or average cost of a full grant-in-aid for all students at your institution. [Note: If you use the average-cost method, do not combine in-state and out-of-state tuition to arrive at a single average cost for tuition. Calculate separate average educational costs for in-state and out-of-state students.] |
| **Initial.** | Place a mark in this box for each student-athlete you are counting against the limit on awarding financial aid for the first time. You must include: |

1.   All student-athletes (including transfers) who are receiving for the first time institutional financial aid that is countable against the maximum squad limits, except that a student-athlete who has been in residence at the certifying institution for at least two academic years may receive athletically related financial aid for the first time without such aid counting as an initial award, provided the aid falls within the overall grant limit (Bylaws 15.02.3.1 and 15.5.6.3.4);

Instructions for Championship Subdivision Football
Form 23-2b
Page No. 9

_____

    2.    Student-athletes recruited per Bylaw 15.02.9 who entered after the first term of the previous academic year, who immediately received athletically related aid and who were not initial counters in the previous year (Bylaw 15.5.6.3.2);

    3.    Student-athletes not recruited per Bylaw 15.02.9 who received athletically related aid after beginning football practice who were not initial counters in the previous year (Bylaw 15.5.6.3.3); and

    4.    Student-athletes recruited per Bylaw 15.02.9 who enter in the fall term of the current academic year and compete on the varsity level and receive institutional financial aid (Bylaw 15.5.1.1).

**Overall.**    Place a mark in this box for each student-athlete (including each initial-award recipient) who is receiving, or who has received, any institutional financial aid that is countable against the maximum aid limits in this academic year.

**Equivalent award.**    Depending on institutional equivalency designation for the student-athlete, indicate a figure by dividing each student-athlete's total countable aid by either total cost (A) or total cost (O) as determined by the institution for each student-athlete rounded off to two decimal places (e.g., .75) and place in the appropriate equivalency column.  [Note:  If you use the **actual** cost for tuition and fees, room and board and books, the equivalent award is calculated by dividing the **actual** amount of institutional financial aid received by the student-athlete (numerator) by the **actual** value of a full grant-in-aid (denominator).  If you use the **average** cost for tuition and fees, room and board and books, the equivalent award is calculated by dividing the **average** amount of institutional financial aid received by the student-athlete (numerator) by the **average** value of a full grant-in-aid for all students at your institution (denominator).]  (See Bylaw 15.5.3.2)

Instructions for Championship Subdivision Football
Form 23-2b
Page No. 10

_____

*How to calculate your total countable student-athletes:*

**Initial.**                 Add the number of initial marks and compare this total to the limit specified in Bylaw 15.5.6.2.

**Overall.**                 Add the number of overall marks and compare this total to the limit specified in Bylaw 15.5.6.2.

**Equivalent award.**        Add the figures and compare this total to the limit specified in Bylaw 15.5.6.2.

**<u>Change in Status</u>:**       Indicate a student-athlete's change in status during the academic year (student-athlete is no longer an active participant in the sport). [Notes: (1) A student-athlete who is a counter at the time of the change in status remains a counter for the remainder of the academic year unless the student-athlete qualifies for an exception (Bylaw 15.5.1.3.1, incapacitating injury or illness prior to initial practice); and (2) An undergraduate four-year transfer remains a counter through the period of award (Bylaw 15.3.3.3) unless the undergraduate four-year transfer qualifies for an exception (Bylaw 15.5.1.2.1).]]

