Scott R. Eldridge (Michigan Bar No. P66452)
Brian M. Schwartz (Michigan Bar No. P69018)
Erika L. Giroux (Michigan Bar No. P81998)
Ashley N. Higginson (Michigan Bar No. P83992)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Tel: (313) 963-6420
eldridge@millercanfield.com
schwartzb@millercanfield.com
giroux@millercanfield.com
higginson@millercanfield.com
*Attorneys for Defendants*

ROB BONTA
Attorney General of California
600 West Broadway, Suite 1800
San Diego, CA 92101
P.O. Box 85266
San Diego, CA 92186-5266
Telephone: (619) 738-9099
Fax: (619) 645-2012
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON FISK, RAQUEL CASTRO, GRETA CASTRILLON, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, and SAN DIEGO STATE UNIVERSITY<br><br>Defendants. | Case No. 3:22-cv-00173-TWR-MSB<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [ECF NO. 115]**<br><br>Date: April 10, 2025<br>Time: 1:30 p.m.<br>Courtroom: 14A<br>Judge: Hon. Todd W. Robinson<br>Magistrate: Hon. Michael S. Berg |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................iii

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................2

   A.  Legal Standard ...............................................................................................2

   B.  Plaintiffs' Proposed Injunctive Relief Class Does Not Meet the Rule 23
      Requirements...................................................................................................3

      1.  Plaintiffs' proposed class impermissibly expands Plaintiffs' claims...........................4

      2.  Plaintiffs have not met their burden to establish commonality...................................5

      3.  Plaintiffs have not met their burden to establish typicality......................................10

      4.  Plaintiffs have not met their burden to show that the proposed class
         representatives are adequate.........................................................................12

      5.  Plaintiffs have not met their burden to show that the Injunctive Relief Class
         satisfies Rule 23(b)(2) ...............................................................................13

   C.  Plaintiffs' Proposed Athletic Financial Aid Class Does Not Meet the Rule 23
      Requirements.................................................................................................14

      1.  Plaintiffs' proposed class lacks ascertainability...........................................14

      2.  Plaintiffs have not met their burden to show numerosity ...................................15

      3.  Plaintiffs have not met their burden to show commonality .....................................16

      4.  Plaintiffs have not met their burden to show typicality ...........................................17

      5.  Plaintiffs have not met their burden to show that the Athletic Financial Class
         satisfies Rule 23(b)(3) ...............................................................................18

   D.  Plaintiffs' Proposed Retaliation Class Does Not Meet the Rule 23 Requirements..........20

      1.  Plaintiffs have not met their burden to show numerosity ...................................20

      2.  Plaintiffs have not met their burden to show commonality or typicality...................21

      3.  Plaintiffs have not met their burden to show that the Retaliation Class satisfies
         Rule 23(b)(3) ...........................................................................................21

   E.  Plaintiffs Have Not Shown That Proposed Class Counsel Is Adequate for This Case....22

III.  CONCLUSION .....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Algarin v. Maybelline, LLC*,
    300 F.R.D. 444 (S.D. Cal. 2014)................................................................. 15

*In re Allergan PLC Sec. Litig.*,
    2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020)............................................24

*Alvarez v. NBTY, Inc.*,
    331 F.R.D. 416 (S.D. Cal. 2019).............................................................18, 20

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ......................................................................................3

*Biediger v. Quinnipiac Univ.*,
    2010 WL 2017773 (D. Conn. May 20, 2010) ............................................14

*Black Lives Matter Los Angeles v. City of Los Angeles*,
    113 F.4th 1249 (9th Cir. 2024).............................................2, 10, 14, 18

*Boucher v. Syracuse Univ.*,
    164 F.3d 113 (2d Cir. 1999).........................................................................12

*Bryant v. Colgate Univ.*,
    1996 WL 328446 (N.D.N.Y. June 11, 1996) .......................................6, 13

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3rd Cir. 2001) ......................................................................22

*Cole v. Oroville Union High Sch. Dist.*,
    228 F.3d 1092 (9th Cir. 2000)......................................................................11

*Coppel v. SeaWorld Parks & Ent., Inc.*,
    347 F.R.D. 338 (S.D. Cal. 2024).........................................................4, 20, 21

*In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Pracs. Litig.*,
    277 F.R.D. 586 (S.D. Cal. 2011)..................................................................10

*Cummings v. Premier Rehab Keller*,
    596 U.S. 212 (2022) ....................................................................................19

*Doe v. Madison Sch. Dist. No. 321*,
    177 F.3d 789 (9th Cir. 1999).......................................................................11

*DZ Rsrv. v. Meta Platforms, Inc.*,
    96 F.4th 1223 (9th Cir. 2024)........................................................................3

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ........................................................... 2, 3, 10, 13

*C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*,
654 F.3d 975 (9th Cir. 2011) ........................................................... 11

*Fisk v. Bd. of Trs. of Cal. State Univ.*,
2023 WL 2919317 (S.D. Cal. Apr. 12, 2023) ........................................ 15, 19, 20

*Gomez v. Rossi Concrete, Inc.*,
270 F.R.D. 579 (S.D. Cal. 2010) ...................................................... 15

*Grandson v. Univ. of Minnesota*,
272 F.3d 568 (8th Cir. 2001) .......................................................... 12

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ................................................................... 2

*Hawkins v. Kroger Co.*,
337 F.R.D. 518 (S.D. Cal. 2020) ...................................................... 4

*Kandel v. Brother Int'l Corp.*,
264 F.R.D. 630 (C.D. Cal. 2010) ...................................................... 23

*Karasek v. Regents of Univ. of Cal.*,
500 F. Supp. 3d 967 (N.D. Cal. 2020) ................................................ 17

*Kim v. Allison*,
87 F.4th 994 (9th Cir. 2023) .......................................................... 12

*Lytle v. Nutramax Lab'ys, Inc.*,
114 F.4th 1011 (9th Cir. 2024) ........................................................ 18

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2nd Cir. 1995) ......................................................... 22

*Miller v. Univ. of Cincinnati*,
241 F.R.D. 285 (S.D. Ohio 2006) ..................................................... 12

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) .......................................................... 2, 3

*Ollier v. Sweetwater Union High Sch. Dist.*,
768 F.3d 843 (9th Cir. 2014) ......................................................... 7, 21

*Portz v. St. Cloud State Univ.*,
297 F. Supp. 3d 929 (D. Minn. 2018) ................................................. 6, 14

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ........................................................ 14

Response to Plaintiffs' Motion for Class Certification (3:22-cv-00173-TWR-MSB)

*Stanley v. Trs. of Cal. State Univ.*,
    433 F.3d 1129 (9th Cir. 2006).................................................................17

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016).....................................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...........................................................................*passim*

*White v. Symetra Assigned Benefits Serv. Co.*,
    104 F.4th 1182 (9th Cir. 2024).................................................................18

