David S. Casey, Jr. (SBN 60768)
Gayle M. Blatt (SBN 122048)
**CASEY GERRY FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811
dcasey@cglaw.com
gmb@cglaw.com

Arthur H. Bryant (SBN 208365)
**ARTHUR BRYANT LAW, P.C.**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Tel: (510) 391-5454
arthur@arthurbryantlaw.com

*Attorney for Plaintiffs*

Brian M. Schwartz (Mich. Bar P69018)
Scott R. Eldridge (Mich. Bar P66452)
Erika L. Giroux (Mich. Bar P81998)
Ashley N. Higginson (Mich. Bar P83992)
**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Tel: (313) 963-6420
schwartzb@millercanfield.com
eldridge@millercanfield.com
giroux@millercanfield.com
higginson@millercanfield.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

MADISON FISK, RAQUEL CASTRO, GRETA CASTRILLON, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY and SAN DIEGO STATE UNIVERSITY,

Defendants.

Case No. 3:22-cv-00173-TWR-MSB

**BRIEF IN SUPPORT OF JOINT MOTION FOR
(1) CLASS CERTIFICATION;
(2) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
(3) APPROVAL OF PROPOSED CLASS NOTICE; AND
(4) SCHEDULING OF FAIRNESS HEARING**

Judge: Hon. Todd W. Robinson

Date: November 20, 2025

Time: 1:30 P.M. PST

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................iv

I.  INTRODUCTION. ...................................................................................1

II.  BACKGROUND FACTS AND PROCEDURAL HISTORY.....................2

III.  PROPOSED TERMS OF THE SETTLEMENT.........................................2

    A.  Meaningful Relief for the Classes.................................................2

    B.  Costs and Attorneys' Fees.............................................................4

    C.  Proposed Notice to the Class.........................................................5

    D.  Rule 23(e)(3) Statement. ...............................................................5

IV.  CLASS DEFINITION AND CLASS NATURE OF TITLE IX CLAIMS. 5

V.  THE COURT SHOULD CERTIFY THE PROPOSED CLASSES. ..........6

    A.  The Proposed Classes Satisfy the Requirements of Rule 23(a)(1)–(4)..................................................................................................7

        1.  The proposed class is numerous, and joinder of all Class Members is impracticable. ......................................................7

        a)  Class Size. ..............................................................................7

        b)  Joinder is Impractical. ...........................................................8

        2.  Commonality.........................................................................8

        3.  The Class Representatives' Claims are Typical of Those of the Class. ...............................................................................9

        4.  The Class Representatives and Their Counsel Are Adequate Representatives. ...................................................................10

        a)  Class Representatives. ..........................................................10

        b)  Class Counsel.......................................................................10

    B.  THE REQUIREMENTS OF RULE 23(B)(2) ARE SATISFIED. .11

    C.  THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED. .12

        1.  Common Questions of Law and Fact Predominate. .............13

        2.  Certification for the Purpose of Settlement is Superior to Alternate Methods of Adjudication. .....................................15

VII.  THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ..........................................................................18

A.    The Proposed Settlement Is Fair, Reasonable, and Adequate.........18

1.    The Classes have been and are adequately represented by the Class Representatives and Class Counsel. ............................18

2.    The settlement was the result of arms-length negotiations...19

3.    The Parties engaged in discovery and motion practice before discussing settlement..............................................................19

4.    The settlement avoids the risks, costs, and delay of litigating the case through trial. ...........................................................19

5.    The value of immediate implementation of the review of equitable treatment of female student-athletes weighs in favor of the settlement. ..................................................................20

6.    The settlement treats all Class Members equally.................21

7.    Plaintiffs and their counsel believe the proposed settlement is fair, reasonable, and adequate. ..............................................21

8.    The presence of a governmental participant. ......................21

9.    The reaction of Class Members to the proposed settlement. 22

VIII. RULE 23(E)(2)(C) VALUATION. ...........................................................22

A.    The Proposed Settlement Sum for Class 2 and Allocation Plan Provides Relief That Is Fair, Reasonable, and Adequate...............22

IX.   The Court Should Approve the Parties' Proposed Notice Plan.................24

X.    CONCLUSION...........................................................................................26

# TABLE OF AUTHORITIES

**CASES**

*A. B. v. Hawaii State Dep't of Educ.*,
    30 F.4th 828 (9th Cir. 2022) ...................................................................7

*Aldapa v. Fowler Packing Co., Inc.*,
    323 F.R.D. 316 (E.D. Cal. 2018) ...........................................................14

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................... 10, 12, 13, 15

*Anders v. California State Univ., Fresno*,
    1:21-cv-00179, 2025 WL 755664 (E.D. Cal. Mar. 10, 2025) ...............6

*Atkins v. Toan*,
    595 F. Supp. 104 (W.D. Mo. 1984)........................................................8

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) .....................................................................11

*Barnes v. The American Tobacco Company*,
    161 F.3d 127 (3d Cir. 1998) .................................................................11

*Biediger v. Quinnipiac Univ.*,
    928 F. Supp. 2d 414 (D. Conn. 2013).....................................................6

*Cannon v. University of Chicago*,
    441 U.S. 677 (1979)..............................................................................12

*Castillo v. Bank of Am., NA*,
    980 F.3d 723 (9th Cir. 2020) ................................................................13

*Cohen v. Brown Univ.*,
    991 F.2d 888 (1st Cir. 1993).................................................................21

*Communities for Equity v. Michigan High Sch. Athletic Ass'n*,
    192 F.R.D. 568 (W.D. Mich. 1999)........................................................9

*Evans v. Wal-Mart Stores, Inc.*,
    No. 2:17-CV-07641, 2022 WL 22879278 (C.D. Cal. June 30, 2022) .18

*Fenn v. Hewlett-Packard Co.*,
    No. 1:11-CV-00244, 2012 WL 6680358 (D. Idaho Dec. 21, 2012) ....16

*Foltz v. Delaware State Univ.*,
    269 F.R.D. 419 (D. Del. 2010) ....................................................................8

*Gay v. Waiters' and Dairy Lunchmen's Union*,
    549 F.2d 1330 (9th Cir. 1977) ...............................................................12

*Grekco v. Diesel, Inc.*,
    277 F.R.D. 419 (N.D. Cal. 2011) ...........................................................15

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1101 (9th Cir. 1998) ........................................ 15, 17, 18, 22

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................................19

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014) ...........................................................12

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) .................................................................12

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007)................................................17

