David S. Casey, Jr. (SBN 60768)
Gayle M. Blatt (SBN 122048)
**CASEY GERRY FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811
dcasey@cglaw.com
gmb@cglaw.com

Arthur H. Bryant (SBN 208365)
**ARTHUR BRYANT LAW, P.C.**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Tel: (510) 391-5454
arthur@arthurbryantlaw.com
*Attorneys for Plaintiffs*

Brian M. Schwartz (Mich. Bar P69018)
Scott R. Eldridge (Mich. Bar P66452)
Erika L. Giroux (Mich. Bar P81998)
Ashley N. Higginson (Mich. Bar P83992)
**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Tel: (313) 963-6420
schwartzb@millercanfield.com
eldridge@millercanfield.com
giroux@millercanfield.com
higginson@millercanfield.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON FISK, RAQUEL CASTRO, GRETA CASTRILLON, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all others similarly situated, | Case No. 3:22-cv-00173-TWR-MSB<br><br>Judge: Hon. Todd W. Robinson |
| Plaintiffs, | |
| v. | **PROPOSED CLASS ACTION SETTLEMENT AGREEMENT** |
| BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY and SAN DIEGO STATE UNIVERSITY, | |
| Defendants. | |

## [PROPOSED] CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Agreement") is entered into, subject to the Court's approval, between Class Representatives Madison Fisk, Carina Clark, Natalie Figueroa, Olivia Petrine, Kamryn Whitworth, and Kaitlin Heri, on behalf of the class they represent (defined below); other named Plaintiffs Raquel Castro, Greta Viss (Castrillon), Helen Bauer, Erica Grotegeer, Aisha Watt, Sara Absten, Eleanor Davies, Alexa Dietz, and Larisa Sulcs, individually and as class members[1] (collectively the Class Representatives and the other named Plaintiffs are referred to as "Plaintiffs"); and Defendant, the Board of Trustees of the California State University ( "SDSU").[2] Plaintiffs and SDSU are collectively referred to in this document as the "Parties." This Agreement resolves the claims asserted in any complaint filed in the S.D. Ca. Case No. 3:22-cv-00173-TWR-MSB, including all claims asserted in the Third Amended Complaint filed on May 12, 2023 (ECF No. 50).

### Background

1.    On February 7, 2022, Plaintiffs filed the instant case against SDSU alleging that SDSU discriminated against female student-athletes on the basis of

---

[1] On March 20, 2025, Plaintiffs Clare Botterill and Maya Brosch were voluntarily dismissed in their individual capacity, but they are still class members. (ECF No. 137).

[2] Plaintiffs also sued "San Diego State University," which the parties agree was an incorrectly named party. This Settlement Agreement resolves all claims against all defendants.

their sex in violation of Title IX of the Education Amendments of 1972, 20 U.S.C.

§§ 1681 et. seq. ("Title IX"). (ECF No. 1). Plaintiffs amended their Complaint three

times. (ECF Nos. 24, 41 & 50).

2.    In Plaintiffs' Third Amended Complaint, Plaintiffs allege that SDSU:

a.    Has been and is depriving female student-athletes of treatment and benefits equal to those provided to its male student-athletes.

b.    Has been and is depriving female student-athletes of athletic financial aid that is proportional to the number of female student-athletes participating in varsity intercollegiate athletics.

c.    Retaliated against female student-athletes after Plaintiffs filed their Complaint in this case.

3.    On October 9, 2025, the Parties filed a Joint Motion seeking class certification for the purposes of settlement pursuant to Federal Rule of Civil Procedure 23(e). [DKT CITE].

4.    On [DATE], the Court granted the motion and certified the classes as defined below. [DKT CITE].

a.    Pursuant to Federal Rule of Civil Procedure 23(b)(2), the Injunctive Relief Class, defined as:

Class 1: All female students who participate in intercollegiate varsity athletics through the termination of the Settlement Agreement or, since February 7, 2022, participated in intercollegiate varsity athletics at San Diego State University.

**Exhibit A, Pg. 3 of 21**

b.    Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Athletic Financial Aid Class, defined as:

Class 2: All female students who participated in intercollegiate varsity athletics at San Diego State University from the 2018-2019 academic year through the 2024-2025 academic year and did not receive all of the athletic financial aid they could have received.

5.    The Parties have engaged in discussions regarding a mutually agreeable resolution of the litigation. In lieu of continuing the present litigation, the Parties have agreed to settle all individual and class claims pursuant to the terms set forth in this Agreement. The Parties make the promises and representations contained herein for good and valuable consideration, the adequacy of which they hereby acknowledge.

