David S. Casey, Jr. (SBN 60768)
Gayle M. Blatt (SBN 122048)
**CASEY GERRY FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811
dcasey@cglaw.com
gmb@cglaw.com

Arthur H. Bryant (SBN 208365)
**ARTHUR BRYANT LAW, P.C.**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Tel: (510) 391-5454
arthur@arthurbryantlaw.com

*Attorney for Plaintiffs*

Brian M. Schwartz (Mich. Bar P69018)
Scott R. Eldridge (Mich. Bar P66452)
Erika L. Giroux (Mich. Bar P81998)
Ashley N. Higginson (Mich. Bar P83992)
**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Tel: (313) 963-6420
schwartzb@millercanfield.com
eldridge@millercanfield.com
giroux@millercanfield.com
higginson@millercanfield.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON FISK, RAQUEL CASTRO, GRETA CASTRILLON, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY and SAN DIEGO STATE UNIVERSITY,<br><br>Defendants. | Case No. 3:22-cv-00173-TWR-MSB<br><br>**DECLARATION OF JULIE GREEN ON BEHALF OF CPT GROUP, INC.**<br><br>Judge: Hon. Todd W. Robinson |

## DECLARATION OF JULIE GREEN

I, Julie Green, declare as follows:

1.    I have personal knowledge of the facts set forth herein and if called upon to testify, I could and would do so competently under oath.

2.    I am employed by CPT Group, Inc., ("Disbursement Administrator" or "CPT"), as President.

3.    CPT Group, Inc. is located at 50 Corporate Park, Irvine, CA 92606.

4.    For this matter, CPT is able and willing to provide Administration services as described herein, if approved to do so by the Court.

5.    I have been employed by CPT for over 20 years, managing the operations and supervising multiple notice and claims administration programs. As President, I am responsible for the oversight of the entire organization including the departments related to administration of class action matters and ensure superior quality and successful execution of each component required to complete the settlement process. In my career at CPT, I have been responsible for the oversight, design and/or implementation of thousands of class action notice plans.

6.    As a company, CPT has extensive experience in providing court-approved notice of class actions and administering various types of notice programs and settlements. In the past 40-plus years, we have provided notification and/or claims administration services in thousands of class action cases. CPT offers a wide range of class action administrative services for developing, managing and executing all stages of integrated settlement plans. A true and correct copy of CPT's company resume ("CPT CV") is attached as **Exhibit A**, which provides detailed information concerning our class action claims administration qualifications, experience, as well as our Information Security Statement that details CPT's procedures for the protection of confidential class member information including compliance with AICPA SOC 2 Type II standards. Further, to protect against potential losses, CPT holds $5,000,000 in Errors and Omissions insurance, $1,000,000 in Crime/Fidelity insurance, and $5,000,000 in cyber insurance.

7.     CPT was selected in the above captioned matter to provide disbursement administration services for this settlement. In this capacity, CPT will complete the following tasks as part of its administration duties: (a) receive the class list; (b) establish a Settlement Website for class members to select their preferred payment method including for digital options may be made and to access important case documents; (c) process undeliverable mail and remail accordingly; (d) file any required reports with the court; (e) establish a Qualified Settlement Fund ("QSF") for authorized payees; (f) pay the amounts due to each class members pursuant to the list provided by Defendant; (g) make payments to class members through the established QSF and file all applicable tax returns; and (h) handle any uncashed checks as authorized by the court.

8.     A true and correct copy of CPT's estimate associated with the administration of this matter is attached as **Exhibit B**. It provides for a discounted flat fee of $9,750, based on the hours and work involved as represented by counsel at the time the quote was provided.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 9, 2025, at Irvine, California.

JULIE GREEN

# EXHIBIT A

# CURRICULUM VITAE



50 Corporate Park
Irvine, CA 92606    www.CPTGROUP.com    1 (800) 542-0900

## COMPANY PROFILE

CPT Group, Inc. ("CPT"), founded in 1984, is a leading provider of notice and settlement class action administration services and has been appointed as the third-party administrator by all major courts. Throughout our history, CPT has disbursed billions of dollars in settlement funds, serviced over 250,000,000 class members, and administrated over 7,000 cases. CPT offers a wide range of class action administrative services for developing, managing, and executing all stages of integrated notice plans and settlements. This includes pre-certification and discovery mailings, class-certification mailings, claims processing and administration, data management, data reporting, settlement fund administration, legal noticing campaigns, website design, and web hosting. The project management team, call center, data entry center, IT, and production facilities are all located at the corporate headquarters in Irvine, CA.

## QUALITY ASSURANCE & SECURITY

The integrity of CPT's work and our stringent quality assurance protocols are strengthened by the staff's ability to operate in close proximity keeping the work managed in-house. With a commitment to rigorous security protocols and controls, CPT upholds an obligation to its clients to maintain data and cyber security practices that comply with AICPA SOC 2 - Type II.

## DIVERSITY & INCLUSION

CPT believes that promoting diversity starts with a commitment to building understanding and awareness. Diversity is not just cultural or ethnic, it includes people of all ages and backgrounds. We are guided by a commitment to removing barriers to the recruitment, retention, and advancement of talented individuals from historically excluded populations. CPT recruits and rewards team members based on capability and performance, regardless of race, gender, sexual orientation, gender identity or expression, lifestyle, age, educational background, national origin, religion, or physical ability.

## AREAS OF EXPERTISE

- **PROJECT MANAGEMENT -** At the heart of our administrative capabilities is the ability to manage and process our cases as a neutral TPA with efficiency, accuracy, and in compliance with the terms of the parties' agreement. Our skilled approach in the use of technology, effective management, and quality assurance is the core of our operation.
- **Claims Administration** – CPT conducts extensive Quality Assurance processes throughout the duration of the claims period. Any responses received from Class Members are processed according to our strict internal procedures and in accordance with the Settlement Agreement. Counsel is provided with all required reporting, including, where applicable, a list of approved claimants and the settlement calculations for each.
- **Call Center** – CPT's case support representatives stand ready to service all case inquiries offering live, multi-lingual, 1-1 response, 5 days a week during business hours (extended hours available). Interactive Voice Response (IVR) assures that class members receive the assistance and support they require 24 hours a day. A proprietary call tracking system combined with highly trained representatives ensures an accurate class member history for each and every call.
- **Data Management/Reporting** – Through programmatic analysis, CPT will standardize the class data to compile a master mailing list. CPT prepares weekly status reports for each case that summarize the status of returns and responses such as mail pieces and claim form submissions. CPT is SOC 2 Type II certified, which ensures necessary measures are taken to safeguard all class member data.
- **Noticing Expertise** – CPT's legal notice experts have a combined experience of over 25 years in the industry and come together to plan a successful notice campaign based on the requirements of the Settlement. After strategizing and consulting with Counsel, our team will determine the best method of notification to reach your intended target audience. Whether notification will be through means of a known or unknown data set, CPT will execute the campaign with precision and accountability.
- **Settlement Fund Administration** – CPT's team of tax and accounting professionals manages all fund distributions through a rigorous and supervised process. Stringently following the terms of the Court Order, CPT maintains its Qualified Settlement Fund (QSF) accounts through federally insured banks with access restricted to authorized personnel only. On behalf of the QSF, CPT will handle all remittances and reporting to local, state, and federal tax authorities.



# EXPERIENCE

CPT Group, Inc. has a proven track record of successfully administering complex class action settlements across a broad range of practice areas, including cases with millions of class members. With over four decades of experience, CPT is trusted by courts nationwide as a third-party administrator for high-stakes, large-fund settlements. Below are highlights from several relevant cases we've handled:

## CONSUMER PROTECTION

**Stevens v. Britax Child Safety, Inc., Case No. 2:20-cv-07373-MCS-AS (C.D. Cal)**
Administration tasks for this hybrid settlement included dissemination of the summary notice by email or mail to known consumers and implementation of an extensive digital and social media campaign to reach unknown consumers, which encompassed internet publication through DV360, paid and keyword search (Google/Bing), and social media advertising on Facebook, Instagram, and OLV (YouTube). Additional efforts included a press release and four consecutive print publications in the Los Angeles Times. Further, a dedicated settlement website was established to access court-approved documents, facilitate online claims submission, and offer real-time case information to potential settlement class members.

