UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON FISK, RAQUEL CASTRO, GRETA VISS, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all those similarly situated, | Case No.: 3:22-cv-173-TWR (MSB) **ORDER (1) GRANTING THE JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CONDITIONAL CLASS CERTIFICATION, (2) APPROVING OF CLASS NOTICE, AND (3) SCHEDULING A FAIRNESS HEARING FOR FINAL APPROVAL OF SETTLEMENT** |

                                 Plaintiffs,

v.

BOARD OF TRUSTEES OF THE
CALIFORNIA STATE UNIVERSITY
and SAN DIEGO STATE UNIVERSITY,

                                 Defendants.

(ECF No. 159)

Presently before the Court are the Parties' Joint Motion for Preliminary Approval of Class Action Settlement and Class Certification ("Joint Mot.," ECF No. 159), the proposed Settlement Agreement ("Settlement Agreement," ECF No. 159-2), and the proposed Class Notice ("Class Notice," ECF No. 159-3). The Court held oral argument on the Joint Motion on December 17, 2025. (*See* ECF No. 164.) Having carefully considered the Joint Motion,

the Settlement Agreement, the Class Notice, the Parties' arguments, and the relevant law, the Court **GRANTS** the Motion for Preliminary Approval and Conditional Class Certification, **APPROVES** of Class Notice, and **SETS** a Fairness Hearing for Final Approval of the Settlement Agreement.

## FACTUAL BACKGROUND

### I.    Plaintiffs' Claims

Plaintiffs, "past and current female varsity student-athletes at SDSU," initiated this lawsuit against Defendants on February 7, 2022, alleging SDSU—a recipient of federal funding—has engaged in intentional discrimination based on sex in its athletic programs in violation of Title IX.  (ECF No. 50 ("TAC") ¶¶ 1, 17, 298–99, 332, 371); *see also* 20 U.S.C. §§ 1681, 1687.  Plaintiffs specifically claim SDSU has violated, and is violating, Title IX and its guiding regulations by (1) "depriving its female varsity student-athletes of equal financial aid"; (2) "denying them equal athletic benefits and treatment"; and (3) "retaliating against them because some of them sued SDSU for violating Title IX." (TAC ¶ 1.)

### II.    Settlement

Following extensive discovery by both parties, Plaintiffs filed for class certification on November 22, 2024, which SDSU contested.  (*See* ECF No. 115 ("Class Cert. Mot.").) On March 7, 2025, while Plaintiffs' motion was pending, the Parties participated in a full-day settlement conference with Magistrate Judge Michael S. Berg.  (*See* ECF No. 133.) The Parties continued to engage in settlement negotiations with Judge Berg serving as the neutral mediator until August 13, 2025, when the Parties engaged in another half-day settlement conference with Judge Berg and were able to reach an agreement.  (*See* ECF No. 153.)

### III.    The Proposed Classes

The Proposed Settlement Agreement provides two classes, and only members of Class 2 are eligible for monetary relief.  The proposed classes are as follows:

> Class 1: All female students who participate in intercollegiate varsity athletics through the termination of the Settlement Agreement or, since February 7, 2022, participated in intercollegiate varsity athletics at San Diego State University.

> Class 2: All female students who participated in intercollegiate varsity athletics at San Diego State University from the 2018-2019 academic year through the 2024-2025 academic year and did not receive all of the athletic financial aid they could have received

(Settlement Agreement ¶ 4.) These proposed classes are virtually the same as the classes proposed in Plaintiffs' Motion for Class Certification. (*See generally* Class Cert. Mot.)[1]

## IV.    The Proposed Settlement Agreement

The Settlement Agreement provides injunctive relief for all class members and monetary relief for the members of Class 2.

### A.    Monetary Relief for Class 2 Members

Under the Settlement Agreement, SDSU agrees to pay a total, gross amount of $300,000 to members of Class 2. (*See* Settlement Agreement ¶ 27.) Proposed Class Counsel is responsible for proposing an allocation of these funds that is fair to the class and for administering the distribution. (*See id.* ¶ 29.) Proposed Class Counsel has identified 826 female student-athletes as members of Class 2. (*See* ECF No. 159-4 ("Bullock Decl.") ¶ 5.) SDSU will play no role in determining the proposed allocation of these funds. (*See* Settlement Agreement ¶ 29.)

