UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON FISK, RAQUEL CASTRO, GRETA VISS, CLARE BOTTERILL, MAYA BROSCH, HELEN BAUER, CARINA CLARK, NATALIE FIGUEROA, ERICA GROTEGEER, KAITLIN HERI, OLIVIA PETRINE, AISHA WATT, KAMRYN WHITWORTH, SARA ABSTEN, ELEANOR DAVIES, ALEXA DIETZ, and LARISA SULCS, individually and on behalf of all those similarly situated, | Case No.: 3:22-CV-173 TWR (MSB) **ORDER (1) GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, (2) CERTIFYING CLASSES FOR THE PURPOSE OF SETTLEMENT, AND (3) GRANTING MOTION FOR ATTORNEYS' FEES** (ECF Nos. 171, 174, 177, 178) |
| Plaintiffs, | |
| v. | |
| BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY and SAN DIEGO STATE UNIVERSITY, | |
| Defendants. | |

Presently before the Court are the Parties' Joint Motion for Final Approval of Class Action Settlement ("Final App. Mot.," ECF No. 171), Class Counsel's Motion for Attorney Fees and Costs as Part of Class Action Settlement ("Fee Mot.," ECF No. 174), Daniele Croteau's Objection ("Obj.," ECF No. 172) to Final Approval, Plaintiffs' Response ("Obj. Resp.," ECF No. 175) to Objection to Class Action Settlement, Defendant SDSU's

1

Response ("Fee Response," ECF No. 176) to the Motion for Attorneys' Fees, and Class Counsel's Time Entries ("Time Entries," ECF No. 180) in Support of their Motion for Attorneys' Fees.[1]  The Court held a hearing on April 16, 2026.  (ECF No. 181.)  After carefully considering the Parties' arguments, the Objection, the facts, and the relevant law, the Court **GRANTS** the Joint Motion for Final Approval, **CERTIFIES** the proposed classes for the purposes of settlement, and **GRANTS** Class Counsel's Motion for Attorneys' Fees.[2]

**FACTUAL BACKGROUND**

**I.      Plaintiffs' Claims**

Plaintiffs, "past and current female varsity student-athletes at SDSU," initiated this lawsuit against Defendants on February 7, 2022, alleging SDSU—a recipient of federal funding—has engaged in intentional discrimination based on sex in its athletic programs in violation of Title IX.  (ECF No. 50 ("TAC") ¶¶ 1, 17, 298–99, 332, 371); *see also* 20 U.S.C. §§ 1681, 1687.  Plaintiffs specifically claim SDSU has violated, and is violating, Title IX and its guiding regulations by (1) "depriving its female varsity student-athletes of equal financial aid"; (2) "denying them equal athletic benefits and treatment"; and (3) "retaliating against them because some of them sued SDSU for violating Title IX." (TAC ¶ 1.)

**II.     Settlement**

Following extensive discovery by both parties, Plaintiffs filed for class certification on November 22, 2024, which SDSU contested.  (*See* ECF No. 115 ("Class Cert. Mot.").)  On March 7, 2025, while Plaintiffs' motion was pending, the Parties participated in a full-day settlement conference with Magistrate Judge Michael S. Berg.  (*See* ECF No. 133.)

---

[1]      Plaintiffs filed redacted time entries as ECF No. 180 and seek to file the unredacted time entries under seal based on attorney-client privilege.  The Court **GRANTS** the Motions to File Documents Under Seal (ECF Nos. 177, 178.)

[2]      The Parties acknowledge that any attorneys' fees and/or cost liens from former Plaintiffs' firms will be the responsibility of Class Counsel Arthur Bryant and not SDSU.  (*See* ECF No. 181.)

The Parties continued to engage in settlement negotiations with Judge Berg serving as the neutral mediator until August 13, 2025, when the Parties engaged in another half-day settlement conference with Judge Berg and were able to reach an agreement. (*See* ECF No. 153.)

**III.    The Classes**

The Settlement Agreement provides two classes, and only members of Class 2 are eligible for monetary relief. The classes are as follows:

> Class 1: All female students who participate in intercollegiate varsity athletics through the termination of the Settlement Agreement or, since February 7, 2022, participated in intercollegiate varsity athletics at San Diego State University.