**Reason.**                  Indicate the reason for a change in status as follows:

1.     Cut or dismissed from team. (**C**)

2.     Exhausted eligibility in the sport. (**E**)

3.     Graduated. (**G**)

4.     Medical exception resulting from career-ending injury or condition. (**M**)

5.     Quit the team. (**Q**)

6.     Withdrew from the institution. (**W**)

**Date.**                    Indicate the effective date of the change in status.

**<u>Revenue Distribution</u>:**   See instructions on Page No. 5.

Instructions for Head-Count Sports Other Than Football
Form 23-2c
Page No. 11

_____

**Instructions for Use with Form 23-2c**
**Head-Count Sports Other Than Football**

**Countable Student-Athletes:**

| | |
|---|---|
| **Total cost for tuition and fees, room and board and books.** | Indicate the total of each student-athlete's cost for tuition and fees, room and board, and required course-related books, based on the actual cost or average cost of a full grant-in-aid for all students at your institution. [Note: If you use the average-cost method, do not combine in-state and out-of-state tuition to arrive at a single average cost for tuition. Calculate separate average educational costs for in-state and out-of-state students.] |
| | This column is to be completed to assist in monitoring the financial aid requirements for minimum awards (Bylaw 20.10.3.2) and in determining equivalent awards for revenue distribution. |
| **Overall.** | Place a mark in this box for each student-athlete who is receiving institutional financial aid that is countable against the maximum aid limits. |

*How to calculate your total countable student-athletes:*

| | |
|---|---|
| **Overall.** | Add the overall marks and compare this total to the limits specified in Bylaws 15.5.2.1 or 15.5.5 (basketball limitations). |
| **Equivalent award.** | For use only in women's gymnastics, women's volleyball and women's tennis for monitoring the financial aid requirements for minimum awards [Bylaw 20.10.3.2-(b)]. Indicate a figure by dividing each student-athlete's total countable aid by her cost for tuition and fees, room and board, and required course-related books, rounded off to two decimal places (e.g., .75), not to exceed 1.00. |
| **Change in Status:** | Indicate a student-athlete's change in status during the academic year (student-athlete is no longer an active participant in the sport). [Note: A student-athlete who is a counter at the time of the change in status remains a counter for the remainder of the academic year unless the student-athlete qualifies for an exception (Bylaw 15.5.1.3.1, incapacitating injury or illness prior to initial practice).] |

Instructions for Head-Count Sports Other Than Football
Instruction for Equivalency Sports Other Than Baseball and Ice Hockey
Form 23-2c; Form 23-2d
Page No. 12

_____

|          |          |
|----------|----------|
| **Reason.** | Indicate the reason for a change in status as follows: |

1.   Cut or dismissed from team. (**C**)

2.   Exhausted eligibility in the sport. (**E**)

3.   Graduated. (**G**)

4.   Medical exception resulting from career-ending injury or condition. (**M**)

5.   Quit the team. (**Q**)

6.   Withdrew from the institution. (**W**)

|          |          |
|----------|----------|
| **Date.** | Indicate the effective date of the change in status. |
| **Revenue Distribution:** | See instructions on Page No. 5. |

---

### Instructions for Use with Form 23-2d
### Equivalency Sports Other Than Baseball and Ice Hockey

**Total cost Autonomy (A)/ Total cost Other (O).**   Depending on institutional equivalency designation for the student-athlete, indicate the total of each student-athlete's tuition and fees, room and board, books and other expenses related to attendance at the institution (total cost A) and the cost for tuition and fees and room and board and required course-related books (total cost O), based on the actual cost or average cost of a full grant-in-aid for all students at your institution. [Note: If you use the average-cost method, do not combine in-state and out-of-state tuition to arrive at a single average cost for tuition. Calculate separate average educational costs for in-state and out-of-state students.]

Instructions for Equivalency Sports Other Than Baseball and Ice Hockey
Instructions for Ice Hockey
Form 23-2d; Form 23-2e
Page No. 13

_____

**Equivalent award.**    Depending on institutional equivalency designation for the student-athlete, indicate a figure by dividing each student-athlete's total countable aid by either total cost (A) or total cost (O) as determined by the institution for each student-athlete rounded off to two decimal places (e.g., .75) and place in the appropriate equivalency column. [Note: If you use the **actual** cost for tuition and fees, room and board, and books, the equivalent award is calculated by dividing the **actual** amount of institutional financial aid received by the student-athlete (numerator) by the **actual** value of a full grant-in-aid (denominator). If you use the **average** cost for tuition and fees, room and board, and course-related books, the equivalent award is calculated by dividing the **average** amount of institutional financial aid received by the student-athlete (numerator) by the **average** value of a full grant-in-aid for all students at your institution (denominator).] (See Bylaw 15.5.3.2)