*Willis v. City of Seattle*,
    943 F.3d 882 (9th Cir. 2019).................................................................5, 9

*Wrighten v. Metro. Hosps., Inc.*,
    726 F.2d 1346 (9th Cir. 1984).................................................................22

**Statutes**

Cal. Civ. P. Code § 335.1.............................................................................17

**Court Rules**

Fed. R. Civ. P. 23.................................................................................*passim*

Fed. R. Civ. P. 23(a).........................................................................................2

Fed. R. Civ. P. 23(a)(1)..................................................................................15

Fed. R. Civ. P. 23(a)(4)..................................................................................12

Fed. R. Civ. P. 23(b) ...........................................................................2, 3, 13

Fed. R. Civ. P. 23(b)(2).......................................................................3, 4, 13, 14

Fed. R. Civ. P. 23(b)(3)......................................................................*passim*

Fed. R. Civ. P. 23(c)(1)(a)..............................................................................23

**Regulations**

34 C.F.R. § 106.37(c)(1)...................................................................................6

34 C.F.R. § 106.41(c)........................................................................................7

# I.    Introduction

Plaintiffs—all former student-athletes on the rowing and track and field teams at SDSU—seek to certify three extremely broad, ill-defined classes, yet offer little by way of fact or law to support that request.  As just one problem, Plaintiffs' proposed classes impermissibly expand the scope of putative class membership alleged in their Third Amended Complaint ("TAC," ECF No. 50).  Those classes also improperly sweep in countless potential class members who experienced no harm.  And Plaintiffs' proposed Athletic Financial Aid Class is not reasonably susceptible to definition, as it is impossible to determine who "did not receive all of the athletic financial aid they could have received," and Plaintiffs shed no light on how to conduct this inquiry.  Further, Plaintiffs seek relief outside the statute of limitations with respect to their Athletic Financial Aid Class.

Even if Plaintiffs could move past those threshold problems with their proposed class definitions, they still fail to make the necessary showing that they have met the requisite criteria under Federal Rule of Civil Procedure 23.  In particular, Plaintiffs have not met their burden to show that any of their three proposed classes shares common questions of fact or law, let alone that those issues predominate with respect to their proposed Athletic Financial Aid or Retaliation Classes.  Nor, consequently, have the proposed class representatives shown that their individual claims are typical of the proposed classes.  Indeed, Plaintiffs' analysis of these factors consists of conclusory arguments and reliance on an untested and illogical damages theory propounded by their expert—the breadth of which only underscores the unsoundness of Plaintiffs' proposed classes.  Further, Plaintiffs have not met their burden to show that they and their proposed class counsel are adequate.

In short, Plaintiffs bear the burden to put forward factual evidence and legal argument sufficient to demonstrate that they should be allowed to invoke the "'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only'", *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348

Response to Plaintiffs' Motion for Class Certification (3:22-cv-00173-TWR-MSB)

(2011), and cannot simply rely on the allegations in their pleadings to do so. Despite nearly three years of litigation and ample opportunity to take discovery, Plaintiffs have failed to meet their burden. The Court should deny Plaintiffs' Motion for Class Certification (ECF No. 115).

## II.    Argument

### A.    Legal Standard.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart*, 564 U.S. at 348. "Class certification is thus not to be granted lightly." *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1258 (9th Cir. 2024). "To ensure that it is not, Rule 23 mandates that district courts 'rigorously analyze' whether a proposed class meets various requirements." *Id.* "'Plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3),' and must carry their burden of proof 'before class certification.'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275–76 (2014) (emphasis in *Olean*)).

"To take advantage of Rule 23's procedure for aggregating claims, plaintiffs must make two showings." *Olean*, 31 F.4th at 663. Specifically, "[p]arties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). As to the first:

> Rule 23(a) requires parties seeking class certification to establish: (1) that the class is so large that joinder of all members is impracticable (numerosity); (2) that there are one or more questions of law or fact common to the class (commonality); (3) that the named parties' claims

are typical of the class (typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation).

*Ellis*, 657 F.3d at 980.

"Second, the plaintiffs must show that the class fits into one of three categories" under Rule 23(b). *Olean*, 31 F.4th at 663. "Rule 23(b)(2) permits class actions for declaratory or injunctive relief if 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole'." *Ellis*, 657 F.3d at 986 (quoting Fed. R. Civ. P. 23(b)(2)).

"To qualify for the third category, Rule 23(b)(3), the district court must find that 'the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Olean*, 31 F.4th at 663–64 (quoting Fed. R. Civ. P. 23(b)(3)). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Court must thus determine "which questions are central to the plaintiffs' claim," "which of these questions are common to the class and which present individualized issues," and "whether the common questions predominate over the individual questions." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1233 (9th Cir. 2024).

## B. Plaintiffs' Proposed Injunctive Relief Class Does Not Meet the Rule 23 Requirements.

The first of Plaintiffs' three proposed classes, which they term the "Injunctive Relief Class," fails the Rule 23 inquiry on several grounds. Plaintiffs propose that this class includes "[a]ll female students who participate or, since February 7, 2022, participated in intercollegiate varsity athletics at San Diego State University" and state

that this class intends to seek injunctive relief with respect to all three claims.  (ECF No. 115, PageID.2200; ECF No. 115-1, PageID.2214-15).

### 1.    Plaintiffs' proposed class impermissibly expands Plaintiffs' claims.

That leads to the first problem with the scope of this proposed class: if the Injunctive Relief Class seeks relief as to all three claims, it impermissibly expands the class membership alleged in the TAC.  Generally, "'[t]he Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it.'"  *Coppel v. SeaWorld Parks & Ent., Inc.*, 347 F.R.D. 338, 350 (S.D. Cal. 2024).  Thus, while Plaintiffs "may *narrow* the class definition without seeking leave to amend," they may not expand class membership without amending their underlying complaint.  *Id.*; *Hawkins v. Kroger Co.*, 337 F.R.D. 518, 526 (S.D. Cal. 2020) (emphasis in original).

In the TAC, with respect to their financial aid claim, Plaintiffs sought to certify "[a] subclass for injunctive relief under Rule 23(b)(2) of <u>all current and future</u> female students who participate in intercollegiate varsity athletics at SDSU and <u>do not receive all of the athletic financial aid they could receive</u>."  (ECF No. 50, PageID.1425 (emphases added)).  Plaintiffs' proposed Injunctive Relief Class does not limit class membership by the amount of athletic financial aid a student-athlete received and therefore impermissibly expands the scope of the relief sought on a class-wide basis.  *See Coppel*, 347 F.R.D. at 350 (narrowing class proposed in class certification motion based on allegations in complaint); *Hawkins*, 337 F.R.D. at 526.