*Kelley v. Bd. of Trustees*,
    35 F.3d 265 (7th Cir. 1994) ...................................................................21

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) .................................................................22

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) ............................................................20

*Martinez v. Knight Transportation, Inc.*,
    No. 1:16-CV-01730, 2023 WL 2655541 (E.D. Cal. Mar. 27, 2023) ...17

*Morgan v. Rohr, Inc.*,
    No. 3:20-CV-00574, 2025 WL 1285830 S.D. Cal. May 1, 2025) .....6, 9

*Mullane v. Central Hanover Trust*,
    339 U.S. 306 (1950)................................................................................24

*Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .................................................................22

*Ollier v. Sweetwater Union High Sch. Dist.*,
    251 F.R.D. 564 (S.D. Cal. 2008) ............................................................6

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ..............................................................9

*Rapuano v. Trustees of Dartmouth College*,
    334 F.R.D. 637 (D.N.H. 2020). ..........................................................14

*Retta v. Millennium Prods.*,
    CV15–1801, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017)...............23

*Robinson v. Metro-North Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2011) ...............................................................11

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ....................................................... 17, 22

*Santiago v. City of Philadelphia*,
    72 F.R.D. 619 (E.D. Pa. 1976)..............................................................8

*Slaven v. BP Am., Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000)...........................................................7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................6

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)..................................................................... 13, 14

*Uschold v. NSMG Shared Servs., LLC*,
    333 F.R.D. 157 (N.D. Cal. 2019) ........................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)......................................................................8, 17

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ............................................................11

**STATUTES**

20 U.S.C. § 1681 *et. seq.* ............................................................................1

42 U.S.C. § 1988 ........................................................................................4

**OTHER AUTHORITIES**

44 Fed. Reg. 71,413 (1979) .............................................................................14

**RULES**

FED. R. CIV. P. 23(a) ................................................... 6, 7, 8, 9, 10, 11

FED. R. CIV. P. 23(b)(2) ................................................... 11, 12

FED. R. CIV. P. 23(b)(3) ................................................... 12, 13, 15

FED. R. CIV. P. 23(e) ....................................... 5, 16, 17, 18, 24, 25

**TREATISES**

7A Wright & Miller §1776 .............................................................11

*Conte, 1 Newberg on Class Actions* 3d 4.11 ..................................11

Manual for Complex Litigation, § 21.632.......................................18

**REGULATIONS**

34 C.F.R. § 106.37(c) ....................................................................13

Plaintiffs Madison Fisk, Carina Clark, Natalie Figueroa, Olivia Petrine, Kamryn Whitworth, Kaitlin Heri, Raquel Castro, Greta Viss (Castrillon), Helen Bauer, Erica Grotegeer, Aisha Watt, Sara Absten, Eleanor Davies, Alexa Dietz, and Larisa Sulcs (collectively "Plaintiffs"), and Defendant Board of Trustees of California State University ("SDSU"),[1] by and through counsel, submit this Brief in Support of their Motion for Class Certification, Preliminary Approval of Proposed Class Action Settlement, Approval of the Proposed Class Notice, and Scheduling of the Fairness Hearing.

## I.    INTRODUCTION.

Plaintiffs were members of the varsity women's track and field and rowing teams at SDSU. On February 7, 2022, Plaintiffs filed suit against SDSU, individually and on behalf of similarly situated persons, alleging violations of Title IX of the Educational Amendments of 1972 (20 U.S.C. § 1681 *et. seq.*) ("Title IX").

Plaintiffs allege that SDSU's varsity athletic program is not in compliance with Title IX regarding athletic financial aid and athletic benefits and treatment. *See generally* Third Amended Complaint, ECF No. 50. Plaintiffs also allege that SDSU retaliated against them for filing their lawsuit in violation of Title IX. *Id.* Plaintiffs and SDSU ("the Parties") have negotiated in good faith a resolution of all claims, including those asserted on behalf of the Classes.

On behalf of the proposed classes, the Parties now request that the Court certify the proposed Rule 23(b)(2) and 23(b)(3) classes for the purposes of settlement pursuant to Federal Rule 23(e). The Parties also request the Court grant preliminary approval of the settlement, which provides meaningful relief to the Classes and SDSU. This is a fair, reasonable, and adequate result for the Classes and SDSU and

---

[1] As used in this Brief, "SDSU" refers to Defendant Board of Trustees of California State University, which is the State of California acting in its higher education capacity (mistakenly also sued as "San Diego State University").

warrants the Court's preliminary approval, along with approval of the proposed Class notice and scheduling of the Fairness Hearing.

## II.     BACKGROUND FACTS AND PROCEDURAL HISTORY.

On February 7, 2022, after pre-litigation resolution discussions were unsuccessful, Plaintiffs filed their Complaint against SDSU alleging that the University did not provide male and female student-athletes with equal opportunity for athletic financial aid and equal athletic treatment and benefits. ECF No. 1. On April 21, 2022, Plaintiffs filed their First Amended Complaint, including a count for retaliation in violation of Title IX. ECF No. 24. The University denied, and continues to deny, Plaintiffs' allegations. After rulings on the University's dispositive motions, the Court held that Plaintiffs could proceed on all three of Plaintiffs' claims. *See* ECF No. 60 (Order on Motion to Dismiss Third Amended Compl.); ECF No. 65 (Order Granting Motion to Modify the Court's Order); *See generally* ECF Nos. 26–38, 41–65.

Following extensive discovery by both parties, Plaintiffs filed for class certification on November 22, 2024, which SDSU contested. ECF No. 115. On March 7, 2025, while Plaintiffs' motion was pending, the Parties participated in a full-day settlement conference with Magistrate Judge Michael S. Berg. ECF No. 133. The parties continued to engage in settlement negotiations with Judge Berg serving as the neutral mediator between the parties until August 13, 2025, when the Parties engaged in another half-day settlement conference with Judge Berg and were able to reach a resolution as described below. ECF No. 153.

## III.     PROPOSED TERMS OF THE SETTLEMENT.

### A.     <u>Meaningful Relief for the Classes.</u>

The proposed Settlement Agreement resolves all claims at issue in this lawsuit. Ex. A, Proposed Settlement Agreement. The Settlement Agreement provides injunctive relief for all Class Members and monetary relief as well to the members of proposed Class 2.