## TERMS

6.    The duration of this Agreement will be from date of final approval to October 1, 2028, subject to reasonable extensions as determined by the Title IX Reviewer, as discussed in Paragraphs 17 and 19 below.

7.    SDSU acknowledges its obligation under the law to comply with Title IX in the operations of SDSU's intercollegiate varsity athletic program. Plaintiffs agree that the obligations assumed by SDSU in this Agreement satisfy all of Plaintiffs' claims and that they will not seek further relief against SDSU for allegations that SDSU allegedly (a) deprived female student-athletes of treatment

4

and benefits; (b) deprived female student-athletes of athletic financial aid; and (c) retaliated against female-student athletes in violation of Title IX.

## A.    ATHLETIC TREATMENT AND BENEFITS.

### Title IX Gender Equity Review

8.    No later than fourteen days after both (a) the court's final approval of this Agreement and (b) the parties' agreement upon a neutral third party ("Title IX Reviewer"), SDSU will hire the "Title IX Reviewer" to conduct a Title IX Gender Equity Review to compare the athletic treatment and benefits and athletic financial aid provided to SDSU's male and female varsity intercollegiate student-athletes (the "Gender Equity Review" or "Review") and monitor SDSU's compliance with this Agreement.

9.    The Title IX Reviewer selected by the Parties shall not have a relationship to the Parties, attorneys, action, or court that would create the appearance of bias or impropriety or require disqualification of a judge under 28 U.S.C. § 455.

10.    The Gender Equity Review will not address SDSU's athletic participation opportunities; issues related to Name, Image, and Likeness ("NIL") or revenue sharing; or any actions taken by SDSU as a result of the class action settlement in *In re College Athlete NIL Litig.* ("*House v. NCAA*"), No. 4:20-CV-03919 (N.D. Cal.).

**Exhibit A, Pg. 5 of 21**

11.    The Title IX Reviewer will conduct the review in accordance with the principles, process, and procedures adopted by the Office for Civil Rights of the U.S. Department of Education in the *Title IX Athletics Investigator's Manual* adopted in 1990 and available at https://files.eric.ed.gov/fulltext/ED400763.pdf.

12.    SDSU will provide the Title IX Reviewer with all data, documents, and information the Title IX Reviewer determines would be helpful to conduct the Title IX Gender Equity Review.

13.    The parties anticipate that the Title IX Reviewer will complete the Review no later than 90 days after commencement of the Review and issue a detailed written report of her or his findings. This report will be shared with SDSU and Plaintiffs' counsel, and will be posted on SDSU's varsity athletics website.

**Title IX Gender Equity Plan**

14.    Within 60 days after the Gender Equity Review is completed, absent extenuating circumstances which will be communicated to Class Counsel, SDSU will use the findings of the Gender Equity Review to create and implement a revised Gender Equity Plan that will ensure SDSU's intercollegiate varsity athletic program is compliant with Title IX as to athletic financial aid and athletic treatment and benefits.  As part of any Gender Equity Plan, SDSU will work collaboratively with the Title IX Reviewer to address identified issues.

**Exhibit A, Pg. 6 of 21**

15.    The Parties agree that SDSU will have discretion to determine how to address any items identified in the Gender Equity Review, including whether to increase or decrease any athletic budget or expenditure.  The Parties agree that, in implementing the Gender Equity Plan, nothing in the Gender Equity Review will require SDSU to increase its overall athletics budget to address any items identified in the Gender Equity Review.

16.    The Parties agree that SDSU is not required to construct an indoor track and field practice/competition facility as part of the Gender Equity Plan.

17.    The Title IX Reviewer must approve the Gender Equity Plan and be satisfied that, once SDSU has implemented it, SDSU's intercollegiate varsity athletic program will be in compliance with the athletic financial aid and treatment and benefits requirements of Title IX by the end of the 2026-27 academic year, absent extenuating circumstances leading to the need to request reasonably necessary extensions, as determined by the Title IX Reviewer. SDSU will notify Plaintiffs' counsel of all extenuating circumstances and requested extensions around the time they are requested, and the Title IX Reviewer will communicate their determination to both Parties.

18.    SDSU will provide the Gender Equity Plan to Plaintiffs' counsel and post it publicly on the SDSU athletics website.