**Pope, et al. v. Cura Partners, Inc., State of Oregon, Multnomah County Circuit Court, Case No. 20CV05932**
While administrating this consumer settlement, CPT designed and implemented a multi-faceted notice program to effectively reach and engage the potential class population of 172,000 members. The comprehensive outreach strategy integrated multiple communication channels, anchored by a targeted digital media campaign that strategically placed settlement information where potential class members were most likely to encounter it. This digital approach was complemented by traditional print publication, creating multiple touchpoints for class awareness. Central to the administration strategy was an interactive settlement website that served as the primary hub for class member engagement and streamlined claims submission. The settlement's modern approach extended to its payment distribution, offering claimants flexibility through multiple digital payment options. This technology-forward distribution strategy provided class members convenient, secure payment choices while optimizing administrative efficiency.

**Treviso v. Pro Football Hall of Fame, Case No. 5:17-cv-00472 (N.D. Ohio)**
CPT executed a sophisticated administration strategy for this consumer settlement, beginning with a meticulously researched notice campaign tailored to reach the presumed target audience. The comprehensive digital strategy integrated paid search campaigns, programmatic display advertising, strategic social media placements, and online video (OLV) content. This layered approach proved highly effective, generating an impressive 5,080,887 impressions during the 40-day recruitment campaign. To further enhance accessibility, the notice program incorporated direct communication methods through email and text message notifications, ensuring multiple touchpoints for potential class members. The settlement's complexity was particularly evident in its claims validation requirements, which demanded a thorough review of multiple documentation types, including proof of travel, accommodation records, and event attendance verification through tickets or other supporting evidence. This rigorous validation process, combined with the sophisticated notice program and user-friendly claims platform, demonstrated CPT's ability to manage intricate settlement requirements while maintaining efficient and accessible administration practices.

## DATA BREACH

**Patricia Tafelski, et al. v. Logan Health Medical Center, Montana Eighth Judicial District Court, Case No. 19CV45421 and ADV-22-0124**
CPT administered this data breach settlement reaching approximately 213,500 class members through a comprehensive notice program featuring double postcards and strategic reminders. The administration centered on an interactive settlement website that served as an information hub for class members. CPT implemented a flexible benefits distribution system offering multiple payment options, including electronic transfers, paper checks, and credit monitoring activation codes. To maximize participation, CPT executed targeted follow-up campaigns via email and phone to encourage check cashing.

**Harkey-Kirk v. California Department Of Public Health, Sacramento County Superior Ct, Case No. Case No.: 34-2019-00260616**
In addressing this privacy matter under the Confidentiality of Medical Information Act, CPT implemented a comprehensive strategy to issue a notice of class certification. Our approach included targeted outreach through traditional print publication, a robust media campaign across platforms like Facebook, Instagram, and YouTube, and a precision-driven paid search campaign on both Bing and Google. Additionally, our programmatic display advertising, facilitated through a DSP platform, created a dynamic and visually engaging presence across various online spaces. The campaign's visibility was enhanced by a press release distributed via PR Newswire, ensuring comprehensive information reached both the public and the media.

**Hinds v. Community Medical Centers, Inc., San Joaquin County Superior Court , Case No. STK-CV-UNPI-2021-0010404**
CPT Group effectively managed this $1.9 million data breach settlement through multiple communication channels, including direct mail notices to over 600,000 class members and a dedicated settlement website where claimants could access court documents and submit claims electronically. A 24-hour toll-free support line with IVR capabilities provided continuous assistance. These comprehensive efforts resulted in over 11,000 claim submissions, with claimants choosing between cash benefits or credit monitoring services.



# EXPERIENCE

## LABOR & EMPLOYMENT

**Nevarez, et al. v. Costco Wholesale Corporation, Los Angeles County Superior Court, Case No. 19STCV10017**

To apprise settlement class members of the $8,750,000 wage and hour settlement, CPT implemented a dual-notification approach that leveraged email and physical mail communications to effectively reach the substantial class size of 96,677 members. Over $5,000,000 was designated as the net settlement amount for distribution among participating class members from the gross settlement amount. The settlement administration was particularly notable for its inclusion of gift card distribution to qualified participants, adding complexity to the distribution process by requiring the management of both monetary and non-monetary benefits.

**Helmick v. Air Methods Corp., Alameda County Superior Court, Case No. RG13665373**

(Top Settlements, 2020) Administration of this $78,000,000 employment settlement demonstrated the complexity of managing high-value, multi-year distributions. The notice program began with direct mail outreach to settlement class members, a comprehensive settlement website, and toll-free class member support. The settlement's significant monetary component required careful administration, with distributions totaling over $49,000,000 executed over three years. The substantial individual awards, averaging approximately $100,000 per claimant, reflected the serious nature of the underlying claims and required meticulous verification and distribution protocols. The high average award amount and multi-year distribution schedule distinguished this as one of the more complex employment settlements of 2020.

**Wackenhut Wage and Hour Cases, Los Angeles County Superior Court, Case No. JCCP Np. 4545**

(Top Settlements, 2019) CPT implemented a sophisticated communication strategy that integrated multiple outreach channels to notify settlement class members in this $130,000,000 wage and hour settlement. The notice program leveraged both email and SMS text messaging in English and Spanish, ensuring broad accessibility across the linguistically diverse class population. A comprehensive settlement website served as an information hub, featuring an online claim portal. CPT supported class member engagement through a dedicated toll-free hotline. The effectiveness of these notice methods was demonstrated by the impressive 57% claimant response - a strong result that helped secure final approval from the court. This settlement's size and successful administration marked it as one of the largest employment settlements in California that year.

**Sanchez v McDonald's Restaurants of California, Los Angeles County Superior Court, Case No. BC499888**

(Top Settlements, 2019) Notice methods in this $26,000,000 wage and hour settlement featured a multi-channel approach. Primary notice was delivered through direct mail and email in English and Spanish, accommodating the workforce's linguistic diversity. A dedicated settlement website was a comprehensive resource, hosting case documents, court filings, frequently asked questions, settlement agreement details, and opt-out/objection forms. All website materials were available in both English and Spanish. For additional support, a toll-free hotline was staffed by trained bilingual representatives.

**Alvarez, et al v. XPO Logistics Cartage, LLC, 2:18-cv-03736-RGK-E (C.D. Cal)**

In administering this $20 million wage and hour settlement, CPT executed a comprehensive bilingual notice program, disseminating materials in both English and Spanish while managing the critical task of collecting W-9s from prospective class members. CPT implemented a strategic follow-up campaign to optimize response rates, including targeted reminder postcards to non-responding individuals. The settlement distribution was executed in two phases: an initial disbursement to all eligible class members and a supplemental distribution to those who had promptly negotiated their initial settlement payments.

**Abdullah v U.S. Security Associates, Inc., San Diego County Superior Court, Case No. 2:15-cv-09-00984 PSG-E**

(Top Settlements, 2018) CPT successfully administered this substantial $21 million settlement, implementing a comprehensive notice and communication program for a class exceeding 22,000 members. The multi-channel outreach strategy included direct mail notification, a dedicated settlement website, and a toll-free support line to ensure class members had ready access to case information and assistance. The administration required sophisticated tax compliance measures, with CPT managing the intricate coordination of settlement benefit distribution alongside required tax documentation. This included the timely issuance of settlement payments with corresponding W2 and 1099 tax forms to all eligible class members, maintaining strict adherence to tax regulations and reporting requirements.

**Cruz & Johnson v. Wal-Mart Associates, Inc., et. al., Los Angeles & San Bernardino County Superior Courts of California, Case Nos. 18STCV03128 and CIVDS1602699**

(Top Settlements, 2021) In this significant 2021 PAGA settlement, CPT administered a $15 million resolution reaching over 320,000 aggrieved employees through direct mail notification. The administration included comprehensive tax compliance, with CPT coordinating the distribution of settlement checks and corresponding 1099 forms to eligible participants. This consequential wage-and-hour settlement exemplified the effectiveness of PAGA enforcement in addressing workplace compliance issues.

**Valdez v. Starbucks Corporation, Superior Court of the State of California, County of Riverside, Case No. PSC1908409**

CPT administered a $3 million PAGA settlement benefiting 138,000 aggrieved employees. The distribution process included coordinated issuance of settlement checks and corresponding 1099 tax forms. CPT managed the disposition of uncashed funds through a Cy Pres distribution, ensuring the full settlement value served its intended public benefit.