### B.    Injunctive Relief

Under the Settlement Agreement, SDSU agrees to hire a mutually agreeable neutral third-party to conduct a Gender Equity Review of its athletic department using the process consistent with the U.S. Department of Education's Office for Civil Rights' 1990 Title IX Investigator's Manual. (*See id.* ¶¶ 8–13.) SDSU further agrees it will use the findings from

---

[1] The Motion for Class Certification also included a "Retaliation Class" that was defined as "[a]ll female students who participated in intercollegiate varsity athletics at San Diego State University from the 2018-2019 academic year to the present." (*Id.* at 5.)

the Gender Equity Review to implement a Gender Equity Plan. (*See id.*)  The third-party Title IX Reviewer must be satisfied that, once implemented, SDSU's athletic department will be in compliance with Title IX's requirements regarding athletic financial aid and athletic treatment and benefits by the end of the 2026-2027 academic year. (*See id.* ¶¶ 14–18.)  To monitor compliance, the proposed Settlement Agreement provides that, from July 31, 2026, through July 31, 2028, SDSU will provide an annual summary update regarding its implementation of the Gender Equity Plan. (*See id.* ¶ 21.)  To maintain transparency, SDSU will post the Gender Equity Plan and its annual summary reports on the university's varsity athletics website. (*See id.* ¶¶ 18, 22.)

SDSU also agrees to provide specific relief including: (1) providing equitable nutrition to a comparable number of male and female student-athletes; (2) providing coaches for men's and women's teams the option of having their teams travel by airplane to competitions more than a 6-hour drive away from the SDSU campus in an equitable manner; (3) providing coaches for men's and women's teams the opportunity to have their teams stay in hotels before competitions in the San Diego area in an equitable manner; (5) making repairs to the women's outdoor track, which are anticipated to be completed in the 2025-2026 academic year, and continue to assess the track facility for additional repairs; (6) replacing the turf on the field used by the women's varsity lacrosse team for practices and competitions no later than the 2027-2028 academic year; (6) providing a person who is not a coach or a member of the team to record and/or stream home competitions equitably for men's and women's teams; and (7) providing professional photography services and publicity equitably to men's and women's teams. (*See id.* ¶ 24(a–f).)

### C.    Attorneys' Fees and Costs

"SDSU agrees to pay a sum of $1,300,000 as a negotiated sum for the reasonable attorneys' fees, costs, and expenses Plaintiffs incurred pursuing this litigation." (*Id.* ¶ 31.)

/ / /

/ / /

### D.    Notice to Class Members

The Parties agree "SDSU shall timely send an email to the last known SDSU email address assigned to all female students" that fall within the scope of the definition of both Classes, which will include a link to the notice and Settlement Agreement posted on the University's athletics website.  (*Id.* ¶ 33.)  The Parties state they will "make reasonable efforts to provide notice to any Class members whose emails 'bounceback' as not received." (*Id.*)  Further, the Parties "will detail the number of 'bounceback emails' and the Parties efforts to provide notice to those individuals in their Motion for Final Approval." (*Id.*)

### E.    Release of Claims

The Parties agree "all claims asserting violations of Title IX regarding athletic financial aid, athletic treatment and benefits, and retaliation that were asserted or that could have been asserted in this case are forever and irrevocably released by Plaintiffs, individually and on behalf of the class." (*Id.* ¶ 37.)

## SETTLEMENT PRELIMINARY APPROVAL

## I.    Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). The Court's review of the settlement is meant to be "extremely limited," and the Court should consider the settlement as a whole. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

For approval of a class settlement, the Court determines whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Preliminary

approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class. *See Pipich v. O'Reilly Auto Enters., LLC*, No. 3:21-CV-01120-AHG, 2024 WL 2885342, at *4 (S.D. Cal. June 7, 2024) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). To determine whether a settlement agreement meets the above standards, a district court may consider some, or all, of the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also Officers for Just. v. Civ. Serv. Com'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting the list of factors is "by no means an exhaustive list of relevant considerations"). Because not all of the eight *In re Bluetooth* factors can be fully assessed at the preliminary approval stage, the Court should focus on an assessment of if the proposed settlement (1) appears to be the product of serious, informed, non-collusive negotiations, (2) falls within the range of possible approval, (3) has no obvious deficiencies, and (4) does not improperly grant preferential treatment to class representatives or segments of the class. *See Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 119 (D. Ariz. 2022).

## I. Serious, Informed, Non-Collusive Negotiations

This settlement is the product of a full-day settlement conference and an additional half-day settlement conference with Magistrate Judge Michael S. Berg. (*See* ECF Nos. 133, 153.) The Parties state the "negotiations involved months of efforts and settlement

conferences" and the Settlement Agreement "is the product of arm's-length negotiations between the Parties and their experienced counsel at a point when both the Plaintiffs and SDSU possessed more than sufficient evidence and knowledge to allow them to make informed decisions." (Joint Mot. at 19.) Given the extent of litigation pre-settlement, (*see generally* Docket), and the fact that the Settlement Agreement was negotiated with the oversight of a federal magistrate judge, the Court finds the negotiations were serious, well-informed, and negotiated at arm's length.