> Class 2: All female students who participated in intercollegiate varsity athletics at San Diego State University from the 2018–2019 academic year through the 2024–2025 academic year and did not receive all of the athletic financial aid they could have received

(Settlement Agreement ¶ 4.) These classes are virtually the same as the classes proposed in Plaintiffs' Motion for Class Certification. (*See generally* Class Cert. Mot.)[3] The Court conditionally certified the classes when granting preliminary approval of the Settlement. (*See* ECF No. 165 ("Prelim. App. Order") at 14–20.)

**IV.    The Settlement Agreement**

The Settlement Agreement provides injunctive relief for all class members and monetary relief for the members of Class 2.

### A.    *Monetary Relief for Class 2 Members*

Under the Settlement Agreement, SDSU agrees to pay $300,000 to members of Class 2. (*See* Settlement Agreement ¶ 27.) "Every participating Class 2 Member will receive an individual settlement payment distribution based on her individual total number

---

[3]    The Class Certification Motion also included a "Retaliation Class" that was defined as "[a]ll female students who participated in intercollegiate varsity athletics at San Diego State University from the 2018–2019 academic year to the present." (*Id.* at 5.)

of qualifying academic years during the Class Period relative to the total years, in the aggregate, for the entire Class 2." (Final App. Mot. at 23.)  "Members of Class 2 will receive between $172.12 and $860.59, depending on the number of years they qualify as a Class Member." (*Id.*)  Class 2 members do not need to submit a claim form to receive this payment. (*See id.*)

### B.   *Injunctive Relief*

Under the Settlement Agreement, SDSU agrees to hire a mutually agreeable neutral third-party to conduct a Gender Equity Review of its athletic department using the process consistent with the U.S. Department of Education's Office for Civil Rights' 1990 Title IX Investigator's Manual. (*See* Settlement Agreement ¶¶ 8–13.)  SDSU further agrees it will use the findings from the Gender Equity Review to implement a Gender Equity Plan. (*See id.*)  The third-party Title IX Reviewer must be satisfied that, once implemented, SDSU's athletic department will be in compliance with Title IX's requirements regarding athletic financial aid and athletic treatment and benefits by the end of the 2026–2027 academic year. (*See id.* ¶¶ 14–18.)  To monitor compliance, the proposed Settlement Agreement provides that, from July 31, 2026, through July 31, 2028, SDSU will provide an annual summary update regarding its implementation of the Gender Equity Plan. (*See id.* ¶ 21.)  To maintain transparency, SDSU will post the Gender Equity Plan and its annual summary reports on the university's varsity athletics website. (*See id.* ¶¶ 18, 22.)

SDSU also agrees to provide specific relief including: (1) providing equitable nutrition to a comparable number of male and female student-athletes; (2) providing coaches for men's and women's teams the option of having their teams travel by airplane to competitions more than a six-hour drive away from the SDSU campus in an equitable manner; (3) providing coaches for men's and women's teams the opportunity to have their teams stay in hotels before competitions in the San Diego area in an equitable manner; (5) making repairs to the women's outdoor track, which are anticipated to be completed in the 2025–2026 academic year, and continuing to assess the track facility for additional repairs; (6) replacing the turf on the field used by the women's varsity lacrosse team for

practices and competitions no later than the 2027–2028 academic year; (6) providing a person who is not a coach or a member of the team to record and/or stream home competitions equitably for men's and women's teams; and (7) providing professional photography services and publicity equitably to men's and women's teams. (*See id.* ¶¶ 24(a)–(f).)

### C.    Attorneys' Fees and Costs

Under the Settlement Agreement, SDSU agrees "to pay a sum of $1,300,000 as a negotiated sum for the reasonable attorneys' fees, costs, and expenses Plaintiffs incurred pursuing this litigation." (Settlement Agreement ¶ 31.)

### D.    Release of Claims

The Parties agree "all claims asserting violations of Title IX regarding athletic financial aid, athletic treatment and benefits, and retaliation that were asserted or that could have been asserted in this case are forever and irrevocably released by Plaintiffs, individually and on behalf of the class." (Settlement Agreement ¶ 37.)