*How to calculate your total countable student-athletes*:

**Equivalent award.**    Add the figures and compare this total to the limits specified in Bylaw 15.5.3.1.

**Change in Status:**    Indicate a student-athlete's change in status during the academic year (student-athlete is no longer an active participant in the sport). [Notes: (1) A student-athlete who is a counter at the time of the change in status remains a counter for the remainder of the academic year unless the student-athlete qualifies for an exception (Bylaw 15.5.1.3.1, incapacitating injury or illness prior to initial practice); and (2) An undergraduate four-year transfer remains a counter through the period of award (Bylaw 15.3.3.3) unless the undergraduate four-year transfer qualifies for an exception (Bylaw 15.5.1.2.1).]]

**Reason.**    Indicate the reason for a change in status as follows:

1.    Cut or dismissed from team. (**C**)

2.    Exhausted eligibility in the sport. (**E**)

3.    Graduated. (**G**)

4.    Medical exception resulting from career-ending injury or condition. (**M**)

5.    Quit the team. (**Q**)

Instructions for Use with Baseball
Form 23-2f
Page No. 14
_____

      6.     Withdrew from the institution. (**W**)

**Date.**          Indicate the effective date of the change in status.

**Revenue Distribution:**      See instructions on Page No. 5.

---

## Instructions for Use with Form 23-2e -- Ice Hockey

**Countable Student-Athletes:**

| | |
|---|---|
| **Total cost Autonomy (A)/ Total cost Other (O).** | Depending on institutional equivalency designation for the student-athlete, indicate the total of each student-athlete's tuition and fees, room and board, books and other expenses related to attendance at the institution (total cost A) and the cost for tuition and fees, room and board, and required course-related books (total cost O), based on the actual cost or average cost of a full grant-in-aid for all students at your institution. [Note: If you use the average-cost method, do not combine in-state and out-of-state tuition to arrive at a single average cost for tuition. Calculate separate average educational costs for in-state and out-of-state students.] |
| **Equivalent award.** | Depending on institutional equivalency designation for the student-athlete, indicate a figure by dividing each student-athlete's total countable aid by either total cost (A) or total cost (O) as determined by the institution for each student-athlete rounded off to two decimal places (e.g., .75) and place in the appropriate equivalency column. [Note: If you use the **actual** cost for tuition and fees, room and board, and course-related books, the equivalent award is calculated by dividing the **actual** amount of institutional financial aid received by the student-athlete (numerator) by the **actual** value of a full grant-in-aid (denominator). If you use the **average** cost for tuition and fees, room and board and books, the equivalent award is calculated by dividing the **average** amount of institutional financial aid received by the student-athlete (numerator) by the **average** value of a full grant-in-aid for all students at your institution (denominator).] (See Bylaw 15.5.3.2) |
| **Overall.** | Place a mark in this box for each student-athlete who is receiving institutional financial aid that is countable against the maximum aid limits. |

Instructions for Ice Hockey
Form 23-2e
Page No. 15
_____


*How to calculate your total countable student-athletes:*

**Equivalent award.**  Add the figures and compare this total to the limits specified in Bylaw 15.5.7.

**Overall.**  Add the overall marks and compare this total to the limits specified in Bylaw 15.5.7.

**Change in Status:**  Indicate a student-athlete's change in status during the academic year (student-athlete is no longer an active participant in the sport). [Notes: (1) A student-athlete who is a counter at the time of the change in status remains a counter for the remainder of the academic year unless the student-athlete qualifies for an exception (Bylaw 15.5.1.3.1, incapacitating injury or illness prior to initial practice); and (2) An undergraduate four-year transfer remains a counter through the period of award (Bylaw 15.3.3.3) unless the undergraduate four-year transfer qualifies for an exception (Bylaw 15.5.1.2.1).]]