In addition, Plaintiffs filed their TAC on May 12, 2023—only individuals who were student-athletes as of that date would be "current" students, but Plaintiffs' proposed Injunctive Relief Class improperly expands class membership by more than a year, back to February 7, 2022.  The same is true with respect to the treatment-and-benefits injunctive relief class and retaliation injunctive relief subclass alleged in the TAC, which limit membership to then-current students.  (ECF No. 50, PageID.1425-26).  Thus, at a minimum, membership in the Injunctive Relief Class must be limited

1  to individuals who were student-athletes as of May 12, 2023.

2       **2.    Plaintiffs have not met their burden to establish commonality.**

3       Regardless, even if the class were properly defined, it suffers from other fatal

4  problems under Rule 23.  To show commonality, "a party must demonstrate that they

5  and the proposed class members have suffered the same injury and have claims that

6  depend on a common contention capable of class-wide resolution." *Willis v. City of*

7  *Seattle*, 943 F.3d 882, 885 (9th Cir. 2019) (citing *Wal-Mart*, 564 U.S. at 349–50).

8  That means that "[t]heir claims must depend upon a common contention," and

9  determining the "truth or falsity" of that contention "will resolve an issue that is central

10 to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 349–

11 50.  "What matters to class certification is not the raising of common questions—even

12 in droves—but rather, the capacity of a class-wide proceeding to generate common

13 *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed

14 class . . . have the potential to impede the generation of common answers." *Wal-Mart*,

15 564 U.S. at 349–50 (cleaned up; emphasis in original).

16      Plaintiffs' proposed Injunctive Relief Class fails the commonality test.  As one

17 problem, this class definition includes no requirement that a class member have

18 experienced any actual harm from SDSU's athletic policies or practices.  For example,

19 it includes female student-athletes who received the maximum amount of athletic

20 financial aid that can be awarded based on SDSU's cost of attendance and under

21 NCAA regulations.   And it includes student-athletes with no awareness of the

22 comments made during a February 2022 track-and-field Zoom meeting that form the

23 basis for Plaintiffs' retaliation claim, and who have not been impacted in any way by

24 those comments.  Further, it includes both past, present, and future student-athletes,

25 all of whom experienced a variety of conditions with respect to athletic financial aid

26 and treatment and benefits—for example, Plaintiffs have not offered evidence to show

27 that the financial aid practices that they believe to be discriminatory are still in place

28 at SDSU or will otherwise impact future students.

Courts addressing Title IX claims have rejected similarly overbroad and overinclusive class definitions. *See, e.g.*, *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 942–43 (D. Minn. 2018) (rejecting plaintiffs' proposed class definition of "[a]ll present and future St. Cloud State University female students who participate, seek to participate, or have been deterred from participating in intercollegiate athletics at St. Cloud State University" because it included student-athletes "who are not harmed by SCSU's noncompliance with Title IX"); *Bryant v. Colgate Univ.*, 1996 WL 328446, at *6 (N.D.N.Y. June 11, 1996) (rejecting proposed class of "all present and future Colgate University women students and potential students who participate, seek to participate, and/or are deterred from participating in Colgate's intercollegiate athletics program" because "the class is so broad that it includes student athletes who are effectively accommodated, e.g., women students who participated in Colgate's intercollegiate athletics program whose interests and abilities are satisfied by Colgate's current slate of women's varsity teams").

Further, Plaintiffs' proposed Injunctive Relief Class seeks relief regarding *all three* of Plaintiffs' claims, relating to unequal allocation of athletic financial aid, unequal athletic treatment and benefits, and retaliation. Those claims each involve distinctive elements and proofs that are not capable of class-wide resolution. For example, with respect to athletic financial aid, a university "must provide reasonable opportunities for such awards for members of each sex in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics." 34 C.F.R. §106.37(c)(1). Under the Policy Interpretation,[1] the Department of Education's Office for Civil Rights (charged with enforcing Title IX) "measure[s] compliance with this standard by dividing the amounts of aid available for the members of each sex by the numbers of male or female participants in the athletic program and comparing the results." (ECF No. 30-4, PageID.552-553, Pol'y Int. VII.A.2).

---

[1] (ECF No. 30-4, Dec. 11, 1979, A Policy Interpretation: Title IX and Intercollegiate Athletics, *available at* https://www2.ed.gov/about/offices/list/ocr/docs/t9interp.html).

This is a markedly different inquiry than that required to evaluate an institution's compliance with the athletic benefits component of Title IX, in which OCR "compar[es] the availability, quality and kinds of benefits, opportunities, and treatment afforded members of both sexes." (ECF No. 30-4, PageID.554, Pol'y Int. VII.B.2). "Institutions will be in compliance if the compared program components are equivalent, that is, equal or equal in effect." (*Id.*). Courts analyze several factors in regard to equitable treatment on an aggregated basis, specifically, the provision of equipment and supplies; locker rooms, practice facilities and competitive facilities; medical and training facilities and services; housing and dining facilities and services; scheduling of games and practice times; travel and per diem allowances; opportunities to receive coaching and academic tutoring; assignment and compensation of coaches and tutors; and publicity. 34 C.F.R. § 106.41(c).

And neither of those programmatic evaluations has anything to do with the elements required to prove retaliation: "a 'plaintiff who lacks direct evidence of retaliation must first make out a prima facie case of retaliation by showing (a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two.'" *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 867 (9th Cir. 2014).

The variety of proofs necessary to answer these questions on a class-wide basis across the Injunctive Relief Class and the fact that the proposed class includes individuals who have experienced no injury means that this proposed class is not capable of generating "common answers" to the "truth or falsity" of a "common contention" across the class. *Wal-Mart*, 564 U.S. at 349–50. Plaintiffs do not grapple with those problems in their motion. (*See* ECF No. 115-1, PageID.2219-21).

Instead, Plaintiffs appear to take the position that each of their three claims involves common questions and, thus, the Injunctive Relief Class satisfies commonality. (*See* ECF No. 115-1, PageID.2219-21). First, as noted above, this position ignores that the Injunctive Relief Class is defined in a way that includes

individuals who experienced no harm—for example, who received the maximum allowable amount of financial aid, who were not impacted by the February 2022 Zoom meeting, and those who received superior treatment and benefits, such as members of the women's basketball team. (*E.g.*, Ex. 1, Terry Dep. at 77-81, 102, 104; Ex. 2, Meals Spreadsheet). This argument also makes little sense in light of the fact that Plaintiffs define their proposed Athletic Financial Aid Class and Retaliation Class differently from their Injunctive Relief Class. Specifically, unlike the Injunctive Relief Class, Plaintiffs' Athletic Financial Aid Class includes only student-athletes who "did not receive all of the athletic financial aid they could have received." (ECF No. 115, PageID.2200). Plaintiffs' Injunctive Relief Class is not so limited. Similarly, Plaintiffs' Retaliation Class, unlike their Injunctive Relief Class, does not include future students. (*See id.*). The proposed Athletic Financial Aid Class and Retaliation Class also attempt to assert claims back to 2018-2019, while the Injunctive Relief Class asserts claims only from February 7, 2022, forward. (*See id.*). Plaintiffs do not acknowledge or engage with any of these inconsistencies in their motion, let alone explain precisely what common inquiry they believe the Court can conduct across these varied groups. (*See* ECF No. 115-1, PageID.2219-21). Instead, Plaintiffs allege commonality based on the fact that this lawsuit involves Title IX athletics claims, which is insufficient.