For the Rule 23(b)(2) class injunctive relief, SDSU agrees to hire a mutually-agreeable neutral third-party to conduct a Gender Equity Review of its athletic department using the process consistent with the U.S. Department of Education's Office for Civil Rights' 1990 Title IX Investigator's Manual. *Id.* ¶¶ 8–13. SDSU further agrees that it will use the findings of the Gender Equity Review to implement a Gender Equity Plan. The third-party Title IX Reviewer must be satisfied that, once implemented, SDSU's athletic department will be in compliance with Title IX's requirements regarding athletic financial aid and athletic treatment and benefits by the end of the 2026-27 academic year, as described in the Settlement Agreement. *Id.* ¶¶ 14–18. To monitor compliance, the proposed Settlement Agreement provides that, from July 31, 2026 through July 31, 2028, SDSU will provide an annual summary update regarding its implementation of the Gender Equity Plan. *Id.* ¶ 21. To maintain transparency, SDSU will post the Gender Equity Plan and its annual summary reports on the university's varsity athletics website. *Id.* ¶¶ 18, 22. SDSU also agrees that in addition to addressing any findings in the Gender Equity Review it will provide specific relief that includes: (1) providing equitable nutrition to a comparable number of male and female student-athletes; (2) providing coaches for men's and women's teams the option of having their teams travel by airplane to competitions more than a 6-hour drive away from the SDSU campus in an equitable manner; (3) providing coaches for men's and women's teams the opportunity to have their teams stay in hotels before competitions in the San Diego area in an equitable manner; (5) making repairs to the women's outdoor track, which are anticipated to be completed in the 2025-26 academic year, and continue to assess the track facility for additional repairs; (6) replacing the turf on the field used by the women's varsity lacrosse team for practices and competitions no later than the 2027-28 academic year; (6) providing a person who is not a coach or a member of the team to record and/or stream home competitions equitably for men's and women's teams, and (7) providing professional

photography services and publicity equitably to men's and women's teams. *Id.* ¶ 24(a–f).

For the Rule 23(b)(3) monetary relief, SDSU agrees to pay a total, gross amount of $300,000 to members of Class 2. Proposed Class Counsel is responsible for proposing an allocation of these funds that is fair to the class and for administering the distribution. Proposed Class Counsel has identified 826 female student-athletes that are members of proposed Class 2, and they would each be receiving a portion of those funds. SDSU will play no role in determining the proposed allocation of these funds. SDSU maintains these payments are non-precedential and do not constitute an agreement that Plaintiffs or any student-athletes are entitled to the alleged damages sought in the Third Amended Complaint.

For Plaintiffs' retaliation claim, SDSU is agreeing to certain provisions related to the named Plaintiffs only. *Id.* ¶30.[2]

### B.    Costs and Attorneys' Fees.

The Settlement Agreement provides that, subject to approval by the Court, SDSU will pay the total, gross sum of $1,300,000 to Plaintiffs' counsel for Plaintiffs' proposed reasonable litigation costs, and attorneys' fees. *Id.* ¶ 31. This payment will be made in accord with Title IX and the Civil Rights Attorney's Fees Award Act of 1976. *See* 42 U.S.C. § 1988. For purposes of this Settlement Agreement, SDSU does not oppose a $1,300,000 payment, and it will not seek to have this amount reduced. Ex. A, ¶ 31. Plaintiffs' counsel agrees not to seek more than that amount. *Id.* This amount will be paid by SDSU, not by the Classes. *Id.* The amount to be paid is a significant reduction from the lodestar calculated by Class Counsel (hours expended multiplied by their usual hourly rates), which Plaintiffs agreed to accept in the interest of concluding the proposed settlement. Ex. C, Bullock Decl. ¶ 27.

---

[2] Plaintiffs are not seeking approval of a class their retaliation claim as this claim is being settled on an individual basis for the Named Plaintiffs.

**C.**     **Proposed Notice to the Class.**

The Parties have agreed to the proposed "NOTICE OF PROPOSED CLASS ACTION SETTLEMENT IN TITLE IX ATHLETICS LITIGATION AND NOTICE OF A FAIRNESS HEARING" that will be sent to all members of Class 1 and Class 2, defined below, by sending them an email with a link to the Notice and Proposed Settlement Agreement documents and maintaining a link that will be posted on SDSU's varsity athletic website to provide notice to all Class Members.[3] Ex. B, Proposed Notice. As required by Federal Rule of Civil Procedure 23(e)(2), the notice explains the nature of the controversy, the details of the Settlement Agreement, the right of all Class Members to object to it and the right of members of Class 2 to opt out of the Settlement. It also explains the process for submitting a timely objection to the Court, opting out of Class 2, and being heard at the "Fairness Hearing." *Id.*

**D.**     **Rule 23(e)(3) Statement.**

Pursuant to Rule 23(e)(3), Plaintiffs hereby notify the Court that, other than as stated in the proposed Settlement Agreement, there are no agreements requiring disclosure that were "made in connection with the proposal." *See* FED. R. CIV. P. 23(e)(3).

**IV.   CLASS DEFINITION AND CLASS NATURE OF TITLE IX CLAIMS.**

The Parties agree, through the Settlement Agreement, that the classes should be defined as:

Pursuant to Federal Rule of Civil Procedure 23(b)(2):

Class 1: All female students who participate in intercollegiate varsity athletics through the termination of the Settlement Agreement or, since February 7, 2022, participated in intercollegiate varsity athletics at San Diego State University.

---

[3] Members of proposed Class 2 are also members of proposed Class 1, but not all members of Class 1 are members of Class 2.

Pursuant to Federal Rule of Civil Procedure 23(b)(3):

Class 2: All female students who participated in intercollegiate varsity athletics at San Diego State University from the 2018-2019 academic year through the 2024-2025 academic year and did not receive all of the athletic financial aid they could have received.

A single class action is appropriate in this case to address the program-wide allegations in Plaintiffs' operative complaint and ensures that individual students will not be required to bring separate actions. Courts have recognized the class-based nature of Title IX claims and have certified classes including present, prospective, future, and deterred female students. *See, e.g.*, *Ollier v. Sweetwater Union High Sch. Dist.*, 251 F.R.D. 564, 565 (S.D. Cal. 2008) (certifying class for participation and treatment and benefits claims); *Anders v. California State Univ., Fresno*, 1:21-cv-00179, 2025 WL 755664, at *1 (E.D. Cal. Mar. 10, 2025) (certifying class for participation and treatment and benefits claims); *Biediger v. Quinnipiac Univ.*, 928 F. Supp. 2d 414 (D. Conn. 2013) (certifying class for participation, athletic financial aid, and treatment and benefit claims).