**Exhibit A, Pg. 7 of 21**

19.     The Title IX Reviewer will monitor SDSU's compliance with this Agreement and SDSU's implementation of the Gender Equity Plan during the 2025-26, 2026-27, and 2027-28 academic years.  Plaintiffs agree that ongoing monitoring may end after the 2027-28 academic year, subject to extensions of time deemed reasonable by the Title IX Reviewer. SDSU will notify Plaintiffs' counsel of all extenuating circumstances and requested extensions around the time they are requested, and the Title IX Reviewer will communicate their determination to both Parties.

20.     To ensure the Title IX Reviewer is able to monitor ongoing compliance with this Agreement and SDSU's implementation of the Gender Equity Plan, SDSU agrees that, at the end of each academic year it will provide the Title IX Reviewer with any documents requested by the Title IX Reviewer.

21.     SDSU agrees that, beginning July 31, 2026, and ending July 31, 2028, it will provide Plaintiffs' counsel with an annual summary report no later than July 31, regarding SDSU's implementation of the Gender Equity Plan, which will include the following information from the preceding academic year:

a.    a summary of steps taken to implement its Gender Equity Plan regarding treatment and benefits and the steps SDSU is planning to take to address any issues regarding treatment and benefits identified by the Gender Equity Reviewer;

8

b.    The Title IX unduplicated participation count for male and female varsity athletes and the total amounts of athletic financial aid and summer aid awarded during the academic year; and

c.    SDSU's explanation for any variance larger than 1% between the proportion of unduplicated male and female varsity athletes and the total amount of athletic financial aid awarded to male and female varsity athletes.

22.    To ensure all class members are able to monitor progress towards and compliance with this Agreement, SDSU will make this annual summary report available on SDSU's athletic department website by July 31 following each academic year from 2025-2026 through 2027-2028.

23.    To the extent the Title IX Reviewer is unable to complete service through the term of this Agreement, the Parties will work together to agree on another qualified Title IX Reviewer.

**<u>Expanding Current Women's Team Support</u>**

24.    SDSU agrees that, in addition to addressing any findings of inequitable treatment made by the Title IX Reviewer, it will take the following actions:

a.    In the 2025-26 academic year, SDSU will ensure equitable provision of nutrition to a comparable number of male and female student-athletes (e.g., nutrition surrounding practices, competition, and travel). Meal options will

be offered in consultation with a nutritionist, strength & conditioning staff, coaches, and student-athletes.

b.  SDSU will provide coaches for men's and women's teams the opportunity to have their teams travel by airplane to away games more than a 6-hour drive away from the SDSU campus in an equitable manner.

c.  SDSU will provide coaches for men's and women's teams the opportunity to have their teams stay in hotels before competitions in the San Diego area in an equitable manner.

d.  SDSU is in the process of making repairs to the women's outdoor track and anticipates that those repairs will be made during the upcoming academic year. SDSU will continue to assess the need for additional repairs.

e.  SDSU will replace the turf for field PG610 at the end of the useful life of the field as determined by SDSU's external turf field company, but in any event no later than the 2027-28 academic year.

f.  SDSU will continue to provide professional photography services, a person who is not a coach or team member to record and/or stream home competitions, publicity (e.g., billboards, social media posts, video boards, or other means), and on-campus communications regarding competitions, successes, and varsity athletics and athletes, equitably to its male and female student-athletes.

25.    The Parties agree that the Title IX Reviewer cannot conclude that SDSU's actions to comply with this Agreement are inconsistent with Title IX.

26.    The Parties agree that, in implementing this Agreement, nothing in this Agreement requires SDSU to increase its overall athletic budget, provided that athletic treatment and benefits and athletic financial aid are provided equitably to male and female student-athletes.

## B.    DAMAGES.

27.    SDSU agrees it will pay female student-athletes who are members of Class 2, as defined above, a total of $300,000.00 in damages for Count I of the Third Amended Complaint. SDSU maintains these payments are non-precedential and do not constitute an agreement that Plaintiffs or any student-athletes are entitled to the damages sought in the Third Amended Complaint.

28.    SDSU agrees to provide contact information regarding the settlement class to Plaintiffs to assist them with identifying members of the settlement class. Plaintiffs will work cooperatively with SDSU to locate contact information for any class members for whom SDSU does not have contact information.

29.    Class Counsel will be responsible for determining the allocation of these funds, ensuring that class members receiving such funds receive proper tax documentation, and paying for any associated costs of distributing these funds. SDSU will play no role in determining or approving the allocation of these funds.