# QUALIFICATIONS & EXPERIENCE OF KEY PERSONNEL

### JULIE N. GREEN
**President**
**Notice Expert**

Julie brings 20 years of leadership excellence to CPT Group as one of the industry's foremost experts in legal notice administration. Having personally designed and overseen thousands of class action notice programs, Julie's expertise spans compliance, notice strategy, and regulatory adherence, enabling CPT to successfully administer even the most complex settlements.

As President, Julie oversees all operational aspects while maintaining her commitment to neutrality and client confidentiality. Her background, with degrees in Drama, and Psychology & Social Behavior from the University of California, Irvine, provides unique insights into effective communication and stakeholder management. Julie's innovative leadership continues to drive CPT's position at the forefront of class action administration.

### RANDI J. MARTZ,
**EVP Business Development & Strategy**
**Notice Expert**

Randi brings over 17 years of experience to CPT Group. Her role is crucial in analyzing settlement requirements for legal notification through various research methods and data analysis. Randi's expertise lies in finding efficiencies to implement cost savings for RFPs and developing strategic plans to grow the business.

As a liaison between the Business Development and Operations Teams, Randi plays a vital role in identifying critical opportunities to strengthen settlement and client objectives. Her educational background in Business Administration from California State University, Fullerton, provides a solid foundation for her multifaceted role at CPT.

### MARK BRANDENBERGER,
**Chief Financial Officer**

Mark Brandenberger serves as CPT Group's Chief Financial Officer. A CPA who began his career at Deloitte and Touche, Mark developed his financial and operational expertise over 25 years in financial services, working with companies from start-ups to Fortune 100. He later owned and successfully operated a fire and water restoration company before selling it.

Mark holds a Bachelor of Business Administration in accounting from Cal Poly San Luis Obispo and recently became a certified business coach, leveraging his experience to help business owners exceed their potential through strategic guidance and mentorship.

### JACQUELINE N. KOH
**VP Operations**

Jackie brings nearly two decades of hands-on experience and strategic leadership to CPT Group. Since joining the company 18 years ago, Jackie has become a vital force in shaping CPT's operational excellence and client service delivery. In her role, she oversees key operational departments including Case Management, Disbursement, Claims Processing, Mailing, and the Call Center. Jackie drives operational strategies that align with CPT's growth trajectory and industry reputation. Her deep understanding of the full settlement lifecycle—from court approval and process optimization to client coordination and fund distribution—positions her as a trusted advisor throughout the administration process. Jackie's legal foundation includes prior roles as a paralegal at the Orange County District Attorney's Office and several top law firms. She holds a B.A. in International Relations and Law & Public Policy from the University of Southern California and completed her Paralegal Studies at UCLA.

### TREVOR JONES
**Chief Technology Officer**

Trevor leads CPT's technology vision, systems architecture, and business intelligence strategy to support high-volume, complex case administration. With over two decades of technology leadership experience, including executive roles at VIZIO and Veritone overseeing business operations, IT, and AI-driven analytics, Trevor brings proven expertise in driving innovation, scalability, and operational efficiency.

His specialized knowledge in enterprise innovation, data analytics, and operational strategy strengthens CPT's technological capabilities while ensuring continued excellence in class action administration. Trevor's leadership enables CPT to leverage cutting-edge solutions that enhance both service delivery and operational performance.

Trevor holds a B.S. in Mathematics/Economics from UCLA and actively contributes to the Orange County tech community as a coach and thought leader.

# QUALIFICATIONS & EXPERIENCE OF KEY PERSONNEL

**CPT** Group
Class Action Administrators

## ABEL E. MORALES,
### Director of Operations

Abel Morales is the Director of Operations at CPT Group. Since joining CPT in 2010, Abel has handled hundreds of class action cases from inception through distribution and has become an expert in complex settlements. He is the primary client contact and is well trusted for his expertise in the class action industry. Abel oversees the Claims Processing Department, Production Department, and Class Member Support Services. His wide range of expertise provides valuable insight into all facets of the Administration process. Prior to CPT Group, Abel was a Senior Analyst for 9 years at a prominent Fortune 500 mutual insurance holding company. Abel also holds a B.A. in International Finance from the California State University of Fullerton. He is bilingual in Spanish.

## ALEJANDRA ZARATE
### Supervising Case Manager

Alejandra Zárate is one of CPT Group's Supervising Case Managers. In her role, she is responsible for the onboarding and intake of new cases, as well as the training of new Case Managers. Alejandra started with CPT Group in 2007 in the Claims Department and joined the Case Management team in 2009. Her experience at CPT Group positions her well to oversee the critical role of case intake and development of new team members and introducing them to the department's policies and procedures.
Alejandra received her degree in Computer Engineering from Autonomous University of Baja California in Ensenada, B.C. Mexico. While earning her degree, she worked as a web development assistant and helped develop a web page for students interested in taking off-campus classes.

## TARUS DANCY
### Supervising Case Manager

As a Supervising Case Manager at CPT Group, Tarus leads a team of Case Managers that oversee a breadth of cases, including Wage & Hour, pre-settlement Belaire, and Class Certification matters. With over a decade of experience in project management, Tarus brings a track record of guaranteeing projects are completed on schedule and in accordance with case specifications. In addition, his exceptional communication and leadership abilities support the continuity of the various projects he oversees. Tarus holds an M.B.A. in Project Management from the Florida Institute of Technology and a B.A. in Communications from the University of Memphis.

## TIM CUNNINGHAM,
### Associate Director, Case Management

Tim Cunningham has been with CPT Group since 2010 and has successfully managed over 300 cases. As Associate Director, under his direction, a team of Case Managers and Assistants are trained and guided to oversee all case activity—from administrative conception to disbursement. Tim and his team are also the primary contact between the firm and Counsel while also working closely throughout administration with the IT, Mailing, Claims and Call Center departments. Prior to CPT Group, Tim was a Lead Relationship Manager for 10 years at a prominent Fortune 500 mutual insurance holding company.
Tim earned his B.A. in Public Administration with a minor in English from California State University, San Diego.

## CAROLE THOMPSON,
### Associate Director, Case Management

Carole joined CPT in 2010 as a Case Manager. In her current role, she leads a team of Case Managers and ensures the proper guidance and supervision is upheld for high accuracy and prompt adherence to court-ordered deadlines. She is also responsible for overseeing case activities and having a comprehensive understanding of each case her team handles. In her career prior, she spent 12 years in the Financial Industry at a prominent Fortune 500 annuities company. Then, when an opportunity took her family to Minot, North Dakota, she had to leave CPT, but gained 5 years of Human Resources expertise, first as Benefits Specialist at Trinity Health and then as a Benefits Coordinator at Food Management Investors, Inc. Upon returning to California in 2016, Carole rejoined CPT, providing a strong professional background to the team.

## JENNIFER FORST
### Supervising Case Manager

Jennifer brings a deep understanding of human behavior and organizational dynamics to her role as Supervising Case Manager at CPT Group. Her professional journey began in employee engagement and retention, where she honed her skills as a project manager and consultant. Her expertise was further solidified during her tenure as Director of Client Services for an external consulting firm, where she led a diverse team of consultants, project managers, and analysts to deliver exceptional results for clients across industries.
Jennifer embarked on a new career chapter when she joined CPT Group, drawing on her background in psychology and client services, where she oversees cases with precision and empathy.

---

# EXHIBITS

EXHIBIT 1. CPT'S INFORMATION SECURITY STATEMENT
EXHIBIT 2. CPT'S DATA AND SETTLEMENT FUND TRANSMISSION METHODS

# EXHIBIT 1

# INFORMATION SECURITY STATEMENT
## Confidential

CPT Group, Inc. ("Company" or "CPT") maintains a comprehensive, written Information Security Program that complies with all applicable laws and regulations and is designed to (a) ensure the security, privacy and confidentiality of Class Member Information, (b) protect against any reasonably anticipated threats or hazards to the security or integrity of the Class Member Information, and (c) deny unauthorized access to, use, deletion, or modification of Class Member Information. As part of an ongoing effort, throughout its business CPT has implemented the following security controls and procedures:

1) Company uses Class Member Information only for the purposes for which Client provided it, as described in any Agreements and/or Court Order's governing the provisions of the Company's services on any particular engagement.

2) Company has designated one or more specifically named employees to be responsible for the administration of its Information Security Program.

3) Company has and maintains processes for identifying, assessing, and mitigating the risks to Class Member Information in each relevant area of the Company's operations and evaluating the effectiveness of the safeguards for controlling these risks.