## II. Range of Possible Approval

To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080. Here, the Court's analysis is focused on whether Class 2's monetary recovery under the Settlement Agreement is adequate. The Third Amended Complaint ("TAC") states that female student athletes should be entitled between $3,531 to $6,343 per qualifying academic year. (*See* TAC ¶¶ 351–54.) In comparison, under the Settlement Agreement, members of Class 2 will receive $172.12 per qualifying academic year in the Class Period. (*See* Joint Mot. at 23.) The below chart illustrates the total monetary damages for Class 2 members based on number of qualifying years.

| Number of Years in Class 2 | Estimated Total Payment Amount |
|---|---|
| 1 year | $172.12 |
| 2 years | $344.23 |
| 3 years | $516.35 |
| 4 years | $688.47 |
| 5 years | $860.59 |

(*See* Bullock Decl. ¶ 19.) To explain this reduction, the Parties' Joint Motion states "while Plaintiffs are optimistic about their chances of success at trial, they also recognize there are a number of significant obstacles they would still have to overcome to achieve success on

behalf of the Classes." (*See* Joint Mot. at 20, 23 ("The fact that Class 2 members will receive cash relief without the attendant delays, risks, uncertainties, and costs posed by continued litigation is significant.").) However, the Joint Motion did not explain the extent of the reduction, given $172.12 is 2.71% of $6,343 and 4.8% of $3,531. The lack of information on the reduction of Class 2's monetary recovery in the Settlement Agreement initially appeared problematic. *See Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (explaining the importance of balancing the potential recovery against the amount offered in settlement). But the Court's discussion with counsel at the hearing provided sufficient information on why the TAC's potential monetary damages differ from the settlement monetary award for Class 2 members. (*See* ECF No. 164.) First, the values in the TAC were based on Equity in Athletics Disclosure Act ("EADA") data and post-discovery Plaintiffs had access to financial distribution data that reduced potential recovery. (*See id.*) Second, the values in the TAC did not account for maximum financial aid limits. (*See id.*) Third, potential recovery of any monetary damages at trial were uncertain because Defendant SDSU maintained that Plaintiffs would only be entitled to equitable relief. (*See id.*) Lastly, there have been no similar financial aid Title IX lawsuits resulting in monetary damages for plaintiffs. (*See id.*) With this information, the Court finds the Settlement Agreement's terms fall within the range of an acceptable recovery.

## III.    No Obvious Deficiencies

Obvious deficiencies in a settlement agreement include "any subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021) (citation omitted). The Ninth Circuit has identified three such subtle signs: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *Id.* at 607–08 (citation omitted). The Proposed Settlement Agreement does not contain a reverter clause, so the

Court need only consider the clear sailing agreement and the potentially disproportionate distribution of the settlement to Class Counsel. (*See generally* Settlement Agreement.)

### A.    Disproportionate Distribution of the Settlement

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth*, 654 F.3d at 942. "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *Id.* The Ninth Circuit has recognized that "several courts have embraced the constructive common fund approach" which treats a settlement agreement with a settlement fund and a separate amount for attorney fees as a "constructive common fund."[2] *Id.* at 943. In common fund cases, there is a presumptive 25% benchmark on attorneys' fees. *Id.*

At the final approval stage, the Court must "(1) decide whether to treat the settlement as a common fund; (2) choose the lodestar or percentage method for calculating a reasonable fee and make explicit calculations; (3) ensure that the fee award is reasonable considering, inter alia, the degree of success in the litigation and benefit to the class; and (4) if standard calculations yield an unjustifiably disproportionate award, adjust the lodestar or percentage accordingly."[3] *Id.* at 945. But at the preliminary approval stage, the Court need only determine whether the settlement falls within the range of possible approval. *See Pipich*, 2024 WL 2885342 at *4. Here, the Settlement Agreement provides that SDSU will pay the total, gross sum of $1,300,000 to Plaintiffs' counsel for Plaintiffs'

---

[2]    The Ninth Circuit stated, "[a]lthough we do not go so far as to hold that the district court must treat the package as a constructive common fund for purposes of analyzing the reasonableness of the fee award, assessment of the settlement's overall reasonableness must take into account the defendant's overall willingness to pay." *Id.*

[3]    The Ninth Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." *Id.* at 944. Further, "[i]f the lodestar amount overcompensates the attorneys according to the 25% benchmark standard, then a second look to evaluate the reasonableness of the hours worked and rates claimed is appropriate." *Id.* (citing *In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997)).

proposed reasonable litigation costs, and attorneys' fees.  (*See* Settlement Agreement ¶ 31.) The Settlement Agreement also provides Plaintiffs in Class 2 with a fund of $300,000 to be distributed by Class Counsel.  (*Id.* ¶ 27.)  As explained below, at the preliminary approval stage, the Court finds the payment of $1,300,000 to Class Counsel falls within the range of possible approval.