## CLASS CERTIFICATION FOR THE PURPOSE OF SETTLEMENT

In its Preliminary Approval Order, the Court conditionally certified the injunctive relief and financial aid classes for the purposes of settlement. (*See* Prelim. App. Order at 14–20.) No new facts have been introduced that would change this analysis. Accordingly, for the reasons previously explained, (*see id.*), the Court finds the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) are satisfied and the Court **CERTIFIES**, for the purposes of settlement only, the following classes:

Pursuant to Rule 23(b)(2):

> Class 1: All female students who participate in intercollegiate varsity athletics through the termination of the Settlement Agreement or, since February 7, 2022, participated in intercollegiate varsity athletics at San Diego State University.

/ / /

/ / /

/ / /

Pursuant to Rule 23(b)(3):

> Class 2: All female students who participated in intercollegiate varsity athletics at San Diego State University from the 2018-2019 academic year through the 2024-2025 academic year and did not receive all of the athletic financial aid they could have received.

**FINAL APPROVAL OF SETTLEMENT**

**I.    Legal Standard**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). The Court's review of the settlement is meant to be "extremely limited," and the Court should consider the settlement as a whole. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

For approval of a class settlement, the Court determines whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is "fair, reasonable, and adequate," district courts should consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

/ / /

6

3:22-CV-173 TWR (MSB)

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D).  Additionally, courts may still refer to the other factors commonly used in the Ninth Circuit (often referred to as the "*Hanlon* factors"): (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.  *See In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025).

Further, if there are "indicia of implicit collusion, then a proposed settlement" must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *In re Cal. Pizza Kitchen*, 129 F.4th at 675 (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  The indicia of collusion include: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Id.* (citation omitted).  Further, for pre-class certification settlements, the Court must subject the settlement to "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* (citing *Hanlon*, 150 F.3d at 1026).

/ / /

/ / /

/ / /

## II.     Analysis

### A.     *Adequate Notice*

For the Court to approve a settlement, "[t]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).  Class Counsel provided notice to the class members by sending the approved notice via email to the class members' email on file with SDSU's athletic department.  (*See* Final App. Mot. at 9.)  For Class 1, "it was determined that only nineteen women did not receive notice."  (*Id.*)  "Because the Notice and Settlement Agreement were posted on SDSU's athletics website and Class Counsel's website, the preliminary approval of the proposed class action settlement received significant press and social media attention, and since Class 1 is for injunctive relief only," the Parties did not provide further individual notice to those nineteen women.  (*Id.*)  For Class 2, "it was determined that only thirty women did not receive notice" via email and one of those women logged onto the website and selected how she wanted to receive her settlement funds.  (*Id.*)  For the remaining twenty-nine Class 2 members who did not receive email notice, the Settlement Administrator sent a paper copy of the Notice to their last known address SDSU had on file.  (*See id.* at 9–10.)

Because the Parties complied with the notice procedures approved at the preliminary approval stage, (*see* Prelim. App. Order at 22), and the Parties took reasonable measures to provide notice, the Court finds notice was provided to all class members in an adequate manner.  *See Santillan v. Verizon Connect, Inc.*, No. 3:21-CV-1257-H-KSC, 2024 WL 627998, at *5 (S.D. Cal. Feb. 13, 2024) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice." (quoting *Winans v. Emeritus Corp.*, No. 13-CV-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016))).

/ / /

/ / /

**B.      Collusion Factors**

The Settlement Agreement does not contain a reverter clause, so the Court only considers the clear sailing agreement and the potentially disproportionate distribution of the settlement to Class Counsel.  (*See generally* Settlement Agreement.)  A "clear sailing" arrangement provides for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *In re Bluetooth*, 654 F.3d at 941–42 (citation omitted).  "[W]hen confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Id.* (citation omitted).

Because there is a clear sailing agreement, the Court carefully examines the Settlement Agreement and Class Counsel's fee request for signs of collusion.  In doing so, the Court finds that the requested attorneys' fees are not disproportionate given the requested $1,300,000 is less than half Class Counsel's calculated lodestar amount of $3,571,874.38.  *See infra* pages 15–17.  Further, considering the injunctive relief and the unprecedented monetary award, the Court does not find the fee award is disproportionate on its face.  Lastly, because the injunctive relief makes the total benefit to the class hard to numerically quantify, *see Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021), the Court declines to apply a common-fund crosscheck. [4] *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019) ("[W]e do not require courts employing the lodestar method to perform a 'crosscheck' using the percentage method" which is most useful when "the benefit to the class is easily quantified").