**Reason.**  Indicate the reason for a change in status as follows:

1.  Cut or dismissed from team. (**C**)

2.  Exhausted eligibility in the sport. (**E**)

3.  Graduated. (**G**)

4.  Medical exception resulting from career-ending injury or condition. (**M**)

5.  Quit the team. (**Q**)

6.  Withdrew from the institution. (**W**)

**Date.**  Indicate the effective date of the change in status.

Instructions for Ice Hockey
Form 23-2f
Page No. 16
_____

**Instructions for Use with Form 23-2f – Baseball**

<u>**Countable Student-Athletes**</u>:

| | |
|---|---|
| **Total cost Autonomy (A)/ Total Cost Other (O)** | Depending on institutional equivalency designation for the student-athlete, indicate the total of each student-athlete's tuition and fees, room and board, books and other expenses related to attendance at the institution (total cost A) and the cost for tuition and fees, room and board, and required course-related books (total cost O), based on the actual cost or average cost of a full grant-in-aid for all students at your institution.  [Note:  If you use the average-cost method, do not combine in-state and out-of-state tuition to arrive at a single average cost for tuition.  Calculate separate average educational costs for in-state and out-of-state students.] |
| **Equivalent award.** | Depending on institutional equivalency designation for the student-athlete, indicate a figure by dividing each student-athlete's total countable aid by either total cost (A) or total cost (O) as determined by the institution for each student-athlete rounded off to two decimal places (e.g., .75) and place in the appropriate equivalency column.  [Note: If you use the actual cost for tuition and fees, room and board, and course-related books, the equivalent award is calculated by dividing the actual amount of institutional financial aid received by the student-athlete (numerator) by the actual value of a full grant-in-aid (denominator).  If you use the average cost for tuition and fees, room and board, and course-related books, the equivalent award is calculated by dividing the average amount of institutional financial aid received by the student-athlete (numerator) by the average value of a full grant-in-aid for all students at your institution (denominator).]  (See Bylaw 15.5.3.2) |
| **Varsity squad size limitation championship segment.** | Indicate whether the student-athlete is a member of the declared varsity squad.  Use **Y** for yes.  The varsity squad size limit is 35.  Further, a student-athlete who is a counter (per Bylaw 15.5.1) must be included in the varsity squad limit.  Finally, the varsity squad must be declared not later than the day prior to the institution's first scheduled contest in the championship segment of the playing and practice season.  (Bylaw 17.3.8.3) |

Instructions for Baseball
Form 23-2f
Page No. 17
_____

**Overall.**          Place a mark in this box for each student-athlete who is receiving institutional financial aid that is countable against the maximum aid limits (Bylaw 15.5.4). [Note: Institutions are required to provide each counter athletically related and other countable financial aid that is equal to or greater than 25 percent of an equivalency. See Bylaw 15.5.4.1.1 for an exception for institutions that award athletically related financial aid based solely on demonstrated financial need and Bylaw 15.5.4.1.2 for an exception for a student-athlete in the final year of eligibility who has not previously received athletically related financial aid in baseball at any collegiate institution.]

*How to calculate your total countable student-athletes:*

**Equivalent award.**    Add the figures and compare this total to the limit specified in Bylaw 15.5.4.

**Overall.**          Add the overall marks and compare this total to the limits specified in Bylaw 15.5.4.

**Change in Status:**    Indicate a student-athlete's change in status during the academic year (student-athlete is no longer an active participant in the sport). [Notes: (1) A student-athlete who is a counter at the time of the change in status remains a counter for the remainder of the academic year unless the student-athlete qualifies for an exception (Bylaw 15.5.1.3.1, incapacitating injury or illness prior to initial practice); and (2) An undergraduate four-year transfer remains a counter through the period of award (Bylaw 15.3.3.3) unless the undergraduate four-year transfer qualifies for an exception (Bylaw 15.5.1.2.1).]]