Moreover, looking at Plaintiffs' claims only confirms the individualized nature of the questions that must be answered. As to Plaintiffs' athletic financial aid claim, SDSU's coaches and administrators have confirmed during depositions that coaches have broad discretion to determine individual students' financial aid awards, including what factors to take into account, whether to award aid to a particular student-athlete at all, how much aid to award to individual student-athletes, and whether to increase or decrease a student-athlete's financial aid award each year. (Ex. 3, 30(b)(6) Dep. at 93-94; Ex. 4, Bramer Dep. at 49-50; Ex. 5, Wicker Dep. at 47-48; Ex. 1, Terry Dep. at 54-56; Ex. 6, Ochsner Dep. at 67-72; Ex. 7, Burrell Dep. at 117-20; Ex. 8, White

Dep. at 69-70).  And, in practice, each coach relies on different factors to determine how to exercise their discretion.  (*See, e.g.*, Ex. 1, Terry Dep. at 54-56; Ex. 6, Ochsner Dep. at 67-72; Ex. 7, Burrell Dep. at 117-20; Ex. 8, White Dep. at 69-70).  Plaintiffs confirmed they have no additional or contrary knowledge about how SDSU awards athletic financial aid.  (Ex. 9, Clark Dep. at 12-14, 17-18; Ex. 10, Figueroa Dep. at 13-16; Ex. 11, Fisk Dep. at 12-13, 19-22; Ex. 12, Heri Dep. at 11-13; Ex. 13, Petrine Dep. at 24-25; Ex. 14, Whitworth Dep. at 13-16).  Those highly individualized decisions regarding athletic financial aid make it impossible to determine if any specific student-athlete was actually harmed by SDSU's processes for awarding financial aid, let alone to determine whether a student-athlete would have received additional aid under an alternative distribution or how much.

Similarly, with respect to Plaintiffs' athletic treatment and benefits claim, Plaintiffs' proposed Injunctive Relief Class does not account for sport-specific decisions about roster sizes, allocation of resources, and coaching preferences that are not capable of being resolved on an Athletics Department-wide basis, including, for example, coach-specific preferences on practice times and weight room assignments. (*See, e.g.*, Ex. 4, Bramer Dep. at 50-52; Ex. 5, Wicker Dep. at 48-49, 149-50; Ex. 8, White Dep. at 83-84, 94-95, 123-24; Ex. 6, Ochsner Dep. at 27-29; Ex. 1, Terry Dep. at 100-01). And Plaintiffs' retaliation claim will require determining whether class members even knew of the comments made during the February 2022 track-and-field meeting, and then whether they experienced any impacts from those comments.

Consequently, Plaintiffs have failed to meet their burden to show the existence of common questions capable of class-wide resolution.  *See, e.g.*, *Wal-Mart*, 564 U.S. at 355–59 (holding that plaintiffs had failed to identify discriminatory company-wide policy sufficient to show commonality since individual supervisors had discretion in making employment decisions); *Willis v. City of Seattle*, 943 F.3d 882, 885–86 (9th Cir. 2019) ("Although the record contains voluminous declarations, photographs, and videos in support of a broad description of "sweeps," Appellants notably do not point

to a specific practice that applies uniformly to all proposed class members. Despite the broad allegations in their complaint, there is no evidence that every Appellant has experienced the same challenged practice or suffered the same injury due to the implementation of the MDARs or the WSDOT Guidelines."); *In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Pracs. Litig.*, 277 F.R.D. 586, 600–02 (S.D. Cal. 2011) (concluding plaintiffs failed to show common course of conduct by mortgage lender where claims involved determining suitability of loans for individual borrowers and disclosures and omissions to prospective borrowers).

While Plaintiffs may argue in reply that they have alleged that SDSU had in place policies across the Athletics Department that resulted in discriminatory treatment with respect to financial aid and treatment and benefits, at this stage, that mere allegation is insufficient to establish commonality. As the Ninth Circuit recently explained, "the plaintiffs cannot simply allege that a policy applies class-wide—they have to present evidence that it does. Or, put another way: If there is no evidence that the entire class was subject to the same allegedly illegal practice, there is no question common to the class." *Black Lives Matter Los Angeles*, 113 F.4th at 1264 (cleaned up) (concluding that plaintiffs had not adequately shown existence of common questions challenging police department's use of force and arrest practices because proving claims required evidence individualized to each class member).

In short, Plaintiffs' conclusory arguments are insufficient to establish commonality across the proposed Injunctive Relief Class.

### 3. Plaintiffs have not met their burden to establish typicality.

For similar reasons, Plaintiffs have failed to establish typicality. "To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class." *Ellis*, 657 F.3d at 984. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted). Here, Plaintiffs

argue generally that their claims and the putative class members' claims arise from "Defendants' uniform course of conduct". (ECF No. 115-1, PageID.2222). But, as explained in II.B.2, *supra*, those claims involve highly individuated proofs that are not susceptible to common answers, including with respect to the named Plaintiffs. And, more to the point, Plaintiffs have failed to identify any "uniform course of conduct," as the fact of whether a particular plaintiff or class member received a scholarship is entirely dependent on her specific coach's discretion and decision-making authority.

Further, none of the named Plaintiffs, including the proposed class representatives, is a current student-athlete at SDSU. The last named Plaintiff graduated from SDSU in December 2023, and the two proposed class representatives for the Injunctive Relief Class (Clark and Heri) have not been enrolled or active student-athletes since the Spring 2022 semester. (Ex. 15, Jan. 2025 Taormina Decl. ¶¶ 5-7, Ex. A). That means most of the named Plaintiffs, including the class representatives, have not been active student-athletes at SDSU during most of the class period. Further, the rowing Plaintiffs have not been student-athletes since the team was discontinued at the end of the Spring 2021 semester—months before the class period started. That fact alone renders their claims atypical of the class.[2]