## V. THE COURT SHOULD CERTIFY THE PROPOSED CLASSES.

When determining whether to certify a class, the court looks to Federal Rule of Civil Procedure 23, particularly subsections (a) and (b). Plaintiffs must satisfy all four of the requirements of Rule 23(a). Although SDSU previously disputed that class certification was appropriate in this case, in the interest of resolving this dispute SDSU no longer contests class certification.

The Ninth Circuit has a strong judicial policy that favors settlements in class actions. *Morgan v. Rohr, Inc.*, No. 3:20-CV-00574, 2025 WL 1285830, at *4 (S.D. Cal. May 1, 2025). By providing a single forum in which to litigate similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources of federal courts. *Id.* at *7. However, "in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the

fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). "Courts reviewing class action settlements must ensure that unnamed Class Members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (cleaned up).

### A.   The Proposed Classes Satisfy the Requirements of Rule 23(a)(1)–(4).

Rule 23(a) provides that a proposed class must satisfy four requirements: One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

1.   the class is so numerous that joinder of all members is impracticable;
2.   there are questions of law or fact common to the class;
3.   the claims or defenses of the representative parties typical of the claims or defenses of the class; and
4.   the representative parties will fairly and adequately protect the interests of the class.

The proposed classes readily satisfy these requirements.

> 1.   The proposed class is numerous, and joinder of all Class Members is impracticable.

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000); *see also A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 837 (9th Cir. 2022) (discussing that a class of over 300 students satisfies numerosity).

> *a)*   *Class Size.*

Here, during the 2023-24 academic year alone, there were 225 female students-athletes at SDSU. *See, e.g.*, Ex. D (NCAA SDSU Athletic Participation). Each year during the class period more women were added to the class as women students matriculated at SDSU. All these individuals are members of the proposed Class 1,

because all were allegedly affected by the alleged Title IX violations in SDSU's intercollegiate athletic program. While Class 2 has less Class Members, it is still over 800 women. Ex. C, ¶ 5. There are simply too many female athletes involved to add them all as individual plaintiffs.

> b)    *Joinder is Impractical.*

Joinder is also impracticable because of the inherently fluid nature of the proposed class. As discussed, its members have already changed during this litigation and will continue to do so as new female-athletes enroll at SDSU and others transfer or graduate. Approximately 25 percent of SDSU's female intercollegiate athletes change each year simply because of the nature of academic programs and the athletic eligibility limitations of the NCAA. *See Santiago v. City of Philadelphia*, 72 F.R.D. 619, 624 (E.D. Pa. 1976) (constant rotation of juveniles through youth study center made joinder impracticable in an action challenging the legality of the center's policies); *Atkins v. Toan*, 595 F. Supp. 104, 105 (W.D. Mo. 1984) (joinder impracticable when class membership is fluid).

> 2.    Commonality.

Commonality is satisfied because it is clear "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Only one common question is necessary. *Dukes*, 564 U.S. at 359. "The common questions of law and fact belonging to both the named plaintiffs and the larger class include whether [SDSU] is in compliance with its obligations under Title IX and, if not, whether any proposed corrective actions [SDSU] might take would bring it into compliance with the statute." *Foltz v. Delaware State Univ.*, 269 F.R.D. 419, 423 (D. Del. 2010).

In the instant case, the claims of all proposed Class Members include the same legal questions: whether SDSU engaged in sex discrimination and violated Title IX through (1) the allocation of athletic financial aid to varsity student-athletes and (2) the allocation of benefits and treatment to varsity student-athletes. As set forth above,

these claims are inherently class-based because they require a program-wide comparison of how SDSU treats its sex-segregated men's and women's teams.

The factual questions are also common. For example, they include:

- Which athletic benefits (such as equipment, supplies, uniforms, coaching, facilities, travel, academic support, recruiting support, etc.) does SDSU provide to male and female athletes?

- How much athletic financial aid does SDSU provide on a program-wide basis to all its male athletes combined as compared to all its female athletes combined?

These are similar to the questions of law and fact that were found to be common to the plaintiffs in the Title IX class actions cited above. As the nature of Title IX claims necessarily depends on how all women are being treated versus how all men are being treated, the proposed class satisfies the requirements of Rule 23(a)(2).

3. The Class Representatives' Claims are Typical of Those of the Class.

Rule 23(a)'s third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a). "The representative claims are typical if they are 'reasonably co-extensive with those of absent class members,' though they 'need not be substantially identical.'" *Morgan*, WL 1285830, at *6 (quoting *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)).

Here, the named Plaintiffs' claims are not just typical of the class claims; they are identical. They allege that they (1) have been denied or imminently will be denied an equal allocation of the benefits and treatment provided to varsity male student-athletes at SDSU and (2) have been denied an equal allocation of athletic financial aid provided to male student-athletes at SDSU. *See Communities for Equity v. Michigan High Sch. Athletic Ass'n*, 192 F.R.D. 568, 573 (W.D. Mich. 1999) ("[T]he variety of alleged manifestations of discrimination, such as inequitable facilities, scheduling, sanctioning, and rules, present a sufficient case of an underlying policy

or practice of discrimination."). All Class Members would benefit from the relief in the Settlement Agreement to address both claims. Plaintiffs satisfy their burden of showing typicality.

4. <u>The Class Representatives and Their Counsel Are Adequate Representatives.</u>

Rule 23(a)'s fourth requirement is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). This requires Plaintiffs to demonstrate both that (1) the named Plaintiffs do not have interests that are antagonistic to the class and (2) their attorneys are competent to handle the litigation.

a) *Class Representatives.*

Two factors generally inform whether class representatives satisfy the Rule 23(a)(4) requirement: "(1) absence of conflict and (2) assurance of vigorous prosecution." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (holding that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members).

Proposed Class Representatives Madison Fisk, Carina Clark, Natalie Figueroa, Olivia Petrine, Kamryn Whitworth, and Kaitlin Heri will fairly, adequately, and vigorously represent the interests of the class. The Class Representatives do not have interests antagonistic to the interests of the members of the class. And they do not expect that any will arise.

b) *Class Counsel.*

The undersigned counsel has devoted substantial and sufficient efforts to investigating the facts and identifying the potential claims in this action, have detailed knowledge of the applicable law, and have sufficient resources to commit to representing this putative class. Plaintiffs' counsel will adequately represent the class in this case. Class Counsels' experience in handling Title IX class and individual

1  actions, as well as complex class actions, is addressed in the attached declaration. *See*

2  Ex. C, ¶¶6–10.

3  **B.      THE REQUIREMENTS OF RULE 23(B)(2) ARE SATISFIED.**

4      Rule 23(b)(2) authorizes class action certification where "the party opposing

5  the class has acted or refused to act on grounds generally applicable to the class,

6  thereby making appropriate final injunctive relief or corresponding declaratory relief

7  with respect to the class as a whole." FED. R. CIV. P. 23(b)(2).