## C.    RETALIATION

30.    SDSU agrees not to retaliate against the Named Plaintiffs in violation of Title IX.

## D.    REASONABLE COSTS AND REASONABLE ATTORNEYS' FEES

31.    SDSU agrees to pay a sum of $1,300,000 as a negotiated sum for the reasonable attorneys' fees, costs, and expenses Plaintiffs incurred pursuing this litigation within 30 days after the Court's final approval of this Agreement provided that Plaintiffs complete all required forms. Plaintiffs agree not make any separate demand for fees, costs, or expenses.  SDSU states that it will not pay expert witness costs, which are not recoverable under Title IX. Plaintiffs waive the right to seek any further fees, costs, and expenses for ongoing monitoring following the payment of the specifically-negotiated attorneys' fee amount in this Agreement. Any attorneys' fees and/or cost liens from former Plaintiffs' firms will be the responsibility of class counsel, Arthur Bryant.

## E.  CLASS NOTICE

32.    Pursuant to Federal Rule of Civil Procedure 23(e), the Parties agree that notice of this proposed Agreement should be provided to all members of the classes in a form approved by the Court. The Parties propose that the Court approve the form of notice set forth in Exhibit A.

**Exhibit A, Pg. 12 of 21**

33.     Upon the Court's approval of the form of notice, SDSU shall timely send an email to the last known SDSU email address assigned to all female students that fall within the scope of the definition of Class 1, which will include a link to the notice and this Agreement that is posted on the University's athletics website. SDSU shall also timely send an email to the last known SDSU email address assigned to all female students that fall within the scope of the definition of Class 2, which will include a link to the notice and this Agreement that is posted on the University's athletics website. The Parties will make reasonable efforts to provide notice to any Class members whose emails "bounceback" as not received. The Parties will confer and adopt any additional steps appropriate to address the question of "bouncebacks emails" and will detail the number of "bounceback emails" and the Parties efforts to provide notice to those individuals in their Motion for Final Approval. SDSU shall also disseminate the notice by any other reasonable means the Court may direct to effectuate notice to all class members.

34.     Upon the Court's final approval of this Agreement, SDSU shall provide notice of such approval and of the availability of copies of this Agreement by the same means described in Paragraph 33. In addition, SDSU shall provide such notice to all personnel in SDSU's athletic department and any other individuals SDSU expects to participate in the implementation of this Agreement.

**Exhibit A, Pg. 13 of 21**

35.    SDSU shall be responsible for the costs of providing the notice described in Paragraphs 33 to 34.

## F.  GENERAL PROVISIONS

36.    SDSU makes no admission of liability in regard to Plaintiffs' claims, and nothing in this Agreement shall be construed as an admission of such liability.

37.    Except as stated in Paragraphs 38 and 39, the Parties agree that all claims asserting violations of Title IX regarding athletic financial aid, athletic treatment and benefits, and retaliation that were asserted or that could have been asserted in this case are forever and irrevocably released by Plaintiffs, individually and on behalf of the class.

38.    The Class Representatives, on behalf of the classes, and Plaintiffs agree that, during the term of this Agreement, they will not challenge, file a lawsuit regarding, or otherwise pursue claims against SDSU with respect to SDSU's compliance with Title IX regarding the allocation of athletic financial aid to female and male student-athletes or the relative treatment and benefits provided to female and male student-athletes, except as necessary to enforce this Agreement or as specifically permitted by this Agreement.

39.    This Agreement does not release or prohibit any potential revenue sharing or name, image, and likeness claims that may accrue after June 6, 2025, as

a result of *In re College Athlete NIL Litig.* ("*House v. NCAA*"), No. 4:20-CV-03919 (N.D. Cal.).

40.    This Agreement embodies a compromise that is intended to resolve the pending litigation between the Parties. Nothing in this Agreement is intended or shall be construed to limit Plaintiffs' or the class members' rights to challenge SDSU 's compliance with Title IX for alleged unequal athletic treatment and benefits or unequal athletic financial aid that may accrue after the termination of this Agreement.

41.    The terms of this Agreement have been negotiated by the Parties through Magistrate Judge Micheal Berg, a neutral mediator, with the assistance of their respective legal counsel. By the execution hereof, the Parties expressly warrant that they have read this Agreement, understand its terms, have had the opportunity to confer with legal counsel regarding its contents, and are signing this Agreement of their own free will and act.

42.    Plaintiffs agree to dismiss all their claims with prejudice following the Court's final approval of this Agreement. However, the Parties will provide the Court with the signed Agreement and request that the Court attach the signed Agreement to the Court's Order approving this Agreement. The Court will retain jurisdiction over this action for the purpose of enforcing the terms of this Agreement.