4) Company utilizes an EDR that runs and analyzes daily Risk Assessment and Threat Intelligence scans on all company computer stations, servers and protected network subnets. These scans search for any software vulnerabilities along with data containing sensitive information ("SI").

5) All computers are provisioned with an advanced security stack. Company's Endpoint Protection centrally reports activity, handles patch management and security policies. Company's security stack is based on DNS and content filtering, deep packet inspection at the firewall level, antivirus/antimalware, email filtering and user behavior analysis. Each endpoint is monitored with modern Data Loss Prevention ("DLP") software. Company's DLP system prevents connection to unauthorized external storage, or cloud systems. It actively blocks screen prints and will not allow confidential user information to be sent out of our trusted network.

6) Login access to Company email or systems requires two factor authentication, which requires not only a password and username but also something physical, like user location, secure ID token or biometrics.

7) Company regularly monitors, tests and updates its Information Security Program.

8) Company restricts access to Class Member Information only to those employees, agents, or subcontractors who need to know the information to perform their jobs.

9) Company performs an annual audit of its Information Security Program and maintains compliance with **AICPA SOC 2 Type II.** This includes a review of the controls: vulnerability scans, secure software development life cycle, patch management, intrusion detection and prevention, encryption of storage media and devices. Company makes reasonable changes to its Information Security Program to ensure it can maintain safeguards that are appropriate for the Class Member Information at issue.

10) At Client's request, but only when and in a manner consistent with applicable Agreements and/or Court Orders, Company will securely destroy or return all Class Member Information in its possession and certify to Client in writing that Company has done so. If Company destroys Class Member Information rather than return it, Company will use destruction methods in compliance with all applicable state and federal laws and regulations, including NIST Special Publication 800-88, Revision 1 (2015). This obligation to return or destroy information shall not apply to Class Member Information that is stored in backup or other disaster recovery systems, archives or other storage systems that make it impractical to destroy the information, but if Company retains Class Member Information for these reasons, its obligation under the Settlement Agreement will continue to apply for so long as it retains the information. Additionally, the Company will retain all hard copy documents (i.e. Claim Forms, etc.) for a period of 6 months, at which time they are scanned and shredded on Company premises in compliance with NIST and SOC Cybersecurity Framework.

11) Company performs extensive background checks (County Criminal, County Civil and National Criminal Database Search) of all its employees, including a review of their references, employment edibility, and education verification to ensure they do not pose a risk to the security of Class Member Information or Clients employees. Company will provide, upon request, a copy of its background check requirements for Clients review and approval. Nothing in this document shall compel Company to disclose the results of such background information of its employees.

# INFORMATION SECURITY STATEMENT
**Confidential**

12) Company conducts a monthly third-party credentialed vulnerability assessment with Trustwave. Vulnerabilities rated as high are patched/resolved within 48 hours, medium within 1 week, and low within 2 weeks. If a vulnerability cannot be resolved within our standard timeframe, a compensating control will be introduced to protect the vulnerable systems. To ensure Company receives timely information regarding new threats and vulnerabilities, Company subscribes to US-CERT notices as well as notices are received from Sonicwall and Crowdstrike. New threats are communicated to our executive and leadership team to disseminate to all employees within the company.

13) Company has implemented the following safeguards for systems that process, store or transmit Class Member Information:

- Identify and Access Management.
- Windows password complexity with a specific length, history, upper and lower characters, numbers, expiration every 45 days.
- Two-Factor authentication for remote access.
- Removable media devices, personal web-based email, instant message, or online storage (i.e. Dropbox, Google Drive, iCloud, etc.) are blocked and restricted.
- Company uses the Microsoft Office 365 to host corporate email.
- Company uses the HTTPS or SFTP standard for all data transmissions and ensures that all Client Data is encrypted while in transmission between Company's data center and the Company's computer system or other devices (as applicable) and at rest, consistent with SOC 2 Type II standard, but no less than a 128-bit key for symmetric encryption and a 1024-bit key for asymmetric encryption.
- Company requires its clients and self to transfer files with sensitive Class Member Information via a secure transmission protocol through Citrix Sharefile FTP which secures file during transfer with SSL/TFL encryption protocols and in storage using AES 256-bit encryption. Links to files expire after 7 days. Company requires all files transferred in this method to be password protected during transmission and password to be provided telephonically. Files are retrieved by Company, and then deleted manually upon successful download (or auto deleted after 7 days from upload by system).
- Upon hire and annually thereafter, security training of all employees using the online security training platform Knowbe4. Users are required to complete one hour of security training per year. Users are required to take tests online to ensure they've retained the knowledge. Topics covered are spear phishing emails, compromised website, social engineering, strong passwords, ransomware, handling sensitive information, mobile device security.
- Company actively tests security defenses. Staff participate in simulated phishing exercises to reinforce previous training. Company also conducts monthly external penetration tests and daily internal vulnerability scans to ensure the integrity of our security measures.
- Terminated employees are immediately prevented from accessing Class Member Information.
- Appropriately configured and updated firewall, antivirus, and spyware software;
- Separation of Duties.
- Business Continuity Planning.
- Disaster Recovery Planning.
- Pandemic Recovery Planning

14) Company's physical security requires that employees use an encoded card-key to gain access to the facility as all doors are mechanically locked at all times. Employees can only enter or exit through a front door or back door, both of which are protected by security cameras. Inside the facility, secure areas in the office that contain checks or sensitive material are also protected by electronic card-key badge access and limited to select employees. Security cameras monitor the areas that contain the sensitive material and audits are conducted periodically on the area. Access to the server room is strictly limited to only five individuals and protected by the encoded card-key badge access. Security cameras monitor the inside and outside of the secured area with audits being conducted periodically.

## INFORMATION SECURITY STATEMENT
**Confidential**

15)  Company staff are required to maintain in compliance with the Information Security Policies, Compliance Manual, and Non-Disclosure Agreement. The matters covered in the Code of Business Conduct and Ethics are of the utmost importance to the Company and are essential to the Company's ability to conduct its business in accordance with its stated values. We expect all officers, directors, employees, agents, contractors and consultants to adhere to these rules in carrying out their duties for the Company. The Company will take appropriate action against any officer, director, employee, agents, contractor or consultant whose actions are found to violate these policies or any other policies of the Company. Disciplinary actions may include immediate termination of employment or business relationship at the Company's sole discretion.If the Company has suffered a loss, then it may pursue its remedies against the individuals or entities responsible. If laws have been violated, then the Company will fully cooperate with the appropriate authorities.

**Definitions**

1)  **"Class Member Information"** means Class Member name, address, or other contact information and class member claim filing information necessary for Company to perform services required by applicable Agreements or Court Orders in context to the Administration of a Settlement or other Class Action litigation.
2)  **"Client"** means collectively Plaintiff Counsel and Defense Counsel, Plaintiff and Defendant.
3)  **"Client Data"** means proprietary or personal data regarding Client or any of its Class Members under the Settlement Agreement, as provided by Client.
4)  **"Company"** means CPT Group, Inc. a reputable third-party Claims Administrator selected by all the Parties (Plaintiff and Defense Counsel) to administer the Settlement or Notification Mailing.
5)  **"Sensitive Personal Information"** means any non-public information of CPT or Client disclosed by either party to the other party, either directly or indirectly, in writing, orally or by inspection of tangible objects, or to which the other party may have access, which a reasonable person would consider confidential and/or which is marked "confidential" or "proprietary" or some similar designation by the disclosing party. Confidential Information shall not include any information which the recipient can establish: (i) was or has become generally known or available or is part of the public domain without direct or indirect fault, action, or omission of the recipient; (ii) was known by the recipient prior to the time of disclosure, according to the recipient's prior written documentation; (iii) was received by the recipient from a source other than the discloser, rightfully having possession of and the right to disclose such information; or (iv) was independently developed by the recipient, where such independent development has been documented by the recipient.



# EXHIBIT 2

# Secure Transmission Methods for Sensitive Information

CPT Group has established rigorous protocols for secure transmission and protection of Client Data and Wire Information. These guidelines maintain the highest level of security and confidentiality in legal and financial transactions through secure File Transfer Protocol (FTP) technology, password protection, and automatic file deletion.

# Client Data Transmission

The secure transmission of Client Data is paramount in maintaining confidentiality and integrity of sensitive information. CPT implements a stringent process that utilizes secure File Transfer Protocol (FTP) technology to ensure the safe transfer of data files between counsel and CPT.