### 1.    Common Fund Analysis

Viewing SDSU's agreed upon payments as a constructive common fund, *see In re Bluetooth*, 654 F.3d at 943, the attorneys' fees portion represents 81.25% of the total monetary payment.  This percentage greatly exceeds the 25% benchmark for attorneys' fees in a common fund.  *Id.*

However, the Ninth Circuit has provided "several factors courts may consider in assessing a request for attorneys' fees that was calculated using the percentage-of-recovery method. . . . includ[ing] the extent to which class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–50 (9th Cir. 2002)). While the Parties did not provide the Court with an analysis based on these factors, the Court takes note of the injunctive relief provided in the Settlement Agreement and the fact that the monetary payment to Class 2 members is the first of its kind in Title IX litigation. Thus, at the preliminary approval stage, this is sufficient to conclude that the distribution to Class Counsel falls within the within the range of possible approval.  *See Pipich*, 2024 WL 2885342 at *4.

### 2.    Lodestar Analysis

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by

a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941–42 (citation omitted). While the lodestar calculation is presumptively reasonable, "the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment" with the foremost consideration being "the benefit obtained for the class." *Id.* (internal quotations omitted).

Here, Class Counsel alleges the $1,300,000 fee is a "significant reduction from the lodestar calculated by Class Counsel (hours expended multiplied by their usual hourly rates)." (Joint Mot. at 4) (citing Bullock Decl. ¶ 27.) In a similar case, *Anders v. California State Univ., Fresno*, the court approved a class settlement providing $900,000 in attorneys' fees and no monetary damages for the plaintiffs. No. 1:21-CV-00179-KJM-BAM, 2025 WL 3228123 (E.D. Cal. Nov. 19, 2025), at *2. The court reasoned that the fee award was "reasonable given the long-running and hard-fought nature of th[e] case, which included extensive pretrial litigation and appellate practice" and the fact that the "total proposed award [was] less than half of the 'lodestar' award." *Id.* During *Anders*, the class counsel "litigated the case for four years by defending three motions to dismiss, preparing written discovery, analyzing over 6,000 pages of data received in discovery, defending multiple depositions of the Class Representatives, submitting two expert reports, advancing multiple motions for class certification (ultimately granted), attending numerous hearings and pursuing a successful appeal at the Ninth Circuit." *Anders v. California State Univ., Fresno*, No. 1:21-CV-00179-KJM-BAM, 2025 WL 2701718, at *8 (E.D. Cal. Sept. 23, 2025).

Similarly, here, Class Counsel engaged in "three and a half years of hard-fought litigation." (Joint Mot. at 18.) During these years Class Counsel engaged in the following:

> Conducting pre-suit investigation, preparing four detailed complaints, successfully defending three motions to dismiss, preparing written discovery, analyzing over 57,000 pages of discovery, defending and taking 31 depositions, including those of 16 members of SDSU's financial aid

office and athletic department, submitting two expert reports, advancing a motion for class certification, attending numerous hearings (contributing to 156 docket entries in the District Court), attending several settlement/mediation conferences, and most recently, negotiating and documenting the settlement itself.

(*Id.*) (citing Bullock Decl. ¶ 11.)    Given the extensive litigation that preceded this settlement, the $1,300,000 fee award is significantly less than Class Counsel's estimated lodestar calculation of $3.2 million.  (*See* ECF No. 164.)  Thus, at the preliminary approval stage, the distribution to Class Counsel also falls within the range of possible approval using the lodestar method.  *See Pipich*, 2024 WL 2885342 at *4.  Class Counsel **SHALL SUBMIT** detailed billing records before the final approval hearing so the Court may determine an appropriate lodestar figure.  *See In re Bluetooth,* 654 F.3d at 944–45.

## B.    Clear-sailing Arrangement

There is a "clear sailing" arrangement in the Proposed Settlement Agreement.  (*See* Settlement Agreement ¶ 31.)  A "clear sailing" arrangement provides for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class."  *In re Bluetooth*, 654 F.3d at 941–42 (citation omitted).  "[W]hen confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."  *Id.* (citation omitted).  At the preliminary approval stage, even examining the attorneys' fee award with scrutiny, the fee award falls within the range of possible approval.  *See Pipich*, 2024 WL 2885342 at *4.

## IV.    No Preferential Treatment to Class Representatives or Segments of the Class

District courts must be "particularly vigilant" for signs counsel has allowed the "self-interests" of "certain class members to infect negotiations."  *In re Bluetooth*, 654 F.3d at 947.  For that reason, preliminary approval of a class action settlement is inappropriate

where the proposed agreement "improperly grants preferential treatment to class representatives." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.