/ / /

---

[4]      Further, because the attorneys' fees were negotiated after the agreement on the other essential terms of the Settlement, (*see* ECF No. 171-4 ("Bullock Decl.") ¶ 19), the Court finds this case does not represent a common fund.

Overall, because the attorneys' fees requested are not disproportionate, there is substantial injunctive relief and an unprecedented monetary award, and Class Counsel spent years litigating this case, the Court is not concerned that the clear sailing agreement illustrates any collusion. *See Anders v. Cal. State Univ., Fresno*, No. 1:21-CV-00179-KJM-BAM, 2025 WL 2701718, at *8 (E.D. Cal. Sept. 23, 2025) ("*Anders I*") (finding the clear sailing provision was "not a substantial concern" given "the longevity of the case" and "the hard-fought nature of the litigation"). Accordingly, the Court finds that—even after carefully scrutinizing the relationship between attorneys' fees and the benefit to the class—the *Bluetooth* collusion factors do not weigh against final approval.

### C.   *Rule 23 Factors*

#### 1.   *Adequate Representation*

Adequacy involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. The Court finds no conflict of interest for the class representatives and is assured that the class representatives participated vigorously in this litigation. The Court also finds that Class Counsel does not have any conflicts of interest and that they prosecuted this action vigorously on behalf of the class. Accordingly, this factor weighs in favor of final approval.

#### 2.   *Arm's Length Negotiation*

This settlement is the product of a full-day settlement conference and an additional half-day settlement conference with Magistrate Judge Michael S. Berg. (*See* ECF Nos. 133, 153.) The Parties state the "negotiations involved months of efforts and settlement conferences" and the Settlement Agreement "is the product of arm's-length negotiations between the Parties and their experienced counsel after all fact discovery was complete and Plaintiffs and SDSU possessed more than sufficient evidence and knowledge to allow them to make informed decisions about the strengths and difficulties of their respective cases." (Final App. Mot. at 18.) Given the extent of litigation pre-settlement, (*see generally*

3:22-CV-173 TWR (MSB)

Docket), and the fact that the Settlement Agreement was negotiated with the oversight of a federal magistrate judge, the Court finds the negotiations were serious, well-informed, and negotiated at arm's length.

### 3. Adequate Relief

#### a. Costs, Risks, and Delay of Trial and Appeal

First, as to injunctive relief, the Parties represent that, "if Plaintiffs were successful at trial, the injunctive remedies would be substantially similar to the relief obtained through the Settlement Agreement, as defendants in Title IX cases are afforded considerable discretion in deciding how to bring their programs into compliance with Title IX." (Final App. Mot. at 19–20.) The Court agrees that courts typically allow substantial discretion when ordering Title IX compliance as a remedy. *See, e.g., Ollier v. Sweetwater Union High Sch. Dist.*, 858 F. Supp. 2d 1093, 1116 (S.D. Cal. 2012) (directing the parties "to jointly prepare a proposed compliance plan" and ordering the defendants to comply with Title IX in all aspects as injunctive relief after a bench trial finding the defendants violated Title IX), *aff'd*, 768 F.3d 843 (9th Cir. 2014); *see also Anders I*, 2025 WL 2701718, at *8 ("Compelling to this Court's decision is that Plaintiffs' counsel represents that the remedies provided in the Settlement Agreement would be substantially the same if the case were to proceed through trial."). Accordingly, the Court finds the injunctive relief is adequate, especially because "Plaintiffs were able to use what they learned through discovery to request and obtain relief to address specific areas of athletic treatment and benefits." (Final App. Mot. at 20.) Further, the benefit of not delaying relief is apparent because "immediate resolution permits more Class Members to benefit from the steps SDSU will take." (*Id.* at 19.) Thus, as to injunctive relief, the costs, risks, and delay of trial weigh in favor of final approval.