**Reason.**          Indicate the reason for a change in status as follows:

1.   Cut or dismissed from team. (**C**)

2.   Exhausted eligibility in the sport. (**E**)

3.   Graduated. (**G**)

4.   Medical exception resulting from career-ending injury or condition. (**M**)

Instructions for Baseball
Form 23-2f
Page No. 18
_____

5.    Quit the team. (**Q**)

6.    Withdrew from the institution. (**W**)

**Date.**           Indicate the effective date of the change in status.

**Revenue Distribution:**    See instructions on Page No. 5.

**2023-24 Squad List**
**Bowl Subdivision Football (FBS)**
**Form 23-2a**

Institution: _____  City: _____  State: _____  Page _____ of _____

| Name/ID Number | Eligible to Compete Fall? | Eligible to Compete Spring? | Status of Student Term First Enrolled | | | | Financial Aid | | | | | | Countable SAs | | | | | | Change in Status | Revenue Dist. Only |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Any institution | Your institution | No. of years received financial aid | No. of seasons used | Recruited per Bylaw 15.02.8 | Period of award | One-year period exception | Amount of athletics grant | Amount of other countable aid | Total countable aid | Exempt | Total cost for tuition and fees, room and board, and books | Initial | Overall | Reason | Date | Equivalent award |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| Total | | Total | | Total | | | Total | | | | | | | | | | | | |

Form completed by: _____  Phone: _____  Date: _____
Signature                              Title

Form approved by: _____  Phone: _____  Date: _____
Signature                              Title

Head Coach: _____  Phone: _____  Date: _____
Signature

Director of Athletics _____  Phone: _____  Date: _____
(or designee)          Signature

**2023-24 Squad List**
**Championship Subdivision Football (FCS)**
**Form 23-2b**

Institution: _____  City: _____  State: _____  Page _____ of _____

| Name/ID Number | Eligible to Compete Fall? | Eligible to Compete Spring? | Status of Student Term First Enrolled | | | | | Financial Aid | | | | | | Countable SAs/Equivalency | | | | | | Change in Status | Revenue Dist. Only |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Any institution | Your institution | No. of years received financial aid | No. of seasons used | Recruited per Bylaw 15.02.8 | Period of award | One-year period exception | Amount of athletics grant | Amount of other countable aid | Total countable aid | Exempt | Total cost (A) /Total cost (O) | Initial | Overall | Equivalency (A) or (O) | Reason | Date | Equivalent award |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| Total | | Total | | | Totals | | | | | Total | | | | | | | | | | |

Form completed by: _____  _____  Phone: _____  Date: _____
                    Signature              Title

Form approved by: _____  _____  Phone: _____  Date: _____
                    Signature              Title

Head Coach: _____  Phone: _____  Date: _____
              Signature

Director of Athletics _____  Phone: _____  Date: _____
(or designee)         Signature

**2023-24 Squad List**
**Head-Count Sports Other Than Football**
**Form 23-2c**

Institution: _____    City: _____    State: _____    Page _____ of _____

| Name/ID Number | Eligible to Compete Fall? | Eligible to Compete Spring? | Status of Student Term First Enrolled | | | | Financial Aid | | | | | Countable SAs | | | Change in Status | Revenue Dist. Only |
| | | | Any institution | Your institution | No. of years received financial aid | No. of seasons used | Recruited per Bylaw 15.02.8 | Period of award | One-year period exception | Amount of athletics grant | Amount of other countable aid | Total countable aid | Exempt | Total cost for tuition and fees, room and board, and books | Initial | Overall | Reason | Date | Equivalent award |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| Total | | Total | | | Totals | | | | | | Total | | | | | | | | |