---

[2] In addition, since no Plaintiff is currently an enrolled student-athlete (including proposed class representatives Clark and Heri), their claims for injunctive and declaratory relief are moot. *See Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000) ("It is well-settled that once a student graduates, he no longer has a live case or controversy justifying declaratory and injunctive relief against a school's action or policy.") That rule applies to all of Plaintiffs' requests for declaratory and injunctive relief on their financial aid (Count I), treatment and benefits (Count II), and retaliation (Count III) claims. No injunction or declaration that this Court could issue—particularly not an injunction governing SDSU's future conduct (*see* TAC, ECF No. 50, PageID.1426-27)—would provide any redress for harms those Plaintiffs have allegedly experienced. For example, an injunction directing SDSU's allocation of athletic financial assistance could and would only affect financial aid to students presently receiving (or who in the future might receive) scholarships from SDSU; it would simply have no impact on former students who have already graduated or left, and Plaintiffs' TAC contains no allegations refuting that conclusion. Because any such relief would not accrue to the benefit of any named Plaintiff, their claims for injunctive and declaratory relief are moot. *See, e.g., Cole*, 228 F.3d at 1098–99; *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 983 (9th Cir. 2011) (affirming that student's graduation mooted claims for declaratory relief); *Doe v. Madison Sch. Dist. No. 321*,

(continued…)

In sum, particularly given the absence of evidence presented by Plaintiffs that current and future student-athletes will experience the same conditions or practices at issue in the TAC, the fact that no named Plaintiff is a current or future student-athlete at SDSU, and the number of individualized questions necessary to evaluate each class member's claims, the named Plaintiffs' claims are not typical of the class.

### 4.    Plaintiffs have not met their burden to show that the proposed class representatives are adequate.

Plaintiffs have further failed to meet their burden to demonstrate adequacy under Rule 23(a)(4). "The adequacy inquiry is addressed by answering two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023). Here, both proposed representatives of the Injunctive Relief Class were student-athletes on the track and field team, yet they seek to represent a very broad class of <u>all</u> female student-athletes, from <u>all</u> sports.

Courts across the country have regularly declined to certify an all-sports class where the proposed class representatives were from a single sport, recognizing the inherent risks that the class representatives will seek to elevate and benefit their preferred sport over others, especially given the overall limited resources available within a university athletics department. *See, e.g.*, *Boucher v. Syracuse Univ.*, 164 F.3d 113, 119 (2d Cir. 1999) (affirming that district court "correctly found potential conflicts between members of a class that included both women interested in playing varsity lacrosse and women who wished to play varsity softball"); *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285 (S.D. Ohio 2006) (finding "an inherent conflict between the named plaintiffs," who were members of the rowing team, and the proposed class,

_____

177 F.3d 789, 798 (9th Cir. 1999) ("A student's graduation moots claims for declaratory and injunctive relief . . ."); *see also Grandson v. Univ. of Minnesota*, 272 F.3d 568, 574–75 (8th Cir. 2001) (dismissing Title IX claim of student who left school prior to graduation as moot).

which included all current, future, and potential female participants in the university's athletics program, since "compliance could conceivably be achieved, in part, by taking away the allegedly paltry resources allocated to women's rowing and bestowing them along with new resources on other women's varsity sports, a prospect to which the representatives would not likely be amenable"); *Bryant*, 1996 WL 328446 (declining to certify class encompassing all female students participating or interested in intercollegiate athletics, finding that proposed class representatives (women's ice hockey players) were not adequate because, "where the number of programs available are limited, plaintiffs' interests would be antagonistic to those of other interested and able athletes who might desire elevation of their own sport").

### 5.    Plaintiffs have not met their burden to show that the Injunctive Relief Class satisfies Rule 23(b)(2).

Plaintiffs have also failed to show that Rule 23(b) certification is appropriate. Rule 23(b)(2) allows for certification of a class where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole". Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Ellis*, 657 F.3d at 986 (internal quotation marks omitted). Thus, "individualized monetary claims belong in Rule 23(b)(3)." *Wal-Mart*, 564 U.S. at 362.

As one problem, because Plaintiffs seek monetary damages for their financial aid and retaliation claims, those claims are not properly included within the Injunctive Relief Class. *See Wal-Mart*, 564 U.S. at 360–61 ("[A]t a minimum, claims for *individualized* relief (like the backpay at issue here) do not satisfy the Rule [Rule 23(b)(2)] . . . . [Rule 23(b)(2)] does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.") (emphasis in original); Advisory Comm. Note to 1996 Amend. to Fed. R. Civ. P. 23 ("The subdivision [(b)(2)] does not extend to cases in which the appropriate final relief

1  relates exclusively or predominantly to money damages.").

2      Further, "[w]hile common questions need not predominate over individual
3  questions for a class to be certified as a Rule 23(b)(2) injunctive class, district courts
4  still must identify what questions are common to the class and how the plaintiffs will
5  present evidence about those questions on a class-wide basis." *Black Lives Matter*
6  *Los Angeles*, 113 F.4th at 1265.  In their motion, Plaintiffs offer barely any explanation
7  as to how their claims meet this standard here, other than to declare that "these claims
8  are readily amenable to certification under Rule 23(b)(2)."  (ECF No. 115-1,
9  PageID.2229).  But Plaintiffs never identify any specific allegedly retaliatory or
10  discriminatory policy or practice of SDSU that they believe applies on a class-wide
11  basis, for any of their three claims. (*See id.*).  Moreover, the lack of common questions
12  is explained in detail in Section II.B.2, *supra*.  And none of the three cases cited by
13  Plaintiffs supports certification under these circumstances.  *Portz* specifically noted
14  that the plaintiffs had not sought certification under Rule 23(b)(2).  297 F. Supp. 3d at
15  946, n.5.  The plaintiffs in *Biediger* did not seek damages on a class-wide basis—only
16  injunctive and declaratory relief.  *See Biediger v. Quinnipiac Univ.*, 2010 WL
17  2017773, at *8 (D. Conn. May 20, 2010).  And *Rodriguez v. Hayes*, 591 F.3d 1105
18  (9th Cir. 2010), was not a Title IX case at all.

19      For all of these reasons, the Court should deny certification of Plaintiffs'
20  proposed Injunctive Relief Class.

21  **C.    Plaintiffs' Proposed Athletic Financial Aid Class Does Not Meet the Rule**
22  **23 Requirements.**

23      Plaintiffs' second proposed class, the "Athletic Financial Aid Class," also fails
24  the Rule 23 inquiry.  Plaintiffs propose that this class includes "[a]ll female students
25  who participated in intercollegiate varsity athletics at San Diego State University from
26  the 2018-2019 academic year to the present and did not receive all of the athletic
27  financial aid they could have received."  (ECF No. 115, PageID.2200).

28      **1.    Plaintiffs' proposed class lacks ascertainability.**

"Though not explicitly stated in Rule 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 454 (S.D. Cal. 2014). "It must be administratively feasible to determine whether a particular person is a class member as 'an identifiable class exists if its members can be ascertained by reference to objective criteria, but not if membership is contingent on a prospective member's state of mind.'" *Id.* Here, neither Plaintiffs nor their expert offer any explanation as to how the Court could determine the maximum amount of athletic financial aid a student-athlete "could have received." And none of the proposed class representatives was able to answer this question during her deposition. (Ex. 9, Clark Dep. at 36-38; Ex. 10, Figueroa Dep. at 43-44; Ex. 11, Fisk Dep. at 48-51; Ex. 12, Heri Dep. at 37-39; Ex. 13, Petrine Dep. at 50; Ex. 14, Whitworth Dep. at 38-39). It is therefore impossible to determine who would be a member of Plaintiffs' proposed Athletic Financial Aid class.