8      A Rule 23(b)(2) "class action is intended for cases where broad, class-wide

9  injunctive or declaratory relief is necessary to redress a group-wide injury." *Robinson*

10  *v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 162 (2d Cir. 2011) (citing FED. R.

11  CIV. P. 23(b)(2), advisory committee note (1966)); 7A Wright & Miller §1776

12  ("[S]ubdivision (b)(2) was added to Rule 23 in 1966 in part to make it clear that civil

13  rights suits for injunctive or declaratory relief can be brought as class actions."). The

14  rule is satisfied "even if the action or inaction has taken effect or is threatened only as

15  to one or a few members of the class, provided it is based on grounds which have

16  general application to the class." FED. R. CIV. P. 23 (b)(2), advisory committee note

17  (1966). Thus, even if only the named Plaintiffs or even if only some of SDSU's female

18  athletes were subjected to SDSU's alleged sex discrimination, this action would

19  satisfy the requirements of Rule 23(b)(2) because SDSU's policies and actions are

20  generally applicable to all members of the prospective class.

21      Here, the relief in the Settlement Agreement is injunctive relief affecting the

22  class as a whole. Plaintiffs' claims are particularly tailored to injunctive relief. The

23  (b)(2) class "serves most frequently as the vehicle for civil rights actions and other

24  institutional reform cases that receive class action treatment." *Baby Neal v. Casey*, 43

25  F.3d 48, 58-59 (3d Cir. 1994). "As the Advisory Committee Notes explain, 23(b)(2)

26  was adopted in order to permit the prosecution of civil rights actions." *Walters v.*

27  *Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998); *see also Barnes v. The American Tobacco*

28  *Company*, 161 F.3d 127 (3d Cir. 1998) (*citing* Conte, *1 Newberg on Class Actions* 3d

4.11) (noting Rule 23(b)(2) was "designed for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often ascertainable or amorphous class of persons."); *Gay v. Waiters' and Dairy Lunchmen's Union*, 549 F.2d 1330, 1333 (9th Cir. 1977) (court reversed district court's denial of class certification because it failed to consider broad remedial purposes of Title VII); *see also Cannon v. University of Chicago*, 441 U.S. 677, 706 (1979) (discussing broad remedial purpose of Title IX).

Because all requirements have been met, proposed Class 1 is properly certifiable under Rule 23(b)(2).

### C.    THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED.

After establishing each of the Rule 23(a) requirements, plaintiffs seeking certification must show the proposed class satisfies at least one subsection of Rule 23(b)(3). Here, the Parties seek, for settlement purposes only, certification of Class 2 under Rule 23(b)(3).

It is permissible in the Ninth Circuit to certify two separate classes, provided that the injunctive relief class satisfies the requirements of Rule 23(b)(2) and the damages class satisfies Rule 23(b)(3). *See, e.g.*, *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014) (stating "Rather, Ninth Circuit precedent indicates that the court can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class."). Moreover, courts recognize that Rule 23 factors are relaxed when certifying a class for settlement purposes. *See Amchem Products, Inc.*, 521 U.S. at 619 (observing that "[s]ettlement is relevant to a class certification"); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) ("But whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement."). Finally, when considering certification for settlement only, the court need not consider the "manageability" factor of the class action. *Amchem Prods., Inc.*, 521 U.S. at 620. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over

any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

      1.  <u>Common Questions of Law and Fact Predominate.</u>

The predominance inquiry tests whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. But predominance "does *not* require a plaintiff seeking class certification to prove that every element of their claim is susceptible to classwide proof, so long as one or more common questions predominate." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020) (emphasis added). As the Supreme Court stated:

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some other affirmative defenses peculiar to some individual Class Members.

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

    Indeed, district courts should assess predominance keeping in mind that a "class action would achieve economies of time, effort, and expense, and promote…uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods. Inc.*, 521 U.S. at 615.

Common questions of law and fact predominate in the matter *sub judice*: the legal determination of whether SDSU discriminated against female student-athletes by failing to give substantially proportional financial aid as given to their male counterparts is common to *every* member of Class 2, *see*, 34 C.F.R. § 106.37(c)(1), and evidenced by the same common examination of Defendant's athletic participation and financial aid award records. In its 1979 Policy Interpretation, the Office of Civil Rights instructed that assessing this claim required determination of "the amounts of aid available for the members of each sex" and "the numbers of male or female

participants in the athletic program," and then "comparing the results." 44 Fed. Reg. 71,413, 71,415 (1979).

The common facts revolve almost exclusively around SDSU's proportionality of affording financial aid opportunities to female and male student athletes relative to their participation rates. Such analysis is numbers-driven based on data SDSU maintains and is not subsumed by issues of individualized perception or experience.[4] Thus, the same factual evidence and calculation methodology would suffice for a prima facie showing susceptible to generalized, class-wide proof. *Tyson Foods, Inc.*, 577 U.S. at 453.

One illustrative case is *Rapuano v. Trustees of Dartmouth College*, where the district court granted preliminary approval (and ultimately final approval) of a Title IX and Rule 23(b)(3) class action settlement. 334 F.R.D. 637, 652 (D.N.H. 2020). In *Rapuano,* named plaintiffs alleged misconduct by college professors that included sexual harassment, coercion into sexual relationships, and a culture of binge drinking and sexual banter. Reviewing the proposed settlement for Rule 23(b)(3) certification, the district court found the predominance factor satisfied even in the nuanced sexual harassment and gender discrimination context. *Id*. at 652, 654. The district court was persuaded that the element of liability for a hostile educational environment that required individualized determination *did not* predominate over the other common questions. *Id* at 651. Moreover, the proposed settlement obviated any need to litigate said individualized issues and therefore manageability concerns did not undermine a finding of predominance. *Id.* Finding that common questions predominated under Rule 23(b)(3), the district court granted certification of the class for settlement purposes. *Id*. Similar to the court's finding in *Rapuano*, the predominance element is

---

[4] District courts regularly certify cases where institutional policies can be gleaned from looking to a single body of evidence that is in defendant's own records. *See, e.g.*, *Aldapa v. Fowler Packing Co., Inc.*, 323 F.R.D. 316, 338 (E.D. Cal. 2018).

met here, where common issues hinge on a relatively formulaic proportionality-to-participation rates standard.