**Exhibit A, Pg. 15 of 21**

43.    If the Court declines to approve this Agreement, then the Parties will return to their positions with respect to this litigation as if they had never executed this Agreement. They agree, however, to negotiate in good faith to address any concerns the Court may have had with approving this Agreement.

44.    This Agreement may be executed in counterparts by original, facsimile, or electronic signature. The Agreement will be deemed fully executed when all Parties and their counsel have returned their executed signature pages to Plaintiffs' counsel.

45.    In the event that this Agreement or any provision hereof is construed or determined to be ambiguous by any court of competent jurisdiction, the Parties agree that each Party, through its attorneys, has contributed to the preparation of this Agreement and that the Parties have jointly written or composed the clauses contained herein, and that no Party shall be given any advantage over the other Party under the laws of construction of instruments based upon the authorship of this Agreement.

46.    It is further understood and agreed that, if any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, that provision shall be severed, and the remaining provisions shall nevertheless survive and continue in full force and effect without being impaired or invalidated in any way.

**Exhibit A, Pg. 16 of 21**

47.     This Agreement embodies the entire agreement between the Parties and supersedes any and all prior agreements, arrangements, and understandings between the Parties relating to this subject matter. This Agreement may not be modified except by order of the Court or in a writing signed by all Parties and approved by the Court.

48.     The Parties agree to cooperate fully to execute any and all supplementary documents and take all additional actions which may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

Dated: October 9, 2025

Respectfully Submitted,

*/s/ Lori A. Bullock*
Lori Bullock (*pro hac vice*)
**BULLOCK LAW PLLC**
309 E. 5th Street, Suite 202B
Des Moines, Iowa 50309
Tel.: (515) 423-0551
*lbullock@bullocklawpllc.com*

Arthur H. Bryant (SBN 208365)
**ARTHUR BRYANT LAW, P.C.**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Tel.: (510) 391-5454
*arthur@arthurbryantlaw.com*

David S. Casey, Jr. (SBN 69768)
Gayle M. Blatt (SBN 122048)
**CASEY GERRY FRANCA VILLA BLATT LLP**
110 Laurel Street San Diego, CA 92101
Tel: (619) 238-1811
dcasey@cglaw.com
gmb@cglaw.com

Amber Eck (SBN 177882)
Jenna Rangel (SBN 272735)
**HAEGGQUIST & ECK, LLP**
225 Broadway, Ste 2050
San Diego, CA 92101
Tel: (619) 342-8000
ambere@haelaw.com
jennar@haelaw.com

*Attorneys for Plaintiffs*

Dated: October 9, 2025                    Respectfully Submitted,

/s/ Brian M. Schwartz

Scott R. Eldridge (Mich. Bar P66452)
Brian M. Schwartz (Mich. Bar P69018)
Erika L. Giroux (Mich. Bar P81998)
Ashley N. Higginson (Mich. Bar P83992)
**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Tel: (313) 963-6420
eldridge@millercanfield.com
schwartzb@millercanfield.com
giroux@millercanfield.com
higginson@millercanfield.com

Rob Bonta (SBN 202668)
Jodi L. Cleesattle (SBN 230537)
Jennifer L. Santa Maria (SBN 225875)
**ATTORNEY GENERAL OF CALIFORNIA**
600 West Broadway, Suite 1800
San Diego, CA 92101
Tel: (619) 738-9099
Fax: (619) 645-2012
Jennifer.SantaMaria@doj.ca.gov

*Attorneys for Defendants*

**<u>Plaintiffs</u>**

_____         Date:_____
Madison Fisk


_____         Date:_____
Raquel Castro


_____         Date:_____
Greta Viss


_____         Date:_____
Helen Bauer


_____         Date:_____
Carina Clark


_____         Date:_____
Natalie Figueroa


_____         Date:_____
Erica Grotegeer


_____         Date:_____
Kaitlin Heri


_____         Date:_____
Oliva Petrine

**Exhibit A, Pg. 20 of 21**

_____     Date:_____
Aisha Watt


_____     Date:_____
Kamryn Whitworth


_____     Date:_____
Sara Absten


_____     Date:_____
Eleanor Davies


_____     Date:_____
Alexa Dietz


_____     Date:_____
Larissa Sulcs


**<u>Defendants</u>**


_____     Date:_____
Signature

INSERT NAME AND TITLE HERE

**Exhibit A, Pg. 21 of 21**