**Four-Step Security Protocol:**



**1**

### Step 1: Link Provision

CPT provides counsel with a secure FTP (Sharefile) link specifically designated for the transfer of data files ensuring transmission over encrypted connection.

**2**

### Step 2: File Upload and Password Protection

Counsel uploads required files to the Sharefile link. All uploaded files must be password-protected to add an extra layer of security ensuring file contents remain encrypted and inaccessible even if unauthorized access occurs.

**3**

### Step 3: Password Communication

File password are communicated to CPT personnel via telephone. This separation of file transmission and password communication reduces interception risk and unauthorized access.

**4**

### Step 4: File Retrieval and Deletion

Once CPT retrieves the uploaded files, they are automatically deleted from the Sharefile system after seven days minimizing the vulnerability window and ensures sensitive data doesn't persist unnecessarily.

These steps not only provides a secure channel for data transmission but also incorporate additional layers of security through password protection and automatic file deletion. By adhering to these protocols, CPT minimizes the risk of unauthorized access and data breaches, thereby protecting the interests of all parties involved in the legal process.



# Wire Instructions Security Protocols

CPT emphasizes the importance of secure channels for transmitting sensitive financial information, recognizing the potential risks associated with electronic communication of banking details.

## QSF Wire Instructions Provided to Defense Counsel:



### PDF Generation and Protection

CPT creates wire password-protected PDF wire instructions.

### Secure Upload to Sharefile

Protected PDF is uploaded to secure Sharefile platform.

### Telephonic Password Communication

CPT personnel directly call Defense Counsel to provide PDF access password.

### Confirmation Call

Defendant/Defense Counsel should call CPT prior to initiating any wire transfer.

## Plaintiff's Counsel Wire Instructions Provided to CPT:

The process for communicating wire instructions to Plaintiff Counsel is designed with similar security considerations as those for incoming transfers. By establishing strict guidelines for the transmission of both outgoing and incoming wire instructions, CPT ensures that the final stage of fund distribution maintains the same level of security as the initial transfer.



### Authorized Methods Only

CPT explicitly states that attempts to transmit Client Data or Wire Communications through alternative means are not accepted. This strict policy maintains consistent security protocols, reduces risk of data interception or loss, risk of fraudulent transactions or misdirected fund, ensures compliance with data and financial protection regulations, and stablishes clear chain of custody for sensitive and financial information.

### Disclaimer for Unauthorized Transmissions

CPT issues clear disclaimers for any attempts to use unauthorized transmission methods, emphasizing reinforcement of established procedure importance, responsibility placement on transmitting party for potential breaches, risk awareness of unsecured transmission channels, and professional conduct and client trust maintenance.



# EXHIBIT B



| CASE NAME: SDSU TITLE IX | |
|---|---|
| Requesting Attorney: Gayle M. Blatt | Date: September 26, 2025 |
| Plaintiff or Defense: Plaintiff | Prepared By: Dominique Fite |
| Firm Name: Casey Gerry Francavilla Blatt | 50 Corporate Park, Irvine CA 92606 |
| Telephone: (619) 238-1811 | Dfite@CPTGroup.com |
| Email: gmb@cglaw.com | Direct Number: (619) 613-1653 |
| | Main Number: (800) 542-0900 |

## PROJECT ASSUMPTIONS & ADMINISTRATIVE COSTS

| | | | |
|---|---|---|---|
| Class Size: 826 | | Check Reminder Postcard: No | |
| Language Translation Services: No | | Unclaimed Funds: Cy Pres | |
| Settlement Website: Interactive Website | | Postage Total: $170.65 | |
| Payment Option: Check & Digital Payments | | Grand Total: $13,837.65 | |
| Undeliverable Check Rate: 10% | | CPT'S DISCOUNTED FEE: $9,750.00 | |

The services and numbers reflected herein are estimates based on the information provided by counsel at the time of this Bid. If the actual services and numbers are different, our cost estimate will change accordingly. Client expressly acknowledges and agrees that estimated fees and costs may fluctuate and agrees to pay for any such increases to such estimates as if set forth herein.

The attached Terms and Conditions are included as part of and incorporated by reference to our cost proposal. By accepting our cost proposal for this matter, you are thereby agreeing to the Terms and Conditions.

## CASE SETUP

After receiving the data, CPT will scrub all records to eliminate duplicates and anomalies; this process is designed to achieve a higher success percentage in delivering the distribution proceeds. Each a class member will receive a unique mailing ID that will be utilized for all administrative purposes. CPT will perform an address update via NCOA and, if necessary, conduct an additional skip trace in order to ensure that mail is delivered to the most current address possible. The website will publish the full Notice and all relevant court documents for downloading and widget for payment option.

| ADMINISTRATIVE TASKS | UNIT PRICE | PIECES/HOURS | COST ESTIMATE |
|---|---|---|---|
| Project Manager: Case Intake & Review | $95.00 | 7 | $665.00 |
| Project Manager: Format Documents | $95.00 | 1 | $95.00 |
| Programming: Data Base Setup | $150.00 | 7 | $1,050.00 |
| National Change of Address Search (NCOA) | $135.00 | 1 | $135.00 |
| XML Lex ID Skip Trace | $0.85 | 83 | $70.55 |
| Simple - Interactive Website | $2,500.00 | 1 | $2,500.00 |
| | | Sub Total: | $4,515.55 |

## SSN VERIFICATION

Authenticate Social Security Number for validity using IRS verification processes and/or IRS backup withholding processes.

| ADMINISTRATIVE TASKS | UNIT PRICE | PIECES/HOURS | COST ESTIMATE |
|---|---|---|---|
| Programming: SSN Selection | $150.00 | 1 | $150.00 |
| Department Manager: Analysis & Reporting | $95.00 | 3 | $285.00 |
| IRS SSN Verification | $0.10 | 826 | $82.60 |
| | | Sub Total: | $517.60 |

## DISTRIBUTION SERVICES

CPT will establish a 26 CFR § 1.468B-1 compliant Qualified Settlement Fund (QSF). Upon approval, CPT will perform the required payment calculations, and once approved by the parties, CPT will print a one-page notice and issue a (MICR) check or electronic payment to all eligible employees. CPT will also issue an IRS Form 1099 via mail or email. CPT utilizes the bank's Payee Positive Pay to prevent check fraud and performs monthly account reconciliations for the QSF bank account. Undeliverable checks are skip-traced to obtain a current address and are remailed accordingly. Requests for check reissues will be processed throughout the check-cashing period. CPT's administration of the QSF will continue for a maximum duration of one year following the initial distribution of funds.

| ADMINISTRATIVE TASKS | UNIT PRICE | PIECES/HOURS | COST ESTIMATE |
|---|---|---|---|
| Programming: Calculation Totals | $150.00 | 3 | $450.00 |
| Project Supervisor: Review of Distribution | $150.00 | 3 | $450.00 |
| Project Manager: Correspondence w/Parties | $95.00 | 2 | $190.00 |
| Programming: Setup & Printing of Checks /E-Payments | $150.00 | 5 | $750.00 |
| Obtain EIN, Setup QSF/Bank Account | $150.00 | 3 | $450.00 |
| Print & Mail Notice, Checks & 1099 | $2.75 | 124 | $340.73 |
| First-Class Postage (up to 1 oz.)* | $0.74 | 124 | $91.69 |
| Processing of Electronic Payments | $0.75 | 702 | $526.58 |
| Project Supervisor: Account Reconciliation | $150.00 | 6 | $900.00 |
| Update Undeliverable Checks Database | $0.50 | 83 | $41.30 |
| Clerical Staff | $60.00 | 1 | $60.00 |
| Skip Trace for Best Address | $1.00 | 83 | $82.60 |
| Remail Undeliverable Checks | $3.00 | 75 | $225.00 |
| First-Class Postage (up to 1 oz.) | $0.74 | 75 | $55.50 |
| Re-Issue Checks as Required | $5.00 | 34 | $170.00 |
| First-Class Postage (up to 1 oz.) | $0.69 | 34 | $23.46 |
| Project Manager-Email Notice Format | $95.00 | 2 | $190.00 |
| Third-Party Email Validation | $0.15 | 702 | $105.32 |
| Email Tax Form: Setup/Establish/Formatting | $150.00 | 3 | $450.00 |
| Email Tax Form: Segmentation/Sending | $150.00 | 3 | $450.00 |
| Email Tax Form: Reporting/Monitoring | $250.00 | 1 | $250.00 |
| Email IRS Tax Form 1099 | $0.16 | 702 | $112.34 |
| | | Sub Total: | $6,264.50 |

*Postage costs are subject to change at anytime. The final rate will be determined at the time of mailing.