The Joint Motion states "Plaintiffs are not receiving any additional relief (or even a service award) that would suggest that their agreement to the terms of the proposed settlement is motivated by anything other than what is in the best interests of the Classes." (Joint Mot. at 21.)  While the preferential treatment analysis typically focuses on incentive payments, here, the Court was initially concerned with the Named Plaintiffs individually settling their retaliation claims which were being released by the class.  (*See* Joint Mot. at 4, n.2; Settlement Agreement ¶ 37.)  However, as discussed at the hearing, the individual settlements are purely injunctive in nature.  (*See* ECF No. 164.)  Because the individual settlements do not provide the Named Plaintiffs with any additional monetary award, there is no evidence the Named Plaintiffs are receiving any preferential treatment.

\*      \*      \*

In light of the foregoing, the Court **GRANTS** the Parties' Motion for Preliminary Approval of the Class Settlement.

## CLASS NOTICE

### I.    Legal Standard

For any class certified under Rule 23(b)(3), "class members must be afforded the best notice practicable under the circumstances, which includes individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

## II.    Analysis

After a review of the Proposed Class Notice, for the most part, the Class Notice clearly explains the information required by Rule 23(c)(2)(B), using a question-and-answer format.  (*See generally* Class Notice.)  However, while the Proposed Class Notice notes class members "may choose to appear before the Court or have [their] own attorney appear as Class Counsel will not be representing your individual interests" (Class Notice at 14), the Class Notice should more clearly explain "that a class member may enter an appearance through an attorney if the member so desires" by including this information in the answer to question number 13 "Do I have a lawyer representing me in this case?"  *See Loreto v. Gen. Dynamics Info. Tech., Inc.*, No. 319CV01366GPCMSB, 2021 WL 3141208, at *10–11 (S.D. Cal. July 26, 2021) (conditioning approval of the proposed class notice on the class counsel adding clarity on class members' ability to enter an appearance through an attorney).  The Court **ORDERS** Class Counsel to update the language in the answer to Proposed Class Notice Question 13 to include "that a class member may enter an appearance through an attorney if the member so desires."  Fed. R. Civ. P. 23(c)(2)(B)(iv). Contingent on the change to the answer to Question 13, the Court **APPROVES** of the proposed Class Notice.

## CONDITIONAL CLASS CERTIFICATION

## I.    Legal Standard

Confronted with a request for settlement-only class certification, the district court must pay "undiluted, even heightened, attention" to class certification requirements "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  To obtain class certification, Plaintiffs must satisfy the four prerequisites identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b).  *See id.* at 614.  "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively."  *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v.*

*ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).  Rule 23(b) requires a plaintiff to establish one of the following: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication.  Fed. R. Civ. P. 23(b)(1)–(3).  "Ninth Circuit precedent indicates that the court can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class."  *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014).

## II.    Analysis

For the reasons explained below, the Court finds the proposed Settlement Classes satisfy the requirements of Federal Rule of Civil Procedure 23.  Pursuant to Rule 23(b)(2), the Court **PRELIMINARILY CERTIFIES** the Injunctive Relief Class ("Class 1"): "All female students who participate in intercollegiate varsity athletics through the termination of the Settlement Agreement or, since February 7, 2022, participated in intercollegiate varsity athletics at San Diego State University."  And pursuant to Rule 23(b)(3), the Court **PRELIMINARILY CERTIFIES** the Financial Aid Class ("Class 2"): "All female students who participated in intercollegiate varsity athletics at San Diego State University from the 2018-2019 academic year through the 2024-2025 academic year and did not receive all of the athletic financial aid they could have received."

### A.    *Rule 23(a) Requirements*

#### 1.    *Numerosity*

The numerosity requirement under Rule 23(a) requires parties seeking class certification to establish that the class is so large that joinder of all members is impracticable.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011).  "Impracticable" does not mean that joinder is a "literal impossibility," but instead asks whether joinder of all class members is "'practicable'—*i.e.*, 'reasonably capable of being accomplished.'"  *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 837 (9th Cir. 2022).  The Ninth Circuit has instructed that "where a class is large in numbers, joinder will usually be

impracticable." *Id.* at 835; *see also Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (explaining that numerosity is typically satisfied "when a class includes at least 40 members").

Here, the Parties assert that for Class 1 "during the 2023-24 academic year alone, there were 225 female student[] athletes" and each year more women were added to the class. (Joint Mot. at 7.) Further, for Class 2, the Parties state "there are over 800 women." (*Id.* at 8.) Both Class 1 and Class 2 are sufficiently numerous to make joinder impracticable and thus numerosity is established.