Second, as to monetary relief, the Parties represent that the $300,000 negotiated payment is reasonable based on the numerous disputed factual and legal issues and the risks and delays of trial. (*Id.* at 18–19; 22–24.) The Court agrees that, without settlement, this case would likely result in prolonged litigation. *See Anders I*, 2025 WL 2701718, at

3:22-CV-173 TWR (MSB)

*8 ("[A]s shown in other Title IX athletics litigation, there is a strong likelihood that, without settlement, the parties would face years of protracted litigation in this Court and the appellate courts."). Further, prolonged litigation would be risky for Plaintiffs because there are numerous contested issues. As one example, if the litigation was to continue to trial, SDSU would argue, "as it has from inception, that Plaintiffs and the Class are not entitled to any damages." (Final App. Mot. at 24.) Moreover, the Court agrees that because "no court has awarded damages for violation of Title IX as to athletic financial aid," any financial aid damages forecasted in Plaintiff's complaints were speculative. In sum, due to the uncertainties of continued litigation, the Court finds that the monetary relief provided in this settlement is adequate and the costs, risks, and delay of trial and appeal weigh in favor of final approval.

b. Effectiveness of Distributing Relief

"Any Class 2 members that do not select how they would like to receive settlement funds will automatically receive a paper check sent via U.S. mail to their last known or permanent address on file with SDSU." (Bullock Decl. ¶ 7.) The fact that class members do not need to submit a claim form to be sent their monetary damages weighs in favor of final approval. *See Jackson v. Fastenal Co.*, No. 1:20-cv-00345-NONE-SAB, 2021 WL 5755583 at *11 (E.D. Cal. Dec. 3, 2021) (finding "the proposed method of distributing relief is effective, and weighs in favor of a finding that the settlement agreement is fair, reasonable and adequate" where the class members did not have to file a claim).

c. Terms and Timing of Proposed Attorneys' Fees

As explained, *see supra* Section II.B, *infra* pages 15–17, the requested attorneys' fees are reasonable given that they are a significant reduction from Class Counsel's lodestar. Further, SDSU will pay Class Counsel $1,300,000 "30 days after the Court's final approval" of the Settlement. (Settlement Agreement ¶ 31.) Thus, the terms and timing of the attorneys' fees weigh in favor of final approval. *See Lusk v. Five Guys Enters. LLC*, No. 1:17-CV-0762 JLT EPG, 2023 WL 4134656, at *17 (E.D. Cal. June 22, 2023) ("Because Class Members will receive their shares shortly after the funds are received—

12

and Class Counsel will also be paid after final approval— the timing of the payments does not weigh against approval.").

d.    Any Agreement Under Rule 23(e)(3)

Under Rule 23(e)(3), "parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  The Parties have not identified any such agreement.  Thus, this factor weighs in favor of final approval.

4.    *Equitable Treatment Between Class Members*

The Settlement does not provide for any service award for the Named Plaintiffs and the Parties represent that "Plaintiffs are not receiving any additional relief outside of what is set forth in the Agreement for any of the claims asserted in Plaintiffs' Third Amended Complaint."  (Settlement Agreement at 20.)  Accordingly, this factor weighs in favor of final approval.

**D.    *Relevant* Hanlon *Factors***

1.    *Extent of Discovery and Stage of the Proceedings*

This settlement occurred after "three and a half years of hard-fought litigation" and the completion of all fact discovery.  (Settlement Agreement at 17.)  Because the Parties participated in extensive discovery and litigated this case up until the eve of the class certification hearing, this factor weighs in favor of final approval.

2.    *Experience and Views of Counsel*

Class Counsel is experienced in Title XI litigation and believes this Settlement is fair and adequate to the class members.  (*See*  Settlement Agreement at 20–21.)  Accordingly, Class Counsel's favorable view of this settlement weighs in favor of final approval.

3.    *Reaction of the Class Members*

Only one individual, Ms. Daniele ("Danni") Croteau, a member of Class 2, objected to this settlement.  (*See generally* Obj.)  Class 2 is made up of 798 individuals.  (*See* Bullock Decl. ¶ 9.)  Thus, the overall reaction of the class members is favorable and weighs in favor of final approval.  *See Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

3:22-CV-173 TWR (MSB)

529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1040 (S.D. Cal. 2017) ("Thus, as a purely numerical observation, the overwhelming positive response to the Settlement strongly supports final approval."); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming district court's final approval of settlement where 54 out of 376,301 putative class members to whom notice was given—0.01%—objected to settlement).