Form completed by: _____    _____ Title    Phone: _____    Date: _____
_____ Signature

Form approved by: _____    _____ Title    Phone: _____    Date: _____
_____ Signature

Head Coach: _____    Phone: _____    Date: _____
_____ Signature

Director of Athletics (or designee): _____    Phone: _____    Date: _____
_____ Signature

**2023-24 Squad List**
**Equivalency Sports Other Than Baseball and Ice Hockey**
**Form 23-2d**

Institution: _____ City: _____ State: _____ Page _____ of _____

| Name/ID Number | Eligible to Compete Fall? | Eligible to Compete Spring? | Status of Student Term First Enrolled | | | | | Financial Aid | | | | | | Countable SAs/Equivalency | | | | | Change in Status | Revenue Dist. Only |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Any institution | Your institution | No. of years received financial aid | No. of seasons used | Recruited per Bylaw 15.02.8 | Period of award | One-year period exception | Amount of athletics grant | Amount of other countable aid | Total countable aid | Exempt | Total cost (A)/Total Cost (O) | Equivalency (A) | Equivalency (O) | Reason | Date | Equivalent award |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| Total | | Total | | Total | | | Total | | | | | | | | | | | | |

Form completed by: _____ _____ Phone: _____ Date: _____
                         Signature                Title
Form approved by: _____ _____ Phone: _____ Date: _____
                         Signature                Title
Head Coach: _____ Phone: _____ Date: _____
                    Signature
Director of Athletics
(or designee) _____ Phone: _____ Date: _____
                    Signature

**2023-24 Squad List**
**Ice Hockey**
**Form 23-2e**

Institution: _____  City: _____  State: _____  Page _____ of _____

| Name/ID Number | Eligible to Compete Fall? | Eligible to Compete Spring? | Status of Student Term First Enrolled | | | | | Financial Aid | | | | | | Countable SAs/Equivalency | | | | | Change in Status | | Revenue Dist. Only |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Any institution | Your institution | No. of years received financial aid | No. of seasons used | Recruited per Bylaw 15.02.8 | Period of award | One-year period exception | Amount of athletics grant | Amount of other countable aid | Total countable aid | Exempt | Total cost (A)/Total Cost (O) | Equivalency (A) | Equivalency (O) | Overall | Reason | Date | Equivalent award |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| Total | | Total | | Total | Total | | | Total | | | | | | | | | | | | |

Form completed by: _____  _____  Phone: _____  Date: _____
                    Signature              Title

Form approved by: _____  _____  Phone: _____  Date: _____
                  Signature                Title

Head Coach: _____  Phone: _____  Date: _____
            Signature

Director of Athletics (or designee): _____  Phone: _____  Date: _____
                                     Signature

**2023-24 Squad List**
**Baseball**
**Form 23-2f**

Institution: _____  City: _____  State: _____  Page _____ of _____

| Name/ID Number | Eligible to Compete Fall? | Eligible to Compete Spring? | Status of Student Term First Enrolled | | No. of years received financial aid | No. of seasons used | Recruited per Bylaw 15.02.8 | Financial Aid | | | | Total countable aid | Countable SAs/Equivalency | | | | | | | Change in Status | | Revenue Dist. Only |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Any institution | Your institution | | | | Period of award | One-year period exception | Amount of athletics grant | Amount of other countable aid | | Exempt | Total cost (A)/Total cost (O) | Equivalency (A) | Equivalency (O) | Overall | Varsity Squad | Reason | Date | Equivalent award |
| | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | |
| Total | | Total | | Total | Totals | | | Total | | | | | | | | | | | | | |

Form completed by: _____  _____  Phone: _____  Date: _____
                        Signature                              Title

Form approved by: _____  _____  Phone: _____  Date: _____
                        Signature                              Title

Head Coach: _____  Phone: _____  Date: _____
                   Signature

Director of Athletics _____  Phone: _____  Date: _____
(or designee)          Signature