### 2. Plaintiffs have not met their burden to show numerosity.

"Rule 23(a)(1) requires that the proposed class be 'so numerous that joinder of all members is impracticable.'" *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 588 (S.D. Cal. 2010) (quoting Fed. R. Civ. P. 23(a)(1)). "The numerosity requirement 'requires examination of the specific facts of each case and imposes no absolute thresholds.'" *Gomez*, 270 F.R.D. at 588. "Although a plaintiff is not required to denote a precise number of class members, the central question is whether Plaintiffs have sufficiently identified and demonstrated the existence of the numbers of persons for whom they speak." *Id.* (cleaned up). Here, because Plaintiffs have failed to sufficiently define the Athletic Financial Aid Class, they likewise have not provided evidence of how many student-athletes would be members of that class, *i.e.*, how many student-athletes "did not receive all of the athletic financial aid they could have received." Not every student-athlete is entitled to receive an athletic scholarship, *Fisk v. Bd. of Trs. of Cal. State Univ.*, 2023 WL 2919317, at *9 (S.D. Cal. Apr. 12, 2023),

1  and Plaintiffs have thus failed to demonstrate numerosity.

2      **3.    Plaintiffs have not met their burden to show commonality.**

3          For many of the same reasons explained in Section II.B.2, Plaintiffs have failed

4  to show the existence of common questions with respect to the Athletic Financial Aid

5  Class. Specifically, Plaintiffs have defined this class in such a way that the viability

6  of each putative class member's claim depends on the exercise of her coach's

7  discretion. During discovery, SDSU's coaches and administrators confirmed that the

8  head coach of each team has very broad discretion to decide how to award athletic

9  financial aid among student-athletes on their team, including what factors to consider

10 in deciding whether to award scholarship dollars and how many. (Ex. 3, 30(b)(6) Dep.

11 at 93-94; Ex. 4, Bramer Dep. at 49-50; Ex. 5, Wicker Dep. at 47-48; Ex. 7, Burrell

12 Dep. at 117-20; Ex. 6, Ochsner Dep. at 67-72; Ex. 8, White Dep. at 69-70; Ex. 1, Terry

13 Dep. at 54-56). Each proposed class representative likewise indicated that she

14 understood that the head coach of her team had broad discretion to award scholarship

15 dollars based on factors the coach considered important. (Ex. 9, Clark Dep. at 12-14,

16 17-18; Ex. 10, Figueroa Dep. at 13-16; Ex. 11, Fisk Dep. at 12-13, 19-22; Ex. 12, Heri

17 Dep. at 11-13; Ex. 13, Petrine Dep. at 24-25; Ex. 14, Whitworth Dep. at 13-16).

18 SDSU's coaches and administrators also confirmed that athletic financial aid awards

19 are constrained by NCAA limitations.

20         In other words, the amount of athletic financial aid that a student-athlete

21 hypothetically "could have received" necessarily depends on a number of factors that

22 would require resolution on an individual basis for each year at issue, including but

23 not limited to the amount of athletic financial aid she in fact received; the amount of

24 other scholarship awards and grants she received; whether she was an in-state or out-

25 of-state student; whether her team awarded the maximum allowable number of

26 scholarships under NCAA rules and regulations; her athletic performance; her

27 contributions to the team; and her academic eligibility; among other factors. As just

28 one example, if a student-athlete performed poorly during the competition season and

her team was at or near the maximum allowable NCAA scholarship limit, Plaintiffs have offered no reasonable basis to infer that that student-athlete could or would have received more under a hypothetical alternative distribution, particularly since exceeding the NCAA scholarship limit would jeopardize eligibility. Those highly individualized, student-specific inquiries destroy commonality.

Plaintiffs' proposed Athletic Financial Aid Class also suffers from another problem: it seeks to include claims beyond the two-year statute of limitations applicable to Title IX claims in California. *See Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006) ("Title IX claims are subject to the applicable state statute of limitations for personal injury actions."); *Karasek v. Regents of Univ. of Cal.*, 500 F. Supp. 3d 967, 978 (N.D. Cal. 2020); Cal. Civ. Proc. Code § 335.1. Here, the proposed class members plainly knew the amount of their scholarships and their cost of tuition for the 2018-2019 academic year—and thus, for example, the amount of tuition not covered by their scholarships—long before August 19, 2019, the date on which the tolled statute of limitations began to run. (*See* Op., ECF No. 38, PageID.805). Indeed, mid-August was several months *after* the 2018-2019 academic year concluded in May 2019. Any claim for purportedly unequal financial assistance during the 2018-2019 academic year is therefore time-barred; that certain class members' claims are barred by the statute of limitations is yet another reason why commonality does not exist within the class.

### 4. Plaintiffs have not met their burden to show typicality.

Plaintiffs have likewise failed to show that their claims are typical of the broader Athletic Financial Aid Class. As explained in Sections II.B.2 and II.C.3, *supra*, evaluating the total amount of athletic financial aid that a student-athlete "could have received" is a highly individualized inquiry dependent on a variety of student-specific and team-specific factors that cannot be resolved on a class-wide basis. Indeed, the actual amounts of athletic financial aid received by each named Plaintiff (which range from $0 to nearly the full cost of attendance) underscore the individualized nature of

1    this inquiry and its inherent variability across student-athletes, teams, and years. (*See*
2    Op., ECF No. 49, PageID.1288 (chart showing total aid received by each Plaintiff)).

### 5. Plaintiffs have not met their burden to show that the Athletic Financial Class satisfies Rule 23(b)(3).

5      For the Court to certify a class under Rule 23(b)(3), Plaintiffs must show "that
6    the questions of law or fact common to class members predominate over any questions
7    affecting only individual members, and that a class action is superior to other available
8    methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.
9    23(b)(3).  Though similar to commonality, "the predominance inquiry goes further
10   and 'asks whether the common, aggregation-enabling, issues in the case are more
11   prevalent or important than the non-common, aggregation-defeating, individual
12   issues.'"  *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1023 (9th Cir. 2024)
13   (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).  "Showing
14   predominance is difficult, and it 'regularly presents the greatest obstacle to class
15   certification.'"  *Black Lives Matter Los Angeles*, 113 F.4th at 1258.  Further, "[u]nder
16   the predominance inquiry, plaintiffs must demonstrate that 'damages are capable of
17   measurement on a classwide basis.'"  *Alvarez v. NBTY, Inc.*, 331 F.R.D. 416, 426
18   (S.D. Cal. 2019).  Thus, "Plaintiff must present a damages model consistent with her
19   theory of liability—that is, a damages model purporting to serve as evidence of
20   damages in this class action must measure only those damages attributable to that
21   theory.'"  *Id.*