Finally, any individualized issues relating to damages is not a barrier to Rule 23(b)(3) certification. This element is satisfied under Rule 23(b)(3).

2. <u>Certification for the Purpose of Settlement is Superior to Alternate Methods of Adjudication.</u>

The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the class action procedure will be achieved in the particular case and "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. Rule 23(b)(3) provides a list of non-exhaustive factors relevant to superiority of a class action, including: (a) class members' interest in controlling separate actions; (b) the extent and nature of any suits involving the same controversy already initiated; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) manageability concerns. *See* FED. R. CIV. P. 23(b)(3); *Grekco v. Diesel, Inc.*, 277 F.R.D. 419, 428 (N.D. Cal. 2011). Here, class treatment is superior to other methods of adjudication. Plaintiffs' Counsel is not aware of any other pending related separately filed actions in state or federal courts, *see*, Ex. C, ¶ 14, and there is no indication that Class Members have expressed an interest in controlling separate actions. While no other suits involving the same controversy have been initiated, settling the question of whether SDSU violated Title IX in its allocation of athletic financial aid to male and female student-athletes is best done through the class mechanism to prevent the danger of inconsistent judgments.

Finally, there is no more manageable form of adjudication than a voluntary settlement with an efficient and equitable extrajudicial process. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial."). This is especially true given that this Settlement allows for the over 800 women comprising Class 2 to

receive compensation as absent Class Members—plus many will benefit from the future programmatic measures set forth in the Settlement Agreement and the input of the Title IX Reviewer—without the need for further long and protracted litigation. For the foregoing reasons and pursuant to Rule 23(b)(3), Class 2 should be preliminarily certified for settlement purposes.

## VI. ENTRY OF AN ORDER PRELIMINARILY APPROVING THE PARTIES' CLASS SETTLEMENT IS NECESSARY AND APPROPRIATE.

Review and approval of a class action settlement involves three steps. First, the court preliminarily approves the proposed settlement. FED. R. CIV. P. 23(e)(2). Second, members of both classes who would be bound by the proposed settlement must be given "notice in a reasonable manner." FED. R. CIV. P. 23(e)(1)(B). Finally, the court holds a hearing to determine whether the proposed settlement is fair, reasonable, and adequate. FED. R. CIV. P. 23(e)(1)(C). Preliminary approval of a class action settlement, in contrast to final approval, is "at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Fenn v. Hewlett-Packard Co.*, No. 1:11-CV-00244, 2012 WL 6680358, at *1 (D. Idaho Dec. 21, 2012). At the preliminary approval stage, "the settlement need only be potentially fair." *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019) (cleaned up).

Rule 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind Class Members, it may only be approved after a hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2). Prior to the 2018 amendment to Rule 23(e) that added the above factors, the Ninth Circuit had crafted its own set of factors relevant to a proposed settlement's fairness, reasonableness, and adequacy. "District courts may consider some or all of these factors." *Campbell*, 951 F.3d at 1121 (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009)). These include:

[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Campbell*, 951 F.3d at 1121 (quoting *Hanlon*, 150 F.3d at 1026, *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

Courts generally grant preliminary approval if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Martinez v. Knight Transportation, Inc.*, No. 1:16-CV-01730, 2023 WL 2655541, at *6 (E.D. Cal. Mar. 27, 2023) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). "The Court has broad discretion to grant preliminary approval of class action settlement under the circumstances here, where it is fair, adequate, reasonable, and not a product of collusion." *Evans v. Wal-Mart*

*Stores, Inc.*, No. 2:17-CV-07641, 2022 WL 22879278, at *5 (C.D. Cal. June 30, 2022) (cleaned up).

If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Manual for Complex Litigation, § 21.632; FED. R. CIV. P. 23(e)(1)(B). Because all the requirements for preliminary approval are satisfied here, the Court should grant preliminary approval, approve the Parties' proposed form and method of notice of the class action settlement, and schedule the final fairness hearing.

## VII. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

### A. The Proposed Settlement Is Fair, Reasonable, and Adequate.

Plaintiffs allege that SDSU has violated and continues to violate Title IX in its varsity intercollegiate athletic program. SDSU disputes that. Thus, the Parties are using settlement to resolve legitimate factual and legal disputes. The proposed settlement is fair, reasonable, and adequate.

1. <u>The Classes have been and are adequately represented by the Class Representatives and Class Counsel.</u>

After over three and a half years of hard-fought litigation, the Parties have negotiated a resolution of this litigation. From the Plaintiffs' perspective, the litigation included, among other things, conducting pre-suit investigation, preparing four detailed complaints, successfully defending three motions to dismiss, preparing written discovery, analyzing over 57,000 pages of discovery, defending and taking 31 depositions, including those of 16 members of SDSU's financial aid office and athletic department, submitting two expert reports, advancing a motion for class certification, attending numerous hearings (contributing to 156 docket entries in the District Court), attending several settlement/mediation conferences, and most recently, negotiating and documenting the settlement itself. Ex. C, ¶ 11.

2.  <u>The settlement was the result of arms-length negotiations.</u>

The Settlement Agreement is the product of arm's-length negotiations between the Parties and their experienced counsel at a point when both the Plaintiffs and SDSU possessed more than sufficient evidence and knowledge to allow them to make informed decisions about the strengths and difficulties of their respective cases. The negotiations involved months of efforts and settlement conferences with United States Magistrate Judge Michael S. Berg.

Given the protracted history of this case that ultimately was resolved through mediation with the oversight of the federal magistrate, the Court should find that the negotiations were well-informed, conducted properly, and negotiated at arm's length. There is no fraud or collusion underlying this Settlement, and it was reached as a result of extensive arm's-length negotiations, occurring over the course of several months and following mediation with a respected mediator. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (presence of a neutral mediator is a factor weighing in favor of a finding of non-collusiveness). Here, the arm's-length nature of the Parties' negotiations weighs in favor of preliminary approval.

3.  <u>The Parties engaged in discovery and motion practice before discussing settlement.</u>

As already described above, prior to achieving the proposed settlement, the Parties had already engaged in extensive motion practice, depositions, and exchanged over 57,000 pages of discovery, containing the necessary data for Class Counsel and SDSU's counsel to evaluate the strengths and weaknesses of this case, which favors preliminarily approving the proposed settlement.

4.  <u>The settlement avoids the risks, costs, and delay of litigating the case through trial.</u>

"Although it is not the role of the Court at this stage of the litigation to evaluate the merits . . . it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact

the case if it were litigated." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693–94 (D. Colo. 2006) (internal quotations omitted). As strongly as both sides feel about the merits of their stance, each side here recognizes serious questions of law and fact exist in this case.