**Exhibit E, Pg. 18 of 22**

## TAX REPORTING & SETTLEMENT CONCLUSION

CPT prepares annual tax reporting on behalf of the QSF and Federal taxes in accordance with current regulations. All parties will be furnished with weekly and final reports. A declaration attesting to due process will be provided to all parties. Unclaimed funds will revert to a Cy Pres designated by the parties.

| ADMINISTRATIVE TASKS | UNIT PRICE | PIECES/HOURS | COST ESTIMATE |
|---|---|---|---|
| Project Supervisor: Reconcile Uncashed Chk | $150.00 | 1 | $150.00 |
| Programming: Weekly & Final Reports | $150.00 | 2 | $300.00 |
| Project Supervisor: Final Declaration | $150.00 | 2 | $300.00 |
| Project Manager: Account Files Sent to Atty | $95.00 | 2 | $190.00 |
| Annual Tax Reporting to IRS* | $1,000.00 | 1 | $1,000.00 |
| QSF Annual Tax Reporting | $500.00 | 1 | $500.00 |
| Unclaimed Funds Revert to Cy Pres | Included | 1 | Included |
| | | **Sub Total:** | **$2,440.00** |

*CPT will file Federal taxes in accordance with current regulations.

| | | |
|---|---|---|
| | Total Administration Costs: | $13,837.65 |
| | *Courtesy Discount:* | *-$4,087.65* |
| | **CPT'S DISCOUNTED FLAT FEE:** | **$9,750.00** |

**Exhibit E, Pg. 19 of 22**

# TERMS AND CONDITIONS

These Terms and Conditions ("**Terms and Conditions**") are made a part of, and incorporated by reference into, any Bid presented by CPT Group, Inc. ("**CPT**") to Client. Each of Client and CPT is a "**Party**" to this Agreement, and collectively, the "**Parties**".

1. Definitions.
   a) "**Affiliate**" means a party that partially (at least 50%) or fully controls, is partially or fully controlled by, or is under partial (at least 50%) or full common control with another party.
   b) "**Agreement**" means these Terms and Conditions and the Bid.
   c) "**Applicable Laws**" means all applicable local, state and federal laws, ordinances, rules and regulations.
   d) "**Approved Bank**" means any financial institution that is insured by the Federal Deposit Insurance Corporation.
   e) "**Bid**" means a proposal, statement of work, order form, and/or schedule for Services (including any and all addendums, exhibits, or amendments thereto) provided by CPT to Client.
   f) "**Case**" means the case referred to in the attached Bid and/or the particular judicial matter identified by the name of plaintiff(s) and defendant(s) on the caption of the applicable Court Order.
   g) "**Class**" means the case and putative Members collectively.
   h) "**Client**" means the party or parties engaging CPT for Services as set forth in the Bid, namely Plaintiff Counsel and/or Defense Counsel.
   i) "**Confidential Information**" means any non-public information of CPT or Client disclosed by either Party to the other Party, either directly or indirectly, in writing, orally or by inspection of tangible objects, or to which the other Party may have access, which a reasonable person would consider confidential and/or which is marked "confidential" or "proprietary" or some similar designation by the disclosing Party. Confidential Information shall also include the terms of this Agreement, except where this Agreement specifically provides for disclosure of certain items. Confidential Information shall not, however, include the existence of the Agreement or any information which the recipient can establish: (i) was or has become generally known or available or is part of the public domain without direct or indirect fault, action, or omission of the recipient; (ii) was known by the recipient prior to the time of disclosure, according to the recipient's prior written documentation; (iii) was received by the recipient from a source other than the discloser, rightfully having possession of and the right to disclose such information; or (iv) was independently developed by the recipient, where such independent development has been documented by the recipient.
   j) "**Court Order**" means a legal command or direction issued by a court, judicial office, or applicable administrative body requiring one or more Parties To The Case to carry out a legal obligation pursuant to the Case.
   k) "**Defendant**" means the named Party and/or Parties in the Case against whom action is brought.
   l) "**Defense Counsel**" means the attorney(s) of record for the Defendant(s) in the Case.
   m) "**Intellectual Property Right**" means any patent, copyright, trade or service mark, trade dress, trade name, database right, goodwill, logo, trade secret right, or any other intellectual property right or proprietary information right, in each case whether registered or unregistered, and whether arising in any jurisdiction, including without limitation all rights of registrations, applications, and renewals thereof and causes of action for infringement or misappropriation related to any of the foregoing.
   n) "**Member**" means an individual who is eligible under the Case or Class to receive a communication about their pending legal rights under the matter and/or designated amount of the Settlement, including the named Plaintiff(s) in the Case and all other putative persons or other parties in the representative action so designated or addressed therein.
   o) "**Member Content**" means all Member written document communications relating to the Case, including claim forms, opt-out forms, and/or objections, which may contain Member Data.
   p) "**Member Data**" means proprietary or personal data regarding Members under this Agreement.
   q) "**Parties To The Case**" shall mean collectively Defendant(s) and Plaintiff(s) as defined in the Settlement Agreement or Court Order.
   r) "**Plaintiff**" means the named party and/or parties in the Case who are bringing the action.
   s) "**Plaintiff Counsel**" means the attorney(s) of record for Plaintiff(s) in the Case, and/or upon certification by the Court the designated of record designated to represent the Class.
   t) "**Products**" means any and all CPT Services and work product resulting from Services.

   u) "**Qualified Settlement Fund**" or "**QSF**" means a bank account established pursuant to U.S. Department of Treasury Regulations §1468B-1.
   v) "**Service**" means any service rendered by CPT specifically to Client, including, but not limited to: (i) notifications to Members; (ii) setting up a QSF with an Approved Bank; (iii) management of disbursement of funds from the QSF to applicable parties pursuant to the Settlement Agreement; (iv) provision of customer support relating to the Case; (v) management of Case claim forms and correspondence; and/or (vi) any administrative or consulting service.
   w) "**Settlement Agreement**" means the contract between Parties To The Case to resolve the same, which specifies amounts to be disbursed from the Qualified Settlement Fund to attorneys, CPT, and individual Members.
   x) "**Settlement Amount**" means the total dollar amount agreed to between Parties To The Case to resolve the Case to mutual satisfaction.
   y) "**Software**" means any and all of CPT's software applications, including, without limitation, all updates, revisions, bug-fixes, upgrades, and enhancements thereto.
   z) "**Transmission Methods**" means the secure authorized manner to send Member Data and/or Wire Information as specified on a schedule or exhibit hereto.
   aa) "**Term**" means the period commencing on the date set forth on the Bid and continuing until the date of final judgment (if a settlement) or upon completion of all Services as set forth in the Bid.
   bb) "**Wire Information**" means instructions for (i) Defense Counsel to transfer funds from Defendant to the Qualified Settlement Fund or (ii) CPT to transfer funds from the Qualified Settlement Fund to applicable parties pursuant to the Settlement Agreement.

2. Client Obligations. Client will ensure that it has obtained all necessary consents and approvals for CPT to access and use Member Data for the purposes permitted under this Agreement and shall only transmit Member Data and/or Wire Information to CPT via the Transmission Methods. Client shall use and maintain appropriate administrative, technical, and physical safeguards designed to protect Member Data provided under this Agreement. Client further warrants that any Member Data, Wire Information, or other content, data, materials or information it transmits to CPT will be free of viruses, worms, Trojan horses, or other harmful or disabling codes which could adversely affect Member Data and/or CPT. If Client is in breach of this section, CPT may suspend Services, in addition to any other rights and remedies CPT may have at law or in equity.

3. CPT Obligations. CPT will (i) maintain appropriate safeguards designed to protect Member Data, including regular back-ups, security and incident response protocols, and (ii) not access or disclose Member Data except (A) as compelled by law, (B) to prevent or address service or technical issues, (C) in accordance with this Agreement or the provisions of the Settlement Agreement, or (D) if otherwise permitted by Parties To The Case, Members, Plaintiff Counsel or Defense Counsel as applicable.