### 2. Commonality

Rule 23(a)(2)'s commonality requirement is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Common questions need not address every aspect of the claims, but they must "generate common *answers* apt to drive the resolution of the litigation." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015) (emphasis in original) (citation omitted). A single common question is sufficient. *See id.* Here, "the claims of all proposed Class Members include the same legal questions: whether SDSU engaged in sex discrimination and violated Title IX through (1) the allocation of athletic financial aid to varsity student-athletes and (2) the allocation of benefits and treatment to varsity student-athletes." (Joint Mot. at 8.) Because common answers to these questions would apply to all class members, commonality is satisfied.

### 3. Typicality

The typicality requirement considers whether, in comparison to the representative parties, "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). Commonality and typicality "'tend to merge' in practice because both of them 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and

adequately protected in their absence.'" *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 349).

The Ninth Circuit's test for typicality is (1) "whether other members have the same or similar injury"; (2) "whether the action is based on conduct which is not unique to the named plaintiffs"; and (3) "whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and internal quotation marks omitted). Here, the Parties allege "the named Plaintiffs' claims are not just typical of the class claims; they are identical" because Named Plaintiffs and class members both allege they "(1) have been denied or imminently will be denied an equal allocation of the benefits and treatment provided to varsity male student athletes at SDSU and (2) have been denied an equal allocation of athletic financial aid provided to male student-athletes at SDSU." (Joint Mot. at 9.) Because the claims of the putative class are fairly encompassed by the Named Plaintiff's claims, typicality is satisfied.

### 4. Adequacy

Rule 23(a)(4) requires the representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

#### a. Class Representatives

The Court finds no conflict of interest for the class representatives and is assured that the class representatives participated vigorously in this litigation.

#### b. Class Counsel

Class Counsel alleges they have "devoted substantial and sufficient efforts to investigating the facts and identifying the potential claims in this action, have detailed knowledge of the applicable law, and have sufficient resources to commit to representing this putative class." (Joint Mot. at 10.) The Court finds no conflict that would prevent

Casey Gerry Blatt LLP, Bullock Law PLLC, Arthur Bryant Law, P.C., and Haeggquist & Eck, LLP from adequately representing the class members in this case.

**B.    *Injunctive Relief Class Under 23(b)(2)***

Certification under Rule 23(b)(2) is appropriate where defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'"  *Wal-Mart*, 564 U.S. at 360.  "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010), *abrogated on other grounds as recognized by Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022).  Here, because SDSU acted in a way that is generally applicable to the class and injunctive relief will apply equally for all class members, Rule 23(b)(2) is satisfied.

**C.    *Financial Aid Class Under Rule 23(b)(3)***

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**1.    *Predominance***

First, certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to the class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The Ninth Circuit has held that "there is clear justification for handling the dispute on a representative rather than individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Hanlon*, 150 F.3d at 1022.  A question is

common where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (alteration in original). The proper question is thus "whether the method of proof would apply in common to all class members . . . not whether the method of proof would or could prevail." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1026 (9th Cir. 2024) (citing *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d 1, 12 (1st Cir. 2019)). To determine whether common evidence can supply classwide answers, the predominance inquiry "begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

Here, the Parties allege "[c]ommon questions of law and fact predominate in the matter *sub judice*: the legal determination of whether SDSU discriminated against female student-athletes by failing to give substantially proportional financial aid as given to their male counterparts is common to every member of Class 2." (Joint Mot. at 13.) Further, the Parties argue there are common facts because the financial aid analysis is "numbers-driven based on data SDSU maintains and is not subsumed by issues of individualized perception or experience." (*Id.* at 14.) The Parties cite to *Rapuano v. Trustees of Dartmouth College*, 334 F.R.D. 637, 652 (D.N.H. 2020) as an illustrative example. (*See id.*) In *Rapuano*, the court found that the subjective element of a Title IX claim did not defeat predominance because common questions predominated over any individualized aspects. *Rapuano*, 334 F.R.D. at 637. Similarly, here, the common question of whether SDSU proportionally spent more money on men's financial aid predominates over any individualized aspects of the claims. *See Beasley v. Alabama State Univ.*, 966 F. Supp. 1117, 1122 (M.D. Ala. 1997) (explaining that the relevant question is whether "male athletes . . . overall, receive dollar amounts of scholarship support, *relative to their actual participation level in athletics,* greater than women receive") (emphasis in original).