Further, the Court carefully reviewed Ms. Croteau's Objection and—although sympathetic to her disappointment—finds it does not indicate that the Settlement fails to meet the minimum threshold of fairness and adequacy. Ms. Croteau objects on the basis that the Settlement "fails to provide adequate and equitable relief to the female student-athletes who have and continue to endure systemic sex-based discrimination." (Obj. at 5.) Regarding the monetary damages, Ms. Croteau states that all affected athletes should receive the "full educational cost of attendance for the entire 5 years of eligibility," and athletes who suffered retaliation should receive triple that. (*Id.* at 15–16.) Further, Ms. Croteau requests that the Court "modify the Settlement" to grant larger injunctive relief. (*Id.* at 20–21.)

First, as to Ms. Croteau's objection to monetary damages, Title IX damages cannot include emotional distress damages or punitive damages. *See Cummings v. Premier Rehab Keller*, P.L.L.C., 596 U.S. 212, 230 (2022); *Barnes v. Gorman*, 536 U.S. 181, 185 (2002); *see also* TAC Prayer for Relief (only explicitly seeking compensatory and nominal damages). Therefore, although Ms. Croteau's request for additional monetary damages is understandable, there is no legal avenue in this case for the form of monetary relief that she seeks. Moreover, "courts do not have a duty to maximize settlement value for class members." *In re Cal. Pizza Kitchen*, 129 F.4th at 678 (citation omitted). Second, the injunctive relief is consistent with what SDSU would be required to implement if Plaintiffs prevailed at trial. *See supra* Section II.C.3. Further, as explained in Plaintiffs' Response

14

to the Objection, the Settlement Agreement's release of retaliation claims releases only retaliation claims based on the filing of this lawsuit. (*See* Obj. Resp. at 5–7; Settlement Agreement ¶ 37.) Accordingly, Ms. Croteau's retaliation claim, and any other class member's retaliation claims that are not based on retaliation from filing this lawsuit, are not released by this Settlement.

Thus, while the Court understands that Ms. Croteau believes the Settlement to be unfair,[5] the Court does not find that her singular Objection weighs against granting final approval.

## MOTION FOR ATTORNEYS' FEES[6]

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, the Settlement Agreement provides that SDSU will pay $1,300,000 to Plaintiffs' counsel for Plaintiffs' proposed reasonable litigation costs and attorneys' fees. (*See* Settlement Agreement ¶ 31.)

---

[5] It is worth noting that some of Ms. Croteau's concerns with the Settlement represent legal impossibilities. For example, Ms. Croteau objects on grounds that the Settlement imposes no accountability on individual wrongdoers, (*see* Obj. at 19), but Title IX does not apply to individual wrongdoers because only recipients of federal funds may be held liable for damages under Title IX. *See Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1120 (N.D. Cal. 2013). Further, this Settlement cannot provide damages for unequal treatment because this claim was not asserted by Plaintiffs. (*See* Obj. Resp. at 5; *see also generally* TAC.)

[6] Defendant SDSU argues "there is no need to rule on the 'reasonableness' of the overall amounts of hours worked and fees claimed." (Fee Resp. at 2.) Not so. The Court must scrutinize the attorneys' fees in consideration of the entire settlement. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941 ("While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed.R.Civ.P. 23(h), *courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount.*" (emphasis added)). Further, SDSU takes issue with Class Counsel's characterization of the settlement terms as "injunctive relief" and monetary "damages." (Fee Resp. at 1–2.) While the Settlement states "SDSU maintains these payments are non-precedential and do not constitute an agreement that Plaintiffs or any student-athletes are entitled to the damages sought in the Third Amended Complaint," the same section of the Settlement states SDSU will pay "a total of $300,000.00 in *damages*." (Settlement Agreement ¶ 27 (emphasis added).) Accordingly, SDSU's concern with nomenclature does not have merit.

The Court finds it appropriate to apply the lodestar method to Class Counsel's attorneys' fee request due to the injunctive relief provided as a part of the Settlement. *See Kim*, 8 F.4th at 1181 ("[A] district court must exercise caution when using the value of injunctive relief to determine proportional attorneys' fees and should generally avoid valuing hard-to-measure injunctive relief altogether[.]"). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941–42 (citation omitted). While the lodestar calculation is presumptively reasonable, "the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment" with the foremost consideration being "the benefit obtained for the class." *Id.* (internal quotations omitted).