22      In their motion, Plaintiffs make little effort to demonstrate that this proposed
23   class meets the predominance requirement.  (*See* ECF No. 115-1, PageID.2230-35).
24   As explained in Sections II.B.2 and II.C.3, *supra*, determining whether any member
25   of the proposed class actually experienced any harm presents a highly individualized
26   inquiry involving that student-athlete's athletic performance, the remaining aid
27   available to the team under NCAA regulations, and the head coach's discretion,
28   among other factors. *See White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th

1182, 1195–96 (9th Cir. 2024) (denying certification where plaintiffs' claims required "examining the full extent of the plaintiffs' circumstances, their communications with defendants, their understanding of the deals they were entering, and the proceedings in the state courts that approved them") ("Given the personalized nature of the factoring transactions and the accompanying state court review process, the causal chain here is simply too individualized and multi-dimensional to permit the conclusion that the assertedly common issues are more prevalent than the non-common ones.").

Further, even assuming that money damages are available to remedy such a claim on a class-wide basis,[3] Plaintiffs have not presented any viable damages model. In their motion, Plaintiffs rely on a report from their expert suggesting that this Court could award damages by determining the shortfall between athletic financial aid to men's and women's teams on a class-wide basis, and then applying an "escalator" formula that would increase the amount to be awarded in damages beyond the actual numerical shortfall, thereby awarding female student-athletes amounts in excess of what they would have received if aid had been proportional.  (*See* ECF No. 115-12, PageID.2388-91; *see also* Ex. 16, O'Brien Suppl. Report at 14-20 (explaining problems with Plaintiffs' damages model)).  But no similar model has *ever* been applied by a court or by OCR to remedy a Title IX financial aid violation.  (*See* Ex. 16, O'Brien Suppl. Report at 14-15, 18).  And Plaintiffs' damages model relies on an average harm theory which, as the Court already recognized, is an insufficient method for demonstrating an injury.  *Fisk*, 2023 WL 2919317, at *14.

Even setting aside those fundamental problems, neither Plaintiffs nor their expert explain how this pool of money could be allocated as damages among class members.  (*See* ECF No. 115-12, PageID.2388-91).  If Plaintiffs intend for it to be awarded proportionally to all student-athletes who "did not receive all of the athletic financial aid they could have received," that only proves the unworkability of this

---

[3] SDSU asserts that the damages Plaintiffs seek here are not available under *Cummings v. Premier Rehab Keller*, 596 U.S. 212 (2022).

model and the individualized nature of the damages Plaintiffs seek.  For example, they do not explain why someone who received no scholarship should receive any scholarship.  Instead, they appear to be relying on a right to a scholarship which does not exist under Title IX.  *Fisk*, 2023 WL 2919317, at *9.  Moreover, given the number of highly individualized considerations affecting a particular student-athlete's athletic financial aid award—including their performance, including in comparison to other student-athletes on the team, and NCAA limitations—it is impossible to determine in hindsight whether and how a coach would have awarded additional athletic financial aid funds.  (*See* Ex. 16, O'Brien Suppl. Report at 14-20).  *See also Alvarez*, 331 F.R.D. at 426 (denying class certification for lack of predominance where plaintiffs failed to present workable damages model).

For all of these reasons, the Court should deny certification of Plaintiffs' proposed Athletic Financial Aid Class.

## D.    Plaintiffs' Proposed Retaliation Class Does Not Meet the Rule 23 Requirements.

Plaintiffs' third proposed class, the "Retaliation Class," similarly fails the Rule 23 inquiry.  Plaintiffs propose that this class includes "[a]ll female students who participated in intercollegiate varsity athletics at San Diego State University from the 2018-2019 academic year to the present."  (ECF No. 115, PageID.2200).

### 1.    Plaintiffs have not met their burden to show numerosity.

Plaintiffs have not shown that the proposed Retaliation Class meets the numerosity requirement.  *See Coppel*, 347 F.R.D. at 355 ("'The numerosity requirement requires examination of the specific facts of each case . . .'").  Here, Plaintiffs have not identified how many individuals they believe were purportedly impacted by the comments made during a February 2022 track-and-field team Zoom meeting.  During discovery, Plaintiffs identified barely a dozen other student-athletes whom they believed had declined to join or participate in this lawsuit.  (*See* Ex. 17, Pls.' Suppl. Interrog. Resps.).  That is below the threshold generally found to be

sufficient for class action treatment, and Plaintiffs have not shown that joinder of those individuals is impracticable. *See Coppel*, 347 F.R.D. at 355 ("'As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough.'").

### 2. Plaintiffs have not met their burden to show commonality or typicality.

As indicated in Section II.B.2, Plaintiffs have failed to show the existence of common questions with respect to the Retaliation Class. Plaintiffs' retaliation claim centers on comments made by a track-and-field coach during a team Zoom meeting in February 2022. Yet, Plaintiffs' proposed class includes former student-athletes as far back as the 2018-19 academic year who were no longer enrolled at SDSU at the time of that February 2022 meeting and who have absolutely no knowledge of any comments made during that meeting, nor experienced any adverse impacts as a result of that meeting; the same is true of individuals who became student-athletes following the February 2022 meeting.[4] The proposed class also includes individuals who, even if current student-athletes, know nothing of the February 2022 Zoom meeting and/or experienced no adverse impacts from it. *See Ollier*, 768 F.3d at 867 (requiring adverse action for retaliation claim).

For the same reasons, Plaintiffs have not demonstrated that their claims are typical of the class—the lack of commonality among class members renders the named Plaintiffs' claims dissimilar to the class at large.

### 3. Plaintiffs have not met their burden to show that the Retaliation Class satisfies Rule 23(b)(3).

Similarly, Plaintiffs have failed to show that any common questions

---

[4] Even if Plaintiffs had sufficiently identified a common question in general regarding their retaliation claim, expanding their proposed class back to the 2018-19 makes no logical sense when the alleged retaliation did not occur until February 2022, and Plaintiffs offer no explanation for this expansive outer bound. At a minimum, the Retaliation Class should be limited to individuals who were student-athletes at the time of the Zoom meeting (which creates a numerosity problem).

1    predominate over individualized inquiries.  The broad scope of Plaintiffs' proposed
2    class requires class member-specific proofs regarding whether that individual had any
3    subjective knowledge of the February 2022 Zoom meeting and whether she
4    experienced any deterrent or adverse action as a consequence.

5        For all these reasons, the Court should deny certification of Plaintiffs' proposed
6    Retaliation Class.

7    **E.    Plaintiffs Have Not Shown That Proposed Class Counsel Is Adequate for**
8        **This Case.**

9        Plaintiffs' proposed class counsel is also inadequate due to their prosecution of
10   this litigation to date, the conflicts they have created, and placement of their financial
11   interest ahead of the needs of the proposed class, as evidenced by their engagement
12   letter. Adequacy of counsel is a valid and relevant basis for denying a motion for class
13   certification.  *Wrighten v. Metro. Hosps., Inc.*, 726 F.2d 1346, 1352 (9th Cir. 1984).