Though the Parties were able to ultimately agree to a settlement, they still disagree on numerous factual and legal issues. SDSU continues its position that its athletic department provides equal athletic financial aid and treatment and benefits to its female student-athletes in compliance with Title IX. Further, while Plaintiffs are optimistic about their chances of success at trial, they also recognize there are a number of significant obstacles they would still have to overcome to achieve success on behalf of the Classes. Importantly, the Settlement Agreement, which provides significant relief to the Classes, renders the resolution of these questions unnecessary and provides a guaranteed resolution in the face of uncertainty. Considering the asserted claims and defenses of the Parties and the risks and delays of litigation, the Settlement Agreement clearly falls within the range of reasonableness contemplated by Rule 23(e).

5. <u>The value of immediate implementation of the review of equitable treatment of female student-athletes weighs in favor of the settlement.</u>

The complexity, uncertainty, expense, and likely duration of further litigation and appeals also support approval of the proposed Settlement Agreement. As prior Title IX athletics litigation shows, there is a strong likelihood that, without settlement, the Parties would face years of protracted litigation in this Court and the appellate courts. Further, given that each year Class Members graduate from the university, immediate resolution permits more class members to benefit from the steps SDSU will take which in and of themselves will require SDSU to expend resources, through the Gender Equity Review and Gender Equity Plan described in the Settlement Agreement. In addition, it is important to note that, if Plaintiffs were successful at trial, the injunctive remedies would be substantially similar to the relief obtained

through the Settlement Agreement, as defendants in Title IX cases are afforded considerable discretion in deciding how to bring their programs into compliance with Title IX. *See, e.g.*, *Kelley v. Bd. of Trustees*, 35 F.3d 265, 272 (7th Cir. 1994) (discussing the discretion of schools about how to equalize athletic benefits); *Cohen v. Brown Univ.*, 991 F.2d 888, 906–07 (1st Cir. 1993) (same). Therefore, the value of the Settlement Agreement still outweighs the benefits of possible future relief after lengthy and costly litigation.

6. The settlement treats all Class Members equally.

The proposed settlement relief treats all Class Members equally. Plaintiffs are not receiving any additional relief (or even a service award) that would suggest that their agreement to the terms of the proposed settlement is motivated by anything other than what is in the best interests of the Classes.

7. Plaintiffs and their counsel believe the proposed settlement is fair, reasonable, and adequate.

Finally, the Parties believe the Settlement Agreement is fair, reasonable, and adequate. Here, Plaintiffs' counsel—attorneys with considerable experience in Title IX class actions—only agreed to settle this action after a thorough investigation, written discovery, data analyses, and significant arm's-length negotiations. Additionally, as noted above, Plaintiffs and Plaintiffs' counsel have compared the benefits the class will receive from the resolution of the litigation against the risks, delays, and uncertainties of continued litigation and appeals. Plaintiffs were involved in and stayed apprised of the litigation and contributed to settlement negotiations. Plaintiffs and Plaintiffs' counsel believe the Settlement Agreement is fair, reasonable, and adequate and should be approved.

8. The presence of a governmental participant.

The Settlement Agreement does not prohibit any government action and affords SDSU discretion regarding the specific actions it takes to bring its athletic program into compliance with Title IX. *See Hanlon*, 150 F.3d at 1028 (upholding a

class settlement agreement involving a governmental participant), *overruled on other grounds by Dukes*, 564 U.S. 338.

9. The reaction of Class Members to the proposed settlement.

Class Members have not yet received notice of the proposed settlement. The Court will have an opportunity to revisit this issue at the Fairness Hearing, after Notice has been sent to Class Members and they have had an opportunity to weigh-in on the terms of the settlement.

**VIII.    RULE 23(E)(2)(C) VALUATION.**

**A.    The Proposed Settlement Sum for Class 2 and Allocation Plan Provides Relief That Is Fair, Reasonable, and Adequate.**

In evaluation of a settlement, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *See Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). There is "no single formula" to be applied, but a district court may presume that the parties' counsel arrived at a reasonable range of settlement by considering the plaintiffs' likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 463 F.3d 948, 965 (9th Cir. 2009). Moreover, the Ninth Circuit has rejected any requirement that the settling parties value maximum damages that can be obtained at trial, as that figure would inherently be speculative. *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) ("[N]ot only would such a requirement be onerous, it would often be impossible…") On the contrary, "[t]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice,* 688 F.2d at 624. Indeed, "it is the very uncertainty of outcome and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id*. at 625. Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation. *Retta v.*

*Millennium Prods.*, CV15–1801, 2017 WL 5479637, *15 (C.D. Cal. Aug. 22, 2017).

Here, in addition to the substantial forward-looking non-monetary benefits to the Class 1, the Settlement provides that Defendant will make a total non-reversionary three hundred thousand dollar ($300,000.00) cash payment to Class 2 members who do not opt-out and this cash benefit will be sent to such Class Members *without the need to submit a Claim Form*. Ex. A, ¶ 32. No attorney's fees, litigation costs, service awards, administration expenses, or other monies will be deducted from the award. Defendant will make relevant contact information available to Class Counsel and the Disbursement Administrator for each Class 2 member, and at Class Counsel's direction, allocation and upon the Effective Date, distribution will be made *automatically* to every Athletic Financial Aid Class Members who does not opt-out. Ex. A, ¶¶ 33–34. Further, SDSU will play no role in determining the proposed allocation of these funds.

Every participating Class 2 member will receive an individual settlement payment distribution based on her individual total number of qualifying academic years during the Class Period relative to the total years, in the aggregate, for the entire Class 2. Ex. A, ¶ 34; Ex. C, ¶¶ 15–20. For estimation purposes only, the average pro rata award per participating Class 2 members is $363.20, *see id.*, but because individual allocation is weighted based on the number of qualifying academic years, the recovery range is between $172.12 and $860.59. *Id.* Since no allocation is for less than one academic year, at a minimum, each participating Class 2 member will receive $172.12. *Id.* at ¶ 20. This method of distribution is fair because it accounts for and relativizes the duration of years that a Class 2 member experienced lost opportunity.

This Settlement offers a substantial cash benefit to Class 2 members that is also unprecedented. Class Counsel could not identify any prior settlement where, in addition to injunctive relief, a classwide monetary award was provided in a Title IX gender discrimination suit for athletic financial aid disparity.