4. Security. Client and CPT shall each use reasonable administrative, technical, and physical safeguards that are reasonably designed to: (a) protect the security and confidentiality of any Member Data in its possession or control under this Agreement; (b) protect against any anticipated threats or hazards to the security or integrity of such Member Data; (c) protect against unauthorized access to or use of such Member Data that could result in substantial harm or inconvenience to any individual; and (d) protect against unauthorized access to or use of such Member Data in connection with its disposal.
   a) Incident Notification. In the event a Party discovers that Member Data relating to the Case is the subject of (i) any unauthorized acquisition, loss, access or use and/or (ii) an actual or suspected breach concerning such Party's systems (items (i) and/or (ii) a "**Security Incident**"), or a Party has a reasonable belief that a Security Incident has occurred or is at risk of occurring, such Party will promptly but no later than forty-eight (48) hours of its discovery of such circumstances, inform the other Parties in the event of such Security Incident, and shall utilize best efforts to assist the other Parties to mitigate the effects of such Security Incident.
   b) Response Procedures. In the event of a Security Incident, the breached party shall (i) cooperate with any reasonable investigation concerning the Security Incident by the other Parties, regulators and/or law enforcement; and (ii) cooperate with the other Parties to comply with Applicable Laws concerning such Security Incident, including any notification to affected individuals. The Parties acknowledge that the breached party in any Security Incident shall be the Party responsible for

**Exhibit E, Pg. 20 of 22**

any and all remedies and costs under Applicable Laws concerning such Security Incident, unless such breach occurred due to another Party's actions hereunder, in which instance such party shall be comparatively responsible for all remedies and costs. In no event will any Party serve notice or otherwise publicize a Security Incident without the prior written consent of the other Parties. The Parties shall reasonably cooperate and coordinate with each other to respond to the Security Incident, including with regard to the content of notification to affected individuals.

6. <u>Qualified Settlement Fund Account</u>. When the Case has a Settlement Amount CPT shall be authorized to establish one or more QSF bank accounts at an Approved Bank if and as applicable to the Services as set forth in the Bid. The amounts held at the Approved Bank under this Agreement are at the sole risk of Defendant. Without limiting the generality of the foregoing, CPT shall have no responsibility or liability for any diminution of the funds that may result from the deposit thereof at the Approved Bank, including deposit losses, credit losses, or other claims made against the Approved Bank. It is acknowledged and agreed that CPT has acted reasonably and prudently in depositing funds at an Approved Bank, and CPT is not required to conduct diligence or make any further inquiries regarding such Approved Bank.

7. <u>Fees and Payment</u>. Pricing for Services is as stated on the Bid, and Client agrees to pay CPT in the amounts set forth on the Bid. Client will be invoiced per the schedule set forth in the Bid, and payment of fees will be due within 30 days after the date of the invoice, except where the Bid or terms of the Settlement Agreement or Court Order expressly prescribes other payment dates. All fees set forth in a Bid are in U.S. dollars, must be paid in U.S. dollars, and are exclusive of taxes and applicable transaction processing fees. Late payments hereunder will incur a late charge of 1.5% per month (or the highest rate allowable by law, whichever is lower) on the outstanding balance from the date due until the date of actual payment, which such late charge(s) may be charged against the QSF account if incurred in connection with Services provided pursuant to administration of a settlement. In addition, Services are subject to suspension for failure to timely remit payment therefor. If travel is required to effect Services, Client shall reimburse CPT for pre-approved, reasonable expenses arising from and/or relating to such travel, including, but not limited to, airfare, lodging, meals, and ground transportation. In connection with CPT's administration of a QSF, unless otherwise stated in the Settlement Agreement or Court Order concerning disbursement of unclaimed funds in the QSF account, CPT reserves the right, after one (1) year of issuance of disbursements to Members, to classify any remaining balance in such QSF account as additional administrative fees payable to CPT until such time as the QSF account balance becomes zero ($0.00), and therefore closed such account. Client is aware that CPT may receive financial benefits, including discounts on certain banking services and competition for services that ensure eligibility for FDIC deposit insurance or in connection with the establishment of QSF accounts. Client agrees that any such financial benefit may be retained by CPT as additional compensation for CPT's services.

8. <u>Term and Termination</u>.

   a) <u>Term</u>. The Term is set forth in the Bid. The Agreement may be renewed by mutual written agreement of the parties.

   b) <u>Termination for Cause</u>. Either Party may immediately terminate this Agreement if the other Party materially breaches its obligations hereunder, and, where capable of remedy, such breach has not been materially cured within forty-five (45) days of the breaching Party's receipt of written notice describing the breach in reasonable detail.

   c) <u>Bankruptcy Events</u>. A Party may immediately terminate this Agreement if the other Party: (i) has a receiver appointed over it or over any part of its undertakings or assets; (ii) passes a resolution for winding up (other than for a bona fide scheme of solvent amalgamation or reconstruction), or a court of competent jurisdiction makes an order to that effect and such order is not discharged or stayed within ninety (90) days; or (iii) makes a general assignment for the benefit of its creditors.

   d) <u>Effect of Termination</u>. Immediately following termination of this Agreement, upon written request, Member Data may be retrieved via the secure FTP site in the same format in which the Member Data was originally input into the Software, at no additional charge. Alternatively, Member Data can be returned in a mutually agreed format at a scope and price to be agreed upon. CPT will maintain a copy of Member Data and Member Content for no more than four (4) years following the date of the final check cashing deadline for Members under the Settlement Agreement, after which time any Member Data and Member Content not retrieved will be destroyed.

   e) <u>Final Payment</u>. If Client terminates this Agreement due to Section "Termination", Client shall pay CPT all fees owed through the termination date. If CPT terminates the Agreement in accordance with Section "Termination", Client shall pay CPT all fees invoiced through the termination date, plus all fees remaining to be invoiced during the Term, less any costs CPT would have incurred had the Agreement not been terminated.

<u>Confidentiality</u>. Each Party agrees (i) not to register any Confidential Information to any third parties except as mandated by law and except to those subcontractors of CPT providing Products hereunder who agree to be bound by confidentiality obligations no less stringent than those set forth in this Agreement; (ii) not to use any Confidential Information for any purposes except carrying out such Party's rights and responsibilities under this Agreement; and (iii) to keep the Confidential Information confidential using the same degree of care such Party uses to protect its own confidential information; provided, however, that such Party shall use at least reasonable care. These obligations shall survive termination of this Agreement.

   a) <u>Compelled Disclosure</u>. If receiving Party is compelled to disclose any Confidential Information by judicial or administrative process or by other requirements of law, such Party shall (i) promptly notify the other Party, (ii) reasonably cooperate with the other Party in such Party's efforts to prevent or limit such compelled disclosure and/or obtain confidential treatment of the items requested to be disclosed, and (iii) shall disclose only that portion of such information which each Party is advised by its counsel in writing is legally required to be disclosed.

   b) <u>Remedies</u>. If either Party breaches any of its obligations with respect to confidentiality or the unauthorized use of Confidential Information hereunder, the other Party shall be entitled to seek equitable relief to protect its interest therein, including but not limited to, injunctive relief, as well as monetary damages.

10. <u>Intellectual Property</u>. CPT retains all right, title and interest (including, without limitation, all Intellectual Property Rights) in and to the Products. CPT does not claim any ownership rights to Member Data.

11. <u>Indemnification</u>. Client agrees to indemnify, defend, and hold harmless CPT, its Affiliates, and the respective officer, directors, consultants, employees, and agents of each (collectively, "**Covered CPT Parties**") from and against any and all third party claims and causes of action, as well as related losses, liabilities, judgments, awards, settlements, damages, expenses and costs (including reasonable attorney's fees and related court costs and expenses) (collectively, "**Damages**") incurred or suffered by CPT which directly relate to or directly arise out of (i) Client's breach of this Agreement; (ii) CPT's performance of Services hereunder; (iii) the processing and/or handling of any payment by CPT; (iv) any content, instructions, information or Member Data provided by Client to CPT in connection with the Services provided by CPT hereunder. The foregoing provisions of this section shall not apply to the extent the Damages relate to or arise out of CPT's willful misconduct. To obtain indemnification, indemnitee shall: (i) give written notice of any claim promptly to indemnitor; (ii) give indemnitor, at indemnitor's option, sole control of the defense and settlement of such claim, provided that indemnitor may not, without the prior consent of indemnitee (not to be unreasonably withheld), settle any claim unless it unconditionally releases indemnitee of all liability; (iii) provide to indemnitor all available information and assistance; and (iv) not take any action that might compromise or settle such claim.