/ / /

/ / /

### 2. Superiority

Second, Rule 23(b)(3) requires Plaintiffs to demonstrate that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) enumerates a list of non-exhaustive factors pertinent to class certification, including: the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action. *Id.* The superiority requirement "tests whether class litigation of common issues will reduce litigation costs and promote greater efficiency." *In re Ferrero Litig.*, 278 F.R.D. 552, 561 (S.D. Cal. 2011) (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). Further, for a "request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Here, the Parties submit that "there is no indication that Class Members have expressed an interest in controlling separate actions." (Joint Mot. at 15.) Further, "no other suits involving the same controversy have been initiated." (*Id.*) The Court finds classwide resolution is superior to other methods of adjudicating this controversy given the unlikelihood that individual class members would pursue individual lawsuits and the ability for the injunctive relief to provide "future programmatic measures . . . without the need for further long and protracted litigation." (*Id.*)

### CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and thus the Court **PRELIMINARILY AND CONDITIONALLY CERTIFIES**, for settlement purposes only, the following settlement classes:

Pursuant to Rule 23(b)(2):

> Class 1: All female students who participate in intercollegiate varsity athletics through the termination of the Settlement Agreement or, since February 7, 2022, participated in intercollegiate varsity athletics at San Diego State University.

Pursuant to Rule 23(b)(3):

> Class 2: All female students who participated in intercollegiate varsity athletics at San Diego State University from the 2018–2019 academic year through the 2024–2025 academic year and did not receive all of the athletic financial aid they could have received.

2. The Court **APPOINTS** Plaintiffs Madison Fisk, Carina Clark, Natalie Figueroa, Olivia Petrine, Kamryn Whitworth, and Kaitlin Heri as Class Representatives, finding that they will fairly, adequately, and vigorously represent the interests of the classes.

3. The Court **APPOINTS** Casey Gerry Blatt LLP, Bullock Law PLLC, Arthur Bryant Law, P.C., and Haeggquist & Eck, LLP as Class Counsel, finding that they will fairly, adequately, and vigorously represent the classes. Although the Court harbors reservations regarding the size of the Class Counsel Fees Award relative to the monetary damages secured for the Class Members, the Court **PRELIMINARILY APPROVES** a Class Counsel Fees Award not to exceed $1,300,000. *The Class Counsel Fees Award will be subject to final approval of the Court, and Class Counsel should be prepared to justify the requested fee award both in their motion for Class Counsel Fees Award and at the Final Approval Hearing.*

4. The Court has considered the proposed settlement of the claims asserted in this matter on behalf of the Class Members. Based upon the Court's review, it appears that the settlement is fair, reasonable, and adequate, and that each of the following is true:

> a. the proposed settlement was negotiated at arm's length;
>
> b. the relief provided for the Settlement Classes is adequate, taking into account:

i.      the costs, risks, and delay of trial and appeal;

ii.     the terms of the settlement, including the implementation of a Title IX Gender Equity Review and Gender Equity Plan and the damages to the members of Class 2;

iii.    the terms of the proposed award of attorneys' fees and costs; and

iv.    that there is no other agreement required to be identified by Rule 23(e)(3);

c.     the proposed settlement treats Class Members equitably relative to each other.

5.     The Court finds the proposed Plan of Allocation for Class 2 is fair, reasonable, and adequate and **APPOINTS** CPT Group to serve as the Disbursement Administrator. The Court also **PRELIMINARILY APPROVES** CPT Group's fees, estimated to be $9,750, to be paid by Class Counsel.

6.     The Court has reviewed the proposed manner of giving notice as set forth in the Settlement Agreement and **FINDS** that the proposed Class Notice and the notice plan satisfy the requirements of Rule 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto, **SUBJECT TO THE CHANGE** to the answer for Question 13 noted in this Order.

7.     No later than <u>fourteen (14) days</u> after the date of this Order, SDSU **SHALL SEND** an email to the last known SDSU email address assigned to all female students who fall within the scope of the definitions of Class 1 and Class 2. The email **WILL INCLUDE** a link to the notice and the full Settlement Agreement that is posted on the University's athletics website. SDSU **WILL MAINTAIN** a link that will be posted on SDSU's varsity athletic website to provide notice to all class members, and Class Counsel will also maintain a Settlement Website until the Final Approval Hearing.

8.     SDSU **SHALL NOTIFY** Class Counsel of all "bounceback emails" it receives within <u>fourteen (14) days</u> of issuing the Class Notice. For bounceback emails for Class 2 members, the Disbursement Administrator **WILL UTILIZE** appropriate,

commercially reasonable steps to provide notice to those class members. For Class 1, if SDSU receives more than a de minimis amount of "bounceback emails" due to undeliverable emails, the Parties **WILL UNDERTAKE** reasonable steps to provide notice to those class members. The Parties **WILL INFORM** the Court of the number of "bounceback email" responses received, and the efforts undertaken to address "bounceback emails."