Here, Class Counsel's calculated lodestar rate is $3,571,874.38. (*See* Fee Mot. at 18.) First, as to reasonableness of their hourly rates, Class Counsel submitted hourly billing rates ranging from $175 to $1,375. (*See id.* at 15–16.) Rates over $1,000 represent the high end of rates approved in this District. *See Scott v. Blackstone Consulting, Inc.*, No. 21-CV-1470-MMA-KSC, 2024 WL 271439, at *10 (S.D. Cal. Jan. 24, 2024) ("Recently, courts in this District have awarded hourly rates for work performed in civil cases by attorneys with significant experience anywhere in range of $550 per hour to more than $1[,]000 per hour."). In this case, the hourly rates in excess of $1,000 are based on Class Counsel's expertise in litigating lawsuits in the specialized field of Title IX. (*See* Fee Mot. at 15; ECF No. 174-2 ("Bullock Decl. Fee Mot.") ¶ 8.) Further, the Court does not need to find that each individual rate is reasonable because the $1,300,000 in requested fees represents less than half the calculated lodestar. *See Anders v. Cal. State Univ., Fresno*, No. 1:21-CV-00179-KJM-BAM, 2025 WL 3228123, at *2 (E.D. Cal. Nov. 19, 2025) ("*Anders II*") ("While counsel's proposed hourly rates are higher than those typically

approved as reasonable within this district, it is not necessary to scrutinize those rates further, nor counsel's hours, as the total proposed award is less than half of the 'lodestar' award, i.e., the number of hours expended multiplied by the proposed hourly rate.").

Second, as to reasonable hours expended on the litigation, Class Counsel submitted detailed billing records for their time spent on this matter. (*See generally* Time Entries.) The billing records appear reasonable based on the vigorous advocacy in this litigation. Further, the Court declines to parse through the records with a fine-tooth comb since the requested fee amount in less than half the total lodestar calculation provided by Class Counsel. *See Anders II*, 2025 WL 3228123 at *2; *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants.").

In sum, the Court finds Class Counsel's fee request is reasonable given the detailed billing records submitted and the fact that $1,300,000 represents a significant reduction in the total lodestar calculation. Accordingly, the Court **GRANTS** Class Counsel's Motion for Attorneys' Fees.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Court **FINDS** the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and **CERTIFIES**, for the purposes of settlement only, the following classes:

i. Class 1: All female students who participate in intercollegiate varsity athletics through the termination of the Settlement Agreement or, since February 7, 2022, participated in intercollegiate varsity athletics at San Diego State University.

ii. Class 2: All female students who participated in intercollegiate varsity athletics at San Diego State University from the 2018–2019 academic year through the 2024–2025 academic year and did not receive all of the athletic financial aid they could have received.

2.    The Court **GRANTS** the Joint Motion for Final Approval (ECF No. 171) and **FINALLY APPROVES** the Settlement Agreement under Federal Rule of Civil Procedure 23(e) as fair, reasonable, and adequate.

3.    The Courts **ORDERS** SDSU to pay the negotiated amount of **$300,000** in damages for Class 2 within thirty (30) days of the date of this Order.

4.    The Court **CONFIRMS** its finding that the proposed Plan of Allocation for Class 2 is fair, reasonable, and adequate and **APPOINTS** CPT Group to serve as the Disbursement Administrator.  The Court also **APPROVES** CPT Group's fees, estimated to be **$9,750.00**, to be paid by Class Counsel.

5.    The Court **GRANTS** the Motion for Attorneys' Fees (ECF No. 174) and **ORDERS** SDSU to pay the negotiated amount of **$1,300,000** for Plaintiffs' attorneys' fees and costs within thirty (30) days of the date of this Order.  Any attorneys' fees and/or cost liens from former Plaintiffs' firms will be the responsibility of class counsel Arthur Bryant and not SDSU.

6.    As agreed by the Parties, (*see* ECF No. 181), the Honorable Michael S. Berg **SHALL RETAIN JURISDICTION** over this settlement.

7.    The Clerk of the Court **SHALL ENTER** final judgment.

**IT IS SO ORDERED.**

Dated:  April 20, 2026

_____
Honorable Todd W. Robinson
United States District Judge

18

3:22-CV-173 TWR (MSB)