14       As one problem, proposed class counsel's "greater concern for receiving a fee
15   than for pursuing the class claims" signifies an irreconcilable conflict.  *Maywalt v.*
16   *Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078, (2nd Cir. 1995).  While "class
17   counsel has an ethical duty of undivided loyalty to the interests of the class, reason for
18   concern remains [because] . . . . a rational, self-interested lawyer looks to maximize
19   his or her net fee, and thus wants the representation to end at the moment where the
20   difference between his or her fees and costs—which include not only the money that
21   the lawyer spends in advancing his or her client's cause but also the opportunities for
22   other work that the lawyer gives up by pursuing it—is greatest."  *In re Cendant Corp.*
23   *Litig.*, 264 F.3d 201, 255 (3rd Cir. 2001).  Thus, there is "reason to fear that class
24   counsel will be highly imperfect agents for the class." *Id.*

25       Specifically, Plaintiffs' initial engagement letter with lead counsel Arthur Bryant
26   and the Bailey Glasser Firm prohibited Plaintiffs from settling the matter without the
27   consent of counsel and not until "my attorneys . . . receive payment in accordance with
28   this agreement."  (Ex. 18, BG Engmt. Ltr. ¶¶ 3, 11).  Plaintiffs' current engagement

letter with Mr. Bryant and his new firm, the Clarkson Law Firm, again requires the class representative to agree that, if SDSU is "willing to give me some or all of the relief I am seeking (or something else) if I agree to waive my claim to recover some or all of my costs, expenses, or attorneys' fees," Plaintiffs will not enter into such an agreement; if they do, they must "pay my attorneys' costs, expenses, and attorneys' fees (hours worked times hourly rates) myself." (Ex. 19, CLF Engmt. Ltr. ¶ 4). This language inherently ensures that Plaintiffs—recent college graduates who could likely never afford to pay the exorbitant fees—are not the decision-makers here and can only enter into an agreement that is acceptable to their attorneys. In other words, the terms of the retainer agreement place decision-making authority in the hands of class counsel, rather than Plaintiffs.

Class actions are not meant to be lawyer-driven pursuits; proposed class counsel's conduct in keeping control over any possibility of resolution of this matter due to their desire to garner a fee makes them inadequate.

Finally, "[i]n assessing whether class representatives and their counsel will vigorously prosecute a class action litigation, courts may consider the actual progress of the proceedings to that point." *Kandel v. Brother Int'l Corp.*, 264 F.R.D. 630, 634 (C.D. Cal. 2010). This lawsuit was filed in February 2022 (ECF No. 1). Despite Rule 23(c)(1)(a)'s guidance that class certification should be sought "at an early practicable time after a person sues," Plaintiffs first sought to certify a class *nearly three years later*, in November 2024 (ECF No. 115). *Kandle*, 264 F.R.D. at 634 ("Delays in seeking class certification," and unprofessional conduct during discovery "are factors that suggest that the class representative is inadequate.").

Throughout that time, Plaintiffs (who have been continuously represented by the same lead counsel, Arthur Bryant, and two other law firms, Casey Gerry Schenk, Francavilla Blatt & Penfield, LLP and Haeggquist & Eck, LLP, have unnecessarily prolonged this matter and dragged out discovery. Among other failures to timely prosecute this case, Plaintiffs filed four successive complaints, portions of which were

dismissed for mootness, lack of standing, and failure to state a viable legal claim; sought numerous extensions of discovery—including three extensions attributable to the transition of counsel from Bailey Glasser to Clarkson Law Firm (a transition that resulted in a nearly three-month period during which counsel took effectively no action to move this case forward and eventually led to the same attorney previously from Bailey Glasser (Lori Bullock) conducting nearly all the depositions (*see* ECF No. 96, PageID.2106)); repeatedly manufactured discovery disputes and sought "do-overs" of discovery, including attempting to serve interrogatories months after the deadline to serve written discovery had lapsed; and declined to take any depositions until shortly before the close of discovery. These delays and procedural fumbling in the prosecution of this case make proposed class counsel inadequate.

As another example, proposed class counsel Casey Gerry and Haeggquist & Eck (as well as attorneys Bryant and Bullock) have been involved in this case since its inception. But Plaintiffs nonetheless requested a months-long delay before filing their motion for class certification and multiple extensions of discovery, apparently due to the transition of lead counsel from Bailey Glasser to Clarkson Law Firm. That attorneys from Casey Gerry or Haeggquist & Eck could not provide any assistance in briefing or in moving this case forward during this transition raises a sincere question of adequacy. Indeed, since the initiation of this litigation, the attorneys from Casey Gerry and Haeggquist & Eck have not engaged in communications with SDSU or its counsel, have not filed anything other than their appearances, and have not appeared for or taken any depositions (or, as far as SDSU can tell, any other discovery in this matter). Their presence as class counsel in this matter appears merely to be driving up costs. *See, e.g.*, *In re Allergan PLC Sec. Litig.*, 2020 WL 5796763 at *7 (S.D.N.Y. Sept. 29, 2020) (denying class certification because representative was inadequate; court held "multiple firms tends to inflate legal fees to the detriment of the other class members" and disagreed that "two firms can litigate as cheaply as one").

Proposed counsel has shown a superior interest in pursuing their fees,

Response to Plaintiffs' Motion for Class Certification (3:22-cv-00173-TWR-MSB)

multiplying those fees, and unnecessarily prolonging this litigation, to the detriment to the class.    Ultimately, this makes them inadequate to represent their proposed classes here, regardless of counsel's qualifications or past successes.

### III.    Conclusion

For the foregoing reasons, Defendants request that the Court deny Plaintiffs' Motion for Class Certification (ECF No. 115).

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: */s/ Scott R. Eldridge*
       Scott R. Eldridge (P66452)
       Brian M. Schwartz (P69018)
       Ashley N. Higginson (P83992)
       Erika L. Giroux (P81998)
       123 W. Allegan St., Suite 200
       Lansing, Michigan 48933
       eldridge@millercanfield.com
       schwartzb@millercanfield.com
       higginson@millercanfield.com
       giroux@millercanfield.com

Dated: January 29, 2025       *Attorneys for Defendants*

Response to Plaintiffs' Motion for Class Certification (3:22-cv-00173-TWR-MSB)

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system that will send notification of such filing upon all ECF filing participants.

*/s/ Scott R. Eldridge*
Scott R. Eldridge (P66452)
eldridge@millercanfield.com

Response to Plaintiffs' Motion for Class Certification (3:22-cv-00173-TWR-MSB)