The fact that Class 2 members will receive cash relief without the attendant delays, risks, uncertainties, and costs posed by continued litigation is significant. The Settlement was reached after a fully briefed, yet not ruled on contested class certification motion. If the case goes to trial, SDSU will undoubtedly contest liability and Plaintiffs' damage model, calculations, and testimony including those of Plaintiffs' expert. SDSU will also present its own expert testimony and argue, as it has from inception, that Plaintiffs and the Class are not entitled to any damages. For these reasons, the proposed Settlement is within the range of reasonableness that warrants giving notice to Class Members and should be preliminarily approved.

## IX.    The Court Should Approve the Parties' Proposed Notice Plan.

Once a court makes a preliminary determination that a proposed settlement is fair, reasonable, and adequate, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Central Hanover Trust,* 339 U.S. 306, 314 (1950). Notice also must clearly and concisely state the following in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; and (vi) the binding effect of a class judgment on members under Rule 23(c)(3). FED. R. CIV. P. 23(c)(2)(B). Here, the proposed notice plainly sets forth the required information. Ex. B.

The Parties have agreed on both the content and the method of notice. The Parties took special care to ensure the notice was drafted in such a way that the target audience could easily understand the nature of the claims and relief afforded by the Settlement Agreement. *Id*. The proposed Class Notice explains in plain, clear

language the nature of the controversy, the details of the Settlement Agreement, the eligibility of class members to participate in the settlement, the right of all Class Members to object to the Settlement, and the right of Class 2 members to opt out. *Id.*

The Parties have agreed that the proposed notice, attached as Exhibit B will be provided to the Class. SDSU will send an email to the last known SDSU email address assigned to all female students that fall within the scope of the definition of Class 1, which will include a link to the notice and the full Settlement Agreement that is posted on the University's athletics website. SDSU will also send an email to the last known SDSU email address assigned to all female students that fall within the scope of the definition of Class 2, which will include a link to the notice and the full Settlement Agreement that is posted on the University's athletics website. The Parties have agreed they will make reasonable efforts to provide notice to any Class members whose emails "bounceback" as not received. The Disbursement Administrator will utilize appropriate steps to address "bounceback emails". The Parties will inform the Court of the number of bouncebacks and their efforts to provide notice to those individuals in their Motion for Final Approval.

Such notice comports with the requirement to provide "notice in a reasonable manner to all class members," FED. R. CIV. P. 23(e)(1)(B), (h)(1); and is the most practicable method of notice under the circumstances, particularly given that class members are likely to have consistent access to email and the referenced SDSU webpages. *See* FED. R. CIV. P. 23(c)(2), advisory committee notes (noting that "technological change since 1974 has introduced other means of communication [besides first-class mail] that may sometimes provide a reliable additional or alternative method for giving notice," and that "courts and counsel have begun to employ new technology to make notice more effective").

Class Counsel proposes CPT Group as the Disbursement Administrator, after

evaluating two proposals for this engagement.[5] Ex. C, ¶21–26. CPT Group's experience and scope of work, and estimated costs are set forth in an attached declaration. *See* Ex. E, Julie Green Dec. The cost of the services CPT Group will provide is approximated at $9,750 and the entirety of the amount will be paid by Class Counsel. Ex. C, ¶ 21Bullock Decl. ¶23.

## X.    CONCLUSION.

The proposed settlement is a good result for the Classes and for SDSU. It ends years of litigation, avoids future protracted litigation, and provides for both injunctive and compensatory relief. Based on the foregoing, the Parties move this Court for entry of an Order: (1) preliminarily certifying this case as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the previously defined Classes; (2) granting preliminary approval of the proposed settlement, as addressed in the Settlement Agreement (Exhibit A); (3) approving the proposed Class Notice (Exhibit B), and ordering that Notice be sent to Class Members and posted according to the terms of the Notice Plan; (4) appointing CPT Group as the Disbursement Administrator; and (5) setting a date for a "Fairness Hearing" pursuant to FED. R. CIV. P. 23(e)(2).

---

[5] SDSU played no role in the selection of the Disbursement Administrator and makes no representations as to its qualifications.

1

2  Dated: October 9, 2025
   /s/Lori A. Bullock                          /s/Brian M. Schwartz

3  Lori Bullock (*pro hac vice*)               Brian M. Schwartz (*pro hac vice*)

4  **BULLOCK LAW PLLC**                        Scott R. Eldridge (*pro hac vice*)
   309 East 5th St., Suite 202B                Erika L. Giroux (*pro hac vice*)

5  Des Moines, IA 50309                        Ashley N. Higginson (*pro hac vice*)

6  Tel: (515) 423-0551                         **MILLER, CANFIELD, PADDOCK**
   lbullock@bullocklawpllc.com                 **AND STONE, P.L.C.**

7                                              150 West Jefferson, Suite 2500

8  Arthur H. Bryant (SBN 208365)               Detroit, Michigan 48226

9  **Arthur Bryant Law PC**                    Tel: (313) 963-6420
   1999 Harrison Street, 18th Floor            schwartzb@millercanfield.com

10 Oakland, CA 94612                           eldridge@millercanfield.com
   Tel: (510) 391-5454                         giroux@millercanfield.com

11 arthurbryant@arthurbryantlaw.com            higginson@millercanfield.com

12
   David S. Casey, Jr. (SBN 69768)             Rob Bonta (SBN 202668)
13 Gayle M. Blatt (SBN 122048)                 Jodi L. Cleesattle (SBN 230537)

14 **CASEY GERRY BLATT LLP**                   Jennifer L. Santa Maria (SBN 225875)
   110 Laurel Street                           **ATTORNEY GENERAL OF**

15 San Diego, CA 92101                         **CALIFORNIA**

16 Tel: (619) 238-1811                         600 West Broadway, Suite 1800
   dcasey@cglaw.com                            San Diego, CA 92101

17 gmb@cglaw.com                               Tel: (619) 738-9099
                                               Fax: (619) 645-2012
18                                             Jennifer.SantaMaria@doj.ca.gov
   Amber Eck (SBN 177882)
19 Jenna Rangel (SBN 272735)

20 **HAEGGQUIST & ECK, LLP**                   *Attorneys for Defendants*
   225 Broadway, Ste 2050

21 San Diego, CA 92101

22 Tel: (619) 342-8000
   ambere@haelaw.com

23 jennar@haelaw.com

24
   *Attorneys for Proposed Classes*
25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system that will send notification of such filing upon all ECF participants.

*/s/Lori A. Bullock*
Lori A. Bullock