12. <u>Warranties</u>. Each Party represents and warrants to the other Party that, as of the date hereof: (i) it has full power and authority to execute and deliver the Agreement; (ii) the Agreement has been duly authorized and executed by an appropriate employee of such Party; (iii) the Agreement is a legally valid and binding obligation of such Party; and (iv) its execution, delivery and/or performance of the Agreement does not conflict with any agreement, understanding or document to which it is a party. CPT WARRANTS THAT ANY AND ALL SERVICES PROVIDED BY IT HEREUNDER SHALL BE PERFORMED IN A PROFESSIONAL MANNER CONSISTENT WITH PREVAILING INDUSTRY STANDARDS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, CPT DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT AND ANY WARRANTIES ARISING FROM A COURSE OF DEALING, USAGE OR TRADE PRACTICE

13. <u>Liability</u>.

   a) <u>Liability Cap</u>. EXCEPT FOR A PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, EACH PARTY'S MAXIMUM AGGREGATE LIABILITY ARISING OUT OF OR RELATING TO THIS AGREEMENT, REGARDLESS OF THE THEORY OF LIABILITY, WILL BE LIMITED TO THE TOTAL FEES PAID OR PAYABLE BY CLIENT AND/OR THE PARTIES TO THE CASE TO CPT HEREUNDER. THE EXISTENCE OF MORE THAN ONE CLAIM SHALL NOT EXPAND SUCH LIMIT. THE PARTIES ACKNOWLEDGE THAT THE FEES AGREED UPON BETWEEN CLIENT AND CPT ARE BASED IN PART ON THESE LIMITATIONS, AND THAT THESE LIMITATIONS WILL APPLY NOTWITHSTANDING ANY FAILURE OF ANY ESSENTIAL PURPOSE OF ANY LIMITED REMEDY. THE FOREGOING LIMITATION SHALL NOT APPLY TO A PARTY'S PAYMENT OBLIGATIONS UNDER THE AGREEMENT.

   b) <u>Exclusion of Consequential Damages</u>. NEITHER PARTY WILL BE LIABLE FOR LOST PROFITS, LOST REVENUE, LOST BUSINESS OPPORTUNITIES, LOSS OF DATA, INTERRUPTION OF BUSINESS, OR ANY OTHER INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATING TO THIS AGREEMENT,

**Exhibit E, Pg. 21 of 22**

REGARDLESS OF THE THEORY OF LIABILITY, EVEN IF IT WAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

14. <u>Communications.</u>  CPT may list Client's name and logo alongside CPT's other clients on the CPT website and in marketing materials, unless and until Client revokes such permission. CPT may also list the Case name and/or number, and certain Qualified Settlement Fund information, on the CPT website and in marketing materials, unless stated otherwise in the Settlement Agreement.

15. <u>Miscellaneous Provisions.</u>

a) <u>Governing Law; Jurisdiction.</u>  This Agreement will be governed by and construed in accordance with the laws of the State of California and the federal laws of the United States of America, without regard to conflict of law principles.  CPT and Client agree that any suit, action or proceeding arising out of, or with respect to, this Agreement or any judgment entered by any court in respect thereof shall be brought exclusively in the state or federal courts of the State of California located in the County of Orange, and each of CPT and Client hereby irrevocably accepts the exclusive personal jurisdiction and venue of those courts for the purpose of any suit, action or proceeding.

b) <u>Force Majeure.</u>  Neither Party will be liable for any failure or delay in its performance under this Agreement due to any cause beyond its reasonable control, including without limitation acts of war, acts of God, earthquake, flood, weather conditions, embargo, riot, epidemic, acts of terrorism, acts or omissions of vendors or suppliers, equipment failures, sabotage, labor shortage or dispute, governmental act, failure of the Internet or other acts beyond such Party's reasonable control, provided that the delayed Party: (i) gives the other Party prompt notice of such cause; and (ii) uses reasonable commercial efforts to correct promptly such failure or delay in performance.

c) <u>Counterparts.</u>  This Agreement may be executed in any number of counterparts and electronically, each of which shall be an original but all of which together shall constitute one and the same instrument.

d) <u>Entire Agreement.</u>  This Agreement contains the entire understanding of the parties in respect of its subject matter and supersedes all prior agreements and understandings (oral or written) between the Parties with respect to such subject matter.  The schedules and exhibits hereto constitute a part hereof as though set forth in full herein.

e) <u>Modifications.</u>  Any modification, amendment, or addendum to this Agreement must be in writing and signed by the Parties.

f) <u>Assignment.</u>  Neither Party may assign this Agreement or any of its rights, obligations, or benefits hereunder, by operation of law or otherwise, without the other Party's prior written consent; provided, however, either Party, without the consent of the other Party, may assign this Agreement to an Affiliate or to a successor (whether direct or indirect, by operation of law, and/or by way of purchase, merger, consolidation or otherwise) to all or substantially all of the business or assets of such Party, where the responsibilities or obligations of the other Party are not increased by such assignment and the rights and remedies available to the other Party are not adversely affected by such assignment.  Subject to that restriction, this Agreement will be binding on, inure to the benefit of, and be enforceable against the parties and their respective successors and permitted assigns.

g) <u>No Third-Party Beneficiaries.</u>  The representations, warranties, and other terms contained herein are for the sole benefit of the Parties hereto and their respective successors and permitted assigns and shall not be construed as conferring any rights on any other persons.

h) <u>Statistical Data.</u>  Without limiting the confidentiality rights and Intellectual Property Rights protections set forth in this Agreement, CPT has the perpetual right to use aggregated, anonymized, and statistical data ("**Statistical Data**") derived from the operation of the Software, and nothing herein shall be construed as prohibiting CPT from utilizing the Statistical Data for business and/or operating purposes, provided that CPT does not share with any third-party Statistical Data which reveals the identity of Client, Client's Class Members, or Client's Confidential Information.

i) <u>Export Controls.</u>  Client understands that the use of CPT's Products is subject to U.S. export controls and trade and economic sanctions laws and agrees to comply with all such Applicable Laws, including the Export Administration Regulations maintained by the U.S. Department of Commerce and the trade and economic sanctions maintained by the Treasury Department's Office of Foreign Assets Control.

j) <u>Severability.</u>  If any provision of this Agreement is held by a court or arbitrator of competent jurisdiction to be contrary to law, such provision shall be changed by the court or by the arbitrator and interpreted so as to best accomplish the objectives of the original provision to the fullest extent allowed by law, and the remaining provisions of this Agreement shall remain in full force and effect.

k) <u>Notices.</u>  Any notice or communication required or permitted to be given hereunder may be delivered by hand, deposited with an overnight courier, sent by electronic delivery, or mailed by registered or certified mail, return receipt requested and postage prepaid to the address for the other Party as set forth on the Bid or at such other address as may hereafter be furnished in writing by either Party hereto to the other Party.  Such notice will be deemed to have been given as of the date it is delivered, if by personal delivery; the next business day, if deposited with an overnight courier; upon receipt of confirmation of electronic delivery (if followed up by such registered or certified mail); and five days after being so mailed.

l) <u>Independent Contractors.</u>  Client and CPT are independent contractors, and nothing in this Agreement shall create any partnership, joint venture, agency, franchise, sales representative or employment relationship between Client and CPT.  Each Party understands that it does not have authority to make or accept any offers or make any representations on behalf of the other.  Neither Party may make any statement that would contradict anything in this section.

m) <u>Subcontractors.</u>  CPT may use subcontractors to perform Client-specific Services; provided, however, that CPT shall be responsible for its subcontractors' performance of Services under this Agreement.

n) <u>Headings.</u>  The headings of the sections of this Agreement are for convenience only, do not form a part hereof, and in no way limit, define, describe, modify, interpret, or construe its meaning, scope or intent.

o) <u>Waiver.</u>  No failure or delay on the part of either Party in exercising any right, power or remedy under this Agreement shall operate as a waiver, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise or the exercise of any other right, power, or remedy.

p) <u>Acceptance.</u>  If, when requested in writing by Client, CPT then provides any Service to Client, whether or not such Services were specified in the original Bid, these Terms and Conditions shall apply to the provision of such Services and be deemed accepted and approved by Client concerning such Services.

q) <u>Survival.</u>  Sections of the Agreement intended by their nature and content to survive termination of the Agreement shall so survive.

**Exhibit E, Pg. 22 of 22**