9.     The Court **SETS** a Final Approval Hearing pursuant to Rule 23(e) on **April 16, 2026, at 1:30 PM**, in Courtroom 14A of the James M. Carter & Judith N. Keep Courthouse, located at 333 West Broadway, San Diego, CA 92101, for the following purposes:

a.     To determine whether the proposed settlement is fair, reasonable, and adequate and should be granted final approval by the Court;

b.     To determine whether a final judgment should be entered dismissing the claims of the Class Members with prejudice while maintaining jurisdiction over the Settlement Agreement, as required by the Settlement Agreement;[4]

c.     To consider the request of Class Counsel for an award of attorney's fees and expenses; and

d.     To rule upon other such matters as the Court may deem appropriate.

10.     Members of Class 1 **MAY OBJECT** to the Settlement.

a.     To exercise this right to object, the Class Member **MUST PROVIDE** a Notice of Objection via First-Class Mail to the Clerk of Court. *The Court will not accept notice by email.* Notice of Objection shall also be sent to Class Counsel and Defendant's Counsel by First-Class Mail and/or email. Notice of Objection may be sent to Class Counsel with instruction for Class Counsel to provide the Notice to the

---

[4]     To the extent the Parties intend for the Court to retain jurisdiction after final approval of the Settlement Agreement, in accordance with Section V of the undersigned's Standing Order for Civil Cases, the Parties **SHALL EMAIL** a completed Consent to Jurisdiction by a United States Magistrate Judge form to efile_robinson@casd.uscourts.gov.

Court via e-filing.  The Notice of Objection must be postmarked no later than **March 17, 2026**.

      b.     For an objection to be considered by the Court, such objection **SHALL BE PERSONALLY SIGNED** by the Class Member or her attorney and **SHALL STATE**:

          i.     the Class Member's full name, mailing address, and telephone number;

          ii.     a statement that they are commenting on or objecting to the proposed Settlement in *Fisk, et al. v. California State University, San Diego State University, et al.*, Case No. 3:22-cv-00173-TWR-MSB.

          iii.     the factual and/or legal reasons for the comment or objection to the proposed Settlement;

          iv.     any documents supporting the comment or objection; and

          v.     whether they would like to speak at the Final Approval Hearing.

11.    Members of Class 2 **MAY OPT OUT OF** the Settlement.

      a.     To exercise the right to opt out of the Settlement for Class 2, the members of Class 2 **MUST FILL OUT AND SEND** the "Opt Out Form" included in the Class Notice via Email or First-Class Mail to Class Counsel.  The Opt Out Form must be sent via email or postmarked no later than **March 17, 2026**.

      b.     Class Counsel **SHALL INFORM** the Court of all individuals who opt out of the settlement in the Parties' briefing for final approval of the Settlement.

12.    The right to object **MUST BE EXERCISED INDIVIDUALLY** by an individual Class Member, not as a member of a group and, except in the case of a deceased or incapacitated Class Member, not by the act of another person acting or purporting to act in a representative capacity.

13.    The Parties **SHALL FILE** all papers in support of final approval of the Settlement by **March 19, 2026.**

14.    Class Counsel **SHALL FILE** their motion for the Class Counsel Fees Award no later than **April 2, 2026.**

15.    The Court reserves the right to continue the date of the Final Approval Hearing without further notice to Class Members.

16.    Pending further Order of this Court, all proceedings in this action except those contemplated herein and in the Settlement are **STAYED.**

17.    As discussed above, the Court **SETS** the following schedule for the Final Approval Hearing and the actions that must take place before it:

| EVENT | TRIGGERING EVENT | DATE/DEADLINE |
|---|---|---|
| SDSU will send an email to the last known SDSU email address assigned to all female students within Class 1 and Class 2, with a link to the notice and the full Settlement Agreement that is posted on the University's athletics website. | **14 days after the date of this Order** | **January 21, 2026** |
| SDSU will notify Class Counsel of all "bounceback emails" it receives. | **Within 14 days of issuing Notice** | **February 4, 2026** |
| Last day for Class 1 members to provide a Notice of Objection via First-Class Mail to the Clerk of Court or to Class Counsel with instruction for Class Counsel to provide the Notice to the Court via e-filing.<br><br>Last day for Class 2 members to send the "Opt Out Form" included in the Notice, via Email or First-Class Mail to Class Counsel. | **30 days before Final Approval Hearing** | **March 17, 2026** |

3:22-cv-173-TWR (MSB)

| Last day for all papers to be filed in support of final approval of the Settlement. | **28 days before Final Approval Hearing** | **March 19, 2026** |
|---|---|---|
| Last day for Class Counsel to file their motion for the Class Counsel Fee Award. | **14 days before Final Approval Hearing** | **April 2, 2026** |
| Final Approval Hearing | | **April 16, 2026, at 1:30 PM in Courtroom 14A** |

**IT IS SO ORDERED.**

Dated:  January 7, 2026

Honorable Todd W. Robinson
United States District Judge